# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

TIMOTHY D. LAURENT,                          )
On behalf of himself and on behalf of        )
all others similarly situated,               )
                                             )
            Plaintiff,                       )    Civil Action No. 05-1291 (PLF)
                                             )
        vs.                                  )    Judge Paul L. Friedman
                                             )
PRICEWATERHOUSECOOPERS LLP, et al.,          )
                                             )
            Defendants.                      )
                                             )
_____    )

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
## THE FIRST AMENDED CLASS ACTION COMPLAINT

David E. Mendelson (471863)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005-5793
(202) 879-5000 (phone)
(202) 879-5200 (fax)
dmendelson@kirkland.com

Robert J. Kopecky
Douglas G. Smith
Jason W. Callen
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000

Counsel for Defendants
PricewaterhouseCoopers LLP

Dated:  July 29, 2005

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................3

ARGUMENT ....................................................................................................................7

I.      Counts One Through Nine Are Barred By The Applicable Statute of Limitations.............8

II.     Counts One, Two, And Three Fail To State A Claim Because The Plan's Normal Retirement Age Complies With ERISA. ..........................................................................10

      A.     The RBAP's Normal Retirement Age Is Valid. ....................................................10

      B.     Count One Fails Because Plaintiff's Lump Sum Payment Was Correctly Calculated. ................................................................................................14

      C.     Counts Two and Three Also Fail Because Benefits In The RBAP Are Not Reduced Based On Age. ...............................................................................17

III.    Count Four Fails To State A Claim Because Benefits Under the RBAP Are Not Backloaded. ........................................................................................................21

IV.   Count Five Fails To State A Claim Because Plaintiff Did Not Suffer A Forfeiture Of Benefits. ......................................................................................................24

V.    Counts Six and Eight Fail To State  A Claim Under The Internal Revenue Code............27

VI.   Count Seven Fails To State A Claim Because ERISA § 510 Does Not Apply To Claims Based On The Design Or Administration Of A Retirement Plan. .......................31

VII.  Count Nine Fails To State A Claim Because ERISA § 204(g) Does Not Apply Where A Plan Has Not Been Amended...............................................................................33

VIII. Count Ten Fails To State A Claim For Breach Of Fiduciary Duty Under Any Section Of ERISA. ...........................................................................................34

IX.   Count Eleven Should Be Dismissed Because Plaintiff Lacks Standing To Assert A Claim To Recover Losses For The Benefit Of The Plans. ..........................................37

CONCLUSION.................................................................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbey v. Modern Africa One, LLC*,
305 B.R. 594 (D.D.C. 2004) ............................................................................4

*Abraham v. Exxon Corp.*,
85 F.3d 1126 (5th Cir. 1996) ...................................................................27, 30

*Adamson v. Armco, Inc.*,
44 F.3d 650 (8th Cir. 1995) .....................................................................37, 38

*Alessi v. Raybestos-Manhattan, Inc.*,
451 U.S. 504 (1981).................................................................................25, 26

*Andes v. Ford Motor Co.*,
70 F.3d 1332 (D.C. Cir. 1995) ...........................................................32, 33, 34

*Berger v. Xerox Corp. Ret. Income Guar. Plan*,
338 F.3d 755 (7th Cir. 2003) .....................................................................5, 15

*Buckley Dement, Inc. v. Travelers Plan Administrators of Illinois, Inc.*,
39 F.3d 784 (7th Cir. 1994) ...............................................................................36

*Campbell v. BankBoston, N.A.*,
327 F.3d 1, 4 (1st Cir. 2003).............................................................3, 18, 19

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)............................................................................................36

*Connors v. Hallmark & Sons Coal Co.*,
935 F.2d 336 (D.C. Cir. 1991) ......................................................................8, 9

*Coomer v. Bethesda Hosp., Inc.*,
370 F.3d 499 (6th Cir. 2004) .....................................................................32, 33

*Cooper v. IBM Personal Pension Plan*,
274 F. Supp. 2d 1010 (S.D. Ill. 2003).............................................................19

*Cowan v. Keystone Employee Profit Sharing Fund*,
586 F.2d 888 (1st Cir. 1978).............................................................................27

*Crawford v. Lamantia*,
34 F.3d 28 (1st Cir. 1994).................................................................................39

*Crawford v. Roane*,
53 F.3d 750 (6th Cir. 1995) ..............................................................................31

*Dooley v. American Airlines, Inc.*,
  797 F.2d 1447 (7th Cir. 1986) ........................................................29

*E.E.O.C. v. St. Francis Xavier Parochial School*,
  117 F.3d 621 (D.C. Cir. 1997) ..........................................................4

*Eaton v. Onan Corporation*,
  117 F. Supp. 2d 812 (S.D. Ind. 2000) ...................................3, 19, 20

*Estate of Grant v. U.S. News & World Report, Inc.*,
  639 F. Supp. 342 (D.D.C. 1986) .........................................................9

*Firestone Tire & Rubber Co. v. Bruch*,
  489 U.S. 101 (1989)...........................................................................38

*Fischer v. Philadelphia Elec. Co.*,
  96 F.3d 1533 (3d Cir. 1996) ..............................................................33

*Geib v. New York State Teamsters Conference Pension and Ret. Fund*,
  758 F.2d 973 (3d Cir. 1985) ..............................................................11

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002).....................................................................35, 36

*Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan*,
  24 F.3d 1491 (3d Cir. 1994) .........................................................32, 33

*Hartline v. Sheet Metal Workers' Nat. Pension Fund*,
  134 F. Supp. 2d 1 (D.D.C. 2000) ......................................................32

*Health Cost Controls of Ill., Inc. v. Washington*,
  187 F.3d 703 (7th Cir. 1999) ............................................................14

*Huppeler v. Oscar Mayer Foods Corp.*,
  32 F.3d 245 (7th Cir. 1994) ..............................................................26

*Impress Communications v. Unumprovident Corp.*,
  335 F. Supp. 2d 1053 (C.D. Calif. 2003).........................................36

*In re Enron Corp. Sec. Deriv. & ERISA Lit.*,
  284 F. Supp. 2d 511 (S.D. Tex. 2003) .........................................35, 37

*Janowski v. Int'l Bhd. of Teamsters, Local No. 710 Pension Fund*,
  673 F.2d 931 (7th Cir. 1982),
  *vacated on other grounds*, 463 U.S. 1222 (1983)........................11, 12

*Jenkins v. Local 705, Int'l. Bhd. of Teamsters Pension Plan*,
  713 F.2d 247 (7th Cir. 1983) ..............................................................9

*Johnson v. State Mut. Life Assurance Co.*,
    942 F.2d 1260 (8th Cir. 1991) ........................................................................9

*Kaempe v. Myers*,
    367 F.3d 958 (D.C. Cir. 2004) ...................................................................6, 29

*Lunn v. Montgomery Ward Co.*,
    166 F.3d 880 (7th Cir. 1999) ...........................................................19, 20, 21

*Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*,
    221 F.3d 1235 (11th Cir. 2000) ...............................................................16, 17

*Marshall County Health Care Auth. v. Shalala*,
    988 F.2d 1221 (D.C. Cir. 1993) .....................................................................29

*Massachusetts Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985)................................................................................30, 35

*Mayeske v. International Ass'n of Firefighters*, No. 86-3283,
    1989 WL 37154 (D.D.C. Mar. 30, 1989), (unpublished)
    *vacated on other grounds*, 905 F.2d 1548 (D.C. Cir. 1990) ............................28

*McDaniel v. Chevron Corp.*,
    203 F.3d 1099 (9th Cir. 2000) .....................................................................28

*McGath v. Auto-Body North Shore, Inc.*,
    7 F.3d 665 (7th Cir. 1993) ..........................................................................33

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993)................................................................................35, 36

*Mills, Mitchell & Turner v. Commissioner of Internal Revenue*,
    1993 WL 80580 (U.S. Tax Ct. Mar. 23, 1993) (unpublished) ..........................30

*Nachman Corp. v. Pension Benefit Guaranty Corp.*,
    446 U.S. 359 (1980)......................................................................................30

*Nahigian v. Leonard*,
    233 F. Supp. 2d 151 (D. Mass. 2002) ............................................................38

*Norwest Bank Minnesota Nat'l Assoc. v. FDIC*,
    312 F.3d 447 (D.C. Cir. 2002) .......................................................................9

*Owens v. Storehouse, Inc.*,
    984 F.2d 394 (11th Cir. 1993) .....................................................................32

*Panaras v. Liquid Carbonic Ind. Corp.*,
    74 F.3d 786 (7th Cir. 1996) ........................................................................38

*Raymond v. Mobil Oil Corp.*,
    983 F.2d 1528 (10th Cir. 1993) ..................................................................38

*\*Reklau v. Merchants Nat'l Corp.*,
    808 F.2d 628 (7th Cir. 1986) ........................................................27, 28, 29

*Ryan v. Asbestos Workers Union Local 42 Pension Fund*,
    2002 WL 90976 (3d Cir. 2002) ...................................................................12

*Selby v. Principal Mut. Life Ins. Co.*,
    197 F.R.D. 48 (S.D.N.Y. 2000) ...................................................................36

*\*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983)......................................................................22, 23, 32

*\*Stamper v. Total Petroleum, Inc. Ret. Plan*,
    188 F.3d 1233 (10th Cir. 1999) ..................................................................14

*\*Stewart v. National Shopmen Pension Fund*,
    730 F.2d 1552 (D.C. Cir. 1984) ..........................................................26, 34

*Teagardener v. Republic-Franklin Inc. Pension Plan*,
    909 F.2d 947 (6th Cir. 1990) .....................................................................38

*\*Tootle v. Arinc, Inc.*,
    222 F.R.D. 88 (D. Md. 2004) .............................................................19, 20

*West v. Butler*,
    621 F.2d 240 (6th Cir. 1980) .....................................................................32

*West v. Clarke Murphy, Jr. Self Employed Pension Plan*,
    99 F.3d 166 (4th Cir. 1996) ......................................................................28

*Wise v. Glickman*,
    257 F. Supp. 2d 123 (D.D.C. 2003) .............................................................29

**Statutes**

26 U.S.C. § 401(a)(25) ..................................................................................27

26 U.S.C. § 401(a)(9) ....................................................................................17

26 U.S.C. § 411(a) .........................................................................................25

*26 U.S.C. § 411(a)(8) ...................................................................................11

26 U.S.C. § 411(b)(1)(B)(iv) ..................................................................21, 24

26 U.S.C. § 411(d)(6) ....................................................................................34

*26 U.S.C. § 7801 ...................................................................................................30

26 USC § 6110(a) ....................................................................................................6

29 U.S.C. § 1001(a) ...............................................................................................26

*29 U.S.C. § 1002(19) ............................................................................................25

29 U.S.C. § 1002(22) ..............................................................................................26

*29 U.S.C. § 1002(23)(A) ..................................................................................16, 18

*29 U.S.C. § 1002(24) ........................................................................................11, 12

29 U.S.C. § 1024(b)(4) ...........................................................................................38

*29 U.S.C. § 1053 ...................................................................................................25

29 U.S.C. § 1053(a) ...........................................................................................16, 25

*29 U.S.C. § 1054(b)(1)(A)(C) ...............................................................................21

29 U.S.C. § 1054(b)(1)(B)(iv) ...........................................................................21, 24

*29 U.S.C. § 1054(b)(1)(G) .....................................................................................17

*29 U.S.C. § 1054(b)(1)(H) .....................................................................................17

29 U.S.C. § 1054(g) ................................................................................................33

*29 U.S.C. § 1054(g)(l) ...........................................................................................34

*29 U.S.C. § 1109(a) ..........................................................................................7, 35

29 U.S.C. § 1113 ......................................................................................................8

*29 U.S.C. § 1132(a) ................................................................................................7

29 U.S.C. § 1132(a)(1)(B) ...................................................................................7, 35

*29 U.S.C. § 1132(a)(2) .............................................................................7, 35, 37, 39

*29 U.S.C. § 1132(a)(3) ...............................................................................7, 35, 36

*29 U.S.C. § 1202(c) ..........................................................................................11, 30

*D.C.S.T. § 12-301(7) ..............................................................................................9

## Other Authorities

104 Fed. Reg. 47,713 (1978) ...................................................................................11

Fed. R. Civ. P. 12(b)(3) ............................................................................................6

IRS Notice 96-8, 1996 WL 1709 (Feb. 5, 1996) ..........................................................3

IRS Notice 96-8, 1996 WL 17901 (Feb. 5, 1996) .......................................15, 16, 17, 18

Rev. Rul. 76-259, 1976 WL 36222 (1976) ....................................................................23

*Rev. Rul. 78-120, 1978 WL 42312 (1978) .................................................................11

## INTRODUCTION

Plaintiff, a former employee of PricewaterhouseCoopers LLP ("PwC"), claims that PwC's "cash balance" pension plan violates ERISA in numerous ways and that some 75 present and former PwC partners have allegedly breached their fiduciary duties in administering the plan.  The plan at issue, the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (the "RBAP" or the "Plan"), was implemented by Price Waterhouse in 1994 and, following a merger with Coopers & Lybrand in 1998, became the pension plan for the combined firm.  In the 11 years since its inception, over 40,000 present and former PwC employees and partners have participated in the RBAP.  Plaintiff alleges that certain plan features utilized in the RBAP have been the subject of publicity, and in some cases criticism, for years.  Yet, until Mr. Laurent's suit, no present or former participant in the RBAP and no government agency has ever challenged the legality of the Plan.

There is good reason for this.  The terms of the RBAP comply with ERISA in all respects.  The terms of the Plan also comply with the tax-qualification rules of the Internal Revenue Code, as evidenced by the two favorable determination letters issued to PwC by the IRS in 1996 and 2004.  While plaintiff's Complaint spins out an array of convoluted and complex theories to support his claims that the RBAP violates the law, deprives participants of vested benefits, and is bad for PwC employees, nothing could be further from the truth.  The RBAP not only complies with the technical requirements of ERISA, it is also a highly desirable form of pension plan that offers numerous benefits to PwC's professional, mobile workforce.

Plaintiff's Complaint, which is filled with colorful rhetoric, pejorative characterizations and sweeping conclusions, fails to state any legally viable claims and should be dismissed for the following reasons:

*First*, Counts One through Nine – all of which allege plaintiff received too small a lump sum payment of his vested benefits when he left PwC – are barred by the applicable three-year statute of limitations.

*Second*, Counts One through Five, Count Seven, and Count Nine should be dismissed because they do not allege a violation of any of the applicable provisions of ERISA. The RBAP's "normal retirement age," a central aspect of plaintiff's attack on the RBAP, is authorized by the unambiguous language of ERISA. Plaintiff's lump-sum payment when he left PwC was correctly calculated, and plaintiff was not deprived of any vested benefits to which he was entitled under the RBAP or ERISA. Moreover, the language of the statute, applicable IRS rulings and regulations, and case law all establish that plaintiff has not stated a claim for violation of ERISA's age discrimination, backloading, anti-forfeiture, retaliatory discrimination, or plan amendment provisions.

*Third*, Counts Six and Eight fail to state a claim because they are not based on any provision of ERISA, but rather on provisions of the Internal Revenue Code that are not incorporated into ERISA. The law is well-settled that such provisions of the Tax Code do not create any substantive rights that can be enforced by plan participants. Nor is there any basis for plaintiff's claim that the RBAP incorporated these various Tax Code provisions by reference into the Plan.

*Fourth*, Counts Ten and Eleven should be dismissed because plaintiff, who is not currently a participant in the RBAP, lacks standing to bring the claims for breach of fiduciary duty asserted in these counts. Moreover, even if plaintiff had standing, the fiduciary duty claim asserted in Count Ten fails to state a cause of action under any of the remedial provisions available to plan participants under ERISA.

## BACKGROUND

### The PwC RBAP

The RBAP is a cash balance plan that PwC first offered to its partners and employees in 1994. (Cmplt. ¶37) Cash balance plans are a common type of defined benefit plan in which an employee has an account that is periodically credited according to a formula specified in the plan. *See* IRS Notice 96-8, 1996 WL 1709 (Feb. 5, 1996); *Campbell v. BankBoston, N.A.*, 327 F.3d 1, 4 (1st Cir. 2003). Participants' benefits in such plans are reflected in a "notional" account, the value of which is typically determined by two components: (1) periodic pay credits made by the plan sponsor, and (2) additional credits based on criteria specified in the terms of the plan.

Cash balance plans have become increasingly popular forms of pension plans for several reasons. They provide flexibility to plan sponsors in maximizing the tax benefits available under the Internal Revenue Code, as well as other advantages that enable employers to offer pension benefits they might otherwise be financially unable or unwilling to provide. They also provide advantages to participants, including easier portability of benefits for employees who move from one job to another over the course of their time in the workforce. *See Eaton v. Onan Corporation*, 117 F. Supp. 2d 812, 818, 832 (S.D. Ind. 2000) (discussing advantages of cash balance plans to employees).

Under the RBAP, PwC credits every pay period an amount equal to a percentage of each employee's compensation to an account for each plan participant. (Cmplt. ¶57) Partners' benefits are based on a percentage of the benefit limitation amounts for tax-qualified plans specified in the Code. (Ex. C, RBAP § 2.15)[1] Certain employees are also guaranteed a

---

[1] The Court may consider these documents without converting this motion into a motion for summary judgment because the RBAP plan documents and summary plan descriptions are cited throughout the Complaint. *See* (Continued…)

minimum $7,000 account balance regardless of the actual amount in their account.  (*Id.* at § 2.13(b))

In addition to the periodic pay credits, the RBAP also provides partic ipants the opportunity to earn credits to their accounts based on the performance of "investment measures" selected by participants.  (Ex. D, RBAP Summary Plan Description ("SPD") (1999) at 2-3)  Participants in the RBAP are afforded a menu of investment options and may select from among over a dozen separate investment funds, each having different levels of potential risk and reward.  (*Id.* at 3)  Each individual's account is credited with investment gains (if any) based on the performance of the particular investment measure they select.  (Cmplt. ¶64)  Thus, the RBAP provides employees the ability to increase their benefits based on their own investment approach and financial objectives and to diversify the measures used to determine gains in their accounts.

While many other cash balance plans provide periodic interest credits based on a fixed or variable rate linked to an index such as Treasury securities (Cmplt. ¶66), the RBAP offers participants the opportunity to increase their account balances beyond increases that would be provided by such interest credits by selecting investment measures best suited to their personal retirement goals and risk profile.  Participants with a more extended time horizon to retirement can select a mixture of aggressive and conservative funds as investment measures, while those who wish to invest more conservatively can select more stable funds, such as the Plan's money market fund option.  (Ex. E, RBAP SPD (2001) at 4)  Ironically, plaintiff complains that participants who fail to select one of the numerous options offered to them are "defaulted to a low-yielding stable value fund" (Cmplt. ¶72), although the other cash balance

---

*E.E.O.C. v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997) (court may consider on a motion to dismiss "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice"); *Abbey v. Modern Africa One, LLC*, 305 B.R. 594, 605 n. 14 (D.D.C. 2004).

plans whose virtues he extols routinely mandate a "low-yield" fixed crediting rate for *all* participants who are given no opportunity to earn higher returns, as PwC employees are under the RBAP.[2]

Besides providing employees the opportunity to tailor their investment benchmark selections to their own personal financial goals, the RBAP allows participants to change their selections daily by accessing PwC's Benefits Express website. (Ex. E, RBAP SPD (2001) at 4-5) Thus, participants have the flexibility to change investment measures as their retirement goals evolve or based on changes in the market or other economic factors. The Benefits Express website also provides information and prospectuses for the various investment funds options. (*Id*. at 3-4) Finally, the website allows each participant to view his or her current account balance, which is updated daily. (*Id.* at 3-5)

The RBAP additionally offers participants maximum portability, which is crucial for PwC's mobile workforce. Unlike a traditional defined-benefit pension plan, RBAP participants' benefits are expressed in terms of a personalized account, making it easy for them to ascertain their benefit amount if they are contemplating leaving PwC. (*Id*. at 2-4, 11) Upon termination of employment, participants whose benefits have vested may select to receive the full value of their account balance as a lump sum payment, which they may take in cash, or roll over to another employer's tax-qualified plan or an Individual Retirement Account. (Ex. C, RBAP §§ 5.4(b), 5.10) Vested participants also may elect to defer distribution of their benefits, while their account balance continues to be credited based upon their selected investment measures. (*Id*. § 5.2)

---

[2] For example, in *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 338 F.3d 755, 758 (7th Cir. 2003), the plan specified that participants receive interest credits to their account balances at one percent over the one-year Treasury bill rate.

PwC has obtained two determination letters from the Internal Revenue Service specifying that the terms of the RBAP comply with relevant provisions of the Internal Revenue Code.  (*See* Ex. A, IRS Det. Letter (1996); Ex. B, IRS Det. Letter (2004); *see also* Cmplt. ¶ 95)[3]

**Plaintiff's Allegations**

On May 20, 2002, plaintiff received a lump sum payment of all his benefits under the RBAP after terminating employment with PwC.  (Cmplt. ¶17, 128)  Plaintiff filed his Complaint on June 28, 2005, against PwC, PwC's Board of Partners and Principals, the RBAP, the Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP and the Savings Plan for Employees of PricewaterhouseCoopers LLP (the "401(k) Plans"), the administrative committees for the Plans and 76 individuals who allegedly serve or served at some time during the past 11 years as fiduciaries to the RBAP or 401(k) Plans.  Plaintiff filed an Amended Complaint on July 5, 2005.[4]

Plaintiff alleges a potpourri of violations of ERISA as well as provisions of the Internal Revenue Code ("IRC" or "Tax Code") allegedly incorporated into the RBAP.  In particular, many of plaintiff's allegations focus on the RBAP's specification of a five-year normal retirement age – a term contained in the RBAP when the IRS reviewed and approved it in 1999 and 2004.  (*See* Ex. A, IRS Det. Letter (1996); Ex. B, IRS Det. Letter (2004); Ex. C, RBAP § 2.32; *see also* Cmplt. ¶ 95)  Plaintiff does not allege that he received less than what the terms

---

[3]  Plan determination letters are publicly available under Internal Revenue Code § 6110(a), which provides that "the text of any written determination and any background file document relating to such written determination shall be open to public inspection at such place as the Secretary may by regulations prescribe."  26 USC § 6110(a). This Court may take judicial notice of any such public records. *See Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (court may take judicial notice of public records when deciding Rule 12(b)(6) motion to dismiss).

[4]  Plaintiff previously filed a similar action in the United States District Court for the Southern District Court of Illinois against most or all of the defendants in this case.  (Cmplt. n.1)  Defendants moved to dismiss that complaint pursuant to Rules 12(b)(3), for improper venue, and 12(b)(6), for failure to state a claim.  Before briefing was completed on the Rule 12(b)(6) portion of defendants' motion, the court dismissed the action, without prejudice, for improper venue.  (*Id.*)

of the RBAP provided he would receive: the full value of his account balance on the day he left and requested a distribution from the RBAP. (Ex. C, RBAP §§ 5.4(b), 5.2). Plaintiff seeks numerous forms of relief, including relief both against and for the benefit of the RBAP.[5]

## ARGUMENT

ERISA Section 502(a), 29 U.S.C. § 1132(a), sets out the types of civil enforcement actions recognized under ERISA. The following provisions are at least potentially applicable to the claims plaintiff brings here.

*First*, § 502(a)(1)(B) provides a cause of action for a participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

*Second*, § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a plan participant to bring a suit for breach of fiduciary duty to obtain "appropriate relief" under § 409, 29 U.S.C. § 1109(a). Section 409(a) of ERISA provides that any person who is a fiduciary with respect to a plan who breaches any of the duties imposed upon fiduciaries by ERISA "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." Thus, § 409(a) provides for monetary and equitable relief for the plan, but no recovery by an individual participant.

*Third*, § 502(a)(3) allows a plan participant to bring a suit "(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3).

---

[5] Although naming the 401(k) Plans as defendants, Counts One, Two, Three, Four, Five, Eight, Nine and Ten of his complaint relate exclusively to the RBAP. Plaintiff briefly mentions the 401(k) Plans in Counts Six, Seven, and Eleven.

Plaintiff includes eleven separately identified claims and a menu of remedies in his Prayer For Relief, but he does not identify the specific statutory basis for any of his claims. As discussed below, however, plaintiff has not stated any viable claim for relief under any of ERISA's remedial provisions.

## I.    Counts One Through Nine Are Barred By The Applicable Statute of Limitations.

All of the claims in the first nine counts of plaintiff's Complaint are barred by the District of Columbia's 3-year statute of limitations for breach of contract actions. ERISA provides a statute of limitations for only one of the several types of claims that may be asserted by or on behalf of plan participants. Section 413 provides that claims for breach of fiduciary duty under ERISA must be brought within the earlier of (1) three years of the time the plaintiff had actual knowledge of the alleged violation, or (2) six years from the date of the last act constituting the violation. 29 U.S.C. § 1113. For all other claims under ERISA, the statute provides no limitation period, and courts borrow the most closely analogous statute of limitations under the law of the state in which the federal court sits. *See*, *e.g.*, *Connors v. Hallmark & Sons Coal Co.*, 935 F.2d 336, 341 (D.C. Cir. 1991). Of the eleven counts in plaintiff's Complaint, only Counts Ten and Eleven assert claims for breach of fiduciary duty. Thus, the law of the District of Columbia provides the applicable statute of limitations for all of plaintiff's remaining claims.

Counts One through Nine of the Complaint all allege that, as a result of violations of ERISA, the Tax Code and the Plan, the benefit plaintiff received was less than what he would have received had his benefit been calculated as required by ERISA and/or the Code. (*See* Cmplt. ¶¶ 132, 142, 151, 161, 169, 173, 179, 187, 195) Courts addressing claims for denial of benefits due under an ERISA plan have repeatedly applied state law statutes of limitations for breach of contract actions to such claims. *See, e.g.*, *Connors*, 935 F.2d at 341-42; *Johnson v.*

8

*State Mut. Life Assurance Co.*, 942 F.2d 1260, 1263, 1266 (8th Cir. 1991) (en banc); *Jenkins v. Local 705, Int'l; Bhd. of Teamsters Pension Plan*, 713 F.2d 247, 251-53 (7th Cir. 1983); *Estate of Grant v. U.S. News & World Report, Inc.*, 639 F. Supp. 342, 347 (D.D.C. 1986).

In the District of Columbia, the statute of limitations for breach of contract claims is three years. D.C.S.T. § 12-301(7). Plaintiff alleges that he left his employment with PwC in 2002 and, at his election, received "a single lump sum distribution of his entire accrued benefit from both the RBAP and the 401(k) Plan." (Cmplt. ¶ 17) He further alleges he received that lump sum payment on May 20, 2002 in the amount of $24,432.65, "an amount equal to the nominal balance in Plaintiff's cash balance account." (*Id.* ¶ 128) And payment of this amount, he claims, violated ERISA. Accordingly, plaintiff's Complaint demonstrates on its face that any claim for improper payment of benefits accrued no later than May 20, 2002, when plaintiff received his final – and allegedly inadequate – payment of benefits under the RBAP.[6] Since plaintiff filed this action on June 28, 2005, more than three years after this date, his claim is barred as a matter of law.

In sum, all of plaintiff's ERISA claims for payment of allegedly inadequate benefits accrued, at the latest, when he received his final lump sum payment on May 20, 2002, and are barred by the three-year statute of limitations for breach of contract claims.

---

[6] Federal courts borrowing state statutes of limitations apply the federal "discovery rule" in determining when a cause of action accrues. *See*, *e.g.*, *Connors*, 935 F.2d at 342. In most, though not all, cases that time is the time of the alleged wrong. *See Norwest Bank Minnesota Nat'l Assoc. v. FDIC*, 312 F.3d 447, 452 n.4 (D.C. Cir. 2002). This is especially true in breach of contract cases. *See Connors*, 935 F.2d at 342 (courts impute awareness of breach of contract claim to plaintiff at the time of injury, "even if the plaintiff protests that she did not in fact become aware of the injury when it occurred"). While there are "limited exceptions" to this rule, *see Norwest Bank*, 312 F.3d at 452; *Connors*, 935 F.2d at 342-43, no such exception applies here where plaintiff knew no later than May 20, 2002 that the amount of his final lump sum payment consisted of his account balance and nothing more.

## II.     Counts One, Two, And Three Fail To State A Claim Because The Plan's Normal Retirement Age Complies With ERISA.

Plaintiff's claims in Counts One, Two, and Three should also be dismissed because they fail to state any legally sufficient claim for relief.  Each of these counts depends on plaintiff's assertion that the RBAP's normal retirement age is invalid.  (*See* Cmplt. ¶¶ 129, 130, 136, 146)  As a matter of law, however, the RBAP's normal retirement age is valid under ERISA, which expressly authorizes an employer to specify "normal retirement age" in its plan.  Here, the RBAP defines normal retirement age as the earlier of age 65 or five years of service.  (*Id.* ¶ 84)  The statutory definition of normal retirement age gives employers the discretion to select the normal retirement age best suited for their plan and the needs of their workforce.  Subsequent IRS rulings, as well as the decisions of several courts, acknowledge this plain language of the statute.

Recognizing the flaws in his claims given this definition, plaintiff attempts to rewrite the RBAP's normal retirement age – claiming it is in fact age 65 – in an effort to create ERISA violations where none would exist with the Plan's specified five-year period.  Given the validity of the RBAP's five-year normal retirement age definition, plaintiff's claims under each of these counts should be dismissed.

### A.     The RBAP's Normal Retirement Age Is Valid.

The fundamental flaw undermining plaintiff's theory of liability in these three counts is that ERISA specifically authorizes employers to define "normal retirement age" below age 65 without limitation.  ERISA § 3(24) states unequivocally that "normal retirement age" is the *earlier* of:

> *(A) the time a plan participant attains normal retirement age under the plan, or*
>
> (B) the later of (i) the time a plan participant attains age 65, or (ii) the 5th anniversary of the time a plan participant commenced participation in the plan.

29 U.S.C. § 1002(24) (emphasis added).  Thus, ERISA expressly gives an employer flexibility to define "normal retirement age" in the plan itself.  While plaintiff alleges that "the law" requires such an age be "no lower than the real, customary age at which the Firm's workforce normally retires" (Cmplt. ¶ 86), ERISA contains no such requirement.

Congress adopted this same broad definition of "normal retirement age" in IRC § 411(a)(8), 26 U.S.C. § 411(a)(8), which addresses minimum vesting standards.  The lack of any limitation on this statutory definition was subsequently confirmed by IRS guidance stating that employers may use in their benefit plans *any* age below 65:

> In view of the definition of normal retirement age found in section 411(a)(8) of the Code, and *in absence of any statutory prohibition or limitation, a plan may specify any age that is less than 65 as the normal retirement age*.

Rev. Rul. 78-120, 1978 WL 42312 (1978) (emphasis added).  Revenue Ruling 78-120 applies to the definition of normal retirement age found in ERISA and expressly contradicts plaintiff's assertion that there is some limitation on employers' ability to define an age below 65 that is most suitable for their plans.[7]

Federal courts interpreting the plain language of the statute have confirmed that it authorizes retirement plans to define normal retirement age below age 65.  *See Geib v. New York State Teamsters Conference Pension and Ret. Fund*, 758 F.2d 973, 976 (3d Cir. 1985) ("The statute clearly permits the use of a normal retirement age less than 65."); *Janowski v. Int'l Bhd. of Teamsters, Local No. 710 Pension Fund*, 673 F.2d 931, 937, 938 (7th Cir. 1982) ("Under § 411(a)(8) the trustees certainly could have established a normal retirement age of less than

---

[7]  Regulations and revenue rulings issued pursuant to IRC § 411 are made applicable to ERISA by 29 U.S.C. § 1202(c).  Also, Presidential Reorganization Plan No. 4 of 1978 transferred authority of the Secretary of Labor to issue regulations and rulings under ERISA to the Secretary of the Treasury (with certain exceptions not relevant here).  *See* Reorg. Plan No. 4 of 1978, §§ 101(c), 104 Fed. Reg. 47,713 (1978).

65."), *vacated on other grounds*, 463 U.S. 1222 (1983). Nothing in the statute, IRS guidance, or caselaw supports plaintiff's claim that the RBAP's definition of normal retirement age is invalid.[8]

Recognizing that the IRS has issued determination letters stating that the RBAP meets IRC tax qualification standards, plaintiff resorts to asserting that PwC misrepresented the RBAP's normal retirement age to IRS regulators. There is no support for plaintiff's speculative allegation that PwC hid the normal retirement age definition from regulators during the determination letter review process in order to "trick" the IRS into issuing a favorable determination letter (Cmplt. ¶95). In fact, this allegation is contradicted by plaintiff's own Complaint and incorporated documents.

The Plan's definition of normal retirement age is displayed prominently in the Plan documents and appears under its own underlined heading: 'Normal Retirement Age. The earlier of the date a Participant attains age 65 or completes five (5) Years of Service." (Ex. C, RBAP at 27 § 2.32) The Complaint does not allege PwC failed to provide this Plan language to the IRS, but only that it failed to draw this provision to the IRS reviewer's attention. (Cmplt. ¶ 95) The IRS review of the RBAP resulted in issuance of a determination letter explicitly acknowledging that the terms of the Plan, which included the five-year normal retirement age definition, met the requirements of the Tax Code. (*See* Ex. A, IRS Det. Letter (1996)).

Moreover, the allegations in the Complaint dispel any notion that PwC concealed this feature of the Plan from the IRS. Plaintiff alleges, for example, PwC plan design consultant Ira Cohen explicitly detailed in a 1999 letter to the IRS why PwC believed ERISA authorized the

---

[8] Despite plaintiff's claims to the contrary (Cmplt. ¶ 109), employers may define as normal retirement age a specific number of years of service completed by the employee. *See Ryan v. Asbestos Workers Union Local 42 Pension Fund*, 2002 WL 90976, at *3-5 (3d Cir. 2002) (unpublished) (holding that a plan could specify "normal retirement age" as a period of years of service). This is consistent with the plain language of ERISA § 3(24), which defines normal retirement age as "the *time* a plan participant attains normal retirement age under the plan." 29 U.S.C. § 1002(24) (emphasis added).

normal retirement age specified by the RBAP. (Cmplt. ¶¶ 103-107, Ex. 1) Mr. Cohen emphasized PwC's understanding that IRS guidance issued contemporaneously with ERISA regulations "permit[s] unrestricted use of low normal retirement ages." (*Id*. Ex. 1 at 5) That letter explains in detail the sound reasons under the statutory and regulatory schemes of ERISA and the Tax Code for utilizing an early normal retirement age. In the six years since this letter was sent (and published in the journal *Tax Analysts*), the IRS has not challenged the terms of the RBAP, but has instead recently issued a second favorable determination letter to PwC. (Ex. B, IRS Det. Letter (2004)

Equally without merit is plaintiff's claim that the RBAP's normal retirement age should be held to be age 65 because of alleged misrepresentations to plan participants. Plaintiff alleges that the RBAP's summary plan description ("SPD") for 1999, 2001, 2003, and 2004 defined normal retirement age as 65. (Cmplt. ¶ 110) Plaintiff's attempted reliance on the SPDs from 2003 and 2004 is misplaced since, by his own admission, he left PwC and the Plan in 2002 before these SPDs were issued. (Cmplt. ¶¶ 17, 128) In any event, the portions of the SPDs plaintiff references do not describe the Plan's benefit formula or say anything about how Plan benefits are calculated. The 1999 and 2001 SPDs merely state, in a section entitled "Your Rights Under ERISA," that participants "in one or more of the PricewaterhouseCoopers benefit plans . . . have the right to: . . . obtain a statement telling you whether you have the right to receive a pension at age 65 and if so, what your benefits would be at normal retirement age if you stop working at that time." (Ex. D, RBAP SPD (1999) at 15; Ex. E, RBAP SPD (2001) at 21) Plaintiff cannot credibly argue that a provision describing the right to receive a pension statement misled participants into thinking that their benefits should be calculated according to an age 65 normal retirement age.

13

This is particularly true in light of the fact that where the SPDs address calculation of benefits, they plainly state that those benefits are measured by participants' *account balances.* Here, plaintiff elected to receive a lump sum payment when he left the Plan and PwC. (Cmplt. ¶¶ 17, 128) The SPDs expressly provide that such payments consist of an amount "equal to [participant's] vested account balance," and plaintiff acknowledges that his lump sum equaled this amount. (Ex. D at 8; Ex. E at 11; Cmplt. ¶ 128) Consequently, plaintiff received exactly the benefits that the RBAP and SPDs specified he would. Plaintiff cannot base any claim for benefits on alleged "misrepresentations" in the SPDs.[9]

### B.  Count One Fails Because Plaintiff's Lump Sum Payment Was Correctly Calculated.

Plaintiff's claim in Count One fails because the RBAP's definition of normal retirement age is valid. Plaintiff asserts that PwC inaccurately calculated his lump sum benefit payment because PwC did not "project[] his hypothetical account balance to age 65." (Cmplt. ¶ 130) He also claims that even if the Plan's normal retirement age is valid, PwC was required to project his balance to age $70^1/_2$ because participants may leave their money in the RBAP and defer benefit payments up to that age. (Cmplt. ¶ 131) Both of these allegations are insufficient as a matter of law because ERISA does not require any such projections.

---

[9]  Even if there were a conflict between the SPD and the Plan documents (and there is not), the SPDs state that participants should look to the plan documents: "The SPD summarizes the key features of the [RBAP]. It does not attempt to cover all details. These are provided in the official plan documents which govern the operation of the plan. In the event of conflict or discrepancy between the plan documents and this SPD, the plan documents control." (*See* Ex. D, RBAP SPD (1999) at 13; Ex. E, RBAP SPD (2001) at 16) As noted in the SPDs, and as required by law, the RBAP documents are readily available to all plan participants. Moreover, plaintiff does not even allege that he ever read, much less relied upon, the SPDs. A majority of circuit courts do not permit participants to state a claim based on terms in an SPD unless they detrimentally relied or were prejudiced by those terms. *See Health Cost Controls of Ill., Inc. v. Washington*, 187 F.3d 703, 711 (7th Cir. 1999) ("[when] the plan and the summary plan description conflicts, *the former governs* . . . unless the plan participant or beneficiary has reasonably relied on the summary plan description to his detriment.") (emphasis added); *Stamper v. Total Petroleum, Inc. Ret. Plan*, 188 F.3d 1233, 1243 (10th Cir. 1999). Not only has plaintiff failed to allege detrimental reliance, he also has not, and cannot allege, that he was prejudiced since he received exactly what the SPDs promised – *i.e.*, an amount equal to the value of his account balance.

Certain cash balance plans specify interest crediting rates that guarantee fixed accretion in the value of participants' accounts. Under such plans, when an employee leaves employment, but has not yet attained normal retirement age, the plan administrator must perform a "whipsaw calculation" to determine the present value of the employee's normal retirement benefit. This calculation entails projecting the employee's account balance forward to include guaranteed "interest credits" up to the employee's normal retirement age, and then using the discount rate mandated by ERISA – the 30-year Treasury rate – to discount this amount back to the current age of the employee. *See, e.g., Berger v. Xerox Corp. Ret. Income Guar. Plan*, 338 F.3d 755, 759-60 (7th Cir. 2003). If the interest crediting rate is higher than the discount rate, this will result in a participant receiving a lump-sum distribution higher than his current account value. This so-called "whipsaw calculation" is not required for employees who have attained normal retirement age by the time their employment is terminated. *See* IRS Notice 96-8, 1996 WL 17901 (Feb. 5, 1996).

Here, plaintiff had already attained normal retirement age under the RBAP – *i.e.*, five years of employment – before leaving PwC. (Cmplt. ¶84) He also concedes that he received the full amount of his RBAP account balance upon departure. (*Id.* ¶ 128) While plaintiff complains that PwC failed to "project" his account balance "to age 65" (*See id.* ¶ 130), no such projection was required because plaintiff had already reached normal retirement age under the RBAP. Plaintiff's attempt to manufacture an ERISA claim by rewriting the RBAP's definition of normal retirement age fails for all of the reasons explained above. In short, plaintiff has no basis to complain that his lump sum payment was not "projected" to an age different from that provided by the Plan.

Plaintiff's alternative theory is equally flawed. Plaintiff claims that even if the RBAP's normal retirement age is valid, the Plan was required, in calculating his lump sum

payment, to project his account balance forward *beyond normal retirement age* to age $70^1/_2$. Plaintiff alleges this was required because the Plan permits participants to earn interest credits past normal retirement age if they do not take a distribution from the RBAP when they terminate employment. (Cmplt. ¶131) But this argument fails given that IRS guidance regarding the whipsaw calculation requires projections forward only up to, and ***not beyond***, normal retirement age. *See, e.g.,* IRS Notice 96-8, 1996 WL 17901 (Feb. 5, 1996) (cash balance plans comply with ERISA if participants' accounts are "*projected to normal retirement age* and then the employee . . . [is] paid at least the present value" of the projected account balance) (emphasis added).

No case, statute, or regulation supports plaintiff's allegation that the right to leave one's money in the RBAP beyond normal retirement age would require projections past that age. The cases plaintiff cites in the Complaint simply hold that a participant's accrued benefit under ERISA is valued as annuity beginning at normal retirement age and that because of this, plans must project participants' account balances up to this date in lump sum payment calculations.[10] (*See* Cmplt. ¶92 n. 27) The statutes and regulations plaintiff references merely define a participant's "accrued benefit" as a benefit "expressed in the form of an annual benefit commencing *at normal retirement age*" and provide that such benefit is non-forfeitable. (*See* Cmplt. ¶ 131, citing 29 U.S.C. §§ 1002(23)(A) and 1053(a) (emphasis added); Treas. Reg.

---

[10] *See Berger*, 338 F.3d at 759, 761 (lump sum payment must "equal the value of the benefits if the employee decides to wait to the normal retirement age and take them in the form of a pension"); *Esden v. Bank of Boston*, 229 F.3d 154, 163 (2d Cir. 2000) (accrued benefit "must be valued in terms of the annuity that it will yield at normal retirement age" and if the benefit is paid as a lump sum payment "it must be worth at least as much as that annuity"); *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1243-44 (11th Cir. 2000) (same).

§ 1.411(a)-4T(a))  Thus, Count One should also be dismissed because ERISA does not require projections past normal retirement age.[11]

### C.    Counts Two and Three Also Fail Because Benefits In The RBAP Are Not Reduced Based On Age.

Plaintiff's claims in Counts Two and Three similarly fail given the validity of the RBAP's normal retirement age.  Plaintiff asserts that the RBAP violates age discrimination rules because the rate at which his benefit accrued (as well as his accrued benefit) allegedly declined as he aged.  (Cmplt. ¶¶ 135, 145)  The RBAP's definition of normal retirement age, however, actually ensures that the type of "reduction" plaintiff alleges will not occur.  Plaintiff therefore rests this claim on the legally and factually baseless allegation that the RBAP's definition of normal retirement age is invalid and is by default age 65.  (Id. ¶¶ 136, 146)  The normal retirement age specified under the RBAP is not 65, however, and plaintiff's benefits were not calculated – or required to be calculated – using this age.  Plaintiff is simply attempting to manufacture an age discrimination claim by rewriting the terms of the RBAP.  But even if the Plan's definition were age 65, plaintiff's age discrimination claims would still fall short because the "reductions" of which he complains have nothing to do with a participant's age and do not violate ERISA.

Under ERISA § 204(b)(1)(G) and (H), an employee's "accrued benefit" and "rate of benefit accrual" cannot be reduced on account of the employee's age. 29 U.S.C. § 1054(b)(1)(G) and (H).  While ERISA does not define "rate of benefit accrual," it does define "accrued benefit."  In a cash balance plan, a participant's accrued benefit is

---

[11]  Indeed, the $70^1/_2$ feature of the RBAP reflects the Tax Code requirement that benefits generally must commence no later than age $70^1/_2$.  *See* 26 U.S.C. § 401(a)(9).  In addition, the IRS requires that employees who defer commencement of their distribution from the plan continue to receive interest credits.  *See* IRS Notice 96-8, 1996 WL 17901 (Feb. 5, 1996).  Thus, if plaintiff's theory were correct, the IRS would have stated that projections are required until age $70^1/_2$ in IRS Notice 96-8, instead of only requiring projection to normal retirement age, and the courts in *Berger*, *Lyons* and *Esden* would have also required such projections to age $70^1/_2$.

calculated in terms of an annuity beginning at normal retirement age, 29 U.S.C. § 1002(23)(A), and, if the plan provides for interest credits, the accrued benefit includes any interest credits projected to normal retirement age.  *See* IRS Notice 96-8, 1996 WL 17901.  Under cash balance plans that use a normal retirement age of 65, the amount of interest credits an employee will receive until he or she attains normal retirement age necessarily depends on the employee's current age.  So in a plan with a normal retirement age of 65, a 35-year-old employee will have a longer time to accrue interest (30 years) than the same account balance of a 55-year-old employee (10 years).  S*ee Campbell v. BankBoston, N.A.*, 327 F.3d 1, 9 (1st Cir. 2003).

Plaintiff's age discrimination claims in Counts Two and Three are based upon the presumption that this difference in the amount of projected interest credits is an unlawful "reduction" based on age.  (Cmplt. ¶¶ 139-41, 147-50)  But in order to apply this argument to the RBAP, plaintiff must first establish that the Plan's normal retirement age is invalid and should be replaced with age 65.  (Cmplt. ¶¶ 136, 146)  Only then can plaintiff contend that a RBAP participant's "accrued benefit" and "rate of benefit accrual" both consist of a benefit projected to age 65.  (*Id.* ¶¶ 137, 147)

Plaintiff's claims in both counts fail at the outset because the RBAP's 5-year retirement age complies with ERISA, and that provision ensures that the type of "reduction" for which plaintiff complains simply does not occur under the Plan.   Under the RBAP, an employee's benefits vest at the *same time* the employee reaches the normal retirement age at five years of service.  Thus, there is no need to perform such a forward-looking projection of interest credits to normal retirement age to determine the value of the RBAP benefit due to an employee who has terminated his or her employment with PwC.  Such forward projections are necessary *only* where an employee has a vested right to a distribution of a benefit but has *not yet reached* normal retirement age – a situation that *never* occurs under the RBAP given its

18

permitted definition of normal retirement age.  Given that this definition complies with the plain language found in ERISA, plaintiff's attempt to manufacture an age discrimination claim by rewriting the terms of the RBAP – *i.e.*, to create a "reduction" where none exists – is baseless.[12]

But perhaps more importantly, plaintiff's claims would fail even if the RBAP's normal retirement age were 65 because these alleged "reductions" are not the type of reductions that violate ERISA's age discrimination rules.   In Count Three, plaintiff argues that RBAP participants' "rate of benefit accrual" declines in violation of ERISA Section 204(b)(1)(H) because amounts credited to younger participants are worth more (when expressed as an age-65 annuity) than the same amount credited to an older participant closer to age 65.  (Cmplt. ¶ 147) This claim does not depend on the specific terms of the RBAP.  Instead, as explained in the example above, it would apply to all cash balance plans.  Most courts that have examined this theory of age discrimination have either rejected the theory outright or at least cast substantial doubt upon it.  *See Campbell*, 327 F.3d at 10  (describing problems with the theory); *Tootle v. Arinc, Inc.*, 222 F.R.D. 88, 93-94 (D. Md. 2004) (rejecting age discrimination claim made under this theory); *Eaton v. Onan Corp.*, 117 F. Supp. 2d 812, 815-16 (S.D. Ind. 2000) (same).[13]

The fundamental flaw in plaintiff's theory is that it is based on a distortion of the meaning of "rate of benefit accrual" as used in Section 204(b)(1)(H).  Plaintiff incorrectly presumes that this phrase must be defined in terms of an age-65 annuity, leading to forward

---

[12]  Plaintiff incorrectly suggests that his age discrimination claims would survive even if the RBAP's normal retirement age is valid because "benefit accruals during a participant's first 5 years of participation violate the accrual rules."  (Cmplt. ¶ 142 n. 44)  Plaintiff is wrong because, as explained above, the "reductions" of which plaintiff complains in Counts Two and Three do not violate ERISA's age discrimination rules.  The RBAP fully complies with these rules because employees earn benefits at the same rate throughout their participation in the Plan. *See Lunn v. Montgomery Ward Co.*, 166 F.3d 880, 883 (7th Cir. 1999) (rejecting age discrimination claim where participant accrued benefits "in exactly the same way" as he had been doing throughout his service).

[13]  *Cooper v. IBM Personal Pension Plan*, 274 F. Supp. 2d 1010, 1022 (S.D. Ill. 2003), is the only case that has accepted plaintiff's age discrimination theory under ERISA § 204(b)(1)(H) as applied to a cash balance plan.

projections and the ensuing "reduction" of benefits. But as other courts have pointed out, there is nothing in the statute or legislative history indicating that the phrase, which is not defined in ERISA, must be read as meaning an age-65 annuity. *See Tootle,* 222 F.R.D. at 93-94; *Eaton,* 177 F.Supp.2d at 829-30.

As found in both *Eaton* and *Tootle,* "rate of benefit accrual" should be defined as the annual credits made to the employee's cash balance account. *See Tootle*, 222 F.R.D. at 94; *Eaton* 117 F. Supp. 2d at 832-33. Plaintiff's claim in Count Three fails under this definition because he has not alleged, and cannot allege, that credits to individual accounts are reduced under the RBAP based on age. Age plays no role in the RBAP's benefit formula: participants accrue benefits in "exactly the same way" at all ages. *See Lunn v. Montgomery Ward Co.*, 166 F.3d 880, 883 (7th Cir. 1999) (rejecting age discrimination claim under Section 204(b)(1)(H) where participant accrued benefits "in exactly the same way" as he had been doing throughout his service).

Plaintiff's claim in Count Two similarly fails because the "reduction" he describes does not violate ERISA. Plaintiff alleges that his "accrued benefit" was reduced in violation of Section 204(b)(1)(G) because the investment credits participants receive under the RBAP can vary from year-to-year. (Cmplt. ¶¶ 139-41) This variability, plaintiff reasons, means there is no guarantee that the investment credits individuals earn will be great enough to offset the reduction to their accrued benefits that occurs as they move closer to age 65. (*Id.*) Despite plaintiff's protestations to the contrary, this reduction does not occur "*on account of*" age, but instead based on fluctuations in the amounts of investment credits all participants may earn in a given year. (Cmplt. ¶ 140) As previously described, the method for calculating benefits under the RBAP is uniform as to age and no provision of the Plan reduces benefits on account of age. Thus,

plaintiff's claim is based on a legally and factually incorrect premise and should be dismissed. *See Lunn,* 166 F.3d at 883.

### III.    Count Four Fails To State A Claim Because Benefits Under the RBAP Are Not Backloaded.

The Complaint does not allege a legally viable claim that the RBAP unlawfully "backloads" benefits. The benefit accrual rules under ERISA and the Tax Code require that benefits under a defined benefit plan not be excessively stacked, or "backloaded," toward a participant's later years of participation in the plan, assuming all else remains equal. Although creative, each of plaintiff's three separate backloading theories in Count Four fails as a matter of law to state a claim that the RBAP violates the benefit accrual rules of ERISA § 204(b)(1)(A)-(C), 29 U.S.C. § 1054(b)(1)(A)-(C), or the parallel provisions of the Tax Code.

*First*, plaintiff incorrectly asserts that the RBAP violates these rules when a PwC employee is promoted to partner because such person's benefit accrual under the RBAP in his first year as partner may exceed his benefit accrual in the prior year as an employee by an impermissible amount. (*See* Cmplt. ¶157) That partners and directors may accrue greater benefits under the RBAP than employees, however, does not establish impermissible backloading when PwC promotes an employee to partner or director. Plaintiff's theory ignores ERISA and IRC requirements that provide that when determining whether the benefit accrual requirements are satisfied, "social security benefits and *all other relevant factors used to compute benefits* shall be treated as remaining constant as of the current year for all years after the current year." 29 U.S.C. § 1054(b)(1)(B)(iv) (emphasis added); 26 U.S.C. § 411(b)(1)(B)(iv). Under the RBAP, one's status as an employee, director, or partner is a "relevant factor used to compute benefits" and therefore *must* be deemed to remain constant for purposes of benefit accrual testing under ERISA and the Tax Code.

21

When employment status is held constant, as is required by these rules, any increase in benefits that occurs as a result of an employee's becoming a partner or director is not a factor when testing for backloading. This is only logical. There are many plans that have different benefit formulas for unionized hourly employees and salaried employees; under plaintiff's theory all such plans would violate ERISA's backloading rules due to the change in benefits that occurs when an employee is promoted. ERISA does not discourage an employer from promoting an employee, nor does it require that all employees and partners receive the same benefits under a plan. In fact, as the Supreme Court has noted: "ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983).

Far from being a "classic method used by plan sponsors to disguise unlawful backloading," as plaintiff alleges (Cmplt. ¶ 157), the promotion situation plaintiff describes simply illustrates the permitted operation of benefit plans in light of the ERISA benefit accrual rules, which *require* that such relevant factors remain constant when making a backloading determination. The separate benefit formulas are described in the RBAP document, and the IRS has determined that the RBAP satisfies the qualification requirements of the IRC, which include these benefit accrual rules. (*See* Ex. A, IRS Det. Letter (1996); Ex. B, IRS Det. Letter (2004)) Plaintiff simply cannot state a violation of ERISA's and the IRC's benefit accrual rules on this basis.

***Second***, plaintiff unfairly mischaracterizes one of the most favorable aspects of the RBAP to employees – the $7,000 guaranteed benefit – in claiming that this provision violates ERISA. (*See* Cmplt. ¶ 158) Plaintiff alleges that participants who are guaranteed at least a $7,000 distribution do not accrue benefits under the RBAP until their account balance would otherwise exceed $7,000. (*See* Cmplt. ¶ 158) This is simply not true. An employee ***does*** receive

an annual credit under the RBAP regardless of whether his or her RBAP account is greater or less than $7,000. (*See* Ex. C, RBAP §§ 2.13, 2.15)[14]

Furthermore, even assuming plaintiff was correct in characterizing the $7,000 guarantee as an offset of the annual benefit credits, there would be no violation of the backloading rules. The IRS permits "floor-offset" arrangements (*i.*e., an arrangement that reduces an accrued pension benefit by a benefit provided under another plan). *See, e.g.,* Rev. Rul. 76-259, 1976 WL 36222 (1976). Under such arrangements, an employee may, in certain years, be deemed to accrue no benefit from a pension plan based on the benefit provided by another plan, followed by a year in which the benefit accrual under the pension plan is not offset by the other plan. The IRS has stated that such arrangements satisfy the benefit accrual rules of IRC § 411(b)(1) (the parallel provision to ERISA § 204(b)(1)) because the offset feature is ignored for benefit accrual (or backloading) purposes. *See id.* Therefore, if an RBAP participant's annual benefit accruals are offset by the $7,000 guarantee as plaintiff suggests, such offset would not be factored in to the determination of whether the RBAP satisfies the benefit accrual rules of ERISA and the IRC.

***Third***, plaintiff cannot salvage his backloading claim by alleging that the portion of the RBAP's benefit formula providing participants with an opportunity to select their own investment returns violates the benefit accrual rules simply because of the unpredictable nature of the market. (*See* Cmplt. ¶ 159) Plaintiff asserts that "the value of future investment credits that accrue with each pay credit is unpredictable and varies from time to time. As a result it is

---

[14]  The $7,000 guaranteed distribution for certain RBAP participants is, in effect, "house money" because the participant can select the most aggressive investment funds for his or her RBAP account and always be assured of a $7,000 benefit regardless of the performance of the investment funds selected. In other words, the guarantee protects participants' account balances on the downside, but in no way limits their upside potential to exceed the guaranteed $7,000 benefit level.

impossible for the RBAP to prove that the benefits that accrue under the Plan will satisfy the anti-backloading standards in every year."  (*Id.* ¶ 159.)

        This theory fails to state a claim because, unlike certain "nondiscrimination tests" for defined contribution plans, a defined benefit plan's compliance with the benefit accrual rules is not required to be tested and demonstrated on an annual basis.  Rather, such a determination is based on the plan's design.  When issuing the two favorable determination letters for the RBAP, the IRS determined that the RBAP complied with these rules.  Further, even if one were to assume that the RBAP's investment crediting opportunity were factored into the backloading analysis as plaintiff suggests, it would be a "relevant factor" that must "be treated as remaining constant as of the current year for all years after the current year" pursuant to ERISA and the Tax Code.  29 U.S.C. § 1054(b)(1)(B)(iv); 26 U.S.C. § 411(b)(1)(B)(iv).  Thus, the actual investment experience based on market conditions from year to year is irrelevant for determining whether the RBAP satisfies the benefit accrual rules.  A participant's investment performance in the first year is assumed for all future years for these purposes.

        Again, these rules make perfect sense when considering that many "traditional" pension plans are based on a participant's final average pay.  Under plaintiff's theory, even such traditional pension plans would violate the backloading rules because it would be impossible to determine whether a participant's compensation would increase significantly in future years.  The RBAP is not unlawfully backloaded, and plaintiff has failed to state a claim in Count Four under ERISA's benefit accrual rules.

## IV.    Count Five Fails To State A Claim Because Plaintiff Did Not Suffer A Forfeiture Of Benefits.

        Plaintiff's "forfeiture" claim in Count Five fails even to mention the applicable anti-forfeiture section of ERISA.  ERISA § 203(a), which addresses forfeiture of accrued benefits, states:  "Each pension plan shall provide that an employee's right to his normal

24

retirement benefit is nonforfeitable upon the attainment of normal retirement age . . . ."[15] 29 U.S.C. § 1053(a).    The RBAP, including its investment crediting opportunity feature, complied and complies with this requirement of ERISA.   Accordingly, plaintiff fails to state a viable "forfeiture" claim in Count Five of the Complaint.

ERISA § 3(19) defines a "nonforfeitable" benefit as one obtained by a participant or his beneficiary under a pension plan "which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan."  29 U.S.C. § 1002(19).  The RBAP's investment credits do *not* arise from a participant's service,[16] investment returns are *not* "unconditional" benefits because they are specifically conditioned on the performance of the investment measures selected by plan participants, and participants are *not* legally entitled to any particular investment return enforceable against the RBAP.  Plaintiff even acknowledges that "[t]he RBAP does not have a guaranteed positive interest crediting rate…"   (Cmplt. ¶139)  Because plaintiff has not alleged a forfeiture of a "nonforfeitable" benefit under the RBAP based on the RBAP's investment opportunity features, plaintiff's claim under Count Five should be dismissed.

The Supreme Court addressed a claim similar to the one plaintiff asserts here in *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504 (1981).  The Court rejected plaintiffs' argument that a pension plan formula offsetting their accrued pension benefits by state worker's compensation benefits after their retirement violated ERISA's nonforfeitabilty requirements. Although the Court acknowledged that the retirees were correct that no vested benefits may be forfeited except as permitted by ERISA § 203, 29 U.S.C. § 1053, and that a post-retirement

---

[15]  The parallel section in the IRC is 26 U.S.C. § 411(a).

[16]  Investment credits under the RBAP are made regardless of a participant's continued employment.  (*See* Ex. C, RBAP §§ 2.13(b), 2.14)

worker's compensation offset did not fall into any of the statutory exceptions, it explained the fatal flaw in plaintiff's reasoning:

> Despite this facial accuracy, retirees' argument overlooks a threshold issue: what defines the content of the benefit that, once vested, cannot be forfeited? ERISA leaves this question largely to the private parties creating the plan . . . . Similarly, the statutory definition of 'nonforfeitable' assures that an employee's claim to the protected benefit is legally enforceable, but it does not guarantee a particular amount or a method for calculating the benefit.

*Id.* at 511-512. After all, as the Court noted, ERISA defines the term "normal retirement benefit" as "the benefit ***under the plan*** commencing at normal retirement age." *See* 29 U.S.C. § 1002(22) (emphasis added). *Alessi*, 451 U.S. at 513-514. "The central problem to which ERISA is addressed is the loss of benefits previously promised. . . . ERISA does not concern itself with the *amount* of benefits promised."[17] *Huppeler v. Oscar Mayer Foods Corp.*, 32 F.3d 245, 246 (7th Cir. 1994).

Building on the logic of *Alessi*, the Court of Appeals for the D.C. Circuit has made clear that a reduction in benefits does not constitute a "forfeiture":

> Under the ERISA scheme, a reduction in benefits to employees whose right to a pension in some amount remains vested is not a "forfeiture." A reduction in accrued benefits, standing alone, does not affect the right to obtain benefits and thus does not affect vesting. It changes only the amount of benefits a pensioner receives, not his vested status.

*Stewart v. National Shopmen Pension Fund*, 730 F.2d 1552, 1562 (D.C. Cir. 1984). A straightforward application of these decisions bars plaintiff's claim here. Under the RBAP, benefit amounts are based, in part, on the performance of the investment measures they selected.

---

[17] The Congressional declaration of policy (which has been incorporated into ERISA at Section 2(a), 29 U.S.C. § 1001(a)), declares that "despite the enormous growth in such plans many employees with long years of employment are losing *anticipated* retirement benefits owing to the lack of vesting provisions in such plans." (Emphasis added.)

(*See* Ex. D, RBAP SPD (1999) at 2-3; Ex. E, RBAP SPD (2001) at 3)  Plaintiff and other vested

RBAP participants remained vested in the benefits provided under the RBAP's formula.  Thus,

plaintiff received precisely what he was promised under the RBAP, and all that ERISA § 203(a)

requires.

## V.    Counts Six and Eight Fail To State A Claim Under The Internal Revenue Code.

Plaintiff's claims in Counts Six and Eight are both premised on alleged violations

of various Tax Code provisions that have not been incorporated into ERISA.  In Count Six,

plaintiff alleges that the contribution formula under the 401(k) Plans and the benefit formula

under the RBAP violate "the Code's nondiscrimination standards" governing a plan's tax

qualification status.  (*See* Cmplt. ¶ 172)  In Count Eight, plaintiff alleges that the RBAP violates

IRC § 401(a)(25), 26 U.S.C. § 401(a)(25), because it does not provide "definitely determinable

benefits," another requirement for a plan to receive favorable tax treatment.  (*See* Cmplt. ¶ 182)

Both counts fail for the same fundamental reason:  alleged violations of the Tax Code do not

provide a basis for a private cause of action.  Rather, the IRS has exclusive jurisdiction to make

determinations regarding a plan's tax qualification status, and the United States Tax Court – not

the federal District Courts – has jurisdiction to review IRS determinations regarding whether a

retirement plan meets the Tax Code's qualification requirements.  *See* 26 U.S.C. § 7476.

Courts have repeatedly dismissed ERISA claims based on alleged violations of

the Tax Code because the provisions of the Code do not create substantive rights under ERISA.

*See, e.g., Abraham v. Exxon Corp.*, 85 F.3d 1126, 1131 (5th Cir. 1996) (Treasury regulations "do

not create substantive rights under ERISA"); *Reklau v. Merchants Nat'l Corp.*, 808 F.2d 628, 631

(7th Cir. 1986) (finding no basis in ERISA to impose the provisions of IRC § 401); *Cowan v.

Keystone Employee Profit Sharing Fund*, 586 F.2d 888, 890 n.3 (1st Cir. 1978) (Section 401 of

the IRC "does not appear to create any substantive rights that a beneficiary of a qualified

retirement trust can enforce").[18]   In particular, this Court previously rejected as "wrong as a matter of law" the argument that a participant can bring a claim based on a pension plan's alleged "discrimination against employees" in violation of the Tax Code, observing that failure of a plan to "qualify" under the Code "does not create any substantive rights, ERISA or otherwise." *Mayeske v. International Ass'n of Firefighters*, No. 86-3283, 1989 WL 37154, at *5, *10 (D.D.C. Mar. 30, 1989) (unpublished), *vacated on other grounds*, 905 F.2d 1548 (D.C. Cir. 1990).

In *Reklau*, the court rejected plaintiff's claim that his former employer's pension plan discriminated against non-executives in violation of IRC § 401.  808 F.2d at 630-31.  The Court reasoned that there was "no basis, under § 1202(c) or elsewhere in ERISA to find that the provisions of IRC § 401 – which relate solely to the criteria for tax qualification under the internal Revenue Code – are imposed on pension plans by the substantive terms of ERISA." *Id.* at 631.  The Court observed that, "had Congress intended that § 401 of the I.R.C. be applicable to ERISA, it would have so stated in clear and unambiguous language." *Id.*  Accordingly, it held that "the district court's refusal to find an implied cause of action under § 401 of the I.R.C. was proper." *Id.*

Nor does the fact that a plan refers to such provisions of the Tax Code allow a plaintiff to evade this general rule.  (*See* Cmplt. ¶ 182).[19]   Such precatory language has not

---

[18]   *See also McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1117-18 (9th Cir. 2000) (rejecting claim against pension plan based on revenue ruling issued pursuant to IRC § 401 on the ground that "had Congress intended the employer discretion standard of Revenue Ruling 79-90 to apply to ERISA, it would have so provided in clear and unambiguous language as it did in § 3002(c) of ERISA"); *West v. Clarke Murphy, Jr. Self Employed Pension Plan*, 99 F.3d 166, 169 (4th Cir. 1996) (provisions of Tax Code , including § 401, "do not alter ERISA's requirements").

[19]   In Counts Six and Eight, plaintiff alleges that Internal Revenue Code §§ 401(a)(4) and 401(a)(25) were "incorporated by reference into the RBAP."  (Cmplt. ¶¶ 46, 172, 182)  That assertion is incorrect and is refuted by the language of the Plan.  The RBAP states only that it "is intended [to] . . . meet the requirements of Section 401 and Section 501" of the Tax Code and that it should "be interpreted and construed, wherever possible, to comply with the terms of ERISA, the Code, and regulations and rulings issued thereunder."  (Ex. C, RBAP, p. 2, § 16.6(b))  It does *not* say that it is "incorporating by reference" any provision of the Code or specifically §§ 401(a) or 401(a)(25).  Rather, the Plan merely states, like other tax-qualified benefit plans, that it is intended to meet IRS
(Continued…)

stopped courts from consistently holding that IRS regulations do not create a private cause of action. *See Stamper v. Total Petroleum, Inc. Ret. Plan*, 188 F.3d 1233, 1239 (10th Cir. 1999). In *Stamper* the plan under review, like the RBAP, stated: "The Plan is intended to qualify as a defined benefit pension plan under Section 401(a) of the Internal Revenue Code of 1986, as amended." (Ex. F, Total Petroleum, Inc. Retirement Plan at 2 §1.02)[20]  Nonetheless, as in *Reklau*, the court held that these IRS regulations could not provide a basis for a private cause of action. *Stamper*, 188 F.3d at 1239-40.

Not only would recognition of a private cause of action be inconsistent with established law, it would allow plaintiff to circumvent conscious choices made by Congress in drafting ERISA. Where Congress intended to allow a private cause of action for violation of Tax Code provisions, it did so explicitly by expressly incorporating parallel provisions into the text of ERISA. For example, Congress included parallel sections in ERISA and the Tax Code regarding participation and vesting (ERISA §§ 201-211 IRC §§ 410-411) as well as plan funding (ERISA §§ 301-308; IRC § 412). However, it purposefully excluded the Tax Code's nondiscrimination requirements and "definitely determinable" standard.[21]  Thus, Congress made clear by statute the particular Tax Code provisions and Treasury regulations for which a plan

requirements. Such aspirational language does not change the established rule that there is no private cause of action for violations of Treasury regulations.

[20]  Although this provision of the plan was not discussed in the Court's opinion, the plan is part of the record on appeal and is publicly available. The plan was attached to the defendant's motion for summary judgment and was included in the appellate record. (*See* Ex. F)  This Court may take judicial notice of the plan because it is in the public record. *See Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (court may take judicial notice of public records when deciding Rule 12(b)(6) motion to dismiss; *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1228 (D.C. Cir. 1993) (court may take judicial notice of record in another proceeding); *Wise v. Glickman*, 257 F. Supp. 2d 123, 130 (D.D.C. 2003) (on motion to dismiss, court is "allowed to take judicial notice of matters in the general public record, including records and reports of administrative bodies and records of prior litigation")

[21]  Courts have consistently held that ERISA does not incorporate the same "definitely determinable" standard found under income tax laws. *Dooley v. American Airlines, Inc.*, 797 F.2d 1447, 1452-53 (7th Cir. 1986) (refusing to read the discretionary standard embodied in the Treasury regulations into ERISA; *Stamper*, 188 F.3d at 1239-40 (rejecting argument that the Treasury regulations are incorporated into ERISA's definitely determinable standard).

participant may pursue a private cause of action pursuant to ERISA's civil enforcement provisions.[22]  *See* 29 U.S.C. § 1202(c) (only regulations enacted under Sections 410(a), 411, and 412 of the Tax Code apply to ERISA).  As the court in *Stamper* observed, "it would be improper to read into ERISA a requirement Congress elected to apply only to the Tax Code."  188 F.3d at 1239.

Indeed, the Supreme Court has broadly held that ERISA's "carefully integrated civil enforcement provisions . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly."  *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985) (emphasis in original).  As the Court has observed, "[t]he assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a 'comprehensive and reticulated statute.'"  *Id.*  (quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361 (1980)).

In sum, Congress has given the IRS sole authority to interpret and enforce the Tax Code provisions and accompanying regulations that were not expressly incorporated into ERISA.  *See* 26 U.S.C. § 7801.  The remedy for a violation of the Tax Code's nondiscrimination rules is the plan's loss of beneficial tax status – not a private suit for damages.  *See Mills, Mitchell & Turner v. Commissioner of Internal Revenue*, 1993 WL 80580 (U.S. Tax Ct. Mar. 23, 1993) (unpublished) (failure of plan to meet requirements under Section 401(a) would "caus[e] the trust to lose its tax exempt status").  As the courts have repeatedly made clear, plaintiff cannot assume a role expressly delegated to the IRS or pursue a remedy Congress did not include under ERISA.  *See Abraham*, 85 F.3d at 1131 (failure to meet the requirements of those Treasury

---

[22]  As noted in Part II.A., Congress made clear by statute that regulations and revenue rulings issued pursuant to the section of the Tax Code defining normal retirement age are made applicable to ERISA.  *See* 29 U.S.C. § 1202(c).

Regulations results in the loss of a beneficial tax status; "it does not permit a court to rewrite the plan."). "[T]he favorable tax consequences of ERISA plans are not mandatory and cannot be guaranteed by judicial intervention. 'ERISA contains no express provision that requires an employer to qualify a pension plan under the Internal Revenue Code.'" *Crawford v. Roane*, 53 F.3d 750, 756 (6th Cir. 1995).

Plaintiff's attempt to circumvent these settled principles is not only contrary to established law, it would be particularly harmful. The IRS – which is given the sole responsibility for enforcing the provisions of the Tax Code and accompanying Treasury regulations plaintiff cites – has never found that the RBAP or 401(k) Plans are in violation of those provisions. To the contrary, the IRS has twice issued determination letters specifically approving the RBAP as enacted – the latest as recently as March 2004. (*See* Ex. A, IRS Det. Letter (1996); Ex. B, IRS Det. Letter (2004); *see also* Cmplt. ¶ 95) Plaintiff is asking the Court to do what the law does not permit: invade the exclusive jurisdiction of the Internal Revenue Service in contravention of the Tax Code and ERISA and second-guess that agency's enforcement of its own regulations regarding pension plans' tax qualification status.

## VI.    Count Seven Fails To State A Claim Because ERISA § 510 Does Not Apply To Claims Based On The Design Or Administration Of A Retirement Plan.

In Count Seven, plaintiff claims that defendants "discriminated" against him in violation of ERISA § 510, 29 U.S.C. § 1140, "when they designed, adopted, failed to amend . . . and now administer separate and discriminatory contribution and benefit structures for partners and non-partner employees under the RBAP and 401(k) Plans." (Cmplt. ¶ 177) This claim should be dismissed because ERISA § 510 does not apply to actions, such as those alleged here, by plan sponsors in the design and administration of a retirement plan. Even if plaintiff's factual allegations regarding alleged "discrimination" are accepted as true, "ERISA does not

mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits."  *Shaw v. Delta Air Lines, Inc.* 463 U.S. 85, 91 (1983).

ERISA § 510 makes it unlawful for an employer "to discharge, fine, suspend, expel, discipline, or discriminate against a [plan] participant or beneficiary for exercising any right to which he is entitled under [a benefit plan or this title] . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan [or this title]."  29 U.S.C. § 1140.  Plaintiff's selective quotation from the statute (*see* Cmplt. ¶ 176) omits key words such as "discharge," "fine," "suspend," "expel," and "discipline" that make clear that Section 510 targets retaliatory actions against an individual employee or those treating certain individual employees discriminatorily vis-a-vis other employees.  *See Hartline v. Sheet Metal Workers' Nat. Pension Fund*, 134 F. Supp. 2d 1, 18-19 (D.D.C. 2000).

Indeed, this has been the consistent interpretation of Section 510 adopted by the D.C. Circuit and numerous courts of appeals.   The D.C. Circuit has noted that ERISA's legislative history shows that Section 510 was "aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights."  *Andes v. Ford Motor Co.*, 70 F.3d 1332, 1338 (D.C. Cir. 1995), *quoting West v. Butler*, 621 F.2d 240, 245 (6th Cir. 1980).  This clearly stated statutory purpose has led several circuit courts to conclude that employees cannot bring a cause of action under ERISA § 510 alleging "discrimination" based solely on the *design* of a benefit plan.[23]  These

---

[23]  *See Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 510 (6th Cir. 2004) ("A plan sponsor's amendment of a plan to benefit one individual and its refusal to amend the plan to benefit another individual are not the kinds of discrimination prohibited by § 510."); *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan*, 24 F.3d 1491, 1502-04 (3d Cir. 1994) (finding no violation of ERISA § 510 where employer amended a plan to remove a life insurance component); *Owens v. Storehouse, Inc.*, 984 F.2d 394, 398 (11th Cir. 1993) ("It is insufficient merely to allege discrimination in the apportionment of benefits under the terms of the plan."); *McGath v. Auto-Body North*
(Continued…)

courts adhere to the general rule that "§ 510's prohibition against discrimination does not limit a plan sponsor's ability to design or amend a plan in any way it sees fit, so long as the sponsor does not reduce the participants' vested benefits." *See Coomer*, 370 F.3d at 510. Thus, the design of a plan does not, as a matter of law, implicate or violate ERISA § 510, even when that design or amendment allegedly prevents an employee from attaining a retirement benefit.

Plaintiff does not, and cannot, allege that PwC took any action targeting him as an individual. *See Andes*, 70 F.3d at 1336, 1338. To the contrary, plaintiff argues that PwC "discriminated" against him through the design and administration of benefit plans that provided more favorable benefits to partners than employees. (Cmplt. ¶¶ 176-177) Under the plain language of ERISA § 510, such allegations fail as a matter of law. *See Coomer*, 370 F.3d at 510, *McGath*, 7 F.3d at 668-70; *Haberern*, 24 F.3d at 1502-04. Plaintiff does not even claim that the design of the RBAP or 401(k) Plans deprived him of his *right* to benefits *under the Plan*. Rather, plaintiff maintains that it merely affected his benefit *level*. (*See* Cmplt. ¶¶ 177, 179) Such allegations are insufficient to support a cause of action under ERISA § 510. *See Fischer v. Philadelphia Elec. Co.*, 96 F.3d 1533, 1543 (3d Cir. 1996) (explaining that claims of discrimination under ERISA § 510 do not apply to "mere changes in the level of benefits"). For all these reasons, plaintiff's claim under ERISA § 510 should be dismissed.

## VII.    Count Nine Fails To State A Claim Because ERISA § 204(g) Does Not Apply Where A Plan Has Not Been Amended.

Plaintiff argues in Count Nine that the RBAP violates ERISA § 204(g), 29 U.S.C. § 1054(g), because of changes made to the menu of investment fund benchmarks available to participants under the RBAP. (Cmplt. ¶ 192) Plaintiff claims that each change in the selection

---

*Shore, Inc.*, 7 F.3d 665, 670 (7th Cir. 1993) ("Because the employer, as the settlor of the plan, had the right to change the plan's terms, [plaintiff] cannot claim that the alleged discriminatory injury flows from the plan amendments.").

of benchmarks resulted in a reduction of participants' accrued benefits in violation of ERISA. (Cmplt. ¶¶ 192-93)   ERISA § 204(g) states that a participant's accrued benefit "may not be decreased by *an amendment of the plan*." 29 U.S.C. § 1054(g)(l) (emphasis added); 26 U.S.C. § 411(d)(6).   Plaintiff's claim is fatally flawed because he has not, and cannot, allege that changes in the menu of investment benchmarks were ever made by amendments to the RBAP.

Rather than specifying any particular benchmarks or "investment measures" to be used in the Plan, the RBAP delegates the authority to select and deselect the funds made available to participants.  (Ex. C, RBAP § 2.14(a))  Thus, the Plan is not amended when the investment benchmarks are changed.  This is fatal to plaintiff's claims under ERISA § 204(g) since that provision only applies to changes resulting from "an amendment of the plan."

The D.C. Circuit has twice rejected claims under Section 204(g) where the changes complained of were not made by plan amendments.  *See Andes v. Ford Motor Company*, 70 F.3d 1332, 1334, 1336 (D.C. Cir. 1995) (rejecting plaintiff's attempt "to stretch the words 'amendment of the plan" and noting that "§ 204(g) is limited to actual amendments."); *Stewart v. National Shopmen Pension Fund*, 730 F.2d 1552, 1561 (D.C. Cir. 1984) ("Congress did *not* state that any change would trigger [§ 204(g)]; it stated that any change by *amendment* would do so . . .") (emphasis in original).  Because plaintiff's claim is not based on any amendments to the RBAP, Count Nine fails to state a claim for violation of Section 204(g) and should be dismissed.

## VIII.   Count Ten Fails To State A Claim For Breach Of Fiduciary Duty Under Any Section Of ERISA.

Count Ten purports to state a claim for breach of fiduciary duty based on RBAP fiduciaries' selection of investment measures and their alleged failure to "optimize benefits" for participants.  Like plaintiff's other claims, Count Ten fails to specify the section of ERISA under which he seeks relief.  But the Court can make that determination by process of elimination.

34

First, this count cannot be one for recovery of benefits due "under the terms of the plan" pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), because the RBAP does not specify any particular investment measure to which a participant has any entitlement. Indeed, plaintiff acknowledges that (1) the RBAP "does not have a guaranteed positive interest crediting rate" (Cmplt. ¶ 139), and (2) the RBAP "contains no required or even suggested standards" for the selection of investment measures (*id.* ¶ 78).

Nor does this count state a claim for relief under Section 502(a)(2), 29 U.S.C. § 1132(a)(2), which authorizes a participant to sue for relief under Section 409 of ERISA, 29 U.S.C. § 1109(a). Section 409(a) makes a fiduciary personally liable ***to the plan*** for breach of fiduciary duty. Count Ten does not seek any relief for the RBAP, but seeks relief only for plaintiff and members of the purported class. (Cmplt. ¶ 197) The Supreme Court has held that Section 409(a) authorizes relief only for the benefit of a plan, not for individual plan participants. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) (potential liability of the fiduciary under Section 409(a) is "to make good *to such plan* any losses to *the plan . . .* and to restore *to such plan* any profits of such fiduciary which have been made through use of assets *of the plan. . . .*") (emphasis in original); *see also In re Enron Corp. Sec. Deriv. & ERISA Lit.*, 284 F. Supp. 2d 511, 603 (S.D. Tex. 2003) (stating that Section 409(a) relief "may not flow directly to individual plan participants").

The only remaining basis for the relief sought in this count, therefore, is Section 502(a)(3), 29 U.S.C. § 1132(a)(3), which authorizes a participant to sue for "appropriate equitable relief." A plaintiff suing under Section 502(a)(3) may not obtain money damages or any other form of relief that seeks "to impose personal liability on the defendant." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214-15 (2002). *See also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255, 262 (1993); *Buckley Dement, Inc. v. Travelers Plan Administrators*

*of Illinois, Inc.,* 39 F.3d 784, 788 (7th Cir. 1994) (*"Mertens* does not allow legal damages to be included as recoverable 'appropriate equitable relief' authorized under § 502(a)(3).").

Plaintiff, who ceased participating in the RBAP over three years ago, has no standing to seek prospective injunctive or other equitable relief against any of the defendants. Any change in the RBAP's investment measures can only affect current participants with accounts that are continuing to accrue investment credits. Plaintiff cashed out of the RBAP in 2002, and thus is not such a participant. (Cmplt. ¶ 128) Past participants lack standing to sue for injunctive relief since they no longer face any threat of injury and would therefore obtain no relief from such an injunction. *See Impress Communications v. Unumprovident Corp.*, 335 F. Supp. 2d 1053, 1060 (C.D. Calif. 2003) (past participants cannot seek to enjoin defendants from making future misrepresentations because "they would obtain no relief from such an injunction and would thus have no standing to pursue it."); *Selby v. Principal Mut. Life Ins. Co.*, 197 F.R.D. 48, 64 (S.D.N.Y. 2000) (past participants "lack standing" to prohibit use of boilerplate language in denial letters since "they do not stand to benefit from this remedy"); s*ee also City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 104 (1983) (plaintiff lacks standing to obtain prospective injunctive relief when he cannot establish "a real and immediate" threat of future injury to himself). Plaintiff has not alleged any potential injury to himself warranting injunctive relief.

Although the relief available under Section 502(a)(3), 29 U.S.C. § 1132(a)(3), includes "equitable restitution," plaintiff has no such claim for relief. Courts have repeatedly held that equitable restitution under ERISA may be awarded only "to restore to the plaintiff particular funds or property in the defendant's possession." *Great-West Life & Annuity*, 534 U.S. at 214-15. *See also Mertens v. Hewitt Assocs.*, 948 F.2d 607, 612 (9th Cir. 1991), *aff'd*, 508 U.S. 248 (1993); *In re Enron Corp. Sec., Deriv & ERISA Litig.*, 284 F. Supp. 2d 511, 606 (S.D.

Tex. 2003).  The Complaint does not allege that any defendant misappropriated RBAP assets. Rather, the claim is that the RBAP's fiduciaries selected "investment measures" – "mutual funds" and the like – that "failed to optimize benefits" for plan participants.  (Cmplt. ¶¶ 79, 200)  This does not state a claim for equitable restitution.

In sum, Count Ten does not state a legally viable claim for plaintiff under any of ERISA's remedial provisions.  Accordingly, this count should be dismissed.

## IX.    Count Eleven Should Be Dismissed Because Plaintiff Lacks Standing To Assert A Claim To Recover Losses For The Benefit Of The Plans.

Count Eleven purports to seek relief on behalf of plaintiff, the RBAP and 401(k) Plans, and the class for breach of fiduciary duty based on investment of plan assets in allegedly "inappropriate and excessively costly investment vehicles."  (Cmplt. ¶¶ 204, 205)  In particular, plaintiff alleges that Plan fiduciaries (including PwC and the Administrative Committee) invested in "retail-priced mutual funds" rather than negotiating for asset management at much lower fees.[24]  (*Id*. ¶¶ 113, 114)  He also alleges that mutual funds had other "disadvantages" when compared to "dedicated, separately managed accounts" (*id*. ¶ 115), although they do not allege the plans actually suffered any harm as a result of those other "disadvantages."

Count Eleven should be dismissed, at the threshold, because plaintiff lacks standing to assert this claim.  Section 502(a)(2) of ERISA authorizes a "participant" to sue for breach of fiduciary duty to recover damages for the benefit of the plan.  29 U.S.C. § 1132(a)(2). A plaintiff's status as a participant is determined as of the time he files suit, not the time of the alleged breach.  *See*, *e.g.*, *Adamson v. Armco, Inc.*, 44 F.3d 650, 654 (8th Cir. 1995) (fact that

---

[24]   This allegation, which the Court ordinarily would accept as true on a motion to dismiss, is demonstrably false. As explained in a newsletter provided to RBAP participants, PwC does, in fact, negotiate for substantially lower fund management fees from the mutual funds in which plan assets are invested.  (*See* Ex. G, Autumn 2004 PwC Financial Well-Being Newsletter at 2-3)

plaintiff was a participant in the past does not support standing); *Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1534-35 (10th Cir. 1993) (ERISA "does *not* permit a civil action by someone who *was* a participant" at time of alleged violation) (emphasis in original); *Nahigian v. Leonard*, 233 F. Supp. 2d 151, 165, 167 (D. Mass. 2002) (same).

Generally, employees cease to be "participants" in a plan when they leave employment and accept payment of everything due them in a lump sum and are no longer earning any right to future benefits. *See*, *e.g.*, *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 952 (6th Cir. 1990). Courts have applied a narrow exception to that rule where a former participant can allege that he has a "colorable claim to vested benefits." *See*, *e.g.*, *Panaras v. Liquid Carbonic Ind. Corp.*, 74 F.3d 786, 790-91 (7th Cir. 1996).[25] That exception, however, does not give plaintiff standing in this case.

First, as discussed above, each of plaintiff's claims seeking benefits he claims are owed him under the RBAP is subject to dismissal because (1) it is barred by the applicable statute of limitations, and (2) it fails to state a legally sufficient claim upon which relief can be granted. Accordingly, plaintiff has not established that he has any colorable claim for benefits. *See*, *e.g.*, *Adamson*, 44 F.3d at 654-55 (holding that where former participant's claims for benefits were time-barred, plaintiff lacked standing to assert claim for breach of fiduciary duty because he had no "colorable claim" for vested benefits).[26]

Second, even if plaintiff could assert that he has a "colorable claim to vested benefits," his standing would be limited to any claim *seeking to recover such benefits*, which

---

[25] Courts applying this exception have done so by extending the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), which did not involve the issue of standing to pursue remedies under ERISA. The Supreme Court in that case held that, for purposes of the right to obtain plan information pursuant to ERISA, a person with a colorable claim to benefits or a reasonable expectation of returning to employment should be deemed a "participant" for purposes of 29 U.S.C. § 1024(b)(4). *Id.* at 116-18.

[26] Plaintiff's claim in Count Ten should be dismissed for lack of standing for the same reason.

Count Eleven does not seek to do.  The claim in Count Eleven does not allege that the Plan fiduciaries' investment of plan assets in mutual funds had any impact on plaintiff's benefits due under the RBAP or 401(k) Plans.  Nor have defendants found any authority in which a court has upheld standing for a former participant seeking to recover damages *for the benefit of a plan* under Section 502(a)(2), 29 U.S.C. § 1132(a)(2).  Accordingly, plaintiff lacks standing to assert this claim for breach of fiduciary duty.  *See Crawford v. Lamantia*, 34 F.3d 28, 31-33 (1st Cir. 1994) (former employee lacked standing to bring fiduciary duty claim for benefit of plan under Section 502(a)(2) because complaint failed to show that alleged breach of fiduciary duty had "a direct and inevitable effect on *his* benefits") (emphasis in original).

## <u>CONCLUSION</u>

For the reasons stated above, each count of plaintiff's complaint should be dismissed.

Dated:  July 29, 2005

Respectfully submitted,


BY  /S/ DAVID E. MENDELSON
David E. Mendelson (471863)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005-5793
(202) 879-5000 (phone)
(202) 879-5200 (fax)
dmendelson@kirkland.com

Robert J. Kopecky
Douglas G. Smith
Jason W. Callen
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000

*Counsel for defendants
PricewaterhouseCoopers LLP,
PricewaterhouseCoopers LLP Board of
Partners and Principals, the Retirement
Benefit Accumulation Plan for Employees of
PricewaterhouseCoopers LLP, the Savings
Plan for Employees and Partners of
PricewaterhouseCoopers LLP, the Savings
Plan for Employees of
PricewaterhouseCoopers LLP, the
Administrative Committee to the Retirement
Benefit Accumulation Plan for Employees of
PricewaterhouseCoopers LLP, the
Administrative Committee to the Savings Plan
for Employees and Partners of
PricewaterhouseCoopers LLP, and the
Administrative Committee to the Savings Plan
for Employees of PricewaterhouseCoopers
LLP*