# Ex. C

Civil Action No. 05-1291

## (PLF)

*RETIREMENT BENEFIT ACCUMULATION PLAN*
*FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP*

As Amended and Restated
Effective July 1, 1995

Ex. C
Civil Action No. 05-1291
(PLF)

*RETIREMENT BENEFIT ACCUMULATION PLAN*
*FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP*

**TABLE OF CONTENTS**

**ARTICLE 1**   **PURPOSE AND APPLICABILITY OF PLAN** .......................... 3
   1.1   Purpose of Plan ............................................................. 3
   1.2   Applicability of Plan ....................................................... 3

**ARTICLE 2**   **DEFINITIONS** ............................................................ 4
   2.1   Accrued Benefit ............................................................. 4
   2.2   Actuarial Equivalent ....................................................... 4
   2.3   Actuary ...................................................................... 4
   2.4   Adoption Agreement ......................................................... 4
   2.5   Administrative Committee .................................................... 5
   2.6   Affiliated Employer ......................................................... 5
   2.7   Beneficiary .................................................................. 5
   2.8   Benefit ...................................................................... 6
   2.9   Break in Service ............................................................ 6
   2.10  Code ......................................................................... 6
   2.11  Compensation ................................................................ 6
   2.12  Computation Period .......................................................... 8
   2.13  Deemed Account Balance ...................................................... 8
   2.14  Deemed Investment Experience ................................................ 9
   2.15  Deemed Payroll Period Allocation ........................................... 10
   2.16  Deemed Plan Interest Rate .................................................. 14
   2.17  Director .................................................................... 15
   2.18  Earned Income .............................................................. 15
   2.19  Effective Date ............................................................. 16
   2.20  Eligible Employee .......................................................... 16
   2.21  Employee .................................................................... 16
   2.22  Employer .................................................................... 18
   2.23  Employer Contributions ..................................................... 19
   2.24  Entry Date .................................................................. 19
   2.25  ERISA ....................................................................... 20
   2.26  Fiduciary ................................................................... 20
   2.27  Firm ........................................................................ 20
   2.28  Highly Compensated Employee ................................................ 20
   2.29  Hour of Service ............................................................ 24
   2.30  Investment Manager ......................................................... 26
   2.31  Leased Employee ............................................................ 26
   2.32  Normal Retirement Age ...................................................... 27
   2.33  Normal Retirement Benefit .................................................. 27
   2.34  Participant ................................................................. 27

2.35  Plan ................................................................................................... 27
2.36  Plan Administrator ............................................................................. 27
2.37  Plan Year ........................................................................................... 27
2.38  Policy Board ....................................................................................... 28
2.39  Qualified Joint and Survivor Annuity ............................................... 28
2.40  Qualified Pre-Retirement Survivor Annuity ...................................... 28
2.41  Spouse ............................................................................................... 28
2.42  State ................................................................................................... 28
2.43  Trust .................................................................................................. 29
2.44  Trustee ............................................................................................... 29
2.45  Valuation Date ................................................................................... 29
2.46  Year of Service .................................................................................. 30

ARTICLE 3          ELIGIBILITY AND YEARS OF SERVICE ...................... 34
3.1  Eligibility Requirements ...................................................................... 34
3.2  Cessation of Eligibility ........................................................................ 34
3.3  Eligible Employees .............................................................................. 34

ARTICLE 4          CONTRIBUTIONS ........................................................ 38
4.1  Employer Contributions ...................................................................... 38
4.2  Form of Employer Contributions ........................................................ 38
4.3  No Participant Contributions .............................................................. 38

ARTICLE 5          RETIREMENT BENEFITS ........................................... 39
5.1  Normal Retirement Benefit .................................................................. 39
5.2  Payment of Benefits ............................................................................ 41
5.3  Qualified Joint and Survivor Annuity ................................................. 43
5.4  Optional Forms .................................................................................... 45
5.5  Method of Payment of Benefit ............................................................ 46
5.6  Distribution Procedures ...................................................................... 47
5.7  Death of the Participant ...................................................................... 49
5.8  Designation of Beneficiary .................................................................. 51
5.9  Distribution Only Upon Written Instructions and Release for Payment ................ 53
5.10  Direct Rollover .................................................................................. 53
5.11  Distribution for Minor or Incompetent Beneficiary ........................... 55
5.12  Location of Participant or Beneficiary Unknown .............................. 56

ARTICLE 6          VESTING ....................................................................... 57
6.1  Employer Contributions ...................................................................... 57
6.2  Amendments Affecting Benefits .......................................................... 59

ARTICLE 7          LIMITATIONS ON BENEFITS ..................................... 60
7.1  General Limit ....................................................................................... 60
7.2  Adjustment to Limits ........................................................................... 60
7.3  Definitions ........................................................................................... 62
7.4  Definitions ........................................................................................... 67

ARTICLE 8        PLAN LOANS ................................................................ 75
    8.1    Loans to Participants ........................................................ 75

ARTICLE 9        TOP-HEAVY ................................................................ 76
    9.1    Applicability of Top Heavy Rules ........................................ 76
    9.2    Top Heavy Status ............................................................ 76
    9.3    Minimum Accrued Benefit ................................................ 79
    9.4    Vesting Requirement and Schedule .................................... 80
    9.5    Definitions ..................................................................... 81

ARTICLE 10       ADMINISTRATION ....................................................... 83
    10.1   Duties and Responsibilities of Fiduciaries;
           Allocation of Fiduciary Responsibility .............................. 83
    10.2   Powers and Responsibilities of the Plan
           Administrator ................................................................ 83
    10.3   Allocation of Duties and Responsibilities ........................... 86
    10.4   Appointment of the Plan Administrator ............................. 86
    10.5   Expenses ....................................................................... 87
    10.6   Claim Procedure ............................................................ 87

ARTICLE 11       TRUST FUND; POWERS, DUTIES AND IMMUNITIES OF
                 TRUSTEE .................................................................... 90
    11.1   Receipt of Contributions by Trustee .................................. 90
    11.2   Investment Responsibility ................................................ 90
    11.3   Appointment of Investment Manager ................................. 90
    11.4   No Prohibited Transaction ............................................... 90
    11.5   Duties of Trustee Concerning Contributions ....................... 90
    11.6   Distribution of Benefits by the Trustee .............................. 91
    11.7   Contributions Held in Trust ............................................. 91
    11.8   Investment of Trust Fund ................................................ 92
    11.9   Powers and Duties of Trustee ........................................... 93
    11.10  Application of Trust Funds .............................................. 96
    11.11  Litigation ..................................................................... 96
    11.12  Accounting by Trustee .................................................... 96
    11.13  Reliance on Written Instructions ...................................... 97
    11.14  Disputes ....................................................................... 97
    11.15  Duties of Trustee Limited ................................................ 97
    11.16  Notices to Trustee .......................................................... 97
    11.17  Notices to Employer or Participants .................................. 98
    11.18  Resignation, Removal and Appointment of Trustee .............. 98
    11.19  No Diversion of Trust ..................................................... 99

ARTICLE 12       INDEMNIFICATION OF FIDUCIARIES ............................. 100
    12.1   Rights To Indemnification ............................................. 100
    12.2   Advancement of Expenses .............................................. 100
    12.3   Determination of Right to Indemnity ............................... 101
    12.4   Other Rights ................................................................ 102

**ARTICLE 13**        **PARTICIPATING EMPLOYERS** ..................................103
    13.1   Adoption by Other Employers ..................................103
    13.2   Adoption of Plan and Trust by Affiliated
        Employer..................................103
    13.3   Designation of Agent ..................................103
    13.4   Amendment..................................104
    13.5   Discontinuance of Participation ..................................104
    13.6   Plan Administrator's Authority ..................................104

**ARTICLE 14**        **CHANGE IN EMPLOYMENT** ..................................105
    14.1   Participant Transfer from Employer to Employer ..................................105
    14.2   Participant Transfer from Employer to Affiliated
        Non-Employer..................................105
    14.3   Employee Credit for Services With Affiliated Non-
        Employer..................................105

**ARTICLE 15**        **AMENDMENT, TERMINATION AND MERGER** ..................................106
    15.1   Establishment of Plan ..................................106
    15.2   Power of Amendment ..................................106
    15.3   Failure of Plan to Qualify Upon Amendment..................................106
    15.4   Termination..................................106
    15.5   Merger, Consolidation, or Transfer..................................108
    15.6   Limitation of Benefits ..................................108

**ARTICLE 16**        **MISCELLANEOUS** ..................................110
    16.1   Exclusive Benefit of Participants and
        Beneficiaries ..................................110
    16.2   Nonguarantee of Employment ..................................111
    16.3   Rights to Trust Assets ..................................111
    16.4   Nonalienation of Benefits ..................................112
    16.5   Bonding..................................112
    16.6   Construction..................................113
    16.7   Discretionary Acts To Be Non-Discriminatory ..................................113
    16.8   Titles and Headings..................................113
    16.9   Counterparts ..................................114
    16.10  USERRA ..................................114

**APPENDICES**
    **APPENDIX A**..................................116
    **APPENDIX B**..................................118
    **APPENDIX C**..................................172
    **APPENDIX D**..................................174

## RETIREMENT BENEFIT ACCUMULATION PLAN
## FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP

AGREEMENT, effective, as of the first day of June 1954, by and between Coopers & Lybrand LLP (the "Firm"), and, as of the first day of July 1994, by and between Price Waterhouse LLP (the "Firm"), and, as of the first day of July 1998, by and between PricewaterhouseCoopers LLP (the "Firm"), a partnership with its principal office in New York, NY, and the Trustees.

### WITNESSETH

WHEREAS, effective as of the first day of June 1954, Coopers & Lybrand LLP adopted this defined benefit pension plan, as the Coopers & Lybrand Retirement Plan (the "Plan"), and, effective as of the first day of July 1998, PricewaterhouseCoopers LLP adopted this Plan, as the Coopers & Lybrand Retirement Plan; and

WHEREAS, effective as of the first day of July 1994, Price Waterhouse LLP adopted a defined benefit pension plan, as the Retirement Benefit Accumulation Plan for Employees of Price Waterhouse LLP (the "PW Plan") and, effective as of the first day of July 1998, PricewaterhouseCoopers LLP adopted the PW Plan, as the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (the "RBAP"); and

WHEREAS, effective as of the first day of July 1999, the RBAP was merged into this Plan

1

and this Plan was amended and restated to conform to the terms of the RBAP and renamed as the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP; and

WHEREAS, it is intended that this Plan meet the requirements of Sections 401 and 501 of the Internal Revenue Code of 1986, as amended; and

WHEREAS, this Plan must be amended to reflect changes in the law and for other purposes.

NOW, THEREFORE, it is agreed that, effective as of the first day of July 1995, the Firm hereby amends and restates this Plan, to read as follows:

# ARTICLE 1

# PURPOSE AND APPLICABILITY OF PLAN

1.1  Purpose of Plan.  The purpose of the Plan shall be to provide benefits to Participants and their Beneficiaries upon retirement, death, and termination of employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, under the terms and conditions, and subject to the limitations, contained herein.

1.2  Applicability of Plan.  The provisions of the Plan shall apply only to persons employed by the Employer on and after its Effective Date or the effective date of any amendment hereto.

# ARTICLE 2

## DEFINITIONS

The following words and phrases when used herein shall have the meanings set forth below unless a different meaning is plainly required by the context.

2.1  Accrued Benefit.  For any Participant as of any date, the Participant's Deemed Account Balance credited to that date.

2.2  Actuarial Equivalent.  A benefit having the same present value as the benefit which it replaces using the Deemed Plan Interest Rate that is applicable for the Plan Year with respect to which such determination is made and the mortality table set forth in Rev. Rul. 95-6, or any successor table designated by the Commissioner of the Internal Revenue Service for purposes of Section 417(e) of the Code.  Effective for Benefit Commencement Dates on or after December 31, 2002, the mortality table set forth in Rev. Rul. 2001-62 shall replace the mortality table set forth in Rev. Rul. 95-6.

2.3  Actuary.  An individual enrolled by the Joint Board for the Enrollment of Actuaries who performs actuarial services and related computations for the Plan.

2.4  Adoption Agreement.  The form prescribed by the Firm pursuant to which an Affiliated Employer adopts the Plan.

4

2.5  Administrative Committee. A committee consisting of not less than three nor more than six members to be appointed by and to serve at the pleasure of the Board of Partners and Principals (prior to July 1, 1998, the Policy Board). Vacancies in the Administrative Committee shall be filled by the Board of Partners and Principals.

2.6  Affiliated Employer. The Firm and any corporation which is a member of a controlled group of corporations (as defined in Section 414(b) of the Code) which includes the Firm; any trade or business (whether or not incorporated) which is under common control (as defined in Section 414(c) of the Code) with the Firm; any service organization (whether or not incorporated) which is a member of an affiliated service group (as defined in Section 414(m) of the Code) which includes the Firm; and any other entity required to be aggregated with the Firm pursuant to regulations under Section 414(o) of the Code.

2.7  Beneficiary. A Participant's Spouse, or in the event that the Participant is not married or the Participant's Spouse has properly executed a Spousal Consent in accordance with Section 5.8(a), the person(s) or entity designated by the Participant in accordance with Section 5.8(b) to receive any Benefit payable under the Plan upon or after the Participant's death. Effective as of August 1, 1997, after a Participant's death and prior to commencement of any distribution of benefits under the Plan, the Beneficiary designated by the Participant may disclaim receipt of such benefit in favor of another individual or entity, subject to receipt by, and such procedures for, such disclaimer as may be required

5

by the Administrative Committee. Prior to accepting a disclaimer by a Beneficiary, the Administrative Committee may require such additional documents or other items, or such actions, as in its sole judgment it deems appropriate. No disclaimer by a Beneficiary may result in a distribution of benefits to the individual or entity in whose favor such disclaimer is made in a form that could not have been elected by the Participant had the Participant designated such individual as his or her beneficiary instead of the Beneficiary.

2.8 <u>Benefit</u>. The vested and nonforfeitable interest of a Participant in his or her Accrued Benefit, as determined under Article 6.

2.9 <u>Break in Service</u>. A Computation Period during which a Participant does not complete more than five hundred (500) Hours of Service.

2.10 <u>Code</u>. The Internal Revenue Code of 1986, as amended from time to time, or any successor statute.

2.11 <u>Compensation</u>.

(a) For purposes of a Deemed Payroll Period Allocation under the Plan based on Compensation, Compensation shall include the remuneration for services rendered which is paid by the Employer to or for an Employee during a Plan Year in which the Employee is a Participant in the Plan which is includible in income for Federal income tax purposes (Form W-2 income); provided, however, that Compensation shall not include any of the following items (even if includible in gross income): reimbursements or other expense

6

allowances, fringe benefits (cash and noncash), moving expenses, deferred compensation (other than any pre-tax contributions made, as permitted by Section 401(k) of the Code, to the Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP and the Savings Plan for Employees of PricewaterhouseCoopers LLP), sign-on and referral bonuses, and welfare benefits. Compensation shall include wages, salary, overtime, commissions, bonuses (other than sign-on and referral bonuses), and severance pay, and other amounts received (without regard to whether an amount is paid in cash) for personal services actually rendered in the course of employment with the Employer, and any other amounts not currently includible in income under Section 125 of the Code pursuant to a salary reduction agreement, and any qualified transportation benefit not currently includable in income under Section 132(f)(4) of the Code. For a Participant who is on a LINT, LMIP, or LTIP leave of absence, Compensation shall be his or her United States home-office annual salary. Compensation for a self-employed individual shall be equal to his or her Earned Income. Compensation shall be determined based on the period the Employee is a Participant in the Plan. For Plan Years ending prior to July 1, 1997, in determining the Compensation of an Employee, the rules of Section 414(q)(6) of the Code shall apply, except that in applying such rules, the term "family" shall include only the Spouse of the Employee and any lineal descendants of the Employee who have not attained age nineteen (19) before the close of the Plan Year.

(b) For purposes of the limit on benefits under Section 415 of the Code, Compensation shall be as defined under Section 7.3(g) of the Plan.

(c) The maximum amount of Compensation that may be taken into account for any purpose is $150,000, as adjusted by the Secretary of the Treasury to reflect cost of

7

living increases. For Plan Years beginning after January 1, 2002, the maximum amount of Compensation that may be taken into account for any purpose is $200,000, as adjusted by the Secretary of the Treasury to reflect cost of living increases.

2.12 Computation Period. The twelve consecutive month period commencing each October 1 and ending the immediately following September 30.

2.13 Deemed Account Balance. For each Participant, the Participant's Deemed Payroll Period Allocations to date, as increased or decreased to reflect his or her Deemed Investment Experience in accordance with the following:

(a) On any day of the Plan Year other than on a Valuation Date, the value of a Participant's Deemed Account Balance shall equal its value (following the application of Section 2.13(b)) on the immediately preceding Valuation Date; and

(b) On each Valuation Date, the value of a Participant's Deemed Account Balance shall equal its value as adjusted on the immediately preceding Valuation Date increased or decreased to reflect his or her Deemed Investment Experience since the immediately preceding Valuation Date; provided, however, that if a Participant has received distribution(s) under the Plan, his or her Deemed Account Balance shall be decreased by the amount of any such distribution(s) since the immediately preceding Valuation Date prior to increasing or decreasing the Participant's Deemed Account Balance by his or her Deemed Investment Experience; and, further provided, that at such time as the payment of a Participant's Benefit in the form of an annuity commences, his or her Deemed Account Balance shall be reduced to zero.

8

"Deemed Account Balance" as used herein is only for recordkeeping purposes and it does not signify an individual account, and no Plan contributions are allocated for the benefit of any individual Participant's Deemed Account Balance. The Deemed Account Balance is a recordkeeping entry maintained by the Plan. For purposes of distributing a Participant's (other than a Partner's or Principal's) Benefit, his Deemed Account Balance shall be not less than $7,000 (reduced by any amount previously distributed with respect to the Participant and by the lump sum present value equivalent of the Participant's annual retirement income, if any, under Appendix B), provided that he was an active Participant (designated by Employment Status Code A, and excluding inactive Participants designated by Employment Status Codes P or L) in the Plan (1) on July 1, 2000, and (2) on March 7, 2002, other than a Participant employed by the Employer on March 7, 2002 in connection with PricewaterhouseCoopers Consulting (Line of Service Code USA05) or certain units of Business Process Outsourcing (Company Code BAM). The preceding sentence shall not affect in any way whatsoever the determination, under Article 6 of the Plan, whether a Participant has a vested and nonforfeitable right to his Accrued Benefit.

2.14 Deemed Investment Experience.

(a) An increase or decrease to a Participant's Deemed Account Balance in accordance with his or her investment experience election from among the choices prescribed by the Administrative Committee. An investment experience election shall be made by a Participant to the Plan Administrator in writing (or telephonically, or in any other form approved by the Plan Administrator), subject to such rules and procedures as the Plan Administrator shall prescribe and apply in a nondiscriminatory manner. In the absence of such investment experience election, the Plan Administrator shall increase or

9

decrease a Participant's Deemed Account Balance at the rate earned by the money market mutual fund that is among the investment experience choices prescribed by the Administrative Committee. Each Participant's Deemed Account Balance shall be adjusted to reflect his or her Deemed Investment Experience in the same manner as if the Deemed Account Balance were actually invested pursuant to the Participant's investment experience election and as if each Deemed Payroll Period Allocation were actually an allocation made to an account for the Participant.

(b) Form of Election. An investment experience election shall be made by a Participant to the Plan Administrator in writing on a form prescribed by the Plan Administrator (or telephonically, or in any other form approved by the Plan Administrator). Such form shall provide an acknowledgment by the Participant that he or she is solely responsible for any and all adjustments to his or her Deemed Account Balance as a consequence of his or her investment experience election. Any investment experience election shall remain in effect as prescribed by rules established by the Plan Administrator. Upon acceptance, the Plan Administrator shall provide the Participant with written confirmation (or telephonically, or in any other form approved by the Plan Administrator) of the Participant's investment experience election.

(c) Frequency of Election. Each Participant shall be permitted to change his or her direction of future Deemed Investment Experience under his or her Deemed Account Balance or to reallocate the amounts credited to his or her Deemed Account Balance among the available choices under the Plan as of each Valuation Date.

2.15 Deemed Payroll Period Allocation. For Participants other than Partners or

Principals, an amount equal to five percent (5%) of the Compensation paid to a Participant on a monthly, semimonthly, biweekly, weekly, or other periodic basis in accordance with the Participant's payroll period, except that a Participant who is a Director shall have an amount equal to seven percent (7%) of the Compensation paid to such Participant substituted for five percent (5%). For the Plan Year ending June 30, 1995, for Participants other than Partners or Principals, an amount equal to three percent (3%) of Compensation for Participants other than Directors and five percent (5%) of Compensation for Directors shall be the Deemed Payroll Period Allocation in accordance with the Participant's payroll period and the balance of two percent (2%) shall be a Deemed Payroll Period Allocation on or before June 30, 1995 for any Participant who received a Deemed Payroll Period Allocation in accordance with his or her payroll period during such Plan Year. For Plan Years beginning after June 30, 1995 and ending prior to July 1, 1997, a Director shall be allocated 0, except for a Director who is a Participant pursuant to Section 3.3(7). For Participants who are Partners or Principals: for Plan Years ending prior to July 1, 1998, an amount equal to the product of the Share Ratio for the Plan Year and the Unadjusted Allocation; and, for Plan Years beginning after June 30, 1998, an amount equal to the Unadjusted Allocation including for Plan Years beginning on and after July 1, 2001 Limited Equity Partners and Limited Equity Principals. For the Plan Year ending June 30, 1995, no Deemed Payroll Period Allocation shall be made for a Partner or Principal who ceased to be an Employee prior to June 1, 1995. For the Plan Year beginning July 1, 1999 and ending June 30, 2000, a Partner or Principal who (1) ceases to be active prior to October 1, 1999, and (2) was a partner or principal of Coopers & Lybrand L.L.P. on June 30, 1998 shall have no Deemed Payroll Period Allocations for such Plan Year. For the

11

Plan Year beginning July 1, 2002, no Deemed Payroll Period Allocation shall be made for a Participant who is a Partner or Principal if, prior to July 1, 2002, such Participant is on the list of Partners and Principals who are anticipated to cease to be active with the Employer during such Plan Year in connection with the disposition by the Employer of its PricewaterhouseCoopers Consulting business; provided, however, that if such Participant (A) terminates his employment with such Consulting business (or its successor) within thirty days of an initial public offering of shares in such Consulting business (or its successor) and (B) thereupon commences receipt of benefits under the Partner Retirement Plan, then a Deemed Payroll Period Allocation shall be made for such Plan Year as of such date that such participant terminates his employment with such Consulting business (or its successor). If a Participant, who is on the list of Partners and Principals who are anticipated to cease to be active with the Employer, does not cease to be active with the Employer in connection with such disposition, then his Deemed Payroll Period Allocation for such Plan Year shall be made as of the later of July 1, 2002 and the date of an initial public offering of shares in such Consulting business (or its successor). For the Plan Year ending June 30, 1996, a Partner or Principal's Deemed Payroll Period Allocation shall be made as of such dates as are paid, and in the proportion that the Deemed Payroll Period Allocation for the Plan Year bears to, the end of year distributions that the Partner or Principal receives for the fiscal year of the Employer ending June 30, 1996. For Plan Years ending June 30, 1997 and June 30, 1998, a Partner or Principal's Deemed Payroll Period Allocation shall be made as of August 31 following the last day of such Plan Year, and for Plan Years thereafter, the Deemed Payroll Period Allocation shall be made not later than July 15 following the last day of a Plan Year. For Plan Years ending prior to July 1,

12

1999, the Deemed Payroll Period Allocation otherwise described in this Section 2.15 shall

be reduced for a Participant who is a Partner or Principal, to the extent necessary, so that

the Earned Income of the Partner or Principal shall not be less than the maximum amount

of compensation that may be taken into account under Section 401(a)(17) of the Code for

the Plan Year for which a Deemed Payroll Period Allocation is made. Prior to April 1,

2000, in the case of a Partner or Principal who ceases to be active prior to July 15

following a Plan Year (August 31 for the Plan Years ending June 30, 1997 and June 30,

1998), any remaining Deemed Payroll Period Allocation with respect to such Plan Year

shall be made as of the last day of the calendar month in which the Partner or Principal

ceases to be active. After March 31, 2000, any remaining Deemed Payroll Period

Allocation for a Plan Year for a Partner or Principal who ceases to be active and must

maintain independence from the Employer, under any standard imposed by any

international, federal or state regulatory agency or professional association, shall be made

for such Partner or Principal on the date of his withdrawal from the Employer. In the case

of a Partner or Principal who ceases to be active during a Plan Year (other than in a

situation where independence must be maintained), any remaining Deemed Payroll Period

Allocation with respect to such Plan Year shall be made upon the earlier of (A) the last

business day of the month following the month during which the Partner or Principal

retires or his settlement check is issued by the Employer, or (B) such date Deemed Payroll

Period Allocations are made for Partners and Principals who did not cease to be active

during that Plan Year. For Plan Years beginning on or after July 1, 1997 and prior to July

1, 2001, the Deemed Payroll Period Allocation for a Participant who is a Limited Equity

Partner or Limited Equity Principal shall be an amount equal to ten percent (10%) of the

13

Compensation paid to such Participant as if such Compensation for a Plan Year were paid on a monthly basis. For Plan Years beginning on or after July 1 1997, an Employee (who is a Partner or Principal or who is engaged as an Employee pending confirmation as a Partner or Principal) who has not previously been an eligible employee under another plan of the Employer (including a terminated plan) shall make a one-time irrevocable election, at the time the Employee first satisfies the eligibility requirements under any plan of the Employer, whether to (1) not be a Participant in the Plan, (2) have a Hypothetical Accrual determined under Section 7.4(e)(i) of the Plan, or (3) have a Hypothetical Accrual determined under Section 7.4(e)(ii) of the Plan. A Deemed Payroll Period Allocation for a Participant who is a Partner or Principal shall be limited to such Partner's or Principal's Earned Income, as described in Section 404(a)(8)(C) of the Code (including for any Plan Year for which a deduction is not taken by the Employer under Section 404 of the Code). No Deemed Payroll Period Allocation shall be made for an individual for any period after such individual's Accrued Benefit is distributed and rolled over by or on behalf of such individual to the Retirement Plan for Employees of PricewaterhouseCoopers LLP pursuant to Section 6.3D of such Plan.

2.16 <u>Deemed Plan Interest Rate</u>. The annual rate of interest for an annuity commencement date in a Plan Year equal to the interest rate on 30-year Treasury securities, as specified by the Commissioner of the Internal Revenue Service, for the month of May immediately preceding such Plan Year. Effective July 1, 2001 and Plan Years thereafter, the annual rate of interest for an annuity commencement date in a Plan Year equal to the interest rate on 30-year Treasury Securities, as specified by the Commissioner of the Internal Revenue Service, for the month of February immediately preceding such Plan

Year. However, only for the Plan Year commencing July 1, 2001, the Deemed Plan Interest Rate shall be equal to the rate specified for February 2001 or May 2001, whichever produces the largest Benefit.

2.17 Director. A client-service Employee who has a job code of 23, 26 (Managing Director Part-time Salaried), 27 (Managing Director Hourly), 41, 42, 44, 45, 46, 47, 48, 49 or 50 (Client Service Director), and effective July 1, 1997 a client-service Employee who has a job code of 7A, 7B, 7C, 7D, 7E, 7F, 7G, 7H, or 7J, and effective July 1, 1999 a client-service Employee who has a job code of C25 (which is equivalent to legacy Coopers & Lybrand L.L.P. staff classes 9225 or 25), or a practice-support Employee who has a a job code of 24 (with a pay grade of 15, 16, 17 or 18).

2.18 Earned Income. Net earnings from self-employment to the extent such earnings constitute compensation for personal services actually rendered to the Employer's business (except as otherwise required by Section 401(c)(2) of the Code), determined without regard to items not included in gross income and the deductions allowable to such items. Net earnings from self-employment are reduced by contributions to this Plan and any other qualified plan to the extent deductible under Section 404 of the Code, and by the deduction allowed by Section 164(f) of the Code (allowing a deduction for the self-employment tax). Effective only for the Plan Year commencing July 1, 1998 and ending June 30, 1999, references in Section 2.15 of the Plan to Earned Income and in Section 3.3(9) to self-employment income shall be read as referring to "financial statement income for the fiscal year ending June 30, 1999".

15

2.19 <u>Effective Date</u>. July 1, 1994. For an Affiliated Employer, other than the Firm, the effective date set forth in its Adoption Agreement.

2.20 <u>Eligible Employee</u>. Any Employee who meets the requirements of Section 3.3.

2.21 <u>Employee</u>. Any individual employed by the Employer. Employees shall also include:

(a) <u>Controlled Groups, etc</u>. An individual employed by an Affiliated Employer shall be considered an Employee of the Employer.

(b) <u>Leased Employees</u>. Any Leased Employee shall be considered an Employee. Contributions or benefits provided to such Leased Employee by the leasing organization for services rendered for the Employer shall be considered made by the Employer.

(c) <u>Partners</u>. Any individual reported as a Partner on the Employer's Federal income tax return shall be considered an Employee for purposes of this Plan. Partner shall also include partner-equivalent employees of an incorporated Employer. Effective July 1, 1998 and thereafter, any individual who (1) has signed the Partners and Principals Agreement dated July 1, 1998 between the Firm and the Partners and Principals and who is designated as a Partner of the Firm; (2) is admitted as a Partner of the Firm; or, (3) signed the Restated Agreement with respect to Price Waterhouse LLP dated as of January 15, 1997 as a Limited Equity Partner (as that term is defined in the Restated Agreement) shall be considered an Employee for purposes of this Plan.

16

(d)     <u>Principals</u>.  Any individual who (1) on his behalf has signed the Agreement, made as of July 1, 1979, between the Firm and the Principals (as that term is defined in that Agreement), as such Agreement may from time to time be amended, or (2) who prior to July 1, 1979 signed an Agreement with Principal shall be considered an Employee for purposes of this Plan.  Effective July 1, 1998 and thereafter, any individual who (1) has signed the Partners and Principals Agreement dated July 1, 1998 between the Firm and the Partners and Principals and who is designated as a Principal of the Firm; (2) is admitted as a Principal of the Firm; or, (3) signed the Restated Agreement with respect to Price Waterhouse LLP dated as of January 15, 1997 as a Limited Equity Principal (as that term is defined in the Restated Agreement) shall be considered an Employee for purposes of this Plan.

(e)     <u>Limited Equity Partner</u>.  Any individual who has signed the Restated Agreement with respect to Price Waterhouse LLP dated as of January 15, 1997, as such Agreement may be amended from time to time (the "Restated Agreement") as a Limited Equity Partner (as that term is defined in the Restated Agreement) shall be considered an Employee for purposes of this Plan.  Limited Equity Partner shall also include a Limited Equity Partner who is on a LPIP leave of absence.  After June 30, 1998, this subsection (e) is deleted.

(f)     <u>Limited Equity Principal</u>.  Any individual who has signed the Restated Agreement as a Limited Equity Principal (as the term is defined in the Restated Agreement) shall be considered an Employee for purposes of this Plan.  Limited Equity Principal shall also include a Limited Equity Principal who is on a LPIP leave of absence.  After June 30, 1998, this subsection (f) is deleted.

17

2.22 Employer. The Firm and each Affiliated Employer which adopts the Plan by entering into an Adoption Agreement. The Employer shall also include any successor to an Affiliated Employer whether by merger, purchase of assets, or otherwise, which, with the consent of the Firm, enters into an Adoption Agreement. The Employer shall include any successor to the Firm, whether by merger, purchase of assets, or otherwise, which adopts the Plan. When used with reference to an Employee or Participant, the term shall mean the Employer employing the Employee or Participant. For purposes of satisfying the vesting requirements of Section 6.1, an individual's Hours of Service with Continental Bank Corporation, Cyprus Amax, Cytrol Incorporated, effective July 1, 1996 TIG Insurance Company and prior related employers and McKenna & Company, effective November 1, 1996 The Rogers Alliance, Inc., effective January 1, 1998 Westbrook Partners LLC, and effective July 1, 1998 Applied Decision Analysis, Inc. shall be considered Hours of Service with the Employer based upon the equivalencies set forth in Section 2530.200b-3(e) of the Department of Labor Regulations. For purposes of satisfying the vesting requirements under the Plan, Hours of Service for employment: on or after July 1, 1997 and prior to July 1, 1998 for any Price Waterhouse firm listed under "European Area" in Schedule 1 to the Cooperation Agreement dated As Of September 30, 1997, among certain Price Waterhouse firms (as such Schedule may be amended from time to time), whether as a "Firm", "Specified Subsidiary" or "Connected Firm" as defined therein (collectively, the "PWE Firms"; and collectively with the Firm and all its Affiliated Employers, the "PW Firms"); and, on or after January 1, 1998 and prior to July 1, 1998 for Price Waterhouse Canada and Price Waterhouse Australasia shall be credited to a

Participant (regardless of whether such employment occurred before the Participant became an Employee or after the Participant ceased to be an Employee) for the Computation Period in which the employment occurs on the basis of 95 Hours of Service for each semimonthly payroll period for which at least one Hour of Service would be entitled to be credited.  For purposes of satisfying the vesting requirements under the Plan, Hours of Service shall include employment with a Member Firm, Network Firm or Relevant Entity of the PricewaterhouseCoopers Global Network on or after July 1, 1998, regardless of whether such employment occurred before the Participant became an Employee or after the Participant ceased to be an Employee.  Such Hours of Service shall be credited for the computation period in which the employment occurs on the basis of 95 Hours of Service for each semimonthly payroll period for which at least one Hour of Service would be entitled to be credited.  Effective July 1, 1998, for Employees with an Hour of Service on or after July 1, 1998, for purposes of satisfying the vesting requirements under the Plan, an individual's Hours of Service shall include any Hours that were credited:  (1) under the Plan prior to the transfer of its sponsorship from Price Waterhouse LLP to PricewaterhouseCoopers LLP; and, (2) by Coopers & Lybrand L.L.P. prior to July 1, 1998, according to Section 2.46.

2.23 <u>Employer Contributions</u>.  Contributions made by the Employer under the Plan.

2.24 <u>Entry Date</u>.  The date on which an Eligible Employee enters the Plan.  For each Plan Year the Entry Dates are the first day of each calendar month during the Plan Year. Effective for the Plan Year beginning July 1, 1999 and Plan Years thereafter, however, the

19

Entry Date for an individual who is directly engaged by the Employer as a Partner or

Principal after September 1st (i.e., without having previously been an Employee during the

Plan Year that contains such September 1st) shall be July 1st of the next Plan Year.


2.25 ERISA.  The Employee Retirement Income Security Act of 1974, as amended

from time to time, or any successor statute.


2.26 Fiduciary

(a)  Any person who exercises any discretionary authority or discretionary control

respecting management or disposition of the Trust or any Plan assets.

(b)  Any person who renders investment advice for a fee or other compensation,

direct or indirect, with respect to any monies or other property of the Plan or has any

authority or responsibility to do so.

(c)  Any person who has any discretionary authority or discretionary

responsibility for the administration of the Plan including, but not limited to, the Trustee,

the Plan Administrator and any Employer.


2.27 Firm.  The United States firm of Price Waterhouse LLP with its principal office

in New York, NY.  Effective July 1, 1998, the United States firm of

PricewaterhouseCoopers LLP with its principal office in New York, NY.


2.28 Highly Compensated Employee.  For Plan Years beginning prior to July 1, 1997,

an Employee who performs service for the Employer during the determination year, and

who during the look-back year: (i) received compensation from the Employer in excess of $50,000 (as adjusted pursuant to section 415(d) of the Code) or (ii) was an officer of the Employer and received compensation during such year that is greater than 50 percent of the dollar limitation in effect under section 415(b)(1)(A) of the Code. The term Highly Compensated Employee also includes: (i) Employees who are both described in the preceding sentence if the determination year is substituted for the look-back year and the Employee is one of the 100 Employees who received the most compensation from the Employer during the determination year; and (ii) Employees who are 5 percent owners at any time during the look-back year or determination year. The determination year shall be the Plan Year. The look-back year shall be the twelve-month period immediately preceding the determination year, or, if the Employer elects, pursuant to Section 1.414(q)-1T, Q&A-14(b), of the Income Tax Regulations, the look-back year calculation for a determination year shall be made on the basis of the calendar year ending with or within the applicable determination year. No more than a total of fifty (50) persons (or, if lesser, the greater of three (3) persons or ten percent (10%) of persons employed by the Employer), excluding those persons who may be excluded in determining the top-paid group, shall be treated as officers for a year. If no officer has satisfied the applicable compensation requirement during either a determination year or a look-back year, the highest paid officer for such year shall be treated as a Highly Compensated Employee. Compensation shall mean compensation within the meaning of Section 415(c)(3) of the Code plus any salary reduction contributions to a cafeteria plan under Section 125 of the Code and any salary deferral contributions that are excludable from income under Section 402(e)(3) and (h)(1)(B) of the Code. The Employer shall mean the Employer and any

21

corporation which is a member of a controlled group of corporations (as defined in Section 414(b) of the Code) which includes the Employer; any trade or business (whether or not incorporated) which is under common control (as defined in Section 414(c) of the Code) with the Employer; and any service organization (whether or not incorporated) which is a member of an affiliated service group (as defined in Section 414(m) of the Code) which includes the Employer; and any other entity required to be aggregated with the Employer pursuant to regulations under Section 414(o) of the Code. If an Employee is, during a determination year or look-back year, a family member of either a 5-percent owner or a Highly Compensated Employee who is one of the 10 most highly compensated Employees ranked on the basis of compensation paid by the Employer during such year, then the family member and the 5-percent owner or top-ten Highly Compensated Employee shall be aggregated. In such case the family member and 5-percent owner or top-ten Highly Compensated Employee shall be treated as a single employee receiving compensation and Plan contributions or benefits equal to the sum of such compensation and contribution or benefit of the family member and 5-percent owner or top-ten Highly Compensated Employee. For this purpose, family member includes the spouse, lineal ascendants and descendants of the employee and the spouses of such lineal ascendants and descendants.

For Plan Years beginning after June 30, 1997, an Employee who: (a) was a 5-percent owner of any of the Affiliated Employers at any time during the Plan Year or the preceding Plan Year, or (b) for the preceding Plan Year had compensation from the Affiliated Employers in excess of $80,000 and, if the Firm so elects, was in the top-paid group for the preceding Plan Year. The $80,000 amount is adjusted at the same time and in the same manner as under Section 415(d) of the Code, except that the base period is the calendar

22

quarter ending September 30, 1996. In determining whether an Employee is a Highly Compensated Employee for the Plan Year ending on June 30, 1998, this amendment to the Plan is treated as having been in effect for the Plan Year ending on June 30, 1997. For "determination years" of the Plan ending June 30, 2001 and thereafter, the determination of who is a Highly Compensated Employee shall be made with reference to the calendar year beginning within the "look-back year" in accordance with Notice 97-45. For purposes of determining if an Employee was a 5-percent owner, such Employee shall be a 5-percent owner if the Employee was a 5-percent owner within the meaning of Section 416(i)(1)(A)(iii) of the Code. For purposes of determining if an Employee is in the top-paid group for a preceding Plan Year, such group consists of the top twenty percent (20%) of Employees when ranked on the basis of compensation for such Plan Year. For purposes of determining the compensation of an Employee for the Plan Year ending June 30, 1998, compensation shall mean compensation within the meaning set forth in Section 415(c)(3) of the Code paid or made available to the Employee for the Plan Year, but including amounts that would be excluded from an Employee's gross income under a plan described in Sections 125, 401(k), or 403(b) of the Code. For Plan Years beginning after June 30, 1998, compensation shall mean compensation within the meaning set forth in Section 415(c)(3) of the Code paid or made available to the Employee for the Plan Year.

A Highly Compensated Former Employee is determined based on the rules applicable to determining Highly Compensated Employee status as in effect for that determination year, in accordance with Section 1.414(q)-1T, A-4 of the Temporary Income Tax Regulations and Notice 97-45.

2.29 Hour of Service.

(a)  Duties Performed.  Each hour for which an Employee is paid, directly or indirectly, or entitled to payment, for the performance of duties for any Affiliated Employer. These hours shall be credited to the Employee only for the Computation Period or Periods in which the duties are performed in an amount determined from the Employer's "time sheet" records, including any rounding practice used for such records.

(b)  No Duties Performed.  Each hour for which an Employee is paid, directly or indirectly, or entitled to payment, by any Affiliated Employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including short-term disability), layoff, jury duty, military duty, or leave of absence.  No more than five hundred one (501) Hours of Service shall be credited under this paragraph to an Employee on account of any single, continuous period during which the Employee performs no duties (whether or not such period occurs in a single Computation Period) and no credit shall be given for hours for which no duties are performed but for which payment by any Affiliated Employer is made or due under a plan maintained solely for the purpose of complying with applicable workers' compensation, unemployment compensation, or disability insurance laws or where payment solely reimburses an Employee for medical or medically related expenses incurred by the Employee.  Hours under this paragraph will be calculated and credited pursuant to Section 2530.200b-2 of the Department of Labor Regulations which are incorporated herein by this reference.

(c)  Back Pay.  Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by any Affiliated Employer.  The same Hours of

Service shall not be credited both under paragraph (a) or paragraph (b), as the case may be, and under this paragraph (c). These hours shall be credited to the Employee for the Computation Period or periods to which the award or agreement pertains rather than the Computation Period in which the award, agreement, or payment is made.

(d)  Leave of Absence. Hours of Service shall also include an uncompensated authorized leave of absence (including for a foreign tour of duty or for LLTD leave), or military leave while the Employee's reemployment rights are protected by law or such additional or other periods as granted by any Affiliated Employer as military leave (credited on the basis of forty (40) Hours of Service per each week or eight (8) Hours of Service per working day), provided the Employee returns to employment within ninety (90) days of the end of his or her military leave.

(e)  Leased Employees. Hours of Service will also be credited for services rendered to any Affiliated Employers by a Leased Employee who is treated as an Employee.

(f)  Maternity/Paternity Leave. Hours of Service shall also include absence from work for maternity or paternity reasons. During this absence, the Employee shall be credited with the Hours of Service which would have been credited but for the absence, or, if such hours cannot be determined, with eight hours per day. An absence from work for maternity or paternity reasons means an absence:

(1)  by reason of the pregnancy of the Employee,

(2)  by reason of the birth of a child of the Employee,

(3)  by reason of the placement of a child with the Employee in connection with adoption, or

(4)  for purposes of caring for such a child for a period immediately following

such birth or placement.

2.30 <u>Investment Manager</u>.  The individual or entity appointed by the Trustee to manage the investment of all or a portion of the Trust.  The Investment Manager may be any person, firm or corporation that is a registered investment advisor under the Investment Advisors Act of 1940, a bank, or an insurance company, and

    (a)   Who has the power to manage, acquire, or dispose of Plan assets, and

    (b)   Who acknowledges in writing his or her fiduciary responsibility to the Plan.

2.31 <u>Leased Employee</u>.  Any individual who is not otherwise employed by an Affiliated Employer but who, pursuant to an agreement between an Affiliated Employer and any other person, has performed services for any of the Affiliated Employers (or for any of the Affiliated Employers and related persons (as determined in accordance with Section 414(n) of the Code)) on a substantially full-time basis for a period of at least one year and such services are of a type historically performed by employees in the Affiliated Employer's business field.  For Plan Years beginning July 1, 1997 and thereafter, any individual who is not otherwise employed by an Affiliated Employer but who, pursuant to an agreement between an Affiliated Employer and any other person, has performed services for any of the Affiliated Employers (or for any of the Affiliated Employers and related persons (as determined in accordance with Section 414(n) of the Code)) on a substantially full-time basis for a period of at least one year and such services are under the primary direction and control of an Affiliated Employer.  The determination of whether a person is a Leased Employee will be made pursuant to the rules and regulations under Section 414(n) of the

Code.

2.32 <u>Normal Retirement Age</u>.  The earlier of the date a Participant attains age 65 or completes five (5) Years of Service.

2.33 <u>Normal Retirement Benefit</u>.  A single life annuity for the life of a Participant payable at the later of the Participant's attained age or Normal Retirement Age, as set forth in Article 5 of the Plan.

2.34 <u>Participant</u>.  A person who has met the eligibility requirements of Article 3 and whose Benefit hereunder has not been completely distributed.

2.35 <u>Plan</u>.  The Retirement Benefit Accumulation Plan for Employees of Price Waterhouse LLP and, effective July 1, 1998, The Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP, as set forth in this Plan document, and as it may be amended from time to time.  Plan should also be read as referring, where applicable, to the Trust established in Article 11 hereof.

2.36 <u>Plan Administrator</u>.  The persons or entity designated by the Firm to administer the Plan pursuant to Section 10.4.

2.37 <u>Plan Year</u>.  The twelve (12) consecutive month period commencing each July 1 and ending the immediately following June 30.