2.38 <u>Policy Board.</u> The Policy Board of the Firm. Effective July 1, 1998, "Policy

Board" is substituted and replaced by "Board of Partners and Principals", meaning the

Board of Partners and Principals of the Firm.

2.39 <u>Qualified Joint and Survivor Annuity.</u> An annuity for the life of the Participant,

with a survivor annuity for the life of the Participant's Spouse which is fifty percent (50%) of

the amount of the annuity payable during the joint lives of the Participant and his or her

Spouse, which is equal to the Actuarial Equivalent of the Participant's Benefit.

2.40 <u>Qualified Pre-Retirement Survivor Annuity.</u> An annuity for the life of the

Participant's Surviving Spouse effective upon the death of a Participant, under which

payments are equal to the amount which would be payable as an annuity that is the Actuarial

Equivalent of the Participant's Deemed Account Balance at the Participant's death. In no

event shall such amount be less than the amount required by Sections 401(a)(11) and 417 of

the Code.

2.41 <u>Spouse.</u> The Spouse of the Participant or an individual who was the Spouse of the

Participant at the date of death of the Participant (the "Surviving Spouse"). A former Spouse,

other than a Surviving Spouse, will be treated as the Spouse to the extent provided under a

qualified domestic relations order as described in Section 414(p) of the Code.

2.42 <u>State.</u> The state in which is located the principal office of the Firm.

2.43 <u>Trust</u>. The Trust established in Article 11 of this Plan agreement, as it may be amended from time to time, consisting of all cash, securities, or other property received by the Trustee as contributions under the Plan and all securities or other property purchased or acquired therewith or therefrom, together with any increase, or accumulation thereon, and income therefrom, less distributions, payments or expenditures therefrom and losses thereon, all as authorized herein.

2.44 <u>Trustee</u>. Marsha R. Cohen, Roger C. Hindman, Peter K. Kelly, Richard R. Kilgust, Wendy L. Kornreich, Robert C. Morris Jr., Robert P. Sullivan, Randal S. Vallen, Brett D. Yacker, and any additional or successor Trustee or Trustees so designated. For convenience, the Trustee or Trustees are referred to herein in the singular and by the pronoun "it".

2.45 <u>Valuation Date</u>. Each day during the Plan Year that shares are traded on a national stock exchange. As of each Valuation Date, the Administrative Committee shall adjust a Participant's Deemed Account Balance for the period then ended to reflect his or her Deemed Investment Experience. The value of each Participant's Deemed Account Balance shall be based upon units or shares. Thereafter, when the Participant's Deemed Account Balance is credited with a Deemed Payroll Period Allocation or earnings pursuant to his or her Deemed Investment Experience, the value of such credit shall be used to accumulate units or shares and be added to such Participant's Deemed Account Balance. When any distributions, transfers, or losses as a consequence of Deemed Investment Experience are charged against

the Participant's Deemed Account Balance, the number of units or shares equal in value to the amount charged shall be deducted from the outstanding accumulation of units of shares. Notwithstanding any other provision of the Plan to the contrary, December 30, 1999 and December 31, 1999 shall not be a Valuation Date for any purpose under the Plan even if on such day shares are traded on a national stock exchange. Requests for reallocation of existing Deemed Account Balances among the various Deemed Investment Experience options or any fund-to-fund transfer under the Plan received after 4:00 pm eastern time on December 29, 1999 shall be valued at the close of business on January 3, 2000. Requests for distributions received by the Plan administrator prior to 4:00 pm eastern time on December 29, 1999 shall be valued at that day's closing prices rather than December 31, 1999, and requests for distributions received after 4:00 pm eastern time on December 29, 1999 shall be valued at the close of business on January 31, 2000.

2.46 <u>Year of Service</u>. For purposes of determining a Participant's nonforfeitable benefit (as defined in Article 6), a Computation Period during which an Employee is credited with at least one thousand (1,000) Hours of Service. Years of Service before age seventeen (17) are not considered. For purposes of determining a Participant's Accrued Benefit, a credit used to determine such Benefit. Effective July 1, 1998, for purposes of the application of section 1.410(a)-7(f) of the Income Tax Regulations to the crediting of Years of Service under this Plan, the date of transfer from the elapsed time method of crediting service under the Coopers & Lybrand Retirement Plan or the Kwasha Lipton Retirement Plan to the method based upon computation periods under this Plan shall be April 1, 1999. Any Years of Service credited under this Plan prior to October 1, 1998 to an Employee who was also

employed by Coopers & Lybrand L.L.P. prior to July 1, 1998 shall be added to his Years of Service determined at April 1, 1999 under the rule stated in the immediately preceding sentence. For the Computation Period from October 1, 1998 through September 30, 1999, Hours of Service for an Employee: (1) covered under this Plan at March 31, 1999 shall be determined based upon his actual Hours of Service as determined from the Employer's "time sheet" records; or (2) covered under the Coopers & Lybrand L.L.P. Retirement Plan or the Kwasha Lipton Retirement Plan at March 31, 1999 shall be determined by applying the equivalency of 95 Hours of Service for each semimonthly payroll period for which such Employee would be required to be credited with a least one Hour of Service until such time during that Computation Period that actual Hours of Service for such Employee can be recorded on "time sheets". For purposes of crediting Years of Service under the Plan to an Employee hired by the Employer on August 2, 1999 from Equifax, Inc.: (1) such Employee's completed anniversaries of employment with Equifax, Inc. as of August 1, 1999 shall be treated as Years of Service under the Plan; and (2) for the Computation Period from October 1, 1998 through September 30, 1999, Hours of Service shall be determined by applying the equivalency of 95 Hours of Service for each semimonthly payroll period from the semimonthly payroll period that includes October 1, 1998 through the semimonthly payroll period that includes August 2, 1999 and by using actual Hours of Service thereafter. For purposes of crediting Years of Service under the Plan to an Employee hired by the Employer on November 27, 1999, December 13, 1999, December 17, 1999, December 27, 1999, January 3, 2000, January 4, 2000, January 10, 2000, January 24, 2000, February 4, 2000, February 21, 2000, March 1, 2000, April 1, 2000, April 15, 2000, May 16, 2000, June 1, 2000, June 26, 2000, August 1, 2000, August 5, 2000, August

31

12, 2000, September 2, 2000, September 18, 2000, September 25, 2000, November 16, 2000, January 1, 2001, May 1, 2001, May 16, 2001, July 11, 2001, or August 1, 2001 from BP Amoco Corporation: (1) such Employee's completed anniversaries of employment with BP Amoco Corporation as of November 26, 1999 or such subsequent date of hire shall be treated as Years of Service under the Plan; and (2) for the Computation Period from October 1, 1999 through September 30, 2000, Hours of Service shall be determined by applying the equivalency of 95 Hours of Service for each semimonthly payroll period from the semimonthly payroll period that includes October 1, 1999 through the semimonthly payroll period that includes November 27, 1999 or such subsequent date of hire and by using actual Hours of Service thereafter. For purposes of crediting Years of Service under the Plan to an Employee hired by the Employer on December 1, 2000, January 29, 2001, April 2, 2001, May 1, 2001, May 29, 2001, June 4, 2001, July 1, 2001, August 1, 2001, or September 5, 2001 from Vastar Resources, Inc.: (1) such Employee's completed anniversaries of employment with Vastar Resources, Inc. as of December 1, 2000 or such subsequent date of hire shall be treated as Years of Service under the Plan; and (2) for the Computation Period from October 1, 2000 through September 30, 2001, Hours of Service shall be determined by applying the equivalency of 95 Hours of Service for each semi-monthly payroll period from the semi-monthly payroll period that includes October 1, 2000 through the semimonthly payroll period that includes December 1, 2000 or such subsequent date of hire and by using actual Hours of Service thereafter. For the purpose of crediting Years of Service under the Plan to an Employee hired by the Employer on March 1, 2001 or May 3, 2001 from the Australian Department of Finance and Administration: (1) such Employee's completed anniversaries of employment with the

32

Australian Department of Finance and Administration as of March 1, 2001 or May 3, 2001 shall be treated as Years of Service under the Plan; and (2) for the Computation Period from October 1, 2000 through September 30, 2001, Hours of Service shall be determined by applying the equivalency of 95 Hours of Service for each semi-monthly payroll period from the semi-monthly payroll period that includes October 1, 2000 through the semi-monthly payroll period that includes March 1, 2001 or May 3, 2001 and by using actual Hours of Service thereafter; provided, however, that such Employee must be credited with two Years of Service with the Employer for the Computation Periods ending September 30, 2001 and September 30, 2002, and if such Employee is not credited with two Years of Service for the Computation Periods ending September 30, 2001 and September 30, 2002, then such Employee's Hours of Service shall be measured only from his or her actual date of hire by the Employer and such Employee will not be credited with any Years of Service or Hours of Service pursuant to clauses (1) and (2) above.

33

# ARTICLE 3

## ELIGIBILITY AND YEARS OF SERVICE

3.1  Eligibility Requirements.  Each Eligible Employee shall become a Participant on the Entry Date coincident with or next following the date he becomes an Eligible Employee provided that the Eligible Employee is employed by the Employer as of such Entry Date.

3.2  Cessation of Eligibility.  An Eligible Employee who ceases to be an Eligible Employee and again becomes an Eligible Employee shall become a Participant on the Entry Date coincident with or next following the date he subsequently becomes an Eligible Employee, provided that the Eligible Employee is employed by the Employer as of such Entry Date.

3.3  Eligible Employees.  Eligible Employees consist of Employees other than Employees who are (1) Leased Employees, (2) on leaves of absence for foreign tours of duty even if their compensation during such leaves of absence is subject to Federal income tax, other than LINT, LMIP, LTIP and LPIP leaves of absence, (3) temporary foreign exchange employees, (4) temporary faculty from United States universities, (5) temporary student interns, (6) temporary office staff, (7) for Plan Years beginning on or after July 1, 1995 and ending prior to July 1, 1997, Directors, other than a Director who is not an eligible employee under the Profit Sharing Plan For Partners Of Price Waterhouse LLP, (8) included in a unit of employees covered by an agreement which the Secretary of Labor finds to be a collective bargaining agreement between employee representatives and one or more employers, if there

34

is evidence that retirement benefits were the subject of good faith bargaining between such employee representatives and such employer or employers, (9) left intentionally blank, or (10) a Partner or Principal who has been designated by the Board of Partners and Principals as permanently no longer eligible for the Plan on account of incapacity. An incapacity designation shall be made by the Board of Partners and Principals upon application of a Partner or Principal only if there exists an immediate and heavy financial need of the Partner or Principal that prevents the Partner or Principal from making his or her allocable contribution to the Plan for a Plan Year on account of both: (1) "negative disposable income" that is likely to endure for at least three years; and (2) "insufficient net assets". For this purpose, "negative disposable income" means that the Partner or Principal's income from all sources is less than the Partner or Principal's living expenses, assuming such Partner or Principal were a Participant in the Plan. A Partner or Principal's income shall be determined by taking into consideration the income of his or her spouse, if any, from all sources, unless there is pending litigation for a divorce or separation. For this purpose, "insufficient net assets" means that the Partner or Principal's assets are inadequate to meet either the "total assets test" or the "cash convertible test". To meet the "total assets test", a Partner or Principal must demonstrate that his or her assets net of any liabilities are less than the sum of (a) expenses taken into account in the determination of "negative disposable income" and (b) his or her allocable contribution that would otherwise be made to the Plan for the Plan Year. The condition of "insufficient net assets", as demonstrated by the "total assets test", must be likely to endure for at least one year. To meet the "cash convertible test", a Partner or Principal must demonstrate that his or her marketable assets net of any liabilities are less than the amount of his or her allocable contribution that would otherwise be made to the Plan for

the Plan Year. For purposes of both the "total assets test" and the "cash convertible test": (1) assets under qualified retirement plans, and nonqualified plans where benefits are not distributable, are excluded from the assets taken into consideration; (2) net assets of a Partner or Principal are determined after taking into consideration net assets of his or her spouse, if any, unless there is a pending court proceeding for divorce or separation; (3) liabilities taken into consideration are any liability of a Partner or Principal, or his or her spouse, if any, that would be enforceable against the Partner or Principal, or his or her spouse, in a Federal or state court. The Board of Partners and Principals may designate a Partner or Principal as permanently no longer eligible for the Plan on account of incapacity regardless of whether the immediate and heavy financial need resulting in such incapacity was foreseeable and/or voluntarily incurred. The Board of Partners and Principals shall designate a Partner or Principal as permanently no longer eligible for the Plan on account of incapacity only upon obtaining complete and suitable documentation of the immediate and heavy financial need from the Partner or Principal. The Board of Partners and Principals shall review all requests for incapacity designations and representations in support thereof and shall grant only those requests which comply with this Subsection unless it has knowledge or reason to know any representation(s) in support thereof to be false. (11) Effective July 1, 1994, any individual classified as an independent contractor by the Employer for whom a Form 1099 is required to be issued under the Code, or any corporation or other entity classified as an independent contractor by the Employer for which a Form 1099 is not required to be issued under the Code, shall not be considered an Employee for purposes of this Plan. An individual, corporation or other entity classified as an independent contractor by the Employer shall not be considered an Eligible Employee for purposes of this Plan during the period the

individual, corporation or other entity is so classified even if such individual, corporation or other entity is later retroactively reclassified as a common-law employee of the Employer during all or any part of such period pursuant to applicable law or otherwise.

(12) Effective July 1, 1998 through June 30, 1999:  (A) Partners and Principals of PricewaterhouseCoopers LLP who were also partners or principals of Coopers & Lybrand L.L.P. on June 30, 1998; notwithstanding the foregoing, a Principal of PricewaterhouseCoopers LLP who was previously a principal of Applied Decision Analysis, Inc. shall be an Eligible Employee notwithstanding that he/she may have been a principal or employee of Coopers & Lybrand L.L.P. on June 30, 1998, and (B) Employees of PricewaterhouseCoopers LLP who were also employees of Coopers & Lybrand L.L.P. on June 30, 1998.

# ARTICLE 4

## CONTRIBUTIONS

4.1  <u>Employer Contributions</u>.  The Employer shall make Employer Contributions for each Plan Year in such amounts as are determined by the Actuary as necessary to fund the Plan in accordance with the funding policy established by the Administrative Committee and the minimum funding standards of Section 412 of the Code and the requirements of ERISA, unless the Secretary of the Treasury shall waive the Employer Contribution for a particular Plan Year due to business hardship.

4.2  <u>Form of Employer Contributions</u>.  All Employer Contributions to the Trust for any Plan Year shall be made in cash either in one lump sum or in installments.

4.3  <u>No Participant Contributions</u>.  The Plan shall neither require nor accept contributions from a Participant, and the Plan shall not accept contributions that are rolled over from another qualified plan of an employer or an Individual Retirement Account.

## ARTICLE 5

## RETIREMENT BENEFITS

5.1 Normal Retirement Benefit. A Participant's Normal Retirement Benefit shall be an amount equal to the Actuarial Equivalent (calculated by projecting the Deemed Account Balance to Normal Retirement Age using the Deemed Plan Interest Rate) of his or her Deemed Account Balance.

(a) Eligibility for Normal Retirement Benefit. A Participant shall be eligible for a Normal Retirement Benefit upon termination of employment from the Employer, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, with a nonforfeitable right to his or her Accrued Benefit, as determined under Article 6 of the Plan. For purposes of this Plan, a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal ceases to be active when he ceases to perform significant services for the Employer as a Partner, Principal, Limited Equity Partner or Limited Equity Principal under the Agreement or Restated Agreement described in Section 2.21 of the Plan (without regard to such individual's status under the income tax laws).

Effective for Participants who attain age 70 ½ after December 31, 1998, the Normal Retirement Benefit that is paid upon a Participant's termination of employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal after he ceases to be active, after the Participant attains age 70 ½ shall be the Actuarial Equivalent of the Normal Retirement Benefit that would have been paid to the Participant at age 70 ½ had he then terminated employment or ceased to be active. For

purposes of this Section, an Actuarial Equivalent shall be the product of (1) the Normal Retirement Benefit at age 70 1/2, (2) Deemed Investment Experience, and (3) a fraction, the numerator of which is the value of a life annuity of $1 commencing on April 1 following the calendar year in which the Participant attains age 70 1/2, and the denominator of which is the value of such a life commencing on the Valuation Date for the Participant's request for a distribution upon his termination of employment.

On or after July 1, 1997 and prior to July 1, 1998, a transfer, leave of absence, appointment, secundment, or any other arrangement with the same result, from any PW Firm to another PW Firm shall not be considered a termination of employment from the Employer, or in the case of a Partner or Principal or Limited Equity Partner or Limited Equity Principal ceasing to be active. Effective July 1, 1998, a transfer, leave of absence, appointment, secundment, or any other arrangement with the same result, from any Member Firm, Network Firm or Relevant Entity of the PricewaterhouseCoopers Global Network to another Member Firm, Network Firm or Relevant Entity of the PricewaterhouseCoopers Global Network shall neither be considered a termination of employment from the Employer, nor be considered ceasing to be active.

(b) Payment of Normal Retirement Benefit. Subject to Section 5.3, a Participant's Normal Retirement Benefit shall be paid in monthly payments equal to one twelfth (1/12th) of the annual Normal Retirement Benefit. Effective for Participants who attain age 70 ½ after December 31, 1998 and prior to January 1, 2002, a Participant's Normal Retirement Benefit shall commence to be paid not later than the first day of April of the calendar year following the later of the calendar year during which the Participant attains age 70½, or the Participant terminates employment or in the case of a Participant who is a Partner, Principal,

Limited Equity Partner or Limited Equity Principal he ceases to be active. For Participants who attain age 70 1/2 after December 31, 2001, the Participant's Normal Retirement Benefit must be distributed, or distribution must commence, no later than April 1 of the calendar year following the calendar year in which the Participant attains age 70 1/2 even though the Participant may still be employed by the Employer or not ceased to be active, and such distribution shall be increased each following December 31 to take into account the Participant's Accrued Benefit not distributed as of such December 31.

5.2  Payment of Benefits.  Prior to July 1, 1999, for purposes of a distribution under the Plan, the value of a Participant's Benefit shall be its value as of the Valuation Date occurring on the 20th day of the second following calendar month after the calendar month during which a Participant provides the Plan Administrator with a request for a distribution of his or her Benefit (or in the case where a Participant's Benefit does not exceed $5,000 ($3,500 prior to July 1, 1998) during which termination of a Participant's employment occurs, or a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal ceases to be active), unless the 20th day of the second following calendar month is a day on which shares are not traded on a national stock exchange, in which case it shall be the Valuation Date occurring on the first day before the 20th day on which shares are traded on a national stock exchange.  Effective on and after July 1, 1999, for purposes of a distribution under the Plan of:  (1) a Benefit in excess of $5,000, the value of a Participant's Benefit shall be its value as of the Valuation Date occurring on the last business day of the calendar month during which the Participant provides the Plan Administrator with a request for a distribution of his or her Benefit if the request is received by the Plan Administrator by the

41

twentieth (20th) day of such month; provided, however, that a request for a distribution which is provided to the Plan Administrator during the same calendar month in which a Participant's termination of employment occurs (or in which a Partner, Principal, Limited Equity Partner, or Limited Equity Principal ceases to be active) shall result in such Participant's Benefit being valued on the Valuation Date occurring on the last business day of the next calendar month if the request is received by the Plan Administrator by the twentieth (20th) day of the month in which the Participant's termination of employment occurs (or in which a Partner, Principal, Limited Equity Partner, or Limited Equity Principal ceases to be active); and (2) a Benefit that is $5,000 or less, the value of a Participant's Benefit shall be its value as of the Valuation Date occurring on the last business day of the second calendar month following the calendar month in which a Participant's termination of employment occurs (or in which a Partner, Principal, Limited Equity Partner, or Limited Equity Principal ceases to be active). If the last business day of any calendar month is a day on which shares are not traded on a national stock exchange, the Valuation Date shall be the first day on which shares are traded on a national stock exchange before the last business day. A Participant's Benefit shall be paid as soon as practicable following its Valuation Date. Any Deemed Payroll Period Allocation made to the Participant's Deemed Account Balance subsequent to the initial distribution, shall be distributed as soon as practicable following the date of such Deemed Payroll Allocation. All distributions hereunder shall be made in a consistent and uniform manner with regard to timeliness of distribution. Notwithstanding any other provision of the Plan to the contrary, a Participant's request for a distribution will be valued as of the Valuation Date occurring on the next business day following receipt of the request for the distribution

42

when such request is made to comply with an independence standard imposed by any international, federal or state regulatory agency or professional association.

5.3  Qualified Joint and Survivor Annuity.

(a)  A married Participant's Benefit shall be paid in the form of a Qualified Joint and Survivor Annuity unless the Participant elects an optional form of Benefit pursuant to a Qualified Election, as defined in Subsection (b), not earlier than ninety (90) days or less than thirty (30) days before the date that Benefit payments would commence.

(b)  A Qualified Election is an election of an optional form of Benefit by a married Participant to which his or her Spouse consents in a writing witnessed by a Plan representative or a notary public. A Qualified Election constitutes a waiver of the Qualified Joint and Survivor Annuity. A Participant may make a Qualified Election not to have his or her Benefit paid in the form of a Qualified Joint and Survivor Annuity and may elect an alternative form of payment not earlier than ninety (90) days or less than thirty (30) days before the date on which Benefits are scheduled to commence. The Benefit commencement date for a distribution in a form other than a Qualified Joint and Survivor Annuity may be less than thirty (30) days after receipt of the written explanation described in Section 5.3(c) provided: (a) the Participant has been provided with information that clearly indicates that the Participant has at least thirty (30) days to consider whether to waive the Qualified Joint and Survivor Annuity and to elect (with Spousal Consent) a form of distribution other than a Qualified Joint and Survivor Annuity; (b) the Participant is permitted to revoke any affirmative distribution election at least until the Benefit commencement date or, if later, at any time prior to the expiration of the seven day period that begins the day after the

43

explanation of the Qualified Joint and Survivor Annuity is provided to the Participant; and (c) the Benefit commencement date is a date after the date that the written explanation was provided to the Participant.  In order to be effective, any such election to have Benefits paid in a form other than a Qualified Joint and Survivor Annuity shall be consented to by the Spouse (or the Spouse's legal guardian if the Spouse is legally incompetent) in writing whereby the Spouse:

(1)   consents not to receive the Qualified Joint and Survivor Annuity; and

(2)   consents to the specific optional form elected by the Participant.

The instrument shall contain the signed acknowledgment by such Spouse of the effect of such election.

Spousal consent to such election shall not be required if the Participant establishes to the satisfaction of a Plan representative that such written consent may not be obtained because:

(1)   there is no Spouse;

(2)   the Spouse cannot be located;

(3)   the Participant furnishes a court order to the Administrative Committee establishing that the Participant is legally separated or has been abandoned (within the meaning of local law), unless a qualified domestic relations order pertaining to such Participant provides that the Spouse's consent must be obtained; and

(4)   there exist such other circumstances as the Secretary of the Treasury may by regulations prescribe.

Any consent necessary under this provision shall be valid only with respect to the Spouse who signed such consent (or the designated Spouse in the event that it is established that the consent of the Spouse may not be obtained) and such consent shall be irrevocable.  A

44

Participant may revoke any prior election without the consent of his or her Spouse at any time prior to the commencement of benefits, in which case benefits shall be paid in the form of a Qualified Joint and Survivor Annuity, unless an alternative election is duly made with the appropriate Spousal consent.

(c)  The Administrative Committee shall provide to each Participant within a reasonable period prior to the commencement of benefits a written explanation of:

(1)  the terms and conditions of the Qualified Joint and Survivor Annuity;

(2)  the Participant's right to make, and the effect of, an election to waive the Qualified Joint and Survivor Annuity form of benefit;

(3)  the rights of a Participant's Spouse; and

(4)  the right to make, and the effect of, a revocation of a previous election to waive the Qualified Joint and Survivor annuity.


5.4  Optional Forms.  In lieu of the form of Benefit set forth in Sections 5.1 or 5.3, the Participant may elect, subject to the rules of Subsection 5.3(b), if applicable, one of the following forms of Benefit.

(a)  Specified Distribution.  Upon attainment of Normal Retirement Age, a Participant who is (i) a Partner or Principal, or (ii) a Non-Highly Compensated client-service Employee may receive a distribution of all or any portion of his or her Accrued Benefit in any form available under the Plan.  This form of distribution shall not be available to a Highly Compensated client-service Employee or any practice-support Employee.  This form of distribution shall not be available to any Participant who was a participant in the Coopers & Lybrand Retirement Plan or the Kwasha Lipton Retirement Plan prior to July 1,

1999.

(b) Lump Sum Payment. A single lump sum cash payment to the Participant upon his or her termination of employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, or upon the Participant's death to his or her Beneficiary. This is the only form of distribution available to a Beneficiary who is not the Participant's Spouse. The amount of any lump sum payment to a Participant or Beneficiary shall not be less than the Actuarial Equivalent of the Participant's Normal Retirement Benefit. A Participant who is required to cease receiving his Benefit in any form permitted under the Plan in order to comply with an independence standard imposed by any international, federal or state regulatory agency or professional association may receive a single lump sum payment that is not less than the Actuarial Equivalent of the undistributed portion of the Participant's Normal Retirement Benefit.

(c) Single Life Annuity. An annuity with equal monthly installments payable to the Participant for his or her lifetime. This is the automatic form of Benefit for a single Participant, unless such Participant elects another form. The amount of the annuity is the Actuarial Equivalent of the Participant's Deemed Account Balance.

5.5 Method of Payment of Benefit. The Administrative Committee, in its sole discretion, may provide for the payment of Benefits under this Article by the Trustee through the purchase of annuity contracts from an insurer, or through direct cash payments from the Trust to the Participant or Beneficiary. Any annuity contract purchased from an insurer which is distributed to a Participant or Beneficiary must be nontransferable in the hands of the Participant or Beneficiary. Neither the Administrative Committee, Employer or the

Trustee, nor their successors, shall be responsible for the failure on the part of the insurer to make payments provided by any such annuity contract, which is distributed to a Participant or Beneficiary.

    5.6  <u>Distribution Procedures</u>.  Distribution of a Participant's Benefit shall be made as follows:

    (a)  <u>Participant's Benefit Does Not Exceed $5,000</u>.  The Benefit payable to a Participant or Beneficiary shall be distributed in a lump sum upon the Participant's termination of employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, provided that the Actuarial Equivalent value of his or her Benefit does not exceed $5,000 ($3,500 prior to July 1, 1998), and the nonvested portion of the Participant's Accrued Benefit will be forfeited.  Such distribution shall not require consent of the Participant or his or her Spouse. If the Participant's vested Benefit is zero, the Participant shall be deemed to have received a distribution of such Benefit.  If a Participant receives a distribution under this Section 5.6(a) and the Participant resumes employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal again becomes active, and is covered under the Plan, the Participant's Accrued Benefit will be restored to the amount on the date of the distribution (including all optional forms of benefit) if the Participant repays to the Plan the full amount of the distribution before the earlier of five (5) years after the first date on which the Participant is subsequently re-employed by the Employer, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he again becomes active, or the date the Participant incurs five (5) consecutive 1-year

Breaks in Service following the date of the distribution. If a Participant is deemed to receive a distribution of zero and the Participant resumes employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal again becomes active, and is covered under this Plan before the date the Participant incurs 5 consecutive 1-year Breaks in Service, upon the re-employment of such Participant, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he again becomes active, the Participant's Accrued Benefit will be restored to the amount on the date of such deemed distribution. Any Accrued Benefit that is restored under this Section shall have Deemed Investment Experience credited to or subtracted from it at the rate earned by the money market mutual fund that is among the investment experience choices prescribed by the Administrative Committee for the period from the forfeiture to the restoration.

(b) Participant's Benefit Exceeds $5,000. The Benefit payable to a Participant shall be distributed to the Participant upon the Participant's termination of employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, at his or her election, and the election of his or her Spouse, if applicable, provided that the Benefit exceeds $5,000 ($3,500 prior to July 1, 1998), and the nonvested portion of the Participant's Accrued Benefit will be forfeited. If a Participant receives a distribution and the Participant resumes employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal again becomes active, and is covered under the Plan, the Participant's Accrued Benefit will be restored to the amount on the date of the distribution if the Participant repays to the Plan the full amount of the distribution before the earlier of five (5) years after the first date on which

the Participant is subsequently re-employed by the Employer, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he again becomes active, or the date the Participant incurs five (5) consecutive 1-year Breaks in Service following the date of the distribution. Any Accrued Benefit that is restored under this Section shall have Deemed Investment Experience credited to or subtracted from it at the rate earned by the money market mutual fund that is among the investment experience choices prescribed by the Administrative Committee for the period from the forfeiture to the restoration.

(c)    Required Distribution.  Unless the Participant otherwise elects, distribution of his or her Benefit shall commence no later than the 60th day after the close of the Plan Year in which the latest of the following events occurs:

(1)    the Participant's attainment of age sixty-five (65) or if earlier, Normal Retirement Age; or

(2)    the 10th anniversary of the Participant's commencement of participation in the Plan; or

(3)    the Participant's termination of employment with the Employer, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active.

5.7    Death of the Participant. If the Participant dies after distribution of his Benefit has begun in a form described in Section 2.39, the remaining portion of such interest will continue to be distributed at least as rapidly as under the form of distribution being used prior to the Participant's death.  If the Participant dies before distribution of his Benefit has begun, and the Participant's Beneficiary is the Participant's surviving Spouse, the date

49

distributions are required to begin (A) in the form of a Qualified Preretirement Survivor Annuity shall not be earlier than the later of (i) December 31 of the calendar year immediately following the calendar year in which the Participant died and (ii) December 31 of the calendar year in which the Participant would have attained age 70½, subject to Section 5.6(a), or (B) in the form of a lump sum, which is the Actuarial Equivalent of the Participant's Deemed Account Balance, shall not be earlier than the later of (i) December 31 of the calendar year which contains the fifth anniversary of the date of death of the Participant and (ii) December 31 of the calendar year in which the Participant would have attained age 70½. If the Participant dies before distribution of his Benefit has begun, and the Participant's Beneficiary is not the Participant's surviving Spouse, distribution shall be by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

If the Participant has not made an election pursuant to Section 5.6(b) by the time of his death, the Participant's Beneficiary must elect the method of distribution no later than the earlier of (1) December 31 of the calendar year in which distributions would be required to begin under this Section 5.7, or (2) December 31 of the calendar year which contains the fifth anniversary of the date of death of the Participant. If the Participant has no Beneficiary, or if the Beneficiary does not elect a method of distribution, distribution of the Participant's entire interest must be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

(a)  Proof of Death. The Plan Administrator may require such proper proof of death and such evidence of the right of any person to receive payment of the value of the Benefit of a deceased Participant as the Plan Administrator may deem desirable. The Plan

Administrator's determination of death and of the right of any person to receive payment shall be conclusive.

(b)  Waiver of QPSA.  A waiver of the Qualified Preretirement Survivor Annuity and designation of a non-Spouse beneficiary may occur within the "Election Period".  For this purpose, the "Election Period" shall mean the period beginning on the first day on which the Participant commences participation and ending on the Participant's death.  The Plan Administrator shall provide each Participant with a written explanation of the Qualified Preretirement Survivor Annuity that is comparable to the written explanation described in Section 5.3 of the Plan.

5.8  Designation of Beneficiary.  The Beneficiary of the benefit payable upon the death of a Participant shall be the Participant's Spouse.  Except, however, the Participant may designate a Beneficiary other than his or her Spouse if:

(1)  the Spouse has executed a Spousal Consent, or

(2)  the Participant has no Spouse, or

(3)  the Spouse cannot be located.

(a)  Spousal Consent.

(1)  No designation of a primary Beneficiary other than the Participant's Spouse by a married Participant shall be effective unless

(A)  the Spouse (or the Spouse's legal guardian if the Spouse is legally incompetent) executes a written instrument, during the election period described in Section 5.7(b), whereby such Spouse consents not to receive such Benefit and consents to the specific Beneficiary or Beneficiaries designated by the Participant; and

51

(B) the instrument acknowledges the effect of such election to which the Spouse's consent is being given and the signature of the Spouse on such election is witnessed by a notary public or a representative of the Plan.

(b) <u>Designation</u>. A Participant may designate from time to time any person or persons (who may be designated contingently or successively and may be an entity other than a natural person) as his or her Beneficiary who will be entitled to receive any undistributed amounts of the Participant's Benefit under the Plan at the time of the Participant's death. Any Beneficiary designation by a Participant shall be made in writing in the manner prescribed by the Plan Administrator during the Participant's lifetime. A Participant may change or revoke his or her Beneficiary designation at any time in the manner prescribed by the Plan Administrator. A Participant may revoke a designation of a Beneficiary other than his or her Spouse, or designate his or her Spouse as Beneficiary, without Spousal Consent. Any Beneficiary designation shall be ineffective if the Participant marries or remarries before distribution of Benefits payable upon the Participant's death begins. If the designated Beneficiary (or each of the designated Beneficiaries) predeceases the Participant, the Participant's Beneficiary designation shall be ineffective with respect to such Beneficiary.

(c) <u>No Beneficiary Designated</u>. If no Beneficiary designations are in effect at the time of the Participant's death, his or her Benefit shall be paid as follows:

(1) to his or her surviving Spouse, or, if there be none;

(2) to his or her natural or adopted children, or, if there be none;

(3) to his or her estate;

and if payable to more than one person in a class, all persons in that class shall share equally. Similarly, if the designated Beneficiary survives the Participant but dies before receiving the

entire Benefit otherwise payable (and he or she is not survived by a secondary Beneficiary, or the second Beneficiary also dies), the remainder shall be paid in a lump sum to the heir or heirs of the last surviving designated Beneficiary in accordance with priorities (1) through (3) above.

5.9 <u>Distribution Only Upon Written Instructions and Release for Payment</u>. All distributions under the Plan shall be made by the Trustee only upon receipt of written instructions furnished by the Administrative Committee setting forth the name and address of the recipient, and the amount and manner of distribution. In making any such distribution, the Trustee shall be fully entitled to rely on the instructions furnished by the Administrative Committee, and shall be under no duty to make any inquiry or investigation with respect thereto. Any payment to any Participant, Participant's legal representative or guardian, or Beneficiary, in accordance with the provisions of this Plan and Trust, shall, to the extent thereof, be in full satisfaction of all claims hereunder against the Trustee, Employer, and Plan Administrator. The Trustee or Plan Administrator may require such Participant, legal representative or guardian, or Beneficiary, as a condition precedent to such payment, to execute a receipt and release thereof in such form as shall be determined by the Trustee or Plan Administrator.

5.10 <u>Direct Rollover</u>.

(a)  <u>General Application</u>

Notwithstanding any provision of the Plan to the contrary that would otherwise limit a distributee's election under this Section 5.10, a distributee may elect, at the time and in the manner prescribed by the Plan Administrator to have any portion of an eligible rollover

distribution paid directly to an eligible retirement plan specified by the distributee in a direct rollover.

    (b)  <u>Definitions.</u>

        (1)  <u>Eligible rollover distribution</u>:  An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include:  any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under Section 401(a)(9) of the Code; and the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities); and, effective January 1, 1999, any hardship distribution described in Section 401(k)(2)(B)(i)(IV), 403(b)(7) or 403(b)(11) of the Code. For distributions made after December 31, 2001, an eligible rollover distribution may include the portion of any distribution that is not includable in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities).

        (2)  <u>Eligible retirement plan</u>:  An eligible retirement plan is an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408(b) of the Code, an annuity plan described in Section 403(a) of the Code, or a qualified trust described in Section 401(a) of the Code, that accepts the distributee's eligible rollover distribution.  In the case of an eligible rollover distribution to the surviving spouse, for distributions made prior to January 1, 2002, an eligible retirement

54

plan is an individual retirement account or individual retirement annuity, and for distributions made after December 31, 2001, an eligible retirement plan shall also include a qualified trust described in Section 401(a) of the Code. For distributions made after December 31, 2001, an eligible retirement plan with respect to that portion of an eligible rollover distribution that is not includable in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities) shall be a qualified trust under section 401(a) of the Code which is a defined contribution plan and which separately accounts for amounts so transferred (including separately accounting for the portion of such distribution which is includable in gross income and the portion of such distribution which is not so includable), an individual retirement account described in section 408(a) of the Code, or an individual retirement annuity described in section 408(b) of the Code.

(3) Distributee: A distributee includes a Participant or former Participant. In addition, the Participant's or former Participant's surviving spouse and the Participant's or former Participant's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in Section 414(p) of the Code, are distributees with regard to the interest of the spouse or former spouse.

(4) Direct rollover: A direct rollover is a payment by the Plan to the eligible retirement plan specified by the distributee.

5.11 Distribution for Minor or Incompetent Beneficiary. In the event any amount is distributable to a minor or to any person who, in the judgment of the Plan Administrator or the Trustee, is incapable of making proper disposition thereof, such payment shall be made for the benefit of such minor or such incompetent in any of the following ways as the Plan

55

Administrator, in its sole discretion, shall determine:

     (a)  to the legal representative of such minor or such person;

     (b)  to anyone with whom such minor or such person resides;

     (c)  directly to such minor or such person; or

     (d)  in discharge of such minor's or such person's bills.

The Trustee may make such payments without the intervention of any guardian or fiduciary, and without obligation to require bond, or to see to the further application of such payments. Any such payment shall fully discharge the Trustee, Employer, Plan Administrator and the Plan from further liability on account thereof.

     5.12 <u>Location of Participant or Beneficiary Unknown</u>.  In the event that all, or any portion, of the distribution payable to a Participant or his or her Beneficiary hereunder shall remain unpaid solely by reason of the inability of the Plan Administrator, after sending a certified letter, return receipt requested, to the last known address, and after further diligent effort, to ascertain the whereabouts of such Participant or his or her Beneficiary, the amount so payable shall be paid to a passbook account, moneymarket account, or similar interest-bearing account, established by the Plan Administrator, and remain in such account until such time as the Participant or Beneficiary makes a claim for such distribution, which shall be payable in accordance with the terms of the Plan.  Reasonable expenses incurred in the attempt to locate such Participant or Beneficiary in excess of expenses ordinarily incurred in locating Participants or Beneficiaries (as determined by the Plan Administrator) shall be charged against the Benefit of such Participant or Beneficiary.

# ARTICLE 6

## VESTING

6.1 <u>Employer Contributions</u>.  A Participant's Accrued Benefit shall be vested and nonforfeitable as follows.

   (a) <u>Nonforfeitable Benefit at Normal Retirement Age or Death</u>.  A Participant who is employed by the Employer on attainment of Normal Retirement Age or the date of his or her death shall be fully vested and have a nonforfeitable right to his or her Accrued Benefit.

   (b) <u>Nonforfeitable Benefit Upon Termination of Employment</u>.  If a Participant terminates from employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, with the Employer other than by reason of death, he or she shall be vested and have a nonforfeitable right to his or her Accrued Benefit after having completed five (5) Years of Service. Notwithstanding the preceding sentence, a Participant who was employed by the Employer on June 30, 1999 and was earning benefits under the Kwasha Lipton Retirement Plan on that date shall be vested and have a nonforfeitable right upon termination of employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, other than by reason of death, as follows:

| Completed Years of Service | Vested Percentage |
|---|---|
| Less than 3 | 0% |
| 3 | 20% |
| 4 | 40% |
| 5 or more | 100% |

Upon a Participant's termination from employment with the Employer, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, other than by reason of death, the Accrued Benefit of a Participant who is not vested and to which the Participant does not have a nonforfeitable right shall be forfeited as of the last business day of the second calendar month following the calendar month in which the Participant's termination from employment occurs or in which the Participant ceases to be active; provided, however, that in the case of a Participant who must maintain independence from the Employer his Accrued Benefit shall be forfeited as of the date of his final Deemed Payroll Period Allocation.

For purposes of this Section 6.1, Hours of Service shall include Hours of Service prior to the Effective Date. Prior to July 1, 1999, in the case of a Participant who has incurred a 1-year Break in Service, Years of Service before such Break are not taken into account until the Participant has completed a Year of Service after such Break in Service. In the case of a Participant who has 5 or more consecutive 1-year Breaks in Service, such Participant's pre-Break service will count in determining the Participant's nonforfeitable benefit that accrues after the Break only if either:

(1)   such Participant has any nonforfeitable benefit at the time of separation from service; or

58

(2)  upon returning to service the number of consecutive 1-year Breaks in Service is less than the number of Years of Service.

6.2  Amendments Affecting Benefits.

(a)  Reduction in Benefits.  No amendment to the Plan shall decrease a Participant's Accrued Benefit.  No amendment to the Plan shall have the effect of decreasing a Participant's nonforfeitable percentage determined without regard to such amendment as of the later of the date such amendment is adopted or the date it becomes effective.

(b)  Change in Vesting Schedule.  If the Plan's vesting schedule is amended, or the Plan is amended in any way that directly or indirectly affects the computation of a Participant's nonforfeitable percentage, each Participant with at least three (3) Years of Service with the Employer may elect, within a reasonable period after the adoption of the amendment, to have the nonforfeitable percentage computed under the Plan without regard to such amendment.  The Participant's election may be made at any time during the period ending on the latest of:

(1)  sixty (60) days after the amendment is adopted;

(2)  sixty (60) days after the amendment becomes effective; or

(3)  sixty (60) days after the Participant is issued written notice of the amendment by the Employer or the Plan Administrator.