# ARTICLE 7

## LIMITATIONS ON BENEFITS

7.1  <u>General Limit</u>.  No benefit shall be paid under this Plan, to the extent that the sum of (i) the Equivalent Life Annuity for such benefit, (ii) the Prior Benefit Amount, and (iii) the Equivalent Life Annuity of the Unpaid Benefit Amount exceeds the least of (A) the Defined Benefit Dollar Limit, (B) the Percentage Limit or (C) the Combined Limit.

7.2  <u>Adjustment to Limits</u>.

(a)  <u>Adjustment for Early Retirement</u>.  If a Participant's Benefit Commencement Date is before the Participant's Social Security Retirement Age, the Defined Benefit Dollar Limit shall be adjusted as follows:

(i)  Where the Benefit Commencement Date is prior to the Social Security Retirement Age but not prior to age 62, the Defined Benefit Dollar Limit shall be reduced by 5/9 of 1% for each month prior up to the Social Security Retirement Date up to 36 months and by 5/12 of 1% for each month prior to the Social Security Retirement Date in excess of 36 months.  Effective for Benefit Commencement Dates on or after January 1, 2002, the Defined Benefit Dollar Limit shall not be reduced for Benefit Commencement Dates on or after the attainment of age 62.

(ii)  Where the Benefit Commencement Date is prior to age 62, the Defined Benefit Dollar Limit shall be the (A) times (((B) times (C)) divided by (D)), where:

(A)  is the Defined Benefit Dollar Limit at age 62, determined in accordance with (a) above;

(B)  is the present value of a $1 life annuity at age 62 using the GATT Rates and Factors at the Benefit Commencement Date;

(C)  is the present value factor of $1 using the interest rate described in the GATT Rates and Factors and assuming no mortality for the period between the Benefit Commencement Date and the date the Participant attains age 62; and

(D)  is the present value of a $1 life annuity at the Participant's Benefit Commencement Date using the GATT Rates and Factors.  Provided, however, that for Benefit Commencement Dates on or after January 1, 2000 and prior to age 62, the Defined Benefit Dollar Limit shall never be greater than (A) multiplied by the applicable fraction set forth in Column B of Section 4(b) of Appendix B and divided by 82%.

(b)  <u>Adjustment for Late Retirement</u>.  If a Participant's Benefit Commencement Date is after the Participant's Social Security Retirement Age, the Defined Benefit Dollar Limit shall be (i) times (((ii) times (iii)) divided by (iv)), where:

(i)  Is the Defined Benefit Dollar Limit for a Participant at Social Security Retirement Age;

(ii)  Is the present value of a $1 life annuity at the Participant's Social Security Retirement Age using the lesser of (A) five percent (5%) or (B) the interest rate designated in Section 2.16 of the Plan at the Benefit Commencement Date;

(iii)  Is the present value factor of $1 using the interest rate described in the GATT Rates and Factors and assuming no mortality for the period between the Participant's Social Security Retirement Date and his or her Benefit Commencement Date; and

(iv)  Is the present value of a $1 life annuity at the Participant's Benefit

61

Commencement Date using the GATT Rates and Factors. Provided, however, if the Participant's Benefit Commencement Date is on or after January 1, 2000 and after Social Security Retirement Age, the Defined Benefit Dollar Limit shall not be greater than (i) actuarially increased in accordance with Section 10(b) of Appendix B.

(c)  Adjustment of Limitation for Years of Participation. If the Participant has completed fewer than 120 months of active participation (within the meaning of Section 415(b)(5) of the Code) under any defined benefit plan maintained by the Employer, the Defined Benefit Dollar Limit shall be multiplied by a fraction whose numerator is the total months of active participation and whose denominator is 120.

(d)  Adjustment of Limitation for Years of Service. If the Participant has fewer than 120 months of service (within the meaning of Section 415(b)(5) of the Code), the Percentage Limit shall be multiplied by a fraction whose numerator is the total months of service and whose denominator is 120.

7.3  Definitions. For purposes of this Article 7 the following definitions shall apply:

(a)  Average Three Year 415 Pay. The average 415 Compensation for the three consecutive years of service with the Employer that produces the highest average.

(b)  Benefit Commencement Date. The date as of which any benefit is payable under this Plan.

(c)  Combined Limit. Effective for Limitation Years beginning prior to January 1, 2000, the lesser of (i) and (ii), where:

(i)  Is the product of (A) times (B) times (C) times (D), where:

(A) is 1.00 minus the Defined Contribution Fraction,

(B) is 1.25,

(C) is the lesser of 1.00 or the service fraction calculated under Section 7.2(d), and

(D) is the Defined Benefit Dollar Limit (determined without regard to Section 7.2(c)); and

(ii) Is the product of (A) times (B) times (C), where

(A) is 1.00 minus the Defined Contribution Fraction,

(B) is 1.40, and

(C) is the Percentage Limit (including adjustments described in Section 7.2(d)).

(d)  Defined Benefit Dollar Limit. $90,000 or such higher amount promulgated by the Commissioner of Internal Revenue to reflect inflation. Any increase in the Defined Benefit Dollar Limit shall apply to Limitation Years ending within the calendar year of the date of the adjustment of such limit. Effective for Benefit Commencement Dates on or after January 1, 2002, and for purposes of Sections 7.1 and 7.2 only, the Defined Benefit Dollar Limit shall be $160,000 or such higher amount promulgated by the Commissioner of Internal Revenue to reflect inflation. For purposes of Section 7.4(g), the Defined Benefit Dollar Limit up to $140,000 shall continue to be defined by the first sentence of this Section 7.3(d).

(e)  Defined Contribution Fraction. A fraction whose numerator is the sum of annual additions to defined contribution plans (within the meaning of Section 415(c)(2) of the Code) and whose denominator is the sum for each Limitation Year of the lesser of (i) the product of (A) 1.25 times (B) the limit described in Section 415(c)(1)(A) of the Code for such

63

Limitation Year and (ii) the product of (C) 1.4 and (D) the limit described in Section 415(c)(1)(B) of the Code for such Limitation Year.

(f)   Equivalent Life Annuity.  A life annuity calculated in accordance with this Section 7.3(f), which, except as provided in (iii) below, is determined as of the Benefit Commencement Date as of which a benefit actually paid is payable under the Plan.

(i)   If a Participant's benefit is payable in the form of a single-life annuity or a Qualified Joint and Survivor Annuity, the Equivalent Life Annuity shall be the annuity actually provided to the Participant.

(ii)   For Benefit Commencement Dates prior to January 1, 2000, if a Participant's benefit is payable in any form other than a single-life annuity or a Qualified Joint and Survivor Annuity, the Equivalent Life Annuity shall equal a single-life annuity, payable at the Benefit Commencement Date, that is the Actuarial Equivalent of the actual benefit being paid, based on the GATT Rates and Factors in effect as of such Benefit Commencement Date.  For Benefit Commencement Dates on or after January 1, 2000, if a Participant's benefit is payable as a lump sum, the Equivalent Life Annuity shall equal a single-life annuity, payable at the Benefit Commencement Date, that is the Actuarial Equivalent of the lump sum based on the applicable interest rate and mortality table specified in Section 2.2 of the Plan.  Also for Benefit Commencement Dates on or after January 1, 2000, if a Participant's benefit is payable in a form described in Section 9(a) through 9(f) of Appendix B, the Equivalent Life Annuity shall equal a single-life annuity, payable at the Benefit Commencement Date, that is the Actuarial Equivalent of the actual benefit being paid based on (1) the factors specified in Section 12(a)(i) of Appendix B, (2) the factors specified in Section 12(a)(ii) of Appendix B or (3) five percent (5%) interest and the mortality table

64

specified in Section 2.2 of the Plan, whichever produces the largest Equivalent Life Annuity.

(iii) If a Participant's Benefit Commencement Date under any other defined benefit plan maintained by the Employer occurred prior to July 1, 1995, the Equivalent Life Annuity shall be determined as of July 1, 1995. Such adjustment shall be accomplished (A) first by increasing the amount of the benefit for the period from the prior Benefit Commencement Date through July 1, 1995 (using the interest rate described in the GATT Rates and Factors as of July 1, 1995, and assuming no mortality for such period) and next by converting the increased benefit to an Equivalent Life Annuity, based on the GATT Rates and Factors in effect on July 1, 1995.

(g)  415 Compensation. In the case of a common-law employee, 415 Compensation is W-2 taxable earnings. In the case of a Partner or Principal, 415 Compensation is total earned income, less the sum of contributions to each of the Profit Sharing Plan For Partners Of PricewaterhouseCoopers LLP, the Savings Plan For Employees And Partners of PricewaterhouseCoopers LLP, and this Plan, plus the deduction allowed by Section 164(f) of the Code (allowing a deduction for the self-employment tax). For limitation years beginning after December 31, 1997, 415 Compensation shall include any elective deferral (as defined in Section 402(g)(3) of the Code), and any amount which is contributed or deferred by the Employer at the election of the Participant and which is not includable in gross income of the Participant by reason of Section 125 or 457 of the Code. For limitation years beginning on and after January 1, 2001, 415 Compensation shall include elective amounts that are not includable in the gross income of the Participant by reason of Section 132(f)(4) of the Code.

(h)  GATT Rates and Factors.

(i)   The mortality table designated in Section 2.2 of the Plan, and

(ii)   The greater of (A) five percent (5%) or (B) the interest rate designated in Section 2.16 of the Plan.

(i)   <u>Limitation Year</u>.  The calendar year.

(j)   <u>Percentage Limit</u>.  One hundred percent (100%) of the Participant's Average Three-Year 415 Pay.

(k)   <u>Prior Benefit Amount</u>.  If, prior to any Benefit Commencement Date, a Participant has received a distribution from this Plan or any other defined benefit plan maintained by the Employer on a prior Benefit Commencement Date, the Prior Benefit Amount shall equal the product of (i) x (ii) x (iii), where:

(i) Is the lesser of:

(A)  the Defined Benefit Dollar Limit (determined without regard to Section 7.2(c)), or

(B)  the Percentage Limit (determined without regard to Section 7.2(d)),

determined in each case as of the current Benefit Commencement Date (but disregarding increases in the Defined Benefit Dollar Limit to reflect increases for inflation since the actual prior Benefit Commencement Date);

(ii)  Is the adjustment for years of participation described in Section 7.2(c) as of the current Benefit Commencement Date; and

(iii) Is the Prior Distribution Ratio.

(l)   <u>Prior Distribution Ratio</u>.  The quotient of (i) divided by (ii), where:

66

(i)   Is the Equivalent Life Annuity of the amount distributed on such prior Benefit Commencement Date; and

(ii)   Is the lesser of:

(A) the Defined Benefit Dollar Limit (determined without regard to Section 7.2(c)), or

(B) the Percentage Limit (determined without regard to Section 7.2(d)),

determined in each case as of the prior Benefit Commencement Date. In the event the prior Benefit Commencement Date occurred before July 1, 1995, the Defined Benefit Dollar Limit and the Percentage Limit shall be determined as of July 1, 1995, but the Defined Benefit Dollar Limit shall not be adjusted to reflect increases for inflation since the actual prior Benefit Commencement Date.

(m)  Unpaid Benefit Amount.  If as of any Benefit Commencement Date, a Participant has any benefit in any defined benefit plan maintained by the Employer or an Affiliated Employer, which benefit has not commenced as of the Benefit Commencement Date, the Unpaid Benefit Amount shall be the benefit payable under such plan as of the Benefit Commencement Date, payable in the form of a lump-sum payment based on the GATT Rates and Factors as of the Benefit Commencement Date.

7.4  Definitions.  For purposes of Section 2.15 the following definitions apply:

(a)  Calculation Age.  Lesser of age nearest birthdate as of the first day of the Plan Year or age 62.

(b) <u>Calculation Assumptions</u>. 8% interest, as specified, and the mortality table in Rev. Rul. 95-6 with no changes for successive mortality tables.

(c) <u>Calculation Equivalence Factor</u>. A factor equal to the product of (i) multiplied by (ii), divided by (iii), where:

(i)  Is the discount factor from age 62 to the Calculation Age based upon 5% interest,

(ii)  Is the Immediate Annuity Factor at age 62 at 5% interest, and

(iii) Is the Immediate Annuity Factor at the Calculation Age at 5%. interest.

(d) <u>Fiscal Year 1995</u>. The fiscal year ended June 30, 1995.

(e) <u>Hypothetical Accrual</u>.

(i)  In the case of a Partner or Principal whose birthdate is on or before June 30, 1950, the Hypothetical Accrual is the least of (a), (b) and (c), where:

(a)  Is 1/10 of the Hypothetical Dollar Limit. Notwithstanding the foregoing, for Plan Years ending June 30, 1996 and June 30, 1997, this Section 7.4(e)(i)(a) shall be 17.5% of the Hypothetical Dollar Limit. Notwithstanding the foregoing, effective only for Plan Years ending June 30, 1998 and June 30, 1999, with respect to Partners and Principals who were partners or principals of Price Waterhouse LLP on June 30, 1998, this Section 7.4(e)(i)(a) shall be 17.5% of the Hypothetical Dollar limit. Notwithstanding the foregoing, effective for the Plan Year ending June 30, 1999, with respect only to Partners and Principals who were not (1) partners or principals of Price Waterhouse LLP on June 30, 1998, (2) previously principals of Applied Decision Analysis, Inc., and (3) partners or principals of Coopers & Lybrand L.L.P. on June 30, 1998, this Section 7.4(e)(i)(a) shall be 17.5% of the Hypothetical Dollar Limit. Notwithstanding the foregoing, effective for the

Plan Year beginning July 1, 1999 and Plan Years thereafter, this Section 7.4(e)(i)(a) shall be 17.5% of the Hypothetical Dollar Limit. Notwithstanding the foregoing, effective for the Plan Year beginning July 1, 2000 and Plan Years thereafter, this Section 7.4(e)(i)(a) shall be 10% of the Hypothetical Dollar Limit for a Partner or Principal who becomes a Partner or Principal on or after July 1, 1998 after having been an employee of the Employer for not less than one year immediately prior to becoming a Partner or Principal.

(b)  Is the maximum additional accrual so that the sum of such accrual and the result of the Accrued Benefit divided by the Calculation Equivalence Factor further divided by the Immediate Annuity Factor at 8% interest at the Calculation Age does not exceed the Hypothetical Dollar Limit multiplied by the fraction calculated in 7.2(c) as of the last day of the Plan Year, and

(c)  Is the maximum additional accrual so that the sum of such accrual and the result of the Accrued Benefit divided by the Calculation Equivalence Factor further divided by the Immediate Annuity Factor at 8% interest at the Calculation Age does not exceed the Hypothetical Combined Limit as of the last day of the Plan Year. Notwithstanding the foregoing, effective for Plan Years ending on or after June 30, 1997, this Section 7.4(e)(i)(c) is deleted and left intentionally blank.

(ii)  In the case of a Partner or Principal whose birthdate is later than June 30, 1950, the Hypothetical Accrual is the least of (a), (b) and (c), where:

(a)  Is the Hypothetical Dollar Limit divided by the greater of ten and the number of years from the Partner's or Principal's age nearest birthdate on the beginning of the first year such Partner or Principal participates in the Plan to age 60. Notwithstanding the foregoing, for Plan Years ending June 30, 1996 and June 30, 1997, this Section 7.4(e)(ii)(a)

shall be 10% of the Hypothetical Dollar Limit.  Notwithstanding the foregoing, effective only for Plan Years ending June 30, 1998 and June 30, 1999, with respect to Partners and Principals who were partners or principals of Price Waterhouse LLP on June 30, 1998, this Section 7.4(e)(ii)(a) shall be 17.5% of the Hypothetical Dollar Limit.  Notwithstanding the foregoing, effective for the Plan Year ending June 30, 1999, with respect only to Principals of PricewaterhouseCoopers LLP who were previously principals of Applied Decision Analysis, Inc., all such Principals shall be deemed to have a birthdate later than June 30, 1950, and this Section 7.4(e)(ii)(a) shall be 10% of the Hypothetical Dollar Limit.  Notwithstanding the foregoing, effective for the Plan Year ending June 30, 1999, with respect only to Partners and Principals who were not (1) partners or principals of Price Waterhouse LLP on June 30, 1998, (2) previously principals of Applied Decision Analysis, Inc., and (3) partners or principals of Coopers & Lybrand L.L.P. on June 30, 1998, this Section 7.4(e)(ii)(a) shall be 10% of the Hypothetical Dollar Limit.  Notwithstanding the foregoing, effective for the Plan Year beginning July 1, 1999 and Plan Years thereafter, this Section 7.4(e)(ii)(a) is the percentage of the Hypothetical Dollar Limit determined under Section 7.4(e)(i)(a), as if such Partner or Principal's birthdate was on or before June 30, 1950. Notwithstanding the foregoing, effective for the Plan Year beginning July 1, 2000 and Plan Years thereafter, this Section 7.4(e)(ii)(a) shall be 10% of the Hypothetical Dollar Limit for a Partner or Principal who becomes a Partner or Principal on or after July 1, 1998 after having been an employee of the Employer for not less than one year immediately prior to becoming a Partner or Principal.

(b)  Is the maximum additional accrual so that the sum of such accrual and the result of the Accrued Benefit divided by the Calculation Equivalence Factor further divided by the Immediate Annuity Factor at the Calculation Age at 8% interest does not

exceed the Hypothetical Dollar Limit multiplied by a fraction calculated as of the last day of the Plan Year, the numerator of which is the number of years of active participation under any defined benefit plan maintained by the Employer and the sum of (1) the denominator of which is the greater of ten and the number of years from the Partner's or Principal's age nearest birthdate on the beginning of the first year such Partner or Principal participates in the Plan to age 60, and (2) the number of years of participation in other defined benefit plans on the date the Partner or Principal participates in the Plan. Notwithstanding the foregoing, for Plan Years ending June 30, 1996 and June 30, 1997, this Section 7.4(e)(ii)(b) shall be the maximum additional accrual so that the sum of such accrual and the result of the Accrued Benefit divided by the Calculation Equivalence Factor further divided by the Immediate Annuity Factor at 8% interest at the Calculation Age does not exceed the Hypothetical Dollar Limit multiplied by the fraction calculated in Section 7.2(c) as of the last day of the Plan Year. Notwithstanding the foregoing, effective only for Plan Years ending June 30, 1998 and June 30, 1999, with respect to Partners and Principals who were partners or principals of Price Waterhouse LLP on June 30, 1998, this Section 7.4(e)(ii)(b) shall be the maximum additional accrual so that the sum of such accrual and the result of the Accrued Benefit divided by the Calculation Equivalence Factor further divided by the Immediate Annuity Factor at 8% interest at the Calculation Age does not exceed the Hypothetical Dollar Limit multiplied by the fraction calculated in Section 7.2(c) as of the last day of the Plan Year. Notwithstanding the foregoing, effective for the Plan Year ending June 30, 1999, with respect only to Principals of PricewaterhouseCoopers LLP who were previously principals of Applied Decision Analysis, Inc., all such Principals shall be deemed to have a birthdate later than June 30, 1950, and this Section 7.4(e)(ii)(b) shall be the maximum additional accrual so

that the sum of such accrual and the result of the Accrued Benefit divided by the Calculation

Equivalence Factor further divided by the Immediate Annuity Factor at 8% interest at the

Calculation Age does not exceed the Hypothetical Dollar Limit multiplied by the fraction

calculated in Section 7.2(c) as of the last day of the Plan Year.  Notwithstanding the

foregoing, effective for the Plan Year ending June 30, 1999, with respect only to Partners and

Principals who were not (1) partners or principals of Price Waterhouse LLP on June 30,

1998, (2) previously principals of Applied Decision Analysis, Inc., and (3) partners or

principals of Coopers & Lybrand L.L.P. on June 30, 1998, this Section 7.4(e)(ii)(b) shall be

the maximum additional accrual so that the sum of such accrual and the result of the Accrued

Benefit divided by the Calculation Equivalence factor further divided by the Immediate

Annuity Factor at 8% interest at the Calculation Age does not exceed the Hypothetical Dollar

Limit multiplied by the fraction calculated in Section 7.2(c) as of the last day of the Plan

Year.  Notwithstanding the foregoing, effective for the Plan Year beginning July 1, 1999 and

Plan Years thereafter, this Section 7.4(e)(ii)(b) is deleted, and the maximum additional

accrual is determined under Section 7.4(e)(i)(b), as if such Partner's or Principal's birthdate

was on or before June 30, 1950, and

(c)    the amount defined in (e)(i)(c) above.  Notwithstanding the foregoing,

effective for Plan Years ending on or after June 30, 1997, this Section 7.4(e)(ii)(c) is deleted

and left intentionally blank.

(f)    Hypothetical Combined Limit.  The limit in Section 7.3(c)(i) where the Defined

Benefit Dollar Limit in Section 7.3(c)(i)(D) is the Hypothetical Dollar Limit, and the Defined

Contribution Fraction is the greater of the amount calculated as of the last day of the Plan

Year and two-tenths (.2).

(g)  <u>Hypothetical Dollar Limit</u>.  The Hypothetical Dollar Limit is the product of (i) and (ii), where:

(i)  Is the difference of (a) minus (b), where (a) is the product of the Defined Benefit Dollar Limit (as defined in the first sentence of Section 7.3(d)) at Social Security Retirement Age and the Social Security Reduction Factor at age 65 and (b) is the Other DB Adjustment, and

(ii)  Is a fraction whose numerator is the Social Security Reduction Factor at age 62 and whose denominator is the Social Security Reduction Factor at age 65.

(h)  <u>Immediate Annuity Factor</u>.  Present value factor for a life annuity using Calculation Assumptions at interest, as specified.

(i)  <u>Other DB Adjustment</u>.  The equivalent annual life annuity payable at age 65 of amounts paid from the Plan or from any other defined benefit plans, or accrued in any other defined benefit plans.

(j)  <u>Share Ratio for a Plan Year</u>.  A fraction not to exceed 1 where the numerator is the Total Cash Distribution made to the Partners and Principals in the Fiscal Year coincided with the Plan Year divided by the number of shares held by Active Partners and Principals in such Fiscal Year and whose denominator is the Total Cash Distribution made to all Partners and Principals in Fiscal Year 1995 divided by the number of shares held in Fiscal Year 1995 by Active Partners and Principals.

(k)  <u>Social Security Reduction Factor</u>.  The Social Security Reduction Factor is the reduction factor defined under (after June 30, 2002, defined in the first sentence of ) Section 7.2(a)(i).

(l)  <u>Total Cash Distribution</u>.  The sum of all gross earnings for all Partners and

Principals.

(m) <u>Unadjusted Allocation</u>.  For Plan Years beginning prior to July 1, 1999, the product of (i) multiplied by (ii) multiplied by (iii) multiplied by (iv), where:

    (i)   Is the Hypothetical Accrual,

    (ii)  Is the Calculation Equivalence Factor at the Calculation Age,

    (iii) Is the Immediate Annuity Factor at 8% interest at the Calculation Age, and

    (iv) Is a fraction the numerator of which is the sum of the months during which a Partner or Principal is active and not on a medical leave of absence and the denominator of which is twelve (12).  For Plan Years beginning after June 30, 1999, the product of (i) multiplied by (ii) multiplied by (iii) multiplied, where:

    (i)   Is the Hypothetical Accrual,

    (ii)  Is the Calculation Equivalence Factor at the Calculation Age,

    (iii) Is the Immediate Annuity Factor at 8% interest at the Calculation Age.

## ARTICLE 8

## PLAN LOANS

8.1  <u>Loans to Participants</u>.  Loans to a Participant from his or her Deemed Account Balance are not permitted.

# ARTICLE 9

## TOP-HEAVY

9.1  <u>Applicability of Top Heavy Rules</u>.  If the Plan is or becomes a Top Heavy Plan, the provisions of this Article 9 shall apply and shall supersede all other conflicting provisions of the Plan during any Plan Year in which the Plan is Top Heavy.

9.2  <u>Top Heavy Status</u>.

(a)  <u>Determination</u>.  The Plan shall be a Top Heavy Plan if any of the following conditions exist:

(1)  If the top heavy ratio for the Plan exceeds sixty percent (60%) and the Plan is not part of any required aggregation group or permissive aggregation group of plans.

(2)  If the Plan is part of a required aggregation group of plans but not part of a permissive aggregation group and the top heavy ratio for the group of plans exceeds sixty percent (60%).

(3)  If the Plan is part of a required aggregation group and part of a permissive aggregation group of plans and the top heavy ratio for the permissive aggregation group exceeds sixty percent (60%).

Solely for the purpose of determining if the Plan, or any other plan included in a required aggregation group of which the Plan is a part, is top heavy (within the meaning of Section 416(g) of the Code) the accrued benefit of an Employee other than a key employee (within the meaning of Section 416(i)(1) of the Code) shall be determined under (a) the method, if any, that uniformly applies for accrual purposes under all plans maintained by the Affiliated

Employers, or (b) if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional accrual rate of Section 411(b)(1)(C) of the Code.

(b)  Top Heavy Ratio.  The top heavy ratio shall be determined as follows:

(1)  If the Employer sponsors one or more defined benefit plans (including any simplified employee pension plans) and the Employer has never maintained any defined contribution plans which have covered or could cover a Participant in the Plan, the top heavy ratio shall be a fraction, the numerator of which is the sum of the present value of accrued benefits of all Key Employees as of the determination date (including any part of any accrued benefit distributed during the five (5) year period ending on the determination date), and the denominator of which is the sum of the present value of all accrued benefits (including any part of any accrued benefit distributed in the five (5) year period ending on the determination date) of all Participants as of the determination date, determined in accordance with Section 416 of the Code and the regulations thereunder.

(2)  If the Employer sponsors one or more defined benefit plans (including any simplified employee pension plan) and the Employer sponsors or has sponsored one or more defined contribution plans which have covered or could cover a Participant, the top heavy ratio is a fraction, the numerator of which is the sum of (A) the present value of accrued benefits for all Key Employees under the defined benefit plans determined under Paragraph (1), above, and (B) the sum of the account balances of all Key Employees under the aggregated defined contribution plans for all Key Employees as of the determination date(s), and the denominator of which is the sum of (i) the present value of accrued benefits of all participants under the aggregated defined benefit plans determined under (1), above, and (ii)

the sum of the account balances of all participants under the aggregated defined contribution plans, determined in accordance with Section 416 of the Code and the regulations thereunder. Both the numerator and the denominator of the top heavy ratio shall be adjusted for any distribution of an account balance or accrued benefit made in the five (5) year period ending on the determination date.

(3)  The account balances and accrued benefits of a Participant who was formerly a Key Employee but who is not a Key Employee during the current Plan Year shall be disregarded in calculating the numerator and denominator of the top heavy ratio.

(4)  The account balances and accrued benefits of a Key Employee who has not performed any services for the Employer at any time during the five year period ending on the determination date shall not be taken into account in determining the top heavy ratio.

(5)  In calculating the top heavy ratio, the valuation date for determining the value of account balances and the present value of accrued benefits shall be the most recent accounting date that occurs within or ends with the twelve (12) month period ending on the determination date, except as provided in Section 416 of the Code and the regulations thereunder for the first and second plan years of a defined benefit plan. When aggregating plans, the value of account balances and accrued benefits shall be calculated with reference to the determination dates occurring within the same calendar year.

(6)  Any deductible contributions made by Participants shall not be included in computing the top heavy ratio. The extent to which distributions, rollovers, and trustee-to-trustee transfers are taken into account in determining the top heavy ratio shall be determined pursuant to Section 416 of the Code and the regulations thereunder.

9.3   Minimum Accrued Benefit.

(a)   Minimum Accrual.  Notwithstanding any other provision in this Plan except as provided in Subsections (c) and (d) below, for any Plan Year in which the Plan is Top Heavy, each Participant who is not a Key Employee and has completed 1,000 Hours of Service shall accrue a benefit (to be provided solely by Employer Contributions and expressed as a life annuity commencing at Normal Retirement Date) of not less than two percent (2%) of his or her highest average compensation for the five (5) consecutive years for which the Participant had the highest compensation.  The minimum accrual of a Participant who remains employed with the Employer following his Normal Retirement Date shall be nonforfeitable.  The minimum accrual is determined without regard to any Social Security contribution.  The minimum accrual applies even though under other Plan provisions the Participant would not otherwise be entitled to receive an accrual, or would have received a lesser accrual for the year because (1) the non-Key Employee fails to make mandatory contributions to the Plan or (2) the non-Key Employee's Compensation is less than a stated amount.

(b)   Top Heavy Compensation.  For purposes of computing the minimum accrued benefit, Top Heavy compensation shall include either (1) all compensation, as such term is defined for Section 415 purposes, (2) all wages subject to tax under Section 3101(a) of the Code without the dollar limitation of Section 3121(a) of the Code or (3) W-2 wages for the calendar year ending with or within the Plan Year.

(c)   Limit on Accruals.  No additional benefit shall be accrued pursuant to Subsection (a) above, to the extent that the total accruals on behalf of the Participant attributable to Employer Contributions will provide a benefit expressed as a life annuity commencing at Normal Retirement Date that equals or exceeds twenty percent (20%) of the

Participant's highest average compensation for the five (5) consecutive years for which the Participant had the highest compensation.

(d)  <u>Coverage by Other Plans</u>.  The provisions in Subsection (a), above, shall not apply to any Participant to the extent that the Participant is covered under any other plan or plans sponsored by the Employer and the minimum allocation or benefit requirement applicable to this Top Heavy Plan will be met in the other plan or plans.  It is intended that the Top Heavy minimum accruals will be provided under this Plan.

9.4  <u>Vesting Requirement and Schedule</u>.  Notwithstanding the provisions of Article 6, for any Plan Year during which the Plan is a Top Heavy Plan, the following vesting schedule shall be applicable if it would produce a greater vesting percentage for a Participant than that prescribed by Article 6:

| Years of Vesting Service | Percent Vested |
|---|---|
| Less than 3 Years | 0% |
| 3 or more Years | 100% |

In the event the Plan ceases to be a Top Heavy Plan, the vesting percentage for a Participant who has completed three (3) Years of Service shall be determined from the foregoing vesting schedule or the provisions set forth in Article 6, whichever produces the greater vested interest.  If a Participant had not completed five (5) Years of Service prior to January 1, 1989, his vested interest shall be equal to the greater of (a) or (b) below.

80

(a)  Is the product of the vesting percentage from the vesting schedule above and the Participant's Accrued Benefit as of the last day of the most recent Plan Year during which the Plan was a Top Heavy Plan, and

(b)  Is the Participant's vested interest determined under the provisions of Article 6.

9.5  Definitions.  The following words and phrases shall have the meanings set forth below for purposes of this Article 9:

(a)  Determination Date:  The last day of the first Plan Year, and for subsequent Plan Years, the last day of the preceding Plan Year.

(b)  Key Employee:  Any Employee or former Employee, and Beneficiaries of such Employee, who at any time during the Plan Year or any of the four preceding Plan Years was:

(1)  An officer of the Employer with Compensation that exceeds fifty percent (50%) of the dollar limitation in Section 415(b)(1)(A) of the Code in effect for such Plan Year,

(2)  One of the ten (10) Employees owning (or considered to own under Section 318 of the Code) the largest interests in the Employer, provided the Employee's Compensation from the Employer for the Plan Year exceeds the maximum dollar limitation in effect under Section 415(c)(1)(A) of the Code for the Plan Year,

(3)  An Employee owning at least a five percent (5%) interest in the Employer, or

(4)  An Employee with Compensation from the Employer of more than $150,000 for the Plan Year who is a one percent (1%) owner of the Employer.

The determination of who is a Key Employee shall be made in accordance with Section 416(i)(1) of the Code and the regulations thereunder.

(c)  <u>Non-Key Employee</u>:  Any Employee other than a Key Employee.

(d)  <u>Permissive Aggregation Group</u>:  The required aggregation group of plans sponsored by the Employer, plus any other plan or plans of the Employer which would continue to satisfy the requirements of Sections 401(a)(4) and 410 of the Code when considered as a group with the required aggregation group.

(e)  <u>Present Value Factors</u>:  For purposes of determining the present value for this Article 9, the following factors shall be used:  the mortality table specified in Section 2.2 of the Plan, and five percent (5%) interest per annum.

(f)  <u>Required Aggregation Group</u>:  Each qualified plan sponsored by the Employer in which at least one Key Employee participates, and any other qualified plan sponsored by the Employer which enables a plan in which a Key Employee participates to meet the requirements of Section 401(a)(4) or 410 of the Code.

(g)  <u>Valuation Date</u>: The most recent accounting date that occurs within or ends with the twelve (12) month period ending on the determination date, except as provided in Section 416 of the Code and the regulations thereunder for the first and second plan years of a defined benefit plan.

# ARTICLE 10

## ADMINISTRATION

10.1 <u>Duties and Responsibilities of Fiduciaries; Allocation of Fiduciary Responsibility</u>.
A Fiduciary with respect to the Plan shall have only those specific powers, duties,
responsibilities, and obligations as are explicitly given him or her under this Plan and Trust.
In general, the Employer shall have the sole responsibility for making contributions to the
Plan. The Board of Partners and Principals shall have sole responsibility for appointing the
Trustee and the Plan Administrator. The Plan Administrator shall have the sole responsibility
for the administration of the Plan, as more fully described in Section 10.2. It is intended that
each Fiduciary shall be responsible only for the proper exercise of his or her own powers,
duties, responsibilities, and obligations under this Plan and Trust, and shall not be responsible
for any act or failure to act of another Fiduciary. A Fiduciary may serve in more than one
Fiduciary capacity with respect to the Plan.

10.2 <u>Powers and Responsibilities of the Plan Administrator</u>.

(a)  <u>Administration of the Plan</u>.  The Plan Administrator shall have full and
complete discretionary authority and all powers necessary to administer the Plan, including,
but not limited to, the power to construe and interpret the Plan documents; to decide all
questions relating to an individual's eligibility to participate in the Plan; to determine the
amount, manner, and timing of any distribution of benefits under the Plan; to resolve any
claim for benefits in accordance with Section 10.7; and to appoint or employ advisors,
including Investment Advisers, consultants and legal counsel, to render advice with respect to

any of the Plan Administrator's responsibilities under the Plan. It is intended that the discretion of the Plan Administrator be subject to the abuse of discretion standard set forth in Firestone Tire & Rubber Co. v. Bruch, 109 S. Ct. 948 (1989) Any construction, interpretation, or application of the Plan by the Plan Administrator shall be final, conclusive, and binding upon all persons. All actions by the Plan Administrator shall be taken pursuant to uniform standards applied to all persons similarly situated. The Plan Administrator shall have no power to add to, subtract from, or modify any of the terms of the Plan, or to change or add to any benefits provided by the Plan, or to waive or fail to apply any requirements of eligibility for a benefit under the Plan.

(b) Records and Reports. The Plan Administrator shall be responsible for maintaining sufficient records to reflect the Computation Periods in which an Employee is credited with one or more Years of Service for purposes of determining his or her vested benefit under the Plan, and the Compensation of each Participant for purposes of determining the Deemed Payroll Period Allocations on behalf of the Participant under the Plan. The Plan Administrator shall be responsible for submitting all required reports and notifications relating to the Plan to Participants or their Beneficiaries, the Internal Revenue Service, the Department of Labor, and the Pension Benefit Guaranty Corporation.

(c) Furnishing Trustee with Instructions. The Plan Administrator shall be responsible for furnishing the Trustee with written instructions regarding all contributions to the Trust, and all distributions to Participants. The Plan Administrator shall also advise the Trustee regarding projected liquidity needs of the Plan so that the Trustee may better exercise its investment discretion. In addition, the Plan Administrator shall be responsible for furnishing the Trustee with any further information respecting the Plan which the Trustee

may request for the performance of its duties or for the purpose of making any returns to the Internal Revenue Service, Department of Labor or the Pension Benefit Guaranty Corporation, as may be required of the Trustee.

(d) <u>Rules and Decisions</u>. The Plan Administrator may adopt such rules as it deems necessary, desirable, or appropriate in the administration of the Plan. All rules and decisions of the Plan Administrator shall be applied uniformly and consistently to all Participants in similar circumstances. When making a determination or calculation, the Plan Administrator shall be entitled to rely upon information furnished by a Participant or Beneficiary, the Employer, the legal counsel of the Employer, the Actuary or the Trustee.

(e) <u>Application and Forms for Benefits</u>. The Plan Administrator may require a Participant or Beneficiary to complete and file with it an application for a Benefit, and to furnish all pertinent information requested by it. The Plan Administrator may rely upon all such information so furnished to it, including the Participant's or Beneficiary's current mailing address.

(f) <u>Participant Advice</u>. The Plan Administrator shall have no responsibility to advise, counsel and assist any Participant regarding his or her rights, benefits or elections available under the Plan.

(g) <u>Mergers</u>. Notwithstanding any other provision of this Plan to the contrary, in the case of any provision of this Plan which the Plan Administrator is incapable of administering with respect to a group of Participants as a consequence of the merger of this Plan into the Coopers & Lybrand L.L.P. Retirement Plan (the "C&L Plan") effective as of July 1, 1999, the Plan Administrator shall administer this Plan with respect to such group of Participants according to: (1) the terms of such provision in the C&L Plan for former

participants in the C&L Plan, or (2) the terms of such provision in this Plan prior to any amendments made in connection with such merger until such time as the Plan Administrator is capable of administering such provision.

10.3  Allocation of Duties and Responsibilities.  The Plan Administrator may allocate among its members or employees any of its duties and responsibilities not already allocated under the Plan or may designate persons other than its members or employees to carry out any of the Plan Administrator's duties and responsibilities under the Plan.  If a person other than an Employee of the Employer is so designated, such person must acknowledge in writing his or her acceptance of the duties and responsibilities allocated to him.

10.4  Appointment of the Plan Administrator.  The Plan Administrator shall be the Administrative Committee, which shall be charged with the full power and the responsibility for administering the Plan in all its details.  The members of the Administrative Committee shall elect a Chairman from among the Administrative Committee and a Secretary who may, but need not, be one of the members of the Administrative Committee.  If no Administrative Committee has been appointed by the Board of Partners and Principals, or if the person(s) designated as the Administrative Committee by the Board of Partners and Principals is not serving as such for any reason, the Firm shall be deemed to be the Plan Administrator of the Plan.  The Plan Administrator may be removed by the Board of Partners and Principals, or may resign by giving notice in writing to the Board of Partners and Principals, and in the event of the removal, resignation, or death, or other termination of service by the Plan Administrator, the Board of Partners and Principals shall, as soon as practicable, appoint a

successor Plan Administrator, such successor thereafter to have all of the rights, privileges, duties, and obligations of the predecessor Plan Administrator.

10.5 <u>Expenses</u>.  The Trust shall pay all expenses authorized or incurred by the Plan Administrator in the administration of the Plan except to the extent such expenses are paid by the Firm.  Such expenses shall include Trustee's fees and expenses and expenses related to the duties of the Plan Administrator, including but not limited to fees of accountants, counsel and other specialists.  No compensation shall be paid to a Fiduciary who is an Employee of an Affiliated Employer.

10.6 <u>Claim Procedure</u>.

(a)  <u>Filing a Claim</u>.  Any Participant under the Plan may file a written claim for a benefit with the Plan Administrator or with a person named by the Plan Administrator to receive claims under the Plan.

(b)  <u>Notice of Denial of Claim</u>.  In the event of a denial or limitation of any benefit due to or requested by any Participant (or his Beneficiary) under the Plan, the Participant shall be given a written notification containing specific reasons for the denial of his or her benefit.  The written notification shall contain specific reference to the pertinent Plan provisions on which the denial is based.  In addition, the written notification shall contain a description of any additional material or information necessary for the Participant to perfect a claim, and an explanation of why such material or information is necessary.  The written notification shall further provide appropriate information as to the steps to be taken if the Participant wishes to submit his or her claim for review.  The written notification shall be

given to a Participant within ninety (90) days after receipt of his or her claim by the Plan

Administrator unless special circumstances require an extension of time, not to exceed ninety

(90) days from the end of the initial 90-day period, for processing the claim.  If such an

extension of time for processing is required, written notice of the extension shall be furnished

to the Participant prior to the termination of said initial 90-day period, and such notice shall

indicate the special circumstances which make the extension appropriate and the date by

which the Plan Administrator expects to render the final decision.

(c)  Right of Review.  In the event of a denial or limitation of his or her claim, the

Participant or his or her duly authorized representative shall be permitted to review pertinent

documents and to submit to the Plan Administrator issues and comments in writing.  In

addition, the Participant or his or her duly authorized representative may make a written

request for a full and fair review of his or her claim and its denial by the Plan Administrator;

provided, however that such written request must be received by the Plan Administrator

within sixty (60) days after receipt by the claimant of written notification of the denial or

limitation of the claim.  The 60-day requirement may be waived by the Plan Administrator in

appropriate cases.

(d)  Decision on Review.  A decision shall be rendered by the Plan Administrator

within sixty (60) days after the receipt of the request for review, provided that where special

circumstances require an extension of time for processing the decision, it may be postponed

on written notice to the Participant (prior to the expiration of the initial 60-day period) for an

additional sixty (60) days, but in no event shall the decision be rendered more than one

hundred twenty (120) days after the receipt of such request for review.  Any decision by the

Plan Administrator shall be furnished to the Participant in writing and shall set forth the

88

specific reasons for the decision and the specific Plan provisions on which the decision is based. Any decision by the Plan Administrator shall be final, conclusive, and binding on the Participant and all persons.

(e) <u>Court Action</u>. No Participant (or his or her Beneficiary) shall have the right to seek judicial review of a denial of benefits, or to bring any action in any court to enforce a claim for benefits, prior to filing a claim for benefits and exhausting his or her rights to review under this Section.

# ARTICLE 11

## TRUST FUND; POWERS, DUTIES AND IMMUNITIES OF TRUSTEE

11.1     <u>Receipt of Contributions by Trustee</u>.  All contributions to the Trust that are received by the Trustee, together with any earnings thereon, shall be held, managed and administered by the Trustee in accordance with the terms and conditions of this Plan and Trust.

11.2     <u>Investment Responsibility</u>.  Selection of the investments in which the assets of the Trust are to be invested shall be the responsibility of the Trustee, or an Investment Manager if appointed by the Trustee or Plan Administrator.  The Trustee shall be subject to the proper directions of the Firm or the Plan Administrator given in accordance with the terms of the Plan and ERISA.

11.3     <u>Appointment of Investment Manager</u>.  The Trustee may appoint or remove one or more Investment Managers to manage the investment of all or a portion of the Trust.

11.4     <u>No Prohibited Transaction</u>.  Nothing contained in this Article shall allow, permit or authorize any transaction or investment which would constitute a prohibited transaction within the meaning of Section 4975 of the Code or within the meaning of ERISA.

11.5     <u>Duties of Trustee Concerning Contributions</u>.  The Trustee shall hold all contributions, and the income and proceeds derived therefrom, and be accountable to the

90

Employer therefor, but the Trustee shall have no duty to see that contributions received by it comply with the provisions of the Plan, nor shall the Trustee be obliged or privileged to enforce collection of any contribution from the Employer. The Trustee shall have no liability or responsibility for determining whether or to what extent any contribution is deductible by the Firm for Federal income tax purposes. The Trustee shall have no liability to make any distribution or payment of any kind unless sufficient funds shall be available to it in its capacity as Trustee hereunder. The Trustee shall be responsible for only such monies as are received by it in its capacity as Trustee hereunder.

11.6    <u>Distribution of Benefits by the Trustee</u>. Distribution of Benefits under the Plan shall be made to a Participant or Beneficiary at such time as the Plan Administrator may direct in writing. The Trustee shall be fully protected in making distributions in accordance with such written instructions and shall have no responsibility to see to the application of such distributions or to ascertain whether such distributions comply with the terms of the Plan. The Trustee shall have no duty to make recommendations concerning action to be taken under the Plan, or to question the propriety of any action it is directed to take under the Plan by the Plan Administrator.

11.7    <u>Contributions Held in Trust</u>. All funds received by the Trustee under the provisions of the Plan, and the income and proceeds derived therefrom, shall be held by the Trustee, in trust, for the exclusive purpose of providing benefits to Participants and Beneficiaries and defraying reasonable expenses of administering the Plan. No person shall have any interest in or right to funds held by the Trustee or any part thereof except as

91