specifically provided for in the Plan.

11.8     Investment of Trust Fund.

(a)  Investment Vehicles.  The Trustee shall invest and reinvest the principal and income of the Trust and keep the Trust invested in accordance with the funding policy established by the Firm.  In so investing the Trust, the Trustee shall invest and reinvest, without distinction between principal and income, in such securities or in such property, real or personal, wherever situated, as the Trustee shall deem advisable, including, but not limited to, stocks (whether common or preferred), bonds, debentures, mortgages and other evidences of indebtedness or ownership, or common trust funds, or in a mutual fund or group annuities with legal reserve life insurance companies.

(b)  Pooled Funds.  Effective July 1, 1998, the Trustee may engage in any transaction with (1) a common or collective trust or pooled investment fund maintained by a bank or trust company (whether or not such bank or trust company is a "party in interest", as defined in Section 3(14) of ERISA), which provides for the pooling of the assets of plans that are qualified under Section 401(a) and exempt from tax under Section 501(a) of the Code, and any assets of the Plan deposited with such trust or fund shall be held and invested pursuant to the terms of such trust or fund, which are hereby incorporated herein by reference and made a part of this Trust, or (2) a pooled investment fund of an insurance company (whether or not such insurance company is a "party in interest") authorized to do business in a state.

(c)  Restrictions.  In making such investments the Trustee shall not be restricted to securities or other property of the character authorized or required by applicable law from

time to time for trust investments, other than the requirements of ERISA. All contributions paid to the Trustee under the Plan shall be held and administered by the Trustee as a single Trust. The Trustee shall not be required to segregate and invest separately any part of the Trust representing interests of individual Participants.

(d) <u>Foreign Investment</u>. No investments shall be made in any assets the indicia of ownership of which is outside the jurisdiction of the District Courts of the United States.

(e) <u>Separate Investment</u>. No Participant or Beneficiary shall have any authority or control whatsoever over the investment of the Trust.

11.9    <u>Powers and Duties of Trustee</u>. The Trustee shall have all the powers necessary to carry out the provisions hereunder. In amplification, but not in limitation, of such powers the Trustee shall have the following powers and immunities and be subject to the following duties:

(a) <u>Holding and Application of Trust</u>. The Trustee shall receive all contributions under the Plan, and all other amounts received pursuant thereto, and apply them as set forth herein. The Trustee shall have the custody of and safely keep all cash, securities, property and investments received or purchased in accordance with the terms hereof.

(b) <u>Sale, Exchange, Conveyance and Transfer of Property</u>. The Trustee may sell or exchange any property or asset of the Trust at public or private sale, with or without advertisement, upon terms acceptable to the Trustee and in such manner as the Trustee may deem wise and proper. The proceeds of any such sale or exchange may be reinvested as provided hereunder. The purchaser of any such property from the Trustee shall not be required to look to the application of the proceeds of any such sale or exchange by the

Trustee.

(c) <u>Borrowing and Pledging Trust Assets</u>.  The Trustee shall have full power to mortgage, pledge, lease, or otherwise dispose of the property of the Trust without securing any order of court therefor, without advertisement, and to execute any instruments containing any provisions which the Trustee may deem proper in order to carry out such actions.  Any lease so made by the Trustee shall be binding, notwithstanding the fact the term of the lease may extend beyond the termination of the Trust.  The Trustee shall have the power to borrow money (other than from itself) upon terms agreeable to the Trustee, and to repay any debts so created.

(d) <u>Exercise of Owner's Rights</u>.  The Trustee may participate in the reorganization, recapitalization, merger, or consolidation of any corporation in which the Trustee may own stock or securities and may deposit such stock or other securities in any voting trust or, protective committee or trustee or with the depositories, designated thereby, and may exercise any subscription rights or conversion privileges, and generally may exercise any of the powers of any owner with respect to any stock or other securities or property comprising the Trust.  The Trustee may vote or refrain from voting any shares of stock or securities which the Trustee may own from time to time, provided, that in the case of any stock or securities issued by a corporation directly or indirectly controlling, controlled by, or under common control with, the Trustee, or by the Employer, the Trustee shall vote such shares only under written direction of the Plan Administrator.

(e) <u>Retention of Cash</u>.  The Trustee may retain cash and keep unproductive of income such funds as from time to time it may deem advisable.  The Trustee shall not be required to pay interest on any cash in its hands pending investment.

(f)  <u>Registration of Investments</u>.  The Trustee may hold stocks, bonds or other securities in its own name as Trustee, with or without the designation of the Trust, or in the name of a nominee selected by it for that purpose, and may deposit securities with a depository trust company, but the Trustee shall nevertheless be obligated to account for all securities received by it as a part of the Trust, notwithstanding the name in which the same may be held.

(g)  <u>Settlement of Claims and Debts and Action Without Court Approval</u>.  With the consent of the Firm, the Trustee may settle, compromise or submit to arbitration any claims, debts, or damages due or owing to or from the Trust.  At no time during the administration of this Trust shall the Trustee be required to obtain any court approval of any act required of it in connection with the performance of its duties or in the performance of any acts required of it in the administration of its duties as Trustee.  The Trustee shall have full authority to exercise its judgment in all matters and at all times without court approval of such decisions, provided, that if any application to, or proceeding or action in, the courts is made, only the Firm and the Trustee shall be the necessary parties, and, unless otherwise required by law, no Participant or Beneficiary or other person having an interest in the Trust shall be entitled to any notice of service of process.  Any judgment entered in such proceeding or action shall be conclusive upon all persons claiming an interest under the Trust.

(h)  <u>Consultation With, and Employment of, Agents and Counsel</u>.  The Trustee may consult with legal counsel (who may be counsel to the Employer) concerning any question which may arise with reference to its duties under this Trust, and the opinion of such counsel shall be full and complete protection in respect to any action taken or suffered by the Trustee hereunder in good faith and in accordance with the opinion of such counsel.  The Trustee

may employ such counsel, accountants, and other agents as it shall deem advisable in the performance of its duties under this Trust.

(i)  General Powers.  The Trustee shall have the power to do any and all other acts and things necessary, proper or advisable to effectuate the purposes of the Trust for the exclusive benefit of the Participants and their Beneficiaries.

11.10  Application of Trust Funds.  No person dealing with the Employer shall be bound to see to the application of any money or property paid or delivered to the Trustee or to inquire into the validity or propriety, under the Plan or otherwise, of any transaction of any nature made or entered into by the Employer.

11.11  Litigation.  The Firm, in its discretion, may sue or defend any suit or legal proceeding by or against the Plan, and may compromise, submit to arbitration or settle any such suit or legal proceeding, or any claim, debt, damage, or undertaking due to, or owing from, the Plan, provided, however, the Firm need take no action unless in its opinion there are sufficient funds available for the expense thereof or adequate provision is made for its indemnification.

11.12  Accounting by Trustee.  The Trustee shall keep accurate and detailed records of the Trust, receipts and disbursements, and other transactions hereunder, and all accounts, books and records relating thereto shall be open to inspection and audit at all reasonable times by any person or persons designated by the Firm.  Within ninety (90) days following the close of each Plan Year, the Trustee shall file with the Firm a written report setting forth

all receipts, disbursements and other transactions effected by it during such Plan Year, including the fair market value of the Trust, with a report of the income earned on the Trust for such Plan Year.  Within ninety (90) days after the removal or resignation of the Trustee, a similar written report shall be filed by the Trustee with the Firm covering the period since the end of the Plan Year preceding the date of such removal or resignation.  The information required by such written reports may be in the form of quarterly or semi-annual accounts, which taken together reflect the information required by such reports.

11.13    Reliance on Written Instructions.  The Trustee shall be fully protected in acting upon any letter, paper, document or other writing believed by the Trustee to be genuine and to have been signed or presented by the proper person or persons.

11.14    Disputes.  In the event that any dispute shall arise as to the persons to whom payment of any funds or delivery of any assets shall be made by the Trustee, the Trustee may withhold such payment or delivery until such dispute shall have been determined by a court of competent jurisdiction or shall have been settled by the parties.

11.15    Duties of Trustee Limited.  The Trustee shall have the exclusive responsibility for the management and control of the investment of contributions under the Plan.  Its other duties and responsibilities are limited to those specifically stated in this Plan and no other or further duties or responsibilities shall be implied.

11.16    Notices to Trustee.  All notices to the Trustee hereunder shall be mailed or

delivered to the Trustee, and the Trustee shall be responsible only for such notices as are actually received by it.

11.17    <u>Notices to Employer or Participants</u>.  The Trustee shall be fully protected in presenting any notice hereunder to the Employer or the Plan Administrator by mailing such notice to the Employer or Plan Administrator at the last known address provided by such Employer or Plan Administrator, and in presenting any notice or distributing any Benefit to a Participant or Beneficiary by mailing it to such Participant or Beneficiary at the latest address, if any, which may have been furnished it, or by mailing it in care of the Employer, as above provided.

11.18    <u>Resignation, Removal and Appointment of Trustee</u>.  The Trustee may resign at any time by giving sixty (60) days written notice to the Board of Partners and Principals of its intention to do so.  Upon such resignation becoming effective, the Trustee shall render to the Firm an account of its proceedings as Trustee since the date of its most recent accounting, if any, and shall transfer and assign all of its interest as Trustee in the assets of the Trust to the remaining or successor Trustee.  The Board of Partners and Principals may, and in the event that the Trustee so resigning is the sole Trustee shall, appoint a successor Trustee to fill the vacancy created by any such resignation, and the Trustee so appointed to fill any such vacancy shall have the powers herein conferred upon the original Trustee.  The Board of Partners and Principals may, upon written notice, remove any Trustee.  The procedure, with respect to accounting and the appointment of a successor Trustee, upon such removal shall be the same as in the case of a resignation.  The Board of Partners and Principals may in its

discretion designate one or more additional persons to act as Trustee hereunder, and in such event such additional person or persons shall have the same powers and duties as the other Trustee then serving.

11.19    No Diversion of Trust. The Trust shall be received, held in trust, and disbursed by the Trustee in accordance with the provisions of the Plan.  No part of the Trust shall be used for, or diverted to purposes other than, the exclusive benefit of Participants and Beneficiaries and for the payment of the reasonable expenses of administering the Plan.  No person shall have any interest in or right to the Trust or any part thereof except as specifically provided for in the Plan.

## ARTICLE 12

## INDEMNIFICATION OF FIDUCIARIES

12.1     Rights To Indemnification.  The Employer shall indemnify each partner or

principal, officer, or employee of the Employer who is, or is threatened to be made, a party to

any threatened or pending action or proceeding, whether civil, criminal, administrative or

investigative, including actions by or in the right of the Employer, by reason of the fact that

such partner or principal, officer, or employee is or was serving at the request of the

Employer as a Fiduciary with regard to the Plan, against expenses (including attorneys' fees),

claims, fines, judgments, taxes, causes of action or liability and amounts paid in settlement,

actually and reasonably incurred by him or her in connection with such action or proceeding,

unless such expense, claim, fine, judgment, taxes, cause of action, liability or amount arose

from his or her gross negligence, fraud or willful breach of his or her fiduciary

responsibilities under ERISA, except, that with respect to an action by or in the right of the

Employer, indemnification shall be made only against expenses (including attorneys' fees).

12.2     Advancement of Expenses.  The Employer shall advance all expenses

(including attorneys' fees) incurred by any partner or principal, officer or employee described

in Section 12.1, in defending a civil, criminal, administrative or investigative action, suit or

proceeding pending the final disposition of such action, suit or proceeding unless the

Employer determines that under the circumstances of the individual case the person by his or

her conduct is not entitled to indemnification under Section 12.1 because of his or her gross

negligence, fraud or willful breach of his or her fiduciary responsibilities, upon receipt of an

100

undertaking, with such security as the Employer may reasonably require, by or on behalf of the partner or principal, officer or employee to repay such amounts unless it shall ultimately be determined that he or she is entitled to be indemnified by the Employer as authorized by this Article.

12.3    Determination of Right to Indemnity.  To the extent that any partner or principal, officer, or employee has been successful on the merits or otherwise in the defense of the action, suit or proceeding, or in defense of any claim, issue or matter therein, referred to in Section 12.1, he or she shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith and if he was advanced expenses as provided in Section 12.2, his or her undertaking shall be canceled by the Employer.  If any action, suit or proceeding shall terminate by judgment or order adverse to the partner or principal, officer or employee, or settlement, conviction or upon a plea of nolo contendere or its equivalent, the Employer, in the same manner provided in Section 12.2 with reference to advancement of expenses, shall (unless ordered by a court to make indemnification) make a determination whether indemnification of the partner or principal, officer, or employee is not proper in the circumstances because he or she has been guilty of gross negligence, fraud or willful breach of his or her fiduciary responsibilities and, if it is determined that the person is so entitled to indemnification, then he or she shall be indemnified against expenses (including attorneys' fees) claims, fines, judgments, taxes, causes of action or liability and amounts paid in settlement, actually and reasonably incurred by him or her in connection with such action or proceeding and, if he or she was advanced expenses as provided in Section 12.2, his or her undertaking shall be canceled.  The

101

termination of any action or proceeding by adverse judgment or order, conviction, settlement or plea of nolo contendere or the equivalent, shall not, of itself, create a presumption that the partner or principal, officer, or employee was guilty of gross negligence, fraud or willful breach of his or her fiduciary responsibilities.

12.4    <u>Other Rights</u>.  The indemnification provided by this Article shall not be deemed exclusive of any other rights to which any partner or principal, officer, or employee may be entitled, and shall continue as to a person who has ceased to be a partner or principal, officer or Employee and shall inure to the benefit of the personal representative, heirs and legatees of such a person.

# ARTICLE 13

## PARTICIPATING EMPLOYERS

13.1    Adoption by Other Employers.  Anything contained herein to the contrary

notwithstanding, with the consent of the Policy Board (effective July 1, 1998, the Board of

Partners and Principals; and, effective December 14, 2001, the Finance Committee of the

Board of Partners and Principals) any employer may adopt this Plan and all of the provisions

hereof, and participate herein and be known as an Employer, by properly executing an

adoption agreement evidencing said intent and will of said other employer.

13.2    Adoption of Plan and Trust by Affiliated Employer.  The Policy Board

(effective July 1, 1998, the Board of Partners and Principals; and, effective December 14,

2001, the Finance Committee of the Board of Partners and Principals may designate any

Affiliated Employer to become an Employer.  Any Affiliated Employer so designated may

adopt the Plan, and become an Employer hereunder, by executing an Adoption Agreement.

Such Affiliated Employer shall become an Employer hereunder as of an effective date

provided in the Adoption Agreement, and shall be subject to the terms and provisions of the

Plan and Trust, with such variations as shall be set forth in the Adoption Agreement.  An

Affiliated Employer may limit its adoption of the Plan to one or more of its groups of

employees, divisions, locations, or operations.

13.3    Designation of Agent.  Each Employer shall be deemed to be a party to this

Plan; provided, however, that with respect to all of its relations with the Trustee and Plan

Administrator for the purpose of this Plan, each Employer shall be deemed to have designated irrevocably the Firm as its agent. Unless the context of the Plan clearly indicates the contrary, the word "Employer" shall be deemed to include each Employer as related to its adoption of the Plan.

13.4    <u>Amendment</u>. Amendment of this Plan shall only be by the written action of the Policy Board (effective July 1, 1998, the Board of Partners and Principals; and, effective December 14, 2001, the Finance Committee of the Board of Partners and Principals).

13.5    <u>Discontinuance of Participation</u>. Any Employer shall be permitted to discontinue or revoke its participation in the Plan. At the time of any such discontinuance or revocation, satisfactory evidence thereof and of any applicable conditions imposed shall be delivered to the Trustee. The Trustee may thereafter transfer, deliver, and assign Trust assets allocable to the Participants of such Employer to such new trustee as shall have been designated by such Employer, in the event that it has established a separate retirement plan for its Employees. If no successor is designated, the Trustee shall retain such assets for the Employees of said Employer.

13.6    <u>Plan Administrator's Authority</u>. The Plan Administrator shall have authority to make any and all necessary rules or regulations, binding upon all Employers and all Participants, to effectuate the purpose of this Article.

# ARTICLE 14

## CHANGE IN EMPLOYMENT

14.1    <u>Participant Transfer from Employer to Employer</u>.  A Participant who transfers employment from one Employer to another Employer shall not be considered as terminating his or her employment with an Employer and shall continue to be a Participant in this Plan without interruption and shall receive credit for his or her total Hours of Service with all Employers.

14.2    <u>Participant Transfer from Employer to Affiliated Non-Employer</u>.  A Participant who transfers employment to an Affiliated Employer who has not adopted this Plan shall not be considered as terminating his or her participation in the Plan.  Nonetheless, no further Deemed Payroll Period Allocations shall be made on behalf of such a Participant.  When such a Participant's employment is terminated with the Affiliated Employer, his or her Benefit shall be determined as though such event occurred while he was employed by an Employer.

14.3    <u>Employee Credit for Services With Affiliated Non-Employer</u>.  An Employee who transfers employment from an Affiliated Employer who has not adopted this Plan to an Employer shall receive credit for his or her Hours of Service with such Affiliated Employer for the purpose of vesting in his or her Accrued Benefit under the Plan.  A Participant who retransfers his or her employment to an Employer after transferring from an Employer to an Affiliated Employer who has not adopted this Plan shall again become an active Participant upon his or her re-employment by an Employer.

105

## ARTICLE 15

## AMENDMENT, TERMINATION AND MERGER

15.1     <u>Establishment of Plan</u>.  The Plan shall be effective on the Effective Date.

15.2     <u>Power of Amendment</u>.  The Firm reserves the right at any time to amend or

discontinue the Plan or the Trust by action of its Policy Board (effective July 1, 1998, the

Board of Partners and Principals; and, effective December 14, 2001 the Finance Committee

of the Board of Partners and Principals).  No such amendment may:

(a)   violate the exclusive benefit limitations of Section 16.1(a);

(b)   violate the anti-cutback rules of Section 6.2, except for reductions permitted

under Section 412(c)(8) of the Code; or

(c)   change any of the rights, duties and powers of the Trustee without the Trustee's

written consent.

15.3     <u>Failure of Plan to Qualify Upon Amendment</u>.  If any amendment to the Plan

should be determined not to meet the qualification requirements under Section 401(a) of the

Code, then such amendment shall be null and void and no Participant or Beneficiary shall

have any rights whatsoever created by such amendment, and the rights of a Participant or

Beneficiary shall be determined under the Plan prior to such amendment.

15.4     <u>Termination</u>.  The Firm may terminate the Plan at any time subject to the

condition that, at any time prior to the satisfaction of all liabilities with respect to Participants

106

and their Beneficiaries, no part of the Trust shall, by reason of such termination, be at any time used for or diverted to purposes other than the exclusive benefit of such persons. Upon termination or partial termination of the Plan, the rights of all affected Participants to benefits accrued under the Plan as of the date of such termination or partial termination shall, except as provided in Section 15.6, become nonforfeitable to the extent then funded, and the assets of the Trust shall be allocated to all active and retired Participants and to all other persons already receiving or entitled to receive benefits under the Plan, as follows:

(a)  The amount of the Trust shall be determined and, after providing for expenses incident to termination and liquidation, the remaining assets thereof shall be allocated for the purpose of paying benefits proportionately among each of the priority groups described below in the following order of precedence, as set forth in Section 4044 of ERISA:

(1)  To provide benefits to retired Participants and Beneficiaries who began receiving benefits at least three (3) years before the Plan's termination (including those benefits which would have been received for at least three (3) years if the Participant had retired that long ago), based on Plan provisions in effect five (5) years prior to termination during which period such benefit would be the least, provided that the lowest benefit in pay status during a three-year period shall be considered the benefit in pay status for such period;

(2)  To provide all other Accrued Benefits guaranteed by Federal law (or which would be so guaranteed but for Section 4022(b)(5) or 4022B(a) of ERISA);

(3)  To provide all other vested Accrued Benefits (determined before application of this Section);

(4)  To provide all remaining non-vested Accrued Benefits.

(b)  If the assets available for allocation under any priority group (other than as

107

provided in priority groups (3) and (4)) are insufficient to satisfy in full the Accrued Benefits

of all Participants and Beneficiaries, the assets shall be allocated pro rata among such

Participants and Beneficiaries on the basis of the Actuarial Equivalent single-sum value of

their respective benefits (as of the termination date). The foregoing payments, and payments

in the event that assets are insufficient to pay the Accrued Benefits provided in priority

groups (3) and (4), will be paid in accordance with regulations prescribed by the Pension

Benefit Guaranty Corporation. The allocation of assets upon termination of the Plan will be

carried out in such a manner as to preserve the qualification of the Plan under Section 401(a)

of the Code.

15.5    Merger, Consolidation, or Transfer. There shall be no merger or consolidation

of the Plan with, or transfer of assets or liabilities of the Plan to, any other plan of deferred

compensation maintained or to be established for the benefit of all or some of the Participants

of the Plan, unless each Participant would (if either this Plan or such other plan then

terminated) receive a benefit immediately after the merger, consolidation or transfer which is

equal to or greater than the benefit the Participant would have been entitled to receive

immediately before the merger, consolidation, or transfer (if this Plan had then terminated).

15.6    Limitation of Benefits. The limitations described in this Section apply for Plan

Years beginning on or after January 1, 1994 in the event of a termination of the Plan or a

distribution to a Participant described herein.

(a)  Plan Termination. In the event of a termination of the Plan, the benefit of any

Highly Compensated active or former Employee is limited to a benefit that is

nondiscriminatory under Section 401(a)(4) of the Code.

    (b)  <u>Limitation of Benefits</u>.  The benefits distributed to any of the twenty-five (25) Highly Compensated Employees or Highly Compensated former Employees who have the greatest Compensation from the Employer in the current or any prior Plan Year are restricted such that the annual payments are no greater than an amount equal to the payment that would be made on behalf of the Employee under a single life annuity that is the Actuarial Equivalent of the sum of the Employee's Accrued Benefit and the Employee's other benefits under the Plan (other than a Social Security supplement) and the amount of the payments that the Employee is entitled to receive under a Social Security supplement, if any.

    The preceding paragraph shall not apply if:  (1) after payment to or on behalf of an Employee of benefits payable, as determined without the application of the limitations described in the preceding paragraph, the value of Plan assets equals or exceeds one hundred and ten percent (110%) of the value of current liabilities, as defined in Section 412(e)(7) of the Code, or (2) the value of the benefits payable to or on behalf of the Employee, as determined without the application of the limitations described in the preceding paragraph, is less than one percent (1%) of the value of current liabilities before distribution, or (3) the value of the benefits payable to or on behalf of the Employee, as determined without the application of the limitations described in the preceding paragraph, does not exceed the amount described in Section 411(a)(11)(A) of the Code, or (4) the Plan requires adequate security to guarantee any repayment of benefits under the circumstances and upon the terms described in Rev. Rul. 92-76, 1992-38 I.R.B. 5.

# ARTICLE 16

## MISCELLANEOUS

16.1    <u>Exclusive Benefit of Participants and Beneficiaries</u>.

(a)    <u>Exclusive Benefit</u>.  All assets of the Trust shall be retained for the exclusive benefit of Participants and their Beneficiaries, and shall be used only to pay benefits to such persons or to pay the fees and expenses of the Trust; provided, however, that in the event of the termination of the Plan, and after all fixed and contingent liabilities have been satisfied and upon compliance with Sections 4041 and 4044 of ERISA, any remaining funds attributable to contributions by the Firm shall revert to the Firm.

(b)    <u>Return of Employer Contributions</u>.  To the extent permitted or required by ERISA and the Code, contributions to the Trust under this Plan are subject to the following conditions:

(1)    If a contribution or any part thereof is made to the Trust by the Employer under a mistake of fact, such contribution or part thereof shall be returned to the Employer within one year after the date the contribution is made;

(2)    This Plan is intended to comply with the provisions of Section 401 and Section 501(a) of the Code.  In the event the Plan fails to initially achieve qualification under said Sections of the Code, the Plan shall be null and void as of the Effective Date.  Such failure shall be deemed to have occurred upon receipt of a written final determination from the Internal Revenue Service so stating, unless the Firm elects to appeal such determination, in which event such failure shall be deemed to have occurred upon the entry of a final judgment which is not appealed.  Upon termination pursuant to the provisions of this Section

110

16.1(b)(2), Employer Contributions shall be returned to the Employer.

(3)   Contributions to the Trust are specifically conditioned on their deductibility under the Code and, to the extent a deduction is disallowed for any such contribution, such amount shall be returned to the Employer within one year after the date of the disallowance of the deduction.

(4)   For return of an Employer Contribution pursuant to Section 16.1(b)(1) or (b)(3), anything in this Section 16.1 to the contrary notwithstanding, (1) no earnings on an Employer Contribution shall be returned to the Employer and losses on the Contribution shall reduce the amount to be returned, and (2) no return of an Employer Contribution shall be made to the extent that a Participant's Accrued Benefit would be reduced to less than his Accrued Benefit would be had the Contribution to be returned not been made.

16.2   <u>Nonguarantee of Employment.</u>  Nothing contained in this Plan shall be construed as a contract of employment between the Employer and any Employee, or as a right of any Employee to be continued in the employment of the Employer, or as a limitation of the right of the Employer to discharge any of its Employees, with or without cause.

16.3   <u>Rights to Trust Assets.</u>  No Employee, Participant, or Beneficiary shall have any right to, or interest in, any assets of the Trust upon termination of employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, or otherwise, except as provided under the Plan.  All payments of benefits under the Plan shall be made solely out of the assets of the Trust.

16.4    <u>Nonalienation of Benefits</u>.  Benefits payable under the Plan shall not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, charge, garnishment, execution, or levy of any kind, voluntary or involuntary; provided, however, that the Trustee shall not be hereby precluded from complying with a qualified domestic relations order described in Section 414(p) of the Code, or any domestic relations order entered before January 1, 1985.  Any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber, charge, or otherwise dispose of any right to benefits payable hereunder shall be void.  The Trust shall not in any manner be liable for, or subject to, the debts, contracts, liabilities, engagements, or torts of any person entitled to benefit hereunder.  Notwithstanding the preceding sentences, effective August 5, 1997, a Participant's Benefit may be reduced, as provided for in Section 401(a)(13)(c) of the Code.


16.5    <u>Bonding</u>.  Every Fiduciary, except a bank or an insurance company, unless exempted by ERISA and the regulations thereunder, shall be bonded in an amount not less than ten percent (10%) of the amount of the funds such Fiduciary handles; provided, however, that the minimum bond shall be $1,000 and a maximum bond, $500,000.  The amount of funds handled shall be determined at the beginning of each Plan Year by the amount of funds handled by such person, group or class to be covered and their predecessor, if any, during the preceding Plan Year, of if there is no preceding Plan Year, then by the amount of the funds to be handled during the then current year.  The bond shall provide protection to the Plan against any loss by reason of acts of fraud or dishonesty by the Fiduciary alone or in complicity with others.  The surety shall be a corporate surety company (as such term is used in Section 412(a)(2) of ERISA), and the bond shall be in a form

approved by the Secretary of Labor. Notwithstanding anything in this Plan to the contrary, the cost of such bonds shall be an expense of and may, at the election of the Plan Administrator, be paid from the Trust or by the Employer.

16.6     Construction.

(a)     State Law. The Plan shall be construed and enforced according to the laws of the State, and all provisions hereunder shall be administered according to the laws thereof, except to the extent preempted by ERISA.

(b)     Interpretation. It is intended that the Plan meet the requirements of ERISA and the Code and the Plan shall be interpreted and construed, wherever possible, to comply with the terms of ERISA, the Code, and regulations and rulings issued thereunder.

(c)     Language. Any words herein used in the masculine or neuter shall read and by construed in the feminine, masculine or neuter where they would so apply. Words in the singular shall be read and construed as though used in the plural in all cases where they would so apply.

16.7     Discretionary Acts To Be Non-Discriminatory. Any discretionary acts taken under the Plan by the Plan Administrator, the Employer or the Trustee shall be uniform in their nature, and shall be applicable to all Participants, Beneficiaries and Employees similarly situated, and no discretionary act shall be taken which is discriminatory under the Code.

16.8     Titles and Headings. Titles of Articles and headings to Sections are inserted for convenience of reference only and, in the event of any conflict, the text of the Plan, rather

than such titles and headings, shall control.

16.9    <u>Counterparts.</u> This document evidencing the Plan and any amendments thereto may be executed in one or more counterparts each of which shall be deemed to constitute an original and all of which together shall constitute a single Plan document.

16.10    <u>USERRA.</u> Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Code, effective for reemployment on or after December 12, 1994.

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By: _____  5/21/02

John F. Carter                        Date
U.S. Partner Affairs Leader

TRUSTEE                          TRUSTEE

_____  _____    _____  _____
Marsha R. Cohen       Date       Roger C. Hindman      Date

TRUSTEE                          TRUSTEE

_____  _____    _____  _____
Peter K. Kelly        Date       Richard R. Kilgust    Date

TRUSTEE                          TRUSTEE

_____  _____    _____  _____
Wendy L. Kornreich    Date       Robert C. Morris Jr.  Date

TRUSTEE                          TRUSTEE

_____  _____    _____  _____
Robert P. Sullivan    Date       Randal S. Vallen      Date

TRUSTEE

_____  _____
Brett D. Yacker       Date

g:\ebs\draft\nacron\pw plans\pwc employee rbap 20010801

115

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on

the dates indicated below to be effective as of the dates stated above.


PricewaterhouseCoopers LLP

By:_____      _____
     John F. Carter                             Date
     U.S. Partner Affairs Leader

TRUSTEE                                    TRUSTEE

_____  5|08|02      _____  _____
Marsha R. Cohen          Date        Roger C. Hindman            Date


TRUSTEE                                    TRUSTEE

_____  _____      _____  _____
Peter K. Kelly           Date        Richard R. Kilgust          Date


TRUSTEE                                    TRUSTEE

_____  _____      _____  _____
Wendy L. Kornreich       Date        Robert C. Morris Jr.        Date


TRUSTEE                                    TRUSTEE

_____  _____      _____  _____
Robert P. Sullivan       Date        Randal S. Vallen            Date


TRUSTEE

_____  _____
Brett D. Yacker          Date

g:\ebs\draft\nacron\pw plans\pwc employee rbap 20010801


115

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By: _____    _____

       John F. Carter              Date

       U.S. Partner Affairs Leader

TRUSTEE                       TRUSTEE

_____    _____    _____    _____
Marsha R. Cohen       Date    Roger C. Hindman    Date

TRUSTEE                       TRUSTEE

*Peter K Kelly*   5-9-02
_____    _____    _____    _____
Peter K. Kelly         Date    Richard R. Kilgust    Date

TRUSTEE                       TRUSTEE

_____    _____    _____    _____
Wendy L. Kornreich    Date    Robert C. Morris Jr.    Date

TRUSTEE                       TRUSTEE

_____    _____    _____    _____
Robert P. Sullivan    Date    Randal S. Vallen    Date

TRUSTEE

_____    _____
Brett D. Yacker    Date

g:\ebs\draft\nacron\pw plans\pwc employee rbap 20010801

115

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By: _____    _____
    John F. Carter                                      Date
    U.S. Partner Affairs Leader

TRUSTEE                                          TRUSTEE

_____  _____    _____  _____
Marsha R. Cohen              Date         Roger C. Hindman            Date

TRUSTEE                                          TRUSTEE

_____  _____    _____  _____
Peter K. Kelly                   Date         Richard R. Kilgust            Date

TRUSTEE                                          TRUSTEE

_____  _____    _____  _____
Wendy L. Kornreich          5/9/02        Robert C. Morris Jr.           Date
Wendy L. Kornreich          Date

TRUSTEE                                          TRUSTEE

_____  _____    _____  _____
Robert P. Sullivan            Date         Randal S. Vallen               Date

TRUSTEE

_____  _____
Brett D. Yacker                 Date

g:\ebs\draft\nacron\pw plans\pwc employee rbap 20010801

115

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on

the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By:_____    _____

    John F. Carter                      Date

    U.S. Partner Affairs Leader

TRUSTEE                             TRUSTEE

_____  _____    _____  _____

Marsha R. Cohen    Date          Roger C. Hindman   Date

TRUSTEE                             TRUSTEE

_____  _____    _____  _____

Peter K. Kelly     Date          Richard R. Kilgust  Date

TRUSTEE                             TRUSTEE

_____  _____    _____  _____

Wendy L. Kornreich  Date         Robert C. Morris Jr.  Date

TRUSTEE                             TRUSTEE

_____  _____    _____  _____

Robert P. Sullivan  Date         Randal S. Vallen   Date

TRUSTEE

_____  _____

Brett D. Yacker    Date

g:\ebs\draft\nacron\pw plans\pwc employee rbap 20010801

115

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on the dates indicated below to be effective as of the dates stated above.


PricewaterhouseCoopers LLP

By:_____          _____
    John F. Carter                            Date
    U.S. Partner Affairs Leader

TRUSTEE                                  TRUSTEE


_____  _____      _____  _____
Marsha R. Cohen          Date       Roger C. Hindman          Date


TRUSTEE                                  TRUSTEE


_____  _____      _____  _____
Peter K. Kelly             Date       Richard R. Kilgust          Date


TRUSTEE                                  TRUSTEE


_____  _____      _____  _____
Wendy L. Kornreich       Date       Robert C. Morris Jr.        Date


TRUSTEE                                  TRUSTEE


_____  _____      _____  _____
Robert P. Sullivan         Date       Randal S. Vallen            Date


TRUSTEE


_____  _____
Brett D. Yacker            Date

g:\ebs\draft\nacrommp\ plans\pwc employee rbap 20010801

115

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By: _____     _____
    John F. Carter                              Date
    U.S. Partner Affairs Leader

TRUSTEE                                        TRUSTEE

_____  _____     _____  5/9/02
Marsha R. Cohen        Date     Roger C. Hindman     Date

TRUSTEE                                        TRUSTEE

_____  _____     _____  _____
Peter K. Kelly            Date     Richard R. Kilgust     Date

TRUSTEE                                        TRUSTEE

_____  _____     _____  _____
Wendy L. Kornreich     Date     Robert C. Morris Jr.    Date

TRUSTEE                                        TRUSTEE

_____  _____     _____  _____
Robert P. Sullivan      Date     Randal S. Vallen       Date

TRUSTEE

_____  _____
Brett D. Yacker          Date

g:\ebs\draft\nacron\pw plans\pwc employee rbap 20010801

115

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on

the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By:_____          _____
    John F. Carter                       Date
    U.S. Partner Affairs Leader

TRUSTEE                          TRUSTEE

_____  _____  _____  _____
Marsha R. Cohen          Date    Roger C. Hindman           Date

TRUSTEE                          TRUSTEE

_____  _____  _____  _____
Peter K. Kelly           Date    Richard R. Kilgust    5/14/02  Date

TRUSTEE                          TRUSTEE

_____  _____  _____  _____
Wendy L. Kornreich       Date    Robert C. Morris Jr.       Date

TRUSTEE                          TRUSTEE

_____  _____  _____  _____
Robert P. Sullivan       Date    Randal S. Vallen           Date

TRUSTEE

_____  _____
Brett D. Yacker          Date

g:\cbs\draft\macron\pw plans\pwc employee rbap 20010801

115

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By:_____    _____
    John F. Carter    Date
    U.S. Partner Affairs Leader

TRUSTEE    TRUSTEE

_____    _____    _____    _____
Marsha R. Cohen    Date    Roger C. Hindman    Date

TRUSTEE    TRUSTEE

_____    _____    _____    _____
Peter K. Kelly    Date    Richard R. Kilgust    Date

TRUSTEE    TRUSTEE

_____    _____    _____    5/9/02
Wendy L. Kornreich    Date    Robert C. Morris Jr.    Date

TRUSTEE    TRUSTEE

_____    _____    _____    _____
Robert P. Sullivan    Date    Randal S. Vallen    Date

TRUSTEE

_____    _____
Brett D. Yacker    Date

g:\ebs\draft\aacron\pw plans\pwc employee rbap 20010801