**RESOLVED,** that, amendments, attached hereto as Exhibit III, to the Profit Sharing Plan, be and hereby are adopted; and

**RESOLVED,** that, John F. Carter, U.S. Partner Affairs Leader of PwC, and Roger C. Hindman, a partner of PwC, or any one of them, be and hereby are (is) authorized to execute such other documents and perform such acts as they (he) may deem necessary or appropriate to carry out the intent and purposes of the amendments made to the Plans by the foregoing Resolutions.

Exhibit I

**Retirement Plan for Employees of
PricewaterhouseCoopers LLP**

**<u>Statement of Amendment</u>**

1.  The Plan is amended to add to the definition of Highly Compensated Employee in Section 2.1, effective for the plan year beginning July 1, 1997 and plan years thereafter, the following:

    An Employee, who in accordance with Section 414(q) of the Code:

    (i)  was a 5% owner (as defined in Section 414(q)(2) of the Code) of the Employer or an Affiliated Employer during the Plan Year for which such determination is made or the preceding Plan Year, or

    (ii) earned more than $80,000 of Compensation (as defined in Section 414(q)(4) of the Code) from the Employer or an Affiliated Employer in the preceding Plan Year; provided, however, that the $80,000 amount is subject to adjustment at the same time and in the same manner as provided under Section 415(d) of the Code, except that the base period is the calendar quarter ending September 30, 1996.

2.  The Plan is amended to add a Section 10.13, effective December 12, 1994, as follows:

    10.13 Military Service.  Notwithstanding any other provision of the Plan to the contrary, accrual of benefits, credited service and vesting service with respect to qualified military service will be provided in accordance with Section 414(u) of the Code, effective for re-employment on or after December 12, 1994.

3.  The Plan is amended to delete the last sentence of Section 9.2D, effective as of July 1, 1975, and replace it with the following:

    Further, any amount remaining in the Trust Fund, arising from erroneous actuarial computation, after the full satisfaction of all liabilities under the Plan, shall be returned to the Employing Firms.

4.  The Plan is amended to add the following to Section 14.4H, effective for Limitation Years beginning on or after January 1, 1995:

    $30,000, as adjusted under Section 415(d) of the Code.

5.     The Plan is amended to delete Section 14.4I for Limitation Years beginning after
       December 31, 1999.

Exhibit II

## Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP

### Statement of Amendment

The Plan is amended to add the following to Section 2.28, effective for the plan year beginning July 1, 2000 and plan years thereafter:

> For "determination years" ending June 30, 2001 and thereafter, the determination of who is a Highly Compensated Employee shall be made with reference to the calendar year beginning within the "look-back year" in accordance with Notice 97-45.

## RESOLUTIONS ADOPTED
## BY THE FINANCE COMMITTEE OF THE BOARD OF
## PARTNERS AND PRINCIPALS OF PRICEWATERHOUSECOOPERS LLP

**WHEREAS**, PricewaterhouseCoopers LLP (the "Firm") sponsors the Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP (the "Employee and Partner Plan"), Savings Plan for Employees of PricewaterhouseCoopers LLP (the "Employee Plan"), Profit Sharing Plan for Partners of PricewaterhouseCoopers LLP (the "Profit Sharing Plan"), and Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (the "RBAP") for its employees, partners and principals; and

**WHEREAS**, each of the Employee and Partner Plan, Employee Plan, Profit Sharing Plan, and RBAP provides that it may be amended by the Finance Committee of the Board of Partners and Principals (the "Finance Committee") of the Firm; and

**WHEREAS,** the Finance Committee desires to amend the Employee and Partner Plan, Employee Plan, Profit Sharing Plan, and RBAP.

**NOW, THEREFORE, be it:**

**RESOLVED,** that, amendments to the Employee and Partner Plan, to empower the plan administrator to take such administrative actions as are necessary to seek to prevent or respond to "market timing", "rapid trading" or similar abuses by participants and clarify employment status codes for purposes of plan administration, be and hereby are adopted in the form attached hereto as Exhibit 1, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter, U.S. Partner Affairs Leader of the Firm, and Roger C. Hindman, a partner of the Firm, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

**RESOLVED,** that, amendments to the Employee Plan, to empower the plan administrator to take such administrative actions as are necessary to seek to prevent or respond to "market timing", "rapid trading" or similar abuses by participants and clarify employment status codes for purposes of plan administration, be and hereby are adopted in the form attached hereto as Exhibit 2, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter and Roger C. Hindman, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

**RESOLVED,** that, amendments to the Profit Sharing Plan, to empower the plan administrator to take such administrative actions as are necessary to seek to prevent or respond to "market timing", "rapid trading" or similar abuses by participants and provide for allocation of a profit sharing contribution thereto for its plan year commencing July 1, 2004 and ending June 30, 2005, be and hereby are adopted in the form attached hereto as Exhibit 3, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter and Roger

C. Hindman, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

**RESOLVED,** that, amendments to the RBAP, to empower the plan administrator to take such administrative actions as are necessary to seek to prevent or respond to "market timing", "rapid trading" or similar abuses by participants, redesignate certain employment status codes and make clarifications for purposes of plan administration, and provide, under certain circumstances, for distribution of a minimum accrued benefit for certain participants thereunder, be and hereby are adopted in the form attached hereto as Exhibit 4, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter and Roger C. Hindman, or any one them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

**RESOLVED,** that, John F. Carter and Roger C Hindman, or any one of them, be and hereby are (is) authorized to execute such other documents and perform such acts as they (he) may deem necessary or appropriate to carry out the intent and purposes of the amendments to the Employee and Partner Plan, Employee Plan, Profit Sharing Plan and RBAP made by the foregoing Resolutions.

Exhibit 4

**Retirement Benefit Accumulation Plan For Employees of
PricewaterhouseCoopers LLP**

**Statement of Amendments**

1.     The Plan is amended by adding the following to Section 2.13, effective upon adoption of this amendment:

> For purposes of distributing a Participant's (other than a Partner or Principal) Benefit, his Deemed Account Balance shall be not less than $7,000 increased, from June 30, 2003 to the applicable Valuation Date, by the Deemed Plan Interest Rate for each intervening Plan Year (reduced by any amount previously distributed with respect to the Participant and by the lump sum Actuarial Equivalent of the Participant's annual retirement income, if any, under Appendix B), provided that he is (1) a Participant on June 30, 2003, (2) a Participant (designated by Employment Status Code A, and excluding those designated with Employment Status Code P or L) on July 1, 2003, and (3) a Participant (designated by Employment Status Code A, and excluding those designated with Employment Status Code P, L, or S) on January 26, 2004. The preceding sentence shall not affect in any way whatsoever the determination under Article 6 of the Plan whether a Participant has a vested and nonforfeitable right to his Accrued Benefit.

2.     The Plan is amended by adding the following to Section 2.14, effective upon adoption of this amendment:

> (d)     The Plan Administrator is empowered to implement such restrictions on investment experience elections as may, in its judgment, be necessary to seek to prevent or respond to abuses by Participants, including, but not limited to, those abuses commonly referred to as "market timing" or "rapid trading". Such restrictions may include, but are not limited to, restricting the frequency of investment experience elections, restricting the availability of electronic investment experience elections, blocking restricted investment experience elections, and imposing redemption or other fees.

3.     The Plan is amended by adding the following after the first sentence of Section 2.15, effective as of January 1, 2004:

> A Director is a Participant who is designated in the Employer's payroll system as a "Benefit Manager Level 03 or 04".

Exhibit 4

4.    The Plan is amended by deleting clause (2) of Section 3.3 and substituting the following for it, effective as of January 1, 2004:

> (2) on unpaid leaves of absence, except that Employees who are on ODD, OSU and OSD leaves shall continue to be Participants and Deemed Payroll Period Allocations shall be calculated with reference to such a Participant's base pay prior to such ODD, OSU or OSD leave.

5.    The Plan is amended by adding the following as clause (13) of Section 3.3, effective May 1, 2004:

> (13) US Firm Global Capital Markets Third Country National Employees Who Work Outside the US.

6.    The Plan is clarified by deleting the first sentence of Section 9 of Appendix B and substituting the following for it, effective as of January 1, 1999:

> A married C & L Participant's retirement income shall be paid in the form of a Qualified Joint and Survivor Annuity, and an unmarried C & L Participant's retirement income shall be paid in the form of a Life Annuity, unless the C & L Participant elects an optional form described in Section 5.4(c) of the Plan or an optional form described below, pursuant to a Qualified Election as defined in Section 5.3(b) of the Plan.

G:\TLS\Common\rnacron001\PwC Ret Plans\Resolutions Adopted by PwC+Exhibits_15Mar04.doc

7

## RESOLUTIONS ADOPTED
## BY THE FINANCE COMMITTEE OF THE BOARD OF
## PARTNERS AND PRINCIPALS OF PRICEWATERHOUSECOOPERS LLP

**WHEREAS,** PricewaterhouseCoopers LLP (the "Firm") sponsors the Profit Sharing Plan for Partners of PricewaterhouseCoopers LLP (the "Profit Sharing Plan") and the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (the "RBAP"); and

**WHEREAS,** each of the Profit Sharing Plan and the RBAP provides that it may be amended by the Finance Committee of the Board of Partners and Principals (the "Finance Committee") of the Firm; and

**WHEREAS,** the Finance Committee desires to amend the Profit Sharing Plan to provide for the allocation thereunder of a profit sharing contribution for its plan year commencing July 1, 2003 and ending June 30, 2004; and

**WHEREAS,** the Finance Committee desires to amend the RBAP to provide, under certain circumstances, for a minimum accrued benefit for certain participants thereunder.

**NOW, THEREFORE, be it:**

**RESOLVED,** that, an amendment to the Profit Sharing Plan be and hereby is adopted in the form attached hereto as Exhibit 1, with the intent and purpose of providing for the allocation thereunder of a profit sharing contribution for the plan year commencing July 1, 2003 and ending June 30, 2004, with such changes, consistent with such intent and purpose, thereto as John F. Carter, U.S. Partner Affairs Leader of the Firm, and Roger C. Hindman, a partner of the Firm, or any one of them may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

**RESOLVED,** that, an amendment to the RBAP be and hereby is adopted in the form attached hereto as Exhibit 2, with the intent and purpose of providing, under certain circumstances, for a minimum accrued benefit for certain participants thereunder, with such changes, consistent with such intent and purpose, thereto as John F. Carter and Roger C. Hindman, or any one of them may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

**RESOLVED,** that, John F. Carter and Roger C. Hindman, or any one of them, be and hereby are (is) authorized to execute such documents and perform such acts as they (he) may deem necessary or appropriate to carry out the intent and purposes of the amendments to the Profit Sharing Plan and RBAP made by the preceding Resolutions.

**Exhibit 1**

### Profit Sharing Plan for Partners of PricewaterhouseCoopers LLP

### Statement of Amendment

The Plan is amended by adding the following to Section 5.2:

Notwithstanding any other provision of the Plan to the contrary, including but not limited to Section 2.5, effective for the Plan Year ending June 30, 2004, a Participant who is a Partner or Principal shall have mandatorily allocated to his Profit Sharing Subaccount the amount of $3,000.

Exhibit 2

**Retirement Benefit Accumulation Plan for Employees of
PricewaterhouseCoopers LLP**

**Statement of Amendment**

The Plan is amended by adding the following to Section 2.13:

For purposes of distributing a Participant's (other than a Partner or Principal) Benefit, his Deemed Account Balance shall be not less than $7,000 (reduced by any amount previously distributed with respect to the Participant and by the lump sum present value equivalent of the Participant's annual retirement income, if any, under Appendix B), provided that he was an active Participant (designated by Employment Status Code A, and excluding inactive Participants designated by Employment Status Codes P or L) in the Plan (1) on June 30, 2002 and (2) on February 12, 2003, other than a Participant employed by PwC ES LLC (EIN: 58-2352524) on February 12, 2003, if Participants employed by PwC ES LLC should terminate employment in connection with the sale by the Employer of its business process outsourcing activities. The preceding sentence shall not affect in any way whatsoever the determination, under Article 6 of the Plan, whether a Participant has a vested and nonforfeitable right to his Accrued Benefit.

G:\TLS\Common\macron001\PwC Ret Plans\Resolutions Adopted by PwC+Exhibits_17Mar03.doc

3

## RESOLUTIONS ADOPTED
## BY THE FINANCE COMMITTEE OF THE BOARD OF
## PARTNERS AND PRINCIPALS OF PRICEWATERHOUSECOOPERS LLP

**WHEREAS,** PricewaterhouseCoopers LLP (the "Firm") sponsors the Profit Sharing Plan for Partners of PricewaterhouseCoopers LLP (the "Profit Sharing Plan") and the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (the "RBAP"); and

**WHEREAS,** each of the Profit Sharing Plan and the RBAP provides that it may be amended by the Finance Committee of the Board of Partners and Principals (the "Finance Committee") of the Firm; and

**WHEREAS,** the Finance Committee desires to amend the Profit Sharing Plan to provide for the allocation thereunder of a profit sharing contribution for its plan year commencing July 1, 2003 and ending June 30, 2004; and

**WHEREAS,** the Finance Committee desires to amend the RBAP to provide, under certain circumstances, for a minimum accrued benefit for certain participants thereunder.

**NOW, THEREFORE, be it:**

**RESOLVED,** that, an amendment to the Profit Sharing Plan be and hereby is adopted in the form attached hereto as Exhibit 1, with the intent and purpose of providing for the allocation thereunder of a profit sharing contribution for the plan year commencing July 1, 2003 and ending June 30, 2004, with such changes, consistent with such intent and purpose, thereto as John F. Carter, U.S. Partner Affairs Leader of the Firm, and Roger C. Hindman, a partner of the Firm, or any one of them may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

**RESOLVED,** that, an amendment to the RBAP be and hereby is adopted in the form attached hereto as Exhibit 2, with the intent and purpose of providing, under certain circumstances, for a minimum accrued benefit for certain participants thereunder, with such changes, consistent with such intent and purpose, thereto as John F. Carter and Roger C. Hindman, or any one of them may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

**RESOLVED,** that, John F. Carter and Roger C. Hindman, or any one of them, be and hereby are (is) authorized to execute such documents and perform such acts as they (he) may deem necessary or appropriate to carry out the intent and purposes of the amendments to the Profit Sharing Plan and RBAP made by the preceding Resolutions.

Exhibit 2

## Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP

### Statement of Amendment

The Plan is amended by adding the following to Section 2.13:

For purposes of distributing a Participant's (other than a Partner or Principal) Benefit, his Deemed Account Balance shall be not less than $7,000 (reduced by any amount previously distributed with respect to the Participant and by the lump sum present value equivalent of the Participant's annual retirement income, if any, under Appendix B), provided that he was an active Participant (designated by Employment Status Code A, and excluding inactive Participants designated by Employment Status Codes P or L) in the Plan (1) on June 30, 2002 and (2) on February 12, 2003, other than a Participant employed by PwC ES LLC (EIN: 58-2352524) on February 12, 2003, if Participants employed by PwC ES LLC should terminate employment in connection with the sale by the Employer of its business process outsourcing activities. The preceding sentence shall not affect in any way whatsoever the determination, under Article 6 of the Plan, whether a Participant has a vested and nonforfeitable right to his Accrued Benefit.

## RESOLUTIONS ADOPTED
## BY THE FINANCE COMMITTEE OF THE BOARD OF
## PARTNERS AND PRINCIPALS OF PRICEWATERHOUSECOOPERS LLP

**WHEREAS,** PricewaterhouseCoopers LLP (the "Firm") sponsors the Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP (the "Employee and Partner Plan"), Savings Plan for Employees of PricewaterhouseCoopers LLP (the "Employee Plan"), Profit Sharing Plan for Partners of PricewaterhouseCoopers LLP (the "Profit Sharing Plan") and Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (the "RBAP") for its employees, partners and principals; and

**WHEREAS,** each of the Employee and Partner Plan, Employee Plan, Profit Sharing Plan and RBAP provides that it may be amended by the Finance Committee of the Board of Partners and Principals (the "Finance Committee") of the Firm; and

**WHEREAS,** the Firm is the managing member of the sponsor (the "BPO Sponsor") of the Savings Plan for BPO (the "BPO Plan"); and

**WHEREAS,** the BPO Plan provides that it may be amended by the BPO Sponsor by action of the managing member of the BPO Sponsor; and

**WHEREAS,** the Finance Committee is empowered to act on behalf of the Firm, in its capacity as managing member of the BPO Sponsor, with respect to the BPO Plan; and

**WHEREAS,** pursuant to Section 16.5 of the BPO Plan and Section 16.5 of the Employee and Partner Plan, the BPO Plan and the Employee and Partner Plan may each be amended to provide for their merger, provided that the benefits of participants thereunder are not thereby reduced; and

**WHEREAS,** the Finance Committee acting on behalf of the Firm, in its capacity as managing member of the BPO sponsor, desires to cause the BPO Sponsor to amend the BPO Plan to provide for its merger into the Employee and Partner Plan as of March 31, 2003, with the Employee and Partner Plan being the surviving plan; and

**WHEREAS,** the Finance Committee desires to amend the Employee and Partner Plan to provide for the merger into it of the BPO Plan as of March 31, 2003, with the Employee and Partner Plan being the surviving plan; and

**WHEREAS,** the Finance Committee desires to amend the Employee and Partner Plan, Employee Plan and Profit Sharing Plan to comply with final regulations, issued by the Internal Revenue Service, under section 401(a)(9) of the Internal Revenue Code of 1986, as amended (the "Code"), relating to required minimum distributions (the "section 401(a)(9) regulations"); and

1

WHEREAS, pursuant to a certain Asset Purchase Agreement among the Firm and Betrusted US, Inc., dated as of January 17, 2003, and other documents related thereto, the Firm divested itself of its beTRUSTed business (the "beTRUSTed Transaction"); and

WHEREAS, certain employees of the Firm associated with its beTRUSTed business (the "beTRUSTed employees") terminated employment with the Firm and commenced employment with Betrusted US, Inc. upon the consummation of the beTRUSTed Transaction; and

WHEREAS, the Finance Committee desires to amend the Employee and Partner Plan and RBAP to provide for the treatment of the beTRUSTed employees in connection with the beTRUSTed Transaction.

NOW, THEREFORE, be it:

RESOLVED, that, the amendment of the BPO Plan, by the BPO Sponsor, to merge the BPO Plan into the Employee and Partner Plan, with the Employee and Partner Plan being the surviving plan, and, pursuant to such amendment, the authorization and direction of the trustees of the BPO Plan, by the BPO Sponsor, to transfer, in compliance with Section 16.5 of the BPO Plan and section 414(l) of the Code, all assets and liabilities held under the BPO Plan into the Employee and Partner Plan, as of March 31, 2003, is approved by the Finance Committee acting on behalf of the Firm, in its capacity as managing member of the BPO Sponsor; and

RESOLVED, that, the Employee and Partner Plan is hereby amended to merge the BPO Plan into it, with the Employee and Partner Plan being the surviving plan, and, pursuant to such amendment, the trustees of the Employee and Partner Plan are authorized and directed to accept the transfer, in compliance with Section 16.5 of the Employee and Partner Plan and section 414(l) of the Code, of all assets and liabilities held under the BPO Plan into the Employee and Partner Plan, as of March 31, 2003; and

RESOLVED, that, John F. Carter, U.S. Partner Affairs Leader of the Firm, and Roger C. Hindman, a partner of the Firm, or any one of them, be and hereby are (is) authorized and directed to execute such documents and perform such acts as they (he) may deem necessary or appropriate to effect the merger of the BPO Plan into the Employee and Partner Plan, consistent with the intent and purposes of the preceding Resolutions, including, but not limited to, determining a date other than March 31, 2003 for such merger, if that should be necessary or appropriate; and

RESOLVED, that, amendments to the Employee and Partner Plan be and hereby are adopted in the form attached hereto as Exhibit 1, with the intent and purpose of complying with the section 401(a)(9) regulations, with such changes, consistent with such intent and purpose, thereto as John F. Carter and Roger C. Hindman, or any one of them may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

**RESOLVED,** that, amendments to the Employee Plan be and hereby are adopted in the form attached hereto as Exhibit 2, with the intent and purpose of complying with the section 401(a)(9) regulations, with such changes, consistent with such intent and purpose, thereto as John F. Carter and Roger C. Hindman, or any one of them may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

**RESOLVED,** that, amendments to the Profit Sharing Plan be and hereby are adopted in the form attached hereto as Exhibit 3, with the intent and purpose of complying with the section 401(a)(9) regulations, with such changes, consistent with such intent and purpose, thereto as John F. Carter and Roger C. Hindman, or any one of them may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes.

**RESOLVED,** that, John F. Carter and Roger C. Hindman, or any one of them, be and hereby are (is) authorized to execute such documents and perform such acts as they (he) may deem necessary or appropriate to carry out the intent and purposes of the amendments to the Employee and Partner Plan, Employee Plan and Profit Sharing Plan made by the preceding Resolutions in connection with the section 401(a)(9) regulations; and

**RESOLVED,** that, in connection with the beTRUSTed Transaction, amendments to the Employee and Partner Plan be and hereby are adopted in the form attached hereto as Exhibit 4, with the intent and purpose of providing for the treatment of the beTRUSTed employees, with such changes, consistent with such intent and purpose, thereto as John F. Carter and Roger C. Hindman, or any one of them may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

**RESOLVED,** that, in connection with the beTRUSTed Transaction, amendments to the Employee Plan be and hereby are adopted in the form attached hereto as Exhibit 5, with the intent and purpose of providing for the treatment of the beTRUSTed employees, with such changes, consistent with such intent and purpose, thereto as John F. Carter and Roger C. Hindman, or any one of them may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

**RESOLVED,** that, in connection with the beTRUSTed Transaction, amendments to the RBAP be and hereby are adopted in the form attached hereto as Exhibit 6, with the intent and purpose of providing for the treatment of the beTRUSTed employees, with such changes, consistent with such intent and purpose, thereto as John F. Carter and Roger C. Hindman, or any one of them may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

**RESOLVED,** that, John F. Carter and Roger C. Hindman, or any one of them, be and hereby are (is) authorized to execute such documents and perform such acts as they (he) may deem necessary or appropriate to carry out the intent and purposes of the amendments to the Employee and Partner Plan and RBAP made by the preceding Resolutions in connection with the beTRUSTed Transaction.

Exhibit 4

## Retirement Benefit Accumulation for Employees of
## PricewaterhouseCoopers LLP

### Statement of Amendments

The Plan is amended by adding the following thereto as an Appendix E:

Special Provisions Applicable to Participants who are PwCC and BPO Participants

Notwithstanding any other provision of the Plan to the contrary, the provisions of this Appendix E shall apply to any Participant (a "PwCC and BPO Participant") who terminated employment from, or ceased to be active with, the Firm and commenced employment with International Business Machines Corporation in connection with the divestiture of the Firm's PwC Consulting business and certain portions of its Business Processing Outsourcing business (the "PwCC and BPO Transaction") pursuant to a certain Master Stock and Asset Purchase Agreement among PricewaterhouseCoopers International Limited and various PricewaterhouseCoopers affiliated parties and International Business Machines Corporation, dated as of July 22, 2002, the U.S. Local Structure Term Sheet thereto, and other related agreements. Unless modified in this Appendix E, the general provisions of the Plan shall apply to a PwCC and BPO Participant.

1.  For purposes of Section 2.29 of the Plan, an Hour of Service of a PwCC and BPO Participant shall include continuous and uninterrupted employment of the PwCC and BPO Participant by International Business Machines Corporation that commenced immediately upon the PwCC and BPO Participant's termination of employment from, or ceasing to be active with, the Firm to the earlier of the PwCC and BPO Participant's termination of employment from International Business Machines Corporation or distribution to the PwCC and BPO Participant of his Benefit (or any portion thereof) under the Plan. 95 Hours of Service shall be credited to a PwCC and BPO Participant for each semimonthly payroll period of the Firm during any part of which the PwCC and BPO Participant is employed by International Business Machines Corporation.

2.  For purposes of Section 5.6(a) of the Plan and Section 8(e) of Appendix B to the Plan, upon a PwCC and BPO Participant's termination of employment from, or ceasing to be active with, the Firm, a 100% vested Benefit that does not then exceed $5,000 shall be distributed to the PwCC and BPO Participant as soon as practical, without a requirement for the consent of the PwCC and BPO Participant or his Spouse, but if the PwCC and BPO Participant's vested amount is zero he shall not be deemed to receive a distribution of such vested amount. Upon a PwCC and BPO Participant's termination of employment from International Business Machines Corporation, a Benefit that does not then exceed

$5,000 shall be distributed to the PwCC and BPO Participant without a requirement for the consent of the PwCC and BPO Participant or his Spouse, and if the PwCC and BPO Participant's vested amount is zero he shall be deemed to receive a distribution of such vested amount.

3.    For purposes of Section 6.1(b) of the Plan, a 1-Year Break in Service of a PwCC and BPO Participant shall not include a Year of Service that is credited to the PwCC and BPO Participant after the application of Section 1 of this Appendix E.

4.    For purposes of Appendix B to the Plan, continuous and uninterrupted employment of a C&L Participant, who is also a PwCC and BPO Participant, by International Business Machines Corporation, that commenced immediately upon his termination of employment from the Firm in connection with the PwCC and BPO Transaction, to his termination of employment from International Business Machines Corporation shall be considered employment by the Firm for the purposes of determining whether the C&L Participant:

     1.    Is employed by the Firm upon his attainment of age 53,

     2.    Has at least sixty months of Service (as determined under Section 12(p)(1) of Appendix B) for the determination of a C&L Participant's Early Retirement Date under Section 12(g) of Appendix B, and

     3.    Has at least 360 months of Service (as determined under Section 12(p)(1) of Appendix B) for the requirement described in the second sentence of Section 4(b) of Appendix B;

provided, however, that if the C&L Participant's Benefit is distributed prior to the earlier of his termination of employment from International Business Machines Corporation or April 1 following the calendar year during which he attains age 70 1/2, then his age and Service shall be determined without regard to any such employment by International Business Machines Corporation. The C&L Participant will be credited with a full month of Service if he is employed by International Business Machines Corporation for at least one day in a month. The amount of the annual retirement income of the C&L Participant shall be determined without regard to his employment (other than as provided for by this Section 4) with, and compensation paid by, International Business Machines Corporation.

5.    For purposes of this Appendix E, International Business Machines Corporation shall include all corporations that are members of the controlled group of corporations (within the meaning of Section 414(b) of the Code) of which International Business Machines Corporation is a member, and any trade or business (whether or not incorporated) which is under common control (within the meaning of Section 414(c) of the Code) with International Business Machines Corporation.

Exhibit 6

**Retirement Benefit Accumulation for Employees of
PricewaterhouseCoopers LLP**

**Statement of Amendments**

The Plan is amended by adding the following thereto as an Appendix H:

Special Provisions Applicable to Participants who are beTRUSTed Participants

Notwithstanding any other provision of the Plan to the contrary, the provisions of this Appendix H shall apply to any Participant (a "beTRUSTed Participant") who terminated employment from, or ceased to be active with, the Firm and commenced employment with Betrusted US, Inc. in connection with the divestiture of the Firm's beTRUSTed business pursuant to a certain Asset Purchase Agreement among PricewaterhouseCoopers LLP and Betrusted US, Inc., dated as of January 17, 2003, and other related agreements. Unless modified in this Appendix H, the general provisions of the Plan shall apply to a beTRUSTed Participant.

1.  For purposes of Section 2.29 of the Plan, an Hour of Service of a beTRUSTed Participant shall include continuous and uninterrupted employment of the beTRUSTed Participant by Betrusted US, Inc. that commenced immediately upon the beTRUSTed Participant's termination of employment from, or ceasing to be active with, the Firm to the earlier of the beTRUSTed Participant's termination of employment from Betrusted US, Inc. or distribution to the beTRUSTed Participant of his Benefit (or any portion thereof) under the Plan. 95 Hours of Service shall be credited to a beTRUSTed Participant for each semimonthly payroll period of the Firm during any part of which the beTRUSTed Participant is employed by Betrusted US, Inc.

2.  For purposes of Section 5.6(a) of the Plan, upon a beTRUSTed Participant's termination of employment from, or ceasing to be active with, the Firm, a 100% vested Benefit that does not then exceed $5,000 shall be distributed to the beTRUSTed Participant as soon as practical, without a requirement for the consent of the beTRUSTed Participant or his Spouse, but if the beTRUSTed Participant's vested amount is zero he shall not be deemed to receive a distribution of such vested amount. Upon a beTRUSTed Participant's termination of employment from Betrusted US, Inc., a Benefit that does not then exceed $5,000 shall be distributed to the beTRUSTed Participant without a requirement for the consent of the beTRUSTed Participant or his Spouse, and if the beTRUSTed Participant's vested amount is zero he shall be deemed to receive a distribution of such vested amount.

3.  For purposes of Section 6.1(b) of the Plan, a 1-Year Break in Service of a beTRUSTed Participant shall not include a Year of Service that is credited to the beTRUSTed Participant after the application of Section 1 of this Appendix H.

4.  For purposes of this Appendix H, Betrusted US, Inc. shall include all corporations that are members of the controlled group of corporations (within the meaning of Section 414(b) of the Code) of which Betrusted US, Inc. is a member, and any trade or business (whether or not incorporated) which is under common control (within the meaning of Section 414(c) of the Code) with Betrusted US, Inc.

**Adoption Agreement to the Retirement Benefit Accumulation Plan
for Employees of PricewaterhouseCoopers LLP and the Savings Plan for Employees
and Partners of PricewaterhouseCoopers LLP**

**PricewaterhouseCoopers LLP
PwC Investments (Florida) LLC**

This Adoption Agreement is made by and between PricewaterhouseCoopers LLP and PwC Investments (Florida) LLC.

WHEREAS, PricewaterhouseCoopers LLP has adopted and maintained the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP and the Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP (together, the "Plans"); and

WHEREAS, each of the Plans provides that an Employer means each Affiliated Employer, designated by PricewaterhouseCoopers LLP as an Employer, that executes an Adoption Agreement for participation thereunder; and

WHEREAS, PricewaterhouseCoopers LLP has designated PwC Investments (Florida) LLC, effective as of January 1, 2003, as an Employer under each of the Plans, and authorized John F. Carter, U.S. Partner Affairs Leader, to execute an Adoption Agreement for the Plans with a representative of PwC Investments (Florida) LLC; and

WHEREAS, PwC Investments (Florida) LLC has adopted, effective as of such date, as an Employer thereunder upon the terms and conditions stated therein, each of the Plans, and designated its representative to execute an Adoption Agreement for the Plans with a representative of PricewaterhouseCoopers LLP.

NOW, THEREFORE,

IT IS HEREBY AGREED, by and between PricewaterhouseCoopers LLP and PwC Investments (Florida) LLC, with respect to the Plans, as follows:

1. PwC Investments (Florida) LLC adopts the Plans for its employees, upon the terms and conditions stated therein.

2. PwC Investments (Florida) LLC delegates to PricewaterhouseCoopers LLP any and all authority to act for it with respect to the Plans, including, but not limited to, the authority to amend or terminate them, administer and construe their terms, and determine the eligibility for and benefits under them, without the requirement of notice prior to or after any such action.

IN WITNESS WHEREOF, this Adoption Agreement, which may be executed in counterparts, is duly executed as of the date stated above.

**PricewaterhouseCoopers LLP**               **PwC Investments (Florida) LLC**


By: _____        By: _____

Date:                                                      Date:

G:\TLS\Common\rnacron001\Adoption Agreement--Investment (Florida).doc

## RESOLUTIONS ADOPTED
## BY THE FINANCE COMMITTEE OF THE BOARD OF
## PARTNERS AND PRINCIPALS OF PRICEWATERHOUSECOOPERS LLP

**WHEREAS**, PricewaterhouseCoopers LLP ("PwC LLP") sponsors the Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP (the "Savings Plan") and the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (the "RBAP", and, together with the Savings Plan, the "Plans"); and

**WHEREAS**, under Section 14.2 of the Savings Plan and Section 13.2 of the RBAP, the Finance Committee of the Board of Partners and Principals of PricewaterhouseCoopers LLP (the "Finance Committee) is empowered to designate an Affiliated Employer of PwC LLP as a participating employer under the Savings Plan and the RBAP, respectively; and

**WHEREAS**, the Finance Committee desires to designate an Affiliated Employer of PwC LLP as a participating employer under the Plans.

**NOW, THEREFORE, be it:**

**RESOLVED**, that, effective as of January 1, 2003, PwC Investments (Florida) LLC, an Affiliated Employer of PwC LLP, is designated as a participating employer under the Plans; and

**RESOLVED**, that, John F. Carter, U.S. Partner Affairs Leader of PwC LLP, and Roger C. Hindman, a partner of PwC LLP, or any one of them, is hereby empowered and directed to sign, on behalf of PwC LLP, an adoption agreement, providing for the participation of PwC Investments (Florida) LLC under the Plans, together with an authorized representative of PwC Investments (Florida) LLC; and

**RESOLVED**, that, John F. Carter and Roger C. Hindman, or any one of them, is hereby empowered and directed to take any further actions on behalf of PwC LLP that may be necessary or appropriate to effectuate the participation of PwC Investments (Florida) LLC under the Plans, consistent with the intent and purposes of the foregoing Resolutions.

### Retirement Benefit Accumulation Plan for Employees
### of PricewaterhouseCoopers

**WHEREAS,** the Finance Committee of the Board of Partners and Principals (the "Finance Committee") of PricewaterhouseCoopers LLP ("PwC") is empowered to amend the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (the Plan"); and

**WHEREAS,** the Finance Committee previously amended the Plan to comply with certain requirements of the Economic Growth and Tax Relief Reconciliation Act of 2001 ("EGTRRA"); and

**WHEREAS,** the Finance Committee previously authorized John F. Carter, U.S. Partner Affairs Leader of PwC, to adopt any further amendments to the Plan that may be necessary to comply with the requirements of EGTRRA; and

**WHEREAS,** it is necessary to further amend the Plan to comply with the requirements of EGTRRA; and

**WHEREAS,** the Finance Committee previously amended the Plan in connection with the "CVC Transaction" and the "PwCC and BPO Transaction" of PwC; and

**WHEREAS,** the Finance Committee previously authorized John F. Carter to adopt any further amendments to the Plan that may be necessary in connection with the "CVC Transaction" and the "PwCC and BPO Transaction"; and

**WHEREAS,** it is necessary to further amend the Plan in connection with the "CVC Transaction" and the "PwCC and BPO Transaction".

**NOW, THEREFORE,** be it resolved that the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP is amended as provided for by the Statement of Amendments attached hereto.

**Dated:  December        , 2002**

**PricewaterhouseCoopers LLP**

_____

**By:  John F. Carter**
**U.S. Partner Affairs Leader**

**Retirement Benefit Accumulation Plan for Employees
of PricewaterhouseCoopers LLP**

<u>**Statement of Amendments**</u>

1. Section 5.10(b)(2)  (Eligible Retirement Plan) of the Plan is amended by adding the following thereto, effective as of January 1, 2002:

    For distributions made after December 31, 2001, an eligible retirement plan shall include an annuity contract described in Section 403(b) of the Code and an eligible plan under Section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan.

2. Section 9.2(b)(2) (Top Heavy Ratio) of the Plan is amended by adding the following thereto, effective as of January 1, 2002:

    Beginning January 1, 2002, the present value of accrued benefits and the amounts of account balances of an Employee as of the Determination Date shall be increased by the distributions made with respect to the Employee under the Plan and any plan aggregated with the Plan under Section 416(g)(2) of the Code during the 1-year period ending on the Determination Date.  The preceding sentence shall also apply to distributions under a terminated plan which, had it not been terminated, would have been aggregated with the Plan under Section 416(g)(2)(A)(i) of the Code.  In the case of a distribution made for a reason other than separation from service, death, or disability, this provision shall be applied by substituting "5-year period" for "1-year period."

3. Section 9.2(b)(4) (Top Heavy Ratio) of the Plan is amended by adding the following thereto, effective as of January 1, 2002:

    Beginning January 1, 2002, the accrued benefits and accounts of any Employee who has not performed services for the Employer during the 1-year period ending on the Determination Date shall not be taken into account.

4. Section 9.5(b) (Key Employee) of the Plan is amended by adding the following thereto, effective as of January 1, 2002:

    Beginning January 1, 2002, any Employee or former Employee (including any deceased Employee) who at any time during the Plan Year that includes the Determination Date was an officer of an Affiliated Employer having annual

**RESOLUTIONS ADOPTED**
**BY THE FINANCE COMMITTEE OF THE BOARD OF**
**PARTNERS AND PRINCIPALS OF PRICEWATERHOUSECOOPERS LLP**

**WHEREAS,** PricewaterhouseCoopers LLP (the "Firm") sponsors the Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP (the "Employee and Partner Plan"), Savings Plan for Employees of PricewaterhouseCoopers LLP (the "Employee Plan"), Profit Sharing Plan for Partners of PricewaterhouseCoopers LLP (the "Profit Sharing Plan"), Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (the "RBAP") and Retirement Plan for Employees of PricewaterhouseCoopers LLP (the "Retirement Plan") for its employees, partners and principals; and

**WHEREAS,** the Firm is the managing member of the sponsor (the "BPO Sponsor") of the Savings Plan for BPO (the "BPO Plan"); and

**WHEREAS,** the Firm sponsors the PricewaterhouseCoopers LLP Supplemental Plan (the "Supplemental Plan") for certain of its employees; and

**WHEREAS,** each of the Employee and Partner Plan, Employee Plan, Profit Sharing Plan, RBAP and Retirement Plan provides that it may be amended by the Finance Committee of the Board of Partners and Principals (the "Finance Committee") of the Firm; and

**WHEREAS,** the BPO Plan provides that it may be amended by the BPO Sponsor by action of the managing member of the BPO Sponsor; and

**WHEREAS,** the Finance Committee is empowered to act on behalf of the Firm, in its capacity as managing member of the BPO Sponsor, with respect to the BPO Plan; and

**WHEREAS,** the Supplemental Plan provides that it may be amended by the Finance Committee; and

**WHEREAS,** pursuant to a certain Master Stock and Asset Purchase Agreement among PricewaterhouseCoopers International Limited and various PricewaterhouseCoopers affiliated parties and International Business Machines Corporation, dated as of July 22, 2002, the U.S. Local Structure Term Sheet thereto, and other agreements related thereto (the "PwC and BPO Transaction Documents"), the Firm divested itself of its PwC Consulting business and certain portions of its Business Processing Outsourcing business (the "PwCC and BPO Transaction"); and

**WHEREAS,** certain employees, partners and principals (the "PwCC and BPO employees, partners and principals") of the Firm associated with its PwC Consulting and Business Process Outsourcing businesses terminated employment with, and withdrew from, the Firm and commenced employment with International Business Machines Corporation, or its affiliates, upon the consummation of the PwCC and BPO Transaction; and

1

**WHEREAS,** the Finance Committee desires to amend the Employee and Partner Plan, Employee Plan, Profit Sharing Plan, RBAP, Retirement Plan and Supplemental Plan to provide for the treatment of the PwCC and BPO employees, partners and principals in connection with the PwCC and BPO Transaction; and

**WHEREAS,** the Finance Committee on behalf of the Firm, acting in its capacity as managing member of the BPO Sponsor, desires to cause the BPO Sponsor to amend the BPO Plan to provide for the treatment of the PwCC and BPO employees, partners and principals in connection with the PwCC and BPO Transaction; and

**WHEREAS,** pursuant to a certain Agreement for the Purchase and Sale of Assets among PricewaterhouseCoopers LLP and FTI Consulting, Inc., dated as of July 24, 2002, and other agreements related thereto (the "BRS Transaction Documents"), the Firm divested itself of a portion of its Business Recovery Services business (the "BRS Transaction"); and

**WHEREAS,** certain employees, partners and principals (the "BRS employees, partners and principals") of the Firm associated with its Business Recovery Services business terminated employment with, and withdrew from, the Firm and commenced employment with FTI Consulting, Inc., or its affiliates, upon the consummation of the BRS Transaction; and

**WHEREAS,** the Finance Committee desires to amend the Employee and Partner Plan, Employee Plan, Profit Sharing Plan, RBAP, Retirement Plan and Supplemental Plan to provide for the treatment of the BRS employees, partners and principals in connection with the BRS transaction; and

**WHEREAS,** pursuant to a certain Membership Interests Purchase Agreement regarding FTPG LLC among PricewaterhouseCoopers LLP and Clark/Bardes, Inc. and Clark/Bardes Consulting, Inc., dated as of February 25, 2002 (the "FTPG Transaction Documents"), the Firm divested itself of its FTPG LLC business (the "FTPG Transaction"); and

**WHEREAS,** certain employees (the "FTPG employees") of the Firm associated with its FTPG business terminated employment with the Firm and commenced employment with Clark/Bardes, Inc., or its affiliates, upon the consummation of the FTPG Transaction; and

**WHEREAS,** the Finance Committee desires to amend the Employee and Partner Plan and RBAP to provide for the treatment of the FTPG employees in connection with the FTPG Transaction; and

**WHEREAS,** the Finance Committee desires to amend the RBAP and Retirement Plan to provide for cost-of-living adjustments for participants thereunder; and

**WHEREAS,** the Finance Committee previously amended the Employee and Partner Plan, Employee Plan, Profit Sharing Plan, RBAP and Retirement Plan to comply with certain provisions of the Economic Growth and Tax Relief Reconciliation Act of 2001 ("EGTRRA"), and now desires to further amend the Retirement Plan to comply with additional provisions of EGTRRA; and

**WHEREAS,** the Finance Committee desires to amend the Supplemental Plan to increase the benefits thereunder; and

**WHEREAS,** the Finance Committee desires to amend the Profit Sharing Plan to provide for the profit sharing contribution thereto for its plan year commencing July 1, 2002 and ending June 30, 2003.

**NOW, THEREFORE, be it:**

**RESOLVED,** that, in connection with the PwCC and BPO Transaction, amendments to the Employee and Partner Plan be and hereby are adopted in the form attached hereto as Exhibit 1, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter, U.S. Partner Affairs Leader of the Firm, and Roger C. Hindman, a partner of the Firm, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

**RESOLVED,** that, in connection with the PwCC and BPO Transaction, amendments to the Employee Plan be and hereby are adopted in the form attached hereto as Exhibit 2, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter and Roger C. Hindman, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

**RESOLVED,** that, in connection with the PwCC and BPO Transaction, amendments to the Profit Sharing Plan be and hereby are adopted in the form attached hereto as Exhibit 3, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter and Roger C. Hindman, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

**RESOLVED,** that, in connection with the PwCC and BPO Transaction, amendments to the RBAP be and hereby are adopted in the form attached hereto as Exhibit 4, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter and Roger C. Hindman, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

**RESOLVED,** that, in connection with the PwCC and BPO Transaction, amendments to the Retirement Plan be and hereby are adopted in the form attached hereto as Exhibit 5, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter and Roger C. Hindman, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

**RESOLVED,** that, in connection with the PwCC and BPO Transaction, amendments to the Supplemental Plan be and hereby are adopted in the form attached hereto as

Exhibit 6, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter and Roger C. Hindman, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

RESOLVED, that, in connection with the PwCC and BPO Transaction, the adoption, by the BPO Sponsor, of amendments to the BPO Plan in the form attached hereto as Exhibit 7, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter and Roger C. Hindman, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes, be and hereby is approved by the Firm, as managing member of the BPO Sponsor; and

RESOLVED, that, in connection with the BRS Transaction, amendments to the Employee and Partner Plan be and hereby are adopted in the Form attached hereto as Exhibit 8, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter and Roger C. Hindman, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

RESOLVED, that, in connection with the BRS Transaction, amendments to the Employee Plan be and hereby are adopted in the Form attached hereto as Exhibit 9, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter and Roger C. Hindman, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

RESOLVED, that, in connection with the BRS Transaction, amendments to the Profit Sharing Plan be and hereby are adopted in the Form attached hereto as Exhibit 10, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter and Roger C. Hindman, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

RESOLVED, that, in connection with the BRS Transaction, amendments to the RBAP be and hereby are adopted in the Form attached hereto as Exhibit 11, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter and Roger C. Hindman, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

RESOLVED, that, in connection with the BRS Transaction, amendments to the Retirement Plan be and hereby are adopted in the Form attached hereto as Exhibit 12, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter and Roger C. Hindman, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

RESOLVED, that, in connection with the BRS Transaction, amendments to the Supplemental Plan be and hereby are adopted in the Form attached hereto as Exhibit 13, with such changes, consistent with the intent and purposes of such amendments, thereto as John F.

Carter and Roger C. Hindman, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

      **RESOLVED,** that, in connection with the FTPG Transaction, amendments to the Employee and Partner Plan be and hereby are adopted in the form attached hereto as Exhibit 14, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter and Roger C. Hindman, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

      **RESOLVED,** that, in connection with the FTPG Transaction, amendments to the RBAP be and hereby are adopted in the form attached hereto as Exhibit 15, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter and Roger C. Hindman, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

      **RESOLVED,** that, an amendment to the RBAP to provide for a cost-of-living adjustment for participants thereunder be and hereby is adopted in the form attached hereto as Exhibit 16, with such changes, consistent with the intent and purposes of such amendment, thereto as John F. Carter and Roger C. Hindman, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

      **RESOLVED,** that, amendments to the Retirement Plan to provide for a cost-of-living adjustment for participants thereunder and comply with certain provisions of EGTRRA be and hereby are adopted in the form attached hereto as Exhibit 17, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter and Roger C. Hindman, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

      **RESOLVED,** that, an amendment to the Supplemental Plan to increase benefits thereunder be and hereby is adopted in the form attached hereto as Exhibit 18, with such changes, consistent with the intent and purposes of such amendment, thereto as John F. Carter and Roger C. Hindman, or any one them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

      **RESOLVED,** that, an amendment to the Profit Sharing Plan to provide for the profit sharing contribution thereto for its plan year commencing July 1, 2002 and ending June 30, 2003 is adopted in the form attached hereto as Exhibit 19, with such changes, consistent with the intent and purposes of such amendment, thereto as John F. Carter and Roger C. Hindman, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

      **RESOLVED,** that, John F. Carter and Roger C. Hindman, or any one of them, be and hereby are (is) authorized to execute such other documents and perform such acts as they (he) may deem necessary or appropriate to carry out the intent and purposes of the amendments

made by the foregoing Resolutions in connection with the PwCC and BPO Transaction and pursuant to the PwCC and BPO Transaction Documents; and

      **RESOLVED,** that, John F. Carter and Roger C Hindman, or any one of them, be and hereby are (is) authorized to execute such other documents and perform such acts as they (he) may deem necessary or appropriate to carry out the intent and purposes of the amendments made by the foregoing Resolutions in connection with the BRS Transaction and pursuant to the BRS Transaction Documents; and

      **RESOLVED,** that, John F. Carter and Roger C. Hindman, or any one of them, be and hereby are (is) authorized to execute such other documents and perform such acts as they (he) may deem necessary or appropriate to carry out the intent and purposes of the amendments made by the foregoing Resolutions in connection with the FTPG Transaction and pursuant to the FTPG Transaction Documents related thereto; and

      **RESOLVED,** that, John F. Carter and Roger C. Hindman, or any one of them, be and hereby are (is) authorized to execute such other documents and perform such acts as they (he) may deem necessary or appropriate to amend the Employee and Partner Plan, Employee Plan, Profit Sharing Plan, RBAP and Retirement Plan, and to cause the BPO Sponsor to amend the BPO Plan, to comply with the provisions of EGTRRA, consistent with the intent and purposes of the amendments made to such plans by the foregoing and prior Resolutions of this Finance Committee; and

      **RESOLVED,** that, John F. Carter and Roger C. Hindman, or any one of them, be and hereby are (is) authorized to execute such other documents and perform such acts as they (he) may deem necessary or appropriate to carry out the intent and purposes of the amendments made by the foregoing Resolutions to provide for cost-of-living adjustments for participants under the RBAP and Retirement Plan, increase benefits under the Supplemental Plan and provide for a profit sharing contribution to the Profit Sharing Plan.

**Exhibit 1**

**Savings Plan for Employees and Partners of
PricewaterhouseCoopers LLP**


**<u>Statement of Amendments</u>**


The Plan is amended by adding the following thereto as an Appendix E:


Special Provisions Applicable to Participants who are PwCC Participants


Notwithstanding any other provision of the Plan to the contrary, the provisions of this Appendix E shall apply to any Participant (a "PwCC Participant") who severed employment from, or ceased to be active with, the Firm and commenced employment with International Business Machines Corporation in connection with the divestiture of the Firm's PwC Consulting business and certain portions of its Business Process Outsourcing business pursuant to a certain Master Stock and Asset Purchase Agreement among PricewaterhouseCoopers International Limited and various PricewaterhouseCoopers affiliated parties and International Business Machines Corporation, dated as of July 22, 2002, the U.S. Local Structure Term Sheet thereto, and other related agreements. Unless modified in this Appendix E, the general provisions of the Plan shall apply to a PwCC Participant.

1.  For purposes of Section 2.24 of the Plan, an Hour of Service of a PwCC Participant shall include continuous and uninterrupted employment of the PwCC Participant by International Business Machines Corporation that commenced immediately upon the PwCC Participant's severance of employment from, or ceasing to be active with, the Firm to the earlier of the PwCC Participant's severance of employment from International Business Machines Corporation or distribution to the PwCC Participant of his Benefit (or any portion thereof) under the Plan. 95 Hours of Service shall be credited to a PwCC Participant for each semimonthly payroll period of the Firm during any part of which the PwCC Participant is employed by International Business Machines Corporation.

2.  For purposes of Section 7.2 of the Plan, a 1-Year Break in Service of a PwCC Participant shall not include a Year of Service that is credited to the PwCC Participant after the application of Section 1 of this Appendix E.

3.  For purposes of Section 8.2(a) of the Plan, upon a PwCC Participant's severance of employment from, or ceasing to be active with, the Firm, a 100% vested Benefit that does not then exceed $5,000 shall be distributed to the PwCC Participant as soon as practical, without a requirement for the consent of the PwCC Participant, if the PwCC Participant does not have an outstanding participant loan under the Plan upon his severance of