employment from, or ceasing to be active with, the Firm.  Upon a PwCC Participant's severance of employment from International Business Machines Corporation, a Benefit that does not then exceed $5,000 shall be distributed to the PwCC Participant without a requirement for his consent, and the nonvested portion of the Account shall be forfeited.

4.  For purposes of Sections 9.1 and 9.5 of the Plan, a PwCC Participant's severance of employment from, or ceasing to be active with, the Firm shall preclude his thereafter making any withdrawal from the Plan.

5.  For purposes of Sections 9.2 - 9.4 of the Plan, a participant loan under the Plan that was outstanding on the date of a PwCC Participant's severance of employment from, or ceasing to be active with, the Firm may be repaid on a monthly basis by certified check received by the Plan by the 20th day of that month (or, the preceding business day if the 20th is not a business day) until the earlier of the PwCC Participant's severance of employment from International Business Machines Corporation or distribution to the PwCC Participant of his Benefit (or any portion thereof) under the Plan.  Any outstanding balance of a participant loan to a PwCC Participant that has not been repaid prior to the earlier of the PwCC Participant's severance of employment from International Business Machines Corporation or distribution to the PwCC Participant of his Benefit (or any portion thereof) will be defaulted and treated as a taxable distribution.  The Plan shall not make a new participant loan to a PwCC Participant after his severance of employment from, or ceasing to be active with, the Firm.

6.  For purposes of this Appendix E, International Business Machines Corporation shall include all corporations that are members of the controlled group of corporations (within the meaning of Section 414(b) of the Code) of which International Business Machines Corporation is a member, and any trade or business (whether or not incorporated) which is under common control (within the meaning of Section 414(c) of the Code) with International Business Machines Corporation.

Exhibit 4

## Retirement Benefit Accumulation for Employees of PricewaterhouseCoopers LLP

## Statement of Amendments

The Plan is amended by adding the following thereto as an Appendix E:

Special Provisions Applicable to Participants who are PwCC and BPO Participants

Notwithstanding any other provision of the Plan to the contrary, the provisions of this Appendix E shall apply to any Participant (a "PwCC and BPO Participant") who terminated employment from, or ceased to be active with, the Firm and commenced employment with International Business Machines Corporation in connection with the divestiture of the Firm's PwC Consulting business and certain portions of its Business Processing Outsourcing business (the "PwCC and BPO Transaction") pursuant to a certain Master Stock and Asset Purchase Agreement among PricewaterhouseCoopers International Limited and various PricewaterhouseCoopers affiliated parties and International Business Machines Corporation, dated as of July 22, 2002, the U.S. Local Structure Term Sheet thereto, and other related agreements.  Unless modified in this Appendix E, the general provisions of the Plan shall apply to a PwCC and BPO Participant.

1.  For purposes of Section 2.29 of the Plan, an Hour of Service of a PwCC and BPO Participant shall include continuous and uninterrupted employment of the PwCC and BPO Participant by International Business Machines Corporation that commenced immediately upon the PwCC and BPO Participant's termination of employment from, or ceasing to be active with, the Firm to the earlier of the PwCC and BPO Participant's termination of employment from International Business Machines Corporation or distribution to the PwCC and BPO Participant of his Benefit (or any portion thereof) under the Plan.  95 Hours of Service shall be credited to a PwCC and BPO Participant for each semimonthly payroll period of the Firm during any part of which the PwCC and BPO Participant is employed by International Business Machines Corporation.

2.  For purposes of Section 5.6(a) of the Plan and Section 8(e) of Appendix B to the Plan, upon a PwCC and BPO Participant's termination of employment from, or ceasing to be active with, the Firm, a 100% vested Benefit that does not then exceed $5,000 shall be distributed to the PwCC and BPO Participant as soon as practical, without a requirement for the consent of the PwCC and BPO Participant or his Spouse, but if the PwCC and BPO Participant's vested amount is zero he shall not be deemed to receive a distribution of such vested amount.  Upon a PwCC and BPO Participant's termination of employment from International Business Machines Corporation, a Benefit that does not then exceed

$5,000 shall be distributed to the PwCC and BPO Participant without a requirement for the consent of the PwCC and BPO Participant or his Spouse, and if the PwCC and BPO Participant's vested amount is zero he shall be deemed to receive a distribution of such vested amount.

3.     For purposes of Section 6.1(b) of the Plan, a 1-Year Break in Service of a PwCC and BPO Participant shall not include a Year of Service that is credited to the PwCC and BPO Participant after the application of Section 1 of this Appendix E.

4.     For purposes of Appendix B to the Plan, continuous and uninterrupted employment of a C&L Participant, who is also a PwCC and BPO Participant, by International Business Machines Corporation, that commenced immediately upon his termination of employment from the Firm in connection with the PwCC and BPO Transaction, to his termination of employment from International Business Machines Corporation shall be considered employment by the Firm for the purposes of determining whether the C&L Participant:

    1.   Is employed by the Firm upon his attainment of age 53,

    2.   Has at least sixty months of Service (as determined under Section 12(p)(1) of Appendix B) for the determination of a C&L Participant's Early Retirement Date under Section 12(g) of Appendix B, and

    3.   Has at least 360 months of Service (as determined under Section 12(p)(1) of Appendix B) for the requirement described in the second sentence of Section 4(b) of Appendix B;

provided, however, that if the C&L Participant's Benefit is distributed prior to the earlier of his termination of employment from International Business Machines Corporation or April 1 following the calendar year during which he attains age 70 1/2, then his age and Service shall be determined without regard to any such employment by International Business Machines Corporation.  The C&L Participant will be credited with a full month of Service if he is employed by International Business Machines Corporation for at least one day in a month.  The amount of the annual retirement income of the C&L Participant shall be determined without regard to his employment (other than as provided for by this Section 4) with, and compensation paid by, International Business Machines Corporation.

5.     For purposes of this Appendix E, International Business Machines Corporation shall include all corporations that are members of the controlled group of corporations (within the meaning of Section 414(b) of the Code) of which International Business Machines Corporation is a member, and any trade or business (whether or not incorporated) which is under common control (within the meaning of Section 414(c) of the Code) with International Business Machines Corporation.

**Exhibit 5**

## Retirement Plan for Employees of
## PricewaterhouseCoopers LLP

### Statement of Amendments

The Plan is amended by adding the following thereto as an Appendix B:

Special Provisions Applicable to Participants who are PwCC and BPO Participants

Notwithstanding any other provision of the Plan to the contrary, the provisions of this Appendix B shall apply to any Participant (a "PwCC and BPO Participant") who (1) terminated employment from the Firm and commenced employment with International Business Machines Corporation in connection with the divestiture of the Firm's PwC Consulting business and certain portions of its Business Processing Outsourcing business (the "PwCC and BPO Transaction") pursuant to a certain Master Stock and Asset Purchase Agreement among PricewaterhouseCoopers International Limited and various PricewaterhouseCoopers affiliated parties and International Business Machines Corporation, dated as of July 22, 2002, the U.S. Local Structure Term Sheet thereto, and other related agreements, and (2) was eligible to become, but was not yet, covered by the provisions of Section 6.3D of the Plan. Unless modified in this Appendix B, the general provisions of the Plan shall apply to a PwCC and BPO Participant.

1.      For purposes of Section 6.3D of the Plan:

(A)     Continuous and uninterrupted employment of a Participant, who is also a PwCC and BPO Participant, by International Business Machines Corporation, that commenced immediately upon his termination of employment from the Firm in connection with the PwCC and BPO Transaction, to his termination of employment from International Business Machines Corporation shall be considered employment by the Firm for the purposes of determining whether the Participant:

1. Is employed by the Firm upon his attainment of age 60 or age 65, and

2. Has at least 20 years of Credited Service

so as to be covered by Section 6.3D; provided, however, that if his Annual Retirement Benefit under this Plan or his Benefit under the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP is distributed

prior to the earlier of his termination of employment from International Business Machines Corporation or April 1 following the calendar year during which he attains age 70 ½, then such age and/or Credited Service shall be determined without regard to his employment by International Business Machines Corporation. 95 Hours of Employment shall be credited to a PwCC and BPO Participant for each semimonthly payroll period of the Firm during any part of which the PwCC and BPO Participant is employed by International Business Machines Corporation. The amount of a PwCC and BPO Participant's Annual Retirement Benefit shall be determined without regard to his employment with (other than as provided for by this Section 1), and compensation paid by, International Business Machines Corporation.

(B)     The date that a Participant, who is also a PwCC and BPO Participant, may elect the special option under Section 6.3D shall be the earliest of his (i) termination of employment from the Firm, (ii) termination of employment from International Business Machines Corporation, or (iii) attaining age 70 ½, and such date shall be treated as his date of retirement for purposes of being covered by Section 6.3D, subject to the requirement of Section 6.3D that he have attained age 65 or age 60 with at least 20 years of Credited Service.

2.     For purposes of this Appendix B, International Business Machines Corporation shall include all corporations that are members of the controlled group of corporations (within the meaning of Section 414(b) of the Code) of which International Business Machines Corporation is a member, and any trade or business (whether or not incorporated) which is under common control (within the meaning of Section 414(c) of the Code) with International Business Machines Corporation.

**Exhibit 6**

**PricewaterhouseCoopers LLP**
**Supplemental Plan**

**<u>Statement of Amendments</u>**

The Plan is amended by adding the following thereto as an Appendix B:

Special Provisions Applicable to Employees who are Legacy PW Transferees

Notwithstanding any other provision of the Plan to the contrary, the provisions of this Appendix B shall apply to any employee (a "Legacy PW Transferee") who (1) terminated employment from the Firm and commenced employment with International Business Machines Corporation in connection with the divestiture of the Firm's PwC Consulting business and certain portions of its Business Processing Outsourcing business (the "PwCC and BPO Transaction") pursuant to a certain Master Stock and Asset Agreement among PricewaterhouseCoopers International Limited and various PricewaterhouseCoopers affiliated parties and International Business Machines Corporation, dated as of July 22, 2002, the U.S. Local Structure Term Sheet thereto, and other related agreements, and (2) was eligible to become, but was not yet, a PW Participant upon such termination of employment from the Firm.   Unless modified in this Appendix B, the general provisions of the Plan shall apply to a Legacy PW Transferee.

1.    For purposes of Sections 2.1(e) and (f) of the Plan, whether a Legacy PW Transferee is a Highly Compensated Employee shall be determined at the time of his termination of employment from the Firm in connection with the PwCC and BPO Transaction.

2.    For purposes of Section 2.1(h) of the Plan, to determine whether a Legacy PW Transferee is covered by the Plan, his termination of employment from the Firm shall be deemed not to occur until his termination of employment from International Business Machines Corporation, and, for purposes of determining whether he has at least 20 years of credited service, credited service shall include his continuous and uninterrupted employment by International Business Machines Corporation that commenced immediately upon his termination of employment from the Firm in connection with the PwCC and BPO Transaction to his termination of employment from International Business Machines Corporation; provided, however, that if his Annual Retirement Benefit under the Retirement Plan for Employees of PricewaterhouseCoopers LLP, or his Benefit under the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP, is distributed prior to the earlier of his termination of employment from International Business Machines Corporation or April 1 following the calendar year during which he

attains age 70 ½, then such employment and credited service shall be determined without regard to his employment by International Business Machines Corporation.

3.    For purposes of section 3.1(a) of the Plan, in the case of a Legacy PW Transferee, the amount of his Supplemental Retirement Benefit shall be determined based upon his average final compensation and credited service at the time of his termination of employment from the Firm in connection with the PwCC and BPO Transaction.

4.    For purposes of this Appendix B, International Business Machines Corporation shall include all corporations that are members of the controlled group of corporations (within the meaning of section 414(b) of the Code) of which International Business Machines Corporation is a member, and any trade or business (whether or not incorporated) which is under common control (within the meaning of Section 414(c) of the Code) with International Business Machines Corporation.

Exhibit 7

**Savings Plan for BPO**

**Statement of Amendments**

The Plan is amended by adding the following thereto as an Appendix A:

Special Provisions Applicable to Participants who are BPO Solutions Participants

Notwithstanding any other provision of the Plan to the contrary, the provisions of this Appendix A shall apply to any Participant (a "BPO Solutions Participant") who severed employment from PwC BPO Solutions LLC and commenced employment with International Business Machines Corporation in connection with the divestiture by PricewaterhouseCoopers LLP of its PwC Consulting business and certain portions of its Business Process Outsourcing business pursuant to a certain Master Stock and Asset Purchase Agreement among PricewaterhouseCoopers International Limited and various PricewaterhouseCoopers affiliated parties and International Business Machines Corporation, dated as of July 22, 2002, the U.S. Local Structure Term Sheet thereto, and other related agreements. Unless modified in this Appendix A, the general provisions of the Plan shall apply to a BPO Solutions Participant.

1. For purposes of Section 2.29 of the Plan, an Hour of Service of a BPO Solutions Participant shall include continuous and uninterrupted employment of the BPO Solutions Participant by International Business Machines Corporation that commenced immediately upon the BPO Solutions Participant's severance of employment from PwC BPO Solutions LLC to the earlier of the BPO Solutions Participant's severance of employment from International Business Machines Corporation or distribution to the BPO Solutions Participant of his Benefit (or any portion thereof) under the Plan. 95 Hours of Service shall be credited to a BPO Solutions Participant for each semimonthly payroll period of the Employer during any part of which the BPO Solutions Participant is employed by International Business Machines Corporation.

2. For purposes of Section 7.2 of the Plan, a 1-Year Break in Service of a BPO Solutions Participant shall not include a Year of Service that is credited to the BPO Solutions Participant after the application of Section 1 of this Appendix A.

3. For purposes of Section 8.2(a) of the Plan, upon a BPO Solutions Participant's severance of employment from PwC BPO Solutions LLC, a 100% vested Benefit that does not then exceed $5,000 shall be distributed to the BPO Solutions Participant as soon as practical, without a requirement for the consent of the BPO Solutions Participant, if the BPO Solutions Participant does not have an outstanding participant loan under the Plan upon his

severance of employment from PwC BPO Solutions LLC.  Upon a BPO Solutions Participant's severance of employment from International Business Machines Corporation, a Benefit that does not then exceed $5,000 shall be distributed to the BPO Solutions Participant without a requirement for his consent, and the nonvested portion of the Account shall be forfeited.

4.    For purposes of Sections 9.1 and 9.5 of the Plan, a BPO Solutions Participant's severance of employment from PwC BPO Solutions LLC shall preclude his thereafter making any withdrawal from the Plan.

5.    For purposes of Sections 9.2 - 9.4 of the Plan, a participant loan under the Plan that was outstanding on the date of a BPO Solutions Participant's severance of employment from PwC BPO Solutions LLC may be repaid on a monthly basis by certified check received by the Plan by the 20th day of that month (or, the preceding business day if the 20th is not a business day) until the earlier of the BPO Solutions Participant's severance of employment from International Business Machines Corporation or distribution to the BPO Solutions Participant of his Benefit (or any portion thereof) under the Plan.  Any outstanding balance of a participant loan to a BPO Solutions Participant that has not been repaid prior to the earlier of the BPO Solutions Participant's severance of employment from International Business Machines Corporation or distribution to the BPO Solutions Participant of his Benefit (or any portion thereof) will be defaulted and treated as a taxable distribution.   The Plan shall not make a new participant loan to a BPO Solutions Participant after his severance of employment from PwC BPO Solutions LLC.

6.    For purposes of this Appendix A, International Business Machines Corporation shall include all corporations that are members of the controlled group of corporations (within the meaning of Section 414(b) of the Code) of which International Business Machines Corporation is a member, and any trade or business (whether or not incorporated) which is under common control (within the meaning of Section 414(c) of the Code) with International Business Machines Corporation.

**Exhibit 8**

## Savings Plan for Employees and Partners of
## PricewaterhouseCoopers LLP

### Statement of Amendments

The Plan is amended by adding the following thereto as an Appendix F:

Special Provisions Applicable to Participants who are BRS Participants

Notwithstanding any other provision of the Plan to the contrary, the provisions of this Appendix F shall apply to any Participant (a "BRS Participant") who severed employment from, or ceased to be active with, the Firm and commenced employment with FTI Consulting, Inc. in connection with the Agreement for the Purchase and Sale of Assets by and between PricewaterhouseCoopers LLP, seller, and FTI Consulting, Inc., buyer, dated as of July 24, 2002. Unless modified in this Appendix F, the general provisions of the Plan shall apply to a BRS Participant.

1.  For purposes of Section 2.24 of the Plan, an Hour of Service of a BRS Participant shall include continuous and uninterrupted employment of the BRS Participant by FTI Consulting, Inc. that commenced immediately upon the BRS Participant's severance of employment from, or ceasing to be active with, the Firm to the earlier of the BRS Participant's severance of employment from FTI Consulting, Inc. or distribution to the BRS Participant of his Benefit (or any portion thereof) under the Plan. 95 Hours of Service shall be credited to a BRS Participant for each semimonthly payroll period of the Firm during any part of which the BRS Participant is employed by FTI Consulting, Inc.

2.  For purposes of Section 7.2 of the Plan, a 1-Year Break in Service of a BRS Participant shall not include a Year of Service that is credited to the BRS Participant after the application of Section 1 of this Appendix F.

3.  For purposes of Section 8.2(a) of the Plan, upon a BRS Participant's severance of employment from, or ceasing to be active with, the Firm, a 100% vested Benefit that does not then exceed $5,000 shall be distributed to the BRS Participant as soon as practical, without a requirement for the consent of the BRS Participant, if the BRS Participant does not have an outstanding participant loan under the Plan upon his severance of employment from, or ceasing to be active with, the Firm. Upon a BRS Participant's severance of employment from FTI Consulting, Inc., a Benefit that does not then exceed $5,000 shall be distributed to the BRS Participant without a requirement for his consent, and the nonvested portion of the Account shall be forfeited.

4.  For purposes of Sections 9.1 and 9.5 of the Plan, a BRS Participant's severance of employment from, or ceasing to be active with, the Firm shall preclude his thereafter making any withdrawal from the Plan.

5.  For purposes of Sections 9.2 - 9.4 of the Plan, a participant loan under the Plan that was outstanding on the date of a BRS Participant's severance of employment from, or ceasing to be active with, the Firm may be repaid on a monthly basis by certified check received by the Plan by the 20th day of that month (or, the preceding business day if the 20th is not a business day) until the earlier of the BRS Participant's severance of employment from FTI Consulting, Inc. or distribution to the BRS Participant of his Benefit (or any portion thereof) under the Plan. Any outstanding balance of a participant loan to a BRS Participant that has not been repaid prior to the earlier of the BRS Participant's severance of employment from FTI Consulting, Inc. or distribution to the BRS Participant of his Benefit (or any portion thereof) will be defaulted and treated as a taxable distribution. The Plan shall not make a new participant loan to a BRS Participant after his severance of employment from, or ceasing to be active with, the Firm.

6.  For purposes of this Appendix F, FTI Consulting, Inc. shall include all corporations that are members of the controlled group of corporations (within the meaning of Section 414(b) of the Code) of which FTI Consulting, Inc. is a member, and any trade or business (whether or not incorporated) which is under common control (within the meaning of Section 414(c) of the Code) with FTI Consulting, Inc.

Exhibit 9

**Savings Plan for Employees of
PricewaterhouseCoopers LLP**

**Statement of Amendments**

The Plan is amended by adding the following thereto as an Appendix D:

Special Provisions Applicable to Participants who are BRS Participants

Notwithstanding any other provision of the Plan to the contrary, the provisions of this Appendix D shall apply to any Participant (a "BRS Participant") who severed employment from the Firm and commenced employment with FTI Consulting, Inc. in connection with the Agreement for the Purchase and Sale of Assets by and between PricewaterhouseCoopers LLP, seller, and FTI Consulting, Inc., buyer, dated as of July 24, 2002. Unless modified in this Appendix B, the general provisions of the Plan shall apply to a BRS Participant.

1.    For purposes of Section 2.23 of the Plan, an Hour of Service of a BRS Participant shall include continuous and uninterrupted employment of the BRS Participant by FTI Consulting, Inc. that commenced immediately upon the BRS Participant's severance of employment from the Firm to the earlier of the BRS Participant's severance of employment from FTI Consulting, Inc. or distribution to the BRS Participant of his Benefit (or any portion thereof) under the Plan. 95 Hours of Service shall be credited to a BRS Participant for each semimonthly payroll period of the Firm during any part of which the BRS Participant is employed by FTI Consulting, Inc.

2.    For purposes of Section 7.2 of the Plan, a 1-Year Break in Service of a BRS Participant shall not include a Year of Service that is credited to the BRS Participant after the application of Section 1 of this Appendix D.

3.    For purposes of Section 8.2(a) of the Plan, upon a BRS Participant's severance of employment from the Firm, a 100% vested Benefit that does not then exceed $5,000 shall be distributed to the BRS Participant as soon as practical, without a requirement for the consent of the BRS Participant, if the BRS Participant does not have an outstanding participant loan under the Plan upon his severance of employment from the Firm. Upon a BRS Participant's severance of employment from FTI Consulting, Inc., a Benefit that does not then exceed $5,000 shall be distributed to the BRS Participant without a requirement for his consent, and the nonvested portion of the Account shall be forfeited.

4.    For purposes of Sections 9.1 and 9.5 of the Plan, a BRS Participant's severance of employment from the Firm shall preclude his thereafter making any withdrawal from the Plan.

5.    For purposes of Sections 9.2 - 9.4 of the Plan, a participant loan under the Plan that was outstanding on the date of a BRS Participant's severance of employment from the Firm may be repaid on a monthly basis by certified check received by the Plan by the 20th day of that month (or, the preceding business day if the 20th is not a business day) until the earlier of the BRS Participant's severance of employment from FTI Consulting, Inc. or distribution to the BRS Participant of his Benefit (or any portion thereof) under the Plan. Any outstanding balance of a participant loan to a BRS Participant that has not been repaid prior to the earlier of the BRS Participant's severance of employment from FTI Consulting, Inc. or distribution to the BRS Participant of his Benefit (or any portion thereof) will be defaulted and treated as a taxable distribution. The Plan shall not make a new participant loan to a BRS Participant after his severance of employment from the Firm.

6.    For purposes of this Appendix D, FTI Consulting, Inc. shall include all corporations that are members of the controlled group of corporations (within the meaning of Section 414(b) of the Code) of which FTI Consulting, Inc. is a member, and any trade or business (whether or not incorporated) which is under common control (within the meaning of Section 414(c) of the Code) with FTI Consulting, Inc.

Exhibit 10

## Profit Sharing Plan for Partners of
## PricewaterhouseCoopers LLP

### Statement of Amendments

The Plan is amended by adding the following thereto as an Appendix D:

Special Provisions Applicable to Participants who are BRS Participants

Notwithstanding any other provision of the Plan to the contrary, the provisions of this Appendix D shall apply to any Participant (a "BRS Participant") who ceased to be active with the Firm and commenced employment with FTI Consulting, Inc. in connection with the Agreement for the Purchase and Sale of Assets by and between PricewaterhouseCoopers LLP, seller, and FTI Consulting, Inc., buyer, dated as of July 24, 2002. Unless modified in this Appendix D, the general provisions of the Plan shall apply to a BRS Participant.

1. For purposes of Section 2.22 of the Plan, an Hour of Service of a BRS Participant shall include continuous and uninterrupted employment of the BRS Participant by FTI Consulting, Inc. that commenced immediately upon the BRS Participant's ceasing to be active with the Firm to the BRS Participant's termination of employment from FTI Consulting, Inc. 95 Hours of Service shall be credited to a BRS Participant for each semimonthly payroll period of the Firm during any part of which the BRS Participant is employed by FTI Consulting, Inc.

2. For purposes of Section 7.2(b) of the Plan, a 1-Year Break in Service of a BRS Participant shall not include a Year of Service that is credited to the BRS Participant after the application of Section 1 of this Appendix D.

3. For purposes of Section 8.2(a) of the Plan, upon a BRS Participant's ceasing to be active with the Firm, a Benefit that does not then exceed $5,000 shall be distributed to the BRS Participant as soon as practical, without a requirement for the consent of the BRS Participant, but if the BRS Participant's vested amount is zero he shall not be deemed to receive a distribution of such vested amount. Upon a BRS Participant's termination of employment from FTI Consulting, Inc., a Benefit that does not then exceed $5,000 shall be distributed to the BRS Participant without a requirement for the consent of the BRS Participant, and if the BRS Participant's vested amount is zero he shall be deemed to receive a distribution of such vested amount.

4.    For purposes of this Appendix D, FTI Consulting, Inc. shall include all corporations that are members of the controlled group of corporations (within the meaning of Section 414(b) of the Code) of which FTI Consulting, Inc. is a member, and any trade or business (whether or not incorporated) which is under common control (within the meaning of Section 414(c) of the Code) with FTI Consulting, Inc.

Exhibit 11

### Retirement Benefit Accumulation for Employees of
### PricewaterhouseCoopers LLP

### <u>Statement of Amendments</u>

The Plan is amended by adding the following thereto as an Appendix F:

Special Provisions Applicable to Participants who are BRS Participants

Notwithstanding any other provision of the Plan to the contrary, the provisions of this Appendix F shall apply to any Participant (a "BRS Participant") who terminated employment from, or ceased to be active with, the Firm and commenced employment with FTI Consulting, Inc. in connection with the divestiture of the Firm's Business Recovery Services business ("BRS Transaction"), pursuant to an Agreement for the Purchase and Sale of Assets among PricewaterhouseCoopers LLP, seller, and FTI Consulting, Inc., buyer, dated as of July 24, 2002. Unless modified in this Appendix F, the general provisions of the Plan shall apply to a BRS Participant.

1.  For purposes of Section 2.29 of the Plan, an Hour of Service of a BRS Participant shall include continuous and uninterrupted employment of the BRS Participant by FTI Consulting, Inc. that commenced immediately upon the BRS Participant's termination of employment from, or ceasing to be active with, the Firm to the earlier of the BRS Participant's termination of employment from FTI Consulting, Inc. or distribution to the BRS Participant of his Benefit (or any portion thereof) under the Plan. 95 Hours of Service shall be credited to a BRS Participant for each semimonthly payroll period of the Firm during any part of which the BRS Participant is employed by FTI Consulting, Inc.

2.  For purposes of Section 5.6(a) of the Plan and Section 8(e) of Appendix B to the Plan, upon a BRS Participant's termination of employment from, or ceasing to be active with, the Firm, a 100% vested Benefit that does not then exceed $5,000 shall be distributed to the BRS Participant as soon as practical, without a requirement for the consent of the BRS Participant or his Spouse, but if the BRS Participant's vested amount is zero he shall not be deemed to receive a distribution of such vested amount. Upon a BRS Participant's termination of employment from FTI Consulting, Inc., a Benefit that does not then exceed $5,000 shall be distributed to the BRS Participant without a requirement for the consent of the BRS Participant or his Spouse, and if the BRS Participant's vested amount is zero he shall be deemed to receive a distribution of such vested amount.

3.   For purposes of Section 6.1(b) of the Plan, a 1-Year Break in Service of a BRS Participant shall not include a Year of Service that is credited to the BRS Participant after the application of Section 1 of this Appendix F.

4.   For purposes of Appendix B to the Plan, continuous and uninterrupted employment of a C&L Participant, who is also a BRS Participant, by FTI Consulting, Inc., that commenced immediately upon his termination of employment from the Firm in connection with the BRS Transaction, to his termination of employment from FTI Consulting, Inc. shall be considered employment by the Firm for the purposes of determining whether the C&L Participant:

   1.   Is employed by the Firm upon his attainment of age 53,

   2.   Has at least sixty months of Service (as determined under Section 12(p)(1) of Appendix B) for the determination of a C&L Participant's Early Retirement Date under Section 12(g) of Appendix B, and

   3.   Has at least 360 months of Service (as determined under Section 12(p)(1) of Appendix B) for the requirement described in the second sentence of Section 4(b) of Appendix B;

provided, however, that if the C&L Participant's Benefit is distributed prior to the earlier of his termination of employment from FTI Consulting, Inc. or April 1 following the calendar year during which he attains age 70 ½, then his age and Service shall be determined without regard to any such employment by FTI Consulting, Inc.  The C&L Participant will be credited with a full month of Service if he is employed by FTI Consulting, Inc. for at least one day in a month.  The amount of the annual retirement income of the C&L Participant shall be determined without regard to his employment (other than as provided for by this Section 4) with, and compensation paid by, FTI Consulting, Inc.

5.   For purposes of this Appendix F, FTI Consulting, Inc. shall include all corporations that are members of the controlled group of corporations (within the meaning of Section 414(b) of the Code) of which FTI Consulting, Inc. is a member, and any trade or business (whether or not incorporated) which is under common control (within the meaning of Section 414(c) of the Code) with FTI Consulting, Inc.

Exhibit 12

# Retirement Plan for Employees of
# PricewaterhouseCoopers LLP

### Statement of Amendments

The Plan is amended by adding the following thereto as an Appendix C:

Special Provisions Applicable to Participants who are BRS Participants

Notwithstanding any other provision of the Plan to the contrary, the provisions of this Appendix C shall apply to any Participant (a "BRS Participant") who (1) terminated employment from the Firm and commenced employment with FTI Consulting, Inc. in connection with the divestiture of the Firm's Business Recovery Services business (the "BRS Transaction"), pursuant to an Agreement for the Purchase and Sale of Assets among PricewaterhouseCoopers LLP, seller, and FTI Consulting, Inc., buyer, dated as of July 24, 2002, and (2) was eligible to become, but was not yet, covered by the provisions of Section 6.3D of the Plan.  Unless modified in this Appendix C, the general provisions of the Plan shall apply to a BRS Participant.

1.    For purposes of Section 6.3D of the Plan:

   (A)    Continuous and uninterrupted employment of a Participant, who is also a BRS Participant, by FTI Consulting, Inc., that commenced immediately upon his termination of employment from the Firm in connection with the BRS Transaction, to his termination of employment from FTI Consulting, Inc. shall be considered employment by the Firm for the purposes of determining whether the Participant:

   1. Is employed by the Firm upon his attainment of age 60 or age 65, and

   2. Has at least 20 years of Credited Service

   so as to be covered by Section 6.3D; provided, however, that if his Annual Retirement Benefit under this Plan or his Benefit under the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP is distributed prior to the earlier of his termination of employment from FTI Consulting, Inc. or April 1 following the calendar year during which he attains age 70 1/2 then such age and/or Credited Service shall be determined without regard to his employment by FTI Consulting, Inc.  95 Hours of Employment shall be credited to a BRS Participant for each semimonthly payroll period of the Firm during any

part of which the BRS Participant is employed by FTI Consulting, Inc.  The amount of a BRS Participant's Annual Retirement Benefit shall be determined without regard to his employment with (other than as provided for by this Section 1), and compensation paid by, FTI Consulting, Inc.

(B)     The date that a Participant, who is also a BRS Participant, may elect the special option under Section 6.3D shall be the earliest of his (i) termination of employment from the Firm, (ii) termination of employment from FTI Consulting, Inc., or (iii) attaining age 70 1/2, and such date shall be treated as his date of retirement for purposes of being covered by Section 6.3D, subject to the requirement of Section 6.3D that he have attained age 65 or age 60 with at least 20 years of Credited Service.

2.     For purposes of this Appendix C, FTI Consulting, Inc. shall include all corporations that are members of the controlled group of corporations (within the meaning of Section 414(b) of the Code) of which FTI Consulting, Inc. is a member, and any trade or business (whether or not incorporated) which is under common control (within the meaning of Section 414(c) of the Code) with FTI Consulting, Inc.

Exhibit 13

**PricewaterhouseCoopers LLP**
**Supplemental Plan**


**<u>Statement of Amendments</u>**


The Plan is amended by adding the following thereto as an Appendix C:


Special Provisions Applicable to Employees who are Legacy PW Transferees


Notwithstanding any other provision of the Plan to the contrary, the provisions of this Appendix C shall apply to any employee (a "Legacy PW Transferee") who (1) terminated employment from the Firm and commenced employment with FTI Consulting, Inc. in connection with the divestiture of the Firm's Business Recovery Services business (the "BRS Transaction") pursuant to an Agreement for the Purchase and Sale of Assets among PricewaterhouseCoopers LLP, seller, and FTI Consulting, Inc., buyer, dated as of July 24, 2002, and (2) was eligible to become, but was not yet, a PW Participant upon such termination of employment from the Firm. Unless modified in this Appendix C, the general provisions of the Plan shall apply to a Legacy PW Transferee.


1.   For purposes of Sections 2.1(e) and (f) of the Plan, whether a Legacy PW Transferee is a Highly Compensated Employee shall be determined at the time of his termination of employment from the Firm in connection with the BRS Transaction.

2.   For purposes of Section 2.1(h) of the Plan, to determine whether a Legacy PW Transferee is covered by the Plan, his termination of employment from the Firm shall be deemed not to occur until his termination of employment from FTI Consulting, Inc., and, for purposes of determining whether he has at least 20 years of credited service, credited service shall include his continuous and uninterrupted employment by FTI Consulting, Inc. that commenced immediately upon his termination of employment from the Firm in connection with the BRS Transaction to his termination of employment from FTI Consulting, Inc.; provided, however, that if his Annual Retirement Benefit under the Retirement Plan for Employees of PricewaterhouseCoopers LLP, or his Benefit under the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP, is distributed prior to the earlier of his termination of employment from FTI Consulting, Inc. or April 1 following the calendar year during which he attains age 70-1/2, then such employment and credited service shall be determined without regard to his employment by FTI Consulting, Inc.

3.   For purposes of section 3.1(a) of the Plan, in the case of a Legacy PW Transferee, the amount of his Supplemental Retirement Benefit shall be determined based upon his average final compensation and credited service at the time of his termination of employment from the Firm in connection with the BRS Transaction.

4.   For purposes of this Appendix C, FTI Consulting, Inc. shall include all corporations that are members of the controlled group of corporations (within the meaning of section 414(b) of the Code) of which FTI Consulting, Inc. is a member, and any trade or business (whether or not incorporated) which is under common control (within the meaning of Section 414(c) of the Code) with FTI Consulting, Inc.

Exhibit 14

**Savings Plan for Employees and Partners of
PricewaterhouseCoopers LLP**

**<u>Statement of Amendments</u>**

The Plan is amended by adding the following thereto as an Appendix G:

Special Provisions Applicable to Participants who are FTPG Participants

Notwithstanding any other provision of the Plan to the contrary, the provisions of this Appendix G shall apply to any Participant (a "FTPG Participant") who severed employment from the Firm and commenced employment with Clark/Bardes Inc. in connection with the divestiture of the Firm's FTPG LLC business pursuant to a certain Membership Interests Purchase Agreement among PricewaterhouseCoopers LLP and Clark/Bardes, Inc. and Clark/Bardes Consulting, Inc., dated as of February 25, 2002.  Unless modified in this Appendix G, the general provisions of the Plan shall apply to a FTPG Participant.

1.   For purposes of Section 2.24 of the Plan, an Hour of Service of a FTPG Participant shall include continuous and uninterrupted employment of the FTPG Participant by Clark/Bardes, Inc. that commenced immediately upon the FTPG Participant's severance of employment from the Firm to the earlier of the FTPG Participant's severance of employment from Clark/Bardes, Inc. or distribution to the FTPG Participant of his Benefit (or any portion thereof) under the Plan.  95 Hours of Service shall be credited to a FTPG Participant for each semimonthly payroll period of the Firm during any part of which the FTPG Participant is employed by Clark/Bardes, Inc.

2.   For purposes of Section 7.2 of the Plan, a 1-Year Break in Service of a FTPG Participant shall not include a Year of Service that is credited to the FTPG Participant after the application of Section 1 of this Appendix G.

3.   For purposes of Section 8.2(a) of the Plan, upon a FTPG Participant's severance of employment from the Firm, a 100% vested Benefit that does not then exceed $5,000 shall be distributed to the FTPG Participant as soon as practical, without a requirement for the consent of the FTPG Participant.  Upon a FTPG Participant's severance of employment from Clark/Bardes, Inc., a Benefit that does not then exceed $5,000 shall be distributed to the FTPG Participant without a requirement for his consent, and the nonvested portion of the Account shall be forfeited.

4.   For purposes of Sections 9.1 and 9.5 of the Plan, a FTPG Participant's severance of employment from the Firm shall preclude his thereafter making any withdrawal from the Plan.

5.   The Plan shall not make a new participant loan to a FTPG Participant after his severance of employment from the Firm.

6.   For purposes of this Appendix G, Clark/Bardes, Inc. shall include all corporations that are members of the controlled group of corporations (within the meaning of Section 414(b) of the Code) of which Clark/Bardes, Inc. is a member, and any trade or business (whether or not incorporated) which is under common control (within the meaning of Section 414(c) of the Code) with International Business Machines Corporation.

Exhibit 15

## Retirement Benefit Accumulation for Employees of
## PricewaterhouseCoopers LLP

### Statement of Amendments

The Plan is amended by adding the following thereto as an Appendix G:

Special Provisions Applicable to Participants who are FTPG Participants

Notwithstanding any other provision of the Plan to the contrary, the provisions of this Appendix G shall apply to any Participant (a "FTPG Participant") who terminated employment from the Firm and commenced employment with Clark/Bardes, Inc. in connection with the divestiture of the Firm's FTPG LLC business (the " FTPG LLC Transaction") pursuant to a certain Membership Interests Purchase Agreement among PricewaterhouseCoopers LLP and Calrk/Bardes, Inc. and Clark/Bardes Consulting, Inc., dated as of February 25, 2002. Unless modified in this Appendix G, the general provisions of the Plan shall apply to a FTPG Participant.

1.  For purposes of Section 2.29 of the Plan, an Hour of Service of a FTPG Participant shall include continuous and uninterrupted employment of the FTPG Participant by Clark/Bardes, Inc. that commenced immediately upon the FTPG Participant's termination of employment from the Firm to the earlier of the FTPG Participant's termination of employment from Clark/Bardes, Inc. or distribution to the FTPG Participant of his Benefit (or any portion thereof) under the Plan. 95 Hours of Service shall be credited to a FTPG Participant for each semimonthly payroll period of the Firm during any part of which the FTPG Participant is employed by Clark/Bardes, Inc.

2.  For purposes of Section 5.6(a) of the Plan and Section 8(e) of Appendix B to the Plan, upon a FTPG Participant's termination of employment from the Firm, a 100% vested Benefit that does not then exceed $5,000 shall be distributed to the FTPG Participant as soon as practical, without a requirement for the consent of the FTPG Participant or his Spouse, but if the FTPG Participant's vested amount is zero he shall not be deemed to receive a distribution of such vested amount. Upon a FTPG Participant's termination of employment from Clark/Bardes, Inc., a Benefit that does not then exceed $5,000 shall be distributed to the FTPG Participant without a requirement for the consent of the FTPG Participant or his Spouse, and if the FTPG Participant's vested amount is zero he shall be deemed to receive a distribution of such vested amount.

3. For purposes of Section 6.1(b) of the Plan, a 1-Year Break in Service of a FTPG Participant shall not include a Year of Service that is credited to the FTPG Participant after the application of Section 1 of this Appendix G.

4. For purposes of Appendix B to the Plan, continuous and uninterrupted employment of a C&L Participant, who is also a FTPG Participant, by Clark/Bardes, Inc., that commenced immediately upon his termination of employment from the Firm in connection with the FTPG LLC Transaction, to his termination of employment from Clark/Bardes, Inc. shall be considered employment by the Firm for the purposes of determining whether the C&L Participant:

   1. Is employed by the Firm upon his attainment of age 53,

   2. Has at least sixty months of Service (as determined under Section 12(p)(1) of Appendix B) for the determination of a C&L Participant's Early Retirement Date under Section 12(g) of Appendix B, and

   3. Has at least 360 months of Service (as determined under Section 12(p)(1) of Appendix B) for the requirement described in the second sentence of Section 4(b) of Appendix B;

   provided, however, that if the C&L Participant's Benefit is distributed prior to the earlier of his termination of employment from Clark/Bardes, Inc. or April 1 following the calendar year during which he attains age 70 1/2, then his age and Service shall be determined without regard to any such employment by Clark/Bardes, Inc. The C&L Participant will be credited with a full month of Service if he is employed by Clark/Bardes, Inc. for at least one day in a month. The amount of the annual retirement income of the C&L Participant shall be determined without regard to his employment (other than as provided for by this Section 4) with, and compensation paid by, Clark/Bardes, Inc.

5. For purposes of this Appendix G, Clark/Bardes, Inc. shall include all corporations that are members of the controlled group of corporations (within the meaning of Section 414(b) of the Code) of which Clark/Bardes, Inc. is a member, and any trade or business (whether or not incorporated) which is under common control (within the meaning of Section 414(c) of the Code) with Clark/Bardes, Inc.

Exhibit 16

### Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP

### Statement of Amendment

The Plan is amended by adding the following to Appendix A:

2002 Cost of Living Adjustment

The periodic benefit of any Member (or surviving spouse or beneficiary of such Member) who was a participant (or beneficiary) in the Coopers & Lybrand Retirement Plan on June 30, 1999 and who is receiving periodic benefits under the terms of that Plan, as reflected in Appendix B to this Plan, on December 1, 2002, and who retired or otherwise terminated as an Employee from the Firm shall be increased, effective as of December 1, 2002, in accordance with the following schedule:

| Annuity Starting Date | Percent Increase |
|---|---|
| On or before June 30, 1999 | 3.0% |
| July 1, 1999 to December 31, 1999 | 2.3% |
| January 1, 2000 to June 30, 2000 | 1.1% |
| July 1, 2000 to December 31, 2000 | 0.5% |
| After December 31, 2000 | No increase |

Members (or spouses or beneficiaries of Members) who received a lump sum cashout of their benefit as of December 1, 2002 or who had deferred payment of their benefits to a date which is after December 1, 2002 shall not be eligible for this Cost of Living Adjustment.

Exhibit 17

## Retirement Plan for Employees of
## PricewaterhouseCoopers LLP

### Statement of Amendments

1.    The Plan is amended by adding the following to the definition of Actuarially Equivalent in Section 2.1:

Effective for Pension Commencement Dates on or after December 31, 2002, the mortality table set forth in Rev. Rul. 2001-62 shall replace the 1983 Group Annuity Mortality Table.

2.    The Plan is amended by adding the following to Section 5.8:

Effective December 1, 2002, the Annual Retirement Benefits then being received by Annuitants, Early Annuitants and Terminated Participants shall be increased by applying the factors set forth below; provided, however, that an Annual Retirement Benefit as adjusted shall not exceed the maximum benefit permitted under Paragraph 5.1A:

| If retirement commenced | Benefits shall be increased |
|---|---|
| On or before June 30, 1999 | 3.0% |
| July 1, 1999 to December 31, 1999 | 2.3% |
| January 1, 2000 to June 30, 2000 | 1.1% |
| July 1, 2000 to December 31, 2000 | 0.5% |
| After December 31, 2000 | No increase |

Exhibit 18

**PricewaterhouseCoopers LLP**
**Supplemental Plan**

**<u>Statement of Amendment</u>**

The Plan is amended by adding the following to Section 3.1(a)(3):

With respect to PW Participants who Retire on or after July 1, 2002, the limitation on annual compensation that may be taken into account for the calculation of benefits payable under the Retirement Plan had been $250,000 for the plan year of the Retirement Plan beginning July 1, 1994, $255,000 for the plan year beginning July 1, 1995, $265,000 for the plan year beginning July 1, 1996, $270,000 for the plan year beginning July 1, 1997, $275,000 for the plan year beginning July 1, 1998, $280,000 for the plan year beginning July 1, 1999, $285,000 for the plan year beginning July 1, 2000, $295,000 for the plan year beginning July 1, 2001, and $325,000 for the plan year beginning July 1, 2002 and plan years thereafter.

**Exhibit 19**

**Profit Sharing Plan for Partners of
PricewaterhouseCoopers LLP**

**Statement of Amendment**

The Plan is amended by adding the following to Section 5.2:

Notwithstanding any other provision of the Plan to the contrary, including but not limited to Section 2.5, effective for the Plan Year ending June 30, 2003, a Participant who is a Partner or Principal shall have mandatorily allocated to his Profit Sharing Subaccount the amount of $4,000; provided, however, that such Participant is credited with not less than 810 Hours of Service during such Plan Year (determined on the basis of 45 Hours of Service for each calendar week for which at least one Hour of Service would be entitled to be credited).

## Retirement Benefit Accumulation Plan
## for Employees of PricewaterhouseCoopers LLP

**WHEREAS,** PricewaterhouseCoopers LLP (the "Firm") sponsors the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (the "RBAP"); and

**WHEREAS,** the RBAP provides that it may be amended by the Finance Committee of the Board of Partners and Principals (the "Finance Committee") of the Firm; and

**WHEREAS,** the Finance Committee previously amended the RBAP, effective as of July 1, 2002, to exclude from a benefit accrual thereunder, under certain circumstances, partners and principals who will withdraw from the Firm in connection with its divestiture of its PricewaterhouseCoopers LLP Consulting business; and,

**WHEREAS,** the divestiture by the Firm of its PricewaterhouseCoopers LLP Consulting Business has been changed from an initial public offering of securities to a sale of assets to International Business Machines Corporation, thereby requiring clarification of the amendment to the RBAP made by the Finance Committee; and

**WHEREAS,** the Finance Committee authorized and directed John F. Carter, U.S. Partner Affairs Leader of the Firm, and Roger C. Hindman, a partner of the Firm, or any one of them, to make any further amendments to the RBAP and to take any actions that may be necessary or appropriate to effectuate the purposes of the amendment which it made to the RBAP.

**NOW, THEREFORE, be it:**

**RESOLVED,** that an amendment to the RBAP be and hereby is adopted in the form attached hereto as an Exhibit, in order to clarify the amendment previously made to the RBAP by the Finance Committee in light of the sale by the Firm of the assets of its PricewaterhouseCoopers LLP Consulting Business to International Business Machines Corporation.

_____

John F. Carter
U.S. Partner Affairs Leader

September      , 2002

**Retirement Benefit Accumulation for Employees of
PricewaterhouseCoopers LLP**

## Statement of Amendment

Effective as of July 1, 2002, Section 2.15 is amended by adding the following between existing sentences six and seven of Section 2.15:

For the Plan Year beginning July 1, 2002, no Deemed Payroll Period Allocation shall be made for a Participant who is a Partner or Principal if, prior to July 1, 2002, such Participant is on the list of Partners and Principals who are anticipated to cease to be active with the Employer during such Plan Year in connection with the sale by the Employer of the assets of its PricewaterhouseCoopers Consulting business to International Business Machines Corporation ("IBM"); provided, however, that if such Participant (A) is employed by IBM but voluntarily terminates his employment with IBM within thirty days after such sale and (B) thereupon commences receipt of benefits under the Partner Retirement Plan, then a Deemed Payroll Period Allocation shall be made for such Plan Year beginning July 1, 2002 as of such date that such participant terminates his employment with IBM.  If a Participant, who is on the list of Partners and Principals who are anticipated to cease to be active with the Employer, does not cease to be active with the Employer in connection with such sale, then his Deemed Payroll Period Allocation for such Plan Year shall be made as of the date of such sale or, if later, as of the date it is determined that such Participant will not cease to be active with the Employer.