# Ex. E

Civil Action No. 05-1291

## (PLF)

# TABLE OF CONTENTS

RETIREMENT BENEFIT ACCUMULATION PLAN (RBAP)
FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP...........................................................1
SUMMARY PLAN DESCRIPTION ..................................................................................................1
PARTICIPATION .........................................................................................................................1
   Who is Eligible ...................................................................................................................1
   Enrolling in the Plan ..........................................................................................................2
   Cost of the Plan .................................................................................................................2
   When Plan Participation Begins .........................................................................................2
HOW THE PLAN WORKS ............................................................................................................2
IRS LIMITS ON COMPENSATION ................................................................................................3
INVESTMENT ELECTIONS ...........................................................................................................3
INFORMATION ABOUT YOUR ACCOUNT ......................................................................................4
CHANGING YOUR PLAN ELECTIONS ...........................................................................................5
TRANSFERRING OR REALLOCATING THE VALUE OF ACCOUNT CREDITS .......................................5
BENEFITS FOR LEGACY C&L EMPLOYEES WHO WERE COVERED UNDER THE C&L RETIREMENT PLAN...........5
CHANGING YOUR BENEFICIARY DESIGNATION .............................................................................7
VESTING ..................................................................................................................................7
LOANS AND ROLLOVERS ...........................................................................................................9
WHEN BENEFITS ARE PAYABLE .................................................................................................9
PLAN PAYMENT METHODS UPON TERMINATION OF EMPLOYMENT OR RETIREMENT ......................10
   MANDATORY LUMP SUM PAYMENT ............................................................................................10
   NORMAL PAYMENT METHOD FOR SINGLE PARTICIPANTS ...........................................................10
   NORMAL PAYMENT METHOD FOR MARRIED PARTICIPANTS .........................................................10
   OPTIONAL PAYMENT METHODS .................................................................................................11
   DIRECT ROLLOVERS .................................................................................................................12
PLAN PAYMENTS AT DEATH ......................................................................................................13
INFORMATION ABOUT FORFEITURES ..........................................................................................15
   WHEN FORFEITURES OCCUR ....................................................................................................15
   DISPOSITION OF FORFEITURES .................................................................................................15
PENSION BENEFIT GUARANTY CORPORATION .............................................................................15
ASSIGNMENT OR ALIENATION OF BENEFITS ...............................................................................16
IMPORTANT INFORMATION ........................................................................................................16
ADMINISTRATIVE INFORMATION .................................................................................................18
PLAN NAME ............................................................................................................................18
INTRODUCTION .........................................................................................................................18
PLAN TYPE .............................................................................................................................18
EMPLOYER IDENTIFICATION NUMBER .........................................................................................18
PLAN NUMBER .........................................................................................................................18
PLAN YEAR .............................................................................................................................18
SOURCE OF FUNDS ..................................................................................................................18
TRUSTEES, FUNDING AND PAYMENT OF PLAN BENEFITS ............................................................18
PLAN ADMINISTRATOR ..............................................................................................................19
PLAN DOCUMENTS ...................................................................................................................19
FORMS AND PROCEDURES TO OBTAIN BENEFITS ......................................................................19
CLAIM APPEALS .......................................................................................................................19
LEGAL PROCESS ......................................................................................................................20
PLAN TERMINATION PROVISIONS ..............................................................................................20
YOUR RIGHTS UNDER ERISA ..................................................................................................21
SPECIAL TAX NOTICE REGARDING PLAN PAYMENTS FROM THE RETIREMENT BENEFIT
ACCUMULATION PLAN ..............................................................................................................23
SUMMARY ...............................................................................................................................23
MORE INFORMATION .................................................................................................................24
Part I:  Payments That Can And Cannot Be Rolled Over ................................................24
PART II:    DIRECT ROLLOVER ..................................................................................................25
PART III:    PAYMENT PAID TO YOU ...........................................................................................26
INCOME TAX WITHHOLDING ......................................................................................................26
   Mandatory Withholding ......................................................................................................26
   Voluntary Withholding .......................................................................................................27
   Sixty-Day Rollover Option ..................................................................................................27

Ten-Year Averaging ............................................................................................................ 29
PART IV:   SURVIVING SPOUSES, ALTERNATE PAYEES, AND OTHER BENEFICIARIES .................................. 30
HOW TO OBTAIN ADDITIONAL INFORMATION ............................................................................... 31

# RETIREMENT BENEFIT ACCUMULATION PLAN (RBAP)
# FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP

**Summary Plan
Description
July 1, 2000**

The Retirement Benefit Accumulation Plan (RBAP) for Employees of PricewaterhouseCoopers LLP makes an important contribution toward your retirement income. It offers you the choice when you retire or leave the firm before retirement to have your benefit distributed in regular monthly payments for life, or to take your benefit with you in a lump sum.

**Participation
Who is Eligible**

Staff members of PricewaterhouseCoopers LLP hired on or after July 1, 1998 automatically participate in the plan on the first day of the calendar month coinciding with or following the date you are employed by PricewaterhouseCoopers LLP.

If you were employed by the legacy firm Price Waterhouse LLP (PW) on July 1, 1994, you automatically became a plan participant on that date. If you were hired by PW between July 1, 1994 and June 30, 1998, your participation began the first of the month coinciding with or following your date of hire. If you were employed by the legacy firm Coopers & Lybrand LLP (C&L) on June 30, 1998 and had not already met the plan's participation requirements, you automatically became a participant in the C&L Retirement Plan on July 1, 1998. The C&L Retirement Plan was merged with RBAP on July 1, 1999 and on that date, you became a participant in RBAP. If you were hired by legacy firm Kwasha Lipton (KL) prior to January 24, 1997 (or if you received an employment letter from KL on or before January 24, 1997 but began to work at KL within 30 days after January 24, 1997), your participation in RBAP began on July 1, 1999.

Student interns, temporary employees (including foreign exchange) and temporary faculty from U.S. universities are not eligible to participate. Additionally, for technical reasons, employees of PwC Securities and PwC BPO Solutions Mideast receive contributions under the Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP that are equal to the credits under the RBAP, and are not eligible to participate.

Last Revised: 08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

The plan described in this Summary Plan Description ("SPD") applies to benefits earned on or after July 1, 1999, except where otherwise stated. While partners participate in the plan, due to the nature of the partner compensation and benefits structure, certain provisions of the plan described in this SPD (primarily those relating to credits to an "account" in your name) do not apply to them. Information on those matters is covered in separate annual memoranda to partners.

| | |
|---|---|
| *Enrolling in the Plan* | Your plan participation is automatic. There is no enrollment form to fill out. However, you will need to visit Benefits Express Online at https://www2.benefitsweb.com/pwc.html or call Benefits Express at (877) PwC-BenX (792-2369)* to: |

- make your investment elections from the plan's fund choices; *and*

- request a form to name your beneficiary to receive the value of your plan account in the event of your death. However, if you are married and wish to designate—or later change your beneficiary designation to—someone other than your spouse, you will need your spouse's consent, witnessed by a notary public. Refer to the beneficiary designation section for details.

For information about your RBAP elections, please visit Benefits Express Online or call Benefits Express.

*If you are contacting Benefits Express from an international location call (201) 363-3541. Hearing-impaired callers can contact Benefits Express by calling (800) TDD-TDD4 (833-8334).

| | |
|---|---|
| *Cost of the Plan* | The firm pays the full cost—100% of your benefit under the plan. You make no contributions to the plan. |
| *When Plan Participation Begins* | Your plan participation begins on the first day of the calendar month on or after your date of hire. Credits to your RBAP account begin for the first payroll date on which you are a participant. |
| **How The Plan Works** | For each pay period, the firm credits an "account" in your name with an amount equal to 5% of your compensation for that pay period. Directors are credited with an amount equal to 7% of compensation. |

Last Revised: 08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

*Compensation* means your annual base salary, overtime, bonuses, severance and accrued vacation pay, but does not include such items as expense reimbursements, relocation allowances, sign-on and referral bonuses and other fringe benefits. Staff members' contributions to the PricewaterhouseCoopers 401(k) Savings Plan, health care and dependent care expense accounts, and staff members' portions of pre-tax medical and dental plan premiums are included as part of compensation for purposes of this plan.

*IRS Limits on Compensation*

Pursuant to restrictions under the Internal Revenue Code, your maximum compensation that may be considered for each plan year when determining credits to your account is $170,000 (adjusted for inflation in future years).

*Investment Elections*

Your plan benefits—the firm's credits to your account—are adjusted upward or downward for investment experience based on your elections among the plan's investment funds. There are currently 16 professionally managed investment funds in diverse asset classes among which you can divide your account credits. You direct your account balance to the investments of your choice in increments of 1%.

If you are a legacy C&L staff member, the contributions credited to your cash balance account under the C&L Retirement Plan between July 1, 1998 and June 30, 1999 must be invested in the investment option called the Frozen Fund. You are not able to transfer those contributions and earnings thereon out of this fund. You may, however, make investment elections for contributions credited to your RBAP account after June 30, 1999.

The plan's administrative committee may, from time to time, replace any or all of the investment funds with other funds that meet the plan's investment criteria or add additional funds.

The plan's investment funds offer different opportunities and levels of risk. You should make your choices carefully on the basis of your own financial goals.

Before directing the investment of your account to any of the investment funds, you should read the highlight and fund prospectus (if applicable) for that fund, which is available through Benefits Express Online at

Last Revised:  08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

https://www2.benefitsweb.com/pwc.html or by calling Benefits Express at (877) PwC-BenX (792-2369)*. You may also request fund information directly from the investment company.

You may direct your account balance to as many or as few of the 16 available investment funds as you wish. Your elections must each be in a whole percentage. If you fail to direct the investment of your account, it will be invested in the plan's money market fund option.

You may make your investment elections from the funds when you become a participant. You may change your investment allocations through Benefits Express Online at https://www2.benefitsweb.com/pwc.html or by calling Benefits Express at (877) PwC-BenX (792-2369)*. PwC attempts to make Benefits Express available to you 24 hours each day. Occasionally it may not be available, or for other reasons it may not be possible to execute your investment choices or other directions. PwC and its representatives are not responsible for investment choices or other directions that cannot be given or executed on those occasions.

Your account is valued daily. Any interest, dividends, and investment earnings are automatically reinvested in the fund(s) from which they are derived.

*If you are contacting Benefits Express from an international location call (201) 363-3541. Hearing-impaired callers can contact Benefits Express by calling (800) TDD-TDD4 (833-8334).

*Information About Your Account*

Information about your account is provided in two ways:

- The firm provides a quarterly statement, sent to your mailing address on file, showing the value of your account.

- Current account balances and other information about your account are available on a daily basis by visiting Benefits Express Online at https://www2.benefitsweb.com/pwc.html or by calling Benefits Express at (877) PwC-BenX (792-2369)*.

*If you are contacting Benefits Express from an international location call (201) 363-3541. Hearing-impaired callers can contact Benefits Express by calling (800) TDD-TDD4 (833-8334).

Last Revised: 08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

**Changing Your Plan Elections**

You may elect to *change the investment direction for future credits* among the plan's investment funds on any business day to take effect with your next pay period. Election changes can be made in any whole percentage.

---

**Transferring or Reallocating the Value of Account Credits**

You may elect to *transfer or reallocate the value of your existing account credits* between the plan's investment funds by visiting Benefits Express Online or by calling Benefits Express.

Transfers from one fund to another can be made in dollars or in any whole percentage of your account balance. Reallocations can be made in any whole percentage of your account balance. You have two fund reallocation options: a daily reallocation or an automatic quarterly reallocation. If you choose a daily fund reallocation, you can elect to reallocate existing balances in 1% increments. If you elect an automatic quarterly reallocation, it will be processed as of the last business day of each calendar quarter. Quarterly reallocation elections can be made anytime, however, your account will be reallocated automatically each quarter, based on your existing election until you change or cancel it.

You can direct all or a portion of your account balance among the various investment funds on any business day. Transfer and reallocation requests made on any business day by the earlier of 4 p.m. Eastern time or the stock market closing will be processed based upon that day's closing prices. Any requests made over a weekend, or on a day that the stock market or Benefits Express is closed, will take effect at the close of the stock market on its next open day.

---

**Benefits for Legacy C&L Employees Who Were Covered Under the C&L Retirement Plan**

The legacy C&L "career average" Retirement Plan was modified to incorporate a cash balance feature on July 1, 1998 and was merged with RBAP on July 1, 1999. Beginning July 1, 1998, legacy C&L employees began earning firm credits—equal to 5% of compensation—to cash balance accounts each pay period. Beginning July 1, 1999, directors are credited with an amount equal to 7% of compensation.

*Your Total Benefit*—If you were employed by PwC on June 30, 1999 and were earning benefits in the C&L Retirement Plan on that date, when you separate from the firm, you will receive the greater of:

Last Revised:  08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

5

a benefit determined only under the career average formula described below, based on all your service through your separation date, or

- a benefit equal to the sum of your career average benefit determined at June 30, 1998 plus the value of your RBAP account accumulated since June 30, 1998.

**Career average** benefits are determined as follows:



- *Credited Service* means service while a participant in the plan other than periods when you were ineligible to participate or were on a leave of absence of more than one year. You are granted one full month of service for each month you are employed at least one day. If you become disabled, you continue to accrue credited service while you are receiving long-term disability payments from the firm's long-term disability program.

- *Plan Earnings* means total compensation, including bonus pay, overtime pay or other indirect compensation for the calendar year that ends within the plan year. Plan earnings do not include such items as taxable fringe benefits, moving allowances, tax-equalization payments, long-term disability benefits or job referral bonuses. Prior to October 1, 1994, plan earnings is the basic annual rate of pay as of each October 1.

- *Prior Service Plan Earnings* means the average of the three most recent plan earnings prior to October 1, 1993.

Last Revised: 08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

**Changing Your Beneficiary Designation**

You can *change your beneficiary designation* at any time by completing the appropriate form and submitting it to Benefits Express. If you are married, you will need your spouse's written and notarized consent if you wish to designate a beneficiary or beneficiaries, other than your spouse. If you do not select a beneficiary, the plan rules for distribution of your account in the event of your death are as follows:

- first, your spouse, if living;

- second, your natural or adopted children, if living; and

- third, your estate.

If payable to more than one person in a class, all persons in the class shall share equally.

**Vesting**

Vesting refers to your right to receive benefits from the plan.

Your vested right to the value of your account is based on your years of service with the firm. For vesting purposes, a year of service is defined as a vesting computation period (October 1 – September 30) during which you are credited with at least 1,000 hours of service and are at least age 17. You will vest in the value of your benefit after you complete five years of service. However, if you were employed by the firm on June 30, 1999 and were earning benefits under the Kwasha Lipton Retirement Plan on that date, you will vest in the value of your benefit according to the following schedule:

| Completed Years of Service | Vesting Percentage |
|---|---|
| Less than 3 | 0% |
| 3 | 20% |
| 4 | 40% |
| 5 or more | 100% |

An hour of service means each hour for which you are paid or entitled to payment for time worked, as well as during paid absences for vacations, holidays, illness, disability, jury duty or certain other approved absences, including certain periods of unpaid leave. If you are not vested in your account and you incur a break in service

Last Revised: 08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

(a vesting computation period in which you have fewer than 501 hours of service), your years of vesting service will not count if you are rehired if the number of consecutive one-year breaks in service equals or exceeds five or the number of your pre-break years of vesting service, whichever is greater.

You are also automatically vested if you are actively employed by the firm when you reach age 65 (age 55 for legacy KL employees). Your plan benefits are also vested if you die while employed by the firm.

Employment since July 1, 1998 with any office worldwide is credited for vesting. Please notify Benefits Express if you are joining the plan with prior employment with PricewaterhouseCoopers (including outside the United States), or commencing employment outside the United States to ensure that your service is credited. Additionally, service with legacy PW and legacy C&L (including KL) is also credited through June 30, 1998. Please notify Benefits Express if you are joining the plan with prior employment with any of those legacy firms. As described above, under RBAP you earn one year of service for each vesting computation period (October 1 – September 30) during which you are credited with at least 1,000 hours of service. That method of crediting hours of service was used by legacy PW, and is used by PricewaterhouseCoopers. However, legacy C&L had credited service according to months of employment aggregating to a year, with any work during a month resulting in credit for the entire month (e.g., an individual who was hired on August 15, 1994 and terminated on July 1, 1995 earned one year). The two methods were harmonized on April 1, 1999, with a transition rule for the computation period from October 1, 1998 – September 30, 1999. The whole years of service, as of April 1, 1999, of a legacy C&L employee were added to his or her hours of service during the computation period from October 1, 1998 – September 30, 1999. For that computation period, 95 hours of service were credited for each semi-monthly period. For example, if a legacy C&L employee was hired on August 15, 1994, he or she would have five years of vesting service on April 1, 1999, as follows. At April 1, 1999, the employee would have had four whole years of service (August 15, 1994 – July 31, 1998). In

lieu of the fractional year (9 months from August 1998 – April 1, 1999), he or she would have been credited with one additional year of service (95 hours of service for each semi-monthly period from October 1, 1998 – April 1, 1999, or 95 hours x 13 semi-monthly periods = 1,235 hours).

The firm has also credited employment prior to July 1, 1998 with either legacy C&L or legacy PW for benefits earned prior to that date under a legacy retirement plan. Thus, if you were credited with one year of service with legacy PW during 1996, and went to work for legacy C&L during 1997, the service with legacy PW would be credited for vesting in benefits earned with C&L prior to July 1, 1998.

### Loans and Rollovers

The plan does not permit you to borrow from your account. The plan also does not accept participant contributions or rollovers of any kind. However, you may be able to roll over amounts from a former employer's retirement plan into the PwC 401(k) Savings Plan. For more information on rollovers into the PwC 401(k) Savings Plan, visit Benefits Express Online at https://www2.benefitsweb.com/pwc.html or call Benefits Express at (877) PwC BenX (792-2369)*.

*If you are contacting Benefits Express from an international location call (201) 363-3541. Hearing-impaired callers can contact Benefits Express by calling (800) TDD-TDD4 (833-8334).

### When Benefits Are Payable

Benefits are payable upon termination of employment if you are vested. A transfer of employment from one PricewaterhouseCoopers office worldwide to another PricewaterhouseCoopers office worldwide is not a termination of employment for which benefits are payable. Additionally, prior to or after termination of employment, "non-highly compensated" client-service staff members who are vested may receive all or any portion of amounts credited to their accounts in any of the Plan payment methods. This option is not available to staff members who previously earned benefits under the C&L Retirement Plan or the KL Retirement Plan.

Last Revised:  08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

**Plan Payment Methods Upon Termination of Employment or Retirement**

One of the advantages of the plan is its flexibility in offering various methods of benefit payment. The value of your account will be determined on the last business day of the month in which you request a distribution from the plan, if your request is received by the 20th day of such month by National Benefits Administration, Tampa-NAC. However, if you request a distribution during the month that you terminate employment, your account will be valued on the last business day of the next month. If on the day of valuation, shares are not traded on national stock exchanges, your benefit will be determined on the preceding day on which shares are traded. Your distribution will be made as soon thereafter as practicable.

You may choose the method of benefit payment that best suits your needs. Payment methods under the plan are listed in the sections that follow.

**Mandatory Lump Sum Payment**

Regardless of the payment methods described below, if the value of your vested account does not exceed $5,000, a lump sum payment will be made to you. Your account will be valued on the last business day of the second month following the month during which your termination of employment occurs. Your distribution will be made as soon thereafter as practicable.

**Normal Payment Method for Single Participants**

The plan's normal form of payment for a single participant is a single life annuity that is the actuarial equivalent of your account balance. If you are single at the time your plan benefits are to begin under this payment method, your benefit will be paid to you in equal monthly installments for your life. The last retirement plan payment will be for the month in which your death occurs.

**Normal Payment Method for Married Participants**

If you are married at the time your plan benefits are to begin, the normal form of payment is a 50% joint and survivor annuity that is the actuarial equivalent of your account balance. Under this form of payment, your monthly benefit is reduced from what you would have received under a single life annuity because after your death, 50% of the benefit that you received continues to be paid to your surviving spouse—for the rest of his or her life. Benefit payments are continued to your surviving spouse only if you were married to that spouse at the time retirement payments began.

Last Revised: 08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

The reduction from a single life annuity is based on the ages of you and your spouse and reflects the fact that benefits are payable during both your lifetimes. If your spouse should die after plan benefit payments have begun, reduced income will continue to be paid for your lifetime. If you remarry after the date retirement benefits begin, your new spouse will not be eligible to receive a survivor annuity.

*Optional Payment Methods*

Regardless of whether you are single or married at the time plan payments are scheduled to begin, you can choose one of the following optional payment methods by filing the appropriate forms with National Benefits Administration, Tampa-NAC, within the 90-day period before plan benefits begin. If you are single, you must waive a life annuity in writing. If you are married, both you and your spouse must waive a joint and survivor annuity in writing. Your spouse's signature must be notarized. Elections may be revoked or changed at any time before benefits begin. Once benefits have begun, you cannot choose a different form of benefit payment and any election you have made may not be revoked or changed.

- *Single Life Annuity*—This payment method is the same as the normal form of payment for single participants—i.e., your retirement benefit will be paid in monthly installments throughout your lifetime but no benefits are paid to your spouse after your death.

- *Lump Sum Payment*—Under this payment option, you may receive a lump sum cash payment. The amount of the lump sum payment shall be equal to your vested account balance. If you are a legacy C&L employee and you elect a lump sum payment, the portion of the lump sum that is based on the C&L career average formula will be equal to the actuarially computed present value of the career average benefit payable at age 65 as a single life annuity. Present value for this purpose, shall be calculated using the mortality rates specified in the plan and an interest rate based on the annual rate for 30-year Treasury securities in effect for the month of May preceding the plan year in which a distribution occurs.

If the value of your benefit is more than $5,000 and you are less than age 70½, you can elect to defer distribution. If the value of your benefit is $5,000 or less or if you are age 70½, no deferral election is permitted.

Last Revised: 08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

**Direct Rollovers**

If you elect a lump sum distribution (with your spouse's consent, if applicable), you may instruct Benefits Express to make your plan distribution payable directly to another eligible retirement plan. Payment may be made to another employer's retirement plan or an Individual Retirement Account (IRA). Please see the *Special Tax Notice Regarding Plan Payments* at the end of this section for more information regarding the tax consequences of your benefit distribution.

*For legacy C&L employees* who have attained age 53 by their termination of employment, besides the payment options described above, the following payment options that were available under the C&L Retirement Plan will continue to be available if you were covered by that plan.

*100%, 75%, 70%, 66 2/3% and 50% Joint & Survivor Annuity*—This form of payment provides you with a monthly benefit for your life and after your death, your designated beneficiary receives the applicable percentage of your benefit for the rest of his or her life. Your monthly benefit is reduced from what you would have received under a single life annuity. Your beneficiary need not be your spouse. If your beneficiary should die after your payments have started, your monthly payment will not increase.

*Five, Ten or Fifteen Year Period Certain and Life Annuity*—This form of payment provides you with a monthly benefit for your life and guarantees plan payments for a certain period of time. If you die before receiving 60, 120, or 180 monthly payments, your designated beneficiary will receive the remaining payments for that period. Your monthly benefit is reduced from what you would have received under a single life annuity. Your beneficiary need not be your spouse. You can select the 180 payments only if such period does not exceed your life expectancy at the time payments begin.

*Level Income Annuity*—If you retire early and elect to have your plan payments begin before age 62, you can choose the level income annuity option. Under this payment method, your monthly payments are increased before your Social Security benefits begin upon age 62 and decreased (or possibly reduced to zero) after that. Your combined retirement income from the plan and Social Security benefits remain nearly level throughout your retirement.

Last Revised: 08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

If you terminate employment with the firm after age 53 and elect one of the annuity payment options, you will receive the portion of an annuity payable at age 65 for your C&L career average retirement benefit, as shown in the table on the next page.  The reduction is based on your age and service at the time payments begin to take into account the fact payments will be made over a longer period of time.

| Your Age When Income Starts | If You Have Five But Less Than 30 Years of Service | If You Have 30 or More Years of Service |
|---|---|---|
| 53 | 42% | 54% |
| 54 | 46% | 58% |
| 55 | 50% | 62% |
| 56 | 54% | 66% |
| 57 | 58% | 70% |
| 58 | 62% | 76% |
| 59 | 66% | 82% |
| 60 | 70% | 88% |
| 61 | 76% | 94% |
| 62 | 82% | 100% |
| 63 | 88% | 100% |
| 64 | 94% | 100% |
| 65 | 100% | 100% |

For legacy C&L employees who terminate employment prior to attaining age 53, benefits can be paid as a qualified joint and survivor annuity, a single life annuity or a lump sum as described above.  If paid in annuity form, the portion of the benefit based on the C&L career average formula will be reduced based on the interest and mortality rates specified in the plan.

---

**Plan Payments at Death**

If you die while employed, or after termination of employment with a vested benefit prior to beginning distribution of your benefits, your account is payable to your beneficiary.  If you are married, the actuarial value of your account balance will be paid to your spouse in the form of a qualified pre-retirement survivor annuity.  Under this payment method, your spouse will receive a

Last Revised:  08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

single life annuity that is the actuarial equivalent (based on his or her life expectancy) of your account, payable monthly for his or her life. Your spouse may waive this annuity form of payment and elect a single lump sum payment instead. If you are single and die before your benefits begin or your spouse has waived their rights as your beneficiary, your entire account will be distributed in a lump sum to your beneficiary. Your non-spouse beneficiary can defer benefit payment of your account in a single sum until December 31 of the year in which the fifth anniversary of your death occurs. Your spouse beneficiary can defer a lump sum payment until the later of December 31 of the year which contains the fifth anniversary of your death or December 31 of the year in which you would have reached age 70½.

Annuity payments to your spouse can be deferred until the later of December 31 of the year following your death, or the April 1 following the calendar year in which you would have reached age 70½.

However, if the value of your vested benefit does not exceed $5,000 at the time of your death, your beneficiary will receive a lump sum distribution of your account balance.

*Legacy C&L Employees:*

Pre-retirement death benefits that accrue after June 30, 1998 will be paid as described above. For legacy C&L employees who die before plan payments have begun, pre-retirement death benefits that accrued prior to July 1, 1998 will be paid as follows:

If you are married and have five years of vesting service, your surviving spouse will receive an annuity for his or her lifetime equal to 50% of the benefit that you would have received under the 50% Joint and Survivor Annuity, based on the benefit accrued through June 30, 1998. This benefit can begin as early as the first of the month following your death but not later than the date you would have reached age 53. If your spouse elects to begin benefits earlier than the date you would have attained age 53, they will be reduced to reflect the fact payments will be made over a longer period of time.

If you are not married and have at least five years of vesting service and die on or after your 53rd birthday while employed by the firm, your unmarried children under age 21 will receive a benefit (divided equally

Last Revised: 08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

among them if there is more than one child) that is the equivalent of a 10-year Period Certain Life Annuity until the earliest of 10 years, age 21 or marriage. Payments will commence as of the first of the month following death. If the present value of the entire pre-retirement death benefit is less than $5,000, it will be paid automatically as a lump sum.

---

**Information About Forfeitures**
*When Forfeitures Occur*

If your employment terminates for any reason other than retirement or death and you are not vested, your account balance will be forfeited. Your forfeited account will be restored if you are rehired before you have five consecutive one-year breaks in service.

---

*Disposition of Forfeitures*

The actuarial value of plan forfeitures is taken into consideration in determining the amounts the firm contributes to the plan.

---

**Pension Benefit Guaranty Corporation**

Your benefits under the plan are insured by the Pension Benefit Guaranty Corporation (PBGC), a federal insurance agency. If the plan terminates (ends) without enough money to pay all benefits, the PBGC will step in to pay pension benefits. Most people receive all of the pension benefits they would have received under their plan, but some people may lose certain benefits.

The PBGC guarantee generally covers (1) normal and early retirement benefits, (2) disability benefits if you become disabled before the plan terminates and (3) certain benefits for your survivors.

The PBGC guarantee generally does not cover (1) benefits greater than the maximum guaranteed amount set by law for the year in which the plan terminates, (2) some or all of the benefit increases and new benefits based on plan provisions that have been in place for fewer than five years at the time the plan terminates, (3) benefits that are not vested because you have not worked long enough for the company, (4) benefits for which you have not met all of the requirements at the time the plan terminates, (5) certain early retirement payments (such as supplemental benefits that stop when you become eligible for Social Security) that result in an early retirement monthly benefit greater than your monthly benefit at the plan's normal retirement age and (6) non-pension benefits, such as health insurance, life insurance, certain death benefits, vacation pay and severance pay.

Last Revised: 08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

Even if certain of your benefits are not guaranteed, you may still receive some of those benefits from the PBGC depending on how much money your plan has and on how much the PBGC collects from employers.

For more information about the PBGC and the benefits it guarantees, ask your Plan Administrator or the PBGC. Inquiries to the PBGC should be addressed to:

> **Pension Benefit Guaranty Corporation**
> Technical Assistance Division
> 1200 K Street, N.W., Suite 930
> Washington, D.C. 20005—4026.

The PBGC can also be reached by calling (202) 326-4000 (not a toll-free number).  TTY/TDD users may call the federal relay service toll-free at (800) 877-8339 and ask to be connected to (202) 326-4000.  Additional information about the PBGC's pension insurance program is available through the PBGC's website on the Internet at www.pbgc.gov.

---

**Assignment or Alienation of Benefits**

The assignment or alienation of any benefits provided by the plan will not be permitted, except as otherwise required by applicable law.  This means that—except as required by applicable law—benefits provided under the plan are not subject to sale, assignment, anticipation, alienation, attachment, garnishment, pledge, or any other form of transfer.

In the event of a "qualified domestic relations order," however, plan benefits may be payable to someone other than your designated beneficiary, even while you are still working.  A *qualified domestic relations order* is a court order for providing child support, alimony, or marital property rights to a spouse, former spouse, child, or other dependent, according to a state domestic relations law.

---

**Important Information**

This SPD summarizes the key features of the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP.  It does not attempt to cover all details.  These are provided in the official plan documents which govern the operation of the plan.  In the event of a conflict or discrepancy between the plan documents and this SPD, the plan documents control.

PricewaterhouseCoopers LLP reserves the right to interpret plan provisions and make determinations related to plan administration, to the maximum extent permitted by law.

Last Revised:  08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

PricewaterhouseCoopers LLP intends to continue to provide the benefits described in this SPD, but reserves the right to amend, modify or terminate these benefits, in whole or in part, at any time.  This SPD is not an employment contract or guarantee.  Nothing contained in this SPD conveys any rights to employment with PricewaterhouseCoopers LLP.

Last Revised:  08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

## *Administrative Information*

| | |
|---|---|
| ***Plan Name*** | Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP. |
| ***Introduction*** | The following information is provided in accordance with the disclosure requirements of the Employee Retirement Income Security Act of 1974 (ERISA). |
| ***Plan Type*** | Defined Benefit Pension Plan |
| ***Employer Identification Number*** | The employer identification number assigned to the firm by the Internal Revenue Service is 13-4008324. The sponsor of the Plan is:<br><br>**PricewaterhouseCoopers LLP**<br>1301 Avenue of the Americas<br>New York, NY 10019. |
| ***Plan Number*** | The Plan Number assigned by the firm to the Retirement Benefit Accumulation Plan is 002. |
| ***Plan Year*** | The Plan Year for the Retirement Benefit Accumulation Plan is July 1 through June 30. |
| ***Source of Funds*** | The firm pays the full cost of all contributions to the Retirement Benefit Accumulation Plan, which are actuarially determined. |
| ***Trustees, Funding and Payment of Plan Benefits*** | The assets of the Retirement Benefit Accumulation Plan are held in a trust fund by the Plan Trustees, from which benefits are paid. The Plan Trustees are:<br><br>Marsha R. Cohen; J. Christopher Everett; Robert H. Herz; Richard P. Kearns; Anthony F. Martin; Lawrence F. Portnoy; Louise A. Root; Frank V. Scalia; Randal S. Vallen; and Brett D. Yacker.<br><br>To contact a trustee regarding funding arrangements, write to the trustee at: |

Last Revised: 08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

Attn: Benefits Department
3109 West Dr. ML King Jr. Blvd.
Tampa, FL 33607-6215.

| **Plan Administrator** | **Administrative Committee to the Retirement Benefit Accumulation Plan PricewaterhouseCoopers LLP** 1301 Avenue of the Americas New York, NY 10019. |

**Plan Documents**

This Summary Plan Description (SPD) summarizes the key features of the Retirement Benefit Accumulation Plan. It does not attempt to cover all details of the plan. Complete details of this plan can be found in the official plan documents which govern the operation of the plan. In the event of a conflict or discrepancy between the plan documents and the SPD, the plan documents control.

**Forms and Procedures to Obtain Benefits**

You or your beneficiary must visit Benefits Express Online at https://www2.benefitsweb.com/pwc.html or call Benefits Express at (877) PwC-BenX (792-2369)* to receive any benefits or to take any other action under the plan.

*If you are contacting Benefits Express from an International location call (201) 363-3541. Hearing-impaired callers can contact Benefits Express by calling (800) TDD-TDD4 (833-8334).

**Claim Appeals**

If an application for benefits is denied in whole or in part, you or your beneficiary will receive written notification from the administrative committee within 90 days—or 180 days under special circumstances (in which case you will be told of the special circumstances prior to expiration of the initial 90 days and the date by which a decision is expected). The notice will include the specific reasons for the denial with reference to the specific plan provisions on which the denial is based, a description of any additional information needed to process the claim and why it is necessary, and an explanation of the claim review procedure. Within 60 days after receiving a denial, you or your beneficiary may submit a written request for reconsideration of the claim to the administrative committee at the address listed below:

Last Revised: 08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

**Administrative Committee to the Retirement
Benefit Accumulation Plan
PricewaterhouseCoopers LLP**
1301 Avenue of the Americas
New York, NY 10019.

Any such requests should be accompanied by
documents or records in support of the appeal. You or
your beneficiary may review pertinent documents and
submit issues and comments in writing.

The administrative committee will respond within 60
days—or 120 days under special circumstances (in
which case you will be told of the special circumstances
prior to the expiration of the initial 60 days)—after
receipt of the appeal, explaining the reasons for the
decision, again with reference to the specific plan
provisions on which that decision is based. The
administrative committee has the right to interpret the
provisions of this plan, and its decision is final,
conclusive and binding on all persons, to the maximum
extent allowed by law.

---

**Legal Process**

Any legal process relating to the plan should be directed
to the plan's Agent for Service of Legal Process:

- **Managing Director of Benefits
  PricewaterhouseCoopers LLP**
  National Administrative Center
  P.O. Box 30004
  Tampa, Florida 33630;

- Plan Trustee; or

- Plan Administrator.

---

**Plan Termination
Provisions**

The firm expects and intends to continue this plan in
your benefits program indefinitely, but reserves its right
to terminate the plan. The firm also reserves its right to
amend or modify, in whole or in part, the plan at any
time.

The firm's decision to terminate, amend or modify the
plan may be due to changes in federal or state laws
governing pension benefits, the requirements of the
Internal Revenue Code or ERISA, or any other reason.

---

Last Revised: 08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

**Your Rights Under ERISA**

As a participant in one or more of the PricewaterhouseCoopers benefit plans that are subject to the Employee Retirement Income Security Act of 1974 (ERISA), you are entitled to certain rights and protections.  You have the right to:

- examine, without charge, at the Plan Administrator's office and at other specified locations, all plan documents, including insurance contracts and copies of all documents filed with the U.S. Department of Labor, such as detailed annual reports and plan descriptions;

- obtain copies of all plan documents and other plan information upon written request to the Plan Administrator (The Plan Administrator may make a reasonable charge for the copies.);

- receive a summary of the plan's annual financial report.  The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report; and

- obtain a statement telling you whether you have the right to receive a pension at age 65 and if so, what your benefits would be at normal retirement age if you stop working at that time.  If you do not have a right to a pension, the statement will tell you how many more years you have to work to get a right to a pension. This statement must be requested in writing and need not be given more than once a year.  It must be provided free of charge.

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plans.  The people who operate your plans, called "fiduciaries" of the plans, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries.  No one, including your employer or any other person, may fire you or otherwise discriminate against you in any way in order to prevent you from obtaining a benefit to which you are entitled, or from exercising your rights under ERISA.

If your claim for a benefit is denied in whole or in part, you must receive a written explanation of the reason for the denial, and you have the right to have the plan review and reconsider your claims.  Under ERISA, there are steps you can take to enforce the above rights.

Last Revised:  08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

For instance, if you request materials from the plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive them, unless the materials were not sent because of reasons beyond the control of the administrator.

If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a federal or state court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

If you have any questions about the plan, you should contact your Plan Administrator. If your Plan Administrator does not answer your questions or if you have questions about your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefit Administration, U.S. Department of Labor, listed in your telephone directory, or contact:

> **Division of Technical Assistance and Inquiries**
> Pension and Welfare Benefits Administration
> U.S. Department of Labor
> 200 Constitution Avenue, N.W.
> Washington, DC 20210.

Last Revised:  08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

# SPECIAL TAX NOTICE REGARDING PLAN PAYMENTS FROM THE RETIREMENT BENEFIT ACCUMULATION PLAN

**Special Tax Notice Regarding Plan Payments**

This notice contains important information you will need before you decide how to receive your Plan benefits.

This notice is provided to you by The Administrative Committee to the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (your "Plan Administrator") because all or part of the payment that you will soon receive from the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (the "Plan") may be eligible for rollover by you or your Plan Administrator to a traditional IRA or another qualified employer plan. A "traditional IRA" does not include a Roth IRA, SIMPLE IRA, or education IRA.

If you have additional questions after reading this notice, you can contact your plan administrator at (212) 596-7000.

**Summary**

There are two ways you may be able to receive a Plan payment that is eligible for rollover:

(1) certain payments can be made directly to a traditional IRA or, if you choose, another qualified employer plan that will accept it ("DIRECT ROLLOVER"), or

(2) the payment can be PAID TO YOU.

If you choose a *DIRECT ROLLOVER:*

• Your payment will not be taxed in the current year and no income tax will be withheld.

• Your payment will be made directly to your traditional IRA or, if you choose, to another qualified employer plan that accepts your rollover. Your Plan payment cannot be rolled over to a Roth IRA, a SIMPLE IRA, or an education IRA because these are not traditional IRAs.

• Your payment will be taxed later when you take it out of the traditional IRA or the qualified employer plan.

Last Revised:  08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

If you choose to have a Plan payment that is eligible for rollover *PAID TO YOU:*

- You will receive only 80% of the payment, because the Plan Administrator is required to withhold 20% of the payment and send it to the IRS as income tax withholding to be credited against your taxes.

- Your payment will be taxed in the current year unless you roll it over. Under limited circumstances, you may be able to use special tax rules that could reduce the tax you owe. However, if you receive the payment before age 59½, you also may have to pay an additional 10% tax.

- You can roll over the payment by paying it to your traditional IRA or to another qualified employer plan that accepts your rollover within 60 days after you receive the payment. The amount rolled over will not be taxed until you take it out of the traditional IRA, or the qualified employer plan.

Please note:  If you want to roll over 100% of the payment to a traditional IRA or another qualified employer plan, *you must find other money to replace the 20% that was withheld.* If you roll over only the 80% that you received, you will be taxed on the 20% that was withheld and that is not rolled over.

---

**More Information**
*Part I:  Payments That Can And Cannot Be Rolled Over*

Payments from the Plan may be "eligible rollover distributions." This means that they can be rolled over to an IRA or to another employer plan that accepts rollovers. Payments from a plan cannot be rolled over to a Roth IRA, a SIMPLE IRA, or an education IRA. Your Plan administrator should be able to tell you what portion of your payment is an eligible rollover distribution.

The following types of payments *cannot* be rolled over:

*Non-taxable Payments.* In general, only the "taxable portion" of your payment can be rolled over. If you have made "after-tax" employee contributions to the Plan, these contributions will be non-taxable when they are paid to you, and they cannot be rolled over. (After-tax employee contributions generally are contributions you made from your own pay that were already taxed.) Your Plan Administrator should be able to tell you how much of your payment is the taxable portion and how much is the after-tax employee contribution portion.

Last Revised:  08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

*Payments Spread over Long Periods.* You cannot roll over a payment if it is part of a series of equal (or almost equal) payments that are made at least once a year and that will last for:

- your lifetime (or your life expectancy),

- your lifetime and your beneficiary's lifetime (or life expectancies), or

- a period of ten years or more.

*Required Minimum Payments.*  Beginning when you reach age 70½ or retire, whichever is later, a certain portion of your payment cannot be rolled over because it is a "required minimum payment" that must be paid to you.  Special rules apply if you own 5% or more of your employer.

*Hardship Distributions.*  A hardship distribution from your employer's 401(k) plan may not be eligible for rollover.  Your Plan Administrator should be able to tell you if your payment includes amounts which cannot be rolled over.

---

*Part II:*
*Direct Rollover*

A DIRECT ROLLOVER is a direct payment of the amount of your Plan benefits to a traditional IRA or another qualified employer plan that will accept it.  You can choose a DIRECT ROLLOVER of all or any portion of your payment that is an eligible rollover distribution, as described in Part I above.  You are not taxed on any portion of your payment for which you choose a DIRECT ROLLOVER until you later take it out of the traditional IRA or qualified employer plan.  In addition, no income tax withholding is required for any portion of your Plan benefits for which you choose a DIRECT ROLLOVER.

*DIRECT ROLLOVER to a Traditional IRA.*  You can open a traditional IRA to receive the direct rollover. If you choose to have your payment made directly to a traditional IRA, contact an IRA sponsor (usually a financial institution) to find out how to have your payment made in a direct rollover to a traditional IRA at that institution. If you are unsure of how to invest your money, you can temporarily establish a traditional IRA to receive the payment. However, in choosing a traditional IRA, you may wish to consider whether the traditional IRA you choose will allow you to move all or a part of your payment to another traditional IRA at a later date, without penalties or other limitations.

Last Revised:  08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

See IRS Publication 590, *Individual Retirement Arrangements*, for more information on traditional IRAs (including limits on how often you can roll over between IRAs).

*DIRECT ROLLOVER to a Plan.* If you are employed by a new employer that has a qualified employer plan, and you want a direct rollover to that plan, ask the Plan Administrator of that plan whether it will accept your rollover. A qualified employer plan is not legally required to accept a rollover. If your new employer's plan does not accept a rollover, you can choose a DIRECT ROLLOVER to a traditional IRA.

*DIRECT ROLLOVER of a Series of Payments.* If you receive a payment that can be rolled over to a traditional IRA or another qualified employer plan that will accept it, and it is paid in a series for less than ten years, your choice to make or not make a DIRECT ROLLOVER for a payment will apply to all later payments in the series until you change your election. You are free to change your election for any later payment in the series.

| | |
|---|---|
| *Part III:*<br>*Payment Paid To You* | If your payment can be rolled over under Part I above and the payment is made to you in cash, it is subject to 20% income tax withholding. The payment is taxed in the year you receive it unless, within 60 days, you roll it over to a traditional IRA or another qualified employer plan that accepts rollovers. If you do not roll it over, special tax rules may apply. |
| *Income Tax Withholding*<br>Mandatory Withholding | If any portion of your payment can be rolled over under Part I above and you do not elect to make a DIRECT ROLLOVER, the Plan is required by law to withhold 20% of that amount. This amount is sent to the IRS as income tax withholding. For example, if you can roll over a payment of $10,000, only $8,000 will be paid to you because the Plan must withhold $2,000 as income tax. However, when you prepare your income tax return for the year, you must report the full $10,000 as a payment from the Plan. You must report the $2,000 as tax withheld, and it will be credited against any income tax you owe for the year. |

Last Revised:  08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

**Voluntary Withholding**

If any portion of your payment is taxable but cannot be rolled over under Part I above, the mandatory withholding rules described above do not apply. In this case, you may elect not to have withholding apply to that portion. To elect out of withholding, ask the Plan Administrator for the election form and related information.

**Sixty-Day Rollover Option**

If you receive a payment that can be rolled over under Part I above, you can still decide to roll over all or part of it to a traditional IRA or another qualified employer plan that accepts rollovers. If you decide to roll over, *you must contribute the amount of the payment you received to a traditional IRA or another qualified plan within 60 days after you receive the payment.* The portion of your payment that is rolled over will not be taxed until you take it out of the traditional IRA or the qualified employer plan.

You can roll over up to 100% of your payment that can be rolled over under Part I above, including an amount equal to the 20% that was withheld. If you choose to roll over 100%, you must find other money within the 60-day period to contribute to the traditional IRA or the qualified employer plan, to replace the 20% that was withheld. On the other hand, if you roll over only the 80% that you received, you will be taxed on the 20% that was withheld.

*Example*: The portion of your payment that can be rolled over under Part I above is $10,000, and you choose to have it paid to you. You will receive $8,000, and $2,000 will be sent to the IRS as income tax withholding. Within 60 days after receiving the $8,000, you may roll over the entire $10,000 to a traditional IRA or a qualified employer plan. To do this, you roll over the $8,000 you received from the Plan, and you will have to find $2,000 from other sources (your savings, a loan, etc.). In this case, the entire $10,000 is not taxed until you take it out of the traditional IRA or the qualified employer plan. If you roll over the entire $10,000, when you file your income tax return you may get a refund of part or all of the $2,000 withheld.

If, on the other hand, you roll over only $8,000, the $2,000 you did not roll over is taxed in the year it was withheld. When you file your income tax return you may get a refund of part of the $2,000 withheld. (However, any refund is likely to be larger if you roll over the entire $10,000.)

Last Revised:  08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

*Additional 10% Tax If You Are under Age 59½.* If you receive a payment before you reach age 59½ and you do not roll it over, then, in addition to the regular income tax, you may have to pay an extra tax equal to 10% of the taxable portion of the payment. The additional 10% tax generally does not apply to (1) payments that are paid after you separate from service with your employer during or after the year you reach age 55, (2) payments that are paid because you retire due to disability, (3) payments that are paid as equal (or almost equal) payments over your life or life expectancy (or your and your beneficiary's lives or life expectancies), (4) dividends paid with respect to stock by an employee stock ownership plan (ESOP) as described in Code section 404(k), (5) payments that are paid directly to the government to satisfy a federal tax levy, (6) payments that are paid to an alternate payee under a qualified domestic relations order, or (7) payments that do not exceed the amount of your deductible medical expenses. See IRS Form 5329 for more information on the additional 10% tax.

*Special Tax Treatment If You Were Born before January 1, 1936.* If you receive a payment that can be rolled over under Part I and you do not roll it over to a traditional IRA or other qualified employer plan that will accept it, the payment will be taxed in the year you receive it. However, if the payment qualifies as a "lump sum distribution," it may be eligible for special tax treatment. (See also "Employer Stock or Securities," below.) A lump sum distribution is a payment, within one year, of your entire balance under the Plan (and certain other similar plans of the employer) that is payable to you *after* you have reached age 59½ or because you have separated from service with your employer (or, in the case of a self-employed individual, after you have reached age 59½ or have become disabled). For a payment to be treated as a lump sum distribution, you must have been a participant in the plan for at least five years before the year in which you received the distribution. The special tax treatment for lump sum distributions that may be available to you is described below.

Last Revised:  08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

Ten-Year Averaging

If you receive a lump sum distribution and you were born before January 1, 1936, you can make a one-time election to figure the tax on the payment by using "10-year averaging" (using 1986 tax rates). Ten-year averaging often reduces the tax you owe.

*Capital Gain Treatment.* If you receive a lump sum distribution and you were born before January 1, 1936 and if you were a participant in the Plan before 1974, you may elect to have the part of your payment that is attributable to your pre-1974 participation in the Plan taxed as long-term capital gain at a rate of 20%.

There are other limits on the special tax treatment for lump sum distributions. For example, you can generally elect this special tax treatment only once in your lifetime, and the election applies to all lump sum distributions that you receive in that same year. If you have previously rolled over a distribution from the Plan (or certain other similar plans of the employer), you cannot use this special averaging treatment for later payments from the Plan. If you roll over your payment to a traditional IRA, you will not be able to use special tax treatment for later payments from the traditional IRA. Also, if you roll over only a portion of your payment to a traditional IRA, this special tax treatment is not available for the rest of the payment. See IRS Form 4972 for additional information on lump sum distributions and how you elect the special tax treatment.

*Employer Stock or Securities.* There is a special rule for a payment from the Plan that includes employer stock (or other employer securities). To use this special rule, 1) the payment must qualify as a lump sum distribution, as described above, except that you do not need five years of plan participation, or 2) the employer stock included in the payment must be attributable to "after-tax" employee contributions, if any. Under this special rule, you may have the option of not paying tax on the "net unrealized appreciation" of the stock until you sell the stock. Net unrealized appreciation generally is the increase in the value of the employer stock while it was held by the Plan. For example, if employer stock was contributed to your Plan account when the stock was worth $1,000 but the stock was worth $1,200 when you received it, you would not have to pay tax on the $200 increase in value until you later sold the stock.

Last Revised: 08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

You may instead elect not to have the special rule apply to the net unrealized appreciation. In this case, your net unrealized appreciation will be taxed in the year you receive the stock, unless you roll over the stock. The stock (including any net unrealized appreciation) can be rolled over to a traditional IRA or another qualified employer plan, either in a direct rollover or a rollover that you make yourself.

If you receive only employer stock in a payment that can be rolled over, no amount will be withheld from the payment. If you receive cash or property other than employer stock, as well as employer stock, in a payment that can be rolled over, the 20% withholding amount will be based on the entire amount paid to you (including the employer stock but excluding the net unrealized appreciation). However, the amount withheld will be limited to the cash or property (excluding employer stock) paid to you.

If you receive employer stock in a payment that qualifies as a lump sum distribution, the special tax treatment for lump sum distributions described above (such as 10-year averaging) also may apply. See IRS Form 4972 for additional information on these rules.

*Repayment of Plan Loans.* If you end your employment and have an outstanding loan from your Plan, your employer may reduce (or "offset") your balance in the Plan by the amount of the loan you have not repaid. The amount of your loan offset is treated as a distribution to you at the time of the offset and will be taxed unless you roll over an amount equal to the amount of your loan offset to another qualified employer plan or a traditional IRA within 60 days of the date of the offset. If the amount of your loan offset is the only amount you receive or are treated as having received, no amount will be withheld from it. If you receive other payments of cash or property from the Plan, the 20% withholding amount will be based on the entire amount paid to you, including the amount of the loan repayment. The amount withheld will be limited to the amount of other cash or property paid to you (other than any employer securities).

---

*Part IV:*
*Surviving Spouses,*
*Alternate Payees, And*
*Other Beneficiaries*

In general, the rules summarized above that apply to payments to employees also apply to payments to surviving spouses of employees and to spouses or former spouses who are "alternate payees." You are an alternate payee if your interest in the Plan results from a "qualified domestic relations order," which is an order issued by a court, usually in connection with a divorce

Last Revised:  08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

or legal separation. Some of the rules summarized above also apply to a deceased employee's beneficiary who is not a spouse. However, there are some exceptions for payments to surviving spouses, alternate payees, and other beneficiaries that should be mentioned.

If you are a surviving spouse, you may choose to have a payment that can be rolled over, as described in Part I above, paid in a DIRECT ROLLOVER to a traditional IRA or paid to you. If you have the payment paid to you, you can keep it or roll it over yourself to a traditional IRA but you cannot roll it over to a qualified employer plan. If you are an alternate payee, you have the same choices as the employee. Thus, you can have the payment paid as a direct rollover or paid to you. If you have it paid to you, you can keep it or roll it over yourself to a traditional IRA or to another qualified employer plan that accepts rollovers. If you are a beneficiary other than the surviving spouse, you *cannot* choose a direct rollover, and you *cannot* roll over the payment yourself.

If you are a surviving spouse, an alternate payee, or another beneficiary, your payment is generally not subject to the additional 10% tax described in section III above, even if you are younger than age 59½.

If you are a surviving spouse, an alternate payee, or another beneficiary, you may be able to use the special tax treatment for lump sum distributions and the special rule for payments that include employer stock, as described in section III above. If you receive a payment because of the employee's death, you may be able to treat the payment as a lump sum distribution if the employee met the appropriate age requirements, whether or not the employee had 5 years of participation in the Plan.

### How To Obtain Additional Information

This notice summarizes only the federal (not state or local) tax rules that might apply to your payment. The rules described above are complex and contain many conditions and exceptions that are not included in this notice. Therefore, you may want to consult with the Plan Administrator or a professional tax advisor *before* you take a payment of your benefits from your Plan. Also, you can find more specific information on the tax treatment of payments from qualified retirement plans in IRS Publication 575, *Pension and Annuity Income*, and IRS Publication 590, *Individual Retirement Arrangements*. These publications are available from your local IRS office, on the IRS's Internet Web Site at www.irs.gov or by calling 1-800-TAX FORMS.

Last Revised: 08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP