## <u>APPENDIX OF STATUTES AND OTHER RELEVANT AUTHORITIES</u>

### <u>ERISA provisions</u>

1. ERISA § 2, 29 U.S.C. § 1001 - Congressional findings and declaration of policy

2. ERISA § 3(23), 29 U.S.C. § 1002(23) - Definition of "accrued benefit"

3. ERISA § 3(24), 29 U.S.C. § 1002(24) - Definition of "normal retirement age"

4. ERISA § 3(34), 29 U.S.C. § 1002(34) - Definition of "individual account plan" or "defined contribution plan"

5. ERISA § 3(35), 29 U.S.C. § 1002(35) - Definition of "defined benefit plan"

6. ERISA § 204, 29 U.S.C. § 1054 - Benefit accrual requirements

### <u>Other relevant authorities</u>

7. IRS Notice 96-8, 1996-1 C.B. 359 (Feb. 5, 1996).

8. IRS Revenue Ruling 81-211, 1981-2 C.B. 98 (1981).

9. IRS Revenue Ruling 71-24, 1971-1, C.B. 114 (1971).

10. IRS Revenue Ruling 78-120, 1978-1 C.B. 117 (1978).

11. Guides for qualification of pension, profit-sharing, and stock bonus plans, IRS Publication 778 (2-72) (1972).

12. IRS Rev. Rul. 71-147, 1971-1 C.B. 116; 1971 IRB Lexis 506 (January 1971).

13. IRS Private Letter Ruling 20040030 (May 14, 2004).

**Appendix Item 1**

29 USCA S 1001
29 U.S.C.A. § 1001

UNITED STATES CODE ANNOTATED
TITLE 29. LABOR
CHAPTER 18--EMPLOYEE RETIREMENT INCOME SECURITY PROGRAM
SUBCHAPTER I--PROTECTION OF EMPLOYEE BENEFIT RIGHTS
SUBTITLE A--GENERAL PROVISIONS

§ 1001. Congressional findings and declaration of policy

(a) Benefit plans as affecting interstate commerce and the Federal taxing power

The Congress finds that the growth in size, scope, and numbers of employee benefit plans in recent years has been rapid and substantial; that the operational scope and economic impact of such plans is increasingly interstate; that the continued well-being and security of millions of employees and their dependents are directly affected by these plans; that they are affected with a national public interest; that they have become an important factor affecting the stability of employment and the successful development of industrial relations; that they have become an important factor in commerce because of the interstate character of their activities, and of the activities of their participants, and the employers, employee organizations, and other entities by which they are established or maintained; that a large volume of the activities of such plans are carried on by means of the mails and instrumentalities of interstate commerce; that owing to the lack of employee information and adequate safeguards concerning their operation, it is desirable in the interests of employees and their beneficiaries, and to provide for the general welfare and the free flow of commerce, that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans; that they substantially affect the revenues of the United States because they are afforded preferential Federal tax treatment; that despite the enormous growth in such plans many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans; that owing to the inadequacy of current minimum standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered; that owing to the termination of plans before requisite funds have been accumulated, employees and their beneficiaries have been deprived of anticipated benefits; and that it is therefore desirable in the interests of employees and their beneficiaries, for the protection of the revenue of the United States, and to provide for the free flow of commerce, that minimum standards be provided assuring the equitable character of such plans and their financial soundness.

(b) Protection of interstate commerce and beneficiaries by requiring disclosure and reporting, setting standards of conduct, etc., for fiduciaries

It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with

respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

(c) Protection of interstate commerce, the Federal taxing power, and beneficiaries by vesting of accrued benefits, setting minimum standards of funding, requiring termination insurance

It is hereby further declared to be the policy of this chapter to protect interstate commerce, the Federal taxing power, and the interests of participants in private pension plans and their beneficiaries by improving the equitable character and the soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service, to meet minimum standards of funding, and by requiring plan termination insurance.

**Appendix Item 2**

29 USCA S 1002
 29 U.S.C.A. § 1002

UNITED STATES CODE ANNOTATED
TITLE 29. LABOR
CHAPTER 18--EMPLOYEE RETIREMENT INCOME SECURITY PROGRAM
SUBCHAPTER I--PROTECTION OF EMPLOYEE BENEFIT RIGHTS
SUBTITLE A--GENERAL PROVISIONS
§ 1002. Definitions

For purposes of this subchapter:

(23) The term "accrued benefit" means--

(A) in the case of a defined benefit plan, the individual's accrued benefit determined under the plan and, except as provided in section 1054(c)(3) of this title, expressed in the form of an annual benefit commencing at normal retirement age, or

(B) in the case of a plan which is an individual account plan, the balance of the individual's account.

The accrued benefit of an employee shall not be less than the amount determined under section 1054(c)(2)(B) of this title with respect to the employee's accumulated contribution.

**Appendix Item 3**

29 USCA S 1002
 29 U.S.C.A. § 1002

UNITED STATES CODE ANNOTATED
TITLE 29. LABOR
CHAPTER 18--EMPLOYEE RETIREMENT INCOME SECURITY PROGRAM
SUBCHAPTER I--PROTECTION OF EMPLOYEE BENEFIT RIGHTS
SUBTITLE A--GENERAL PROVISIONS
§ 1002. Definitions

(24) The term "normal retirement age" means the earlier of--

(A) the time a plan participant attains normal retirement age under the plan, or

(B) the later of--

(i) the time a plan participant attains age 65, or

(ii) the 5th anniversary of the time a plan participant commenced participation in the plan.

**Appendix Item 4**

29 USCA S 1002
 29 U.S.C.A. § 1002

UNITED STATES CODE ANNOTATED
TITLE 29. LABOR
CHAPTER 18--EMPLOYEE RETIREMENT INCOME SECURITY PROGRAM
SUBCHAPTER I--PROTECTION OF EMPLOYEE BENEFIT RIGHTS
SUBTITLE A--GENERAL PROVISIONS
§ 1002. Definitions


(34) The term "individual account plan" or "defined contribution plan" means a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account.

**Appendix Item 5**

29 USCA S 1002
 29 U.S.C.A. § 1002

UNITED STATES CODE ANNOTATED
TITLE 29. LABOR
CHAPTER 18--EMPLOYEE RETIREMENT INCOME SECURITY PROGRAM
SUBCHAPTER I--PROTECTION OF EMPLOYEE BENEFIT RIGHTS
SUBTITLE A--GENERAL PROVISIONS
§ 1002. Definitions

(35) The term "defined benefit plan" means a pension plan other than an individual account plan; except that a pension plan which is not an individual account plan and which provides a benefit derived from employer contributions which is based partly on the balance of the separate account of a participant--

(A) for the purposes of section 1052 of this title, shall be treated as an individual account plan, and

(B) for the purposes of paragraph (23) of this section and section 1054 of this title, shall be treated as an individual account plan to the extent benefits are based upon the separate account of a participant and as a defined benefit plan with respect to the remaining portion of benefits under the plan.

**Appendix Item 6**

29 USCA S 1054
29 U.S.C.A. § 1054

UNITED STATES CODE ANNOTATED
TITLE 29. LABOR
CHAPTER 18--EMPLOYEE RETIREMENT INCOME SECURITY PROGRAM
SUBCHAPTER I--PROTECTION OF EMPLOYEE BENEFIT RIGHTS
SUBTITLE B--REGULATORY PROVISIONS

PART 2--PARTICIPATION AND VESTING
§ 1054. Benefit accrual requirements

(a) Satisfaction of requirements by pension plans

Each pension plan shall satisfy the requirements of subsection (b)(3) of this section, and--

(1) in the case of a defined benefit plan, shall satisfy the requirements of subsection (b)(1) of this section;  and

(2) in the case of a defined contribution plan, shall satisfy the requirements of subsection (b)(2) of this section.

(b) Enumeration of plan requirements

(1)(A) A defined benefit plan satisfies the requirements of this paragraph if the accrued benefit to which each participant is entitled upon his separation from the service is not less than--

(i) 3 percent of the normal retirement benefit to which he would be entitled at the normal retirement age if he commenced participation at the earliest possible entry age under the plan and served continuously until the earlier of age 65 or the normal retirement age specified under the plan, multiplied by

(ii) the number of years (not in excess of 33 1/3 ) of his participation in the plan.

In the case of a plan providing retirement benefits based on compensation during any period, the normal retirement benefit to which a participant would be entitled shall be determined as if he continued to earn annually the average rate of compensation which he earned during consecutive years of service, not in excess of 10, for which his compensation was the highest.  For purposes of this subparagraph, social security benefits and all other relevant factors used to compute benefits shall be treated as remaining constant as of the current year for all years after such current year.

(B) A defined benefit plan satisfies the requirements of this paragraph of a particular plan year if under the plan the accrued benefit payable at the normal retirement age is equal to the normal

retirement benefit and the annual rate at which any individual who is or could be a participant can accrue the retirement benefits payable at normal retirement age under the plan for any later plan year is not more than 133 1/3 percent of the annual rate at which he can accrue benefits for any plan year beginning on or after such particular plan year and before such later plan year.  For purposes of this subparagraph--

(i) any amendment to the plan which is in effect for the current year shall be treated as in effect for all other plan years;

(ii) any change in an accrual rate which does not apply to any individual who is or could be a participant in the current year shall be disregarded;

(iii) the fact that benefits under the plan may be payable to certain employees before normal retirement age shall be disregarded;  and

(iv) social security benefits and all other relevant factors used to compute benefits shall be treated as remaining constant as of the current year for all years after the current year.

(C) A defined benefit plan satisfies the requirements of this paragraph if the accrued benefit to which any participant is entitled upon his separation from the service is not less than a fraction of the annual benefit commencing at normal retirement age to which he would be entitled under the plan as in effect on the date of his separation if he continued to earn annually until normal retirement age the same rate of compensation upon which his normal retirement benefit would be computed under the plan, determined as if he had attained normal retirement age on the date any such determination is made (but taking into account no more than the 10 years of service immediately preceding his separation from service).  Such fraction shall be a fraction, not exceeding 1, the numerator of which is the total number of his years of participation in the plan (as of the date of his separation from the service) and the denominator of which is the total number of years he would have participated in the plan if he separated from the service at the normal retirement age.  For purposes of this subparagraph, social security benefits and all other relevant factors used to compute benefits shall be treated as remaining constant as of the current year for all years after such current year.

(D) Subparagraphs (A), (B), and (C) shall not apply with respect to years of participation before the first plan year to which this section applies but a defined benefit plan satisfies the requirements of this subparagraph with respect to such years of participation only if the accrued benefit of any participant with respect to such years of participation is not less than the greater of--

(i) his accrued benefit determined under the plan, as in effect from time to time prior to September 2, 1974, or

(ii) an accrued benefit which is not less than one-half of the accrued benefit to which such participant would have been entitled if subparagraph (A), (B), or (C) applied with respect to such years of participation.

(E) Notwithstanding subparagraphs (A), (B), and (C) of this paragraph, a plan shall not be treated as not satisfying the requirements of this paragraph solely because the accrual of benefits under the plan does not become effective until the employee has two continuous years of service.  For purposes of this subparagraph, the term "year of service" has the meaning provided by section 1052(a)(3)(A) of this title.

(F) Notwithstanding subparagraphs (A), (B), and (C), a defined benefit plan satisfies the requirements of this paragraph if such plan--

(i) is funded exclusively by the purchase of insurance contracts, and

(ii) satisfies the requirements of paragraphs (2) and (3) of section 1081(b) of this title (relating to certain insurance contract plans),

but only if an employee's accrued benefit as of any applicable date is not less than the cash surrender value his insurance contracts would have on such applicable date if the requirements of paragraphs (4), (5), and (6) of section 1081(b) of this title were satisfied.

(G) Notwithstanding the preceding subparagraphs, a defined benefit plan shall be treated as not satisfying the requirements of this paragraph if the participant's accrued benefit is reduced on account of any increase in his age or service.  The preceding sentence shall not apply to benefits under the plan commencing before benefits payable under title II of the Social Security Act [42 U.S.C.A. § 401 et seq.] which benefits under the plan--

(i) do not exceed social security benefits, and

(ii) terminate when such social security benefits commence.

(H)(i) Notwithstanding the preceding subparagraphs, a defined benefit plan shall be treated as not satisfying the requirements of this paragraph if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age.

(ii) A plan shall not be treated as failing to meet the requirements of this subparagraph solely because the plan imposes (without regard to age) a limitation on the amount of benefits that the plan provides or a limitation on the number of years of service or years of participation which are taken into account for purposes of determining benefit accrual under the plan.

(iii) In the case of any employee who, as of the end of any plan year under a defined benefit plan, has attained normal retirement age under such plan--

(I) if distribution of benefits under such plan with respect to such employee has commenced as of the end of such plan year, then any requirement of this subparagraph for continued accrual of benefits under such plan with respect to such employee during such plan year shall be treated as satisfied to the extent of the actuarial equivalent of in-service distribution of benefits, and

(II) if distribution of benefits under such plan with respect to such employee has not commenced as of the end of such year in accordance with section 1056(a)(3) of this title, and the payment of benefits under such plan with respect to such employee is not suspended during such plan year pursuant to section 1053(a)(3)(B) of this title, then any requirement of this subparagraph for continued accrual of benefits under such plan with respect to such employee during such plan year shall be treated as satisfied to the extent of any adjustment in the benefit payable under the plan during such plan year attributable to the delay in the distribution of benefits after the attainment of normal retirement age.

The preceding provisions of this clause shall apply in accordance with regulations of the Secretary of the Treasury. Such regulations may provide for the application of the preceding provisions of this clause, in the case of any such employee, with respect to any period of time within a plan year.

(iv) Clause (i) shall not apply with respect to any employee who is a highly compensated employee (within the meaning of section 414(q) of Title 26) to the extent provided in regulations prescribed by the Secretary of the Treasury for purposes of precluding discrimination in favor of highly compensated employees within the meaning of subchapter D of chapter 1 of Title 26.

(v) A plan shall not be treated as failing to meet the requirements of clause (i) solely because the subsidized portion of any early retirement benefit is disregarded in determining benefit accruals.

(vi) Any regulations prescribed by the Secretary of the Treasury pursuant to clause (v) of section 411(b)(1)(H) of Title 26 shall apply with respect to the requirements of this subparagraph in the same manner and to the same extent as such regulations apply with respect to the requirements of such section 411(b)(1)(H).

(2)(A) A defined contribution plan satisfies the requirements of this paragraph if, under the plan, allocations to the employee's account are not ceased, and the rate at which amounts are allocated to the employee's account is not reduced, because of the attainment of any age.

(B) A plan shall not be treated as failing to meet the requirements of subparagraph (A) solely because the subsidized portion of any early retirement benefit is disregarded in determining benefit accruals.

(C) Any regulations prescribed by the Secretary of the Treasury pursuant to subparagraphs (B) and (C) of section 411(b)(2) of Title 26 shall apply with respect to the requirements of this paragraph in the same manner and to the same extent as such regulations apply with respect to the requirements of such section 411(b)(2).

(3) A plan satisfies the requirements of this paragraph if--

(A) in the case of a defined benefit plan, the plan requires separate accounting for the portion of each employee's accrued benefit derived from any voluntary employee contributions permitted under the plan; and

(B) in the case of any plan which is not a defined benefit plan, the plan requires separate accounting for each employee's accrued benefit.

(4)(A) For purposes of determining an employee's accrued benefit, the term "year of participation" means a period of service (beginning at the earliest date on which the employee is a participant in the plan and which is included in a period of service required to be taken into account under section 1052(b) of this title, determined without regard to section 1052(b)(5) of this title) as determined under regulations prescribed by the Secretary which provide for the calculation of such period on any reasonable and consistent basis.

(B) For purposes of this paragraph, except as provided in subparagraph (C), in the case of any employee whose customary employment is less than full time, the calculation of such employee's service on any basis which provides less than a ratable portion of the accrued benefit to which he would be entitled under the plan if his customary employment were full time shall not be treated as made on a reasonable and consistent basis.

(C) For purposes of this paragraph, in the case of any employee whose service is less than 1,000 hours during any calendar year, plan year or other 12- consecutive-month period designated by the plan (and not prohibited under regulations prescribed by the Secretary) the calculation of his period of service shall not be treated as not made on a reasonable and consistent basis merely because such service is not taken into account.

(D) In the case of any seasonal industry where the customary period of employment is less than 1,000 hours during a calendar year, the term "year of participation" shall be such period as determined under regulations prescribed by the Secretary.

(E) For purposes of this subsection in the case of any maritime industry, 125 days of service shall be treated as a year of participation.  The Secretary may prescribe regulations to carry out the purposes of this subparagraph.

(c) Employee's accrued benefits derived from employer and employee contributions

(1) For purposes of this section and section 1053 of this title an employee's accrued benefit derived from employer contributions as of any applicable date is the excess (if any) of the accrued benefit for such employee as of such applicable date over the accrued benefit derived from contributions made by such employee as of such date.

(2)(A) In the case of a plan other than a defined benefit plan, the accrued benefit derived from contributions made by an employee as of any applicable date is--

(i) except as provided in clause (ii), the balance of the employee's separate account consisting only of his contributions and the income, expenses, gains, and losses attributable thereto, or

(ii) if a separate account is not maintained with respect to an employee's contributions under such a plan, the amount which bears the same ratio to his total accrued benefit as the total amount of the employee's contributions (less withdrawals) bears to the sum of such contributions and the

contributions made on his behalf by the employer (less withdrawals).

(B) Defined benefit plans

In the case of a defined benefit plan, the accrued benefit derived from contributions made by an employee as of any applicable date is the amount equal to the employee's accumulated contributions expressed as an annual benefit commencing at normal retirement age, using an interest rate which would be used under the plan under section 1055(g)(3) of this title (as of the determination date).

(C) For purposes of this subsection, the term "accumulated contributions" means the total of--

(i) all mandatory contributions made by the employee,

(ii) interest (if any) under the plan to the end of the last plan year to which section 1053(a)(2) of this title does not apply (by reason of the applicable effective date), and

(iii) interest on the sum of the amounts determined under clauses (i) and (ii) compounded annually--

(I) at the rate of 120 percent of the Federal midterm rate (as in effect under  section 1274 of Title 26 for the 1st month of a plan year for the period beginning with the 1st plan year to which subsection (a)(2) of this section applies by reason of the applicable effective date) and ending with the date on which the determination is being made, and

(II) at the interest rate which would be used under the plan under section 1055(g)(3) of this title (as of the determination date) for the period beginning with the determination date and ending on the date on which the employee attains normal retirement age.

For purposes of this subparagraph, the term "mandatory contributions" means amounts contributed to the plan by the employee which are required as a condition of employment, as a condition of participation in such plan, or as a condition of obtaining benefits under the plan attributable to employer contributions.

(D) The Secretary of the Treasury is authorized to adjust by regulation the conversion factor described in subparagraph (B) from time to time as he may deem necessary.  No such adjustment shall be effective for a plan year beginning before the expiration of 1 year after such adjustment is determined and published.

(3) For purposes of this section, in the case of any defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age, or if the accrued benefit derived from contributions made by an employee is to be determined with respect to a benefit other than an annual benefit in the form of a single life annuity (without ancillary benefits) commencing at normal retirement age, the employee's accrued benefit, or the accrued benefits derived from contributions made by an employee, as the case may be, shall be the actuarial equivalent of such benefit or amount determined under

paragraph (1) or (2).

(4) In the case of a defined benefit plan which permits voluntary employee contributions, the portion of an employee's accrued benefit derived from such contributions shall be treated as an accrued benefit derived from employee contributions under a plan other than a defined benefit plan.

(d) Employee service which may be disregarded in determining employee's accrued benefits under plan

Notwithstanding section 1053(b)(1) of this title, for purposes of determining the employee's accrued benefit under the plan, the plan may disregard service performed by the employee with respect to which he has received--

(1) a distribution of the present value of his entire nonforfeitable benefit if such distribution was in an amount (not more than the dollar limit under section 1053(e)(1) of this title) permitted under regulations prescribed by the Secretary of the Treasury, or

(2) a distribution of the present value of his nonforfeitable benefit attributable to such service which he elected to receive.

Paragraph (1) shall apply only if such distribution was made on termination of the employee's participation in the plan.  Paragraph (2) shall apply only if such distribution was made on termination of the employee's participation in the plan or under such other circumstances as may be provided under regulations prescribed by the Secretary of the Treasury.

(e) Opportunity to repay full amount of distributions which have been reduced through disregarded employee service

For purposes of determining the employee's accrued benefit, the plan shall not disregard service as provided in subsection (d) of this section unless the plan provides an opportunity for the participant to repay the full amount of a distribution described in subsection (d) of this section with, in the case of a defined benefit plan, interest at the rate determined for purposes of subsection (c)(2)(C) of this section and provides that upon such repayment the employee's accrued benefit shall be recomputed by taking into account service so disregarded.  This subsection shall apply only in the case of a participant who--

(1) received such a distribution in any plan year to which this section applies, which distribution was less than the present value of his accrued benefit,

(2) resumes employment covered under the plan, and

(3) repays the full amount of such distribution with, in the case of a defined benefit plan, interest at the rate determined for purposes of subsection (c)(2)(C) of this section.

The plan provision required under this subsection may provide that such repayment must be

made (A) in the case of a withdrawal on account of separation from service, before the earlier of 5 years after the first date on which the participant is subsequently re-employed by the employer, or the close of the first period of 5 consecutive 1-year breaks in service commencing after the withdrawal;  or (B) in the case of any other withdrawal, 5 years after the date of the withdrawal.

(f) Employer treated as maintaining a plan

For the purposes of this part, an employer shall be treated as maintaining a plan if any employee of such employer accrues benefits under such plan by reason of service with such employer.

(g) Decrease of accrued benefits through amendment of plan

(1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) or 1441 of this title.

(2) For purposes of paragraph (1), a plan amendment which has the effect of--

(A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or

(B) eliminating an optional form of benefit,

with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits.  In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy.  The Secretary of the Treasury shall by regulations provide that this paragraph shall not apply to any plan amendment which reduces or eliminates benefits or subsidies which create significant burdens or complexities for the plan and plan participants, unless such amendment adversely affects the rights of any participant in a more than de minimis manner.  The Secretary of the Treasury may by regulations provide that this subparagraph shall not apply to a plan amendment described in subparagraph (B) (other than a plan amendment having an effect described in subparagraph (A)).

(3) For purposes of this subsection, any--

(A) tax credit employee stock ownership plan (as defined in section 409(a) of Title 26), or

(B) employee stock ownership plan (as defined in section 4975(e)(7) of Title 26),

shall not be treated as failing to meet the requirements of this subsection merely because it modifies distribution options in a nondiscriminatory manner.

(4)(A) A defined contribution plan (in this subparagraph referred to as the  "transferee plan") shall not be treated as failing to meet the requirements of this subsection merely because the transferee plan does not provide some or all of the forms of distribution previously available under another defined contribution plan (in this subparagraph referred to as the "transferor plan")

to the extent that

(i) the forms of distribution previously available under the transferor plan applied to the account of a participant or beneficiary under the transferor plan that was transferred from the transferor plan to the transferee plan pursuant to a direct transfer rather than pursuant to a distribution from the transferor plan;

(ii) the terms of both the transferor plan and the transferee plan authorize the transfer described in clause (i);

(iii) the transfer described in clause (i) was made pursuant to a voluntary election by the participant or beneficiary whose account was transferred to the transferee plan;

(iv) the election described in clause (iii) was made after the participant or beneficiary received a notice describing the consequences of making the election; and

(v) the transferee plan allows the participant or beneficiary described in clause (iii) to receive any distribution to which the participant or beneficiary is entitled under the transferee plan in the form of a single sum distribution.

(B) Subparagraph (A) shall apply to plan mergers and other transactions having the effect of a direct transfer, including consolidations of benefits attributable to different employers within a multiple employer plan.

(5) Except to the extent provided in regulations promulgated by the Secretary of the Treasury, a defined contribution plan shall not be treated as failing to meet the requirements of this subsection merely because of the elimination of a form of distribution previously available thereunder.  this paragraph shall not apply to the elimination of a form of distribution with respect to any participant unless

(A) a single sum payment is available to such participant at the same time or times as the form of distribution being eliminated; and

(B) such single sum payment is based on the same or greater portion of the participant's account as the form of distribution being eliminated.

(h) Notice of significant reduction in benefit accruals

(1) An applicable pension plan may not be amended so as to provide for a significant reduction in the rate of future benefit accrual unless the plan administrator provides the notice described in paragraph (2) to each applicable individual (and to each employee organization representing applicable individuals).

(2) The notice required by paragraph (1) shall be written in a manner calculated to be understood by the average plan participant and shall provide sufficient information (as determined in accordance with regulations prescribed by the Secretary of the treasury) to allow applicable

individuals to understand the effect of the plan amendment.  the Secretary of the treasury may provide a simplified form of notice for, or exempt from any notice requirement, a plan

(A) which has fewer than 100 participants who have accrued a benefit under the plan, or

(B) which offers participants the option to choose between the new benefit formula and the old benefit formula.

(3) Except as provided in regulations prescribed by the Secretary of the Treasury, the notice required by paragraph (1) shall be provided within a reasonable time before the effective date of the plan amendment.

(4) Any notice under paragraph (1) may be provided to a person designated, in writing, by the person to which it would otherwise be provided.

(5) A plan shall not be treated as failing to meet the requirements of paragraph (1) merely because notice is provided before the adoption of the plan amendment if no material modification of the amendment occurs before the amendment is adopted.

(6)(A) In the case of any egregious failure to meet any requirement of this subsection with respect to any plan amendment, the provisions of the applicable pension plan shall be applied as if such plan amendment entitled all applicable individuals to the greater of

(i) the benefits to which they would have been entitled without regard to such amendment, or

(ii) the benefits under the plan with regard to such amendment.

(B) For purposes of subparagraph (a), there is an egregious failure to meet the requirements of this subsection if such failure is within the control of the plan sponsor and is

(i) an intentional failure (including any failure to promptly provide the required notice or information after the plan administrator discovers an unintentional failure to meet the requirements of this subsection),

(ii) a failure to provide most of the individuals with most of the information they are entitled to receive under this subsection, or

(iii) a failure which is determined to be egregious under regulations prescribed by the Secretary of the Treasury.

(7) The Secretary of the Treasury may by regulations allow any notice under this subsection to be provided by using new technologies.

(8) For purposes of this subsection

(A) The term "applicable individual" means, with respect to any plan amendment--

(i) each participant in the plan;  and

(ii) any beneficiary who is an alternate payee (within the meaning of  section 206(d)(3)(K)) under an applicable qualified domestic relations order (within the meaning of section 206(d)(3)(B)(i)),

whose rate of future benefit accrual under the plan may reasonably be expected to be significantly reduced by such plan amendment.

(B) The term "applicable pension plan" means--

(i) any defined benefit plan;  or

(ii) an individual account plan which is subject to the funding standards of  section 412 of the Internal Revenue Code of 1986.

(9) For purposes of this subsection, a plan amendment which eliminates or reduces any early retirement benefit or retirement-type subsidy (within the meaning of subsection (g)(2)(A)) shall be treated as having the effect of reducing the rate of future benefit accrual.

(i) Prohibition on benefit increases where plan sponsor is in bankruptcy

(1) In the case of a plan described in paragraph (3) which is maintained by an employer that is a debtor in a case under Title 11 or similar Federal or State law, no amendment of the plan which increases the liabilities of the plan by reason of--

(A) any increase in benefits,

(B) any change in the accrual of benefits, or

(C) any change in the rate at which benefits become nonforfeitable under the plan,

with respect to employees of the debtor, shall be effective prior to the effective date of such employer's plan of reorganization.

(2) Paragraph (1) shall not apply to any plan amendment that--

(A) the Secretary of the Treasury determines to be reasonable and that provides for only de minimis increases in the liabilities of the plan with respect to employees of the debtor,

(B) only repeals an amendment described in section 1082(c)(8) of this title,

(C) is required as a condition of qualification under part I of subchapter D of chapter 1 of Title 26, or

(D) was adopted prior to, or pursuant to a collective bargaining agreement entered into prior to, the date on which the employer became a debtor in a case under Title 11 or similar Federal or State law.

(3) This subsection shall apply only to plans (other than multiemployer plans) covered under section 1321 of this title for which the funded current liability percentage (within the meaning of section 1082(d)(8) of this title) is less than 100 percent after taking into account the effect of the amendment.

(4) For purposes of this subsection, the term "employer" has the meaning set forth in section 1082(c)(11)(A) of this title, without regard to section 1082(c)(11)(B) of this title.

(j) Cross reference

For special rules relating to plan provisions adopted to preclude discrimination, see section 1053(c)(2) of this title.

**Appendix Item 7**
**IRS Notice 96-8 IRS Notice 96-8, 1996-1 C.B. 359 (Feb. 5, 1996)**

Notice 96-8
1996-1 C.B. 359, 1996-6 I.R.B. 23, 1996 WL 17901 (IRS NOT)

Internal Revenue Service (I.R.S.)

Notice

CASH BALANCE PENSION PLANS

Released: January 18, 1996

Published: February 5, 1996

  Determining amount of single sum distributions from cash balance plans. This notice
provides guidance concerning the requirements of section 411(a) and 417(e) with respect
to the determination of the amount of a single sum distribution from a cash balance plan.
The notice also describes proposed guidance to be issued later in regulations that would
provide a list of standard indices and associated margins for use by cash balance plans in
determining the amount of interest credits.

I. Purpose

  This notice describes and requests comments on proposed guidance concerning the
application of sections 411 and 417(e) to single sum distributions under defined benefit
pension plans that are cash balance plans. The proposed guidance is being described in
this notice in order to permit advance public comment in anticipation of the publication
of regulations that incorporate the proposed guidance.

II. Background

A. General description of cash balance plans

  In general terms, a cash balance plan is a defined benefit pension plan that defines
benefits for each employee by reference to the amount of the employee's hypothetical
account balance. An employee's hypothetical account balance is credited with
hypothetical allocations and hypothetical earnings determined under a formula selected
by the employer and set forth in the plan. These hypothetical allocations and hypothetical
earnings are designed to mimic the allocations of actual contributions and actual earnings
to an employee's account that would occur under a defined contribution plan. Cash
balance plans often specify that hypothetical earnings (referred to in this notice as interest
credits) are determined using an interest rate or rate of return under a variable outside
index (e.g., the annual yield on one-year Treasury securities). Most cash balance plans
also are designed to permit, after termination of employment, a distribution of an
employee's entire accrued benefit in the form of a single sum distribution equal to the
employee's hypothetical account balance as of the date of the distribution. Many cash
balance plans also provide that if distribution is in the form of an annuity, the amount of

2

the annuity is determined by dividing the hypothetical account balance by an annuity conversion factor.

As explained below, in order to comply with sections 411(a) and 417(e) in calculating the amount of a single sum distribution under a cash balance plan, the balance of the employee's hypothetical account must be projected to normal retirement age and then the employee must be paid at least the present value, determined in accordance with section 417(e), of that projected hypothetical account balance. If a cash balance plan provides interest credits using an interest rate that is higher than the section 417(e) applicable interest rate, payment of a single sum distribution equal to the hypothetical account balance as a complete distribution of the employee's accrued benefit may result either in a violation of section 417(e) or a forfeiture in violation of section 411(a). This is because, in such a case, the present value of the employee's accrued benefit, determined using the section 417(e) applicable interest rate, will generally exceed the hypothetical account balance. The following example illustrates this potential problem.

Example. A cash balance plan provides for interest credits at a fixed rate of 8% per annum that are not conditioned on continued employment, and for annuity conversions using the section 417(e) applicable interest rate and mortality table. A fully vested employee with a hypothetical account balance of $45,000 terminates employment at age 45 and elects an immediate single sum distribution. At the time of the employee's termination, the section 417(e) applicable interest rate is 6.5%.

The projected balance of the employee's hypothetical account as of normal retirement age is $209,743. If $209,743 is discounted to age 45 at 6.5% (the section 417(e) applicable interest rate), the present value equals $59,524.

Accordingly, if the plan paid the hypothetical account balance of $45,000, instead of $59,524, the employee would receive $14,524 less than the amount to which the employee is entitled.

Even if a cash balance plan provides interest credits using an interest rate that exceeds the section 417(e) applicable interest rate, the plan can satisfy sections 417(e) and 411(a). Such a plan would provide that the amount of any single sum distribution is equal to the present value of the employee's accrued benefit determined in a manner that satisfies sections 411(a) and 417(e) even if the amount of the single sum exceeds the employee's hypothetical account balance. Thus, in the example above, the plan would satisfy sections 411(a) and 417(e) if the employee received a single sum distribution of $59,524 (the present value of the employee's accrued benefit) rather than $45,000 (the employee's hypothetical account balance).

B. Existing regulatory safe harbor for cash balance plans

Section 1.401(a)(4)-8(c) of the Income Tax Regulations, as issued in September 1991, provides a safe harbor testing method for cash balance plans. Under this method, a cash balance plan could be tested for nondiscrimination as though it were a defined contribution plan with actual allocations equal to the amount of the hypothetical

allocations credited for the plan year. In order to use the safe harbor, a cash balance plan must satisfy certain design requirements that relate to the accrued benefit and valuation rules that are unique to defined benefit plans.

  Comments on the September 1991 regulations expressed concern that the safe harbor plan design requirements reflected an interpretation by the Service and Treasury of the qualification requirements that, in certain cases, would require cash balance plans to pay a single sum distribution in excess of the hypothetical account balance. Guidance was requested on the circumstances in which a cash balance plan (whether or not it qualifies for safe harbor nondiscrimination testing) is permitted to distribute a single sum distribution equal to the hypothetical account balance without violating section 411(a) or 417(e).

  When revised regulations under section 401(a)(4) were issued in September 1993, the safe harbor testing method for cash balance plans was left unchanged. The Preamble to those regulations indicated that the safe harbor testing method for cash balance plans had generated significant comment and that further guidance would be issued at a later date.

III. Analysis

A. Nonforfeiture and accrual rules

  A cash balance plan is a defined benefit plan, not a defined contribution plan, because the benefits provided are not based solely on actual contributions and forfeitures allocated to an employee's account and the actual investment experience and expenses of the plan allocated to the account. Section 411(a)(7) defines an employee's accrued benefit differently for defined benefit plans than for defined contribution plans. Also, defined benefit plans are subject to a number of statutory provisions that do not apply to defined contribution plans. These include the rules of section 411(b)(1) that limit "backloading" of accruals; the valuation rules of section 417(e); and the definitely determinable benefits requirement of section 401(a)(25). These provisions limit the extent to which a cash balance plan can mimic the benefit and accrual structure of a defined contribution plan.

  Under section 411(a)(2), an employee's accrued benefit must become nonforfeitable in accordance with one of the schedules specified in that section. Under s 1.411(a)-7(a)(1)(ii), the term "accrued benefits" generally refers only to pension or retirement benefits. Under section 411(b)(1), the accrual of the retirement benefits payable at normal retirement age must satisfy one of the rules in section 411(b)(1)(A), (B) or (C).

  Under a cash balance plan, the retirement benefits payable at normal retirement age are determined by reference to the hypothetical account balance as of normal retirement age, including benefits attributable to interest credits to that age. Thus, benefits attributable to interest credits must be taken into account in determining whether the accrual of the retirement benefits under a cash balance plan satisfies one of the rules in section 411(b)(1)(A), (B) or (C). Moreover, benefits attributable to interest credits are in the nature of accrued benefits within the meaning of s 1.411(a)-7(a), rather than ancillary

4

benefits, and thus, once accrued, must become nonforfeitable in accordance with a vesting schedule that satisfies section 411(a).

Cash balance plans can be categorized based on when the benefits attributable to interest credits accrue. Under one type of cash balance plan (referred to in this notice as a frontloaded interest credit plan), future interest credits to an employee's hypothetical account balance are not conditioned upon future service. (Of course, benefits attributable to future interest credits may be forfeited in accordance with the plan's vesting provisions, to the extent permitted under section 411.) Thus, in the case of a frontloaded interest credit plan, the benefits attributable to future interest credits with respect to a hypothetical allocation accrue at the same time that the benefits attributable to the hypothetical allocation accrue. As a result, if an employee terminates employment and defers distribution to a later date, interest credits will continue to be credited to that employee's hypothetical account.

A second type of cash balance plan (referred to in this notice as a backloaded interest credit plan) conditions future interest credits upon further service. In the case of a backloaded interest credit plan, benefits attributable to interest credits do not accrue until the interest credits are credited to the employee's account. Because backloaded interest credit plans typically will not satisfy any of the accrual rules in section 411(b)(1)(A), (B) or (C), it is anticipated that the proposed guidance will address only frontloaded interest credit plans.

B. Single sum distributions from frontloaded interest credit plans

As indicated above, most cash balance plans are designed to permit a distribution of an employee's entire accrued benefit, after termination of employment, in the form of a single sum equal to the employee's hypothetical account balance as of the date of the distribution. In order for a defined benefit plan to satisfy section 417(e), any single sum distribution payable to an employee from the plan must not be less than the nonforfeitable portion of the present value of the employee's accrued benefit under section 411(a)(7) (determined using the applicable interest rate and mortality table under section 417(e)).

1. Determination of the accrued benefit

In the case of a frontloaded interest credit plan, an employee's accrued benefit as of any date before attainment of normal retirement age is based on the employee's hypothetical account balance as of normal retirement age, including future interest credits to that age. If such a plan specifies a fixed interest rate for use in determining future interest credits, the employee's hypothetical account balance as of normal retirement age (including future interest credits) can be calculated precisely before normal retirement age. However, if a frontloaded interest credit plan specifies a variable outside index for use in determining the amount of interest credits, the precise dollar amount of an employee's hypothetical account balance as of normal retirement age (including future interest credits to normal retirement age), and thus the precise dollar amount of the employee's accrued benefit as of any date before normal retirement age, cannot be calculated prior to normal retirement age.

5

A frontloaded interest credit plan that specifies a variable outside index for use in determining the amount of interest credits must prescribe the method for reflecting future interest credits in the calculation of an employee's accrued benefit. In order to comply with section 401(a)(25), the method, including actuarial assumptions, if applicable, must preclude employer discretion. Further, in determining the amount of an employee's accrued benefit, a forfeiture, within the meaning of s 1.411(a)-4T, will result if the value of future interest credits is projected using a rate that understates the value of those credits or if the plan by its terms reduces the interest rate or rate of return used for projecting future interest credits. A forfeiture in violation of section 411(a) also will occur if, in determining the amount of an employee's accrued benefit, future interest credits are not taken into account (i.e., there is no projection of future interest credits) and this has the same effect as using a rate that understates the value of future interest credits.

2. Calculation of the present value of the employee's accrued benefit

In the case of a frontloaded interest credit plan, a single sum distribution optional form of benefit equal to the hypothetical account balance will satisfy section 417(e) only if the single sum distribution is not less than the present value of the employee's accrued benefit calculated in accordance with the applicable interest rate and mortality table under section 417(e)(3). As noted above, the amount of the employee's accrued benefit must be determined using a method of reflecting future interest credits that satisfies section 401(a)(25) and that does not create a forfeiture in violation of section 411(a).

3. Situations in which the present value will not exceed the hypothetical account balance

A frontloaded interest credit plan might provide that the amount of interest credits is determined using a variable interest rate or rate of return that, by its terms, is no greater than the applicable interest rate under section 417(e)(3). For example, a plan that has been amended to comply with the changes to section 417(e) made by the Retirement Protection Act of 1994 (RPA '94) might provide that interest credits are determined using the lesser of the current rate of interest on 30-year Treasury securities or the current yield on 1-year Treasury Constant Maturities. Under such a plan, future interest credits can, without violating section 411(a), be projected to normal retirement age using a rate that is no greater than the applicable interest rate under section 417(e)(3). In that case, assuming that the annuity conversion factor under the plan is not less than the annuity conversion factor determined using the applicable interest rate and mortality table under section 417(e)(3), the employee's hypothetical account balance will equal or exceed the present value of the employee's accrued benefit determined in accordance with section 417(e). Thus, a single sum distribution equal to the employee's hypothetical account balance under such a plan will satisfy sections 411(a) and 417(e).

In other cases, a single sum distribution equal to an employee's hypothetical account balance will satisfy sections 417(e) and 411(a) if (a) the annuity conversion factor is not less than the annuity conversion factor determined using the applicable interest rate and mortality table under section 417(e)(3), (b) under the method for reflecting future interest credits in the calculation of an employee's accrued benefit, the future interest credits are projected using a rate that is no greater that the applicable interest rate under section

6

417(e)(3), and (c) this projection does not result in a forfeiture in violation of section 411(a).

  By contrast, if the interest rate or rate of return under the plan used in determining the amount of interest credits is high relative to the section 417(e)(3) interest rate, the plan cannot distribute a single sum equal to the employee's hypothetical account balance and satisfy sections 411(a) and 417(e). If such a plan provided that, in determining an employee's accrued benefit, the rate used for projecting the amount of future interest credits was no greater than the interest rate under section 417(e)(3), the projection would result in a forfeiture. Alternatively, if the plan provided for interest credits to be projected using a rate that exceeded the section 417(e) interest rate but then provided for the benefit to be discounted using that same higher rate, the plan would violate section 417(e).

C. Effect of defining the accrued benefit as the hypothetical account balance

  The requirements referred to in this notice apply even in the case of a cash balance plan that defines an employee's accrued benefit as an amount equal to the employee's hypothetical account balance. Section 411(a)(7) defines the accrued benefit in terms of benefits payable under the plan at normal retirement age. In a cash balance plan, for an employee who has not attained normal retirement age, whether the employee's retirement benefit payable at normal retirement age under the plan includes benefits attributable to future interest credits depends on whether those benefits have accrued.

  If benefits attributable to future interest credits have accrued, and those benefits are disregarded when benefits commence before normal retirement age, the plan has effectively conditioned entitlement to the benefits attributable to those future interest credits on the employee not taking a distribution prior to normal retirement age. Pursuant to s 1.411(a)-4T, a right that is conditioned under the plan on a subsequent forbearance is a forfeitable right. Accordingly, conditioning entitlement to benefits on the employee not taking a distribution violates the nonforfeitability requirements of section 411(a).

  Alternatively, if the benefits attributable to future interest credits have not accrued and will accrue only as of the later dates when the interest credits are included in the hypothetical account balance, the timing of those later accruals must be taken into account in applying the accrual rules of section 411(b)(1). As a result, such a plan typically will not satisfy those accrual rules.

IV. Description of proposal

A. Variable interest rates that may be assumed for these purposes to be no greater than the 30-year Treasury interest rate

  It is anticipated that the regulations will set forth a list of standard indices and associated margins for use with frontloaded interest credit plans that provide interest credits equal to the product of the balance of the hypothetical account and the current value of a variable index. (It is anticipated that this proposal will apply without regard to how frequently the rate used to determine interest credits is compounded.) Under a frontloaded interest credit plan that, for this purpose, specifies a variable index equal to the PBGC immediate rate or the sum of one of the standard indices and a margin not greater than the specified margin

associated with that standard index, no impermissible forfeiture would result from projecting that the rate used to determine future interest credits for an employee is no greater than the applicable interest rate under section 417(e)(3), as amended by RPA '94. Thus, if such a plan has been amended to comply with the changes to section 417(e) made by RPA '94, the employee's entire accrued benefit could be distributed in the form of a single sum distribution equal to the employee's hypothetical account balance without violating section 411(a) or 417(e), provided that the plan provides the appropriate annuity conversion factors.

The table below provides the proposed list of standard indices and associated margins. The discount rates on Treasury bills and the yields on Treasury Constant Maturities are the rates reported in the Federal Reserve Bulletin, and the Consumer Price Index is CPI-U, as reported by the Department of Labor. Authority would be delegated to the Commissioner to approve other indices and associated margins.

| Standard Index | Associated Margin |
|---|---|
| The discount rate on 3-month Treasury Bills | 175 basis points |
| The discount rate on 6-month Treasury Bills or 12-month Treasury Bills | 150 basis points |
| The yield on 1-year Treasury Constant Maturities | 100 basis points |
| The yield on 2-year Treasury Constant Maturities or 3-year Treasury Constant Maturities | 50 basis points |
| The yield on 5-year Treasury Constant Maturities or 7-year Treasury Constant Maturities | 25 basis points |
| The yield on 10-year Treasury Constant Maturities or any longer period Treasury Constant Maturities | 0 basis points |
| Annual rate of change of the Consumer Price Index | 3 percentage points |

In developing these standard indices and associated margins, the Service and Treasury took into account the historical relationship between each of these indices and the rate of interest on 30-year Treasury securities.

Under the proposal, if a frontloaded interest credit plan specified a variable index for use in determining the amount of interest credits that is equal to the sum of a standard index (listed in the table above) and a margin that exceeds the specified margin associated with that standard index, distribution of a single sum equal to the employee's hypothetical account balance would not satisfy both section 411(a) and section 417(e). If such a plan provided that the rate used for projecting the amount of future interest credits

8

was no greater than the interest rate under section 417(e)(3), the projection would result in a forfeiture. Alternatively, if a frontloaded interest credit plan provided for interest credits to be projected using a rate that exceeded the section 417(e) interest rate but then provided for the benefit to be discounted using that same higher rate, the plan would violate section 417(e).

B. Guidance will be prospective

  The anticipated regulations will be effective prospectively. In addition, for plan years beginning before the regulations are effective, a frontloaded interest credit plan would not be disqualified for failing to satisfy section 411(a) or 417(e) if the amount of the distribution satisfied those sections based on a reasonable, good-faith interpretation of the applicable provisions of the Code, taking into account pre-existing guidance. For this purpose, plans that comply with the guidance in this notice are deemed to be applying a reasonable, good faith interpretation.

V. Comments

  The Service and Treasury invite comments on the proposal described in this notice. Comments are specifically requested on other indices for which guidance may be appropriate and on guidance that would facilitate the transition to use of an approved index (including possible guidance with respect to the application of section 411(d)(6)). Any suggestion of an index (and associated margin, if any) should include an analysis of the historical relationship between the index and the rate for 30-year Treasury securities. Comments should be submitted in writing, referencing Notice 96-7, and addressed to--
    Associate Chief Counsel
    (Employee Benefits and Exempt Organizations)
    CC:EBEO
    ATTN: Cash Balance Guidance
    Room 5214
    Internal Revenue Service
    1111 Constitution Ave., N.W.
    Washington, D.C. 20224

VI. Drafting information

  The principal author of this notice is Marjorie Hoffman of the Office of the Associate Chief Counsel (Employee Benefits and Exempt Organizations). For further information, contact Ms. Hoffman at 202-622-6030 (not a toll-free number).
Notice 96-8, 1996-1 C.B. 359, 1996-6 I.R.B. 23, 1996 WL 17901 (IRS NOT)
END OF DOCUMENT

**Appendix Item 8**
**Revenue Ruling 81-211, 1981-2 C.B. 98 (1981).**

Rev. Rul. 81-211

Section 411. -- Minimum Vesting Standards

*26 CFR 1.411(a)-1: Minimum vesting standards; general rules.*

*(Also Section 7805; 301.7805-1. )*

1981-2 C.B. 98; 1981 IRB LEXIS 128; REV. RUL. 81-211
July, 1981

 **[\*1]**

Full vesting at normal retirement age.  A plan that provides that an employee's right to the normal retirement benefit is nonforfeitable on the normal retirement date, defined as a date which may occur after normal retirement age, will not satisfy the requirements of section 411(a) of the Code.

Advice has been requested whether the pension plan described below satisfies the requirement of *section 411(a) of the Internal Revenue Code*, that an employee's right to the normal retirement benefit is nonforfeitable upon attainment of normal retirement age.

A pension plan provides that an employee's right to the normal retirement benefit under the plan is nonforfeitable at the normal retirement date.  The normal retirement date is the first day of the calendar month following the date on which the employee attains age 65.

Section 401(a)(7) of the Code provides that a plan shall not be a qualified plan under section 401(a) unless it satisfies the requirements of section 411.

Section 411(a) of the Code requires that an employee's right to the normal retirement benefit under the plan must be nonforfeitable upon the attainment of normal retirement age as defined in section 411(a)(8).  Section **[\*2]**  411(a)(8) provides that normal retirement age means the earlier of: (a) normal retirement age under the plan, or (b) the later of age 65 or the tenth anniversary of the time participation commenced.

In this case, an employee's right to the normal retirement benefit becomes nonforfeitable on the employee's normal retirement date, which will occur from one day to one month after the date the employee attains age 65.  However, the normal retirement date may not occur until after the employee's normal retirement age as defined in section 411(a)(8) of the Code.

Accordingly, the pension plan does not satisfy the requirement of section 411(a) of the Code, that the employee's normal retirement benefit be nonforfeitable at normal retirement age.  Therefore, the plan is not qualified under section 401(a).

Pursuant to the authority contained in section 7805(b) of the Code, this revenue ruling will not be applied to deny qualified status to any plan that is the subject of a favorable determination letter or opinion letter on September 8, 1981, provided (1) the plan is amended to reflect the position in this revenue ruling for plan years beginning after December 31, 1983, and (2) such **[\*3]** amendment retroactively reinstates benefits if any participant has been denied treatment at least as favorable as he or she would have received if the plan had been consistent with this ruling since September 8, 1981.

This revenue ruling will be immediately affective for any plan that is not the subject of a favorable determination or opinion letter on September 8, 1981.

**Appendix Item 9**
**Revenue Ruling 71-24, 1971-1, C.B. 114 (1971).**

Rev. Rul. 71-24

Rev. Rul. 71-24, 1971 WL 26957 (IRS RRU), 1971-1 C.B. 114

Internal Revenue Service (I.R.S.)

Revenue Ruling

Published: 1971

 Section 401.--Qualified Pension, Profit-Sharing and Stock Bonus Plans, 26 CFR 1.401-1: Qualified pension, profit-sharing, and stock bonus plans.

  Benefits provided under a trusteed pension plan are definitely determinable where the amounts available to a participant at normal retirement age may be invested by the trustee until actual retirement date.

  Advice has been requested whether, under the circumstances described below, the benefits provided under a trusteed pension plan, intended to qualify under section 401(a) of the Internal Revenue Code of 1954, are definitely determinable if the amounts available to a participant at normal retirement age may be invested by the trustee until the participant's actual retirement date.

  The plan provides for a monthly benefit, to commence at normal retirement age 65, equal to 40 percent of each participant's career average compensation.  The plan is funded by individual retirement income contracts. The plan provides that any participant may elect to postpone his retirement beyond the normal retirement age of 65. In the event retirement is postponed.  the trustee must either (1) take the action necessary to defer the beginning of monthly retirement payments until actual retirement or (2) at the participant's election, surrender the policy hold on behalf of the participant, allocate the amounts received to a separate account, and invest such amounts in securities designated by the participant.  If the funds are invested, the participant's account is periodically adjusted to reflect the income or loss resulting from such investment.

  Section 1.401-4(b)(1)(i) of the Income Tax Regulations provides that a pension plan within the meaning of section 401(a) of the Code is a plan established and maintained by an employer primarily to provide systematically for the payment of definitely determinable benefits to his employees over a period of years, usually for life, after retirement.

  The normal retirement age is the time from which definitely determinable benefits under a pension plan become fixed and payable.  An employee who has reached such age and has fulfilled the service requirement and other uniformly applicable provisions of the plan must be permitted to retire and to commence receiving the benefits payable thereunder.  Arrangements, however, may be mutually made for continued employment beyond normal retirement age.  In such event, provision may be made with respect to the treatment of the pension benefits such as, for example, payment as though the employee had actually retired, deferment to actual retirement without increment for the interval between the normal retirement date and actual retirement, or actuarial equivalent on actual retirement of the benefit at normal retirement age. Whatever provisions are made, however, must be uniformly applied to all participants.

  In this case, the benefits to which a participant will become entitled at normal retirement age are definitely determinable by means of the express benefit formula contained in the plan and contracts. The value of these benefits will be set aside for any participant who reaches normal retirement age and the provisions for treatment of benefits where a participant continues his employment beyond normal retirement age are uniformly applicable to all participants.

  Accordingly, it is held that the benefits provided by this plan are definitely determinable within the meaning of section 1.401-1(b)(1)(i) of the regulations.

 Rev. Rul. 71-24, 1971 WL 26957 (IRS RRU), 1971-1 C.B. 114

END OF DOCUMENT

**Appendix Item 10**
**Revenue Ruling 78-120, 1978-1 C.B. 117 (1978)**

Rev. Rul. 78-120
Rev. Rul. 78-120, 1978 WL 42312 (IRS RRU), 1978-1 C.B. 117
                        Internal Revenue Service (I.R.S.)
                                Revenue Ruling
                        RETIREMENT BEFORE AGE 65
                               Published: 1978
 26 CFR 1.401-1: Qualified pension, profit-sharing, and stock bonus plans.
(Also Sections 411, 415; 1.411(a)-7.)

  Retirement before age 65. A defined benefit pension plan will not fail to qualify under section 401(a) of the Code merely because it provides for a normal retirement age of less than 65. However, retirement benefits commencing prior to age 55 may not exceed the limitation provided in section 415(b)(1)(A) as adjusted pursuant to section 415(b)(2)(C).  Rev. Rul. 71-147 modified.

  Advice has been requested whether a defined benefit pension plan that provides for a normal retirement age of less than 65 may qualify under section 401(a) of the Internal Revenue Code of 1954, as amended by the Employee Retirement Income Security Act of 1974 (ERISA) [1974-3 C.B. 1].

  The pension plan provides that, upon attaining a certain specified age (less than 65), the employee has the right to (1) retire without the consent of the employer, and (2) receive benefits based on service to date of retirement at the full rate provided in the plan (i.e., without actuarial or similar reduction because of retirement before some later specified age). The plan otherwise meets the requirements for qualification under section 401(a) of the Code.

  Section 411(a)(8) of the Code, as added by ERISA, defines 'normal retirement age' as the earlier of (1) the time a plan participant attains normal retirement age under the plan, or (2) the later of (a) the time a plan participant attains age 65, or (b) the 10th anniversary of the time a plan participant commenced participation in the plan.

  Rev. Rul. 71-147, 1971-1 C.B. 116, provides that the normal retirement age in a pension or annuity plan is the lowest age specified in the plan at which the employee has the right to retire without the consent of the employer and receive retirement benefits based on service to date of retirement at the full rate set forth in the plan.  Ordinarily, the normal retirement age under pension and annuity plans is age 65.  Rev. Rul. 71-147 also states that a different age may be specified, provided that if it is lower than 65 it represents the age at which employees customarily retire in the particular company or industry and is not a device to accelerate funding.

  In view of the definition of normal retirement age found in section 411(a)(8) of the Code, and in the absence of any statutory prohibition or limitation, a plan may specify any age that is less than 65 as the normal retirement age. However, if the normal retirement age specified in a plan is less than 55, and the retirement benefit under the plan begins before age 55, then for purposes of determining whether the benefit exceeds the maximum amount payable under section 415(b)(1)(A), the limit under section 415(b)(1)(A) would be adjusted in accordance with section 415(b)(2)(C).

  Accordingly, a pension or annuity plan will not fail to qualify under  section 401(a) of the Code merely because it provides for a normal retirement age of less than 65.  However, retirement benefits commencing prior to age 55 may not exceed the maximum amount payable under section 415(b)(1)(A) after such benefits are adjusted pursuant to section 415(b)(2)(C).

  Rev. Rul. 71-147 is modified.

**Appendix Item 11**

**Extract from IRS Publication 778 (2-72) (1972)**
**<u>Guides for Qualification of Pension, Profit-Sharing, and Stock Bonus</u>**

## I.R.S. PUBLICATION 778 (2-72)

**Guides for qualification of pension, profit-sharing, and stock bonus plans.**

### (e) Normal Retirement Age

The normal retirement age in a pension or annuity plan is the lowest age specified in the plan at which the employee has the right to retire without the consent of the employer and receive retirement benefits based on service to date of retirement at the full rate set forth in the plan (i. e., without actuarial or similar reduction because of retirement before some later specified age). Ordinarily, the normal retirement age under pension and annuity plans is 65, the same as under the old-age survivors, and disability insurance provisions of the Social Security Act. A different age may be specified, provided that if it is lower than 65 it represents the age at which employees customarily retire in the particular company or industry and is not a device to accelerate funding. In profit-sharing or stock bonus plans, where there is a stated retirement age it is merely one of several events that may be designated as fixing the time for making distributions. Since the amount of the distributions is dependent upon profits, there is no definitely stated rate of benefits payable at such age. Consequently, the stated retirement age in a profit-sharing or stock bonus plan does not have the same significance as "normal retirement age" in a pension plan. See Rev. Rul. 71-147, C.B. 1971-1, 116.

**Appendix Item 12**
**Rev. Rul. 71-147, 1971-1 C.B. 116; 1971 IRB Lexis 506 (January 1971)**

Rev. Rul. 71-147

Rev. Rul. 71-147, 1971 WL 27025 (IRS RRU), 1971-1 C.B. 116

Internal Revenue Service (I.R.S.)

Revenue Ruling

Published: 1971

26 CFR 1.401-1:  Qualified pension, profit-sharing, and stock bonus plans.

A profit-sharing plan that permits participants to elect to retire at age 55 and receive their complete interest thereunder in a lump sum or in equal monthly payments over their expected lifetime qualifies under section 401(a) of the Code.

Advice has been requested whether a profit-sharing plan that permits distributions to participants under the circumstances described below may qualify under section 401(a) of the Internal Revenue Code of 1954.

The plan, which otherwise meets the requirements for qualification under  section 401(a) of the Code, provides that each participant may elect to retire at age 55 and receive his complete interest thereunder in a lump sum or in the form of equal monthly payments over his expected lifetime. Employees in this particular industry involved, including those employees of the employer who are not covered by the profit-sharing plan, customarily retire at age 65.

Section 1.401-1(b)(1)(ii) of the Income Tax Regulations states that a profit-sharing plan, within the meaning of section 401(a) of the Code, must provide for distributing the funds accumulated under the plan after a fixed number of years, the attainment of a stated age, or upon the prior occurrence of some event such as layoff, illness, disability, retirement, death, or severance of employment.

The normal retirement age in a pension or annuity plan is the lowest age specified in the plan at which the employee has the right to retire without the consent of the employer and receive retirement benefits based on service to date of retirement at the full rate set forth in the plan (i.e., without actuarial or similar reduction because of retirement before some later specified age). Ordinarily, the normal retirement age under pension and annuity plans is 65.  A different age may be specified, provided that if it is lower than 65 it represents the age at which employees customarily retire in the particular company or industry and is not a device to accelerate funding.

In profit-sharing or stock bonus plans, where there is a stated retirement age it is merely one of several events that may be designated as fixing the time for making distributions.  Since the amount of the distributions is dependent upon profits, there is no definitely stated rate of benefits payable at such age.  Consequently, the stated retirement age in a profit-sharing or stock bonus plan does not have the same significance as "normal retirement age" in a pension plan.

Accordingly, it is held that this profit-sharing plan qualifies under section 410(a) of the Code.

Rev. Rul. 71-147, 1971 WL 27025 (IRS RRU), 1971-1 C.B. 116

END OF DOCUMENT

**Appendix Item 13**
**Private Letter Ruling 200420030 (May 14, 2004)**

PLR 200420030
PLR 200420030, 2004 WL 1079271 (IRS PLR)

Internal Revenue Service (I.R.S.)
Private Letter Ruling
Issue: May 14, 2004
February 19, 2004
Section 401 -- Qualified Pension, Profit-Sharing, and Stock Bonus Plan
401.00-00 Qualified Pension, Profit-Sharing, and Stock Bonus Plan

Attn: ***
Legend:
System S: ***
State A: ***
Plan X: ***
Board M: ***
Statute P: ***
Statute R: ***
Department D: ***
Group B Employee: ***
Group B Member: ***
Secretary C: ***
Dear *** :

  This is in response to your letter dated May 28, 2003, supplemented by correspondence dated August 20, 2003, submitted on your behalf by your authorized representative in which you request a ruling with respect to certain distributions from Plan X.

  The following facts and representations have been submitted on your behalf:

  System S is an independent state agency of State A that conducts the day-to-day administration of Plan X. System S is administered by Board M, a board of trustees consisting of nine members. The Governor of State A appoints five members who must be confirmed by an affirmative vote of a majority of those voting in each house of the State A General Assembly. The Joint Rules Committee of the State A General Assembly appoints the other four members of Board M who must be confirmed by the affirmative vote of a majority of those voting in each house of the State A General Assembly.

  The statutory provisions governing the operation of Plan X are codified at Statute P. Plan X provides retirement benefits to Group B Employees, who are state police officers. Membership in Plan X is compulsory for all Group B Employees. You represent that Plan X is a defined benefit plan intended to satisfy the requirements of Code section 401(a).

  Section 51.1-205A of Statute P, Normal Retirement, currently provides that any member (i.e., Group B Employee) in service at his normal retirement date with five (5) or more years of creditable service may retire upon written notification to Board M, setting forth the date the retirement is to become effective. A Group B Member is defined in Plan X as any person included in the membership of Plan X as provided in Statute P. Plan X defines normal retirement date as a member's sixtieth (60) birthday. Members attaining age seventy (70) must retire, unless appointed by the Governor of State A or elected by the people.

  Section 51.1-205E of Statute P provides that the effective date of retirement shall be after the last day of service of the member, but shall not be more than ninety (90) days prior to the filing

of the notice of retirement.

Section 51.1-206A.1 of Statute P provides that the service retirement allowance, which is an annual retirement allowance, payable for life for a member retiring at normal retirement, shall equal 1.70 percent of his average final compensation multiplied by the amount of creditable service. For retirements between October 1, 1994 and December 31, 1998, any Group B Employee who is a member or beneficiary of a retirement system administered by Board M shall receive an additional retirement allowance equal to three percent of the service or disability retirement allowance payable under that section. Under the current provisions of Statute P, a member who separates from service (retires) after attainment age 60 with 5 or more years of creditable service or attainment of age 50 with 25 years of creditable service is eligible to receive an unreduced retirement allowance. Your representative has informed us that the covered employees typically retire once they have attained 25 years of creditable service and age 50, and then go on to employment with other unrelated employers.

Section 51.1-206C of Statute P currently provides that a member of Plan X who is reemployed in a position covered by Plan X or any other retirement system that is administered by System S after retiring and commencing payment of benefits generally has his or her benefit payments suspended.

On March 18, 2003, the Governor of State A signed into law Statute R, which amended and reenacted section 51.1-205 and section 51.1-206 of Statute P.

Section 51.1-205A, normal retirement, has been amended by Statute R to provide that any member in service at his normal retirement date with five or more years of creditable service (i) as a member in Plan X; (ii) as a member in the retirement system established by Chapter 2.1 (Section 51.1-211) of Title 51.1), or (iii) while earning the benefits permitted by section 51.1-138 may retire upon written notification to Board M, setting forth the date the retirement is to become effective. Further, any member in service at age sixty (60) or older with five (5) or more years of creditable service as a member in the retirement system (Plan X) established by that chapter may elect to retire and receive a retirement allowance pursuant to that chapter and may continue to receive a retirement allowance notwithstanding that such person is employed as a Group B Employee or as an employee, as defined in section 51.1-124.3, of Department D for a period of up to one year. Such period may be extended for up to one additional year with the prior approval of Secretary C.

Section 51.1-206D was added to Statute P by Statute R. Section 51.1-206D provides that if a member in service at age sixty (60) or older with five (5) or more years of creditable service elects, pursuant to subsection A of section 51.1-205 of Statute P, to receive a service retirement allowance pursuant to that chapter while employed as a Group B Employee or as an employee, as defined in section 51.1-124.3, of Department D, then his service performed and compensation received while receiving such retirement allowance shall not increase, decrease, or affect in any way his retirement benefits before, during, or after the payment of such retirement allowance. Section 51.1-206C of Statute P continues to suspend benefit payments, except that that section has been amended to exempt from the suspension of benefit provisions payments to members who elect to retire under subsection A of section 51.1-205 of Statute P.

Based on the foregoing, the following ruling is requested:

That, if a distribution of the service retirement allowance begins to be paid to a member upon his or her reaching normal retirement age (60) with five (5) years of service while the member is still employed, such payment from Plan X will not violate the rule against in-service distributions from a pension plan.

Section 6.04 of Revenue Procedure 2003-1, 2003-1I.R.B. 123, provides that the Employee Plans Technical Office ordinarily will not issue rulings on matters involving a plan's qualified status under Code section 401(a). These matters are generally handled by the Employee Plans Determinations program. Although the Employee Plans Technical Office will not ordinarily rule on matters involving plan qualification, rulings may be issued where, among other things, the Service determines that it is in the interest of good tax administration to provide guidance to the taxpayer with respect to such qualification issue. The ruling requested concerns the effect Statute R would have on the continued qualified status of Plan X under Code section 401(a).

Section 401(a) of the Code prescribes the requirements which must be met for qualification of a pension, profit-sharing, or stock bonus plan.

Section 1.401-1(b)(1)(i) of the Income Tax Regulations provides that a pension plan, within the meaning of Code section 401(a), is a plan established and maintained by an employer primarily to provide systematically for the payment of definitely determinable benefits to his employees over a period of years, usually for life, after retirement. The regulations provide further, however, that a plan is not a pension plan if it provides for the payment of benefits not customarily included in a pension plan such as layoff benefits or benefits for sickness, accident, hospitalization, or medical expenses, except as described in section 401(h).

Section 411(a)(8) of the Code defines "normal retirement age" as the earlier of (1) the time a plan participant attains normal retirement age under the plan, or (2) the later of (a) the time a plan participant attains age 65, or (b) the tenth anniversary of the time a plan participant commences participation in the plan.

Section 411(a)(9) of the Code defines "normal retirement benefit" as the greater of the early retirement benefit under the plan, or the benefit under the plan commencing at normal retirement age. The normal retirement benefit shall be determined without regard to medical benefits and disability benefits not in excess of the qualified disability benefit.

Rev. Rul. 71-24, 1971-1 C.B. 114, provides that normal retirement age is the time from which definitely determinable benefits under a pension plan become fixed and payable. An employee who has reached such age and has fulfilled the service requirement and other uniformly applicable provisions of the plan must be permitted to retire and to commence receiving the benefits payable thereunder. Arrangements, however, may be mutually made for continued employment beyond normal retirement age. In such event, provision may be made with respect to the treatment of the pension benefits such as, for example, payment as though the employee had actually retired, deferment to actual retirement without increment for the interval between the normal retirement date and actual retirement, or actuarial equivalent on actual retirement of the benefit at normal retirement age. Whatever provisions are made, however, must be uniformly applied to all participants.

Rev. Rul. 71-147, 1971-1 C.B. 116, provides that ordinarily the normal retirement age under a pension or annuity plan is the lowest age specified in the plan at which the employee has the right to retire without the consent of the employer and receive retirement benefits based on service to date of retirement at the full rate set forth in the plan. Ordinarily, the normal retirement age under pension and annuity plans is 65, but a different age may be specified provided that if it is lower than 65 it represents the age at which employees retire in the particular company or industry and is not a device to accelerate funding. This revenue ruling was subsequently modified by Rev. Rul. 78-120, 1978-1 C.B.117 and superseded by Rev. Rul. 80-276, 1980-1 C.B. 276. In both of those rulings, changes were made, in view of the enactment of the Employee Retirement Income Security Act of 1974 to allow an employer to designate a normal retirement

age.

  In this case, Plan X provides that a member who has attained normal retirement age, which is age 60, and who has five or more years of creditable service may retire and receive the retirement allowance at the full rate specified in Section 51.1-206A.1 of Statute P.

  Section 51.1-205A, as amended by Statute R, in pertinent part, provides that a member in service who elects to retire at age sixty (60) with five (5) or more years of creditable service may continue to receive a retirement allowance notwithstanding that such person is employed as a Group B Employee or as an employee, as defined in section 51.1-124.3, of Department D for a period of up to one year. Section 1.51-206D, as added by Statute R, provides, in pertinent part, that if a member meeting the requirements of subsection A elects to receive a service retirement allowance while still employed, then his service performed and compensation received while receiving such retirement allowance shall not increase, decrease, or affect in any way his retirement benefits before, during, or after the payment of such retirement allowance.

  Statute P provides that upon retiring at his normal retirement age, a member's retirement allowance commences in the form of monthly annuity payments. Statute P further provides that a member may elect to retire at his or her normal retirement age and receive a service retirement allowance. Statute R, in part, allows these members to commence distribution of such service retirement allowance while those members are still employed. The service retirement allowance at normal retirement age payable to a member who retires at normal retirement age is the full rate as specified in Plan X and is not affected (neither increased nor decreased) by the service performed or the compensation earned subsequent to attaining normal retirement age.

  The prohibition against in-service distributions in a pension plan is consistent with the purpose of a pension plan, i.e., to provide, primarily, retirement benefits at retirement. Here, the normal retirement age is not a subterfuge to avoid this prohibition. In fact, covered employees typically retire earlier than age 60.

  The provision of section 51.1-205A of Statute R that is the subject of this ruling continues to ensure that the distribution provisions of Plan X are consistent with the purpose of a pension plan because the benefits that are payable to a Group B Employee who elects to retire upon attainment of age 60 or older with five or more years of creditable service is the full benefit the employee is entitled to receive from Plan X notwithstanding that such employee continues to be employed in a position covered by Plan X and such date is later than when covered employees typically retire.

  Based on the foregoing, we conclude that if a distribution of the service allowance begins to be paid to a member upon his or her reaching normal retirement age (age 60) with five (5) years of service while the member is still employed, such payment from Plan X will not violate the rule against in-service distributions from a pension plan. (Note that because this distribution option will commence only after the attainment of age 60, there is no issue with respect to the additional tax imposed by section 72(t) of the Code).

  This ruling is conditioned on Plan X otherwise satisfying the requirements of Code section 401(a). Further, this ruling is limited to members of Plan X who elect to retire at their normal retirement date, as defined in Plan X, and whose retirement service allowance is the full rate as determined under section 51.1-205A of Plan X.

  This ruling is directed only to the taxpayer who requested it. Section 6110(k)(3) of the Code provides that is may not be used or cited by others as precedent.

  A copy of this letter is being sent to your authorized representative pursuant to a power of attorney on file in this office.

  If you have any questions concerning this ruling, please contact *** SE:T:EP:RA:T:2, at ***

Sincerely yours,

Joyce E. Floyd

Manager Employee Plans Technical Group 2

Enclosures:

Deleted copy of this ruling

Notice of Intent to Disclose

This document may not be used or cited as precedent. Section 6110(j)(3) of the Internal Revenue Code.

END OF DOCUMENT