## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TIMOTHY D. LAURENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 05-1291 (PLF) |
| vs. | ) | |
| | ) | Judge Paul L. Friedman |
| PRICEWATERHOUSECOOPERS LLP, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANTS' MOTION TO
## <u>DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT</u>

David E. Mendelson (471863)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005-5793
(202) 879-5000 (phone)
(202) 879-5200 (fax)
dmendelson@kirkland.com

Robert J. Kopecky
Douglas G. Smith
Lauren O. Casazza
Jason W. Callen
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000

Counsel for Defendants

Dated: September 16, 2005

# TABLE OF CONTENTS

Page(s)

ARGUMENT ........................................................................................................2

I.      Counts One Through Nine Are Time-Barred. ...................................................2

II.     Counts One Through Three Fail Because The Plan's Normal Retirement Age Is Valid.......................................................................................................................5

      A.      Plaintiff Has Not Shown That The RBAP'S Normal Retirement Age Is Invalid. ......................................................................................................6

      B.      Count One Fails Because Plaintiff's Lump Sum Payment Was Correctly Calculated. ................................................................................................8

      C.      Counts Two and Three Fail Because RBAP Benefits Are Not Reduced Based On Age. ........................................................................................10

III.    Count Four Fails To State A Claim Because Benefits Under the RBAP Are Not Backloaded............................................................................................................12

IV.     Count Five Fails To State A Claim Because Plaintiff Did Not Suffer A Forfeiture Of Benefits. ..........................................................................................................15

V.      Counts Six and Eight Fail To State A Claim For Violation Of Internal Revenue Code Provisions. ................................................................................................17

VI.     Count Seven Fails To State A Claim Under ERISA § 510 Based On The Design And Administration Of The RBAP..................................................................20

VII.    Count Nine Fails To State A Claim Because ERISA § 204(g) Does Not Apply Where A Plan Has Not Been Amended..............................................................21

VIII.   Plaintiff Lacks Standing To Assert The Claims In Counts Ten And Eleven And Neither Count States Any Viable Claim For Relief Under ERISA. ...................23

CONCLUSION....................................................................................................25

Plaintiff's brief in opposition, like his First Amended Complaint, relies heavily on rhetoric and pejorative characterizations in attempting to convince this Court he has stated a claim under ERISA. While the well-pleaded facts of the Complaint must be accepted as true for purposes of this motion, legal conclusions, characterizations and unsupported inferences need not be. *See Armstrong v. Vance*, 328 F. Supp. 2d 50, 53 (D.D.C. 2004). Plaintiff asserts that "PwC does not and cannot challenge a single one of the Complaint's factual allegations" concerning PwC's allegedly illegal scheme (Pl. Mem. 4), and repeatedly states falsely that PwC "concedes" various facts or legal assertions accepted as true solely for purposes of this motion. PwC does, however, vigorously dispute many of the factual allegations and virtually all of the legal conclusions in the Complaint.

Plaintiff also fills his brief with attacks on PwC that are irrelevant to the legal basis for his Complaint – ERISA. Thus, he asserts that PwC somehow tricked the IRS into approving the PwC plans as "tax qualified." (*E.g.*, Pl. Mem. 2, 3, 4, 5, 9 n.18) And he repeatedly attacks PwC for alleged "income discrimination scheme" and "class discrimination" among PwC partners, directors and other employees (*E.g.*, Pl. Mem. 3, 4, 5 n.7), because PwC sought to maximize the tax benefits available under the Tax Code and provided greater benefits to partners than to rank-and-file employees. Nothing in ERISA, however, requires income redistribution between owners of a firm and its employees. As the Supreme Court has emphasized, ERISA "does not itself proscribe discrimination in the provision of employee benefits." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983).

The issue for this motion is whether plaintiff has stated any claim for relief under any provision of ERISA. Plaintiff has made resolution of that issue more difficult by refusing – first in his Complaint and again in his opposition brief – to specify which of ERISA's various remedial provisions form the basis for each of his eleven separate claims. Putting aside

plaintiff's bluster and rhetoric, and cutting through his contortions of the statute to manufacture a violation, plaintiff has not stated a viable claim for relief under ERISA.

## ARGUMENT

### I.    Counts One Through Nine Are Time-Barred.

Plaintiff does not dispute the essential premises of defendants' statute of limitations argument.  First, he does not dispute that Counts One through Nine of the Complaint assert claims for benefits under ERISA, for which ERISA specifies no statute of limitations.  Second, he does not dispute that the statute of limitations for such claims is borrowed from the most closely analogous state law limitation period in the forum state.  Third,  he does not dispute that the District of Columbia's three-year limitation period for breach of contract suits applies to these claims.  *See*, *e.g.*, *Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 341 (D.C. Cir. 1991); *Estate of Grant v. U.S. News & World Report, Inc.*, 639 F. Supp. 342, 347 (D.D.C. 1986).  Finally, plaintiff does not dispute that he received an allegedly inadequate lump sum distribution of his accrued benefit under the RBAP more than three years before he commenced this action.

Plaintiff's sole argument against dismissal is that *his claim for benefits did not accrue until PwC filed a motion to dismiss his claim* – either in this Court or in the prior action he filed in the Southern District of Illinois.[1]  (Pl. Mem. 44)  Plaintiff does not dispute that federal

---

[1] In a footnote, plaintiff states he "would contend" that the pendency of his prior suit in the Southern District of Illinois tolled the statute of limitations period.  (Pl. Mem. 44 n. 73)  Plaintiff does not actually make this contention – nor could be, since the law of this circuit is squarely to the contrary.  Plaintiff's prior suit, originally filed on November 5, 2004, was dismissed without prejudice because venue was not proper under 29 U.S.C. § 1132(e).  (*See* Cmplt. n.1)  Under such circumstances, the statute of limitations was not tolled.  In *Dupree v. Jefferson*, 666 F.2d 606, 611 (D.C. Cir. 1981), the court held unequivocally that, where a District of Columbia statute of limitations applies, "the pendency of an action involuntarily dismissed without prejudice does not operate to toll the running of the statute of limitations."  *See also Carter v. Washington Metro. Area Transit Auth.*, 764 F.2d 854, 856 (D.C. Cir. 1985) (same); *Wilson v. Prudential Fin.*, 2004 WL 2451412 at *6 n.4 (D.D.C. Oct. 18, 2004) (unpublished).  Plaintiff's citation of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), does not support his position.  There, the Supreme Court held that where class certification is denied, the commencement of the original suit "tolls the running of the statute for all purported members of the class who make timely motions to intervene" after denial of class certification.  *Id*. at 553.

courts apply the "discovery rule" for commencement of limitations periods on ERISA claims. *See Connors*, 935 F.2d at 342 (collecting cases). Thus, plaintiff necessarily asks this Court to rule that he did not discover his claims for benefits, which are alleged unequivocally in his 82-page Complaint, until PwC filed a motion to dismiss those claims. The cases plaintiff cites for this theory of accrual do not support it. To the contrary both the controlling cases in this circuit cited in defendants' opening brief and decisions cited in plaintiff's own brief refute his argument.

In *Connors*, the D.C. Circuit noted the general rule that plaintiff discovers a breach of contract, and that a claim for such breach accrues, at the time he suffers injury. 935 F.2d at 342. "A court will therefore impute such awareness to the plaintiff and hold that the limitations period commenced at the time of injury, *even if the plaintiff protests that she did not in fact become aware of the injury when it occurred.*" *Id*. (emphasis added). Plaintiff dismisses *Connors* as a case involving "just another multiemployer plan trustee chasing yet another delinquent employer." (Pl. Mem. 45 n.75) Nothing in *Connors*, however, suggests its analysis does not apply to claims for benefits, which are also governed by the three-year limitation period for breach of contract actions. *Estate of Grant*, 639 F. Supp. at 347.

One of the cases plaintiff cites in his brief for a different point squarely supports dismissal on this ground. *Laurenzano v. Blue Cross & Blue Shield of Mass., Inc. Ret. Inc. Trust*, 134 F. Supp. 2d 189, 207-11 (D. Mass. 2001). In *Laurenzano*, plaintiff brought a class action alleging that lump sum distributions of retirement benefit were too small because they did not include the present value of post-retirement COLA adjustments. *Id*. at 190. Borrowing the applicable state-law contract statute of limitations, the court ruled that "each class member's cause of action accrued when he received his lump sum distribution *unless* he sought internal remedies." *Id*. at 210 (emphasis in original). The court found that the named plaintiff's claim was not time-barred because he chose to pursue his administrative remedies under the plan,

which tolled the statute while that process was pending. *Id.* But the court reiterated that an ERISA claim to recalculate lump sum benefit payments "*accrues upon distribution of the benefits, unless the participant chooses to seek internal remedies*, in which case the cause of action accrues upon exhaustion of the internal remedies." *Id.* at 211 (emphasis added).

Here, plaintiff does not allege that he pursued any internal remedies claiming that his distribution was too small. To the contrary, plaintiff affirmatively alleges he was not required to pursue or exhaust any such administrative remedies under the Plan. (Cmplt. ¶ 16) Whether or not plaintiff is correct that he was not *required* to pursue administrative remedies challenging his allegedly inadequate distribution, that he elected not to do so means his claim accrued at the time he received that payment. *See Laurenzano*, 134 F. Supp. 2d at 211.

Plaintiff seeks to avoid this result by relying on cases that do not involve application of the statute of limitations to ERISA claims. (Pl. Mem. 44-45) Principal among these is *Kosty v. Lewis*, 319 F.2d 744 (D.C. Cir. 1963), a Taft-Hartley Act case that pre-dates ERISA and thus is not, as plaintiff contends, "controlling" in a case under ERISA. Even if *Kosty* were relevant, however, it does not support his argument. Plaintiff in *Kosty* made a claim for pension benefits that was denied on the ground he had insufficient years of service to qualify for a pension. *Id.* at 746-47. Plaintiff disputed this determination and attempted to convince his employer he did qualify. *Id.* Defendant undertook at least three different investigations of his claim and still had not closed that administrative review process at the time plaintiff filed suit. *Id.* at 750. It was under these particular circumstances – the existence of ongoing administrative review – that the court concluded defendant had not "repudiated" plaintiff's claim at the time he filed suit. *Id.* That holding does not help plaintiff here because, unlike plaintiff in *Kosty*,

Laurent does not allege he ever commenced any administrative review process challenging the lump sum distribution he received in May 2002.[2]

In sum, it is apparent from the face of the Complaint that plaintiff's claims for benefits in Counts One through Nine accrued when he received his lump sum payment and are barred by the three-year statute of limitations. Plaintiff has cited no case law that even arguably supports a different conclusion, and his proposed accrual date – *after* he filed suit – would render the statute of limitations nugatory by allowing a plaintiff to defer accrual of his claim until he elects to file suit.

## II. Counts One Through Three Fail Because The Plan's Normal Retirement Age Is Valid.

Defendants demonstrated in their opening brief that the RBAP's definition of normal retirement age is authorized by ERISA's unambiguous language and by the IRS rulings and caselaw interpreting that statute. Plaintiff does not respond to these arguments in his opposition brief, but instead asserts that his arguments on this point "are spelled out at length in the Complaint and in his brief in support of his pending motion for partial summary judgment." (Pl. Mem. 9) Plaintiff's attempt to incorporate arguments from a separate 45-page brief is an improper effort to circumvent this Court's page limitations and should be rejected. *See Martin v. Howard Univ.*, 2003 WL 22383031, at *13 (D.D.C. Oct. 20, 2003) (unpublished). As discussed

---

[2] The other decisions plaintiffs cite are even less helpful to his arguments. *Cobell v. Norton*, 260 F. Supp. 2d 98 (D.D.C. 2003), was a claim for mismanagement of Individual Indian Money trust accounts, not an ERISA claim. The court's references to ERISA cases are thus dicta. And *Chao v. Trust Fund Advisors*, 2004 WL 444029, at *1 (D.D.C. Jan. 20, 2004) (unpublished), which *was* an ERISA case, did not involve any statute of limitations issue, but instead, discussed application of the standard of review for plan fiduciaries alleged to have breached their duties in managing plan assets. *Id*. The only ERISA statute of limitations decision plaintiff cites, other than his passing reference to *Connors*, is *Romero v. Allstate Corp.*, 404 F.3d 212 (3d Cir. 2005). (Pl. Mem. 45 n.75) *Romero* reiterates the general discovery rule that "a claim will accrue when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." 404 F.3d at 222. The court noted that a claim may sometimes accrue *earlier* than this, even before plaintiff has made application for benefits and suffered an injury, if there has been a "clear repudiation" of the benefits by the fiduciary. *Id*. at 222-23. The court also ruled that accrual could be extended beyond the date of injury caused by the adverse effects of a plan amendment that "cannot be known until some later event." *Id*. at 223. Plaintiff's Complaint here alleges no such facts.

below, the five-year normal retirement age in the RBAP is valid under ERISA and is fatal to plaintiff's claims in Counts One, Two and Three.

### A.     Plaintiff Has Not Shown That The RBAP'S Normal Retirement Age Is Invalid.

ERISA expressly provides that "normal retirement age" can be the "time a plan participant attains normal retirement age under the plan." 29 U.S.C. § 1002(24). That provision does not place any limits on the age employers may specify in a plan. Neither the allegations of plaintiff's Complaint nor his brief in response to defendants' motion provide any persuasive authority supporting his claim that: (1) "normal retirement age" as defined in a plan must correspond to the age at which employees customarily leave the workforce; (2) normal retirement age cannot be defined by a period of service; and (3) language in the RBAP's summary plan descriptions supercedes the Plan document's definition of normal retirement age.

*First*, plaintiff suggests that the "normal retirement age" defined in the RBAP is "fictitious," and thus invalid, because employees do not in fact normally "retire" after working for five years. (Pl. Mem. 8) By choosing to define this term in the statue, however, Congress evinced its intent *not* to rely on its every day meaning. As defendants pointed out in their opening brief, the IRS has interpreted "normal retirement age" as used in the Tax Code to provide employers flexibility to "specify ***any age*** that is less than 65 as the normal retirement age." *See* Rev. Rul. 78-120, 1978 WL 42312 (1978) (emphasis added). In Revenue Ruling 78-120 the IRS explained that its previous interpretations, which had linked "normal retirement age" in a tax-qualified plan to the age at which employees customarily retired, were superceded by ERISA.[3] The IRS explained that, after ERISA's enactment and the corresponding changes to the

---

[3] The IRS has repeatedly stated that its pre-ERISA discussion of normal retirement age has been superceded by a series of revenue rulings that include Revenue Ruling 78-120, and that these "changes were made, in view of the enactment of the Employee Retirement Income Security Act of 1974, to allow an employer to designate a normal
(Continued…)

Tax Code, there was an "*absence of any statutory prohibition or limitation*" on a plan's definition of normal retirement age.  *See* Rev. Rul. 78-120  (emphasis added).

*Second*, plaintiff has provided no authority to support his claim that the RBAP's normal retirement age is invalid because it specifies a period of time (5-years of service) rather than a specific "age."  (Cmplt. ¶ 109)  As defendants explained in their opening brief, employers may define as "normal retirement age" a specific number of years of service completed by an employee, which necessarily specifies an age for each participant.  *See Ryan v. Asbestos Workers Union Local 42 Pension Fund*, 2002 WL 90976, at *3-5 (3d Cir. 2002) (unpublished).  This is consistent with the statutory definition of normal retirement age as "the *time* a plan participant attains normal retirement age under the plan."  Plaintiff has cited no contrary authority.

*Finally*, plaintiff argues that the RBAP's normal retirement age definition  should be discarded based on language in the RBAP's summary plan description that allegedly suggests that the normal retirement age is 65.  (Pl. Mem. 10)  This argument is equally unavailing. Plaintiff admits that in order for the language in the summary plan descriptions to possibly control, he must first show that it conflicts with the plan's definition of normal retirement age. (*Id*)  But as defendants demonstrated in their opening brief, the language he points to cannot reasonably be read to conflict with that definition or to have misled participants into thinking that the Plan's normal retirement age was 65.[4]  Therefore, the cases on which he relies – all of which

---

retirement age **without having to show that it represents the age at which employees customarily retire or that it coincides with retirement or severance of employment**."  (emphasis added).  *See, e.g.*, IRS Tech. Adv. Memo. 8808006, 1987 WL 436015 (Nov. 27. 1987); IRS Tech. Adv. Memo. 8808005, 1987 WL 436014 (Nov. 27. 1987). While technical advice memoranda and private letter rulings are not binding precedent, 26 U.S.C. § 6110(k)(3), the Supreme Court has stated that "such rulings do reveal the interpretation put upon the statute by the agency charged with the responsibility of administering the revenue laws."  *See Hanover Bank v. C.I.R.*, 369 U.S. 672, 686 (1962); *see also Wells Fargo & Co. and Subsidiaries v. C.I.R.*, 224 F.3d 874, 886 (8th Cir. 2000) (private rulings "may provide evidence of the proper construction of the statute").

[4] Plaintiff fails to cite any authority supporting his purported reliance on SPDs issued after he received his lump-sum payment and cashed out of the RBAP.  This is not surprising given that the reason the SPDs have been held to
(Continued…)

require a conflict between the summary plan description and plan documents – are inapposite.[5]

(*See* Pl. Opp. 10 (citing cases))

In sum, plaintiff's claim that the RBAP's normal retirement age is invalid lacks support either in the statute itself, or in the caselaw and IRS interpretations of the statutory definition. Plaintiff would have this Court insert a restriction on plan sponsors that Congress chose not to include in the statute.

**B.    Count One Fails Because Plaintiff's Lump
Sum Payment Was Correctly Calculated.**

Plaintiff's claim in Count One depends on his argument that the RBAP was required to perform a "whipsaw calculation" in computing the amount of his lump sum payment. But as defendants demonstrated in their opening brief, such a calculation is required *only* if such a distribution is made *before* a participant reaches normal retirement age. (*See* Def. Mem. 15-16) ERISA defines a participant's accrued benefits as a benefit "expressed in the form of an annual benefit commencing *at normal retirement age*," 29 U.S.C. § 1002(23)(A) (emphasis added), and this definition serves as the basis for any required "whipsaw calculation." *See Esden v. Bank of Boston*, 229 F.3d 154, 163 (2d Cir. 2000). Plaintiff has not cited any statute, regulation, or judicial decision requiring that benefit projections be performed after a participant reaches normal retirement age. Because plaintiff reached normal retirement age under the Plan before

---

sometimes control is because participants are likely to have read and relied on those documents to their detriment. *See Health Cost Controls of Ill., Inc. v. Washington*, 187 F.3d 703, 711 (7th Cir. 1999).

[5] Plaintiff arguments also fail because he does not allege that he detrimentally relied on the SPDs or was prejudiced by their terms. Plaintiff incorrectly suggests that these required showings do not apply to claims that the SPD controls in a conflict with the plan documents. (Pl. Opp. at 11) As defendants pointed out in their opening brief, a majority of circuit courts impose these requirements when faced with arguments that the SPD controls. (Def. Mem. 14 n.9) Plaintiff's citation to *Whiteman v. Graphic Comm. Int'l Union Supp. Retirement & Disability Fund*, 871 F. Supp. 465, 467 (D.D.C. 1994) is unavailing because the court there implicitly recognized that the plaintiff was prejudiced by the SPD's terms, noting that those terms "would lead a Plan member to conclude…[that they] would be fully eligible for both retirement and disability payments: when in fact they were not."

requesting a lump sum payment, and because the Plan's normal retirement age is valid, the Plan was not required to project his account balance forward to age 65.

Plaintiff nevertheless claims that, even if the RBAP's normal retirement age is valid, such calculations are required because the RBAP permits participants to earn interest credits past normal retirement age and up to age 70½ (the age at which the Tax Code requires participants to begin taking benefits) if they do not take a distribution from the Plan when they terminate employment. But as defendants pointed out in their opening brief, the Complaint does not allege there is anything unique about the Plan's age 70½ feature (Def. Mem. 17 n.11), and plaintiff has cited no authority holding that such a provision requires projections to age 70 ½.

The cases plaintiff cites involving plan-mandated cost of living adjustments do not support his argument. Contrary to plaintiff's argument, these cases do not suggest that the RBAP's age 70½ feature is part of a participant's accrued benefit.[6] Such "COLA" provisions differ from the RBAP's 70½ feature in two relevant ways. *First*, unlike the age 70½ feature, these provisions were linked to those plans' normal retirement age annuity, which served as the foundation for the statutory definition of "accrued benefit." *Second*, these cost-of-living adjustments were guaranteed under the plans at issue in these cases. *See, e.g., Shaw*, 750 F.2d at 1464. As plaintiff recognizes, the right to earn interest credits under the RBAP after a participant's normal retirement age is, in contrast, expressly made contingent on the participant not receiving a distribution of his benefit. Once a participant in the RBAP severs employment with PwC after attaining normal retirement age and receives a lump sum payment of his benefit, he no longer has any right to a future increase in his benefit.

---

[6] *Hickey v. Chicago Truck Drivers, Helpers & Warehouse Workers Union*, 980 F.2d 465, 467-69 (7th Cir. 1992); *Shaw v. Int'l Ass'n of Machinists and Aerospace Workers Pension Plan*, 750 F.2d 1458, 1464 (9th Cir. 1985) ("living pension" feature guaranteed unconditionally and similar in form to cost of living adjustment); *Laurenzano*, 134 F. Supp. 2d at 200; *Kohl v. Ass'n of Trial Lawyers of America*, 183 F.R.D. 475, 481 (D. Md. 1998).

## C.    Counts Two and Three Fail Because RBAP Benefits Are Not Reduced Based On Age.

Plaintiff does not, and cannot, dispute that the amount of pay and investment credits RBAP participants earn in a given year are in no way dependent on age. If a 25-year-old and a 55-year-old join the RBAP on the same day, earn the same pay, make the same investment elections, and withdraw their accounts after the same period of service, they will both earn *exactly the same amount* of benefits under the RBAP. Plaintiff's age discrimination claims therefore depend on projections of participant account balances to age 65 or beyond that are not required by the provisions of the Plan and the relevant provisions of ERISA.

As a threshold matter, such projections are not necessary given that the RBAP's normal retirement age is not age 65. Based on the validity of the Plan's normal retirement alone, plaintiff's claims in Counts Two and Three fail.[7] But even if normal retirement age under the RBAP were 65, plaintiff's age discrimination claims under both counts still fail. Plaintiff falsely claims that defendants "concede there would be a potential age discrimination problem" if the RBAP's normal retirement age were 65. (Pl. Mem. 18, 21) To the contrary, defendants explained in their opening brief why plaintiff's age discrimination claims fails no matter what normal retirement age is used. (Def. Mem. 19-21) While plaintiff contends that ERISA and "indisputable mathematics" support his claim (Pl. Mem. 23), a majority of courts have rejected his arguments in Count Three and not a single regulation or case supports those in Count Two.

Plaintiff belittles the courts that have rejected his arguments in support of Count Three by speculating they were persuaded by misleading arguments. (Pl. Mem. 22-23) Both

---

[7] Plaintiff's argument that his claims survive even under the Plan's five-year normal retirement age rests solely on his contention that the RBAP is required to perform forward-looking projections to age 70½. (Pl. Mem. 19, 25-26) But as explained above, nothing in the statute, regulations, or caselaw covering "whipsaw calculations" - let alone those addressing ERISA's age discrimination rules - requires such projections.

courts, however, relied on the statutory text as well as common sense in finding that the arguments advanced by plaintiff are totally without merit. *See Tootle v. ARINC, Inc.*, 222 F.R.D. 88, 93-94 (D. Md. 2004); *Eaton v. Onan Corp.*, 117 F. Supp. 2d 812, 829-834 (S.D. Ind. 2000).[8] Each decision explains the fatal flaws in plaintiff's arguments, which are supported solely by reference to *Cooper v. IBM Personal Pension Plan*, 274 F. Supp. 2d 1010 (S.D. Ill. 2003), a decision currently on appeal in the Seventh Circuit.  (See Ex. 1, 8/30/05 Notice of Appeal)

While plaintiff claims the phrase "rate of benefit accrual," as used in ERISA § 204(b)(1)(H) (29 U.S.C. § 1054(b)(1)(H)), must be defined in terms of an age-65 annuity, both *Eaton* and *Tootle* recognized that the phrase is not defined in ERISA and that nothing in the statute compels this conclusion.  Indeed, other provisions within ERISA suggest that the phrase as used in ERISA's age discrimination rules should *not* be interpreted to refer to the rate of increase in an age-65 annuity.[9]  Moreover, as pointed out in *Eaton*, interpreting "rate of benefit accrual" in the manner requested by plaintiff would also be inconsistent with the statute's legislative history.  *See Eaton*, 117 F. Supp. 2d at 830, *citing* H.R. Conf. Rep. 99-1012, 1986

---

[8] Plaintiff's attempt to distinguish the holding of *Lunn v. Montgomery Ward Co.*, 166 F.3d 880, 883 (7th Cir. 1999), based on the fact the case involved a "floor-offset" arrangement is meritless.  (Pl. Opp. 22 n. 39)  The Court rejected suggestions that the rate of benefit accrual in the pension plan at issue was reduced because of age, and it did not suggest that the companion contribution plan and "floor-offset" provision were relevant to this holding.  *Lunn*, 166 F.3d at 883.

[9] For example, ERISA's anti-backloading rules apply based on the "annual rate" at which participants can "accrue the retirement benefits *payable at normal retirement age*."  29 U.S.C. § 1054(b)(1)(B) (emphasis added).  Thus, when Congress wanted to tie the rate of accrual to an age-65 annuity, it did so expressly in the statute.  Congress' failure to do so in Section 204(b)(1)(H) strongly suggests that the phrase "rate of benefit accrual" is not so limited. In addition, ERISA provides that the "rate of benefit accrual" rule is not violated when any early retirement subsidy is disregarded in determining benefit accruals.  29 U.S.C. § 1054(b)(1)(H)(vi).  But it has long been understood that an accrued benefit expressed as an age-65 annuity excludes any early retirement subsidies.  *See* Treas. Reg. § 1.411(a)-7(a)(1)(ii) (defining accrued benefit and noting that "a subsidized early retirement benefit which is provided by a plan is not taken into account").  Plaintiff's reading of "rate of benefit accrual" to refer to an age 65-annuity would render this provision wholly superfluous.  *Eaton* also pointed to a series Treasury regulations all using the phrase "rate of benefit accrual" in a variety of different ways, thus showing the phrase has no single established meaning in pension law.  *See* 117 F. Supp. 2d at 830 n.8.

U.S.C.C.A.N. 3868, 4026 (Oct. 17, 1986) (example used by Congress would be illegal under plaintiff's age discrimination theory).

Plaintiff's arguments in support of Count Two are similarly flawed. Defendants demonstrated that the "reductions" he complains of – to the extent any actually occur – were the result of the RBAP's investment credits and not due to participants' age. Plaintiff attempts to get around this fundamental flaw by assuming a 0% rate of return in a single year on a participant's investment selections. (Pl. Mem. 17-18) But once again, plaintiff's example illustrates that any "reduction" is "on account of" the investment crediting rate. *See* 29 U.S.C. § 1054(b)(1)(G). The "reduction" of which plaintiff complains occurs not because the participant has aged, but because the investment crediting rate is assumed to have been 0% and accordingly his account balance one year later does not reflect an increase from investment credits.

Plaintiff has not cited any regulation or case that suggests this type of reduction is "on account of age." Despite his protests to the contrary (Pl. Opp. 19 n. 35), acceptance of plaintiff's theory would mean that almost all cash balance plan's violate ERISA.[10] Plaintiff has provided no authority requiring this Court to adopt such a reading of the statute that would lead to the invalidation of numerous cash balance pension plans across the country.

### III.   Count Four Fails To State A Claim Because Benefits Under the RBAP Are Not Backloaded.

As plaintiff recognizes (Pl. Mem. 27-28), Count Four is a reversal of the theory espoused in Counts Two and Three. The two prior counts allege the RBAP discriminates against

---

[10] Plaintiff notes that many, if not most, cash balance plans have interest crediting rates tied to Treasury securities which are variable. (Pl. Mem. 19 n.35) The fact that the interest crediting rate in these plans could drop from one year to the next means that accounts in all of these plans could experience the alleged "reduction" of which plaintiff complains. If such a Treasury security rate drops, the participant's projected account balance would drop, as demonstrated in plaintiff's hypothetical example. (Pl. Mem. 19 n.35) In fact, under plaintiff's theory, all plans with interest crediting rates tied to the 30-year Treasury rate violate ERISA because such a drop has indeed occurred. For example, the rate was 5.71% in March 2002 and 4.80% in March 2003. *See Pension and Profit Sharing 2d,* Volume 8, ¶ 180,015 (RIA 2005).

older participants based on age, while Count Four alleges the Plan also illegally "backloads" benefits in favor of older participants under some circumstances. Apart from this inconsistency, neither the allegations of the Complaint nor the arguments in plaintiff's brief support a claim that the RBAP is impermissibly backloaded in violation of ERISA § 204(b), whether or not the RBAP's normal retirement age is valid.

*First*, the RBAP is not impermissibly backloaded as a result of the opportunities afforded by participants in the Plan to select their own investment returns. Plaintiff claims that because the rate of benefit accrual under the RBAP includes the value of participant-directed investment credits, which are unpredictable, it is impossible for the RBAP to demonstrate compliance with the benefit accrual rules each year. (Cmplt. ¶ 159) As defendants explained in their opening brief (Def. Mem. 23-24), the investment crediting feature of the RBAP would be a "relevant factor" that must be held constant when determining whether the RBAP complies with ERISA's anti-backloading requirements. *See* 29 U.S.C. § 1054(b)(1)(B)(iv). When the investment crediting rate is held constant as required by ERISA, the mere possibility of high investment returns in some future year is irrelevant in determining whether the RBAP complies with ERISA's anti-backloading rule.

Similarly, the RBAP does not violate ERISA's anti-backloading rule by increasing benefits when a PwC employee is admitted to the partnership. As plaintiff's brief acknowledges (Pl. Mem. 29), ERISA and the Code permit multiple formulas in a defined benefit plan. Thus, when determining whether the RBAP, satisfies the anti-backloading rule, ERISA and the Code require that *employment status*, which is a relevant factor to determine benefit accruals under the plan formulas, remain constant – *i.e.*, an employee always be assumed to be an employee and a partner always be assumed to be a partner.

Plaintiff has no plausible argument that the RBAP's investment crediting feature and a participant's status as a partner, director or other employee of PwC were not "relevant factors" in determining that person's benefits.[11]  Instead, he contends that the term "factors" in the statutory language that requires "all other relevant factors" remain constant refers only to "external variables that are plugged into the benefit formula established under the plan."  (Pl. Mem. 29, 30 n.52)  Even accepting that only "external variables" must remain constant in testing for backloading, the performance of each investment fund is an "external variable" in the same way as are Social Security benefits or the consumer price index.  (*See* Pl. *Id*. 29)

Nor does PwC's ability to change the "menu of investments" or admit an employee to the partnership mean the specific investment options or one's employment status are not external factors.  Like a participant's salary, which plaintiff's own cited case acknowledges is an "external factor" that must remain constant for backloading purposes, *Carollo v. Cement and Concrete Workers Dist. Council Pension Plan*, 964 F. Supp. 677, 682-83 (E.D.N.Y. 1997), employment status or investment benchmarks are similarly external factors.  This is the case even if, like any employee's salary, they may be changed by the employer.

Finally, the RBAP is not impermissibly backloaded as a result of the $7,000 guaranteed benefit provided to employees.  Plaintiff mischaracterizes the $7,000 guaranteed benefit by claiming that the net effect of this guarantee is that employees do not accrue a benefit under their RBAP until their account exceeds $7,000.  (Cmplt. ¶ 158, Pl. Mem. 29)  That is not what the RBAP says or how it operates.  Under the RBAP's benefit formula, employees receive an annual credit under the RBAP regardless of whether their RBAP account is greater than or

---

[11] Plaintiff misconstrues defendants brief as claiming that the formula itself is the "relevant factor."  As defendants explained in their opening brief (and as the Complaint itself describes in paragraph 157), however, the "relevant factor" at issue here, and the one that defendants state must remain constant, is a participant's *employment status*.

less than $7,000.  (Def. Mem. Ex. C §§ 2.13, 2.15)  The rate of accrual does not increase based on length of service, regardless of the $7,000 guarantee, and therefore satisfies ERISA and the Code's anti-backloading provisions.[12]

### IV.    Count Five Fails To State A Claim Because Plaintiff Did Not Suffer A Forfeiture Of Benefits.

According to plaintiff, the gravamen of his claim in Count Five is that "[t]he *right* to receive future investment credits (at some rate) is a nonforfeitable right that accrues under the RBAP with each pay credit."  (Pl. Mem. 32 (emphasis in original))  As defendants explained in their opening brief, however, investment credits under the Plan do not meet the statutory definition of a "nonforfeitable" right in Section 203(a) because (1) they are independent of one's length of service, (2) they are not "unconditional," but instead are specifically conditioned on the performance of the funds selected by participants, and (3) participants are not legally entitled to any particular investment return enforceable against the RBAP.  (Def. Mem. 24-27)

In his response, plaintiff argues that his "forfeiture" claim is based on the RBAP's alleged failure to provide actuarial increases to participants' accounts after they reach normal retirement age.  This claim fails as a matter of law because he cannot point to any provision of ERISA that requires such increases.  As one appellate court has held:  "ERISA itself indicates that pension benefits need not be actuarially increased for service performed after the normal retirement date…. Therefore, the Plan's failure to actuarially increase benefits to account for the

---

[12] If the $7,000 guaranteed benefit was a separate formula that must be aggregated as plaintiff contends, then it would have the same effect as a "floor-offset" arrangement, which the IRS has determined satisfies the benefit accrual rules of Code § 411(b)(1) (the parallel provision to ERISA § 204(b)(1)).  Plaintiff is also wrong in asserting floor offset arrangements must involve two separate plans.  (Pl. Mem. 30, n.51)  *See, e.g., Berger v. Nazametz*, 157 F. Supp. 2d 998, 1003 and n.2 (S.D. Ill. 2001), *aff'd* 338 F.3d 755 (7th Cir. 2003)  ("[The pension plan] as amended maintains the floor offset-arrangement….[The plan] contained both a defined benefit component and a defined contribution component within a single plan.").

delay in receiving benefits does not constitute a forfeiture of benefits under ERISA § 203(a)." *Atkins v. Northwest Airlines*, 967 F.2d 1197, 1202 (8th Cir. 1992).

Plaintiff's response does not cite any judicial authority holding that ERISA requires actuarial increases after a participant reaches normal retirement age. Plaintiff instead relies solely on Treas. Reg. § 1.401(a)(9)-6, Q&A 9 (Pl. Opp. 31-32), which purports to interpret requirements under IRC § 401(a)(9). Whether or not this regulation could be read as requiring such adjustments for tax qualification purposes, Section 401(a), and the regulations interpreting it, have *not* been incorporated into ERISA. *See* 29 U.S.C. § 1202(c). As discussed in Section V below, a plaintiff may not state a claim under ERISA based on Tax Code provisions or regulations not incorporated into the statute. Thus, this regulation cannot support plaintiff's claim that ERISA requires the performance of actuarial adjustments.

Plaintiff argues that his alleged requirement of actuarial increases after normal retirement age is "derived from" ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3). (Pl. Mem. 32 n.55) But section 204(c)(3) merely states that if a participant's accrued benefit is determined in an amount other than a normal-retirement-age annuity (*e.g.*, as a lump sum payment), that amount must be the actuarial equivalent of such an annuity. This provision does not state that ERISA requires actuarial increases *after* normal retirement age. Further, at least one court has rejected a claim that ERISA requires actuarial increases in benefits after normal retirement age if a "suspension of benefits notice" is not provided to participants (Cmplt. ¶ 164). *See Monks v. Keystone Powdered Metal Company*, 78 F. Supp. 2d 647, 667 and n.32 (E.D. Mich. 2000) (rejecting plaintiff's reliance on proposed Treasury regulation that was never adopted and

provisions of ERISA § 204).  In sum, plaintiff has failed to cite any authority holding that ERISA requires the actuarial adjustments that form the basis of plaintiff's claim in this count.[13]

## V.    Counts Six and Eight Fail To State A Claim For Violation Of Internal Revenue Code Provisions.

Plaintiff concedes that he cannot bring a private cause of action for violation of Tax Code provisions or Treasury regulations.  (*See* Pl. Mem. 4, 33)  And plaintiff does not dispute established Supreme Court precedent holding that a claim for such violations cannot be brought under ERISA absent express incorporation of such standards in the text of the statute. (*See* Def. Mem. 30)  Finally, plaintiff does not dispute that the Tax Code standards upon which he relies in Counts Six and Eight have not been incorporated into ERISA.  (*See id.* at 29) Instead, he attempts to circumvent this established law by arguing that *the Plans* – not the provisions of ERISA under which he brings his claims – "incorporate by reference certain Tax Code standards."  (Pl. Mem. 33)    Plaintiff's argument fails because the RBAP has not "incorporated" the Tax Code provisions on which plaintiff relies.

*First*, the statements in the RBAP upon which plaintiff relies do not support his claim that the RBAP incorporated these provisions of the Tax Code as substantive provisions of the Plan.  The RBAP states that it "is intended [to] … meet the requirements of Sections 401 and Section 501" of the Code and that it should "be interpreted and construed, wherever possible, to comply with the terms of ERISA, the Code, and regulations and rulings issued thereunder."  (*See* Def. Mem. Ex. C, RBAP § 16.6(b); Pl. Mem. 34)  Far from incorporating the Code's non-discrimination and "definitely determinable" regulations, the RBAP merely states, like other tax-

---

[13] Regardless of whether plaintiff's legal theory in this count is correct, he still has not stated a claim under that theory.  Plaintiff does not allege that the investment returns actually credited to his account (based on the measures he selected) from the time he reached normal retirement age until he received his lump sum distribution were "less than the actuarial adjustment required to maintain the value of [his] normal retirement benefits."  (Cmplt. ¶ 167)

qualified benefit plans, that it is intended to meet *IRS* requirements and to be interpreted consistent with those requirements. As explained in defendants' opening brief (Def. Mem. 28-19), such aspirational language cannot reasonably be read as providing a private cause of action for violations of the Tax Code or Treasury regulations. See *Stamper v. Total Petroleum, Inc. Ret. Plan*, 188 F.3d 1233 (10th Cir. 1999).

**Second**, the cases plaintiff cites do not support his argument that a participant has a private cause of action for violation of IRS tax-qualification standards based on reference to those provisions in a plan. In *Vizcaino v. Microsoft Corp.*, 97 F.3d 1187 (9th Cir. 1996), the court did not even address a claim under ERISA (given that the stock option plan at issue was "not subject to ERISA"), but rather a claim for "breach of contract" under state law. *Id.* at 1196-97. Moreover, the issue there did not involve Code's antidiscrimination and "definitely determinable" tax qualification standards, but rather the interpretation of the term "employee" as used in the plan and whether the plan's reference to Section 423 of the Tax Code, which covered all "common-law employees," reflected the employers' "objective intent" to make such employees eligible for participation in the plan. *Id.* at 1197.

The other cases cited by plaintiff are equally inapposite. While the court in *Crouch v. Mo-Kan Iron Workers Welfare Fund*, 740 F.2d 805, 809 (10th Cir. 1984), held that a plan should be interpreted to satisfy the minimum participation rules found in Section 410(a) of the Tax Code, that section of the Code and its regulations (unlike the non-discrimination and definitely determinable standards of the Code) are expressly incorporated into ERISA. *See* 29 U.S.C. §§ 1052(a), 1202(c). Similarly, in *Bruch v. Firestone Tire & Rubber Co.*, 828 F.2d 134 (3d Cir. 1987), the court did not address provisions regarding discrimination or definitely determinable benefits, but rather full vesting upon partial termination, which the Tax Code

expressly requires be included as a provision in the text of a tax-qualified plan.[14]  *Id.* at 151.  In sum, plaintiff has not cited a single case that has upheld a claim under ERISA based on alleged violations of the Tax Code's antidiscrimination or "definitely determinable" rules, which "purport to do no more than determine whether a plan is a qualified tax plan."  *See Abraham v. Exxon Corp.*, 85 F.3d 1126, 1131 (5th Cir. 1996).

       **Finally,** plaintiff falsely asserts that PwC "does not challenge" plaintiff's allegation that the Plans are "violating the law."  (*See* Pl. Mem. 33; *id.* at 38.)  As defendants stated on the first page of their opening brief:  "The terms of the RBAP comply with ERISA in all respects.  The terms of the Plan also comply with the tax-qualification rules of the Internal Revenue Code. . . ."  (Def. Mem. 1)  And PwC emphasized that "the IRS has *never* found that the RBAP or 401(k) Plans are in violation of" the antidiscrimination rules, definitely determinable standards, or indeed, any other provisions of the Tax Code or Treasury regulations.[15]  (*See* Def. Mem. 31)  To the contrary, PwC pointed out that the IRS has issued two determination letters specifically approving the terms of the RBAP (and similar letters regarding the other Plans) – determinations properly within the sole jurisdiction of that agency.  (*Id.*)

---

[14] *See Vornado, Inc. v. Trustees of the Retail Store Employees' Union Local*, 829 F.2d 416, 418 n.2 (3d Cir. 1987) (citing *Bruch* and noting that this provision of the Code's "aim is to force employers to include language favorable to employees in the plan; thus, employees must sue on plan language, not on the statute").  In *Nielsen v. Nobart Color, Inc. Employee Profit-Sharing Plan & Trust*, 1986 U.S. Dist. LEXIS 15978, at *6 n.10 (N.D. Ill. 1986) (unpublished), the court merely stated in dictum that participants could state a breach of fiduciary duty claim against plan trustees if they failed to comply with a provision in the plan requiring them to interpret the plan's forfeiture provision so as to meet Tax Code requirements – again, this opinion said nothing about bringing a private cause of action regarding failure to meet certain requirements for favored tax status.

[15] Plaintiff's assertion that PwC "completely ignore[d]" his allegations in Count Six regarding the 401(k) Plans and that somehow PwC has "waived" some argument as to those Plans is simply false.  (*See* Pl. Mem. 34 n.57)  The second sentence in the section of defendants' brief seeking dismissal of Counts Six and Eight expressly stated that "plaintiff alleges that the contribution formula under the 401(k) Plans and the benefit formula under the RBAP violate 'the Code's nondiscrimination standards'" and "definitely determinable" rule and sought dismissal because "alleged violations of the Tax Code do not provide a basis for a private cause of action."  (Def. Mem. 27)  More importantly, Defendants' motion is not dependent on particular language in each plan that plaintiff cites (*see* Pl. Mem. 34), which plaintiff alleges is "identical" (Cmplt. ¶ 21), but rather is based on established law holding that actions based on the Tax Code and Treasury Regulations cannot be brought under ERISA.

**VI.    Count Seven Fails To State A Claim Under ERISA § 510
       Based On The Design And Administration Of The RBAP.**

As defendants demonstrated in their opening brief, ERISA § 510 makes it unlawful for an employer "to discharge, fine, suspend, expel, discipline, or discriminate against a [plan] participant or beneficiary *for exercising any right to which he is entitled* under [a benefit plan or this title] . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan [or this title]."  29 U.S.C. § 1140 (emphasis added).  As plaintiff acknowledges in his response (Pl. Opp. 36), the D.C. Circuit and other courts of appeal have stated Section 510 is "aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights."  *See Andes v. Ford Motor Co.*, 70 F.3d 1332, 1338 (D.C. Cir. 1995).

Plaintiff does not claim that defendants took any action against him "for exercising any right" to which he was entitled under ERISA, or to prevent him from obtaining his benefits under the RBAP.  Instead, he claims that defendants "discriminated" against him and other employees in violation of Section 510, "when they designed, adopted, failed to amend . . . and now administer separate and discriminatory contribution and benefit structures for partners and non-partner employees under the RBAP and 401(k) Plans."  (Cmplt. ¶ 177)  Because plaintiff's claim is based entirely on the design and administration of the Plan(s), it falls outside the scope of Section 510.  Plaintiff does not address the numerous appellate court decisions holding that the design of a plan cannot implicate or violate ERISA § 510 (Def. Mem. n.23), or cite to any contrary authority.  As the Supreme Court has stated, "ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits."  *Shaw,* 463 U.S. at 91.

Contrary to plaintiff's argument, the Supreme Court in *Inter-Modal Rail Employees Ass'n v. Atcheson, Topeka and Santa Fe Ry.*, 520 U.S. 510 (1997), did not address,

much less reject, the rule that plan design decisions do not implicate Section 510. In that case, employees claimed they had been *discharged* by their employer in an effort to prevent them from exercising their rights under a welfare plan. *Id.* at 513. The Supreme Court held that Section 510 applied to plaintiffs even though they had been discharged before their rights to benefits had vested. *Id.* at 515-16. The Court did not say that claims under Section 510 could be based on plan design. In the portion of the opinion plaintiff quotes, the Court emphasized that an employer "may, of course, retain the unfettered right to alter its promises" through formal plan amendment." *Id.* at 516. The Court then explained that an employer's "unfettered right" to amend or terminate a plan did not mean that it could do so "informally" by discharging participants or taking other retaliatory actions proscribed by Section 510. *Id.* Nothing in *Inter-Modal* contradicts the rule that plan design cannot be the basis for a Section 510 claim.

## VII.    Count Nine Fails To State A Claim Because ERISA § 204(g) Does Not Apply Where A Plan Has Not Been Amended.

Plaintiff does not dispute that the RBAP is not amended when the Plan's investment benchmarks are changed. As he must, plaintiff also concedes that the D.C. Circuit has repeatedly rejected claims under ERISA § 204(g) – and by extension under the parallel provision of the Tax Code, IRC § 411(d)(6) – where the changes complained of were not made by plan amendments. (Pl. Opp. 39 n. 64) Plaintiff also concedes that the D.C. Circuit's latest decision on this issue came *seven years* after the issuance of Treas. Reg. § 1.411(d)-4 Q&A4. (*Id.*) Yet, plaintiff argues that the D.C. Circuit's decisions are in error because this Treasury regulation – which purports to interpret the scope of IRC § 411(d)(6) – extends the anti-cutback rule "to situations not involving plan amendments." (Pl. Opp. 39)

As a threshold matter, plaintiff's argument should be rejected because this Court is bound by the D.C. Circuit's precedent construing ERISA § 204(g) and IRC § 411(d). The court in *Andes* could not have been any clearer in holding that "Congress did *not* state that any

21

change would trigger [§ 204(g)]; it stated that any change *by amendment* would do so…. In its present form, § 204(g) is specifically limited to *actual amendments*." *See Andes v. Ford Motor Co.*, 70 F.3d 1332, 1335 (D.C. 1995) (emphasis in original). Any argument plaintiff has that *Andes* was wrongly decided should be directed to the D.C. Circuit, not this Court. *See Vo Van Chau v. U.S. Dept. of State*, 891 F. Supp. 650, 654 (D.D.C. 1995) (district court bound by decisions of the D.C. Circuit which constitute "the law of this Circuit").

*Andes* aside, plaintiff has failed to cite any authority holding that the clear language of Section 204(g) applies to changes not made by plan amendment. The portion of the Treasury regulation upon which he relies does not state that it interprets IRC § 411(d) as no longer requiring a plan amendment. Instead, it merely states that Section 411(d) prohibits a plan provision that "permits the employer, either directly or indirectly, through the exercise of discretion, to deny a participant a section 411(d)(6) protected benefit." (Pl. Opp. 39) But the language quoted by plaintiff does *not* say that Section 411(d) applies to actions other than plan amendments, nor could it do so. *See Individual References Servs. Group, Inc. v. FTC*, 145 F. Supp. 2d 6, 26 (D.D.C. 2001) (When a statute is clear and unambiguous, "the agency cannot, by its interpretation, override the congressional will as memorialized in the statutory language.").

None of the other authorities cited by plaintiff suggest that this Treasury regulation extends the scope of the Code or ERISA. *Counts v. Kissack Water & Oil Service, Inc.*, 986 F.2d 1322 (10th Cir. 1993), held that *a plan amendment* that eliminated the option of lump sum distribution violated ERISA § 204(g). While the Court referred to Treas. Reg. § 1.411(d)-4, it did so only in holding that the plan amendment at issue did not fall within any exceptions to ERISA § 204(g) discussed in that regulation. *Id.* at 1324-26. The other case plaintiff cites, as well as Revenue Ruling 81-12, only discuss plan amendments and do not suggest that the anti-cutback rules apply more broadly. *See  Stamper v. Total Petroleum, Inc.*

*Retirement Plan*, 188 F.3d 1233, 1240 (10th Cir. 1999); Rev. Rul. 81-12, 1981 WL 165942 (1981).  Given the unambiguous language of the statute and the binding D.C. Circuit precedent interpreting it, Count Nine should be dismissed.

**VIII.    Plaintiff Lacks Standing To Assert The Claims In Counts Ten And Eleven And Neither Count States Any Viable Claim For Relief Under ERISA.**

Plaintiff has no response to the decisions holding that, as a former participant in the RBAP, he lacks standing to sue under ERISA unless he can show he has a colorable claim for benefits.  The short answer to plaintiff's standing argument on Counts Ten and Eleven is that, for all the reasons stated above, he has no colorable claim to benefits under any of the Plans.  Thus, if the Court agrees either that Counts One through Nine are barred by the statute of limitations or that they fail to state claims upon which relief can be granted, Counts Ten and Eleven must be dismissed for lack of standing.  Even if plaintiff had standing, however, Counts Ten and Eleven fail to state any viable claim for relief.

Although plaintiff asserts that defendants "misstate Plaintiff's claims under Count Ten" (Pl. Mem. 40), paragraph 200 of the Complaint alleges defendants "breached their fiduciary and co-fiduciary duties by selecting investment measures to serve as the Plan's actuarial assumptions that failed to optimize benefits to the extent permissible under the RBAP."  (Cmplt. ¶ 200; *see* Def. Mem. 34)  For this allegation to state a claim, plaintiff must have a right to relief under one of the remedial provisions of ERISA.  While plaintiff does not identify which of these provisions he relies on as his basis for this Count, he implicitly acknowledges (Pl. Mem. 41 n.66) that Section 502(a)(3) is the only possible basis for the relief he seeks.[16]

---

[16] As explained in defendants' opening brief, Section 502(a)(2) authorizes an action for breach of fiduciary duty to recover for the benefit of the plan, but Count Ten does not seek any relief for the RBAP or 401(k) Plans, only for plaintiff and other participants.  (Cmplt. ¶ 197)  Nor does Count Ten assert a claim for "payment of benefits under the Plan" under Section 502(a)(1)(B).  This Count is based on alleged breach of fiduciary duty in the selection of investment measures.  As the Complaint alleges unequivocally, the Plan neither specifies any particular investment

(Continued…)

Section 502(a)(3) authorizes a participant to sue for "appropriate equitable relief." 29 U.S.C. § 1132(a)(3), but not for money damages or any other form of relief that seeks "to impose personal liability on the defendant." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214-15 (2002); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255, 262 (1993). Courts applying these decisions have repeatedly rejected plaintiff's argument that "ERISA § 502(a)(3) authorizes make-whole monetary relief against breaching fiduciaries." (Pl. Mem. 41 n.66) *See, e.g., Rego v. Westvaco Corp.*, 319 F.3d 140, 145 (4th Cir. 2003) (participant cannot sue under § 502(a)(3) to impose personal liability on fiduciaries); *Buckley Dement, Inc. v. Travelers Plan Administrators of Illinois, Inc.*, 39 F.3d 784, 788 (7th Cir. 1994) (Section 502(a)(3) does not authorize claim for damages based on breach of fiduciary duty); *In re Enron Corp. Sec. Deriv. & ERISA Litig.*, 284 F. Supp. 2d 511, 612 (S.D. Tex. 2003) (Section 502(a)(3) does not permit "make-whole" monetary relief for breach of fiduciary duty).

The only type of monetary relief available under Section 502(a)(3) is equitable restitution – restoration of plan assets belonging to plaintiff that are wrongfully in the possession of a fiduciary (*see* Def. Mem. 36-37). Here, plaintiff has not alleged that defendants have any assets belonging to him, but rather that they breached their duty by selecting inappropriate investment measures to calculate the value of his cash balance account. His claim for "direct monetary recovery" under Count Ten is thus barred by settled precedent.[17]

Nor has plaintiff put forth any plausible theory for injunctive relief under Count Ten. Plaintiff does not even address the cases holding that past participants cannot bring claims

---

measures nor provides any particular rate of return for a participant's account balance. (Cmplt. ¶¶ 78, 139) Thus, Count Ten does not state a claim for benefits due under the Plan.

[17] The decision in *Williams Elec. Games, Inc. v. Garrity*, 366 F.3d 569, 576-78 (7th Cir. 2004), does not support his claim. *Williams* was not an ERISA case, but rather involved a claim for fraud and commercial bribery by a video game manufacturer against its suppliers. *Id.* at 572. The court simply upheld the settled principle, consistent with *Great-West*, that a plaintiff may seek "equitable restitution" as a category of equitable relief. *Id.* at 577-78.

under Section 502(a)(3) for prospective injunctive relief when they will not personally benefit from such relief. (*See* Def. Mem. 36) Plaintiff instead argues that prospective equitable relief will benefit him because he "has not been cashed out" and has a colorable claim that he is still owed additional benefits "with or without regard for the claims made under Count Ten." (Pl. Mem. 41 n.66) Even if plaintiff could establish he has a right to some payment of additional benefits, he has no claim that he has a right to accrue *new benefits* under the Plan. Thus, any prospective relief ordering Plan fiduciaries to offer different investment measures for determining *future* account credits will have absolutely no impact on plaintiff.

With respect to Count Eleven, nothing in plaintiff's brief demonstrates that he has any basis to obtain relief for the benefit of the Plan. The cases plaintiff cites allowing former participants of defined contribution plans to sue under ERISA § 503(b)(2) for the benefit of the plan involve conduct that allegedly caused the former participant to suffer a direct reduction in his benefits.[18] Here, as in *Crawford v. Lamantia*, 34 F.3d 28, 33 (1st Cir. 1994), "plaintiff has failed to show that defendants' alleged breach of fiduciary duty had a direct and inevitable effect on *his* benefits." Plaintiff claims he received an inadequate distribution because the terms of the RBAP violated ERISA – not because the Plan fiduciaries invested Plan assets in retail mutual funds and other inappropriate assets, as alleged in Count Eleven.

## CONCLUSION

For all of the reasons stated above and in defendants' opening memorandum, each count of plaintiff's Complaint should be dismissed with prejudice.

---

[18] *See, e.g.*, *Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 350 (5th Cir. 1989) (plaintiffs claimed lump sum payments were less than amounts due because trustees sold retirement trust stock for less than fair market value); *Rankin v. Rots*, 220 F.R.D. 511, 522 (E.D. Mich. 2004) (any recovery for plan "would likely affect the amount of Rankin's benefit").

Dated:  September 16, 2005                    Respectfully submitted,


BY  /S/ DAVID E. MENDELSON
David E. Mendelson (471863)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC  20005-5793
(202) 879-5000 (phone)
(202) 879-5200 (fax)
dmendelson@kirkland.com

Robert J. Kopecky
Douglas G. Smith
Lauren O. Casazza
Jason W. Callen
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000


*Counsel for defendants PricewaterhouseCoopers LLP, PricewaterhouseCoopers LLP Board of Partners and Principals, the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP, the Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP, the Savings Plan for Employees of PricewaterhouseCoopers LLP, the Administrative Committee to the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP, the Administrative Committee to the Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP, and the Administrative Committee to the Savings Plan for Employees of PricewaterhouseCoopers LLP*