# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TIMOTHY D. LAURENT,        )
                                  )
        Plaintiff,         )
                                  )
      vs.                )  Civil Action No. 05-1291 (PLF)
                                  )
PRICEWATERHOUSECOOPERS LLP, et al.,  )  Judge Paul L. Friedman
                                  )
        Defendants.      )
                                  )
_____)

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT UNDER COUNTS ONE THROUGH FOUR OF THE FIRST AMENDED CLASS ACTION COMPLAINT

David E. Mendelson (471863)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005-5793
(202) 879-5000 (phone)
(202) 879-5200 (fax)
dmendelson@kirkland.com

Robert J. Kopecky
Douglas G. Smith
Lauren Casazza
Jason W. Callen
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000

Patrick James Attridge (357973)
KING & ATTRIDGE
39 West Montgomery Avenue
Rockville, MD  20850
(301) 279-0780 (phone)
(301) 279-2988 (fax)

Dated:  September 16, 2005

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................................................................1

STATEMENT OF FACTS ..................................................................................................2

ARGUMENT ......................................................................................................................9

I.     Plaintiff's Motion For Summary Judgment Is Premature...................................10

II.    Plaintiff Has Failed To Meet His Burden To Demonstrate That He Was Harmed
       By The RBAP's Normal Retirement Age And Thus Has Standing To Seek Relief. ........11

       A.     Plaintiff Has Not Met His Burden of Establishing Article III Standing
              Because He Has Not Demonstrated Any Injury In Fact. .......................................12

       B.     Plaintiff Has Not Met His Burden Of Establishing Standing Under ERISA
              As A "Participant" In The Plan..............................................................................17

III.   The RBAP's Normal Retirement Age is Valid As A Matter Of Law. ............................19

       A.     The Plain Language Of ERISA And IRS Interpretations Of That Language
              Authorize The Normal Retirement Age Used In The RBAP. ...............................19

       B.     Plaintiff's Attempts To Circumvent The Plain Language Of The Statute
              And IRS Interpretations Are Meritless. ................................................................21

              1.     Plaintiff Improperly Seeks To Reply On "Common
                     Understanding" To Replace A Statutorily Defined Term........................21

              2.     Plaintiff Relies On Outdated And Superceded IRS Rulings That
                     Pre-Date ERISA......................................................................................23

              3.     Plaintiff's Reliance On A Recently Proposed Treasury Regulation
                     Does Not Establish That The RBAP Violates ERISA..............................27

              4.     The Legislative History Does Not Suggest Plaintiff's Interpretation
                     Of The Statute. ........................................................................................28

              5.     The RBAP's Normal Retirement Age Is Not Invalid Because It
                     Specifies A Period Of Time......................................................................29

IV.    Plaintiff Has Failed To Meet His Burden To Demonstrate That The Normal
       Retirement Age Is Invalid In The Context Of The RBAP................................................31

       CONCLUSION....................................................................................................................34

## INTRODUCTION

Plaintiff's motion for partial summary judgment on Counts One through Four is premature.  Defendants' pending motion to dismiss sets forth a number of ways in which plaintiff's Complaint fails, as a matter of law, to state any claim upon which relief can be granted.  Among other things, defendants' motion demonstrates that each of the claims covered by the present motion is time-barred (*See* Def. Mem. In Sup. Of Mot. to Dism., Dkt. No. 9, at 8-9), and that the plain language of ERISA and applicable IRS interpretations make clear that the normal retirement age in the RBAP is lawful (*See id.* at 10-14).  Nevertheless, before awaiting a ruling on defendants' motion, before any discovery, and before moving for class certification, plaintiff asks the Court to consider a motion for partial summary judgment granting *part* of the relief requested in four counts of the eleven counts in plaintiff's Complaint.

Even if plaintiff could survive defendants' motion to dismiss, which if granted would render this motion moot, his motion for summary judgment should be denied for two principal reasons.  *First*, plaintiff has not met his burden of demonstrating that he has suffered any harm from the five-year normal retirement age in the RBAP, and therefore has standing to seek a declaratory judgment invalidating that provision.  *Second*, plaintiff's arguments and authorities do not establish that the RBAP's five-year normal retirement age is invalid under ERISA.  To the contrary, the statutory text, IRS interpretations, and case law all establish that the provision is valid.  Moreover, plaintiff acknowledges that a five-year normal retirement age is not "*per se* unlawful," but rather contends it is unlawful only "in the context of the RBAP."  (Pl. Opp. Def. Mot. Dismiss, Dkt. No. 20, at 10 n.18)  There are disputed issues of material fact about whether, under the particular circumstances of the RBAP, the Plan's normal retirement age violates ERISA.  In sum, plaintiff has not met his burden of demonstrating he is entitled to summary judgment.

## STATEMENT OF FACTS

**The Retirement Benefit Accumulation Plan ("RBAP")**

The RBAP is a cash balance plan that PricewaterhouseCoopers LLP ("PwC") has offered to its partners and employees since 1994.  (Ex. A, RBAP at 1)[1]  Cash balance plans have become increasingly popular in the past several years because, among other things, they provide greater flexibility to an increasingly mobile work force.  *See* Ex. B, Hubert V. Forcier, *Guide to Cash Balance Plans* at xi (2003).  For example, cash balance plans afford easier portability of benefits for employees who move from one job to another.  (*See Id., 2005 Cumulative Supplement* at 3-3 to 3-4 (2005).  Unlike traditional defined benefit plans, which provide for reductions in benefits if a participant leaves the plan before normal retirement age, cash balance plans do not reduce a departing participant's account balance regardless of when he leaves.  Such plans also provide flexibility to plan sponsors in maximizing the tax benefits available under the Internal Revenue Code, as well as other advantages that enable employers to offer pension benefits they might otherwise be financially unable to provide.  *See Esden v. Bank of Boston*, 229 F.3d 154, 158 n.5 (2d Cir. 2000).

Participants' benefits in cash plans are reflected in a "notional" account, the value of which is typically determined by two components:  (1) periodic pay credits made by the plan sponsor, and (2) additional credits based on criteria specified in the terms of the plan.  *See* IRS Notice 96-8, 1996 WL 17901 (Feb. 5, 1996); Ex. B, *Guide* at xi.  Under the RBAP, PwC credits every pay period an amount equal to a percentage of each employee's compensation to an account for each plan participant.  (Ex. C, RBAP SPD (2001) at 2-3)  In addition to the periodic

---

[1] The RBAP has been amended and restated several times since its initial adoption.  (*See* Ex. A at 1-2)  The five-year normal retirement age that is the subject of plaintiff's motion has been in all iterations of the PwC's cash balance plan.  The entire current RBAP was submitted to the Court as Exhibit C to defendants' memorandum in support of their motion to dismiss filed on July 29, 2005.  (Dkt. No. 9, Ex. C)  For the Court's convenience, excerpts of those portions referred to in this brief are attached as Exhibit A.

pay credits, the RBAP also provides participants the opportunity to earn credits to their accounts based on the performance of "investment measures" selected by participants.  (*Id.* at 3-4)

Under the RBAP, each individual's account is credited with investment gains based on the performance of the particular investment measures they select.  (*Id.* at 3)  While many other cash balance plans provide periodic interest credits based on a fixed or variable rate linked to an index such as Treasury securities (Cmplt. ¶ 66), the RBAP offers participants the opportunity to increase their account balances beyond increases that would be provided by such interest credits by selecting investment measures best suited to their personal retirement goals and risk profile.  The RBAP offers a variety of investment vehicles, including a money market account, short and long-term bonds, balanced funds with a mix of both stocks and bonds, and small and large cap funds.  (Ex. D, M. Burnham Dec., Att. 1)  This menu of investment options is identical to that offered to participants in PwC's 401(k) plans.  (*Id.* ¶ 3)  Thus, participants with a more extended time horizon to retirement can select a mixture of aggressive and conservative funds as investment measures, while those who wish to invest more conservatively can select more stable funds, such as the Plan's money market fund option.  (Ex. C at 3-4; Ex. D, Att. 1)

The RBAP additionally offers participants maximum portability, which is important for PwC's mobile workforce.  Unlike a traditional defined-benefit pension plan, RBAP participants' benefits are expressed in terms of a personalized account, making it easy for them to ascertain their benefit amount if they are contemplating leaving PwC.  (Ex. C at 2-4, 11)  Upon termination of employment, participants whose benefits have vested may select to receive the full value of their account balance as a lump sum payment, which they may take in cash or roll over to another employer's tax-qualified plan or an Individual Retirement Account.  (Ex. A, §§ 5.4(b), 5.10)  Vested participants also may elect to defer distribution of their benefits while

their account balance continues to be credited based upon their selected investment measures. (*Id.* § 5.2)

The RBAP defines normal retirement age under the Plan as "[t]he earlier of the date a Participant attains age 65 or completes five (5) Years of Service." (*Id.* § 2.32) As set forth in Ira Cohen's letter to the IRS attached to plaintiff's Complaint, the use of a low normal retirement age in a cash balance plan complies with the requirements of ERISA while offering plan participants the option of earning credits to their accounts at rates that could exceed the 30-year Treasury rate and other fixed index rates. (Cmplt., Ex. 1 at 4-5)

The RBAP provides an additional benefit to former employees of Coopers & Lybrand LLP ("C&L"), such as plaintiff here. PwC merged with C&L in 1998. (Cmplt. ¶ 39) At the time, C&L offered its employees a "traditional" defined benefit plan known as the "career average" Retirement Plan. (Ex. C at 5-6) The C&L plan was not a cash balance plan. Rather, participants' benefits were calculated and expressed as a monthly annuity beginning at age 65. Under the traditional pension formula in this plan, an employee's monthly benefit was essentially equal to the sum of 1% of the first $21,000 of the employee's compensation and 1.5% of the remainder of the participant's compensation multiplied by the participant's years of service. (*Id.*)

In 1999, one year after C&L merged with Price Waterhouse LLP, the "career average" Retirement Plan merged with the RBAP. (*Id.* at 5) Under the terms of the RBAP, upon leaving PwC, former C&L employees have the right to receive the greater of two benefits: (1) what they would have received under the "career average" Retirement Plan's traditional defined pension formula if the formula used in that plan had continued in existence after 1999; or (2) their accrued benefit under the C&L Plan as of the date of the partnerships' merger, plus the current balance in their RBAP account. (*Id.* at 5-6) Thus, as a former C&L employee, plaintiff

was entitled to receive the greater of his current RBAP account balance or the benefit he would have received under the "career average" Retirement Plan had it remained in existence. (*Id.*; Ex. D ¶ 2) Plaintiff's benefit under the RBAP was greater than it would have otherwise been under the traditional C&L defined benefit plan. (Ex. D ¶ 2) Accordingly, when plaintiff received his lump sum distribution in 2002, it was based on the value of the benefit he accrued under the C&L "career average" pension plan through June 30, 1998, plus his current RBAP account balance. (*Id.*)

**IRS Review Of The RBAP**

The IRS has twice issued determination letters specifically approving the RBAP as compliant with the tax qualification rules for retirement benefit plans. (*See* Exs. E and F) In February 1996, PwC received the first determination letter from the IRS. (Ex. E) That determination letter acknowledged that the terms of the Plan provided to the IRS for review, which included the five-year normal retirement age definition, met the requirements of the Tax Code. (*See id.*)

Any suggestion that the IRS was not fully aware of the Plan's five-year normal retirement age feature (*See* Cmplt. ¶ 95) is dispelled by a 1999 letter from PwC plan design consultant Ira Cohen to the Commissioner of the IRS and the Deputy Assistant Secretary for Tax Policy. In that letter, PwC addressed in detail the issue of a low normal retirement age and its interplay with other provisions of ERISA and the Tax Code. (*See* Cmplt., Ex. 1) Mr. Cohen's letter explained why the IRS should not change its prior rulings recognizing the validity of defining normal retirement age as "any age," and outlined in particular PwC's position regarding the validity of a five-year normal retirement age. (*See id.*) Mr. Cohen observed that there were significant benefits associated with ERISA's provision authorizing the use of normal retirement ages below age 65. Thus, Mr. Cohen explained that use of a normal retirement age below age 65

enabled employers to offer plans that complied with IRS rules regarding the calculation of lump sum payments and gave plan participants the opportunity to earn interest credits that better reflected the amount they would likely earn if they could self-invest their retirement benefits. (*Id.* at 4-5)

Mr. Cohen explained that plans offering participants the opportunity to earn greater returns could be subject to a "whipsaw effect." (*Id.* at 3-5). Under IRS rules governing the calculation of distributions, an employee's account balance is projected forward to include guaranteed "interest credits" up to the plan's normal retirement age, and then discounted to present value using the rate mandated by ERISA – the 30-year Treasury rate. *See* IRS Notice 96-8, 1996 WL 17901 (Feb. 5, 1996). If the guaranteed interest crediting rate under the plan is different than the statutory discount rate, this will result in the "whipsaw effect" -- a lump sum distribution that is either more or less than the participant's current account balance. *See* IRS Notice 96-8; (Cmplt., Ex. 1 at 4) This calculation created an economic incentive for plan sponsors to offer lower investment crediting rates, which in turn depressed participant benefits and employer costs of the plan. (*Id.* at 4-5)

In his letter, Mr. Cohen stated that employers who preferred offering their employees greater rates of return could avoid this issue entirely by using a "low normal retirement age." (*Id.* at 5) Use of a "low normal retirement age" eliminates any potential "whipsaw effect" "because there is no longer a need to project into the future—the minimum lump sum rules require projection only until normal retirement age." (*Id.*) Mr. Cohen explicitly detailed in his letter why ERISA authorized a "low normal retirement age." (*Id.*) He emphasized that IRS guidance issued contemporaneously with ERISA regulations "permit[s] unrestricted use of low normal retirement ages." (*Id.*) Finally, he noted that it would "require legislation" to change the statutory scheme, and that the IRS could not do so by regulation. (*Id.*)

The IRS's consideration of "the normal retirement age question," received extensive publicity in the benefits community. (Pl. Mot. App. Ex. 1 at 1, Ex. 11 at 3) Around the same time Mr. Cohen's letter was received by the IRS and published in the journal *Tax Notes Today*, several articles were published in benefits journals that discussed the RBAP's normal retirement age provisions. (Cmplt. ¶ 94 n.30; Pl. Mem. at 14 n.16)

Despite having had this issue brought to the attention of top IRS officials in 1999, and the attendant publicity that year, the IRS did not revoke its 1996 determination letter. To the contrary, on March 22, 2004 the IRS issued a second favorable determination letter on the latest amendment to the RBAP. (Ex. F)

**Plaintiff's Motion for Partial Summary Judgment**

On May 20, 2002, plaintiff received a lump sum payment of his benefits under the RBAP after terminating employment with PwC. (Cmplt. ¶¶ 17, 128) Plaintiff filed his Complaint on June 28, 2005 against PwC, PwC's Board of Partners and Principals, the RBAP, the Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP and the Savings Plan for Employees of PricewaterhouseCoopers LLP (the "401(k) Plans"), the administrative committees for the Plans, and 76 individuals who allegedly serve or served at some time during the past 11 years as members of PwC's Board of Partners and Prinicipals and/or as fiduciaries to the RBAP or 401(k) Plans. Plaintiff filed an Amended Complaint on July 5, 2005.[2]

Plaintiff alleges a laundry list of purported ERISA violations. Some of plaintiff's allegations focus on the RBAP's specification of a five-year normal retirement age – a term

---

[2] Plaintiff previously filed a similar action in the United States District Court for the Southern District Court of Illinois against most or all of the defendants in this case. (Cmplt. n.1) Defendants moved to dismiss that complaint pursuant to Rules 12(b)(3), for improper venue, and 12(b)(6), for failure to state a claim. Before briefing was completed on the Rule 12(b)(6) portion of defendants' motion, the court dismissed the action, without prejudice, for improper venue. (*Id.*)

contained in the RBAP when the IRS reviewed and approved it in 1996 and 2004.  (*See* Ex. A § 2.32;  *see also* Cmplt. ¶ 95)  Plaintiff does not allege that he received less than what the terms of the RBAP expressly provided he would receive:  the full value of his account balance on the day he left and requested a distribution from the RBAP.  (Ex. A, §§ 5.4(b), 5.2)  Rather, plaintiff asks the Court to rewrite the terms of the Plan retroactively to change the normal retirement age that has been in the Plan since 1994 and impose a normal retirement age of 65 years of age.  He claims that, so reformed, the Plan would owe him additional benefits.  (*See, e.g.,* Cmplt. ¶¶ 160-61)

On July 29, 2005, the defendants that had been served at that time filed a motion to dismiss the Complaint presenting several reasons why each count of the Complaint fails to state a claim.[3]  (Dkt. No. 9)  *First*, defendants showed that Counts One through Nine of plaintiff's complaint are barred by the applicable statute of limitations.  (*Id.* at 8-9)  *Second*, defendants showed that Counts One through Three fail to state a claim because the RBAP's normal retirement age is valid as a matter of law.  (*Id.* at 10-17)  *Third*, defendants presented arguments why Counts Two through Four fail to state a claim regardless of the validity of the Plan's normal retirement age.  (*Id.* at 17-24)  *Finally*, the defendants offered reasons why each of the other seven counts in the Complaint fail to state a claim.  (*Id.* at 24-39)

Less than two weeks after defendants filed this motion to dismiss, plaintiff filed a motion for partial summary judgment seeking "a declaration and judgment under Counts One through Four" stating that the RBAP "does not state a valid 'normal retirement age'" and that "the normal retirement age under the Plan was and is age 65."  (Pl. Mot. at 1)  Plaintiff filed this motion despite the fact that the motion to dismiss raised threshold legal issues, such as the statute

---

[3] The remaining defendants filed their motion to dismiss on September 6, 2005, and joined the arguments in the July 29 motion.  (Dkt. No. 21)

of limitations and standing, showing that plaintiff's claims under each of these counts fails regardless of the validity of the Plan's normal retirement age. (Dkt. No. 9, at 8-9, 17-24)

## ARGUMENT

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In order to prevail on a motion for summary judgment, a movant must demonstrate that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

When plaintiff moves for summary judgment, the burden is even more daunting. He must show, through submission of affidavits or other evidence, that there is no triable issue of fact on any element of his claim. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (where movant bears the burden of proof on an issue "he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original); *Parakevaides v. Four Seasons Washington*, 148 F. Supp. 2d 20, 23 (D.D.C. 2001), *rev'd on other grounds*, 292 F.3d 886 (D.C. Cir. 2002) ("If the summary judgment movant would have the burden at trial then that movant has the burden on summary judgment to prove all of the elements that he would have to prove at trial.").

In deciding a motion for summary judgment, the Court views all evidence in the light most favorable to the nonmoving party and accepts the nonmoving party's evidence as true. *Info. Handling Servs., Inc., v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1032 (D.C. Cir. 2003) (citing *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002)); *Greene v. Dalton*, 164 F.3d 671, 674 (D.C. Cir. 1999) (court must "assume the truth of all statements proffered by the party opposing summary judgment"). Moreover, "the court must draw all

reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Here, plaintiff has failed to meet his threshold burden to establish that there is no genuine issue of material fact with respect to his claim that the RBAP normal retirement age is invalid. *First*, plaintiff has not met his burden to demonstrate that he was injured by the normal retirement age used in the RBAP, and thus has standing to seek a declaratory judgment invalidating that provision. *Second*, plaintiff has failed to establish that the normal retirement age is invalid "in the context of the RBAP." (*See* Dkt. No. 20, Pl. Opp. Mot. to Dismiss 10 n.18) PwC's workforce is highly mobile, and the normal retirement used in the RBAP corresponds to the average time participants stay with the firm, thereby allowing them to achieve normal retirement age before they discontinue their employment. Moreover, PwC's use of the normal retirement age facilitated PwC's ability to offer the range of investment measure options that provide a highly desirable feature to participants under the Plan. Finally, there are issues of fact that preclude summary judgment on this issue.

## I.    **Plaintiff's Motion For Summary Judgment Is Premature.**

Plaintiff's motion is premature and, in the event this Court grants defendants' motion to dismiss Counts One through Four, will also be moot. Accordingly, the Court should not address this motion until after it rules on the pending motion to dismiss, which is now fully briefed. That motion argues that Counts One through Four are all barred by the applicable three-year statute of limitations because these claim occurred when plaintiff received his lump-sum distribution -- over three years before he commenced this action. (*See* Dkt. No. 9 at 8-9) Granting defendants' motion to dismiss on that ground will moot plaintiff's motion for summary judgment. In addition, defendants' motion argues that Counts Two, Three and Four

10

fail to state a claim under ERISA *even if* the five-year normal retirement age is invalid.  (*Id.* at 17-24)  Again, if the Court agrees with defendants on these arguments, plaintiff's motion for pretrial summary judgment on these counts based on alleged invalidity of the RBAP's five-year normal retirement age will be moot.

Other aspects of the procedural posture of this case further militate against deciding plaintiff's motion now.  First, defendants have not yet even answered the Complaint in order to establish those factual allegations that are admitted and those that are denied.  Second, no discovery has been conducted in this case.  Courts have noted that "pre-discovery summary judgment motions are premature and should only be used for exceptional circumstances."  *Barry v. U.S. Capitol Guide Bd.*, 2005 WL 1026703, at \*4 (D.D.C. May 2, 2005) (unpublished); *see also Tripp v. Department of Defense*, 193 F. Supp. 2d 229, 235 (D.D.C. 2002).  Third, plaintiff's motion for partial summary judgment is inconsistent with the "usual order of disposition" under the Federal Rules under which class certification should be addressed *before* summary judgment.  *See Curtin v. United Airlines, Inc.*, 275 F.3d 88, 92 (D.C. Cir. 2001).  Here, plaintiff has not shown that any "exceptional circumstances" warrant consideration of summary judgment *before* the defendants answer, *before* any discovery, and *before* a determination of class certification.

## II.   **Plaintiff Has Failed To Meet His Burden To Demonstrate That He Was Harmed By The RBAP's Normal Retirement Age And Thus Has Standing To Seek Relief.**

Even if the Court decides to consider plaintiff's motion for summary judgment, the motion fails at the outset because there is a material issue of fact regarding whether he has either Article III standing or statutory standing under ERISA to obtain a declaratory judgment on Counts One through Four of the Complaint.  Standing is a constitutional prerequisite to seeking relief in federal court and is "an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Accordingly, the Supreme Court has "always insisted on strict compliance with this

jurisdictional standing requirement." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). This standing requirement "is no less strict when a party is seeking a declaratory judgment than for any other relief." *Federal Express Corp. v. Air Line Pilots Association*, 67 F.3d 961, 963 (D.C. Cir. 1995); *Branch v. FCC*, 824 F.2d 37, 40 (D.C. Cir. 1987). Plaintiff does not meet this requirement because he has submitted no evidence to establish any injury in fact as a result of PwC's use of a five-year normal retirement age in the RBAP.

To obtain a declaratory judgment under ERISA, plaintiff must also establish that he has statutory standing to sue for relief under ERISA § 503(a), 29 U.S.C. § 1132(a). He has not done so because he has submitted no evidence to establish he is a "participant" in the RBAP. Even if plaintiff could establish, however, that he somehow met the requirements for standing under the provisions of ERISA, that would not cure his failure to establish Article III standing. Congress may, by legislation, expand standing to the full extent permitted by Article III. "In no event, however, may Congress abrogate the Art. III minima: A plaintiff must always have suffered 'a distinct and palpable injury to himself' . . . that is likely to be redressed if the requested relief is granted." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) (citations omitted).

A. **Plaintiff Has Not Met His Burden of Establishing Article III Standing Because He Has Not Demonstrated Any Injury In Fact.**

The Supreme Court's decisions have established that the "irreducible constitutional minimum of standing" contains three elements, the first of which is that plaintiff must have suffered an "injury in fact." *Lujan*, 504 U.S. at 560; *Allen v. Wright*, 468 U.S. 737, 756 (1984). To meet this requirement, "the plaintiff must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone*, 441 U.S. at 99; *see also Raines*, 521 U.S. at 819 (a plaintiff "must establish that he has a 'personal stake' in the alleged dispute, and the alleged injury is particularized as to him"),

*Harrington v. Bush*, 553 F.2d 190, 209 (D.C. Cir. 1977) ("a litigant, to have standing, must have a stake in the controversy at issue, i.e., he himself must perceptibly win or lose depending on the outcome").

A plaintiff invoking this Court's jurisdiction bears the burden of establishing each of the elements of standing, including the injury-in-fact requirement. *Lujan*, 504 U.S. at 561. And because standing is an "indispensable part" of plaintiff's case, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* Thus, generalized allegations regarding injury and the other elements of standing may suffice at the pleading stage. At the summary judgment stage, however, plaintiff can no longer rest on allegations, but "must 'set forth' by affidavit or other evidence specific facts" to establish his standing.[4] *Id.* In particular, where plaintiff is the party moving for summary judgment, he must submit affidavits or other evidence to establish each element of his claim to standing. *Sierra Club v. E.P.A.*, 292 F.3d 895, 899 (D.C. Cir. 2002).

In this motion, plaintiff asks the Court to enter "a declaration and judgment under Counts One through Four" that (1) the RBAP "does not state a valid 'normal retirement age' under ERISA," and (2) "the normal retirement age under the Plan was and is age 65." (Pl. Mot. 1) In order to have standing to obtain such a declaratory judgment, plaintiff must establish that the relief requested will in fact remedy some injury in fact that *he* has suffered. Otherwise, the

---

[4] In *Lujan*, the Court was discussing plaintiff's burden of *opposing* a motion for summary judgment, in which case his affidavits or other evidence submitted by plaintiff are taken as true. *See* 504 U.S. at 561-62. That is not the case where *plaintiff* moves for summary judgment, in which case it is the defendant opposing the motion whose factual submissions are accepted as true and in whose favor all inferences must be drawn. *See Info. Handling*, 338 F.3d at 1032.

declaratory judgment he requests would be an impermissible advisory opinion rendered solely for the benefit of persons other than plaintiff. *See Gladstone*, 441 U.S. at 99.

While the Complaint *alleges* in each Count (Cmplt. ¶¶ 132, 142, 151, 161) that plaintiff received a smaller lump sum distribution of benefits as a result of the Plan's 5-year normal retirement age, he has submitted no evidence to support these allegations with respect to any of the four counts on which he seeks summary judgment.

***First***, plaintiff claims in Count One that his lump sum payment was incorrectly calculated and that, if his payment had been calculated in accordance with the Plan and ERISA, "Plaintiff would have received a far larger lump sum distribution than the amount paid to him." (Cmplt. ¶ 132)   The basis for this allegation is that  defendants failed to perform a so-called "whipsaw calculation" when determining the amount of his lump sum distribution.  Specifically, plaintiff claims defendants were required to determine his benefit amount by "*projecting the account balance forward* to normal retirement age, based on the crediting rate set forth in the plan to determine annual interest credits for active participants, and then converting the projected account balance into an annual benefit."  (Pl. Mem. 26.)  The conversion back to an "annual benefit" requires using the discount rate mandated by the statute -- the 30-year treasury rate.   29 U.S.C. § 1055(g)(3)(A)(ii)(II).   A participant will be entitled to a payment in addition to his account balance only if the crediting rate exceeds the discount rate.  *See* IRS Notice 96-8, 1996 WL 17901; *Esden*, 229 F.3d at 159.

Plaintiff alleges defendants failed to make a projection to age 65 "using the RBAP's investment crediting rate,"  and thus impermissibly paid him in a lump sum equal to the nominal balance in his cash balance account.  (Cmplt. at ¶¶ 128, 130)  The problem with plaintiff's claim is that he has submitted *no evidence* to show (1) what "interest crediting rate" defendants should have used, and (2) whether application of any such rate would have resulted in

14

an increase in plaintiff's distribution after being discounted to present value at the rate mandated by applicable regulations. As plaintiff acknowledges, the RBAP "*does not have a guaranteed positive interest crediting rate.*" (*Id.* ¶ 139, emphasis added) Plaintiff does not allege in his Complaint, nor does has he told the Court in his motion, the rate he believes should be used. And he has submitted no evidence on this point.[5] Plaintiff has therefore failed to make any threshold showing regarding the crediting rate that would be used in calculating his benefits using a normal retirement age of 65 -- much less proved that the benefits he would receive would be any greater than the lump sum distribution he received.[6]

Under the RBAP, participants may receive additional credits to their account balances based on the performance of investment measures they select. Plaintiff has not explained how this rate of performance should be used for "whipsaw" calculation purposes, and he has not offered evidence regarding how the investment measures he selected performed while he was a participant under the RBAP. Nor has plaintiff offered any evidence of the overall investment experience of Plan participants during his participation in the Plan. In sum, plaintiff has not provided a methodology for calculating his benefits, or shown that any such

---

[5] To the extent plaintiff does disclose what crediting rate he believes should be used in performing a "whipsaw" calculation, defendants should have an opportunity to take discovery from plaintiff, including among other things: (1) his basis for the crediting rate he claims is appropriate to calculate his benefits if the RBAP is rewritten using a normal retirement age of 65; (2) how plaintiff claims his investment returns should be calculated if the RBAP is rewritten using a normal retirement age of 65; (3) what benefits plaintiff claims he would receive if the normal retirement age in the Plan were rewritten to be age 65; and (4) how plaintiff would calculate benefits for purposes of determining whether the various anti-backloading standards he cites in his complaint would be violated if the normal retirement age were rewritten so that it was age 65. *See* Fed. R. Civ. P. 56(f); *Velikonja v. Mueller*, 315 F. Supp. 2d 66, 79 (D.D.C. 2004) (quoting *Martin v. Malhoyt*, 830 F.2d 237, 256 (D.C. Cir. 1987)) (recognizing that parties should be afforded "a reasonable opportunity to complete discovery before grappling with a summary judgment motion"). This is all information that is necessary for plaintiff to establish that he has standing to bring his claims based on the RBAP's normal retirement age. His failure to produce it in support of his motion for summary judgment is sufficient basis to deny the motion. But to the extent the Court allows plaintiff to proceed with his motion, at a minimum, plaintiff must produce such information and defendants should be given an opportunity to take discovery in order to fully respond.

[6] For example, plaintiff has submitted no evidence to show that the "crediting rate" used for performing a whipsaw calculation should not be the 30-year Treasury rate, which is the same as the mandated discount rate and would result in no additional "whipsaw" payment to plaintiff. *See* IRS Notice 96-8, 1996 WL 17901.

methodology would demonstrate that he was entitled to additional benefits. Without any evidence to establish that a whipsaw calculation would increase his benefits, plaintiff's injury remains merely "hypothetical" and "conjectural" and is insufficient to establish standing. *See Lujan*, 504 U.S. at 560.

       **Second**, plaintiff alleges in Counts Two and Three that his accrued benefit and his rate of benefit accrual were reduced on account of age. (Cmplt. ¶¶ 135, 145) Plaintiff has failed to submit any evidence, however, showing that his accrued benefit or rate of benefit were *in fact* reduced because of age. Based on the theory plaintiff has outlined in his Complaint, whether such reduction occurred would depend on the rate at which plaintiff's account balance grew from year-to-year and the rate chosen to project plaintiff's accrued benefit forward to age 65. (*Id.* ¶¶ 138-141; 147-150) In paragraphs 139 and 140 of the Complaint, plaintiff provides a hypothetical example of how, in his view, the RBAP *could* result in a reduction in a participant's account value based on age. (*Id.* ¶¶ 139-140) But plaintiff has submitted no evidence that he *actually suffered any reduction in benefits* under the RBAP as a result of the five-year normal retirement age.

       Plaintiff has not produced any evidence showing the rate by which his account balance would have grown using a normal retirement age of 65, or described what rate should be used for projection purposes. In short, plaintiff has failed to meet his burden to demonstrate that a declaration invalidating the five-year normal retirement rate would result in an increase in his benefits. Accordingly, plaintiff lacks standing to seek a declaratory judgment invalidating the Plan's normal retirement age under the theories espoused in Counts Two and Three.

       **Third**, plaintiff alleges in Count Four that the RBAP violates ERISA's anti-backloading rule. (Cmplt. ¶¶ 157-160) Plaintiff has produced no evidence showing that his benefits under the Plan were unlawfully backloaded because the Plan used a normal five-year

retirement age.  Plaintiff sets forth a number of disparate theories about how the RBAP allegedly violates the anti-backloading rule, but he has submitted no proof he is entitled to additional benefits under any of these theories.  For example, plaintiff alleges that the $7,000 guarantee provision in the RBAP violates the backloading rule.  (*Id.* ¶ 158)  But plaintiff alleges that provision applies only until a participant's account balance reaches $7,000.  Plaintiff has not shown when his account balance reached this amount, or that a declaration invalidating the five-year normal retirement age would result in any additional benefits under this theory.  Similarly, plaintiff complains that the RBAP violates the anti-backloading rules because of the *potential* for larger investment credits in a participant's later years of employment if normal retirement age is declared to be age 65.  (Cmplt. ¶ 159)  But again, plaintiff has not shown that a declaration would result in any increase in *his* lump sum benefit payment under this theory.[7]  As with Counts One through Three, plaintiff has not shown he has suffered any injury in fact that a declaratory judgment would remedy.

### B.    Plaintiff Has Not Met His Burden Of Establishing Standing Under ERISA As A "Participant" In The Plan.

Plaintiff's claims in Counts One through Four are all claims for benefits allegedly due under the RBAP.   Section 502(a)(1)(B) of ERISA provides that a "participant or beneficiary" may sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."   29 U.S.C. § 1132(a)(1)(B).   It is undisputed that plaintiff left PwC in May 2002,

---

[7] Plaintiff also claims that the RBAP violates the anti-backloading rule because the rate of benefit accruals for partners exceeds that of employees.  (Cmplt. ¶ 157)  As stated in defendants' motion to dismiss, plaintiff has no legally plausible claim that increased benefits when an employee is admitted as a partner can violate the backloading rule.  (Dkt. No. 9 at 21-22)

requested a lump sum distribution of his accrued benefits under the RBAP, and received the full amount of his account balance in the Plan. (Cmplt. ¶128)

Generally, employees cease to be "participants" in a plan when they leave employment and accept payment of everything due them in a lump sum and are no longer earning any right to future benefits. *See, e.g., Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 952 (6th Cir. 1990). Courts have applied an exception to that rule where a former participant can allege that he has a "colorable claim to vested benefits." *See, e.g., Panaras v. Liquid Carbonic Ind. Corp.*, 74 F.3d 786, 790-91 (7th Cir. 1996). That exception, however, does not give plaintiff standing in this case.

First, for all the reasons stated in support of defendants' pending motion to dismiss, each of plaintiff's claims seeking benefits he claims are owed him under the RBAP is subject to dismissal because (1) it is barred by the applicable statute of limitations, and (2) it fails to state a legally sufficient claim upon which relief can be granted. (Dkt. No. 9 at 8-24) Accordingly, plaintiff has not established that he has any colorable claim for benefits. *See, e.g., Adamson v. Armco, Inc.*, 44 F.3d 650, 654-55 (8th Cir. 1995) (holding that where former participant's claims for benefits were time-barred, plaintiff lacked standing to assert for breach of fiduciary duty because he had no "colorable claim" for vested benefits.)

Second, even if the Court were to determine that plaintiff's Complaint *alleged* a "colorable claim" to benefits, he has not proven he has standing to obtain the declaratory judgment he seeks. Since plaintiff is now seeking a judgment, he can no longer rest on mere allegations that, accepted as true, show he may have a claim. *See Fontenot*, 780 F.2d at 1194. He must prove each element of his case, including that he is a "participant." *See id.* As discussed in Section A above, plaintiff has not submitted any evidence to establish, beyond any triable issue, that he in fact has any claim to additional benefits and thus is still a "participant."

Accordingly, plaintiff's motion should be denied because he has also failed to establish standing under ERISA to seek a declaratory judgment invalidating the RBAP's normal retirement age.

**III.     The RBAP's Normal Retirement Age is Valid As A Matter Of Law.**

Even if the Court were to determine that plaintiff has standing, his motion for summary judgment should be rejected because the RBAP's definition of normal retirement age is authorized by ERISA's unambiguous language and by the IRS rulings and case law interpreting that statute.  Plaintiff's attack on the Plan's definition lacks any support in the text of the statute or any persuasive authority.  Plaintiff's argument is based almost entirely on pre-ERISA IRS revenue rulings linking the age specified in a plan to the one at which employees customarily retire,  rulings that were superceded by ERISA's passage and replaced with pronouncements expressly stating that benefit plans may specify "any age."  The only current support plaintiff can muster for this narrow definition is a recently *proposed* Treasury regulation, which by its terms will apply only prospectively if adopted.  In short, plaintiff's arguments amount to nothing more than an attempt to amend ERISA and insert a restriction that Congress chose not to include.  Both the Supreme Court and the D.C. Circuit repeatedly rejected similar requests to ignore ERISA's text and rewrite the statute.

**A.     The Plain Language Of ERISA And IRS Interpretations Of That Language Authorize The Normal Retirement Age Used In The RBAP.**

The fundamental flaw undermining plaintiff's theory of liability is that ERISA specifically authorizes employers to define "normal retirement age" below age 65 without limitation.  ERISA § 3(24) states unequivocally that "normal retirement age" is the *earlier* of:

> *(A) the time a plan participant attains normal retirement age under the plan, or*
>
> (B) the later of -- (i) the time a plan participant attains age 65, or (ii) the 5th anniversary of the time a plan participant commenced participation in the plan.

29 U.S.C. § 1002(24) (emphasis added).  Thus, ERISA expressly gives an employer flexibility to define "normal retirement age" in the plan itself -- a fact that plaintiff admits.  (Pl. Mem. 33) While plaintiff alleges that such an age must be "no lower than the real, customary age at which the Firm's workforce normally retires" (Cmplt. ¶ 86), ERISA contains no such requirement. Plaintiff's claim is also flatly inconsistent with his concession that the "statute does *not* establish a lower limit" on the age defined by a plan.  (Pl. Mem. at 34 (emphasis in original))

The lack of any limitation on this statutory definition is confirmed by IRS guidance interpreting the parallel, and identical, definition of "normal retirement age" found in the Tax Code. 26 U.S.C. § 411(a)(8).  In Revenue Ruling 78-120, the IRS stated that employers may use in their benefit plans *any* age below 65:

> In view of the definition of normal retirement age found in section 411(a)(8) of the Code, and ***in the absence of any statutory prohibition or limitation, a plan may specify any age that is less than 65 as the normal retirement age***.

Rev. Rul. 78-120, 1978 WL 42312 (1978) (emphasis added).  Revenue Ruling 78-120 applies to the definition of normal retirement age found in ERISA and expressly contradicts plaintiff's assertion that there is some limitation on employers' ability to define an age below 65 that is most suitable for their plans.[8]  This revenue ruling is consistent with the plain language of ERISA Section 3(24), which states that the normal retirement age may be "the time a plan participant attains normal retirement age under the plan" -- i.e., that normal retirement age may be defined in the plan as an age below 65.

---

[8] Regulations and revenue rulings issued pursuant to IRC § 411 are made applicable to ERISA by 29 U.S.C. § 1202(c).  Also, Presidential Reorganization Plan No. 4 of 1978 transferred authority of the Secretary of Labor to issue regulations and rulings under ERISA to the Secretary of the Treasury (with certain exceptions not relevant here).  *See* Reorg. Plan No. 4 of 1978, §§ 101(c), 104 Fed. Reg. 47, 713 (1978).

Federal courts interpreting the plain language of the statute have confirmed that it authorizes retirement plans to define normal retirement age below age 65. *See, e.g., Geib v. New York State Teamsters Conference Pension and Ret. Fund*, 758 F.2d 973, 976 (3d Cir. 1985) ("The statute clearly permits the use of a normal retirement age less than 65."); *Janowski v. Int'l Bhd. of Teamsters, Local No. 710 Pension Fund*, 673 F.2d 931, 937, 938 (7th Cir. 1982) ("Under § 411(a)(8) the trustees certainly could have established a normal retirement age of less than 65."), *vacated on other grounds*, 463 U.S. 1222 (1983). Nothing in the statute, IRS guidance, or case law supports plaintiff's claim that the RBAP's definition of normal retirement age is invalid. To the contrary, the materials plaintiff has attached to his motion recognize that "the IRS has found no statutory restrictions on the setting of normal retirement ages." (Pl. Mem., Ex. 11 at 3)

### B.    Plaintiff's Attempts To Circumvent The Plain Language Of The Statute And IRS Interpretations Are Meritless.

Faced with the clear text of the statute, plaintiff makes a variety of arguments in an attempt to circumvent ERISA's unambiguous language and insert into the statute restrictive language that it does not contain.

### 1.    Plaintiff Improperly Seeks To Reply On "Common Understanding" To Replace A Statutorily Defined Term.

Plaintiff claims that the statute can be read to support his arguments once the defined term "normal retirement age" is sliced apart and each word in the phrase read according to its "common meaning." But plaintiff's attempt to have each word interpreted in isolation and his appeal to "common meaning" fail because this canon of statutory construction applies only to terms that are not statutorily-defined.[9] This Court has previously rejected attempts to avoid

---

[9] *See Perrin v. United States*, 444 U.S. 37, 42 (1979) (canon applies to terms "unless otherwise defined"); *Morse v. Republican Party of Virginia*, 517 U.S. 186, 254 (1996) ("When words in a statute are *not otherwise defined*, it is (Continued…)

statutory definitions through appeals to "common meaning," holding that "where Congress has assigned a particular definition to a term, courts may not simply cast such definitions aside in favor the term's 'ordinary' meaning." *See Edmonds Institute v. Babbitt*, 93 F. Supp. 2d 63, 67 (D.D.C. 2000). In citing decisions such as *Perrin* (Pl. Mem. 30), plaintiff ignores the limited application of this canon.

Plaintiff's appeal to "common meaning" is particularly inappropriate within the context of ERISA since this highly technical statutory scheme provides technical definitions for many terms. For example, the term "states" commonly means one of the 50 states of the United States, but under ERISA the term is defined to include territories like Puerto Rico, the Virgin Islands, American Samoa, and Guam. *See* 29 U.S.C. § 1002(10). And "person," while commonly understood to refer to a human, is defined in ERISA to include a variety of business entities, including a "partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." *See* 29 U.S.C. § 1002(9). If Congress had wished that normal retirement age be defined based on the supposed "common meaning" of those words, then there would have been no reason for it to define that term in ERISA.[10] Settled law makes clear that "normal retirement age" must be interpreted based on this definition chosen by Congress and not in light of any purported "common meaning."

---

fundamental that they 'will be interpreted as taking their ordinary, contemporary, common meaning.'") (emphasis added); *see also American Federation of Government Employees, AFL-CIO v. Glickman*, 215 F.3d 7 (D.C. Cir. 2000) (holding that "[l]ack of a statutory definition . . . leads us to give the term its ordinary, common meaning").

[10] Any suggestion by plaintiff that this statutory definition is circular, defining normal retirement age by reference to itself, is incorrect. ERISA defines the term by reference to the plan. Plaintiff cannot change this fact by slicing up the statutory words and claiming that each word must be given some independent meaning. (Pl. Mem. 18, 34) The word within the statutorily-defined term, when read together, have the meaning given to them Congress, and that is the normal retirement age *as specified in the plan*.

###### 2.    Plaintiff Relies On Outdated And Superceded IRS Rulings That Pre-Date ERISA.

Lacking support in the text of the statute, plaintiff resorts to an out-dated, pre-ERISA definition of normal retirement in order to support his claims. But as explained above, the IRS has interpreted the definition of normal retirement age found in both ERISA and the Tax Code as providing that employers have flexibility to "specify *any age* that is less than 65 as the normal retirement age." *See* Rev. Rul. 78-120, 1978 WL 42312 (1978) (emphasis added). Plaintiff seeks to avoid this clear interpretation by relying on a group of revenue rulings, culminating in Revenue Ruling 71-147, 1971 WL 27025 (1971), that pre-date ERISA and were superceded by Revenue Ruling 78-120.

None of these earlier rulings are linked to the current statutory definition of "normal retirement age." *See* ERISA § 3(24), 29 U.S.C. § 1002(24); 26 U.S.C. § 411(a)(8). In Revenue Ruling 78-120, the IRS specifically recognized the changes made by ERISA to any previous understandings of the meaning of "normal retirement age." The agency noted that while previous revenue rulings, such as Revenue Ruling 71-147, linked normal retirement age to the age at which employees customarily retired, there was, after ERISA's enactment and the corresponding changes to the Tax Code, an "*absence of any statutory prohibition or limitation*" on a plan's definition of normal retirement age. *See* Rev. Rul. 78-120 (emphasis added). The IRS therefore rejected the suggestion made by plaintiff here that Congress "intended . . . to incorporate" a pre-ERISA understanding of normal retirement age into the statute. Congress did not need to define "normal retirement age" if its goal was to incorporate an earlier definition.

Significantly, plaintiff has cited no authority holding that these pre-ERISA interpretations apply to the statutory definition of "normal retirement age" in the statute. And at least one court has rejected an attempt to rely on pre-ERISA definitions of normal retirement age. *See, e.g., Janowski v. International Bhd. of Teamsters, Local No. 710 Pension Fund*, 500 F.

Supp. 21, 23 (N.D. Ill. 1980), *reversed on other grounds*, 673 F.2d 931 (7th Cir. 1982). In

*Janowski*, for example, the district court denied efforts to rely upon "the meaning of 'normal

retirement age' as generally understood prior to the enactment of E.R.I.S.A." and noted that this

"argument cannot stand against the language of the statute and its legislative history." *Id.* The

Court emphasized that ERISA's plain language gives employers discretion in setting the normal

retirement age under a plan, and that this reading was supported by ERISA's legislative history

and rulings such as Revenue Ruling 78-120. *Id.* at 22-23 (quoting from a House Conference

report stating that "[n]ormal retirement age is generally to be the age specified under the plan").

Plaintiff responds by claiming that the statements in Revenue Ruling 78-120 are

"dictum". But as plaintiff himself admits, the IRS was presented in that revenue ruling with the

general question of whether a "plan that provides for a normal retirement age of less than 65" is

permissible. (Pl. Mem. 41 (quoting Rev. Rul. 78-120)) Plaintiff also acknowledges that the IRS

specifically ruled that a plan is not unlawful "merely because it provides for a normal retirement

age of less than 65." (*Id.*) In order to get to this ruling, the IRS had to first conclude that there

was no "statutory prohibition or limitation" on the normal retirement age that a plan could

specify, and that because of this "a plan may specify any age that is less than 65 as the normal

retirement age." *See* Rev. Rul. 78-120. This is not dictum, but instead the essential reasoning

that led the IRS to conclude that plans could specify a normal retirement age below 65.[11]

Moreover, contrary to plaintiff's assertion that this ruling is "inconsistent . . . with

literally every other IRS pronouncement" (Pl. Mem. 42), the IRS has repeatedly reaffirmed its

---

[11] Plaintiff is also wrong when he claims that "a leading ERISA treatise" cited Revenue Ruling 78-120 in support of
the proposition that the age specified must be one at which customarily retire. (Pl. Mem. 41) The treatise in fact
cited to *nothing* to support the claim that there had to be some link with the customary retirement age. (Ex. G,
Michael J. Canan, *Qualified Retirement Plans*, 555) While the treatise did include a citation to Revenue Ruling
78-120, that citation came in a later sentence that discussed an entirely different proposition. (*Id.*)

interpretation in Rev. Rul. 78-120 that a plan sponsor may specify any age. *See* Rev. Rul. 80-276, 1980 WL 130294 (1980) (given the statutory definition of normal retirement age, "a profit-sharing plan may specify . . . any age for normal retirement if it is less than the later of age 65 or the completion of 10 years of participation"); Rev. Rul. 78-331, 1978 WL 42153 (1978) (anticipating that a plan may provide "a normal retirement age below the age employees normally retire"). This uniformity goes hand-in-hand with the IRS's repeated statements that the discussion of normal retirement age in Revenue Ruling 71-147 has been superceded and modified by a series of revenue rulings (including Revenue Ruling 78-120), and that these "changes were made, in view of the enactment of the Employee Retirement Income Security Act of 1974, to allow an employer to designate a normal retirement age *without having to show that it represents the age at which employees customarily retire or that it coincides with retirement or severance of employment.*"[12]  (emphasis added).

Indeed, while plaintiff asserts that the IRS has interpreted ERISA as barring low normal retirement ages, the very materials he attaches to his motion recognize that while "[b]efore ERISA was enacted, the IRS believed that normal retirement age should be age 65 or, if lower, the age at which employees customarily retire in the particular industry," under current law "the IRS has found *no statutory restrictions* on the setting of normal retirement ages." (Pl. Mem., Ex. 11 at 3 (emphasis added))  Thus, after ERISA's passage, "[t]here is no general

---

[12] IRS Tech. Adv. Memo. 8808006, 1987 WL 436015 (Nov. 27, 1987); IRS Tech. Adv. Memo. 8808005, 1987 WL 436014 (Nov. 27, 1987); IRS Tech. Adv. Memo. 8728006, 1987 WL 420514 (March 27, 1987). While technical advice memorandum and private letter rulings are not binding precedent, 26 U.S.C. § 6110(k)(3), the Supreme Court has stated that "such rulings do reveal the interpretation put upon the statute by the agency charged with the responsibility of administering the revenue laws." *See HanoverBank v. C.I.R.*, 369 U.S. 672, 686 (1962); *see also Wells Fargo & Co. and Subsidaries v. C.I.R.*, 224 F.3d 874, 886 (8th Cir. 2000) (private rulings "may provide evidence of the proper construction of the statute"); *Williamson v. C.I.R.*, 974 F.2d 1525, 1535 (9th Cir. 1992) (holding that "Commissioner's conclusion in Technical Advice Memoranda . . . reinforces our holding"). The technical advice memoranda cited here are particularly instructive since they consistently articulate the same interpretation of the Agency's own revenue ruling.

rule providing a minimum NRA [normal retirement age]." (*See* Ex. H, 1997 Enrolled Actuaries Meeting, Questions to IRS/Treasury and Summary of their Responses 35 (March 1997))

Essentially conceding that the outdated revenue rulings upon which he relies do not trump current IRS interpretation, plaintiff sets forth a second (and inconsistent) argument. While plaintiff relies heavily on revenue rulings himself, plaintiff asserts that the Court should disregard Revenue Ruling 78-120 because revenue rulings are not entitled to *Chevron* deference. (*See* Pl. Mem. 42)  At the outset, this argument does nothing to address the plain language of the statute.  It also represents an incomplete statement of the law.  It is well established that revenue rulings constitute "precedents to be used in the disposition of other cases," Rev. Proc. 89-14, 1989 WL 519042 (1989), and also serve as "official interpretation[s]" by the IRS of the tax laws. Treas. Reg. § 601.201(a)(6).  Revenue rulings also may be entitled to deference based on a series of factors, including whether they are in-line with the agency's consistent interpretation of the statute and whether they are supported by the statute's text.  *See Aeroquip-Vickers, Inc. v. C.I.R.*, 347 F.3d 173, 189 (6th Cir. 2003); *Del Commercial Properties, Inc. v. C.I.R.*, 251 F.3d 210, 214 (D.C. Cir. 2001).

Revenue Ruling 78-120 is entitled to deference in this case because its reasoning is supported by the statutory definition found in both ERISA and the Code and because the IRS has consistently interpreted this definition to give employers maximum flexibility.  *See* Rev. Rul. 80-276, 1980 WL 130294 (1980); Rev. Rul. 78-331, 1978 WL 42153 (1978).  As the Supreme Court has previously recognized, a revenue ruling that reflects an agency's longstanding interpretation and that is itself reasonable "attracts substantial judicial deference."  *See United States v. Cleveland Indians,* 532 U.S. 200, 219 (2001).  This is particularly so regarding Revenue Ruling 78-120 given that this interpretation was first offered soon after ERISA's passage.  *See National Muffler Dealers Ass'n v. United States*, 440 U.S. 472, 477 (1979) ("A

regulation may have particular force if it is a substantially contemporaneous construction of the statute by those presumed to have been aware of congressional intent."). Moreover, after this ruling and others like it were issued, Congress twice amended the Code's definition of normal retirement age without expressing any doubt regarding the agency's interpretation. *See* Pub. L. No. 99-509, 100 Stat. 1874, § 9203(b)(2) (1986); Pub. L. No. 101-239, 103 Stat. 2106, § 7871(b)(1) (1989). Given this record, Congress may be presumed to have ratified the interpretations offered in these rulings.[13]

### 3.    Plaintiff's Reliance On A Recently Proposed Treasury Regulation Does Not Establish That The RBAP Violates ERISA.

Plaintiff's reliance on a proposed Treasury Department regulation, which deals with the distinct issue of phased retirement programs, is misplaced. The regulation cited by plaintiff, which was proposed a year ago, has not been adopted and "does not represent an agency's considered interpretation of its statute." *See Clay v. Johnson*, 264 F.3d 744, 750 (7th Cir. 2001), *citing Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 845 (1986). The proposed regulation itself recognizes this and states that it "cannot be relied on before they are adopted as final regulations." 69 Fed. Reg. 65108-01, 65112 (Nov. 10, 2004).

Moreover, even if this particular regulation were adopted in its current form, it would not apply retroactively to the RBAP, but would instead apply prospectively only. The proposed regulation states that if adopted it would apply "to plan years beginning on or after the date of publication of the Treasury decision adopting these rules as final regulations in the Federal Register." *See* 69 Fed. Reg. at 65112. The fact that this proposed regulation would only

---

[13] *See United States v. Cleveland Indians*, 532 U.S. 200, 219 (2001) ("interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law"); *Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.").

apply prospectively further demonstrates that its interpretation of normal retirement age -- and the one put forward by plaintiff -- does *not* reflect the current state of the law.[14]  Nor could any such regulation trump the plain language of ERISA (perhaps one reason that the regulations proposed a year ago have not been enacted).  *See Individual References Services Group, Inc. v. Federal Trade Commission*, 145 F. Supp. 2d 6, 26 (D.D.C. 2001) ("[W]hen a statute is clear and unambiguous, consideration of administrative interpretation contrary to such language is inappropriate; the agency cannot override the congressional will as memorialized in the statutory language.").

### 4. The Legislative History Does Not Suggest Plaintiff's Interpretation Of The Statute.

There is similarly no support in ERISA's legislative history for plaintiff's claim that Congress implicitly adopted some pre-ERISA understanding of normal retirement age articulated in these outdated revenue rulings.  Plaintiff cannot cite a single instance in the legislative record in which the statutory definition of normal retirement age was linked to the age at which employees customarily cease working.  The best plaintiff can come up with are House and Senate Reports citing IRS Publication 778, admittedly not for its discussion of normal retirement age (Pl. Mem. 40), but rather for the irrelevant proposition that employees may make voluntary contributions to retirement plans.  *See* H.R. Rep. No. 93-807, pt. IV(F) n.63 & n.82

---

[14] Plaintiff's reliance on IRS Private Letter Ruling 200420030 (May 14, 2004) (Pl. Mem. 39-40) is similarly misplaced.  *First*, this private letter ruling specifically acknowledges that ERISA changed the rules regarding the definition of NRA: "This revenue ruling was subsequently modified by Rev. Rul. 78-120 . . . and superseded by Rev. Rul. 80-276. . . .  In both of those rulings, changes were made, in view of the enactment of the Employee Retirement Income Security Act of 1974 to allow an employer to designate a normal retirement age." *See* PLR 200420030.  *Second*, the IRS clearly did not require that the normal retirement age represent the age at which employees customarily retire, and in fact noted that age specified under the plan was *not* the age at which employees customarily retire: "In fact, covered employees typically retire earlier than age 60." *See id.*  *Third*, plaintiff notes that the normal retirement age in that case was approved because the IRS determined it was not being used as a "subterfuge" to permit in-service distributions.  (*See* Pl. Mem. 39)  Plaintiff has presented *no evidence* that the RBAP's normal retirement age has been used as a subterfuge to make in-service distributions.

(1974) (on Westlaw at ERISA-LH 8); S. Rep. No. 93-383, 1973 WL 12551, 1974 U.S.C.C.A.N. 4889, 5012 n.148 (1973). And while both reports include a discussion of normal retirement age, neither of them cite IRS Publication 778 or the IRS revenue rulings upon which plaintiff relies. *See* H.R. Rep. No. 93-807, pt. II (noting that "[a]s a general rule, the *plan will specify* what is normal retirement age. . .") (emphasis added).

Far from supporting plaintiff's arguments, ERISA's legislative history demonstrates Congress's intent to give employer's discretion in defining normal retirement under a plan by merely setting a ceiling as to the ages that may be specified. Indeed, even early bills defined normal retirement age as "the normal retirement age, specified under the plan," but not later than age 65 as the normal retirement age. *See* S.4, P.L 93-406, at *11 (Jan. 4, 1973) ) (on Westlaw at ERISA-LH 43) (Pl. Mem. 37); S. 1179, P.L. 93-406, at *10 (March 13, 1973) (on Westlaw at ERISA-LH 41) (same).[15] In fact, the legislative history supports the conclusion that employees may specify any age below age 65 as the normal retirement age. *See* H.R. Conf. Rep. 93-1280, 1974 WL 11542, 1974 U.S.C.C.A.N. 5038, 5062 (Aug. 12, 1974) (participants entitled to benefits after attaining "age 65 (or any earlier normal retirement age specified under the plan).").

### 5. The RBAP's Normal Retirement Age Is Not Invalid Because It Specifies A Period Of Time.

Unable to support his argument that these proposed regulations and superceded revenue rulings carry any weight, plaintiff falls back on the spurious claim that the RBAP's normal retirement age is invalid because it specifies a period of time (5-years service) rather than a specific "age." (Pl. Mem. 30-31) In keeping with his previous arguments, plaintiff is once

---

[15] Plaintiff incorrectly suggests that early bills did not include a definition of normal retirement. But as seen above, two of the bills plaintiff points to included definitions of normal retirement age very similar to the definition ultimately adopted. *See* S.4, P.L 93-406, at *11 (Pl. Mem. 40 n.32); S. 1179, P.L. 93-406, at *10 (same).

again unable to cite any authority supporting his claim.  As defendants explained in the briefing supporting their motion to dismiss, employers may define as "normal retirement age" a specific number of years of service completed by an employee.  *See Ryan v. Asbestos Workers Union Local 42 Pension Fund*, 2002 WL 90976, at **3-5 (3d Cir. 2002) (unpublished) (normal retirement age linked to 25 years of service).  This is consistent with the statutory definition of normal retirement age as "the *time* a plan participant attains normal retirement age under the plan."  ERISA § 3(24); 29 U.S.C. § 1002(24) (emphasis added).

Plaintiff fails to cite a single case or regulation holding that a plan's definition cannot be based upon a number of years of service with the employer.  Plaintiff also cannot distinguish *Ryan* on the grounds that the period of service specified in the plans was 25 years.  The actual length of service specified was irrelevant to the Third Circuit's decisions: the court did not say that 25 years of service was appropriate only because it was a proxy for old age.  *See, e.g., Ryan*, 2002 WL 90976, at **3-5.  Plaintiff's argument also ignores that the period of 25 years of service (like a period of five-years service) would have applied to most of the plans' participants, except those joining at age 40 and above.

*          *          *

In sum, plaintiff's arguments that the RBAP's normal retirement age is invalid lacks any support in ERISA and its legislative history.  Plaintiff also cannot cite to a single case or currently adopted regulation that requires that normal retirement be linked to the age at which employees customarily retire.  Plaintiff therefore is effectively asking this Court to ignore ERISA's text and insert a restriction that Congress chose not to include in the statute.  On this score, plaintiff's citation to a series of Fair Labor Standard Act ("FLSA") cases is particularly revealing.  Not only are these cases completely inapposite since they have nothing to do with normal retirement age and in fact pre-date ERISA's enactment by 30 years, but implicit in

plaintiff's selective quotation is the notion that this Court should interpret the ERISA statutory definition based upon the "purposes" of that statute.[16]  But where the text of ERISA is clear, as it is here, the Supreme Court has emphatically and repeatedly stated that the statutory text trumps any arguments based on ERISA's "purpose," noting that:

> [V]ague notions of a statute's "basic purpose" are nonetheless inadequate to overcome the words of its text regarding the specific issue under consideration. This is especially true with legislation such as ERISA, an enormously complex and detailed statute that resolved innumerable disputes between powerful competing interests -- not all in favor of potential plaintiffs.

*Mertens v. Hewitt Associates*, 508 U.S. 248, 261-62 (1993) (internal citation omitted); *see also Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 646-47 (1990); *Andes v. Ford Motor Co.*, 70 F.3d 1332, 1335 (D.C. Cir. 1996).  Plaintiff's request to rewrite ERISA is one he must address to Congress rather than this Court.

## IV.    Plaintiff Has Failed To Meet His Burden To Demonstrate That The Normal Retirement Age Is Invalid In The Context Of The RBAP.

Plaintiff argues in his brief in support of this motion that the RBAP's normal retirement age enables defendants to run rough-shod over participants' rights and "make[s] compliance with ERISA core defined benefit plan requirements optional."   (Pl. Mem. 4) Similarly, he argues that "*ERISA does not work* if normal retirement age can be defined as any date of a plan sponsor's choosing."   (*Id.* at 6, emphasis in original)   In his brief opposing defendants' motion to dismiss, however, plaintiff states he does *not* contend that the definition of normal retirement age used in the RBAP "is *always per se* unlawful, only that it is unlawful *in the context of the RBAP*."   (Dkt. No. 20, Pl. Opp. Mot. Dismiss at 10 n.18, emphasis in original)

---

[16] These cases are also off-point given that each hinged on an employer's efforts to invoke freedom of contract to avoid statutory restrictions and the court's attempt to give meaning to an undefined term in the FLSA.  *See, e.g., Walling v. Helmerich & Payne*, 323 U.S. 37, 40 (1944); (*see also* Pl. Mem. 36)  In this case, defendants do not appeal to freedom of contract, but rather to ERISA and its clear and unambiguous definition of  "normal retirement age."

This concession means plaintiff must show that use of the five-year normal retirement age in the RBAP *in fact* negates the protections ERISA provides participants. While his motion is filled with unsupported assertions and argument, he has submitted no affidavits or other evidence about actual experience of participants under the Plan.[17]

  *First*, plaintiff claims in Count One that the RBAP's normal retirement age is a subterfuge used to avoid paying participants amounts otherwise due when the RBAP makes lump sum payments. But plaintiff has failed to submit any evidence that if the RBAP's normal retirement age was changed to age 65, participants who leave PwC would in fact be entitled to larger lump sum payments. As explained in Part II.A., plaintiff concedes the Plan has no guaranteed interest crediting rate, and he has not presented evidence as to what rate should be used for projection purposes in calculating participants lump sum benefits. Thus, there is no evidence that any RBAP participant would receive increased lump sum benefits as result of rewriting the Plan's normal retirement age. At best for plaintiff, there is a disputed issue of material fact as to whether the RBAP's normal retirement age was in fact a device used to avoid paying benefits otherwise due as alleged in Count One.

  *Second*, the same lack of evidence that undermines plaintiff's arguments in Count One similarly undermines those in Counts Two and Three. While plaintiff provides a few hypothetical examples in his Complaint as to how the RBAP would allegedly discriminate based upon age if the normal retirement age were 65 rather than the RBAP's current definition of normal retirement age (Cmplt. ¶¶ 139-40, 148-50), he has offered no evidence that if the Plan's

---

[17] The portions of books and news articles that plaintiff submits with his motion are plainly hearsay. *See, e.g., U.S. v. Gale*, 314 F.3d 1, 5 (D.C. Cir. 2003) (characterizing statements "from news articles" as "hearsay"); *U.S. v. Esquivel*, 755 F. Supp. 434, 438 (D.D.C. 1990) (noting that "portions of a book" constituted "third-hand hearsay"). Such inadmissible hearsay cannot be used to support a motion for summary judgment. *See, e.g., Phillips v. Holladay Property Services, Inc.*, 937 F. Supp. 32, 36 (D.D.C. 1996) ("[I]nadmissible hearsay . . . cannot be used by Plaintiff to meet her burden on summary judgment."); *Garrett v. Lujan*, 799 F. Supp. 198, 200 (D.D.C. 1992) ("evidence is hearsay and is inadmissible to support a motion for summary judgment").

normal retirement age were 65 the Plan would be in violation of ERISA's age discrimination rules. Plaintiff's claim that the RBAP's normal retirement age is a device used to get around ERISA's age discrimination rules is once again empty given his failure to specify the rate that should be used for forward-projections. That projection rate plays a role in each of plaintiff's hypothetical examples and is therefore critical in determining whether plaintiff's theories have any basis in fact. (*Id.*) Plaintiff's failure to establish the rate that should be used or offer any other evidence that shows that the RBAP is in fact age discriminatory means that disputed issues of material fact remain, which preclude a partial summary judgment under these counts.

*Finally*, while plaintiff claims in support of Count Four that the RBAP's normal retirement age "would permit unlimited backloading of benefit accruals," (Pl. Mem. 8), plaintiff has offered no evidence that RBAP benefits are in fact backloaded. Plaintiff alleges several different theories as to how the RBAP violates anti-backloading requirements. (Cmplt. ¶¶157-59) As discussed in defendants' motion to dismiss, however, none of these theories states a legally viable claim for backloading. (Dkt. No. 9 at 21-24) The anti-backloading rule prevents a plan sponsor from excessively increasing benefits with increasing length of service. Plaintiff has submitted no evidence that the RBAP does this. Plaintiff's arguments amount to nothing more than supposition and conjecture, and again issues of material fact remain as to whether the RBAP's normal retirement age has somehow been used as a vehicle to violate ERISA's anti-backloading rules.

In sum, plaintiff has not provided any evidentiary basis to support his request that the Plan be rewritten to make the normal retirement age 65, much less demonstrated, as he must, that there is no genuine dispute with respect to his requested relief. For this reason as well, his motion should be denied.

## <u>CONCLUSION</u>

For the reasons stated above, plaintiff's motion for partial summary judgment should be denied.

Dated:  September 16, 2005                    Respectfully submitted,


                    s/ David E. Mendelson
                    _____
                    David E. Mendelson (471863)
                    KIRKLAND & ELLIS LLP
                    655 Fifteenth Street, N.W.
                    Washington, D.C.  20005-5793
                    (202) 879-5000 (phone)
                    (202) 879-5200 (fax)
                    dmendelson@kirkland.com

                    Robert J. Kopecky
                    Douglas G. Smith
                    Lauren Casazza
                    Jason W. Callen
                    KIRKLAND & ELLIS LLP
                    200 East Randolph Drive
                    Chicago, IL  60601
                    (312) 861-2000

                    *Counsel for Defendants*
                    *PricewaterhouseCoopers LLP,*
                    *PricewaterhouseCoopers LLP Board of*
                    *Partners and Principals, the Retirement*
                    *Benefit Accumulation Plan for Employees*
                    *of PricewaterhouseCoopers LLP,*
                    *the Savings Plan for Employees and Partners of*
                    *PricewaterhouseCoopers LLP, the Savings*
                    *Plan for Employees of*
                    *PricewaterhouseCoopers LLP,*
                    *the Administrative Committee to the Retirement*
                    *Benefit Accumulation Plan for Employees*
                    *of PricewaterhouseCoopers LLP,*
                    *the Administrative Committee to the Savings*
                    *Plan for Employees and Partners of*
                    *PricewaterhouseCoopers LLP,*
                    *the Administrative Committee to the Savings Plan*
                    *for Employees of PricewaterhouseCoopers LLP,*
                    *Lawrence H. Anderson, John J. Barry,*
                    *William L. Bax,*
                    *Michael J. Boberschmidt, W. Keith Booth,*

34

*David J. Breen, Willard W. Brittain, Jay Brodish,*
*J. Frank Brown, Philip J. Clements,*
*Ira Cohen, Marsha R. Cohen, Michael S. Collins,*
*Brian L. Cornell, James E. Daley,*
*G. William Dauphinais, Jonathan J. Davies,*
*Sherry T. Davis, Samuel A. DiPiazza,*
*Robert B. Dubner, John R. Dunleavy,*
*J. Christopher Everett, Iris D. Goldfein,*
*Robert H. Herz, Roger C. Hindman,*
*Stephen D. Higgins, Craig M. Jacobsen,*
*Eugene S. Katz, Scott W. Kaufman,*
*Richard P. Kearns, Peter Kelly, Richard R. Kilgust,*
*Wendy L. Kornreich, James P. Kovacs,*
*Frederic L. Laughlin, D. Leon Leonhardt,*
*Keith D. Levingston, Dennis J. Lubozynski,*
*Ronald T. Maheu, Philip P. Mannino,*
*Anthony F. Martin, James L. McDonald,*
*Donald A. McGovern, James P. McNally,*
*Nicholas G. Moore, Robert C. Morris, Jr.,*
*Dennis M. Nally, Eldon Olson, Shaun F. O'Malley,*
*Matthew O'Rourke, Gary Pell,*
*Lawrence F. Portnoy, Louise A. Root,*
*Denis J. Salamone, Robert M. Sarsany,*
*Frank V. Scalia, James J. Schiro,*
*Christine G. Snyder, Garrett L. Stauffer,*
*George G. Strong Jr., Paul J. Sullivan,*
*Robert P. Sullivan, Ann M. Thornburg,*
*Randell S. Vallen, Francis J. Van Kirk,*
*Peggy M. Vaughn, Gary W. Van Wagnen,*
*Gerald M. Ward, Brett D. Yacker,*
*and George J. Yost III.*


        s/ Patrick James Attridge
Patrick James Attridge (357973)
KING & ATTRIDGE
39 West Montgomery Avenue
Rockville, MD  20850
(301)-279-0780 (phone)
(301)-279-2988 (fax)

*Counsel for Defendants Donald T.*
*Nicolaisen and Walter G. Ricciardi*