**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TIMOTHY D. LAURENT,<br>On behalf of himself and on behalf of all<br>others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>PRICEWATERHOUSECOOPERS LLP, et al,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 05-1291 (PLF)<br>)<br>) Judge Paul L. Friedman<br>)<br>)<br>) |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT**
**OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**
**IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Rules 7(h) and 56.1 of the United States District Court for the District of Columbia, defendants respectfully submit this response to plaintiff's statement of material facts in support of his motion for partial summary judgment. This response accompanies and supports defendants' Memorandum Of Points and Authorities in opposition to plaintiff's motion.

In Section I of this response, defendants respond to plaintiff's statement of material facts for which he claims there is no genuine issue. In Section II, defendants submit a statement of additional material facts that are in dispute. Finally, in Section III defendants submit a counter statement of undisputed facts that are material to plaintiff's claims and further demonstrate why his motion for partial summary judgment should be denied.

**I.    Response To Plaintiff's Statement Of Material Facts As To Which There Is No Genuine Issue.**

1.    Defendants do not dispute the statements in paragraph 1.

2.    Defendants do not dispute that plaintiff is a former employee of PricewaterhouseCoopers, LLP ("PwC"), or that he terminated his employment with PwC in 2002 and received a single lump sum distribution of his benefits on May 20, 2002. Defendants deny that plaintiff is a participant in the RBAP, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7).

3.    Defendants do not dispute that the RBAP is a self-described "defined benefit" pension plan. The remainder of the first sentence of paragraph 3 contains legal assertions, not facts, to which no response is required. Defendants also state that ERISA § 3(35), IRC §§ 401(a) and 414(j), and Treasury Regulation § 1.401-1(b)(1)(i) speak for themselves. Defendants do not dispute the remaining statements in paragraph 3.

4.    The documents selectively quoted, paraphrased and characterized by plaintiff speak for themselves. Defendants do not dispute that PwC designed the RBAP and that the firm has assisted clients with the design of other cash balance benefit plans.

5.    The RBAP, which plaintiff selectively quotes, paraphrases and characterizes, speaks for itself. (Def. Mem. Ex. A)[1]

6.    Defendants do not dispute that paragraph 6 correctly quotes the applicable definition of "Normal Retirement Age" in the RBAP and that participants' benefits under this RBAP vest no later than Normal Retirement Age.

---

[1] The entire RBAP was submitted to the Court as Exhibit C to defendants' memorandum in support of their motion to dismiss filed on July 29, 2005. For the Court's convenience, excerpts of the Plan referred to in plaintiff's motion for summary judgment and defendants' opposition are attached as Exhibit A in the appendix to this response and defendants' memorandum of points and authorities in opposition to plaintiff's motion.

7.      Defendants state that the RBAP (Ex. A) speaks for itself and dispute that plaintiff's selective quotation, paraphrase and characterization of the RBAP in paragraph 7 accurately describe the terms, operation and affect of the relevant provision of the Plan.

8.      Defendants do not dispute that, consistent with the provisions of the RBAP, plaintiff's deemed account balance was not projected to an age past the Plan's "Normal Retirement Age" in calculating the amount of plaintiff's lump-sum distribution.  The first and third sentences in paragraph 8 contain legal assertions to which no response is necessary. Defendants also maintain that these are incorrect statements of law and deny plaintiff's suggestion that the RBAP's normal retirement age is not legitimate and that plaintiff had a right to continue earning investment credits after receiving a payment of his entire benefit from the RBAP.

9.      The statements in paragraph 9 regarding summary plan descriptions are immaterial to plaintiff's motion since plaintiff expressly disclaims reliance on any statements in the RBAP summary plan descriptions to support his motion.  (Pl. Mem. 13 n. 14)  Thus, no response is necessary to any of these statements.[2]  Defendants nevertheless specifically dispute plaintiff's characterization of the law.  Defendants further state that the regulations plaintiff cites speak for themselves and deny plaintiff's quotation, paraphrase and characterization of them in paragraph 9.  Defendants state that the RBAP SPDs expressly provide that lump sum payments consist of an amount equal to participants' vested account balances.  (*See, e.g.,* Ex. E at 11)  The RBAP plan document also expressly defines normal retirement age under the Plan as "[t]he

---

[2] To the extent plaintiff seeks to rely on the summary plan descriptions in support of this claim, there is a material issue of fact regarding whether plaintiff ever read or relied upon any of the summary plan descriptions.  He has presented no such evidence.

earlier of the date a Participant attains age 65 or completes five (5) Years of Service." (Ex. A

§ 2.32) Defendants dispute the assertion that all of the RBAP's summary plan descriptions from

1999 to the present state that the RBAP's normal retirement is age 65. Defendants further state

that the summary plan descriptions speak for themselves and therefore dispute any

mischaracterizations of them in paragraph 9.

10.    Defendants dispute that paragraph 10 accurately quotes the definition of normal

retirement age that currently appears on the RBAP Benefits Express Website. (*See* Def. Mem.

Ex. J, Benefits Express Glossary (Aug. 31, 2005))

11.    Defendants state that the RBAP's Form 5500 filings paraphrased in paragraph 11

speak for themselves and dispute that plaintiff accurately characterizes those documents.

Defendants acknowledge that for the years 1994 through 2003, the annual IRS Form 5500 for the

RBAP stated that one of the Plan's actuarial assumptions was that partners and principals were

assumed to retire at age 60, or immediately if over age 60, and that employees were assumed to

retire at age 65, or immediately if over age 65. However, defendants dispute that these actuarial

assumptions have anything to do with the "normal retirement age" defined in the RBAP.

Defendants never represented to the IRS that the "normal retirement age" defined in the RBAP

and used for calculating participants' benefits was age 65. To the contrary, the Plan submitted to

the IRS specifically stated that the normal retirement age defined in the RBAP was below age

65, and the IRS issued two favorable determination letters approving the RBAP's terms as

compliant with applicable law, including the provisions defining the normal retirement age. (*See*

Ex. A, RBAP § 2.32; Ex. F; Ex. G)

12.    Defendants lack knowledge or information sufficient to form a belief as to the

truth of the categorical assertion in the first sentence of paragraph 12 that no participants were

ever informed that they had reached normal retirement age. Thus, defendants dispute this assertion. Defendants acknowledge that nothing in the RBAP requires that Plan participants be informed that they have reached normal retirement age. Defendants dispute that the RBAP does not provide for actuarial adjustments of the normal retirement benefit. Defendants do not dispute that the RBAP plan administrator does not issue "suspension of benefits notices" to each RBAP participant who has attained normal retirement age under the Plan. Defendants dispute each and every remaining statement in paragraph 12 and further state that the Department of Labor regulations cited here speak for themselves and therefore deny any mischaracterizations of these regulations.

13.      Defendants state that Ira Cohen's September 30, 1999 letter to IRS Commissioner Charles O. Rossotti and Deputy Assistant Secretary for Tax Policy Jonathan Talisman, which plaintiff selectively quotes, paraphrases and characterizes, speaks for itself. Defendants do not dispute that PwC informed the IRS in 1999 that it believed that a normal retirement age of "five years of participation in the plan" complied with applicable law. Defendants also state that the various journal articles cited in footnote 16 speak for themselves and dispute that plaintiff accurately paraphrases, summarizes and characterizes the contents of those articles. For example, defendants dispute plaintiffs' characterization of these articles as "questioning the legality" of defining normal retirement age as below age 65. Also, one of the articles plaintiff cites in support of this contention, Exhibit 11 to plaintiff's motion (*See* Pl. Mem. at 14 n.16) expressly states: "the IRS has found no statutory restrictions on the setting of normal retirement ages." (Ex. 11 at 3.) Moreover, the article observes in particular that "[t]he IRS permits normal retirement ages set lower than age 55." (*Id.*)

14.     Defendants state that Ira Cohen's September 30, 1999 letter to IRS Commissioner
Charles O. Rossotti and Deputy Assistant Secretary for Tax Policy Jonathan Talisman speaks for
itself and dispute that plaintiff's selective quotation, paraphrase and characterization of that letter
accurately portrays its contents.  For example, defendants dispute plaintiff's suggestion that "the
letter blames the IRS for its use of the fictional retirement age."

15.     Defendants state that Ira Cohen's September 30, 1999 letter to IRS Commissioner
Charles O. Rossotti and Deputy Assistant Secretary for Tax Policy Jonathan Talisman speaks for
itself and dispute that plaintiff's selective quotation, paraphrase and characterization of that letter
accurately portrays its contents.  Footnote 17 to paragraph 15 contains legal assertions to which
no response is required.

16.     Defendants state that Ira Cohen's September 30, 1999 letter to IRS Commissioner
Charles O. Rossotti and Deputy Assistant Secretary for Tax Policy Jonathan Talisman speaks for
itself and dispute that plaintiff's selective quotation, paraphrase and characterization of that letter
accurately portrays its contents.

17.     Defendants state that Ira Cohen's September 30, 1999 letter to IRS Commissioner
Charles O. Rossotti and Deputy Assistant Secretary for Tax Policy Jonathan Talisman speaks for
itself and dispute that plaintiff's selective quotation, paraphrase and characterization of that letter
accurately portrays its contents.  For example, defendants dispute plaintiff's characterization that
the "low normal retirement age" was designed to "foil" the rules created by the IRS.

18.     Defendants state that Ira Cohen's September 30, 1999 letter to IRS Commissioner
Charles O. Rossotti and Deputy Assistant Secretary for Tax Policy Jonathan Talisman speaks for
itself and dispute that plaintiff's selective quotation, paraphrase and characterization of that letter

accurately portrays its contents.  For example, defendants deny that they told the IRS that it should not enforce its regulations "as applied to *cash balance* type defined benefit plans."

19.    Defendants state that Ira Cohen's September 30, 1999 letter to IRS Commissioner Charles O. Rossotti and Deputy Assistant Secretary for Tax Policy Jonathan Talisman speaks for itself and dispute that plaintiff's selective quotation, paraphrase and characterization of that letter accurately portrays its contents.

20.    Defendants state that Ira Cohen's September 30, 1999 letter to IRS Commissioner Charles O. Rossotti and Deputy Assistant Secretary for Tax Policy Jonathan Talisman speaks for itself and dispute that plaintiff's selective quotation, paraphrase and characterization of that letter accurately portrays its contents.  For example, defendants deny that PwC has "acknowledged" that PwC's use of a 5-year retirement age in the RBAP is subject to "manipulation" or that the RBAP violates the anti-backloading rules.

21.    Defendants state that Ira Cohen's September 30, 1999 letter to IRS Commissioner Charles O. Rossotti and Deputy Assistant Secretary for Tax Policy Jonathan Talisman speaks for itself and dispute that plaintiff's selective quotation, paraphrase and characterization of that letter accurately portrays its contents.

II.    **Statement Of Additional Material Facts As To Which Defendants Contend There Is A Genuine Issue Necessary To Be Litigated.**

As noted above, defendants maintain that the RBAP's normal retirement age provision is valid as a matter of law and has filed a motion to dismiss certain counts in plaintiff's Complaint on that basis.  To the extent the Court rejects defendants' position that the normal retirement age is valid as a matter of law, however, defendants submit the following statement of material facts as to which there is a genuine issue necessary to be litigated in order to resolve plaintiff's right to judgment with respect to the normal retirement age provision of the RBAP.

22.    There are material issues of fact regarding whether (1) plaintiff has been injured by the RBAP's normal retirement age, or (2) plaintiff's benefits would be any greater if the Court granted the relief he requests and recalculated his benefits based on a normal retirement age of 65. Plaintiff has submitted no evidence that he has suffered any such injury, and therefore that he has standing to pursue the claims asserted in Counts One through Four.

23.    Although plaintiff claims in Count One that his lump sum payment was incorrectly calculated because defendants failed to "project[] his hypothetical account balance to age 65 using the RBAP's investment crediting rate" (Cmplt. ¶ 130), plaintiff does not identify the crediting rate he believes should be used for projection purposes. Plaintiff has failed to submit any evidence supporting any crediting rate that he contends would be used in performing a "whipsaw calculation" using a normal retirement age of 65. There is a triable issue of fact regarding what rate, if any, should be used in performing such a calculation, if one were required.

24.    If this Court were to rule that the RBAP must be rewritten so that the normal retirement age is 65 as plaintiff requests and that a projection to that age were required in determining plaintiff's lump sum, there is a triable issue of fact whether plaintiff is entitled to any additional benefits based on such a projection.[3]

25.    To the extent plaintiff contends the crediting rate should be tied to the rate earned on plaintiff's investment choices, plaintiff has offered no evidence regarding how the investment funds he selected performed while he was a participant under the RBAP and there is a triable

---

[3] Defendants do not concede that, if he attempted to do so, plaintiff would be able to adduce sufficient evidence to survive a motion for summary judgment against him on this issue.

issue of fact as to whether a calculation based on such a rate would entitle plaintiff to any additional benefits.

26.     Plaintiff has failed to put forward any evidence that he suffered any injury resulting from the failure of the Plan to perform a "whipsaw calculation" in determining the amount of his lump sum payment

27.     Plaintiff claims in Counts Two and Three that both his accrued benefit and his rate of benefit accrual were reduced on account of age. (Cmplt. ¶¶ 135, 145)  Under each count, whether such reduction occurred under plaintiff's theories would depend on the rate at which plaintiff's account balance grew from year-to-year and the rate chosen to project plaintiff's accrued benefit forward to age 65. (Cmplt. ¶¶ 138-141; 147-150)  Plaintiff has offered no evidence as to the rate growth of his account balance or described what rate should be used for projection purposes.  Thus, plaintiff has failed to offer any evidence that his accrued benefit or rate of benefit accrual were in fact reduced.

28.     Plaintiff claims in Count Four that the RBAP violates ERISA's anti-backloading rules. (Cmplt. ¶¶ 157-160)  If this Court decides that the claim in this count does not fail as a matter of law and that the RBAP's normal retirement age is age 65, there remain genuine issues of fact regarding whether benefits under the Plan are in fact unlawfully backloaded and whether plaintiff suffered any injury as a result.

29.     There is a material issue of fact regarding whether the normal retirement age used in the RBAP was designed to "avoid having to pay out tens of millions of dollars in retirement benefits otherwise required by law." (*See* Pl. Mem. 3)  Plaintiff's motion has identified no evidence to support this allegation.

30.     There is a material issue of fact regarding plaintiff's contention that other cash balance plan sponsors rejected a five-year normal retirement age because they "had the sense enough to stay away from something that sounded too good to be true."  (Pl. Mem. 4)  Plaintiff has submitted no evidence to support this assertion.

31.     To the extent this Court determines that the "common" meaning of "retirement" and "normal retirement age" are material to the issue presented by plaintiff's motion, there is a disputed issue of fact regarding the common meanings of these terms.

**III.     Statement Of Additional Material Facts As To Which There Is No Genuine Issue And That Require Denial Of Plaintiff's Motion**

In further opposition to plaintiff's motion for partial summary judgment, defendants submit the following statement of additional material facts as to which there is no genuine issue.

32.     The IRS has issued determination letters stating that the RBAP complies with applicable provisions of the Internal Revenue Code.  In February 1996, PwC applied for and received a determination letter from the Internal Revenue Service.  (Ex. E)  That determination letter acknowledged that the terms of the Plan, which included the five-year normal retirement age definition, met the requirements of the Tax Code.  (*Id.*)

33.     Today's workforce is highly mobile.  Over the period 1983-1996, the fraction of all workers with 20 or more years of service with their current employer was consistently around 10%.  *See* Ex. B, Forcier, *2005 Supplement* at 3-3 to 3-4 (quoting 2004 study published by the Education Resource Information Center).

34.     The RBAP was designed to comply with requirements of ERISA while offering PwC's mobile workforce the option of earning credits to their accounts based on their selected "investment measures."  (*See* Cmplt., Ex. 1 at 4-5)  Under the RBAP, each individual's account is credited with investment gains based on the performance of the particular investment measure

they select. (Ex. C at 3) RBAP participants are presented with a menu of investment options and may select from among over a dozen separate investment funds, each having different levels of potential risk and reward. (*Id.*) The RBAP offers a variety of different investment vehicles, including a money market account, short and long-term bonds, balanced funds with a mix of both stocks and bonds, and small and large cap funds. (Ex. D, Att. 1) This menu of investment options is the same as that offered to participants in PwC's 401(k) plans. (Ex. D ¶ 3)

35.    While many other cash balance plans provide periodic interest credits based on a fixed or variable rate linked to an index such as Treasury securities (Cmplt. ¶ 66), the RBAP offers participants the opportunity to increase their account balances beyond increases that would be provided by such interest credits by selecting investment measures best suited to their personal retirement goals and risk profile. (Ex. C at 4; Ex. D, Att. 1) Participants with a more extended time horizon to retirement can select a mixture of aggressive and conservative funds as investment measures, while those who wish to invest more conservatively can select more stable funds, such as the Plan's money market fund option. (Ex. C at 4; Ex. D, Att. 1)

36.    Plaintiff received greater benefits under the RBAP than he would have if Coopers & Lybrand LLP's ("C&L") traditional defined benefit plan had continued in existence. (Ex. C at 5-6; Ex. D ¶ 2) Plaintiff is a former employee of C&L. (Ex. D ¶ 12) Before merging with Price Waterhouse LLP in 1998, C&L offered its employees a traditional defined benefit plan known as the "career average" Retirement Plan. (Ex. C at 5-6)

37.    One year after the merger of C&L and Price Waterhouse, the "career average" Retirement Plan merged with Price Waterhouse's cash balance plan to form the current RBAP. (*Id.* at 5) The RBAP provides that benefits for former C&L employees are to be calculated based on the traditional "career average" pension formula of the former C&L Retirement Plan, and

11

such participants are entitled to this amount if the formula would produce a greater benefit than the RBAP formula. (*Id.* at 5-6)

38.     When plaintiff left PwC in 2002, the benefit he accrued under the C&L "career average" pension plan through June 30, 1998, plus his lump sum payment included his RBAP account balance. (Ex. D ¶ 2) Thus, plaintiff earned a larger amount of benefits under the RBAP's cash balance formula than he would have been entitled to under the traditional C&L defined benefit pension plan. (*Id.*)

39.     The use of a low normal retirement age in a cash balance plan was explained in detail to senior officials of the IRS by PwC. (Cmplt., Ex. 1) On September 30, 1999, Ira Cohen wrote to the IRS to explain how the "whipsaw effect" could discourage cash balance plan sponsors from offering plan participants the opportunity to earn interest credits that better reflected the amount participants would likely earn if they could self-invest their retirement benefits. (*Id.* at 4-5) In his letter, Mr. Cohen stated that employers who preferred offering their employees greater rates of return could avoid this issue entirely by using a "low normal retirement age." (Cmplt., Ex. 1 at 5)

40.     Mr. Cohen explicitly detailed in his letter why ERISA authorized a "low normal retirement age" like the one specified in the RBAP. (*Id.*) He emphasized that IRS guidance issued contemporaneously with ERISA regulations "permit[s] unrestricted use of low normal retirement ages." (*Id.*)

41.     Mr. Cohen urged the IRS to refrain from any action that would curb the use of "low normal retirement ages" unless it first eliminated the "whipsaw effect". (*Id.* at 6) He also observed that only Congressionally-enacted amendments to ERISA's definition of "normal retirement age" could eliminate use of "low normal retirement ages." (*Id.*)

42.     Around the same time Mr. Cohen's letter was received by the IRS and published

in the journal Tax Notes Today, several articles were published in benefits journals that

discussed the RBAP's normal retirement age.  (Cmplt. ¶ 94 n.30; Pl. Mem. at 14 n.16)

43.     Five and a half years after this letter was received by IRS and these various

articles were published, the IRS issued a second favorable determination letter on the RBAP to

PwC dated March 22, 2004.  (Ex. F)

Dated:  September 16, 2005                    Respectfully submitted,


                                             _____s/ David E. Mendelson_____
                                             David E. Mendelson
                                             KIRKLAND & ELLIS LLP
                                             655 Fifteenth Street, N.W.
                                             Washington, D.C.  20005-5793
                                             (202) 879-5000 (phone)
                                             (202) 879-5200 (fax)
                                             dmendelson@kirkland.com

                                             Robert J. Kopecky
                                             Douglas G. Smith
                                             Lauren O. Casazza
                                             Jason W. Callen
                                             KIRKLAND & ELLIS LLP
                                             200 East Randolph Drive
                                             Chicago, IL  60601
                                             (312) 861-2000 (phone)
                                             (312) 861-2200 (fax)


                                             *Counsel for Defendants PricewaterhouseCoopers
                                             LLP, PricewaterhouseCoopers LLP Board of
                                             Partners and Principals, the Retirement Benefit
                                             Accumulation Plan for Employees of
                                             PricewaterhouseCoopers LLP, the Savings Plan for
                                             Employees and Partners of
                                             PricewaterhouseCoopers LLP, the Savings Plan for
                                             Employees of PricewaterhouseCoopers LLP, the
                                             Administrative Committee to the Retirement Benefit
                                             Accumulation Plan for Employees of
                                             PricewaterhouseCoopers LLP, the Administrative*

*Committee to the Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP, the Administrative Committee to the Savings Plan for Employees of PricewaterhouseCoopers LLP, Lawrence H. Anderson, John J. Barry, William L. Bax, Michael J. Boberschmidt, W. Keith Booth, David J. Breen, Willard W. Brittain, Jay Brodish, J. Frank Brown, Philip J. Clements, Ira Cohen, Marsha R. Cohen, Michael S. Collins, Brian L. Cornell, James E. Daley, G. William Dauphinais, Jonathan J. Davies, Sherry T. Davis, Samuel A. DiPiazza, Robert B. Dubner, John R. Dunleavy, J. Christopher Everett, Iris D. Goldfein, Robert H. Herz, Roger C. Hindman, Stephen D. Higgins, Craig M. Jacobsen, Eugene S. Katz, Scott W. Kaufman, Richard P. Kearns, Peter Kelly, Richard R. Kilgust, Wendy L. Kornreich, James P. Kovacs,Frederic L. Laughlin, D. Leon Leonhardt, Keith D. Levingston, Dennis J. Lubozynski, Ronald T. Maheu, Philip P. Mannino, Anthony F. Martin, James L. McDonald, Donald A. McGovern, James P. McNally, Nicholas G. Moore, Robert C. Morris, Jr., Dennis M. Nally, Eldon Olson, Shaun F. O'Malley, Matthew O'Rourke, Gary Pell, Lawrence F. Portnoy, Louise A. Root, Denis J. Salamone, Robert M. Sarsany, Frank V. Scalia, James J. Schiro, Christine G. Snyder, Garrett L. Stauffer, George G. Strong Jr., Paul J. Sullivan, Robert P. Sullivan, Ann M. Thornburg, Randell S. Vallen, Francis J. Van Kirk, Peggy M. Vaughn, Gary W. Van Wagnen, Gerald M. Ward, Brett D. Yacker, and George J. Yost III.*

s/ Patrick James Attridge

Patrick James Attridge (357973)
KING & ATTRIDGE
39 West Montgomery Avenue
Rockville, MD  20850
(301)-279-0780 (phone)
(301)-279-2988 (fax)

*Counsel for Defendants Donald T. Nicolaisen and Walter G. Ricciardi*

14