## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TIMOTHY D. LAURENT** : | |
| : | |
| **On behalf of himself and on** : | |
| **behalf of all others similarly situated,** : | |
| : | |
| **Plaintiff,** : | **Civil Action No. 05-1291 (PLF)** |
| **v.** : | |
| : | |
| **PRICEWATERHOUSECOOPERS LLP,** *et al.* : | |
| : | |
| : | |
| **Defendants.** : | |
| : | |

### PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
### AND APPOINTMENT OF CLASS COUNSEL,
### AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Plaintiff Timothy D. Laurent, through undersigned counsel, pursuant to Rule 23

of the Federal Rules of Civil Procedure and Local Rule 23.1, hereby respectfully moves

this Court to certify this action as a class action under Fed. R. Civ. P. 23(b)(1) and/or

(b)(2).

This is an ERISA[1] action. Plaintiff, a former employee of Defendant

PricewaterhouseCoopers LLP ("PwC" or the "Firm"), challenges the legality of the

design and operation of three ERISA-governed PwC-sponsored employee benefit plans

(the "Plans"). Those three plans are: a defined benefit "cash balance" pension plan (the

"Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP"

or "RBAP"), and two defined contribution 401(k) plans (the "primary" and "segregated"

"401(k) Plans").

---

[1] Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 et seq.

Some of the reasons, discussed more fully below, for why this case is ideally suited for class action treatment under Fed. R. Civ. P. 23 include the following facts and circumstances:

- All of the questions of both liability and relief presented relate to issues that are common and indeed identical to every member of the proposed Class. Liability and relief can be established entirely on cross-motions for summary judgment.

- The issue of liability can in each instance be decided as a matter of law. The challenges Plaintiff brings are legal and there are few if any facts genuinely in dispute. Liability depends on whether the Plans' terms violate well-established statutory norms and whether the Plans' fiduciaries breached their duties under ERISA by implementing unlawful Plan terms.

- No issue of liability turns in whole or in part on the specific circumstances of particular employees: the individual characteristics of the proposed Class' members have no bearing on whether the terms of the Plans violate ERISA or whether the Plans' fiduciaries violated their fiduciary duties by implementing unlawful Plan terms.

- The proposed Class is well-defined and comprised of tens of thousands of participants virtually all of whom, like Plaintiff, were or are participants in both the defined benefit plan (the RBAP) and one of the two 401(k) Plans.

- All questions of relief also present nothing but questions of law that also can to be decided on cross-motions for summary judgment.

- Any monetary relief ordered will flow directly from the injunctive and declaratory relief sought and be in the nature of a group remedy. Relief would be computed by means of objective standards and not be dependent in any way on the intangible or subjective differences of Class member's circumstances.

In this motion, Plaintiff shows that this case is in fact so well-suited for class treatment that it can and should be certified under not just one but three provisions of Rule 23: Rule 23(b)(1)(A), 23(b)(1)(B) and/or 23(b)(2).

As an initial matter, as discussed below, the prerequisites of Rule 23(a) are all met because the factual underpinnings and legal theories Plaintiff advances apply to the

proposed class, and the relief Plaintiff seeks is no different than the relief sought for the proposed class.

Moreover, the requirements of Rule 23(b)(1)(A) are satisfied because the prosecution of separate actions would create a risk of incompatible standards of conduct for the three employee benefit plans at issue here. The requirements of Rule 23(b)(1)(B) are satisfied because a ruling in this case would as a practical matter be dispositive of the interests of other putative class members not parties to the adjudication, or would substantially impair or impede their ability to protect their interests.

Additionally (or alternatively), the requirements of Rule 23(b)(2) are satisfied because Plaintiff also seeks injunctive and declaratory relief (under ERISA § 502(a), 29 U.S.C. § 1132(a)) and that relief predominates over the monetary relief sought that would flow directly from the requested injunctive and declaratory relief.

## FACTUAL BACKGROUND

A.    **Case Overview.**

Plaintiff has put at issue the legality of an aggressive, ongoing deferred compensation scheme that PwC designed for its partners centered around the RBAP and two 401(k) Plans. In place since the RBAP's effective date of July 1, 1994, the scheme is designed to avoid Internal Revenue Code ("Tax Code") and ERISA nondiscrimination standards in a way that allows partners to stack tax-subsidized retirement benefits in their favor to a degree not permitted under the rules. *See* First Amended Class Action Complaint, July 5, 2005 (Doc. 3) ("Complaint" or "Compl."), *passim.*

As reflected in the eleven count Complaint, the scheme results in numerous violations of well-established statutory norms – norms either explicitly set forth in

ERISA and applicable regulations (and hence actionable under via ERISA § 502(a)(3),

29 U.S.C. § 1132(a)(3)) and/or norms found in the Tax Code and incorporated by

reference into the Plans (and hence enforceable under ERISA § 502(a)(3), 29 U.S.C.

§ 1132(a)(3) as well).[2]

### 1.    <u>Violations of ERISA's Accrued Benefit Standards</u>.

Counts One through Five contend that PwC designed and operates the RBAP in

such a way as to violate standards that regulate pension plan benefit accruals.  The result

is that all participants are systematically underpaid amounts due them when they receive

their benefits in the form of either a lump distribution or an annuity.  The Complaint

alleges that PwC accomplishes this largely by defining the "normal retirement age" under

the Plan as the 5th anniversary of each employee's date of hire and then considering

benefits paid on that basis as compliant with ERISA's defined benefit plan standards,

when in fact forfeitures of accrued benefits, age discrimination and excessive

backloading are the inevitable result.

### 2.    <u>Violation of ERISA, the Code's and the Plan's Nondiscrimination</u> <u>Standards</u>.

Counts Six and Seven directly challenge the Plans' unlawful discrimination

---

[2] ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates this title [Title I of ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."  ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  As shown elsewhere, Defendants attempt to avoid joining issue with the substance of the Complaint by, among other things, mischaracterizing Plaintiffs' claims as mere "claims for benefits" arising under ERISA § 502(a)(1)(B), 29 U.S.C.  § 1132(a)(1)(B).  *See, e.g.,* Ind. Defs. Mtn. to Dismiss (Doc. 21) at 2; Mem. in Support (Doc. 21) at 1, 5 (repeatedly asserting without supporting citation that Plaintiffs' claims in Counts One through Nine are brought under ERISA § 502(a)(1)(B)).  But the benefits that Plaintiff and proposed Class seek are not currently available under the terms of the Plans, at least as applied by Defendants – they are benefits due as a matter of law.  Plaintiff's claims under ERISA § 502(a)(3), seeking to correct the Plans' unlawful design and administration – in essence, to reform the Plans and the principles under which they are operated – must precede any simple claim for benefits that would be actionable under ERISA § 502(a)(1)(B).  Defendants themselves recognize this by not demanding that, as in a typical claim for benefits case, Plaintiff first exhaust his administrative remedies under the Plans.

against rank-and-file PwC employees in contributions and benefits as violative of the Plan terms that incorporate Internal Revenue Code "nondiscrimination" standards as well as ERISA § 510, 29 U.S.C. § 1140.

> **3.      Additional Statutory Violations Arising Out of the Plan's Participant Directed Feature.**

Counts Eight, Nine and Ten allege violations stemming from the RBAP's virtually unique 401(k)-style "participant directed" design, under which Defendants maintain control over a key aspect of participants' pension benefit formula -- *i.e.,* the menu of hypothetical investment options that determine the rate at which investment credits are awarded.

Plaintiff alleges that this plan design, as implemented by Defendants, violates the terms of the RBAP that incorporate the Tax Code's "definitely determinable" benefits standard, which requires that a defined benefit plan state its formula objectively and in a way that precludes employer discretion.  *See* Count Eight.  Plaintiff alleges that the design also violates ERISA's anti-cutback rule resulting from changes to the menu of hypothetical investment measures and the RBAP's failure to keep track of previously available measures that favored participants, as required by directly enforceable Treasury Department regulations.  *See* Count Nine.  Plaintiff further alleges that Defendants violate ERISA's fiduciary standards by pitting partners against participants in a zero-sum economic equation that necessarily results in breaches of fiduciary duty that taint the benefit formula itself.  *See* Count Ten.

> **4.      Fiduciary Breach with respect to the Investment of Plan Assets.**

Finally, Count Eleven raises fiduciary claims on behalf of the RBAP and 401(k) Plans for the Plan fiduciaries' alleged mismanagement of those Plans' assets by investing

those assets (the RBAP's $2 billion and the 401(k) Plans' $2 billion) in retail-priced

mutual funds which are both unnecessarily costly and structurally inappropriate for plans

of this nature and size. Tens of millions of dollars have thus been squandered while the

RBAP is and has been underfunded for years and the 401(k) Plans are funded largely by

participants' voluntary deferral of a significant portion of their own salaries.

**B.    Plaintiff and the Proposed Class.**

Plaintiff is a former PwC employee and a participant in the RBAP and the

primary 401(k) Plan. He brings this action on behalf of himself, on behalf of the Plans,

and, under Federal Rule of Civil Procedure 23, a proposed class (the "Class") of all

persons who participated in any of the Plans at any time after June 30, 1994, with the

exception of all current PwC partners and all former PwC partners who are liable to

Plaintiff, the Class or the Plans according to the allegations made herein.

More specifically, the Class Plaintiff proposes the Court certify is:

> All persons participating in the Retirement Benefit Accumulation Plan for
> Employees of PricewaterhouseCoopers LLP ("RBAP"), the Savings Plan
> for Employees and Partners of PricewaterhouseCoopers LLP (the "401(k)
> Plan") or the Savings Plan for Employees of PricewaterhouseCoopers LLP
> (the "Segregated 401(k) Plan") (collectively, the "Plans") at any time after
> June 30, 1994, and the beneficiaries and estates of such persons, who at
> any point became vested or may become vested in their benefits under one
> of those Plans; but excluding any Defendant and excluding any partner (or
> beneficiary thereof) who would be liable under any form of injunctive,
> declaratory or monetary order, relief or award that might result from the
> instant suit.

*See* Compl. ¶ 208.

While the Class is defined as encompassing anyone who has participated in one of

the three Plans at any time during the relevant period (July 1, 2004 forward) and who

became or may become vested in their benefits under any one of the Plans, practically

speaking virtually everyone in the proposed Class is or was a member of both the RBAP

and at least one of the two 401(k) Plans. There are tens of thousands of persons who are

members of the proposed Class, spread out across the country (with a significant

percentage living in Washington, D.C. or the greater Washington, D.C. metropolitan

area).

### 1.    **RBAP Participants**

Virtually everyone in the proposed Class is or was an active participant in the

RBAP.[3] According to the RBAP and 401(k) Plans SPDs, all PwC employees are eligible

to participate in the RBAP with the exception of employees of PwC Securities.  *See* Ex.

1, 2004 RBAP SPD at 3-4; Ex. 2, 2004 401(k) Plans SPD at 10 (specifically referencing

exclusion of said employees from the RBAP). Moreover, everyone eligible to participate

*does* participate because enrollment is automatic and participation begins almost

immediately thereafter.  As of June 30, 2003, there were 41,625 current RBAP

participants.  *See* Ex. 3, RBAP IRS 5500 at 2.

### 2.    **The Primary and Segregated 401(k) Plan Participants**

Although enrollment in one of the two 401(k) Plans is not automatic and there is a

brief waiting time for participation (which begins the September 1st following or

coincident with the date of hire), virtually all RBAP participants are or were participants

---

[3] Plaintiff contends that he and other participants who requested a complete distribution from the RBAP remain RBAP participants as defined in ERISA § 3(7), 29 U.S.C. §1002(7), because although they received benefits from the Plan, it owes him additional benefits required by law that it has not yet paid him, as set forth in the Complaint.

in at least one of the two 401(k) Plans.  *See* Ex. 2, 2004 401(k) Plans SPD at 1-2.[4]  As of

September 30, 2003, there were 37,969 participants in the primary 401(k) Plan.  *See* Ex.

4, (Primary) 401(k) IRS 5500 at 2.  As of the same date, there were 5,120 participants in

the segregated 401(k) Plan.  *See* Ex. 5, (Segregated) 401(k) IRS 5500 at 2.  The combined

figure of 43,089 is very close to the number of RBAP participants (41,625) as of three

months earlier, tending to prove that virtually all proposed Class members are or were

participants in *both* the RBAP and one of the two 401(k) Plans.

## ARGUMENT

**I.    A CLASS SHOULD BE CERTIFIED WITH RESPECT TO ALL CLAIMS
FOR PURPOSES OF LIABILITY AND RELIEF UNDER RULE 23(b)(1)
AND/OR (b)(2), AND UNDERSIGNED COUNSEL APPOINTED CLASS
COUNSEL.**

## INTRODUCTION

Congress designed the modern, 1966 version of Rule 23 to promote the efficient

and economical conduct of litigation.  *Am. Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 553

(1974).  Class actions are an important procedural tool to insure that courts effectively

address the legal problems of large numbers of individuals who raise common concerns.

The class-action device was designed as an "exception to the usual rule that litigation is

conducted by and on behalf of the individual named parties only."  *Califano v. Yamasaki*,

442 U.S. 682, 700-701 (1979).  Class relief is "peculiarly appropriate" when the "issues

involved are common to the class as a whole" and when they "turn on questions of law

applicable in the same manner to each member of the class."  *Id.* at 701.  For in such

---

[4] Plaintiff contends that participants who requested a complete distribution from one or both of the 401(k) Plans remain participants of said Plan(s) as defined in ERISA § 3(7), 29 U.S.C. §1002(7), because although they received benefits from the Plan(s), they are still owed additional benefits required by law not yet paid. (Due to a change in their job classification, some employees will be former participants in one 401(k) Plan and current or former participants in another).

cases, "'the class-action device save[s] the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion.'" *Gratz v. Bollinger,* 539 U.S. 244, 268 n.17 (2003) (citation omitted). *Accord General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982).[5]

To maintain a class action, Plaintiff must satisfy the four requirements of Rule 23(a) (numerosity, commonality, typicality and adequacy of representation) and demonstrate that the case is "maintainable" under any one of the three prongs of Rule 23(b): Rule 23(b)(1) ((A) or (B)), (b)(2) or (b)(3). *Hartman v. Duffey,* 19 F.3d 1459, 1468 (D.C. Cir.1994); *In re Vitamins Antitrust Litigation,* 209 F.R.D. 251, 256 (D.D.C. 2002).

In determining whether to certify a class, the court should not consider the underlying merits of the plaintiff's claims. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78 (1974). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Id.* at 178 (quotation omitted). *Accord In re Lorazepam & Clorazepate Antitrust Litig.,* 202 F.R.D. 12, 14, 21 (D.D.C.2001), *appeal denied,* 289 F.3d 98 (D.C. Cir. 2002).

Thus, when deciding a motion to certify a class, the allegations in the complaint are accepted as true. *In re Veneman,* 309 F.3d 789, 793-95 (D.C. Cir. 2002) (rejecting government's argument that plaintiffs have no viable claim, stating that it had "no

---

[5] *See also Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 339 (1980) ("The aggregation of individual claims in the context of a classwide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government. Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device").

bearing on the question of class certification"); *Robinson-Smith v. Gov't Employees Ins. Co,* No. 01-1340 (PLF), 2001 U.S. Dist. Lexis 25516, *7 (D.D.C. November 16, 2001) ("Defendant dedicates most of its Opposition to the merits of plaintiffs claim, but it is established that class and collective certification inquiries do not concern the merits of a plaintiff's case").

Lastly, "when a court is in doubt as to whether to certify a class action, it should err in favor of allowing a class." *In re Cardizem,* 200 F.R.D. at 303 (citation and quotation marks omitted); *accord Adair v. England,* 209 F.R.D. 5, 8 (D.D.C. 2002).

Here, all the requirements of Rule 23(a) are easily met, and the case may be maintained as a "mandatory" class action under Rule 23(b)(1) and/or (b)(2) which are preferred for their relative ease of administration and superior *res judicata* effects over Rule 23(b)(3) which provides for automatic notice and the right to opt-out. *See, e.g., Adair v. England,* 209 F.R.D. at 11-12.

## A. <u>Plaintiffs Satisfy All of the Requirements of Rule 23(a)</u>

Under Rule 23(a), one or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[6]

---

[6] Additionally, as this Court has noted, although Rule 23 neither discusses nor imposes explicit requirements on the definition of a class, a requested class must be sufficiently definite to enable the Court to evaluate the propriety of certification and identify members of the class. *Pigford v. Glickman,* 182 F.R.D. 341, 347 (D.D.C. 1998). Here, there should be and is no question but that the proposed Class is very well-defined and that it will be, especially with Defendants' records, a straightforward exercise to determine precisely who are the members of the proposed Class.

1.          **The Members Of The Class Are Sufficiently Numerous
That Joinder Is Impracticable.**

A plaintiff must demonstrate that the class is so numerous that joinder of all

members is impracticable.  Fed. R. Civ. P. 23(a)(1) ("[o]ne or more members of a class

may sue or be sued as representative parties on behalf of all only if (1) the class is so

numerous that joinder of all members is impracticable.").  Given the number of

participants typically covered under a benefits plan and their geographic dispersion,

numerosity rarely stands as an obstacle to class certification in an ERISA suit.

Although Rule 23 requires no minimum number of class members, numerosity is

generally deemed satisfied by a proposed class of at least 40 members.  *Coleman v. Pension*

*Benefits Guar. Corp.*, 196 F.R.D. 193, 198 (D.D.C. 2000); *see also E.E.O.C. v. Printing*

*Ind., Inc.,* 92 F.R.D. 51, 53 (D.D.C. 1981) ("as few as 25-30 class members should raise a

presumption that joinder would be impracticable").  The exact number of class members

need not be known before the proposed class will be found sufficiently numerous to make

joinder impracticable.  *See, e.g., Kifafi v. Hilton Hotels Retirement Plan ("Kifafi I"),* 189

F.R.D. 174, 176 (D.D.C. 1999); *Pigford v. Glickman,* 182 F.R.D. 341, 347 (D.D.C. 1998).

Here, numerosity will be readily established because the proposed Class has tens

of thousands of members dispersed across the country, making it clear that the proposed

Class is sufficiently numerous that joinder of all class members is impracticable.

2.          **The Claims Present Common Questions of Law and Fact.**

The commonality provision of Rule 23(a)(2) is also easily met here.  The

commonality test is met where there is at least one issue, the resolution of which will

affect all or a significant number of the putative class members.  A plaintiff is not

required to show that there is commonality on every factual and legal issue.  *E.g.,*

*Pigford,* 182 F.R.D. at 348. Moreover, the existence of factual distinctions between the claims of putative class members will not preclude a finding of commonality. *E.g.* *Bynum v. District of Columbia,* 217 F.R.D. 43, 46-47 (D.D.C. 2003). Rather, at least *one* question of law *or* fact needs to be common among the class members. *In re Lorazepam,* 202 F.R.D. 12, 26 (D.D.C. 2001).

As Judge Kollar-Kotelly observed in *Kifafi I,* an ERISA pension benefits case challenging the legality of the way benefits accrued under the plan, "[t]he commonality test is met where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Kifafi I,* 189 F.R.D. at 176-77 (quotation marks and citation omitted). In *Kifafi I,* decided in 1999, the Court found that the issue whether that employer's benefit-accrual formula complied with ERISA "provides a question of law common to all class members." Then, in *"Kifafi II,"* earlier this year, the Court went back and also certified four out of five aspects of the plaintiff's "service counting claim," finding that (1) whether plan failed to count years of union service for vesting purposes, (2) whether incorrect hour standard was applied for counting a year of service, (3) whether the plan improperly failed to credit leaves of absence; and (4) whether the plan failed to count the year in which employees first became participants in the plan for vesting purposes were all common questions under Rule 23(a)(2). *Kifafi v. Hilton Hotel Retirement Plan ("Kifafi II"),* 228 F.R.D. 382, 385-86 (D.D.C. 2005).

So too in *Coleman,* an ERISA case challenging the legality of a pension plan amendment equally affecting the named plaintiffs and members of the class, Judge Harris found the commonality requirement satisfied by the presence of that common question –

12

*i.e.*, whether the plan amendment in that case complied with ERISA. *Coleman,* 196 F.R.D. at 198.

In *Foltz v. U.S. News & World Report, Inc.,* 106 F.R.D. 338 (D.D.C. 1984), an ERISA breach of fiduciary duty case, it was held to be a common question whether the defendants in that case breached their fiduciary duties to participants in undervaluing the company's stock. 106 F.R.D. at 340.

And in *Stewart v. National Shopmen Pension Fund,* 563 F. Supp. 773 (D.D.C. 1983), *rev'd on other grounds,* 730 F.2d 1552 (D.C. Cir. 1984), an ERISA action challenging the reduction or elimination of participants' past service credits, the court found plaintiffs and class members "joined by the common fact that they were all deprived of past service credits by defendants upon the withdrawal of their employer from the defendant Fund." 563 F. Supp. at 778. [7]

This case is especially easy because it raises *nothing* but common questions of law and fact, both as to liability and relief, thereby satisfying the requirements of Fed. R. Civ. P. 23(a)(2). These common issues include:

- **Is 5 years of service a valid normal retirement age here?** Is 5 years of service, regardless of age, a valid normal retirement age within the meaning of ERISA?

- **Are participants' benefits correctly calculated or are participants forfeiting a portion of their accrued benefits?** By paying participants only an amount equal to the nominal balance in their hypothetical cash balance accounts, does the RBAP violate ERISA § 203(a)(2), 29 U.S.C. § 1053(a)(2), and IRC § 411(a)(2), which provide that a participant who has satisfied a plan's vesting requirements has a nonforfeitable right to 100% of the participant's "accrued benefit" derived from employer contributions?

- **Is there another kind of systematic forfeiture occurring here?** Regardless of the appropriate normal retirement age, are participants forced to forfeit a

---

[7]On appeal, the Circuit Court reversed the grant of summary judgment for the participants but did not disturb the class certification ruling. The case later settled as a class action. *See Stewart v. National Shopmen Pension Fund,* 795 F.2d 1079 (D.C. Cir. 1986).

significant portion of their accrued benefit as a result of the RBAP's failure to take into account the value of the Plan's promise to continue to provide interest credits for as long as benefits remain in the Plan?

- **Age discrimination under ERISA § 204(b)(1)(G)?**  Are participants' accrued benefits under the RBAP reduced over certain periods solely on account of age, in violation of ERISA § 204(b)(1)(G), 29 U.S.C. § 1054(b)(1)(G), and Code § 411(b)(1)(G), which provide that a "participant's accrued benefit [cannot be] reduced on account of any increase in his age or service?"

- **Age discrimination under ERISA § 204(b)(1)(H)?** Is the rate at which participants' benefits accrued under the RBAP reduced every month they participate on account of age, in violation of ERISA § 204(b)(1)(H)(i), 29 U.S.C. § 1054(b)(1)(H)(i), and Code § 411(b)(1)(H)(i), which provide that "the rate of the employee's benefit accrual [cannot be] reduced, because of the attainment of any age?"

- **Backloading?**  In some cases do the rates at which benefits accrue under the RBAP increase from one year to the next by more than the amount permitted under the "anti-backloading" 133-1/3% rule, ERISA § 204(b)(1)(B)(iv), 29 U.S.C. § 1054(b)(1)(B)(iv), and Code § 411(b)(1)(B)(iv)?

- **Other forfeitures through failure to make actuarial adjustments?**  Does the RBAP fail to protect the value of each participant's "normal retirement benefit" by failing to make an actuarial adjustment to the accrued benefit when payment is deferred past normal retirement age?

- **Income discrimination and illegally disproportionate benefits and contributions?**  Do the RBAP and the two 401(k) Plans provide significantly smaller benefits, as a proportion of income, to rank-and-file employees than to partners, in violation of the terms of all three Plans?  Did PwC violate ERISA § 510, 29 U.S.C. § 1140, when it adopted and now administers separate and discriminatory contribution and benefit structures for partners and non-partner employees under the 401(k) Plans and the RBAP?

- **Other violations of ERISA, the Tax Code and/or the Plan's accrued benefit plan standards?**  Does the RBAP fail to provide for definitely determinable benefits, in violation of the terms of the RBAP?  Does the RBAP's failure to comply with Revenue Ruling 81-12 when the Plan changes investment options violate ERISA and the Code's anti-cutback rule?  As designed and implemented, does the RBAP's delegation of responsibility to determine a key aspect of the Plan's benefit formula (the investment measures offered) to PwC partners who stand to personally lose whenever participants are given a higher yielding set of investment benchmarks from which to choose result in fiduciary breaches?

14

- **Are the Plan fiduciaries squandering millions in objectively improper, over-priced investment vehicles?**  Did the RBAP and/or 401(k) Plans' fiduciaries mismanage the Plans' assets by investing him in retail-priced mutual funds?

Any one or more of these common questions amply satisfies the requirements of Rule 23(a)(2).  The courts that have decided cash balance cases to date and other cases presenting the same or analogous claims have readily found such questions satisfy the commonality inquiry.  *E.g., Cooper v. IBM Personal Pension Plan,* Civ. No. 99-829-GPM, slip op. at 6 (S.D. Ill Sept. 17, 2001) (attached as Ex. 6) (whether cash balance and pension equity plans violation ERISA's prohibitions against age discrimination presented common issue of law or fact); *Eaton v. Onan Corp.* 117 F. Supp.2d 812, 822 (S.D. Ind. 2000) (referencing prior order certifying class regarding ERISA claims that plan conversion and/or plan's benefit formula discriminated on the basis of age, was backloaded, and/or resulted in improper forfeitures); *Amara v. Cigna,* 2002 U.S. Dist. LEXIS 25947, **8-9 (D. Conn. Dec. 20, 2002) (whether plan is age discriminatory under ERISA presents a common question of law and fact as to each class member).

Moreover, not only are all issues concerning liability common to all Class members, but the declaratory and injunctive relief sought is also common to all Class members, presenting nothing but common issues of fact or law.  *E.g., Berger v. Xerox Corporation Retirement Income Guarantee Plan,* 338 F.2d 755, 763-64 (7th Cir. 2003) (cash balance pension plan case regarding legality of plan's methodology for calculating lump sum distributions; finding that plaintiffs' requested "declaration that Xerox's method of computing the lump sums to which withdrawing employees are entitled is unlawful . . . . is a ground common to all the members of the class").

### 3.    Plaintiff's Claims Are Typical of the Claims of the Class.

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3) (requiring that "the claims . . . of the representative parties [be] typical of the claims . . . of the class").

Typicality does not mean "unanimity": as with commonality, it is not necessary that the claims of the representative plaintiff be identical to the claims of the class to satisfy typicality. *Wagner,* 836 F.2d at 591.[8] As this Court noted in *Pigford,* the typicality prerequisite is, more simply, "'intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of the absent class members so as to assure that the absentees' interests will be fairly represented.'" *Pigford,* 182 F.R.D. at 349 (citation omitted). The requirement "is satisfied if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." *Id.*

The question of typicality is closely related to the question of commonality.  As has often been noted, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon,* 457 U.S. at 158 n.13. *Accord Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997); *Wagner v. Taylor,* 836 F.2d 578, 590 n.77 (D.C. Cir. 1987) (same).

---

[8] Differing degrees of injury among class members does not necessarily defeat typicality if the basic injury each class member asserts is the same. *Bittinger v. Tecumseh Products Co.,* 123 F.3d 877, 885 (6th Cir.1997). Likewise, typicality may be found even if different defenses may apply to some class members. *Id.* at 884.

In *Kifari I,* typicality was met "[b]ecause the legality of the benefit-accrual formula depends upon a policy or practice that is applied to all putative class members, including [the named plaintiff]." *Kifafi I,* 189 F.R.D. at 177. Moreover, the named plaintiff's injury was "identical to any injury suffered by the absentee class members, [and] therefore their interests will be properly aligned." *Id.; see also id.* ("each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability").

Similarly, in *Coleman* the court found that the incentives of the named plaintiffs were typical of those of the proposed class because they "suffered the same alleged injury" from "the same alleged source" – *i.e.,* the alleged illegal plan amendment. *Coleman,* 196 F.R.D. at 198.[9]

Here, as in *Kifafi I (and II,* discussed again below)*, Coleman, Foltz* and *Stewart,* all proposed Class members including Plaintiff suffered the same alleged injury from the same alleged cause(s) under each theory of recovery and seek the identical kinds of relief. It is the Plans' alleged illegal benefit formulas and discrimination-maximization scheme, as designed or implemented, and the fiduciaries' alleged mismanagement of Plan assets, that give rise to Plaintiff's claims and the claims of the Class. *See also Molina v. The Mallah Organization, Inc.*, 144 F.R.D. 37, 41 (S.D.N.Y. 1992) (typicality requirement met by allegation of unlawful scheme to prevent plaintiffs from attaining benefits from

---

[9] *Accord Foltz,* 106 F.R.D. at 340 (finding typicality where named plaintiffs and class members all had their company stock undervalued by their employer at the same rate); *Stewart,* 563 F. Supp. at 778 (finding typicality where the named plaintiffs' claims "arise from the same practice as to which the entire class was subjected," *i.e.,* to the same policy of cancellation of past service credits upon withdrawal of their employer from the multiemployer fund).

welfare and pension funds).

Similarly, all proposed Class members suffered the same kinds of injuries from the same alleged causes and seek the same kinds of relief. Plaintiff's claims could not be more typical than those of the proposed Class. He does not assert any claims relating to the Plans in addition to or different than those of the proposed Class. At bottom, as the Court found in *Cooper v. IBM Personal Pension Plan, supra,* slip op. at 7, typicality is met here as in that case because "[a]ll members of the class have a common interest in maximizing their benefits under the Plan by compelling Defendants to comply with the law."[10]

### 4. Plaintiff Will Fairly and Adequately Protect the Interests of the Class.

To determine whether a named plaintiff is an adequate class representative under Rule 23(a)(4), the Court is to consider whether any conflicts of interest exist between Plaintiff and the absent Class members, and whether the Plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation. *Kifafi,* 189 F.R.D. at 177 (*citing Twelve John Does v. District of Columbia,* 117 F.3d 571, 575 (D.C. Cir. 1997)); *see also Pigford,* 182 F.R.D. at 350. It is the *Defendants* who have the burden to establish that representation by a named plaintiff does not meet the requirements of Rule 23(a)(4). *Rozet,*

---

[10] Plaintiff notes that as to Counts Six, Seven and Eleven, he seeks to represent not only the participants in the primarily 401(k) Plan but also those participants who were placed into the segregated 401(k) Plan in which Plaintiff was not, as far as he is currently aware, ever a participant. This, however, does not make his claims atypical of those proposed Class members: the claims are, indeed, still identical in all respects. Numerous courts, including two courts of appeal, have found that typicality is not defeated in ERISA cases simply because the class representative is not a member of all the plans at issue. *Forbush v. J.C. Penney Co.,* 994 F.2d 1101, 1106 (5th Cir. 1993) (it was sufficient for class representative to frame her claim in terms of employer's general practice of over-estimating all employees' social security benefits); *Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410, 424 (6th Cir. 1998) ("once a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan, there is no additional constitutional standing requirement related to his suitability to represent the putative class members of other plans to which he does not belong").

141 F.R.D. at 217.

It does not appear that Defendants challenge Plaintiff's adequacy or the competency of Plaintiff's counsel. In any event, any such objection would be unavailing.

As to Counts One through Ten, Plaintiff has the identical pecuniary interest that members of the proposed Class do in the claims asserted in proportion to their respective benefits as calculated by the Plans. As to Count Eleven, Plaintiff has the same direct and indirect pecuniary interest in recovering damages and other forms of relief on behalf of Plans as does each and every member of the proposed Class so the Plans can pay him the benefits they still owe him. There is no reason to believe that he will not zealously represent the interests of the Class in their efforts to obtain the benefits they are due as a matter of law.

Given this unitary interest, no questions arise of peculiarities of the Plaintiff, unique defenses to their claims, or antagonistic interests between Plaintiff and other class members.

The Court can also be assured that counsel will fairly and adequately represent the interests of the classes. Plaintiff has engaged counsel with considerable ERISA class action litigation experience, discussed below in the context of Rule 23(g).

**B.    The Proposed Class Is Properly Certified Under Rule 23(b)(1).**

A proposed class that meets the four requirements of Rule 23(a) should be approved if it complies with any one of the three provisions of Rule 23(b). *Amchem,* 521 U.S. at 614. Rule 23(b)(1) defines two related types of class actions, both designed to prevent prejudice to the parties arising from multiple potential suits involving the same subject matter. Rule 23(b)(1)(A) is designed to prevent prejudice to the party opposing the class,

and Rule 23(b)(1)(B) is designed to prevent prejudice to potential members of the class. Both subsections are applicable here.

## 1.    The Case Satisfies the Requirements of Rule 23(b)(1)(A).

Rule 23(b)(1)(A) covers cases in which the prosecution of separate actions by or against members of the class would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the party opposing the class. Fed. R. Civ. P. 23(b)(1)(A).  According to the Supreme Court, Rule 23(b)(1)(A) "'takes in cases *where the party is obliged by law to treat the members of the class alike* (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against down river owners).'"  *Amchem*, 521 U.S. at 614 (emphasis added) (citation omitted).

It is precisely for this reason, as a prominent class action defense lawyer has pointed out, that "[p]erhaps unique to ERISA class actions" the requirements of Rule 23(b)(A)(1) are more often met in ERISA than in any other kind of case – because "[u]nder ERISA, the plan and its fiduciaries generally owe the same duty to all participants, and a violation of ERISA with respect to one may establish a violation with respect to all other similarly situated participants."  Gary L. Sasso, *Defense of Federal Class Actions,* 710 PLI/Lit 149, * 250 (July 2004).

Indeed, it is well-settled that a plan and its fiduciaries must treat similarly situated participants in the same manner.  As the Labor Department recently noted in promulgating the most recent regulations governing plan claims procedures, ERISA requires plan provisions to be applied consistently to similarly situated claimants and "[c]ourts have long recognized that such consistency is required *even under the most*

*deferential judicial standard of review*." 65 Fed. Reg. 70246, 70251 & n.26 (November 21, 2000) (emphasis added) (citations to several appellate decisions omitted). Here, in fact Defendants have gone further and independently committed themselves under the terms of the Plans themselves to rendering such equal treatment: the RBAP and 401(k) Plans themselves contain uniformity provisions that require them to be administered in the same fashion for all similarly situated participants. *See* RBAP § 16.7 ("Any discretionary acts taken under the Plan by the Plan Administrator, the Employer or the Trustee shall be uniform in their nature, and shall be applicable to all Participants, Beneficiaries and Employees similarly situated"); (Primary) 401(k) Plan § 17.10 (identical provision).[11]

Thus, ERISA cases – and especially ERISA pension cases such as this one challenging the legality and/or accuracy of benefit calculation -- are frequently certified under Rule 23(b)(1)(A). *E.g., Wagener v. SBC Pension Benefit Plan-Nonbargained Program*, No. 03-769 (RCL) (D.D.C. September 21, 2005), slip op. at 3 (attached hereto as Ex. 6) (certifying under Rule 23(b)(1)(A), among other provisions, case involving alleged improper exclusion of two weeks of pay from the calculation of participants' benefits, contrary to the practice for other similarly situated participants); *In re Amsted Indus., Inc. "ERISA" Litig.*, No. 01-C-2963, 2002 U.S. Dist. LEXIS 24144, at * 8 (N.D. Ill. Dec. 16, 2002) (granting certification under (b)(1)(A) because of risk of inconsistent judgments in case challenging plan amendments eliminating lump sum distribution option and changing retirement requirements); *Cooper v. IBM Personal Pension Plan, supra,* slip op. at 10 (also certifying class under Rule 23(b)(1)(A), saying "[t]he question

---

[11] *See Wagener v. SBC Pension Benefit Plan,* 407 F.3d 395, 403-05 (D.C. Cir. 2005) (plan with a comparable "equal treatment" provision must honor that provision; reversing dismissal of complaint that sufficiently alleged a violation of this rule in the calculation of plan benefits).

presented in this case is whether Defendants' pension plan violates ERISA.  If each

pension participant filed a separate lawsuit to challenge the Plan, inconsistent and varying

adjudications of the legality of the Plan are inevitable").  *See also Larionoff v. U.S.*, 533

F.2d 1167, 1181 n.36 (D.C. Cir. 1976), *aff'd*, 431 U.S. 864 (1977) (in action by naval

enlisted men seeking to recover additional reenlistment bonuses to which they contended

they were entitled, noting that if there were a question as to whether case should have

been certified, as it was, under Rule 23(b)(1)(B), the case "would appear to qualify for

class action status under Rule 23(b)(1)(A)").

As the court said in *Schutte v. Maleski*, 1993 U.S. Dist. LEXIS 8332 at *26-27

(E.D. Pa. June 18, 1993), where plaintiffs challenged the legality under ERISA of one

pension plan amendment and asserted the continued vitality of two others, "differing

outcomes [of such a claim] would make it impossible for defendants to implement any

one result because of the inherent conflict from disparate adjudications.  This scenario

epitomizes Rule 23(b)(1)(A)'s phrase 'incompatible standards of conduct.'"  *Id.* at *26.

That accurately characterizes the situation here as well.  Individual lawsuits

premised on one or more of the above listed claims pose the risk of inconsistent

judgments.  One court could find for Plaintiff on some theories, a second court on other

theories.  Separate courts could even find for Plaintiff on the same theory but then

conclude a different projection or discount rate should be used.  Obviously, Defendants

could not comply with such conflicting edicts.  *See, e.g., Franklin v. Barry,* 909 F. Supp.

21, 31 (D.D.C. 1995) ("a haunting specter of inconsistency, resulting in incompatible

standards of conduct . . . is raised by the threat of individual suits rather than a class action.  This is sufficient to satisfy Rule 23(b)(1)(A)").[12]

Note that certification under Rule 23(b)(1)(A) here is not only appropriate because conflicting rulings on Plaintiff's *claims* may create incompatible standards for the Plans and Plan fiduciaries, but also because conflicting rulings on the Defendants' *defenses* would have the same result.  Thus, in *Becher v. Long Island Lighting Co.*, 164 F.R.D. 144 (E.D. N.Y. 1996), a case challenging a pension plan's determination that employees had forfeited credit for years of service prior to their withdrawal of contributions, the court found that Rule 23(b)(1)(A) certification was appropriate not only because multiple cases "could conceivably result in different courts reaching conflicting decisions regarding not only the Plan's interpretation but also *the applicability of the various defenses the defendants seek to interpose*."  *Id.* at 153 (emphasis added).

Here, by contrast, adjudication of the dispute as a class action would provide a uniform direction for the Defendants in all regards, both prospective and retrospective.  Thus, this case easily satisfies the standard of Rule 23(b)(1)(A) and can and should be certified pursuant to that subsection of Rule 23.

---

[12] *Accord Kohl v. Association of Trial Lawyers of America,* 183 F.R.D. 475, 485-86 (D. Md. 1998) (case challenging an alleged denial of a COLA certified under (b)(1)(A) because "adjudication of this case as a class action will result in one interpretation of the Plan's prescribed benefits, and provide a uniform formula in which the COLA will be calculated for lump sum payments"); *Clauser v. Newell Rubbermaid, Inc.,* 2000 WL 1053395 at *6 (E.D. Pa., July 31, 2000) (class certified under Rule 23(b)(1)(A) because plaintiffs sought declaratory and injunctive relief, including the enforcement of ERISA plan termination provisions, and if relief was granted in some actions but not others, "conflicting declaratory and injunctive relief could make compliance impossible for defendants"); *In re IKON,* 191 F.R.D. 457, 466 (E.D. Pa. 2000) (certifying ERISA case involving fiduciary breach claims under Rule 23(b)(1)(A) because contradictory rulings as a result of multiple suits would make implementing the decisions difficult for the plan's fiduciaries); *Westman v. Textron, Inc.,* 151 F.R.D. 229, 231 (D. Conn. 1993) (case certified under (b)(1)(A) because "whether defendant breached its fiduciary duty is a question common to all potential cases and could, if tried in separate actions, result in wholly inconsistent adjudications").

### 2.    The Case Also Satisfies the Requirements of Rule 23(b)(1)(B).

Certification is also appropriate here under Rule 23(b)(1)(B) because multiple lawsuits would create the risk that the judgment with respect to some members of the proposed class would, "as a practical matter, be dispositive of the interests of . . . other members . . . or otherwise impair or impede their ability to protect their interests." *Id.,* Rule 23(b)(1)(B).

"For a suit to qualify as a class action under this subdivision, it is not necessary for the nonclass judgment to be technically dispositive of the interests of the other members of the putative class, but it must as a practical matter conclude the interests of those members." *Larionoff*, 533 F.2d at 1181 n.36 (D.C. Cir. 1976) (*citing* Wright & Miller, Federal Practice & Procedure, citation omitted).  Quoting the Advisory Committee Notes, the Supreme Court has noted that one such case properly certified under Rule 23(b)(1)(B) is a case that "involve[s] the adjudication of the rights of all participants in a fund in which the participants had common rights" where "the adjudication would determine the operating rules governing the fund for all participants."  *Ortiz v. Fibreboard Corp*., 527 U.S. 815, 834 n.14 (1999).  In such a case, the *stare decisis* effect of the judgment with respect to the claim of one individual is likely to have a compelling impact on future litigation by persons similarly situated because no real individual issues exist to distinguish the earlier precedent.

That is certainly the case here:  practically, if this case is not certified as a class action it will dispose of the Class members' interests without them ever having representation in the case.  Thus, for example, if the Court rules that the normal retirement age is age 65 but, say, rejects Plaintiff claim regarding the right to additional

benefits to reflect the value of the Plan's promise to provide investment credits even past normal retirement age, those rulings and their corresponding relief will as a practical matter determine the claims as to all other participants, whether or not the case proceeds as a class action. Thus, if the Court did not certify the proposed Class, a decision in this case would nevertheless "as a practical matter be dispositive of the interests of the other members" even though those other members were not represented. Similarly, if the Plaintiff were to fail to establish liability under either theory that determination would also "as a practical matter be dispositive of the interests" of the absent Class and/or "substantially impair their ability to protect their interests," Fed. R. Civ. P. 23(b)(1)(B). For example, absent Class members who learned that the named Plaintiff here had not succeeded in striking down the 5 year retirement age would not only be understandably deterred from filing a new suit to establish otherwise but if they did they would have little to distinguish their suit factually or legally from the instant filing.

Certification under Rule 23(b)(1)(B) is designed to avoid just these scenarios and is therefore a proper vehicle for certification of this case. *See also In re Amsted Indus., Inc. "ERISA" Litig.*, No. 01-C-2963, 2002 U.S. Dist. LEXIS 24144, at * 8 (N.D. Ill. Dec. 16, 2002) (granting certification under (b)(1)(B) "[b]ecause the rights of current employees will necessarily be adjudicated in this action, we find that the class action is the proper device to assure that all parties are fairly represented"); *Cooper v. IBM, supra.*

### C.    **The Proposed Class Is Properly Certified Under Rule 23(b)(2).**

The proposed Class also qualifies for certification under Rule 23(b)(2). "Rule 23(b)(2) permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the

class.'" *Amchem*, 521 U.S. at 614 (*quoting* Rule 23(b)(2)). The Advisory Committee Notes to Rule 23(b)(2) explain that "[t]he (b)(2) class action is intended for cases where broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury."

This case easily satisfies the language of the rule. Here there is no question but that Defendants Plans have "acted . . . on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

On behalf of the proposed Class, Plaintiff alleges that Defendants, "on grounds generally applicable to the class," wrongfully calculate and pay benefits, discriminate on the basis of income and breached their fiduciary duties in the administration of the Plans. Plaintiff alleges that the Plan caused him to forfeit a portion of his accrued benefit "on grounds generally applicable to the class" by employing a fictitious normal retirement age in determining his benefit and additionally by that means violated other core ERISA accrued benefit standards.

Thus, this case is thus closely analogous to other pension class action lawsuit certified by judges of this Court under Rule 23(b)(2). In *Coleman*, the Court found that "[b]ecause the [challenged] plan amendment suspending [layoff pension benefits] affected all putative class members, class-wide injunctive and declaratory relief [declaring the amendment invalid] is appropriate." *Coleman,* 196 F.R.D. at 199. Similarly, in *Kifafi I*, involving the "benefit accrual claim," the Court found that "[t]he method used to calculate the [challenged] rate of benefit-accrual is a practice applicable across the board to all class members, 'thereby making appropriate final injunctive relief

or corresponding declaratory relief with the respect to the class as a whole.'" *Kifafi I,* 189 F.R.D. at 177. In *Kifafi II,* the Court reached the same conclusion with respect to the "service counting claim." *Kifafi II,* 228 F.R.D. at 385. And in *Stewart,* the Court found certification under (b)(2) appropriate where plaintiffs sought, among other things, a declaration that the Fund Trustees' attempt to cancel the precontributory credits of employees of withdrawing employers was invalid. *Stewart*, 563 F. Supp. at 778-79.

So too this case is in all relevant respects indistinguishable from other cash balance pension plan cases certified under Rule 23(b)(2). *See Cooper, supra,* slip op. at 10 ("Plaintiffs' second amended complaint seeks a declaration that the IBM Personal Pension Plan violates federal law. Plaintiffs seek injunctive relief requiring Defendants to amend the Plan to make it legal. Defendants' action with respect to the Plan are generally applicable to the class, and, if Plaintiffs succeed in their attempt to show that Defendants' conduct with respect to the Plan is illegal, injunctive and/or declaratory relief will be appropriate"); *Eaton v. Onan, supra* (case alleging age discrimination, backloading and forfeiture challenges to plan conversion and formula certified under (b)(2)); *Amara v. Cigna,* 2002 U.S. Dist. LEXIS 25947, *11 (case alleging, among other things, age discriminatory under ERISA certified under (b)(2) because injunctive relief sought for the entire class).

Defendants' only possible objection to certification under Rule 23(b)(2) is that the declaratory and injunctive relief is not primary and that the suit is one "predominantly" for "money damages." 1966 Advisory Committee Notes to Rule 23(b)(2). Any such objection here would be unavailing. The reason is that if monetary relief is granted, it would flow directly from the declaratory and injunction relief sought and would not and

should be not be considered, as a result, to predominate here. Judge Posner, writing for the 7th Circuit in *Berger*, involving the legality of a pension plan's stated method for calculation benefits, rejected the defense claim that monetary relief of over $200 million made the relief sought predominantly monetary:

> Xerox contends that this suit does not seek injunctive or declaratory relief, but really just damages equal to the difference between the lump sums to which ERISA entitled the members of the class and the smaller lump sums that they actually received. . . . . [But [t]he relief sought is . . . declaratory. What is sought is a declaration that Xerox's method of computing the lump sums to which withdrawing employees are entitled is unlawful. That is a ground common to all the members of the class.[13] True, the declaration sought and obtained was merely a prelude to a request for [monetary relief] . . . . But a declaratory judgment is *normally* a prelude to a request for other relief, whether injunctive or monetary; so there is nothing suspicious about the characterization of the suit as one for declaratory relief. The hope that motivates casting a request for relief in declaratory terms is that if the declaration is granted, the parties will be able to negotiate the concrete relief necessary to make the plaintiffs whole without further judicial proceedings. No one wants an empty declaration. As long as the concrete follow-on relief that is envisaged will if ordered (that is, if negotiations for relief consistent with the declaration break down) be the direct, anticipated consequence of the declaration, rather than something unrelated to it, the suit can be maintained under Rule 23(b)(2).

*Id.* at 763-64.

Judge Posner further explained that it was unnecessary to resort to Rule 23(b)(3): "The reason for allowing opting out in other types of class action[s] is that even though one class member's claim may overlap another's (common issues), it may be different in respects that make him want to bring his own suit. There is nothing like that here. The declaration established the right of each of the class members, and the computation of the damages due each followed mechanically." *Id.* (*citing,* among other cases, *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998)).

In *Allison,* the Fifth Circuit explained that incidental damages are "those to which

---

[13] Or in the language of Rule 23(b)(2), it is in that sense that "the party opposing the class has acted or refused to act on grounds generally applicable to the class."

class members automatically would be entitled once liability to the class (or subclass) as a whole is established" and are "capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances." 151 F.3d at 415. That of course perfectly describes the monetary relief sought here: the requested monetary relief here is "incidental" to the requested injunctive and declaratory relief because the different amounts participants will be due will be determined pursuant to simple, mechanical calculations.

That was true in *Berger,* just as it was true in *Coleman* and in *Kifafi I* and *II* where Judges Harris and Kollar-Kotelly held Rule 23(b)(2) certification was proper notwithstanding the requests for monetary relief. *Coleman,* 196 F.R.D. at 199 (request for monetary relief "does not 'predominate' because it flows from their request for a declaratory judgment that the plan amendment suspending [the layoff benefits] was invalid"); *Kifafi I,* 189 F.R.D. at 177 (although it also involved a request for monetary relief because such relief was merely "incidental" to the injunctive and declaratory relief sought).

Under admittedly different circumstances, this Court in *Pigford* certified that action under Rule 23(b)(2), noting that "[w]hile plaintiffs also seek monetary relief for the alleged acts of discrimination, the requested injunction and declaratory relief, if granted, would have a significant impact on [the defendant agency's current and future actions]." *Pigford,* 182 F.R.D. at 351 (also observing that "[t]he mere fact that plaintiffs are seeking monetary relief in addition to injunctive and declaratory relief . . . does not preclude class certification pursuant to Rule 23(b)(2)," *citing Eubanks v. Billington*, 110

F.3d 87, 92 (D.C. Cir. 1987)).[14]

Following essentially this same analysis, numerous other courts have approved the certification of classes under Rule 23(b)(2) in suits by pension plan participants seeking declaratory and injunctive relief and a corresponding increase in their pension benefits, *i.e.,* "monetary relief."[15]

Finally, the same situation obtains with respect to the plan-wide claims for fiduciary breach brought pursuant to Count Eleven – those are also perfectly suited for

---

[14] *Accord Thomas v. Albright,* 139 F.3d 227, 236 (D.C. Cir. 1998) (finding district court abused its discretion in permitting opt-outs of Rule 23(b)(2) class where there was no basis for the district court to doubt the cohesiveness underlying of (b)(2) class certified based on the existence of individual claims for monetary damages; district court's findings that plaintiffs sought "extensive injunctive and systemic relief in addition to monetary damages" and found that the plaintiffs' claims arose from actions "uniformly imposed on all class members"); *cf Hartman v. Powell*, 2001 U.S. App. LEXIS 7560 (D.C. Cir. March 15, 2001) (*per curiam*) (rejecting argument that $508 million settlement of Title VII class action against the United States Information Agency was improperly certified under Rule 23(b)(2) instead of Rule 23(b)(3), citing *Allison*).

[15] *See, e.g.*, *LaFlamme v. Carpenters Local #370 Pension Plan*, 212 F.R.D. 448, 456 (N.D.N.Y. 2003) (suit alleging freezing of pension accrual rates at levels applicable prior to breaks in service violated the minimum accrual requirements of ERISA; finding that request for recalculation of benefits and hence monetary relief "can only be said to be incidental to the declaration that defendants' pension plan is in violation of the law. In other words, assuming a favorable verdict to the class, only because the pension plan is in violation of the law does the reformation and recalculation occur. The primary relief sought is the declaration that ERISA has been violated. All other relief flows from the declaratory relief and is incidental"); *Cooper, supra*; *Bunnion v. Consolidated Rail Corp*., 1998 WL 372644, *5 (E.D. Pa. May 14, 1998) (Rule 23(b)(2) certification appropriate for an ERISA claim even though the remedy would include monetary as well as injunctive relief because interests of proposed class were identical, certain key facts were dispositive of the entire class, and claim for injunctive relief was primary); *Shields v. Local 705,* 1996 U.S. Dist. Lexis 15772 at *17-19 (N.D. Ill. Oct. 23, 1996) (Rule 23(b)(2) certification granted; pension participants primarily sought determination regarding the crediting of service for purposes of benefit calculations even though they also sought an order directing the plan to make any payments still due; *Fuller v. Fruehauf Trailer Corp.*, 168 F.R.D. 588, 602-03 (E.D. Mich. 1996) (class certified under Rule 23(b)(2) because plaintiffs were primarily seeking a declaration that their employer promised post-retirement reimbursement of the entirety of their medical expenses, even though, if they prevailed, the company would have to reimburse all of those expenses already incurred); *Diehl v. Twin Disc., Inc.*, 1995 WL 330637 at *6 (N.D. Ill. 1995) (class certified under Rule 23(b)(2) because plaintiffs primarily sought to enjoin modification of health insurance benefits, even though, if they prevailed, they would also obtain monetary relief; also citing several decisions reaching similar conclusions). with a particular type of service for purposes of calculation of benefits under pension plan, even though, if they prevailed, they wanted an order directing the plan to make such payments; also citing several decisions reaching similar conclusions); *Jansen v. Greyhound Corp.*, 692 F. Supp. 1022, 1028 (N.D. Iowa 1986) ("Any monetary relief awarded will flow from the declaratory and injunctive relief requested and is secondary to the declaratory/injunctive relief requested. The Court finds that plaintiffs meet the requirements for (b)(2) certification.").

Rule 23(b)(2) adjudication.  The fact that the claims will ultimately have a significant

monetary aspect to them does not make them less susceptible to treatment under Rule

23(b)(2).  This is particularly so because the monetary relief sought will flow not directly

to thousands of different class members but merely to the Plans as a whole, on whose

behalf suit has been brought in a representative capacity under ERISA § 502(a)(2), 29

U.S.C. § 1132(a)(2).  The monetary relief sought for the Plan will flow as the direct result

of a declaration that the Plan's assets were invested during the relevant period in breach

of ERISA's strict fiduciary duties.  Plaintiffs' requests for injunctive and declaratory

relief in that regard predominate over any request for money damages or even monetary

relief.

**C.     THE COURT SHOULD APPOINT UNDERSIGNED COUNSEL AS CLASS COUNSEL UNDER RULE 23(g).**

Under Rule 23(c)(1)(B) and Rule 23(g), a court certifying a class must appoint

class counsel based on a consideration of a variety of common sense factors.  Fed. R. Civ.

P. 23(c)(1)(B), 23(g).

The Court should find that counsel is qualified to represent the proposed classes.

Counsel has twice been certified as class counsel in ERISA cases filed in this Court.  *See*

*Wagener v. SBC Pension Benefit Plan-Nonbargained Program*, Civ. No. 03-769 (RCL)

(D.D.C. September 21, 2005) (denial of pension benefits case); *United Food and*

*Commercial Workers Pension Plan, Bell v. Executive Committee*, Civ. No. 01-236 (ESH)

(D.D.C.) (fiduciary breach with respect to investment of defined benefit plan assets,

settled in April 2003 for $10 million).  He has also been functioning as *de facto* class

counsel for the past two years in another ERISA case in this District, where on the main

question present the defense does not oppose certification, although a decision on

certification has not yet been made. *See Hall v. National Railroad Passenger Corporation*, Civ. No. 03-1764 (GK) (D.D.C.) (alleging violations of ERISA's anti-cutback rule).

Counsel has also been appointed class counsel in cases outside of this District. Thus, he is co-lead class counsel in a pension and 401(k) class action against *New York Life Insurance Company, Mehling v. New York Life Ins. Co.*, Civ. No. 99-CV-5417 (E.D. Pa.) which was certified in October 2001. He is also class co-counsel on the committee of lawyer supporting co-lead class counsel in another certified case (largely settled at this point), *Tittle, et al. v. Enron Corp., et al.*, H-01-3913 (S.D. Tex.), the ERISA litigation involving Enron Corp.'s 401(k), ESOP and cash balance pension plans. Counsel also served in similar fashion as class co-counsel in a 401(k) class action against SBC Communications, Inc., *Gottlieb v. SBC Communications, Inc.*, CV-00-4139 AHM (C.D. Calif.) which settled in December 2002 for $10 million. And he was co-lead counsel in two 401(k) class actions First Union Corporation, *Franklin v. First Union Corp.*, 99-CV-344 and 99-CV-610 (E.D. Va.), which settled, in June 2001, for $26 million.

Counsel has been called twice to testify before the Secretary of Labor's ERISA Advisory Council on issues of concern to plan participants and beneficiaries and is frequently invited to teach continuing legal education courses on the subject of ERISA class action litigation. He also has considerable trial and appellate experience, having worked as a staff attorney for the Public Defender Service for the District of Columbia for seven years. Additionally, he has corporate, defense litigation experience, having worked for several years in two large law firms, both in Washington, D.C. and New York.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court certify this action as a class action pursuant to Rule 23(b)(1)(A), 23(b)(1)(B) and/or 23(b)(2) and appoint undersigned as class counsel.  A proposed Order is attached.

Dated:  October 5, 2005

_____/s/ Eli Gottesdiener_____
Eli Gottesdiener

**GOTTESDIENER LAW FIRM, PLLC**
1025 Connecticut Avenue, N.W., Suite 1000
Washington, D.C.  20036
Phone: (202) 243-1000
Fax:    (202) 243-1001

Attorney for Plaintiff and the proposed Class