**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TIMOTHY D. LAURENT** | : |
| | : |
| **On behalf of himself and on** | : |
| **behalf of all others similarly situated,** | : |
| | : |
| **Plaintiff,** | : **Civil Action No. 05-1291 (PLF)** |
| **v.** | : |
| | : |
| **PRICEWATERHOUSECOOPERS LLP,** *et al.* | : |
| | : |
| | : |
| **Defendants.** | : |
| | : |

**PLAINTIFF'S FIRST SET OF DISCOVERY REQUESTS**
**TO ALL DEFENDANTS**
**PERTAINING TO CLASS CERTIFICATION**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff requests that each

and every Defendant produce within thirty (30) days of service of this First Set of Discovery

Requests to All Defendants Pertaining to Class Certification ("Requests" or "Request") all

documents requested herein that are within their possession, custody, or control and respond to

the following requests for production in writing.[1]

Production of all responsive documents should be made at the offices of Gottesdiener

Law Firm, PLLC, 1025 Connecticut Avenue, N.W., Suite 1000, Washington, D.C. 20036, within

the required time period.

Production of Summation-ready Tiff images with dii files, Word documents, PDFs and/or

other Summation-readable electronic or digital documents may be made to

ftp://ftp.gottesdienerlaw.com (user name and password to be separately disclosed) also within the

---

[1] These Requests are submitted without prejudice to Plaintiff's position that bifurcation of discovery into "merits" and "class" discovery is inappropriate in this case.

required time period.  (Production in electronic or digital format is preferred by Plaintiff over hard-copy format).[2]

Defendants should also disclose within the required time period the dates and locations for Plaintiff's counsel to view the originals of all responsive documents, inspection of which is hereby explicitly requested, even if Defendants take the position that they are providing identical duplicates.[3]

Production should not be delayed due to the absence of an agreed protective order, which Plaintiff is ready to negotiate.  Moreover, pending agreement on the form and content of a proposed order and/or its entry, Defendants may redact such sensitive or allegedly sensitive information they consider would be legitimately encompassed by such an order.

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff also hereby requests that each and every Defendant answer the interrogatories set forth below within thirty (30) days of service.

---

[2]More specifically, Plaintiff prefers production in computer-based electronic or digital format (over hard-copy or paper-copy format) of all documents that existed solely in hard-copy prior to the initiation of this litigation. However, Plaintiff requests production of all documents in their native electronic or digital formats (*e.g.,* Word documents, emails in PST format, etc.) where such documents are (and were prior to the initiation of this litigation) in an electronic or digital format.  Plaintiff does not regard a "print-out" of documents that now exist and prior to the initiation of this litigation existed in electronic or digital format as a legally adequate substitute for the document as it exists in its native electronic or digital format.  If a Defendant elects to produce paper-copies (and/or images of paper-copies) of documents that also exist electronic or digital format, that Defendant is nevertheless still asked (and Plaintiff maintains and may move to compel on the basis that the Defendant is obligated) to also produce those documents in their native electronic or digital format.

[3] Plaintiff's request to inspect originals may be held in abeyance in whole or in part upon review of Defendants' responses to these Requests.

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff also hereby requests that each and every Defendants respond in writing to the Requests for Admission set forth below within thirty (30) days of service.

## DEFINITIONS AND INSTRUCTIONS

1.      All definitions and instructions shall be liberally construed so as to bring within the scope of these Requests documents, information and/or responses that might otherwise be excluded.

2.      All definitions and instructions apply not only to the Requests set forth below but to the definitions and instructions contained herein and to the Introduction of these Requests, all of which are integral parts of the whole.

3.      In the absence of a definition or instruction, such definitions used or implied by Plaintiff's Complaint and other court filings shall control or shall inform the response to a particular Request or construction of any other part of these Requests.

4.      A definition contained in these Requests that is more specific or broader than a definition contained elsewhere controls over any other definition including definitions contained in Plan documents.

5.      The repetition of an instruction or definition in whole or in part anywhere in these Requests shall not be construed as other than a reminder to Defendants as to the correct definition or manner of responding to a particular Request.

6.      Defendants' disagreement about an explicit or implicit interpretation of law or assertion of fact contained herein is not a grounds for failure to respond or provide documents and information where the interpretation or assertion, by itself, in context or otherwise, describes with sufficient particularity the documents and information sought, whether or not the interpretation or

assertion standing alone or in another context or strictly construed by a court or by Defendants would necessarily encompass the same documents or information.

7.    The reiteration of a Request in whole or in part by different verbal means shall be construed as deliberate.  Such reiterations are designed to prevent the intentional or unintentional non-production or non-disclosure of responsive documents and information.

8.    Use of quotation marks around a definition typically means that Plaintiff is quoting one or more Defendants or a person affiliated with Defendants.  On occasion, citations are provided to the quoted document.  Either way, these quotations are intended to assist Defendants provide thorough responses to these Requests and not narrow the scope of the responses sought.

9.    "Litigation" means the case pending in the U.S. District Court for the District of Columbia styled *Laurent et al v. PricewaterhouseCoopers LLP, et al.,* Civ. No. 05-1291.

10.    "Complaint" refers to the First Amended Class Action Complaint dated July 5, 2005 and filed in the United States District Court for the District of Columbia.

11.    "Plaintiff" refers to Timothy D. Laurent.

12.    "Participant" means any current or former participant, beneficiary, alternate payee, or estate without regard to your contentions that certain persons falling within the scope of this definition of "participant" may "lack standing" to bring one or more claims regarding their participation in an ERISA-governed plan.  If you still have doubt as to the intended scope of this definition, consult Plaintiff's opposition to the motion to dismiss (Doc. 20) and Plaintiff's reply in support of his motion for partial summary judgment (Doc. 34) and give the term the broadest possible interpretation consistent with the assertions and arguments made in those filings.  *See also* RBAP § 2.34 (defining participant to mean any person who has met the eligibility

requirements of Article 3 "and whose Benefit hereunder has not been completely distributed," a definition that Plaintiff asserts applies to him and every other member of the proposed Class).

13.    "Proposed Class" shall mean the proposed class as defined in the Complaint and Plaintiff's motion for class certification (Doc. 32), *i.e.,* All persons participating in the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP ("RBAP"), the Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP (the "401(k) Plan") or the Savings Plan for Employees of PricewaterhouseCoopers LLP (the "Segregated 401(k) Plan") (collectively, the "Plans") at any time after June 30, 1994, and the beneficiaries and estates of such persons, who at any point became vested or may become vested in their benefits under one of those Plans; but excluding any Defendant and excluding any partner (or beneficiary thereof) who would be liable under any form of injunctive, declaratory or monetary order, relief or award that might result from the instant suit. *See* Pl. Mot. at 6 (citing Compl. ¶ 208).

14.    "RBAP" means The PricewaterhouseCoopers LLP Retirement Benefit Accumulation Plan.  "RBAP" also refers to the Plan's sponsors, administrators, fiduciaries, representatives, agents, service providers, and all other persons acting or purporting to act on behalf of the RBAP.

15.    The "primary 401(k) Plan" refers to The Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP.  The "segregated 401(k) Plan" refers to The Savings Plan for Employees of PricewaterhouseCoopers LLP.  The "401(k) Plans" refers to both the primary and segregated 401(k) Plans.  A reference to one or both 401(k) Plans is also a reference to the 401(k) Plans' sponsors, administrators, fiduciaries, representatives, agents, service providers, and all other persons acting or purporting to act on behalf of the 401(k) Plans.

16.    "Plans" means the RBAP and the 401(k) Plans, as defined above..

17.    "Partner" means an employee as defined in RBAP § 2.21(c)-(f). "Non-partner" means any other employee as defined in RBAP § 2.21; any non-partner employee; and any Director as defined in RBAP § 2.17; and any manager or senior manager.

18.    "PwC" and the "PwC Defendants" means PricewaterhouseCoopers LLP, The PricewaterhouseCoopers LLP Retirement Benefit Accumulation Plan, The Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP, The Savings Plan for Employees of PricewaterhouseCoopers LLP, the PwC Board of Partners and Principals, the Administrative Committees to the Plans and each of their current and former Members, the Trustees of each of the Plans, and each of the Individual Defendants.

19.    "PwC" and the "PwC Defendants" also means predecessor partnerships and other business entities and/or its partners, principals, employees, agents, representatives, lawyers, and all other persons acting or purporting to act on their, its, his or her behalf or behalves.

20.    The "Individual Defendants" means the natural person defendants named and/or described in the Complaint whether living or deceased including Lawrence H. Anderson, John J. Barry, William L. Bax, Michael J. Boberschmidt, W. Keith Booth, David J. Breen, Willard W. Brittain, Jay Brodish, J. Frank Brown, Philip J. Clements, Ira Cohen, Marsha R. Cohen, Michael S. Collins, Brian L. Cornell, James E. Daley, G. William Dauphinais, Jonathan J. Davies, Sherry T. Davis, Samuel A. DiPiazza, Robert B. Dubner, John R. Dunleavy, J. Christopher Everett, Iris D. Goldfein, Robert H. Herz, Roger C. Hindman, Stephen D. Higgins, Craig M. Jacobsen, Eugene S. Katz, Scott W. Kaufman, Richard P. Kearns, Peter Kelly, Richard R. Kilgust, Wendy L. Kornreich, James P. Kovacs, Frederic L. Laughlin, D. Leon Leonhardt, Keith D. Levingston, Dennis J. Lubozynski, Ronald T. Maheu, Philip P. Mannino, Anthony F. Martin, James L. McDonald, Donald A. McGovern, James P. McNally, Nicholas G. Moore, Robert C. Morris, Jr.,

Dennis M. Nally, Eldon Olson, Shaun F. O'Malley, Matthew O'Rourke, Gary Pell, Lawrence F. Portnoy, Louise A. Root, Denis J. Salamone, Robert M. Sarsany, Frank V. Scalia, James J. Schiro, Christine G. Snyder, Garrett L. Stauffer, George G. Strong Jr., Paul J. Sullivan, Robert P. Sullivan, Ann M. Thornburg, Randell S. Vallen, Francis J. Van Kirk, Peggy M. Vaughn, Gary W. Van Wagnen, Gerald M. Ward, Robert K. Waters, Brett D. Yacker, and George J. Yost III.

21.     "Individual Defendants" also means one or more of these defendants' agents, representatives, lawyers and all other persons acting or purporting to act on their, his or her behalf or behalves.

22.     "Defendant" means each Defendant in this action, its predecessors, successors, subsidiaries, parent, departments, divisions, or affiliates, including without limitation, any organization or entity in which any Defendant has management or control interests, together with all present and former directors, officers, employees, agents, attorneys, representatives, or any persons acting or purporting to act on behalf of the Defendant.  The words "you" and "yours" mean any Defendant or Defendants and any agent, attorney, representative or other person acting, or purporting to act, on his, her, its or their behalf or behalves.

23.     The "relevant period" for purposes of these Requests only means from January 1, 1994 to the present.  Where no dates are specified, the documents and information sought cover that period of time.

24.     "Document" refers to anything subject to production under Rule 34 of the Federal Rule of Civil Procedure and means among other things all written, printed, typed, transcribed, filmed, digitized, electromagnetic, or graphic matter, and all other tangible things and media upon which any handwriting, typing, printing, drawing, representation, electrostatic, or other copy, sound or video recording, magnetic or electrical impulse, visual reproduction or communication is

recorded, reproduced, or represented.  Without limiting the generality of the foregoing, "document" or "documents" also includes but are not limited to books, papers, records, correspondence, reports, memoranda, electronic mail (*i.e.*, e-mail), articles, newspapers, contracts, tables, tabulations, graphs, charts, diagrams, plans, schedules, appointment books, calendars, diaries, time sheets, reports, studies, analyses, drafts, telegrams, teletype, or telecopy messages, files, telephone logs and messages, checks, microfilms, microfiche, pictures, photographs, printouts, electronic data compilations, tapes, diskettes, drives, removable media, notes, minutes, or transcripts of proceedings, and every means of recording upon any tangible thing any form of communication or representation, including letters, words, pictures, sounds, or symbols, or any combinations thereof.

25.    As noted above, documents shall include originals and all non-identical copies (whether different from the originals because of notes made on or attached to such copies, or otherwise), all other data compilations from which information can be obtained (translated, if necessary, into usable form), and any preliminary versions, drafts, or revisions of any of the foregoing.

26.    Where a document existed in both hard copy and electronic or digital formats, both must be produced.  The hard copy document, however, may be imaged and produced in that format so long as the pre-existing electronic or digital version of the document is also produced.

27.    All requests shall be construed to be modified in each of their aspects by the phrase "in whole or in part."

28.    The singular form of a word shall be interpreted in the plural and vice versa, especially whenever necessary to bring within the scope of these Requests documents, information and responses that might otherwise be construed outside the scope.

29.     The use of any masculine or feminine pronoun includes both the masculine and feminine.

30.     The use of any verb in any tense shall be construed as the use of the verb in all other tenses, especially whenever necessary to bring within the scope of these Requests documents, information and responses that might otherwise be construed outside the scope.

31.     The terms "and" and "or" shall be both conjunctive and disjunctive.

32.     "Including" or "include" means "including, but not limited to" or "include, without limitation."

33.     "Communication" means the transmittal of information in the form of facts, ideas, inquiries or otherwise whether by writing, oral conversation, conversation by telephone, meeting or any other method.  A "communication" shall also include, without limitation, all copies of documents that reference, contain or evidence the same.  A communication "between" two or more parties includes communications originating from any of the parties mentioned.

34.     "Relating" or "related" to or "regarding" includes without limitation:  referring to, alluding to, responding to, referencing, concerning, constituting, containing, noting, recording, embodying, identifying, dealing with, reflecting, mentioning, defining, explaining, discussing, commenting upon, monitoring, supporting, evidencing, modifying, contradicting, quoting, criticizing, describing, creating or maintaining, bearing upon, having any relationship to, constituting a basis for, deriving or arising from, connected with, commenting upon in respect of, about, establishing, analyzing, criticizing, touching upon, constituting, or being or in any manner whatsoever pertinent to that subject.

35.      "Any" and "all" each mean "any and all."

36.    "Person" means without limitation any natural person, alive or deceased; any corporation, organization, partnership, joint venture, sole proprietorship, other business entity or association, foundation, trust; or any government or governmental body, commission, department, committee, board, or agency.

37.    "Identify" when applied to a document means provide the document's (a) nature or type (e.g., interoffice memorandum, correspondence); (b) title or subject line; (c) author(s) or sender(s); (d) addressees; (e) date of creation or revision; (f) the names of all people who received the document or a copy of it, or were listed on any circulation list or with the "cc" designation; and (g) a description of the subject matter.

38.    "Identity" refers to all or some of the information to be supplied in response to a request to "identify" as is contained in a responsive document whether or not all or even most of that information is contained in that document.

39.    "Identify" or "identity," when applied to a person, shall mean to state the present or last known full name, social security number, date of birth, current office and home addresses, current telephone numbers, and current email addresses.

40.    "Describe" or "state" shall mean to specify in detail and to particularize the content of the answer to the question and not just to state the reply in summary or outline fashion.

41.    "Supporting" means having the tendency in whole or in part to substantiate, prove, document, back up, demonstrate or establish.

42.    These Requests are continuing in nature and you must provide supplemental responses promptly under the circumstances and to the extent set forth in Fed. R. Civ. P. 26(e).

43.    As noted, you must provide all documents and/or information in your possession, custody, or control.

44.    These Requests cover all documents, information and responses now and formerly in your actual or constructive possession, custody and/or control, regardless of the date of preparation, including but not limited to, documents, information and responses in the possession of your predecessors, successors, or current or former parents, subsidiaries, affiliates, divisions, officers, directors, partners, employees, agents, consultants, servants, representatives, attorneys, and/or other persons directly or indirectly employed or retained by you, or anyone else acting on your behalf or otherwise subject to your control.

45.    These Requests seek disclosure of responsive documents, information and responses that would be or might be privileged under the attorney-client and/or work product or other privileges but for the fiduciary relationship that exists or existed between Plaintiff and Defendants or members of the proposed Class and Defendants.

46.    If documents, information or responses responsive to any of the following Requests are withheld from production on the basis of privilege or otherwise, then, with respect to each document, information or response withheld, provide a log containing information sufficient to challenge the claim of privilege, including without limitation:  (a) the nature of the document, information or response (*e.g.*, interoffice memorandum, correspondence); (b) the title or subject line; (c) its author(s) or sender(s); (d) the addressees; (e) the date of the item; (f) the names of all people who received the item or a copy of it, or were listed on any circulation list or with the "cc" designation; (g) a description of the subject matter; and (h) all privileges asserted or other grounds for withholding production.

47.    If information is redacted from an item produced pursuant to these Requests, identify the redaction by stamping the word "Redacted" on the document at the place where information has been redacted, and separately log each redaction in the privilege log.

48.    In the event that any document called for by this set of Requests has been destroyed, lost, discarded, or otherwise disposed of, or is no longer in your possession, custody, or control, identify the document as completely as possible; state what disposition was made of it; and identify the date or dates on which such disposition was made.

49.    Produce the documents in such a way as Plaintiff can discern which documents if any have been produced as responsive or potentially responsive to particular document requests.

50.    Document all efforts made to respond to respond to these Requests.  If Defendants do not comply with their obligations under the Rules in responding, those efforts will become the subject of discovery and litigation.

## REQUESTS

### Request for Production No. 1

Produce all documents by which the Plans were and are established, operated, maintained and administered including but not limited to all documents within the meaning of:  (1) ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) ("the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated"); (2) ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1) ("Every employee benefit plan shall be established and maintained pursuant to a written instrument"); and (3) ERISA § 403(a), 29 U.S.C. § 1103(a) (requiring trustees be named either "in the trust instrument or in the plan instrument") in existence at any time during the relevant time.  *See also* ERISA § 102, 103, 29 U.S.C. § 1022, 1023 (defining summary plan description and annual report).

Included in this request are:  (a) all versions of the operative formal Plan documents; (b) all amendments to the operative formal Plan documents; (c) all versions of the summary plan

descriptions and summary of material modifications; (d) all versions of the operative trust

documents; (e) all IRS Form 5500's (including all appendices, exhibits, schedules and

attachments); (f) all annual reports, audited financial statements, actuarial statements, plan

valuations, actuarial valuations and all Actuarial Valuation Reports; (g) and all contracts with

Plan vendors, investment managers and other service providers.

Also requested are all administrative manuals, guidelines, or similar administrative

documents used by or available to be used by (or referred to by) the Plans' third-party

administrator or recordkeeper or other persons to calculate Plan benefits.  This includes what is

typically referred to as the "administrative manual" or "calculation procedure book" for the

Plans.

Also called for by this Request are copies of each of the "separate annual memoranda to

partners" that describe "[partners'] payroll-period credits" and "partner . . . benefits structure"

under the RBAP, *see, e.g.,* 2004 RBAP SPD at 3, and the "separate annual memoranda to

partners" "primarily relating to earnings definitions, enrollment, and timing of elections and

contributions" under the primary 401(k) Plan, *see, e.g.,* 2004 401(k) Plans SPD at 3, since

January 1, 1994.

### Request for Production No. 2

Produce all documents constituting or reflecting communications between one or more

Defendants and the Internal Revenue Service ("IRS"), the U.S. Department of the Treasury

("Treasury"), the U.S. Department of Labor ("DOL"), the Pension Benefit Guaranty Corporation

("PBGC") or any other Federal governmental entity or representative regarding the Plans,

including communications relating to any actual or threatened investigations or audits of any of

the Plans and applications for determination letters made since January 1, 1993, including but not

limited to complete submissions, with all attachments, demonstrations, exhibits, explanations, and alike.  For this purpose, any actual or threatened investigation or audit of PricewaterhouseCoopers LLP shall be considered an actual or threatened audit of one or more of the Plans to the extent there is an indication that one or more of the Plans (or PricewaterhouseCoopers LLP's treatment of matters related to the Plans in any way) may be or were examined as part of the investigation or audit.

**Request for Production No. 3**

Produce all documents analyzing or discussing the legal or tax implications and/or risks potentially arising from, or addressed by, the cash balance design features that are incorporated into the RBAP, including issues relating to "whipsaw" calculations, age discrimination, backloading, and fiduciary duties.  Excluded from this request are documents created by or at the direction one or more attorneys employed by Kirkland & Ellis, LLP on or after November 5, 2004.

**Request for Admission No. 1**

Admit that Plaintiff Timothy D. Laurent was a PwC employee and fully vested participant in the RBAP and primary 401(k) Plan.

**Request for Admission No. 2**

Admit that Plaintiff Laurent is a member of the proposed Class as defined in Complaint ¶ 208.

**Interrogatory No. 1**

If you do not provide an unqualified admission in response to Requests for Admission No. 1 or 2, explain the grounds or bases for your less than unqualified admission, admitting such

portion of the Requests for Admission as you can, and denying by explanation that portion of the Requests which are not accurate.

**Request for Production No. 4**

Produce all documents supporting your response to Interrogatory No. 1.

**Request for Admission No. 3**

Admit that at the time Plaintiff Laurent received a lump sum distribution from the RBAP in May 2002, PricewaterhouseCoopers LLP and/or the RBAP knew that one or more representatives of the IRS or Treasury had expressed, stated, communicated or otherwise indicated (whether privately or publicly, formally or informally, directly to PricewaterhouseCoopers LLP or one or more other Defendants or indirectly) their skepticism or doubt as to the legitimacy or legality of a cash balance pension plan purporting to specify the earlier of 5 years of employment (regardless of age) or age 65 as a "normal retirement age under the plan."

**Request for Admission No. 4**

Admit that at the time Plaintiff Laurent received a lump sum distribution from the RBAP in May 2002, PricewaterhouseCoopers LLP and/or the RBAP knew that one or more of the IRS or Treasury representatives referred to in Request for Admission No. 3 had expressed, stated, communicated or otherwise indicated (whether privately or publicly, formally or informally, directly to PricewaterhouseCoopers LLP or one or more other Defendants or indirectly) their concern that the 5 years of employment retirement-age definition referred to in Request for Admission No. 3 would or could impact the calculation of benefits under cash balance plans in a manner contrary to the requirements of the statutes and regulations applicable to such plans.

15

**Request for Admission No. 5**

Admit that, as to each Defendant, Defendants did not directly communicate orally or in writing to Plaintiff the facts referred to in Requests for Admission No. 3 or 4 (whether or not Defendants or any of them admits those facts) prior to November 5, 2004.

**Request for Admission No. 6**

Admit that, as to each Defendant, Defendants did not provide Plaintiff with a copy of PricewaterhouseCoopers LLP's September 1999 letter to the IRS (Ex. 1 to the Complaint) or specifically inform him of the existence of that letter or the statements PwC made in that letter as to the purpose, intent and/or effect of the 5-years-of-employment retirement-age definition referred to in Request for Admission No. 3.

**Request for Admission No. 7**

Admit that, as to each Defendant, Defendants did not specifically inform or directly communicate to Plaintiff that he did or may have a claim for additional benefits based in whole or in part on the potential invalidity or illegality of the 5-years-of-employment retirement-age definition referred to in Request for Admission No. 3.

**Interrogatory No. 2**

If you do not provide an unqualified admission in response to Requests for Admission Nos. 3-7, explain the grounds or bases for your less than unqualified admission, admitting such portion of the Request for Admission as you can, and denying by explanation that portion of the Request which is not accurate.

**Request for Production No. 5**

Produce all documents supporting your response to Interrogatory No. 2 and, whatever your response to Interrogatory No. 2, produce all documents constituting or reflecting

communications, at any time between 1994 and May 20, 2002, between one or more Defendants

and one or more representatives of the IRS or Treasury regarding the RBAP's (or any other cash

balance plan's) definition of "normal retirement age under the plan" or any such proposed or

contemplated definition.

### Request for Admission No. 8

Admit that after the RBAP sent Plaintiff a lump sum distribution in May 2002, Plaintiff

made no claim for additional benefits prior to November 5, 2004 (whether or not Plaintiff

contends or you agree that he made such a claim on November 5, 2004 or at any time thereafter).

### Request for Admission No. 9

Admit that after the RBAP sent Plaintiff a lump sum distribution in May 2002, the

RBAP did not specifically inform or directly communicate to Plaintiff that he did not have a

claim for additional benefits at any time prior to February 16, 2005 (whether or not Plaintiff

contends or you agree that the RBAP informed or communicated to Plaintiff that he did not have

a claim for benefits at that time or at any time since then).

### Request for Admission No. 10

Admit that TDL 167-71 (and the check TDL 167 references) are true and accurate copies

of the last communications the RBAP had with Plaintiff prior to November 5, 2004 and admit

that except through the instant litigation and prior litigation in the Southern District of Illinois

that the RBAP has not communicated with Plaintiff since it sent him TDL 167-71 and the check

TDL 167 references.

### Interrogatory No. 3

If you do not provide an unqualified admission in response to Requests for Admission

Nos. 8-10, explain the grounds or bases for your less than unqualified admission, admitting such

portion of the Requests for Admission as you can, and denying by explanation that portion of the Requests which are not accurate.

**Request for Production No. 6**

Produce all documents supporting your response to Interrogatory No. 3.

**Request for Production No. 7**

Produce all documents relating to Plaintiff Laurent including without limitation all documents relating to his participation in the RBAP and primary 401(k) Plan and his employment with PwC and all documents that came into your possession, custody or control relating to him in any way subsequent to the time you first learned that he was a plaintiff and proposed class representative in this case.  Excluded from this Request are copies of the documents that Plaintiff has produced to Defendants but included in this Request are Defendants' own, pre-existing versions of those same documents prior to receiving Plaintiff's copies from Plaintiff.  Also included in this Request are all election forms, opening balances/benefits, investment performance summaries (personal and as compared to other participants or the market as a whole or certain indices or on an absolute basis), benefit calculations, participation notices, loan applications, hardship forms, distribution election forms, distribution checks, summary annual reports, educational material and special notices provided or intended to be provided to Plaintiff Laurent.

**Request for Production No. 8**

Produce all documents that constitute or reflect evidentiary support for any contention that the Class proposed by Plaintiff does not satisfy the numerosity requirements of Federal Rule of Civil Procedure 23(a)(1).

**Request for Production No. 9**

Produce all documents in your possession, custody or control that as of the date of your objections and responses[4] that constitute or reflect evidentiary support for any contention you have made or do make or are giving serious consideration to making that none of Plaintiff's claims satisfy, or any of one or more of them do not satisfy, the commonality requirements of Federal Rule of Civil Procedure 23(a)(2).

**Request for Production No. 10**

To the extent that any of the five bases identified by Defendants in ¶ 10 of the Parties' Joint Report (Doc. 36) as supporting a denial of Plaintiff's class certification motion were intended to form in whole or in part an assertion that none of Plaintiff's claims satisfy, or any of one or more of them do not satisfy, the commonality requirements of Federal Rule of Civil Procedure 23(a)(2), produce all documents that Defendants had in their possession, custody or control as of October 18, 2005 that constitute or reflect evidentiary support for the contention that none of Plaintiff's claims satisfy, or any of one or more of them do not satisfy, those requirements.  *See* Fed. R. Civ. P. 11(b).

**Request for Production No. 11**

Produce all documents that Defendants had in their possession, custody or control as of October 18, 2005 that constitute or reflect evidentiary support for the contention that one or more of Plaintiff's claims do not satisfy the typicality requirements of Fed. R. Civ. P. 23(a)(3).  *See* Fed. R. Civ. P. 11(b).  Included in this Request are all documents that constitute or reflect evidentiary support for the contention made to the Court on October 18, 2005 in the Joint Report to the Court ¶ 10 (Doc. 36) that "many of Plaintiff's claims require individualized proof for

---

[4] This specification here and elsewhere should not be construed as superseding the duty to supplement, identified further above.

members of the purported class and therefore are not appropriate for class adjudication." Also included in this Request are all documents that constitute or reflect evidentiary support for the contention made to the Court on October 18, 2005 that "Plaintiff's claims are not typical of the class he purports to represent and he is subject to unique defenses."

**Request for Production No. 12**

Produce all documents that Defendants did not have in their possession, custody or control as of October 18, 2005 but now do that constitute or reflect evidentiary support for the contention that one or more of Plaintiff's claims do not satisfy the typicality requirements of Fed. R. Civ. P. 23(a)(3). *See* Fed. R. Civ. P. 11(b). Included in this Request are all such documents that constitute or reflect evidentiary support for the contention made to the Court on October 18, 2005 in the Joint Report to the Court ¶ 10 (Doc. 36) that "many of Plaintiff's claims require individualized proof for members of the purported class and therefore are not appropriate for class adjudication" and all such documents that constitute or reflect evidentiary support for the contention made to the Court on October 18, 2005 that "Plaintiff's claims are not typical of the class he purports to represent and he is subject to unique defenses."

**Request for Production No. 13**

Produce all documents that Defendants had in their possession, custody or control as of October 18, 2005 that constitute or reflect evidentiary support for the contention that Plaintiff is an inadequate class representative within the meaning of Fed. R. Civ. P. 23(a)(4). *Compare* Joint Report ¶ 10 (asserting that "Plaintiff is not an adequate representative of the class he purports to represent") *with* Fed. R. Civ. P. 11(b).

**Request for Production No. 14**

Produce all documents that Defendants did not have in their possession, custody or control as of October 18, 2005 but now do that constitute or reflect evidentiary support for the contention that Plaintiff is an inadequate representative of the class he seeks to represent.

**Request for Production No. 15**

Produce all documents that Defendants had in their possession, custody or control as of October 18, 2005 that constitute or reflect evidentiary support for the contention that "certification is not appropriate under either Rule 23(b)(1) or (b)(2) because the damages claims are not merely incidental but predominate over any claims for equitable relief."

**Request for Production No. 16**

Produce all documents that Defendants did not have in their possession, custody or control as of October 18, 2005 but now do that constitute or reflect evidentiary support for the contention that "certification is not appropriate under either Rule 23(b)(1) or (b)(2) because the damages claims are not merely incidental but predominate over any claims for equitable relief."

**Request for Production No. 17**

Produce all documents that Defendants had in their possession, custody or control as of October 18, 2005 that constitute or reflect evidentiary support for the contention that "Plaintiff lacks standing to represent the class."

**Request for Production No. 18**

Produce all documents that Defendants did not have in their possession, custody or control as of October 18, 2005 but now do that constitute or reflect evidentiary support for the contention that "Plaintiff lacks standing to represent the class."

**Interrogatory No. 4**

Identify which documents that you are producing or have produced or will produce as responsive to Requests for Production Nos. 8-18, taking care to specifically identify as to each separate document under which Request or Requests for Production the document was produced, is being produced or will be produced.

**Request for Admission No. 11**

Admit that for all RBAP participants all benefits have been, are being, and will be calculated assuming that the normal retirement age under the RBAP is the "Normal Retirement Age" defined in § 2.32 of the RBAP plan instrument Defendants submitted to the Court in their motion to dismiss (Doc. 9) (hereinafter the "RBAP plan instrument"), and without taking into account the value of the right to continue earning investment credits after the Normal Retirement Age for as long as a participant's benefits remain in the RBAP.

**Interrogatory No. 5**

If you do not provide an unqualified admission in response to Request for Admission No. 11, explain the grounds or bases for your less than unqualified admission, admitting such portion of the Request for Admission as you can, and denying by explanation that portion of the Request which is not accurate.

**Request for Production No. 19**

Produce all documents supporting your response to Interrogatory No. 5.

**Request for Admission No. 12**

Admit that for all RBAP participants all benefit distribution options disclosed in distribution election and spousal consent forms have been, are being, and will be calculated assuming that the normal retirement age under the RBAP is the "Normal Retirement Age"

defined in § 2.32 of the RBAP, and without taking into account the value of the right to continue earning investment credits after the Normal Retirement Age for as long as a participant's benefits remain in the Plan.

**Interrogatory No. 6**

If you do not provide an unqualified admission in response to Request for Admission No. 12, explain the grounds or bases for your less than unqualified admission, admitting such portion of the Request for Admission as you can, and denying by explanation that portion of the Request which is not accurate.

**Request for Production No. 20**

Produce all documents supporting your response to Interrogatory No. 6.

**Request for Admission No. 13**

Admit that all participants whose benefits under the RBAP have been paid or will in the future be paid in the form of a single lump sum were or will be paid an amount equal to the nominal balance of the participant's hypothetical account balance under the RBAP as of the date on account of which the distribution is made, in the same way that the amount of Plaintiff's benefits paid in the form of a single lump sum were equal to the nominal balance of his hypothetical account balance as of the date on account of which payment was made.

**Interrogatory No. 7**

If you do not provide an unqualified admission in response to Request for Admission No. 13, explain the grounds or bases for your less than unqualified admission, admitting such portion of the Request for Admission as you can, and denying by explanation that portion of the Request which is not accurate.

**Request for Production No. 21**

 Produce all documents supporting your response to Interrogatory No. 7.

**Request for Admission No. 14**

 Admit that the manner in which the benefit distribution options available to Plaintiff were calculated was substantially similar to the manner in which distribution options and lump sum distribution amounts have been calculated for all or substantially all other participants in the RBAP, are currently being calculated and will continue to be calculated in the future for all other participants.

**Interrogatory No. 8**

 If you do not provide an unqualified admission in response to Request for Admission No. 14, explain the grounds or bases for your less than unqualified admission, admitting such portion of the Request for Admission as you can, and denying by explanation that portion of the Request which is not accurate.

**Request for Production No. 22**

 Produce all documents supporting your response to Interrogatory No. 8.

**Request for Admission No. 15**

 Admit that all participants whose benefits under the RBAP have been paid or will in the future be paid in the form of annual payments were or will be paid an amount equal to the nominal balance of the participant's hypothetical account balance under the RBAP as of the annuity starting date, multiplied or divided by an immediate annuity factor.

**Interrogatory No. 9**

 If you do not provide an unqualified admission in response to Request for Admission No. 15, explain the grounds or bases for your less than unqualified admission, admitting such portion

of the Request for Admission as you can, and denying by explanation that portion of the Request which is not accurate.

**Request for Production No. 23**

Produce all documents supporting your response to Interrogatory No. 9.

**Request for Admission No. 16**

Admit that Plaintiff accrued Deemed Payroll Period Allocations pursuant to RBAP § 2.15 and that all members of the proposed Class also accrued, are now accruing, and/or will in the future accrue Deemed Payroll Period Allocations pursuant to RBAP § 2.15.

**Interrogatory No. 10**

If you do not provide an unqualified admission in response to Request for Admission No. 16, explain the grounds or bases for your less than unqualified admission, admitting such portion of the Request for Admission as you can, and denying by explanation that portion of the Request which is not accurate.

**Request for Production No. 24**

Produce all documents supporting your response to Interrogatory No. 10.

**Request for Admission No. 17**

Admit that the RBAP did not issue any RBAP participant a "suspension of benefits" notice during the relevant period.

**Interrogatory No. 11**

If you do not provide an unqualified admission in response to Request for Admission No. 17, explain the grounds or bases for your less than unqualified admission, admitting such portion of the Request for Admission as you can, and denying by explanation that portion of the Request which is not accurate.

**Request for Production No. 25**

Produce all documents supporting your response to Interrogatory No. 11.

**Request for Production No. 26**

Produce all documents from which the number and identity of the RBAP participants who received single lump sum distributions of their vested "account" balances during the relevant period may be ascertained (in as much as detail as is available), from which it may be determined what percentage of all distributions from the RBAP were taken as single lump sum distributions, and/or from which it can be ascertained which and/or how many participants in the RBAP received any form of distribution other than a single lump sum distribution, and which particular form was paid.

**Interrogatory No. 12**

Identify all participants who signed or executed any type of release that ran or runs or could reasonably be construed as running in favor of any named Defendant and that arguably releases or that Defendants do contend or would contend releases one or more of them from liability for any of the alleged violations of ERISA and/or the terms of the RBAP or 401(k) Plans referred to in the Complaint.

**Request for Production No. 27**

Produce one example of every different type or version of the releases referred to in Interrogatory No. 12 (and your responses thereto), using a copy of an actual release signed by an actual participant.

**Interrogatory No. 13**

For each participant identified in Interrogatory No. 12, identify the type of release (as provided pursuant to Request for Production No. 27) that was signed or executed by the participant.

**Request for Production No. 28**

Produce all documents relating to any participant's challenge to the proper calculation of their benefits under the RBAP including but not limited to those that are "relevant" as that term is defined by 29 C.F.R. § 52560.503-1(m)(8).   (The participant's name and SSN can be redacted pending entry of a protective order).  Included in this Requests are all documents from which it can be ascertained what administrative processes and safeguards if any the RBAP had in place designed to ensure and verify that benefit claim determinations on behalf of the Plan were made in accordance with the governing plan documents, and where appropriate, designed to ensure and verify that the plan provisions were applied consistently with respect to similarly situated participants.  This request includes all documents that establish the dates on which such administrative processes or safeguards were put in place and applied, and the persons involved in ensuring consistency.  Also included in this Request are all documents that relate to legal advice sought or received by any person relating to any participant's challenge to the calculation of his or her benefits under the RBAP including but not limited to those documents that are "relevant" as that term is defined by 29 C.F.R. § 52560.503-1(m)(8) and all documents relating to any and all deliberations of by any Defendant concerning the proper interpretation of the RBAP.

**Request for Admission No. 18**

Admit that for purposes of demonstrating compliance with Internal Revenue Code ("Tax Code") § 401(a)(4) nondiscrimination and § 410(b) coverage requirements, the RBAP assumes a

uniform normal retirement age for testing purposes of age 65 (or the employee's current age, if later) for all participants.

**Request for Admission No. 19**

Admit that for purposes of demonstrating compliance with Tax Code § 401(a)(4) nondiscrimination and § 410(b) coverage requirements, the RBAP uses a uniform projection rate to calculate the projected benefit of each participant at age 65 (or the employee's current age, if later).

**Request for Admission No. 20**

Admit that for funding purposes, the RBAP uses a uniform projection rate to calculate the projected benefit of each participant.

**Request for Admission No. 21**

Admit that for accounting purposes, the RBAP uses a uniform projection rate to calculate the projected benefit of each participant.

**Request for Production No. 29**

Produce all documents from which, for each year during the relevant period, the projection rate used for each of the purposes described in Requests for Admissions Nos. 19-21 can be identified, and the methodology used to determine such projection rates can also be identified.

**Request for Admission No. 22**

Admit that for purposes of demonstrating compliance with Tax Code § 401(a)(4) nondiscrimination and § 410(b) coverage requirements, the RBAP interprets the term benefit "accrual rate" in Treasury Regulations (*e.g.*, Treas. Reg. § 1.401(a)(4)-3(d)) as the increase in each participant's projected age-65 accrued benefit under the RBAP from one year to the next.

**Interrogatory No. 14**

If you do not provide an unqualified admission in response to Requests for Admission Nos. 18-22, explain the grounds or bases for your less than unqualified admission, admitting such portion of the Requests for Admission as you can, and denying by explanation that portion of the Requests which are not accurate.

**Request for Production No. 30**

Produce all documents supporting your response to Interrogatory No. 14.

**Request for Production No. 31**

Produce all documents reflecting the negotiations that culminated in the eventual agreement with the PBGC dated September 30, 2002 (the "Agreement") which required PwC, *inter alia*, to contribute $200 million to the RBAP within one week following the effective date of PwC's sale of its consulting business, PwC Consulting, to International Business Machines Corp. ("IBM"). Included in this Request are all documents that describe the assumptions used to calculate the amounts of the additional contributions that PwC was asked to and/or agreed to make to the RBAP.

**Request for Admission No. 23**

Admit that if a partner who is a member of the proposed Class requests a lump sum distribution of his entire accrued benefit under the RBAP, the partner is paid merely the nominal balance in his cash balance account, regardless of past or projected "investment" performance for that particular partner.

**Interrogatory No. 15**

If you do not provide an unqualified admission in response to Request for Admission No. 23, explain the grounds or bases for your less than unqualified admission, admitting such portion

of the Request for Admission as you can, and denying by explanation that portion of the Request
which is not accurate.

**Request for Production No. 32**

    Produce all documents supporting your response to Interrogatory No. 15.

**Interrogatory No. 16**

    Identify which of the three available anti-backloading standards set forth in ERISA
§ 204(b)(1)(A)-(C) the Pension Plan is able to satisfy.

**Request for Production No. 33**

    Produce all documents supporting your response to Interrogatory No. 16.

**Request for Production No. 34**

    Produce all documents constituting or reflecting sworn testimony or statements made by
any person concerning the terms, administration or operation of RBAP or the 401(k) Plans,
including but not limited to sworn testimony given by Roger Hindman in *Hussey v. Hussey,* Civ.
No. FA010183296S, 2004 WL 2397146 (Super. Ct. Conn) and other proceedings.

**Request for Production No. 35**

    Produce all documents relating to all contracts and other agreements between Defendants
and one or more Mellon Bank-related entities and/or ACS Inc. relating to the administration of
the Plan including all documents relating to such third-party administrator or recordkeeper's
role(s), duties, responsibilities regarding the RBAP. Included in this Request are all documents
relating to delegations of authority (including interpretative authority) with respect to the RBAP,
directions for the calculation of plan benefits, directions for handling administrative claims, and
all manuals, handbooks, protocols and training manuals relating to the RBAP. Included in this
Request are all documents reflecting any instructions, directions, advice or guidance or

consideration and/or approval of same communicated to, from or with any person involved in calculating of any participant's RBAP benefits.

**Request for Production No. 36**

Produce all documents from which, for each year during the relevant period, the average aggregate "investment" return for all participant accounts in the RBAP can be identified, and the methodology used to determine such returns can also be identified.

**Request for Production No. 37**

Produce all documents from which, for each year during the relevant period, the aggregate "investment" mix for all participant accounts in the RBAP can be identified.

**Request for Production No. 38**

Produce all documents from which, for each year during the relevant period, the "investment" return for all "investment" choices available to participants the RBAP can be identified.

**Request for Admission No. 24**

Admit that if the Segregated 401(k) Plan had not been adopted and participants in that plan had instead participated in the Primary 401(k) Plan, the Primary 401(k) Plan would have been unable to satisfy the nondiscrimination standards set forth in Tax Code §§ 401(a)(4) and 401(k) and the regulations thereunder in one or more years during the relevant period.

**Interrogatory No. 16**

If you do not provide an unqualified admission in response to Request for Admission No. 24, explain the grounds or bases for your less than unqualified admission, admitting such portion of the Request for Admission as you can, and denying by explanation that portion of the Request which is not accurate.

**Request for Production No. 39**

Produce all documents supporting your response to Interrogatory No. 16.

**Request for Production No. 40**

Produce all documents prepared and distributed internally within PricewaterhouseCoopers that reflect awareness by any Defendant that one or more of the design features of any of the Plans posed legal risks, or were controversial, aggressive, innovative, cutting edge, new, unique, subject to potential challenge, had been or might be questioned by government agencies or officials, or might be challenged or potentially be subject to challenge by participants.  Excluded from this request are documents created at the direction one or more attorneys employed by Kirkland & Ellis, LLP on or after November 5, 2004.

October 21, 2005                    By:

_____

Eli Gottesdiener
**GOTTESDIENER LAW FIRM, PLLC**

1025 Connecticut Avenue, N.W.
Suite 1000
Washington, D.C.  20036
Phone: (202) 243-1000
Fax:     (202) 243-1001
Attorney for the Plaintiff and the proposed Class


## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2005, I caused all Defendants to be served with the

foregoing Plaintiff's First Set of Discovery Requests to All Defendants Pertaining to Class

Certification by causing a copy of the foregoing Requests to be served on their counsel, listed

below, by hand delivery as follows:

David E. Mendelson
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005-5793
(202) 879-5000 (phone)
(202) 879-5200 (fax)
dmendelson@kirkland.com

Counsel for Defendants PricewaterhouseCoopers LLP, PricewaterhouseCoopers LLP Board of
Partners and Principals, the Retirement Benefit Accumulation Plan for Employees of
PricewaterhouseCoopers LLP, the Savings Plan for Employees and Partners of
PricewaterhouseCoopers LLP, the Savings Plan for Employees of PricewaterhouseCoopers LLP,
the Administrative Committee to the Retirement Benefit Accumulation Plan for Employees of
PricewaterhouseCoopers LLP, the Administrative Committee to the Savings Plan for Employees
and Partners of PricewaterhouseCoopers LLP, the Administrative Committee to the Savings Plan
for Employees of PricewaterhouseCoopers LLP, Lawrence H. Anderson, John J. Barry, William

L. Bax, Michael J. Boberschmidt, W. Keith Booth, David J. Breen, Willard W. Brittain, Jay Brodish, J. Frank Brown, Philip J. Clements, Ira Cohen, Marsha R. Cohen, Michael S. Collins, Brian L. Cornell, James E. Daley, G. William Dauphinais, Jonathan J. Davies, Sherry T. Davis, Samuel A. DiPiazza, Robert B. Dubner, John R. Dunleavy, J. Christopher Everett, Iris D. Goldfein, Robert H. Herz, Roger C. Hindman, Stephen D. Higgins, Craig M. Jacobsen, Eugene S. Katz, Scott W. Kaufman, Richard P. Kearns, Peter Kelly, Richard R. Kilgust, Wendy L. Kornreich, James P. Kovacs, Frederic L. Laughlin, D. Leon Leonhardt, Keith D. Levingston, Dennis J. Lubozynski, Ronald T. Maheu, Philip P. Mannino, Anthony F. Martin, James L. McDonald, Donald A. McGovern, James P. McNally, Nicholas G. Moore, Robert C. Morris, Jr., Dennis M. Nally, Eldon Olson, Shaun F. O'Malley, Matthew O'Rourke, Gary Pell, Lawrence F. Portnoy, Louise A. Root, Denis J. Salamone, Robert M. Sarsany, Frank V. Scalia, James J. Schiro, Christine G. Snyder, Garrett L. Stauffer, George G. Strong Jr., Paul J. Sullivan, Robert P. Sullivan, Ann M. Thornburg, Randell S. Vallen, Francis J. Van Kirk, Peggy M. Vaughn, Gary W. Van Wagnen, Gerald M. Ward, Robert K. Waters, Brett D. Yacker, and George J. Yost III.


Patrick J. Attridge
KING & ATTRIDGE
39 W. Montgomery Ave
Rockville, Md. 20850
(301)-279-0780 (phone)
(301)-279-2988 (fax)

Counsel for Defendants Donald T. Nicolaisen and Walter G. Ricciardi

_____

Eli Gottesdiener