## EXHIBIT A

**RBAP Plan Documents (amended and restated; effective July 1, 1995) (excerpts)**

# RETIREMENT BENEFIT ACCUMULATION PLAN
## FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP

As Amended and Restated
Effective July 1, 1995

### RETIREMENT BENEFIT ACCUMULATION PLAN
### FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP

## TABLE OF CONTENTS

**ARTICLE 1          PURPOSE AND APPLICABILITY OF PLAN** ..................................... 3

1.1    Purpose of Plan ................................................................. 3
1.2    Applicability of Plan ........................................................... 3

**ARTICLE 2          DEFINITIONS** ......................................................... 4

2.1    Accrued Benefit ................................................................ 4
2.2    Actuarial Equivalent ........................................................... 4
2.3    Actuary ....................................................................... 4
2.4    Adoption Agreement ............................................................. 4
2.5    Administrative Committee ....................................................... 5
2.6    Affiliated Employer ............................................................ 5
2.7    Beneficiary ................................................................... 5
2.8    Benefit ....................................................................... 6
2.9    Break in Service .............................................................. 6
2.10   Code .......................................................................... 6
2.11   Compensation .................................................................. 6
2.12   Computation Period ............................................................ 8
2.13   Deemed Account Balance ........................................................ 8
2.14   Deemed Investment Experience .................................................. 9
2.15   Deemed Payroll Period Allocation .............................................. 10
2.16   Deemed Plan Interest Rate ..................................................... 14
2.17   Director ...................................................................... 15
2.18   Earned Income ................................................................. 15
2.19   Effective Date ................................................................ 16
2.20   Eligible Employee ............................................................. 16
2.21   Employee ...................................................................... 16
2.22   Employer ...................................................................... 18
2.23   Employer Contributions ........................................................ 19
2.24   Entry Date .................................................................... 19
2.25   ERISA ......................................................................... 20
2.26   Fiduciary ..................................................................... 20
2.27   Firm .......................................................................... 20
2.28   Highly Compensated Employee ................................................... 20
2.29   Hour of Service ............................................................... 24
2.30   Investment Manager ............................................................ 26
2.31   Leased Employee ............................................................... 26
2.32   Normal Retirement Age ......................................................... 27
2.33   Normal Retirement Benefit ..................................................... 27
2.34   Participant ................................................................... 27

2.35    Plan ........................................................................................................... 27
2.36    Plan Administrator ................................................................................ 27
2.37    Plan Year ................................................................................................ 27
2.38    Policy Board ............................................................................................ 28
2.39    Qualified Joint and Survivor Annuity ................................................ 28
2.40    Qualified Pre-Retirement Survivor Annuity ...................................... 28
2.41    Spouse ...................................................................................................... 28
2.42    State .......................................................................................................... 28
2.43    Trust .......................................................................................................... 29
2.44    Trustee ...................................................................................................... 29
2.45    Valuation Date ........................................................................................ 29
2.46    Year of Service ........................................................................................ 30

**ARTICLE 3          ELIGIBILITY AND YEARS OF SERVICE** .................................. 34
3.1     Eligibility Requirements ...................................................................... 34
3.2     Cessation of Eligibility .......................................................................... 34
3.3     Eligible Employees ................................................................................ 34

**ARTICLE 4          CONTRIBUTIONS** .................................................................... 38
4.1     Employer Contributions ........................................................................ 38
4.2     Form of Employer Contributions ........................................................ 38
4.3     No Participant Contributions ................................................................ 38

**ARTICLE 5          RETIREMENT BENEFITS** ........................................................ 39
5.1     Normal Retirement Benefit .................................................................. 39
5.2     Payment of Benefits .............................................................................. 41
5.3     Qualified Joint and Survivor Annuity ................................................ 43
5.4     Optional Forms ...................................................................................... 45
5.5     Method of Payment of Benefit ............................................................ 46
5.6     Distribution Procedures ........................................................................ 47
5.7     Death of the Participant ........................................................................ 49
5.8     Designation of Beneficiary .................................................................... 51
5.9     Distribution Only Upon Written Instructions and Release for Payment ........ 53
5.10    Direct Rollover ........................................................................................ 53
5.11    Distribution for Minor or Incompetent Beneficiary .......................... 55
5.12    Location of Participant or Beneficiary Unknown .............................. 56

**ARTICLE 6          VESTING** ................................................................................ 57
6.1     Employer Contributions ........................................................................ 57
6.2     Amendments Affecting Benefits .......................................................... 59

**ARTICLE 7          LIMITATIONS ON BENEFITS** .................................................. 60
7.1     General Limit .......................................................................................... 60
7.2     Adjustment to Limits ............................................................................ 60
7.3     Definitions .............................................................................................. 62
7.4     Definitions .............................................................................................. 67

**ARTICLE 8         PLAN LOANS** ................................................................. 75
    8.1    Loans to Participants ..................................................................... 75

**ARTICLE 9         TOP-HEAVY** ...................................................................... 76
    9.1    Applicability of Top Heavy Rules ................................................ 76
    9.2    Top Heavy Status ......................................................................... 76
    9.3    Minimum Accrued Benefit ........................................................... 79
    9.4    Vesting Requirement and Schedule ............................................. 80
    9.5    Definitions .................................................................................... 81

**ARTICLE 10        ADMINISTRATION** ........................................................ 83
    10.1   Duties and Responsibilities of Fiduciaries;
           Allocation of Fiduciary Responsibility ....................................... 83
    10.2   Powers and Responsibilities of the Plan
           Administrator ................................................................................ 83
    10.3   Allocation of Duties and Responsibilities ................................... 86
    10.4   Appointment of the Plan Administrator ...................................... 86
    10.5   Expenses ....................................................................................... 87
    10.6   Claim Procedure ........................................................................... 87

**ARTICLE 11        TRUST FUND; POWERS, DUTIES AND IMMUNITIES OF**
                         **TRUSTEE** ..................................................................... 90
    11.1   Receipt of Contributions by Trustee ........................................... 90
    11.2   Investment Responsibility ............................................................ 90
    11.3   Appointment of Investment Manager .......................................... 90
    11.4   No Prohibited Transaction ............................................................ 90
    11.5   Duties of Trustee Concerning Contributions .............................. 90
    11.6   Distribution of Benefits by the Trustee ....................................... 91
    11.7   Contributions Held in Trust ......................................................... 91
    11.8   Investment of Trust Fund ............................................................. 92
    11.9   Powers and Duties of Trustee ...................................................... 93
    11.10  Application of Trust Funds ........................................................... 96
    11.11  Litigation ...................................................................................... 96
    11.12  Accounting by Trustee ................................................................. 96
    11.13  Reliance on Written Instructions ................................................. 97
    11.14  Disputes ........................................................................................ 97
    11.15  Duties of Trustee Limited ............................................................ 97
    11.16  Notices to Trustee ........................................................................ 97
    11.17  Notices to Employer or Participants ............................................ 98
    11.18  Resignation, Removal and Appointment of Trustee .................... 98
    11.19  No Diversion of Trust ................................................................... 99

**ARTICLE 12        INDEMNIFICATION OF FIDUCIARIES** ................... 100
    12.1   Rights To Indemnification ........................................................... 100
    12.2   Advancement of Expenses ........................................................... 100
    12.3   Determination of Right to Indemnity .......................................... 101
    12.4   Other Rights ................................................................................. 102

**ARTICLE 13      PARTICIPATING EMPLOYERS** ........................................103
   13.1   Adoption by Other Employers ............................................103
   13.2   Adoption of Plan and Trust by Affiliated
       Employer....................................................................103
   13.3   Designation of Agent ......................................................103
   13.4   Amendment..................................................................104
   13.5   Discontinuance of Participation ......................................104
   13.6   Plan Administrator's Authority ........................................104

**ARTICLE 14      CHANGE IN EMPLOYMENT** .........................................105
   14.1   Participant Transfer from Employer to Employer ...............105
   14.2   Participant Transfer from Employer to Affiliated
       Non-Employer............................................................105
   14.3   Employee Credit for Services With Affiliated Non-
       Employer...................................................................105

**ARTICLE 15      AMENDMENT, TERMINATION AND MERGER** ...............106
   15.1   Establishment of Plan ....................................................106
   15.2   Power of Amendment .....................................................106
   15.3   Failure of Plan to Qualify Upon Amendment.....................106
   15.4   Termination................................................................106
   15.5   Merger, Consolidation, or Transfer.................................108
   15.6   Limitation of Benefits ...................................................108

**ARTICLE 16      MISCELLANEOUS** .......................................................110
   16.1   Exclusive Benefit of Participants and
       Beneficiaries .............................................................110
   16.2   Nonguarantee of Employment ........................................111
   16.3   Rights to Trust Assets ...................................................111
   16.4   Nonalienation of Benefits ..............................................112
   16.5   Bonding.....................................................................112
   16.6   Construction................................................................113
   16.7   Discretionary Acts To Be Non-Discriminatory .................113
   16.8   Titles and Headings......................................................113
   16.9   Counterparts...............................................................114
   16.10  USERRA...................................................................114

**APPENDICES**
   **APPENDIX A** ...................................................................116
   **APPENDIX B** ...................................................................118
   **APPENDIX C** ...................................................................172
   **APPENDIX D** ...................................................................174

## RETIREMENT BENEFIT ACCUMULATION PLAN
## FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP

AGREEMENT, effective, as of the first day of June 1954, by and between Coopers & Lybrand LLP (the "Firm"), and, as of the first day of July 1994, by and between Price Waterhouse LLP (the "Firm"), and, as of the first day of July 1998, by and between PricewaterhouseCoopers LLP (the "Firm"), a partnership with its principal office in New York, NY, and the Trustees.

### WITNESSETH

WHEREAS, effective as of the first day of June 1954, Coopers & Lybrand LLP adopted this defined benefit pension plan, as the Coopers & Lybrand Retirement Plan (the "Plan"), and, effective as of the first day of July 1998, PricewaterhouseCoopers LLP adopted this Plan, as the Coopers & Lybrand Retirement Plan; and

WHEREAS, effective as of the first day of July 1994, Price Waterhouse LLP adopted a defined benefit pension plan, as the Retirement Benefit Accumulation Plan for Employees of Price Waterhouse LLP (the "PW Plan") and, effective as of the first day of July 1998, PricewaterhouseCoopers LLP adopted the PW Plan, as the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (the "RBAP"); and

WHEREAS, effective as of the first day of July 1999, the RBAP was merged into this Plan

1

and this Plan was amended and restated to conform to the terms of the RBAP and renamed as the Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP; and

WHEREAS, it is intended that this Plan meet the requirements of Sections 401 and 501 of the Internal Revenue Code of 1986, as amended; and

WHEREAS, this Plan must be amended to reflect changes in the law and for other purposes.

NOW, THEREFORE, it is agreed that, effective as of the first day of July 1995, the Firm hereby amends and restates this Plan, to read as follows:

by the Administrative Committee. Prior to accepting a disclaimer by a Beneficiary, the Administrative Committee may require such additional documents or other items, or such actions, as in its sole judgment it deems appropriate. No disclaimer by a Beneficiary may result in a distribution of benefits to the individual or entity in whose favor such disclaimer is made in a form that could not have been elected by the Participant had the Participant designated such individual as his or her beneficiary instead of the Beneficiary.

2.8 <u>Benefit</u>. The vested and nonforfeitable interest of a Participant in his or her Accrued Benefit, as determined under Article 6.

2.9 <u>Break in Service</u>. A Computation Period during which a Participant does not complete more than five hundred (500) Hours of Service.

2.10 <u>Code</u>. The Internal Revenue Code of 1986, as amended from time to time, or any successor statute.

2.11 <u>Compensation</u>.

(a) For purposes of a Deemed Payroll Period Allocation under the Plan based on Compensation, Compensation shall include the remuneration for services rendered which is paid by the Employer to or for an Employee during a Plan Year in which the Employee is a Participant in the Plan which is includible in income for Federal income tax purposes (Form W-2 income); provided, however, that Compensation shall not include any of the following items (even if includible in gross income): reimbursements or other expense

6

allowances, fringe benefits (cash and noncash), moving expenses, deferred compensation (other than any pre-tax contributions made, as permitted by Section 401(k) of the Code, to the Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP and the Savings Plan for Employees of PricewaterhouseCoopers LLP), sign-on and referral bonuses, and welfare benefits. Compensation shall include wages, salary, overtime, commissions, bonuses (other than sign-on and referral bonuses), and severance pay, and other amounts received (without regard to whether an amount is paid in cash) for personal services actually rendered in the course of employment with the Employer, and any other amounts not currently includible in income under Section 125 of the Code pursuant to a salary reduction agreement, and any qualified transportation benefit not currently includable in income under Section 132(f)(4) of the Code. For a Participant who is on a LINT, LMIP, or LTIP leave of absence, Compensation shall be his or her United States home-office annual salary. Compensation for a self-employed individual shall be equal to his or her Earned Income. Compensation shall be determined based on the period the Employee is a Participant in the Plan. For Plan Years ending prior to July 1, 1997, in determining the Compensation of an Employee, the rules of Section 414(q)(6) of the Code shall apply, except that in applying such rules, the term "family" shall include only the Spouse of the Employee and any lineal descendants of the Employee who have not attained age nineteen (19) before the close of the Plan Year.

(b) For purposes of the limit on benefits under Section 415 of the Code, Compensation shall be as defined under Section 7.3(g) of the Plan.

(c) The maximum amount of Compensation that may be taken into account for any purpose is $150,000, as adjusted by the Secretary of the Treasury to reflect cost of

living increases. For Plan Years beginning after January 1, 2002, the maximum amount of Compensation that may be taken into account for any purpose is $200,000, as adjusted by the Secretary of the Treasury to reflect cost of living increases.

2.12 <u>Computation Period</u>.  The twelve consecutive month period commencing each October 1 and ending the immediately following September 30.

2.13 <u>Deemed Account Balance</u>.  For each Participant, the Participant's Deemed Payroll Period Allocations to date, as increased or decreased to reflect his or her Deemed Investment Experience in accordance with the following:

(a)   On any day of the Plan Year other than on a Valuation Date, the value of a Participant's Deemed Account Balance shall equal its value (following the application of Section 2.13(b)) on the immediately preceding Valuation Date; and

(b)   On each Valuation Date, the value of a Participant's Deemed Account Balance shall equal its value as adjusted on the immediately preceding Valuation Date increased or decreased to reflect his or her Deemed Investment Experience since the immediately preceding Valuation Date; provided, however, that if a Participant has received distribution(s) under the Plan, his or her Deemed Account Balance shall be decreased by the amount of any such distribution(s) since the immediately preceding Valuation Date prior to increasing or decreasing the Participant's Deemed Account Balance by his or her Deemed Investment Experience; and, further provided, that at such time as the payment of a Participant's Benefit in the form of an annuity commences, his or her Deemed Account Balance shall be reduced to zero.

8

"Deemed Account Balance" as used herein is only for recordkeeping purposes and it does not signify an individual account, and no Plan contributions are allocated for the benefit of any individual Participant's Deemed Account Balance. The Deemed Account Balance is a recordkeeping entry maintained by the Plan. For purposes of distributing a Participant's (other than a Partner's or Principal's) Benefit, his Deemed Account Balance shall be not less than $7,000 (reduced by any amount previously distributed with respect to the Participant and by the lump sum present value equivalent of the Participant's annual retirement income, if any, under Appendix B), provided that he was an active Participant (designated by Employment Status Code A, and excluding inactive Participants designated by Employment Status Codes P or L) in the Plan (1) on July 1, 2000, and (2) on March 7, 2002, other than a Participant employed by the Employer on March 7, 2002 in connection with PricewaterhouseCoopers Consulting (Line of Service Code USA05) or certain units of Business Process Outsourcing (Company Code BAM). The preceding sentence shall not affect in any way whatsoever the determination, under Article 6 of the Plan, whether a Participant has a vested and nonforfeitable right to his Accrued Benefit.

2.14 Deemed Investment Experience.

(a) An increase or decrease to a Participant's Deemed Account Balance in accordance with his or her investment experience election from among the choices prescribed by the Administrative Committee. An investment experience election shall be made by a Participant to the Plan Administrator in writing (or telephonically, or in any other form approved by the Plan Administrator), subject to such rules and procedures as the Plan Administrator shall prescribe and apply in a nondiscriminatory manner. In the absence of such investment experience election, the Plan Administrator shall increase or

9

decrease a Participant's Deemed Account Balance at the rate earned by the money market

mutual fund that is among the investment experience choices prescribed by the

Administrative Committee.  Each Participant's Deemed Account Balance shall be adjusted

to reflect his or her Deemed Investment Experience in the same manner as if the Deemed

Account Balance were actually invested pursuant to the Participant's investment experience

election and as if each Deemed Payroll Period Allocation were actually an allocation made

to an account for the Participant.

(b)  Form of Election.  An investment experience election shall be made by a

Participant to the Plan Administrator in writing on a form prescribed by the Plan

Administrator (or telephonically, or in any other form approved by the Plan

Administrator).  Such form shall provide an acknowledgment by the Participant that he or

she is solely responsible for any and all adjustments to his or her Deemed Account Balance

as a consequence of his or her investment experience election.  Any investment experience

election shall remain in effect as prescribed by rules established by the Plan Administrator.

Upon acceptance, the Plan Administrator shall provide the Participant with written

confirmation (or telephonically, or in any other form approved by the Plan Administrator)

of the Participant's investment experience election.

(c)  Frequency of Election.  Each Participant shall be permitted to change his or

her direction of future Deemed Investment Experience under his or her Deemed Account

Balance or to reallocate the amounts credited to his or her Deemed Account Balance

among the available choices under the Plan as of each Valuation Date.


2.15 Deemed Payroll Period Allocation.  For Participants other than Partners or

Principals, an amount equal to five percent (5%) of the Compensation paid to a Participant on a monthly, semimonthly, biweekly, weekly, or other periodic basis in accordance with the Participant's payroll period, except that a Participant who is a Director shall have an amount equal to seven percent (7%) of the Compensation paid to such Participant substituted for five percent (5%). For the Plan Year ending June 30, 1995, for Participants other than Partners or Principals, an amount equal to three percent (3%) of Compensation for Participants other than Directors and five percent (5%) of Compensation for Directors shall be the Deemed Payroll Period Allocation in accordance with the Participant's payroll period and the balance of two percent (2%) shall be a Deemed Payroll Period Allocation on or before June 30, 1995 for any Participant who received a Deemed Payroll Period Allocation in accordance with his or her payroll period during such Plan Year. For Plan Years beginning after June 30, 1995 and ending prior to July 1, 1997, a Director shall be allocated 0, except for a Director who is a Participant pursuant to Section 3.3(7). For Participants who are Partners or Principals: for Plan Years ending prior to July 1, 1998, an amount equal to the product of the Share Ratio for the Plan Year and the Unadjusted Allocation; and, for Plan Years beginning after June 30, 1998, an amount equal to the Unadjusted Allocation including for Plan Years beginning on and after July 1, 2001 Limited Equity Partners and Limited Equity Principals. For the Plan Year ending June 30, 1995, no Deemed Payroll Period Allocation shall be made for a Partner or Principal who ceased to be an Employee prior to June 1, 1995. For the Plan Year beginning July 1, 1999 and ending June 30, 2000, a Partner or Principal who (1) ceases to be active prior to October 1, 1999, and (2) was a partner or principal of Coopers & Lybrand L.L.P. on June 30, 1998 shall have no Deemed Payroll Period Allocations for such Plan Year. For the

11

# APPENDIX B

## Special Provisions Applicable to Participants who were Members of the

## Coopers & Lybrand Retirement Plan

Notwithstanding any other provision of the Plan to the contrary, this Appendix shall apply to any Participant who was a Member of the Coopers & Lybrand Retirement Plan (the "C&L Retirement Plan") on July 1, 1998 (a "C&L Participant"). Where not inconsistent with the provisions of this Appendix, the provisions of the Plan shall also apply to C&L Participants.

1.     <u>Normal Retirement Benefit of a C&L Participant other than a Partner or Principal.</u> The annual retirement income of a C&L Participant who is not a Partner or Principal as of the date he terminates employment with the Employer shall be the greater of (a), (b), (c) or (d) of this Section 1. However, a C&L Participant who was not actively employed by Coopers & Lybrand LLP ("C&L") on June 30, 1998 and by the Firm on July 1, 1998 shall only be entitled to a benefit under Section 1(d) of this Appendix.

    (a)   (i)   For C&L Participants not described in (ii) below, the sum of:

        (A)   the greater of (1) the annual retirement income accrued by the C&L Participant as of September 30, 1993 or (2) in the case of an individual who was an active Employee of C&L on September 30, 1993, 1% of the first $21,000 and 1-1/2% of the remainder of his Prior Service Plan Earnings, multiplied by his Credited Service prior to October 1, 1993, divided by 12; and,

        (B)   for the Plan Year beginning October 1, 1993 and for each subsequent Plan Year, 1% of the first $21,000 and 1-1/2% of the remainder of his Plan Earnings for each Plan Year multiplied by his Credited Service for such Plan Year, divided by 12.

    (ii)   For any C&L Participant who (1) was an Employee of, and actively employed by, the Employer on June 30, 1999 and was accruing benefits in the C&L Retirement Plan on that date, and (2) was an Employee of, and actively employed by, the Employer on November 1, 1999 and was accruing benefits under the Plan on that date, the sum of:

118

(A)     the greater of (1) the annual retirement income which had accrued on behalf of the C&L Participant as of June 30, 1998, or (2) 1% of the first $21,000 and 1-1/2% of the remainder of his Prior Service Plan Earnings, multiplied by his Credited Service prior to July 1, 1998 and divided by 12. For purposes of this Section 1(a)(ii)(A) only, Prior Service Plan Earnings is the average of a C&L Participant's Plan Earnings for the three consecutive calendar years ending prior to July 1, 1999 during which he was at any time a C&L Participant. For purposes of this Section 1(a)(ii)(A) only, a C&L Participant's Plan Earnings for a calendar year shall be the greater of (1) his compensation as reported in Box 1 of his Form W-2 for the calendar year, plus any salary reduction contributions made to a plan described in section 125 or 401(k) of the Code, but not including taxable fringe benefits, moving allowances, tax equalization payments, long term disability benefits, taxable premiums to group term life insurance plans, or job referral bonuses, or (2) his most recent rate of pay as of the October 1 immediately preceding such calendar year. Additionally, Plan Earnings for a calendar year shall not exceed the limit set by Section 401(a)(17) of the Code as in effect prior to the enactment of The Economic Growth and Tax Relief Reconciliation Act of 2001.; and

(B)     for service after June 30, 1998, 1% of the first $21,000 and 1-1/2% of the remainder of his Plan Earnings multiplied by his Credited Service for each Plan Year, divided by 12.

(b).     for C&L Participants who terminate employment with the Employer on or after an Early Retirement Date described in Section 12(g) of this Appendix, the sum of the annual retirement income determined under (a) above and the result of (i) minus (ii) minus (iii), where (i), (ii), and (iii) mean:

(i)     70 percent of Plan Earnings determined at the time of the C&L Participant's termination of employment. For this purpose only, Plan Earnings shall not exceed $25,000. For a C&L Participant who has completed less than 25 years of Service as of his termination of employment, 70 percent of Plan Earnings shall be multiplied by a fraction, the numerator of which is Service at termination of employment (divided by 12) and the denominator of which is 25.

119

      (ii)    the C&L Participant's annual retirement income determined under Section 1(a) of this Appendix.

      (iii)   the C&L Participant's Social Security primary insurance amount payable at age 65 based on earnings up to the date of his termination of employment and assuming no earnings thereafter. With respect to periods for which the C&L Participant's actual earnings for Social Security purposes are not available, the Social Security primary insurance amount shall be calculated on the assumption that the C&L Participant had earnings for Social Security purposes after 1951, or age 22 if later, and prior to his last date of hire or re-hire by the Employer which increased at the rate of six (6) percent per calendar year.

(c)    $6.00 multiplied by his Credited Service.

(d)    the sum of:

      (i)    the annual retirement income which had accrued on behalf of the C&L Participant under the C&L Retirement Plan as of June 30, 1998, as determined in accordance with Sections 1(a)(i) and (ii), (b) or (c) of this Appendix, and

      (ii)   (A) for the period beginning July 1, 1998 and ending June 30, 1999, the Actuarial Equivalent of the amount credited to such C&L Participant's Deemed Account Balance, as described in Section 12(b) of this Appendix. For this purpose, Actuarial Equivalence shall be determined under Section 12(a)(ii) of this Appendix, plus

              (B) for the period beginning July 1, 1999, the Actuarial Equivalent of the Deemed Account Balance as described in Section 5.1 of the Plan based on Deemed Payroll Period Allocations for such period.

2.    <u>Retirement Income of a C&L Participant who is a Partner or Principal.</u> Notwithstanding any other provision of the Plan to the contrary, the annual retirement income of a C&L Participant who is a Partner or Principal as of the date he ceases to be active shall be the sum of:

(a)    In the case of a Partner or Principal directly admitted or promoted prior to July 1, 1998:

(i)   the annual retirement income which had accrued on behalf of the C&L Participant through June 30, 1999 as determined in accordance with Sections 1(a)(i) of this Appendix plus,

(ii)   for the period beginning July 1, 1999, the Actuarial Equivalent of the Deemed Account Balance as described in Section 5.1 of the Plan based on Deemed Payroll Period Allocations for such period.

(b)   In the case of an Employee promoted to Partner or Principal after June 30, 1998:

(i)   the annual retirement income which had accrued on behalf of the C&L Participant through his promotion date as determined in accordance with Section 1 of this Appendix plus,

(ii)   for the period beginning on his promotion date, the Actuarial Equivalent of the Deemed Account Balance as described in Section 5.1 of the Plan based on Deemed Payroll Period Allocations for such period.

(c)   In the case of any Partner or Principal who was a participant in the Coopers & Lybrand Target Benefit Plan or in an individual defined benefit plan sponsored by Coopers & Lybrand LLP, the retirement income determined under Sections 2(a)(i) of this Appendix shall be reduced by the annuitized value of such C&L Participant's account balance in the Coopers & Lybrand Target Benefit Plan and by the annuitized value of the assets distributed from the individual defined benefit plan upon termination of such plan. The annuitized value shall be determined using an interest rate of 6% per year, and the 1971 Group Annuity Mortality Table for Males with a one year setback.

3.   Entitlement to Benefit. Notwithstanding any other provision of the Plan to the contrary, a C&L Participant's retirement income accrued under Sections 1(a), (b), (c), (d)(i) and 2(a)(i), b(i) of this Appendix shall be subject to the following conditions:

(a)   If a C&L Participant's employment with the Employer is terminated, or in the case of a Partner or Principal he ceases to be active, following the date on which the C&L Participant has attained the age of 65 and completed at least sixty months of Service, he shall be fully vested in and entitled to receive annual retirement income determined under Sections 1 or 2 of this Appendix. In the case of termination or ceasing to be active at a Deferred

121

Retirement Date, payments shall be subject to the provisions of Section 10 of this Appendix.

(b)    If a C&L Participant's employment with the Employer is terminated, or in the case of a Partner or Principal he ceases to be active, on an Early Retirement Date, he shall be fully vested in and entitled to receive annual retirement income determined under Section 4 of this Appendix.

(c)    If a C&L Participant otherwise terminates employment or ceases to be active, he shall be entitled to receive annual retirement income, if any, as determined under Section 5 of this Appendix.

(d)    Notwithstanding any other provision in this Appendix to the contrary, effective for benefit payments first commencing after June 1, 2001, the benefit commencement date shall be the applicable Valuation Date described in Section 5.2 of the Plan. Further, effective July 1, 2001, any reference in this Appendix to the date a C&L Participant has attained age 65 and completed at least sixty months of Service shall instead be a reference to the later of the date the C&L Participant has attained age 65 and the 5th anniversary of the date his Plan participation commenced.

(e)    Notwithstanding any other provision of the Plan to the contrary, the periodic adjustment to the Defined Benefit Dollar Limit to reflect inflation described in Section 7.3(d) of the Plan (and first effective for the 2000 and prior Limitation Years) shall apply to the portion of the retirement income of any C&L Participant that is determined under Section 1(d)(i) or Section 2(a)(i) of this Appendix (but only to such portion), provided that the C&L Participant is in annuity pay status when the adjustment becomes effective. Periodic adjustments to the Defined Benefit Dollar Limit to reflect inflation that are first effective for the 2001 and subsequent Limitation Years shall not apply to any portion of the retirement income of any C&L Participant who is in pay status when the adjustment becomes effective.

(f)    Notwithstanding any other provision of the Plan to the contrary, a C&L Participant's annual retirement income under this Appendix shall be offset by the Actuarial Equivalent (as determined under Section 12(a)(ii) of this Appendix) of the lump sum benefit payable from any retirement plan that is qualified under section 1165(a) of the Puerto Rico Internal Revenue Code of 1994, as amended (other than a benefit funded with employee pre- or post-tax or employer matching contributions) to the extent such benefit is attributable to service taken into account under this Appendix.

122

4.    <u>Retirement Income at Early Retirement Date.</u> Notwithstanding any other provision of the Plan to the contrary, a C&L Participant who terminates employment or ceases to be active on an Early Retirement Date may receive retirement income accrued under Sections 1 or 2 of this Appendix, subject to the following conditions:

(a)    Commencing on the first day of the calendar month beginning with or next following the date on which the C&L Participant has attained the age of 65 and completed at least sixty months of Service (or any subsequent date prior to the April 1 of the calendar year following the calendar year during which attainment of age 70 ½ occurs as described in Section 10(c) of this Appendix), the retirement income accrued by him pursuant to Sections 1 or 2 of this Appendix, as applicable, based on Credited Service as of his Early Retirement Date; or

(b)    Commencing on his Early Retirement Date, or on the first day of any month thereafter, as selected by the C&L Participant, the retirement income accrued by him pursuant to Sections 1 or 2 of this Appendix (but prior to the application of Section 2(c) of this Appendix), as applicable, based on his Credited Service as of his Early Retirement Date. The portion of the C&L Participant's retirement income determined under Sections 1(a),(b), (c), (d)(i) or 2(a)(i), (b)(i) of this Appendix shall be multiplied by the fraction in Column A if the C&L Participant has completed at least 360 months of Service (as defined in Section 12(p) of this Appendix) as of his Early Retirement Date, or by the fraction in Column B if the C&L Participant has completed fewer than 360 months of Service as of his Early Retirement Date. Months of Service for this purpose shall be determined without regard to any service prior to July 1, 1998 with Price Waterhouse LLP.

| Age at Commencement of Benefits | Column A Percentage* | Column B Percentage* |
|---|---|---|
| 53 | 54% | 42% |
| 54 | 58% | 46% |
| 55 | 62% | 50% |
| 56 | 66% | 54% |
| 57 | 70% | 58% |
| 58 | 76% | 62% |
| 59 | 82% | 66% |
| 60 | 88% | 70% |
| 61 | 94% | 76% |

123

| | | |
|---|---|---|
| 62 | 100% | 82% |
| 63 | 100% | 88% |
| 64 | 100% | 94% |
| 65 | 100% | 100% |

*Interpolate for non-integer ages

(c)    In the case of any Partner or Principal who was a participant in the Coopers & Lybrand Target Benefit Plan or in an individual defined benefit plan sponsored by Coopers & Lybrand LLP, the retirement income determined under Section 4(b) of this Appendix shall be further reduced by the amount determined under Section 2(c) of this Appendix, but calculated as of his benefit commencement date

5.    <u>Retirement Income Upon Other Termination of Employment</u>.  For purposes of determining vesting service under this Section 5, Years of Service prior to April 1, 1999 shall be determined as specified in Section 12(p) of this Appendix.  Years of Service after March 31, 1999 shall be determined as specified in Sections 2.46 and 6.1 of the Plan.  For C&L Participants who terminate employment or cease to be active after June 30, 1999, the Break in Service rules described in Section 6.1 of the Plan will apply.

Notwithstanding any other provision of the Plan to the contrary, a C&L Participant who terminates employment or ceases to be active prior to his Early Retirement Date shall be entitled to receive retirement income determined under Sections 1 or 2 of this Appendix, subject to the following conditions.

A C&L Participant who terminates employment or ceases to be active after September 30, 1989 and who has completed five Years of Service shall be fully vested and shall have a nonforfeitable right to receive all accrued retirement income.

A C&L Participant who terminated employment or ceased to be active, prior to October 1, 1989 and who had completed ten Years of Service or had completed an aggregate of five Years of Service and had a combined age and number of Years of Service equal to at least 45, shall be vested in accrued retirement income in accordance with the following table:

| Years of Service Equal or <u>Exceed</u> | AND | Sum of Age and Years of Service Equals or <u>Exceeds</u> | <u>Percentage</u> |
|---|---|---|---|

124

| | | |
|---|---|---|
| 5 | 45 | 50% |
| 6 | 47 | 60% |
| 7 | 49 | 70% |
| 8 | 51 | 80% |
| 9 | 53 | 90% |
| 10 | 55 | 100% |
| or | | |
| 10 | (no age requirement) | 50% plus 10% for each Year of Service in excess of ten |

Notwithstanding the foregoing, a C&L Participant shall be fully vested in the portion of his retirement income that accrues after June 30, 1998 upon his attainment of age 65 while employed by the Employer.

If a C&L Participant terminates employment with the Employer, or in the case of a Partner or Principal ceases to be active, before his Early Retirement Date for reasons other than death, he shall be entitled to receive one of the following:

(a)     commencing on the first day of the calendar month beginning with or next following the date on which the C&L Participant has attained the age of 65 and completed at least sixty months of Service (or any subsequent date prior to the April 1 of the calendar year following the calendar year during which attainment of age 70 ½ occurs as described in Section 10(c) of this Appendix), his vested retirement income determined under Sections 1 or 2 of this Appendix, based on Credited Service as of his termination of employment, or in the case of a Partner or Principal his ceasing to be active, or

(b)     commencing on the first day of any month coincident with or following his 53rd birthday, his vested retirement income determined under Sections 1 or 2 of this Appendix, based on Credited Service as of his termination of employment, or in the case of a Partner or Principal his ceasing to be active. The portion of the C&L Participant's retirement income determined under Sections 1(a),(b), (c), (d)(i) or 2 (a)(i) and (b)(i) of this Appendix shall be reduced in accordance with the factors set forth in Column B of the table in Section 4, of this Appendix, based on the C&L Participant's age on the date on which the payment will begin, or

125

(c)     In the case of a C&L Participant entitled to receive all or a portion of his vested accrued retirement income in a lump sum in accordance with Section 8 of this Appendix prior to attaining age 53, the Actuarial Equivalent of the amount of accrued retirement income payable in a lump sum commencing in any month following termination of employment, or in the case of a Partner or Principal commencing in any month following the date he ceases to be active   Such amount shall be payable in a form specified in Sections 5.3 or 5.4 of the Plan, or, for payments commencing on or after July 1, 2001, in any form specified in Section 9 of this Appendix.  Actuarial Equivalence for this purpose shall be determined under Section 12(a)(ii) of this Appendix.  This Section 5(c) of this Appendix is not applicable where Section 8(e) of this Appendix is applicable.

A C&L Participant who terminates employment, or in the case of a Partner or Principal he ceases to be active, with the Employer after September 30, 1989 and who fails to complete five Years of Service shall not be entitled to receive retirement income under the Plan, except as provided above.

6.    <u>Retirement Income of Acquired Employees</u>.  Where the portion of an Acquired Employee's retirement income attributable to the period of his employment with his Acquired Firm would be greater, if computed under the terms of a retirement plan which was maintained by such Acquired Firm, than if determined under Sections 1 or 2 of this Appendix, his retirement income shall be determined under Section 14 of this Appendix.

7.    <u>Limitation on Partners' and Principals' Benefits</u>.  The accrued retirement income of a C&L Participant who was a Partner or Principal who ceased to be active prior to July 1, 1999 shall not exceed the greater of the benefit provided under the Partners and Principals Agreement (the "Agreement"), or the retirement income accrued under the C&L Retirement Plan as of the date the Partner or Principal was last an Employee.  For purposes of this Section 7, (i) the retirement income of a Partner or Principal under the C&L Retirement Plan shall be his benefit payable in the form of a single life annuity payable on the first day of the calendar month beginning with or next following the date on which he has attained the age of 65 and completed at least sixty months of Service; and (ii) the benefit provided to a Partner or Principal under the Agreement shall be determined prior to any reduction taken under the Agreement pursuant to Sections 8.4(a) or 8.9 thereof (or such applicable sections of any successor agreement) and shall be the benefit payable to such Partner or Principal at age 65, regardless of such Partner's or Principal's actual age at the time benefits are payable under this Plan.  If a Partner or Principal's retirement income under the Plan as determined pursuant to this Section 7 does not exceed the greater

126

of the benefit provided under the Agreement in effect at the time benefits are payable under the Plan, or the retirement income accrued under the C&L Retirement Plan as of the date such Partner or Principal was last an Employee, his retirement income shall be payable in accordance with the provisions of Sections 2 or 4 of this Appendix, as applicable.  If a Partner or Principal's retirement income under the Plan does exceed the greater of the benefit provided under the Agreement on June 30, 1999, or the retirement income accrued under the C&L Retirement Plan as of the date such Partner or Principal was last an Employee, his retirement income shall be equal to such lesser amount, and such lesser amount shall be payable in accordance with the provisions of Sections 2 or 4 of this Appendix, as applicable (except that Sections 2(c) or 4(c) of this Appendix shall not again be applied to reduce such benefit).

8.    <u>Cash-Out of Retirement Income</u>.  To the extent that a C&L Participant's retirement income is determined under Sections 1(a), (b), (c) or (d)(i) or 2(a)(i) or (b)(i) of this Appendix, a lump sum payment shall be calculated as the present value of vested accrued retirement income payable at the first day of the calendar month beginning or next following the date the C&L Participant attains the age of 65 and completes 60 months of Service in the Plan, calculated using the assumptions of Section 12(a)(ii) of this Appendix.  To the extent the C&L Participant's retirement income is determined under Sections 1(d)(ii) or 2(a)(ii) or (b)(ii) of this Appendix, a lump sum payment shall equal his Deemed Account Balance.

Notwithstanding any provision of the Plan or this Appendix to the contrary,

(a)    For C&L Participants who retired or terminated employment, or in the case of a Partner or Principal who ceased to be active, before July 1, 1999:

(i)    A lump sum distribution for retirement income accrued prior to October 1, 1995 may be elected by the C&L Participant upon termination of employment, or in the case of a Partner or Principal upon ceasing to be active, with the Employer if and only if the present value of the C&L Participant's entire retirement income is less than 75% of his Plan Earnings for the most recently completed Plan Year;

(ii)    A lump sum distribution for retirement income accrued after September 30, 1995 and prior to July 1, 1998 may be elected by the C&L Participant upon termination of employment, or in the case of a Partner or Principal upon ceasing to be active, with the Employer if and only if the present value of the C&L Participant's entire

127

retirement income is less than 75% of his Plan Earnings for the most recently completed Plan Year and the present value of the C&L Participant's retirement income earned after September 30, 1995 and prior to July 1, 1998 is less than $10,000.

(iii)    A lump sum distribution for retirement income accrued after June 30, 1998 may be elected by the C&L Participant upon termination of employment, or in the case of a Partner or Principal upon ceasing to be active, with the Employer with respect to benefits accrued after June 30, 1998. The portion of any such lump sum distribution attributable to retirement income that accrued after June 30, 1998 while the C&L Participant was an Employee shall be equal to the greater of the present value of the amount that accrued after June 30, 1998 while an Employee under Section 1(a), (b), or (c) calculated using the assumptions described in Section 12(a)(ii) or the Amount Credited to the C&L Participant's Deemed Account Balance under Section 12(b) of this Appendix plus any Deemed Payroll Period Allocations after June 30, 1999 while an Employee increased or decreased to reflect Deemed Investment Experience.

(b)    If a C&L Participant terminates employment or ceases to be active on or after July 1, 1999, such C&L Participant may elect to receive the total amount of his retirement income in a lump sum. The portion of any such lump sum attributable to retirement income that accrued after June 30, 1998 while the C&L Participant was an Employee shall be equal to the greater of the present value of the amount that accrued after June 30, 1998 while an Employee under Section 1(a), (b), or (c) calculated using the assumptions described in Section 12(a)(ii) or the Amount Credited to the C&L Participant's Deemed Account Balance under Section 12(b) of this Appendix plus any Deemed Payroll Period Allocations after June 30, 1999 while an Employee increased or decreased to reflect Deemed Investment Experience.

(c)    Effective for benefit commencement dates on or after July 1, 2001, Section 8(b) of this Appendix shall also apply to C&L Participants who terminated as Employees prior to July 1, 1999.

(d)    If a C&L Participant is eligible to receive a lump sum payment under Sections 8(a),(b) or (c) of this Appendix, he may elect instead to receive an optional form of payment beginning on the date he could receive a lump sum as provided in Sections 5 and 9 of this Appendix.

128

(e)     If the lump sum value of a terminated C&L Participant's, or a ceased to be active Partner or Principal's, vested accrued retirement income is $5,000 or less, the benefit shall be paid in accordance with Section 5.6(a) of the Plan.

(f)     If a C&L Participant is required to establish independence from the Firm as a result of standards imposed by any regulatory agency or professional association, and does not receive a distribution under Section 8 of this Appendix, such C&L Participant shall receive his retirement income, determined in accordance with Section 1 or 2 of this Appendix, as applicable, in the form of a lump sum distribution or in the form of an annuity purchased from an insurance company, as he may elect. Any such annuity shall preserve all optional forms of benefit and all benefits, rights and features available to the C&L Participant under the terms of the Plan.

9.     <u>Optional Forms of Benefit</u>. A married C&L Participant's retirement income shall be paid in the form of a Qualified Joint and Survivor Annuity, and an unmarried C&L Participant's retirement income shall be paid in the form of a Life Annuity, unless the C&L Participant elects an optional form of benefit described below, pursuant to a Qualified Election as defined in Section 5.3(b) of the Plan.

For benefits determined under Sections 1(a), (b), (c), (d)(i) or 2(a)(i) or (b)(i) of this Appendix, the Qualified Joint and Survivor Annuity and optional forms of benefit shall be the Actuarial Equivalent of a single life annuity as determined under Section 12(a)(i) of this Appendix. For benefits determined under Sections 1(d)(ii) or 2(a)(ii) or (b)(ii) of this Appendix, the Qualified Joint and Survivor Annuity and optional forms of benefit shall be the Actuarial Equivalent of the Deemed Account Balance as determined under Section 12(a)(ii) of this Appendix. The portion of the Qualified Joint and Survivor Annuity and each optional form of benefit attributable to retirement income that accrued after June 30, 1998 while the C&L Participant was an Employee shall be the greater of the amount attributable to retirement income determined under Section 1(a), (b) or (c) that accrued after June 30, 1998 while an Employee or the amount attributable to retirement income determined under Section 1(d)(ii) that accrued after June 30, 1998 while an Employee.

Notwithstanding the provisions of Section 5.4 of the Plan, upon commencement of benefits after attaining age 53, a C&L Participant may elect one of the forms of benefit described below, in which event the amount to be paid will be the Actuarial Equivalent of the amount of annual retirement income determined under Section 1 or 2 of this Appendix.

129

As described in Section 5(c) of this Appendix, and except as provided in Section 8(e) of this Appendix, for benefit commencement dates on or after July 1, 2001, the forms of benefit described below shall also be available to C&L Participants upon commencement of benefits prior to attaining age 53. The Qualified Joint and Survivor Annuity and optional forms of benefit first commencing prior to age 53 shall be calculated in the manner described in Section 5(c) of this Appendix.

The optional forms of payment are:

(a)    monthly payments to the C&L Participant for life and, after his death, to any Joint Annuitant designated by him, for so long as such person lives, in an amount equal to 50%, 66-2/3%, 70%, 75% or 100%, as the C&L Participant may elect, of the monthly amounts paid to him;

(b)    monthly payments to the C&L Participant for life and, if he dies before 120 payments have been made, to the Beneficiary designated by him until an aggregate of 120 payments have been made.

(c)    monthly payments to the C&L Participant for life and, if he dies before 60 payments have been made, to the Beneficiary designated by him until an aggregate of 60 payments have been made.

(d)    monthly payments to the C&L Participant for life and, if he dies before 180 payments have been made, to the Beneficiary designated by him until an aggregate of 180 payments have been made. In no event may the payments exceed the life expectancy of the C&L Participant at the time payments commence.

(e)    A C&L Participant who retires on an Early Retirement Date and elects to have his retirement income commence prior to the earliest date on which he is eligible to receive old age benefits under the Social Security Act may, in addition, elect to receive increased amounts for the period prior to such date and reduced amounts thereafter, providing, insofar as practicable, a level annual retirement income from the Plan and Social Security. Monthly payments under this Section 9(e) of this Appendix shall be the Actuarial Equivalent (as described in Section 12(a)(i) of this Appendix) of any annuity form otherwise available under this Appendix.

(f)    If the Joint Annuitant designated by a C&L Participant who has elected a form of payment described in Section 9(a) of this Appendix above dies before payments to the C&L Participant have commenced, the election shall be ineffective and the C&L Participant may within 30 days of the death of

130

the Joint Annuitant amend his election to designate a new Joint Annuitant. If the Beneficiary designated by a C&L Participant who has elected the form of payment described in Sections 9(b), (c) or (d) of this Appendix dies at any time prior to the C&L Participant's death, the C&L Participant shall designate a new Beneficiary.

10.     <u>Delayed Commencement of Benefits</u>. A C&L Participant's retirement income determined under Sections 1 or 2 of this Appendix shall be subject to the following conditions:

(a)     If a terminated Employee, or a Partner or Principal who ceased to be active, is re-employed while receiving annuity payments under the plan, benefit payments will continue on an uninterrupted basis for the period of re-employment. Moreover, any terminated Employee, or any Partner or Principal who ceased to be active, who is re-employed as an Employee will accrue additional retirement income for the period of re-employment under Sections 1 or 2 of this Appendix.

(b)     Effective December 1, 1999, a C&L Participant who remains employed by the Employer after the first day of the calendar month beginning with or next following the date on which the C&L Participant has attained the age of 65 and completed at least sixty months of Service will continue accruing benefits under Sections 1 or 2 of this Appendix. The portion of the benefit accrued under Sections 1(a),(b),(c),(d)(i) or 2(a)(i) and (b)(i) of this Appendix shall be actuarially increased based on the assumptions in Section 12(a)(i) to reflect delayed commencement past the first day of such calendar month based on the C&L Participant's age at his annuity starting date, as follows:

| Age | Factor* |
|-----|---------|
| 65 | 1.00000 |
| 66 | 1.11261 |
| 67 | 1.24190 |
| 68 | 1.39098 |
| 69 | 1.56366 |
| 70 | 1.76464 |
| 71 | 1.99970 |
| 72 | 2.27597 |

* Interpolate for non-integer ages.

131

Additional accruals under Sections 1(a),(b),(c),(d)(i) or 2(a)(i) and (b)(i) of this Appendix after the first day of the calendar month beginning with or next following the date on which the C&L Participant has attained the age of 65 and completed at least sixty months of Service shall be offset by the value of the increase for delayed commencement described above.

(c)     A vested C&L Participant who terminates employment, or in the case of a Partner or Principal ceases to be active, for reasons other than death may defer the receipt of his retirement benefit until the first day of the calendar month beginning or next following the date on which the C&L Participant has attained age 65 and completed at least sixty months of Service. Effective April 1, 2000, such a C&L Participant shall be eligible to defer the receipt of his retirement income to a date which is no later than the April 1 of the calendar year following the year in which he attains age 70-1/2. In the event such deferral is elected, the portion of the retirement benefit accrued under Sections 1(a),(b),(c), (d)(i) or 2 (a)(i) and (b)(i) of this Appendix shall be increased for delayed commencement after the first day of the calendar month beginning with or next following the date on which the C&L Participant has attained the age of 65 and completed at least sixty months of Service, based on the C&L Participant's age at the benefit commencement date and the factors described in Section 10(b) of this Appendix.

(d)     For C&L Participants who attained age 70 ½ prior to 2000, the required benefit commencement date was April 1 of the calendar year following the calendar year in which the C&L Participant attained age 70 ½. For C&L Participants who attain age 70 ½ after December 31, 1999, retirement benefits shall commence in the manner described in Section 5.1(b) of the Plan.

11.    Pre-retirement Death Benefits.

(a)     Notwithstanding the provisions of Article 5 of the Plan, death benefits attributable to a C&L Participant's retirement income determined under Sections 1 or 2 of this Appendix based on service prior to July 1, 1998 are payable only as follows:

(i)     Except as provided in Section 9 of this Appendix or Article 5 of the Plan, no benefits shall be payable under the Plan as the result of a C&L Participant's death after the date the payment of retirement income to the C&L Participant has commenced.

132

(ii)    In the case of a C&L Participant who is vested, in accordance with Section 5 of this Appendix, at the time of death, his Spouse shall receive monthly payments for life equal to those such Spouse would have received:

(A)    in the case of a C&L Participant who dies after his Early Retirement Date, if the C&L Participant had retired on the day before his death and had designated the Spouse as the Joint Annuitant to receive payments at the rate of 50% of the payments paid to him under a Qualified Joint and Survivor Annuity.

(B)    in the case of a C&L Participant who dies prior to his Early Retirement Date, and who has terminated employment, or in the case of a Partner or Principal he has ceased to be active, prior to his death,

(1)    if the C&L Participant survived to his Early Retirement Date,

(2)    commenced benefit payments on the Early Retirement Date and designated the Spouse as the Joint Annuitant to receive payments at the rate of 50% of the payments paid to him under a Qualified Joint and Survivor Annuity, and

(3)    died on the day after his Early Retirement Date.

(C)    in the case of a C&L Participant who dies prior to his Early Retirement Date while employed by the Employer,

(1)    if the C&L Participant had separated from service on the date of his death,

(2)    survived to his Early Retirement Date,

(3)    commenced benefit payments on the Early Retirement Date and designated the Spouse as the Joint Annuitant to receive payments at the rate of 50% of the payments paid to him under a Qualified Joint and Survivor Annuity, and

133

(4)    died on the day after his Early Retirement Date.

(D)    Death benefits described in Section 11(a)(ii)(A) of this Appendix shall commence as of the first day of the month following the C&L Participant's death. Death benefits described in Sections 11(a)(ii)(B) and (C) of this Appendix shall commence no later than the date the C&L Participant would have attained Early Retirement Date; provided, however, that the surviving Spouse may elect to commence receiving the Actuarial Equivalent (based on Section 12(a)(i) of this Appendix) of the benefit available at the C&L Participant's Early Retirement Date as of the first day of the month following the C&L Participant's death. Effective for death benefit payments commencing on or after July 1, 2001, the surviving Spouse may elect a lump sum payment of death benefits described in Section 11(a)(ii) of this Appendix based on the assumptions of Section 12(a)(ii) of this Appendix.

(iii)    In the case of a vested C&L Participant who dies while employed by the Employer on or after his Early Retirement Date and who was unmarried at the time of his death, each Dependent Child of such C&L Participant shall receive a payment each month for so long as such child is a Dependent Child, but in no event for more than ten years, in an amount equal to (A) the amount he would have received if the C&L Participant had retired on the first day of the month following his death and had designated him as the Beneficiary under the form of payment described in Section 9(b) of this Appendix, divided by (B) the number of Dependent Children of the C&L Participant who are entitled to receive payment for that month. Payments hereunder shall be made directly to each Dependent Child unless the Administrative Committee determines that such payment should be made to another person. For purposes of this Section 11, "Dependent Child" means a C&L Participant's child who is under age 21 and unmarried.

(iv)    If a C&L Participant dies while employed by the Employer on or after his Early Retirement Date, and he was unmarried and had no Dependent Children at the time of his death, no person shall receive any payment for any benefits accrued prior to July 1, 1998 under Sections 1 or 2 of this Appendix.

134

(b)    Notwithstanding the foregoing, death benefits attributable to a C&L Participant's retirement income determined under Sections 1 or 2 of this Appendix based on service after June 30, 1998 shall be payable as described below.

    (i)    For this purpose, the amount of the preretirement death benefit attributable to retirement income that accrued after June 30, 1998 while a C&L Participant was an Employee shall be the greater of (A) or (B):

        (A)    the applicable survivor benefit described in Section 11(a) of this Appendix attributable to retirement income that accrued while an Employee after June 30, 1998 under Sections 1(a), (b), (c), payable as described in Section 11(a) of this Appendix, or,

        (B)    the entire amount accrued after June 30, 1998 while an Employee under Sections 1(d)(ii) of this Appendix, payable as described in Sections 5.7 and 5.8 of the Plan.

    (ii)    The amount of the preretirement death benefit attributable to retirement income that accrued after June 30, 1998 while a C&L Participant was a Partner or Principal shall be the sum of (A) plus (B):

        (A)    the applicable survivor benefit described in Section 11(a) of this Appendix attributable to retirement income accrued after June 30, 1998 under Sections 2(a)(i) and (b)(i) , payable as described in Section 11(a) of this Appendix, plus,

        (B)    the entire amount accrued after June 30, 1998 under Sections 2(a)(ii) and (b)(ii) of this Appendix, payable as described in Sections 5.7 and 5.8 of the Plan.

For purposes of Sections 11(a)(ii) and (iii) of this Appendix, all retirement income accrued after June 30, 1998 shall be treated as fully vested at death.

12.    <u>Definitions</u>.  For purposes of this Appendix, the following definitions shall apply:

(a)    "Actuarial Equivalent or Equivalence" means a benefit determined to be of equivalent value to another benefit, on the basis of the following actuarial tables and assumptions:

(i)    For optional forms of payment except lump sum cashouts or except as specified in Sections 5 and 9 of this Appendix

    (A)    <u>Interest</u>: 6% per annum compounded annually, and

    (B)    <u>Mortality</u>: 1971 Group Annuity Male Mortality Table, with a one-year age setback for C&L Participants and a five-year age setback for joint annuitants.

(ii)    For lump sum cashouts

    (A)    <u>Interest</u>: The annual rate on 30-year Treasury Securities for the second month preceding the first day of the Plan Year, provided, however, that (i) for the period beginning July 1, 1999 and ending September 30, 1999, the interest rate shall not be greater than the annual rate on 30-year Treasury securities for August, 1998 and (ii) for the period beginning October 1, 1999 and ending June 30, 2000, the interest rate shall not be greater than the annual rate on 30-year Treasury securities for August 1999. Effective July 1, 2001, the Deemed Plan Interest Rate for the Plan Year described in Section 2.16 of the Plan.

    (B)    <u>Mortality</u>: The applicable mortality table prescribed by the Commissioner of the Internal Revenue Service, as described in Section 2.2 of the Plan. Effective for Benefit Commencement Dates on or after December 31, 2002, the mortality table set forth in Rev. Rul. 2001-62.

(b)    "Amount Credited to a C&L Participant's Deemed Account Balance" means, for the period from July 1, 1998 through June 30, 1999 for each C&L Participant who is not a Partner or Principal, five percent (5%) of his Plan Earnings paid on a monthly basis, as increased by his Deemed Investment Experience.

(c)    "Beneficiary" means the person designated by a C&L Participant to receive a benefit under the Plan, other than pursuant to a joint and survivor annuity, in the event of the C&L Participant's death.

(d)    "Credited Service" means the number of months of Service of a C&L Participant from his earliest date of participation in the Plan, excluding any Service: (a) as an ineligible Employee, Partner or Principal; (b) under

Section 12(p)(2)(ii) hereof to the extent it is based on an absence of more than one year (unless credit for such Service is allowed by the Administrative Committee under uniform and nondiscriminatory rules); (c) described in Section 12(p)(4) hereof; (d) arising from the application of Section 12(p)(5) hereof; (e) described in Section 12(p)(7) hereof; or (f) with respect to which payment has been made under Section 8 of this Appendix unless the amount has been repaid in full. Credited Service shall not include service as a partner or employee of an Acquired Firm prior to the date such Acquired Firm became part of Coopers & Lybrand LLP except as provided in Section 14 of this Appendix. Credited Service shall not include service as a Partner or Employee of Price Waterhouse LLP.

(e) "Deemed Investment Experience" means, for purposes of Section 12(e) of this Appendix only, an increase to the Amount Credited to a C&L Participant's Deemed Account Balance as defined in Section 12(b) of this Appendix. For purposes of crediting interest to the Amount Credited to a C&L Participant's Deemed Account Balance during the twelve month period beginning July 1 of each year, the 30 year Treasury rate for the month of May immediately preceding such period shall be used. Effective July 1, 2001, the Deemed Plan Interest Rate for the Plan Year described in Section 2.16 of the Plan shall be used to credit interest to the Deemed Account Balance.

(f) "Deferred Retirement Date" means the first day of any calendar month beginning with or next following the termination of a C&L Participant's employment, or in the case of a Partner or Principal his ceasing to be active, after the first day of the calendar month beginning with or next following the date on which the C&L Participant has attained the age of 65 and completed at least sixty months of Service.

(g) "Early Retirement Date" means the first day of any calendar month prior to the first day of the calendar month beginning with or next following the date on which the C&L Participant would attain the age of 65 and which falls on or after the date when he has attained the age of 53 (age 55 with respect to C&L Participants who terminated or ceased to be active prior to July 1, 1997 and first commenced benefit payments prior to July 1, 2001) and completed at least sixty months of Service.

(h) "Employee" means any individual other than a Partner or a Principal.

137

(i)    "Firm" means Coopers & Lybrand LLP, a registered limited liability partnership under the laws of the State of Delaware and effective July 1, 1998, the United States firm of PricewaterhouseCoopers LLP.

(j)    "Joint Annuitant" means the person designated by a C&L Participant to receive a benefit under the Plan, in the event of the C&L Participant's death, under a joint and survivor annuity.

(k)    "Long Term Disability Plan" means the long term disability plan established by the Employer.

(l)    "Plan Earnings" for purposes of Sections 1(a), (b), (c), (d)(i), (d)(ii)(A) and 2(a)(i) and (b)(i) of this Appendix means,

    (1)    for Plan Years beginning on or after October 1, 1989 and before October 1, 1994,

        (i)    in the case of a C&L Participant other than a Partner or Principal, such Participant's basic annual rate of pay from the Employer as of the first full pay period of such Plan Year; or

        (ii)    in the case of a Partner or Principal, the net earnings of a Partner from self-employment with the Employer and the net earnings of a Principal from employment with the Employer for the calendar year ending within such Plan Year. Such net earnings of a Partner and Principal shall include (A) draw or salary not greater than $15,000 and (B) profit shares allocated to him. Net earnings means draw and taxable profit shares.

If a C&L Participant other than a Partner or Principal was not employed by the Employer during the first full pay period occurring during a Plan Year, his basic annual rate of pay shall be his rate of pay as of the first subsequent date or pay period within such year or Plan Year.

If a C&L Participant other than a Partner or Principal was absent without pay during the first full pay period of a Plan Year, his Plan Earnings shall be his rate of pay as of the most recent date or pay period prior to the Plan Year in which he was absent.

138