(2)    for Plan Years beginning on or after October 1, 1994,

(i)    in the case of a C&L Participant other than a Partner or Principal, his compensation from the Employer as reported in Box 1 of his Form W-2 for the calendar year ending within such Plan Year, plus any salary reduction contributions made to a plan described in section 125 or 401(k) of the Code, but not including taxable fringe benefits, moving allowances, tax equalization payments, long term disability benefits, taxable group term life, or job referral bonuses; or

(ii)    in the case of a Partner or Principal, the net earnings of a Partner from self-employment with the Employer and the net earnings of a Principal from employment with the Employer for the calendar year ending within such Plan Year, plus any elective contributions made to a plan described in section 401(k) of the Code, but not including taxable fringe benefits, moving allowances, tax equalization payments, long term disability benefits, taxable group term life, or job referral bonuses. Net earnings means draw and taxable profit shares.

Except for purposes of Section 1(d)(ii)(A) of this Appendix, in the case of a C&L Participant who did not receive compensation for the full calendar year ending in his first Plan Year of participation, the Form W-2 compensation of a C&L Participant other than a Partner or Principal, or the net earnings of a Partner or Principal, shall be determined on the basis of the next following calendar year. In the case of a C&L Participant who has no compensation for the calendar year ending in a Plan Year after his first Plan Year of participation, the Form W-2 compensation of a C&L Participant other than a Partner or Principal, or net earnings of a Partner or Principal, shall be determined on the basis of the next following calendar year. Notwithstanding the foregoing, if a C&L Participant other than a Partner or Principal is absent without pay at any time in the calendar year ending in a Plan Year, his Plan Earnings for such Plan Year shall be the greater of his most recent rate of pay as of the beginning of the current Plan Year, or his unannualized compensation for the last calendar year in which he was credited with Plan Earnings. If the compensation reported on Form W-2 for a C&L Participant other than a Partner or Principal, or net earnings of a Partner or Principal, represents a period of Service that is less than the full calendar year, such compensation or net earnings shall be annualized.

139

The Plan Earnings of an Acquired Employee shall be his Plan Earnings determined in accordance with this Section 12(l) but substituting the phrase "from an Acquired Firm" for the phrase "from the Employer" with respect to periods prior to the acquisition of such Acquired Firm.

For Plan Years beginning on or after October 1, 1989, Plan Earnings for any year shall not exceed $200,000, indexed in accordance with Section 401(a)(17) of the Code.  For Plan Years beginning on or after October 1, 1994, the $200,000 in the preceding sentence shall be replaced by $150,000. For Plan Years beginning on and after July 1, 2002, the $150,000 in the preceding sentence shall be replaced by $200,000.

For purposes of Sections 1(d)(ii)(B) and 2(a)(ii) and (b)(ii) of this Appendix, Plan Earnings are defined in Sections 2.11 and 2.18 of the Plan.

(m)    "Plan Year" means the twelve-month period beginning October 1 and ending the next succeeding September 30; provided, however, that effective October 1, 1998, the Plan Year shall be the period beginning October 1, 1998 and ending June 30, 1999; and thereafter the Plan Year shall be the twelve-month period beginning July 1 and ending the next succeeding June 30.

(n)    "Prior Service Plan Earnings" means the average of a C&L Participant's Plan Earnings during the most recent three Plan Years prior to an update date during which he was at any time a C&L Participant.

(o)    "Retirement Date" means a C&L Participant's actual date of retirement.

(p)    For purposes of this Appendix only, a "Year of Service" means 12 months of Service, and "Service" means:

(1)    Except as otherwise provided in this Section 12(p), the number of months during which a C&L Participant is employed by, or is a Partner or Principal of, the Firm.   Any period of employment or service with Coopers & Lybrand, Coopers & Lybrand LLP, Price Waterhouse LLP, Coopers & Lybrand Global Employment Company, the Coopers & Lybrand Securities LLC or PricewaterhouseCoopers LLP shall be deemed employment or service with the Employer for purposes of determining Service.  A C&L Participant will be granted a full month of Service if he is employed by the Employer one or more days in a month.

140

(2)     Service shall <u>include</u> a period of absence:

    (i)     for reason of disability during which a C&L Participant receives benefits under the Long Term Disability Plan of the Employer, or

    (ii)     for any reason which has been approved by the Employer pursuant to a uniform and nondiscriminatory policy, or

    (iii)     of one year or less for any other reason.

(3)     A C&L Participant who does not return to active employment with the Employer by the end of the period of absence described in Sections 12(p)(2)(i), (ii) or (iii) of this Appendix or by the first anniversary of the commencement of absence, whichever is later, shall be deemed to have terminated his employment, or in the case of a Partner or Principal ceased to be active, as of such date, unless his employment has terminated, or in the case of a Partner or Principal he has ceased to be active, in the interim by reason of death, discharge, quit or retirement.

(4)     In the event that a C&L Participant terminates employment, or in the case of a Partner or Principal he ceases to be active, and is re-employed before the first anniversary of his termination date, or in the case of a Partner or Principal the date he ceases to be active, the intervening period shall constitute Service.

(5)     Any period of employment with an affiliated partnership or corporation (other than an Acquired Firm) which is a member of a group of trades or businesses which are under "common control" with the Employer within the meaning of Code Section 414(c), or which is a member of an affiliated service group with the Employer within the meaning of Code Section 414(m), shall be deemed employment with the Employer for purposes of determining Service.

(6)     Any period of employment of an Acquired Employee with an Acquired Firm shall be deemed employment with the Employer for purposes of determining Service, except as otherwise provided in Section 14 of this Appendix. For purposes of this Appendix, an "Acquired Employee" means any owner, partner or employee of an Acquired Firm who is classified as an Employee, and an "Acquired

141

Firm" means any entity of which the stock, business or assets were acquired by Coopers & Lybrand LLP or which became part of Coopers & Lybrand LLP. Effective October 1, 1989, an Acquired Firm shall not include an entity acquired through the purchase of assets unless Coopers & Lybrand LLP adopted a qualified plan maintained by the entity prior to the asset purchase, or unless specifically provided otherwise in this Appendix.

All service as a Partner or Principal of the Employer or of an Acquired Firm shall constitute Service, except as provided in Section 14 of this Appendix.

(7)    Any period of service as a Leased Employee shall be deemed employment with the Employer only for purposes of participation and vesting.

13.    Increase of Retirement Income for Retired or Terminated C&L Participants

(a)    1975 Update

(1)    Effective on June 1, 1975, the amount of annual retirement income payable with respect to any C&L Participant whose Retirement Date was prior to June 1, 1968, shall be increased as follows according to the number of calendar months beginning on or after the earlier of such C&L Participant's Retirement Date or the first day of the calendar month beginning with or next following the date on which the C&L Participant has attained the age of 65 and completed at least sixty months of Service and ending prior to January, 1975:

(i)    2/12 of 1% for each such calendar month prior to January, 1965;

(ii)    3/12 of 1% for each such calendar month after December, 1964 but prior to January, 1970, and

(iii)    4/12 of 1% for each such calendar month after December, 1969 but prior to January, 1975.

(2)    Effective on June 1, 1975, the amount of annual retirement income payable with respect to any other C&L Participant whose Retirement Date was prior to June 1, 1975, shall be the greater of

(i)    3/4 of 1% of the first $6,600 and 1-1/4% of the remainder of such C&L Participant's Average Plan Earnings above $6,600, multiplied by his Credited Service divided by twelve, or

(ii)    the amount payable without regard to this Section 13(a)(2) of this Appendix.

For purposes of this computation, "Average Plan Earnings" shall mean the average of the C&L Participant's Plan Earnings as of each June 1st on which he was a C&L Participant during the 60 months preceding his Retirement Date.

In the case of annual retirement income payable in any form other than a straight life annuity, the recomputed benefit under Section 13(a)(2)(i) of this Appendix shall be adjusted on the basis of Actuarial Equivalents to an equivalent benefit payable in such form.

In applying the preceding paragraph, Actuarial Equivalents shall be determined as if the ages of the C&L Participant, and, if applicable, any designated person under an optional form of retirement income, and the terms of payment of such optional form, were the same as they were as of the C&L Participant's Retirement Date, or the date retirement income first commenced, whichever is later.

(3)    The amount of annual retirement income determined to be payable with respect to any C&L Participant described in Section 13(a)(1) of this Appendix shall be increased in the manner set forth this Section 13(a)(2) of this Appendix.

(4)    In no event shall the application of Sections 13(a)(1), (2) and (3) of this Appendix result in an increase of less than $180 in annual retirement income payable with respect to any C&L Participant to which they apply.

(b)    <u>1980 Update</u>

143

Effective on October 1, 1980, the amount of annual retirement income payable with respect to any C&L Participant whose Retirement Date was prior to October 1, 1980, or, any C&L Participant who retires after October 1, 1980 and before March 1, 1983, including a C&L Participant whose retirement income is determined under Section 13(a) of this Appendix shall be increased 20%.

In no event shall the application of this Section 13(b) result in an increase of less than $120 in annual retirement income.

(c)    <u>1982 Update</u>

Effective on October 1, 1982, the amount of annual retirement income payable with respect to any C&L Participant whose Retirement Date was after June 1, 1975 but before October 1, 1982, shall be increased to the extent the following formula would provide a higher benefit: 3/4 of 1% of the first $11,000 and the 1-1/2% of the remainder of his Prior Service Plan Earnings, multiplied by Credited Service prior to October 1, 1982. For this purpose only, Prior Service Plan Earnings shall be considered the average of a C&L Participant's Plan Earnings for whose of the last five Plan Years prior to his Retirement Date during which he was at any time a C&L Participant.

(d)    <u>1986 Update</u>

Effective on October 1, 1986 with respect to any C&L Participant who had retired prior to such date and on or after a Retirement Date specified in Section 3 of this Appendix, the amount of annual retirement income pay to such C&L Participant shall be increased by seven (7) percent. The preceding sentence shall not apply to any C&L Participant who was a Partner or Principal immediately before his Retirement Date.

(e)    <u>1988 Update</u>

With respect to any "retired partner", Credited Service shall be determined in the same manner as it would have been determined if the retired partner had been an Employee as of his Retirement Date and Plan Earnings shall be limited only to the extent required by Section 416 of the Code. The resulting benefit shall be reduced by the annuitized value of the retired partner's account balance in the Coopers & Lybrand Target Benefit Plan determined as of January 1, 1988. The annuitized value of such account balance shall be determined using 1971 Group Annuity Mortality Table

(Male) without projection, set back for 6 years for Joint Annuitants, and an interest rate of 6% per year. For purposes of this Section 13(e), the term "retired partner" means any Partner or Principal who retired from the Firm before October 1, 1987, other than any former managing Partner or Chairman of the Firm who retired after September 30, 1970.

(f)     <u>1994 Update</u>

The benefit of any C&L Participant or Beneficiary who is receiving benefits from the Plan on January 1, 1994, and who retired or otherwise terminated or withdrew from the Firm on or after his Early Retirement Date shall be increased in accordance with the following schedule:

| Date of Retirement, Termination or Withdrawal | Percent Increase |
|---|---|
| Before October 1, 1986 | 16% |
| After September 30, 1986 but before October 1, 1987 | 14% |
| After September 30, 1987 but before October 1, 1988 | 12% |
| After September 30, 1988 but before October 1, 1989 | 10% |
| After September 30, 1989 but before October 1, 1990 | 8% |
| After September 30, 1990 but before October 1, 1991 | 6% |
| After September 30, 1991 but before October 1, 1992 | 4% |
| After September 30, 1992 but before October 1, 1993 | 2% |
| After September 30, 1993 | 0% |

The foregoing increase shall apply to benefits payable on or after January 1, 1994 for employees and January 1, 1996 for partners.

(g)     <u>1999 Cost of Living Adjustment</u>

The periodic benefit of any C&L Participant (or surviving spouse or Beneficiary of such C&L Participant) who is a participant (or Beneficiary) in the C&L Retirement Plan on June 30, 1999 and who is receiving periodic benefits from that plan on July 1, 1999, and who retired or otherwise terminated as an Employee from an Employer shall be increased, effective as of July 1, 1999, in accordance with the following schedule:

| Annuity Starting Date | Percent Increase |
|---|---|

| | |
|---|---|
| Before October 1, 1993 | 6.9% |
| After September 30, 1993 but before October 1, 1994 | 5.5% |
| After September 30, 1994 but before October 1, 1995 | 4.0% |
| After September 30, 1995 but before July 1, 1996 | 2.6% |
| After June 30, 1996 but before January 1, 1997 | 2.0% |
| After December 31, 1996 but before July 1, 1997 | 1.4% |
| After June 30, 1997 but before January 1, 1998 | 1.1% |
| After December 31, 1997 but before July 1, 1998 | 0.5% |
| After June 30, 1998 | 0.0% |

C&L Participants (or spouses or Beneficiaries of C&L Participants) who received a lump sum cashout of their benefit as of July 1, 1999 or who had deferred payment of their benefits to a date that is after July 1, 1999 shall not be eligible for this Cost of Living Adjustment.

(h)    Special One-Time Increase in Retirement Income for Certain Retired C&L Participants.

The monthly retirement income payable with respect to retired C&L Participants who were Employees and who had attained age 65 as of July 1, 1999 and retired prior to such date on or after fifty-five (55) with 5 Years of Service shall be increased $60 beginning July 1, 1999.

146

14.    <u>Special Provisions Applicable to Acquired Employees</u>

    (a)    <u>Applicable to Former Employees of Joseph Froggatt & Co., Inc.</u>

        (1)    <u>Date of Acquisition</u>: July 21, 1972

        (2)    <u>Definitions</u>:

            (a)    "Froggatt" means Joseph Froggatt & Co., Inc.

            (b)    "Froggatt Employee" means any regular employee of Froggatt who on July 21, 1972 became a Regular Employee (as such term was defined in the plan).

            (c)    "Froggatt Plan" means the Employees' Retirement and Benefit Plan of Joseph Froggatt & Co., Inc. as in effect on July 20, 1972.

        (3)    <u>Amount of Annual Retirement Income</u>:

Notwithstanding anything in this Appendix or Plan to the contrary, the amount of annual retirement income computed in accordance with Section 1 of this Appendix with respect to a Froggatt Employee which is based on Service prior to July 21, 1972 shall be the greater of:

            (a)    the amount of retirement annuity credited under the Froggatt Plan with respect to such period; and

            (b)    the amount of annual retirement income computed with respect to such period in accordance with Section 1 of this Appendix.

        (4)    <u>Benefits Upon Termination of Employment</u>:

Anything in this Appendix or Plan to the contrary notwithstanding, in the event a Froggatt Employee's employment with the Employer terminates prior to the earliest date on which he could retire in accordance with Section 3 of this Appendix, the annual amount of retirement income to which he is entitled, commencing on the first day of the calendar month beginning with or next following the date on which the C&L Participant has attained the age of 65 and

147

completed at least sixty months of Service, shall not be less than the Actuarial Equivalent of his "Vested Rights" as set forth in Article II, Sections 5(1) and (2) of the Froggatt Plan.

(5)    Payment of Benefits to Certain Former Employees of Froggatt:

Any benefits that would have been payable currently or in the future under the Froggatt Plan, if it continued in effective after July 20, 1972, with respect to persons who did not become Employees of the Employer shall be paid from the Plan in accordance with the terms and provisions of the Froggatt Plan as in effect on July 20, 1972; provided, however, that effective on July 1, 1975, retirement benefits payable with respect to any such person shall be increased in accordance with the provisions of this Section 14(a) hereof as though he were a Participant.

(b)    Special Provisions Applicable to Former Employees of Daniels, Turnbull & Freeman

(1)    Date of Acquisition: July 1, 1973

(2)    Definitions:

(a)    "DT&F" means Daniels, Turnbull & Freeman.

(b)    "DT&F Plan" means the Daniels, Turnbull & Freeman Employees Pension Trust as adopted effective October 1, 1966 and as amended subsequent thereto.

(c)    "DT&F Employee" means any employee of DT&F who became an Employee as of June 1, 1973.

(3)    Amount of Annual Retirement Income:

Notwithstanding anything in Appendix or Plan to the contrary, the portion of the annual retirement income of a DT&F Employee computed in accordance with Section 1 of this Appendix which is based on Service prior to June 1, 1973 shall not be less than the Actuarial Equivalent of the normal retirement benefit accrued by such DT&F Employee under Section 4.1 of the DT&F Plan as of June 1, 1973.

(c)    Special Provisions Applicable to Former Partners and Employees of Siskin, Shapiro & Company

    (1)    Date of Acquisition: October 1, 1982

    (2)    Definition:

        (a)    "SS & Co." means Siskin, Shapiro & Company.

        (b)    "SS & Co. Employee" means any employee of SS & Co. who became an Employee as of October 1, 1982.

        (c)    "SS & Co. Partner" means any partner of SS & Co. who became a Partner as of October 1, 1982.

        (d)    "SS & Co. Plan" means the Siskin, Shapiro & Company HR-10 Plan.

        (e)    "SS & Co. Plan Balance" means the individual account balance of each employee in the SS & Co. Plan, as of the date the accounts are transferred to the Plan.

        (f)    "Plan Account" means the separate account established for each SS & Co. Employee under the Plan, and transferred to the Coopers & Lybrand Multi-Investment Accumulation Plan ("MAP") effective October 1, 1989.

    (3)    Transfer of SS & Co. Plan Assets:

        (a)    All assets of the SS & Co. Plan attributable to the SS & Co. Employees shall be transferred to the Trustee of the Plan as soon as practicable after October 1, 1982. Such assets shall be credited to each SS & Co. Employee's Plan Account in an amount equal to the market value of such account including any accrued contributions and investment income on the transfer date. The balance of each SS & Co. Employee's Plan Account shall be invested and reinvested upon the instructions of the Employee in one of the investment funds in accordance with the provisions of MAP. All earnings, losses and other expenses attributable to assets held for each such Plan Account shall be reflected therein exclusively, in accordance with such accounting procedures as the

149

Committee shall approve. No assets of any other such Plan Account nor any general assets, earnings or losses of the Trust Fund shall be credited to or charged against any such separate account.

(b) The value of each SS & Co. Employee's Plan Account established in accordance with Section 14(c)(3)(a) of this Appendix shall be determined no less frequently than annually, and at such other times as the Administrative Committee, in agreement with the Trustee of MAP, shall establish.

(c) The withdrawal provisions of MAP shall not be applicable to the Plan Accounts established in accordance with this Section 14(c)(3), and distribution of Plan Accounts shall be governed solely by the terms of this Section 14(c)(3).

(4)    Annual Retirement Income of SS & Co. Employees

Notwithstanding anything in this Appendix or Plan to the contrary, the annual retirement income of an SS & Co. Employee shall be the sum of (a) and (b) below:

(a) The annual retirement income determined under Section 1 of this Appendix for such Employee offset by the annual retirement income for life commencing on the first day of the calendar month beginning with or next following the date on which the C&L Participant has attained the age of 65 and completed at least sixty months of Service which is the actuarial equivalent of such employee's SS & Co. Plan Balance.

(b) The annual retirement income for life commencing on the first day of the calendar month beginning with or next following the date on which the C&L Participant has attained the age of 65 and completed at least sixty months of Service which is the actuarial equivalent of the Single Sum Payment of the Plan Account as determined in Section 14(c)(6) of this Appendix. For purposes of determining the vested amount of an SS & Co. Employee's retirement income, such Employee shall have at all times a 100% percent non-

150

forfeitable interest in the benefit described in this Section 14(c)(4)(b).

The basis for actuarial equivalent in this Section 14(c)(4) shall be as follows:

Mortality: 1971 Group Annuity mortality Table (Male) without projection, set back 6 years of Females.

Interest:   6% per annum, compounded annually.

(5)   Annual Retirement Income of SS & Co. Partners

Notwithstanding anything in this Appendix to the contrary, for purposes of determining the annual retirement income under Section 2 of this Appendix, Service with SS & Co. Partner shall not be included in determining Credited Service, but shall constitute Service for purposes of determining eligibility and vesting.

(6)   Single Sum Payment of Plan Account

In lieu of the benefit described in Section 14(c)(4)(b) of this Appendix, the SS & Co. Employee may elect at the time of his retirement or other termination of employment to receive a Single Sum Payment of his Plan Account.  An SS & Co. Employee's Single Sum Payment shall be the greater of:

(a)   the value of such Employee's SS & Co. Plan Balance increased by interest at 6% per annum, compounded annually to retirement or other termination of employment; or

(b)   the balance to the credit to the SS & Co. Employee is his Plan Account as of the Employee's retirement or other termination of employment.

Such amount will be paid in a single sum to the Employee, as soon as practicable after his retirement or other termination of employment; provided, however, that if the SS & Co. Employee elects a Single Sum Payment of his Plan Account, the annual retirement income of such Employee shall be limited to the benefit described Section 14(c)(4)(a) of this Appendix.

151

Any Single Sum Payment on or after October 1, 1989, shall be made from MAP, rather than from the Plan.

(7)    Death Benefits

If an SS & Co. Employee dies before the commencement of retirement income payments, his Beneficiary shall receive a Single Sum Payment equal to his Plan Account as determined in accordance Section 14(c)(6) of this Appendix, plus any benefits payable in accordance with Section 11 of this Appendix based on retirement benefits defined under Section 14(c)(4)(a) of this Appendix.

If an SS & Co. Employee dies after the commencement of retirement income payments, his Beneficiary shall receive any benefits payable in accordance with the Employee's election under Section 9 of this Appendix.

(8)    Cash-Out of Retirement Income

When an election is made by an SS & Co. Employee under Section 14(c)(6) of this Appendix, total retirement income for purposes of the Plan includes only the annual retirement income described in Section 14(c)(4)(a) of this Appendix, and not the retirement benefit described in Section 14(c)(4)(b) of this Appendix.

(d)    Special Provisions Applicable to Former Partners and Employees of Shaye, Lutz, Schwartz & King, P.C.

(1)    Date of Acquisition: October 1, 1982.

(2)    Definitions:

(a)    "SLSK" means Shaye, Lutz, Schwartz & King, P.C.

(b)    "SLSK Employee" means any employee or shareholder of SLSK who became an employee as of October 1, 1982.

(c)    "SLSK Plan" means the Shaye, Lutz, Schwartz & King, P.C. Pension Plan.

(3)    Amount of Annual Retirement Income:

Notwithstanding anything in this Appendix or Plan to the contrary, for purposes of determining the annual retirement income under Section 1 of this Appendix, except as noted in Section 14(d)(4) of this Appendix, Credited Service for an SLSK Employee (other than Ira Rosen) shall not include service with SLSK, but for an SLSK Employee (including Ira Rosen) such service shall constitute Service for purposes of determining eligibility and vesting.

(4)    Transfer of SLSK Plan Assets:

As soon as practicable after the acquisition date, each of Virginia Keating, Anna Thompson, Elizabeth Turner and Harold Dornburg will be given the option to elect to have the portion of assets of the SLSK plan attributable to their accrued benefits transferred to the Plan. Any such individual electing to transfer such amounts to the Plan shall have service with SLSK included in the determination of Credited Service for the purpose of calculating annual retirement income under Section 1 of this Appendix.

(e)    Special Provisions Applicable to Former Partners and Employees of J.B. Friedman & Co.

(1)    Date of Acquisition: December 1, 1982.

(2)    Definitions:

(a)    "JBFCo." means J.B. Friedman & Company

(b)    "JBFCo. Employee" means any employee or partner of JBFCo. who became an Employee as of, October 1, 1982.

(3)    Amount of Annual Retirement Income:

Notwithstanding anything in this Appendix or Plan to the contrary, Service for a JBFCo. Employee shall not include service with JBFCo.

(f)    Special Provisions Applicable to Former Partners and Employees of Katz, Zuckerman

(1)    Date of Acquisition: September 1, 1980.

153

(2)  Definitions:

    (a)  "KZ" means Katz, Zuckerman & Co.

    (b)  "KZ Employee" means any employee or partner of KZ who became an Employee on September 1, 1990.

(3)  Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Service (but not Credited Service) for a KZ Employee shall include service with KZ before September 1, 1990.

(g)  Special Provisions Applicable to Former Employees of Matsumoto and Yamada Accountancy Corporation

(1)  Date of Acquisition: July 1, 1983.

(2)  Definitions:

    (a)  "MYAC" means Matsumoto and Yamada Accountancy Corporation.

(3)  Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Fujima Matsumoto shall not be eligible to participate in the Plan, and the Plan Earnings of George Yamada shall be the amounts described in Section 10 of the merger agreement between MYAC and the Firm dated June 29, 1983.

(h)  Special Provisions Applicable to Former Employees of Ford, Hickman, Gibbs & Massinger Accountants, Incorporated

(1)  Date of Acquisition: August 1, 1983.

(2)  Definitions:

    (a)  "FHGM" means Ford, Hickman, Gibbs & Massinger Accountants, Incorporated.

154

(b)    "FHGM Employee" means any employee or partner of FHGM who became an Employee on August 1, 1983.

(3)    Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Mr. David H. Gibbs shall not be eligible to participate in or accrue benefits under the Plan. Also, for FHGM Employees, Plan Earnings and Service shall not include earnings and service with FHGM, except that service with FHGM shall constitute service under the Plan for purposes of participation.

(i)    Special Provisions Applicable to Former Partners and Employees of Utterback, Duncan, Carameros & Curlin

(1)    Date of Acquisition: August 1, 1983.

(2)    Definitions:

(a)    "UDCC" means Utterback, Duncan, Carameros & Curlin Accountants, Incorporated.

(b)    "UDCC Employee" means any employee or partner of UDCC who became an Employee on August 1, 1983.

(c)    "UDCC Partner" means any partner of UDCC who became a Partner on August 1, 1983.

(3)    Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Service for an UDCC Employee or UDCC Partner shall not include any period prior to August 1, 1983, and Plan Earnings for a UDCC Employee and UDCC Partner shall not include earnings prior to August 1, 1983. In addition, with respect to UDCC Partners, Plan Earnings shall not include payments pursuant to Section 9 of the merger agreement between UDCC and the Firm dated July 1983.

(j)    Special Provisions Applicable to Former Partners and Employees of Sorkin, Thayer & Co.

(1)    Date of Acquisition: December 1, 1983.

155

   (2)    <u>Definitions</u>:

      (a)    "STC" means Sorkin, Thayer & Co.

      (b)    "STC Partner" means any partner of STC who became a Partner as of December 1, 1983.

   (3)    <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, for purposes of determining eligibility, vesting and the computation of annual retirement income under Section 2 of this Appendix, Service and Plan Earnings for an STC Partner shall include the service and compensation amounts described in Attachments C and E to the Agreement dated November 30, 1983 between the Firm and STC with respect to periods prior to December 1, 1983. Notwithstanding anything in this Appendix or Plan to the contrary with respect to Acquired Employees, eligibility to participate in the Plan shall be restricted pursuant to Attachment D to the Agreement dated November 30, 1983 between the Firm and STC.

(k)   <u>Special Provisions Applicable to Former Employees and Partners of Trott & Company</u>

   (1)    <u>Date of Acquisition</u>: May 1, 1984.

   (2)    <u>Definitions</u>:

      (a)    "TCO" means Trott & Company.

      (b)    "TCO Employees" means any employee of TCO who became an Employee as of May 1, 1984.

   (3)    <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Plan Earnings and Service for a TCO Employee shall not include earnings and service with TCO.

(l)   <u>Special Provisions Applicable to Former Employees of Turigliatto, Collins, Bitner & Palm, P.C.</u>

156

(1)    <u>Date of Acquisition</u>: December 1, 1984.

(2)    <u>Definitions</u>:

    (a)    "TCBP" means Turigliatto, Collins, Bitner & Palm, P.C.

    (b)    "TCBP Employee" means any employee of TCBP who became an Employee as of December 1, 1984.

    (c)    "TCBP Partner" means any employee or partner of TCBP who became a Partner as of December 1, 1984.

(3)    <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Plan Earnings and Service for TCBP Employees and TCBP Partners shall not include earnings or service with TCBP.

(m)    <u>Special Provisions Applicable to Former Employees of SysteCon, Inc.</u>

(1)    <u>Date of Acquisition</u>: December 1, 1984.

(2)    <u>Definitions</u>:

    (a)    "SI" means SysteCon, Inc.

    (b)    "SI Employee" means any employee of SI who became an Employee as of December 1, 1984.

    (c)    "SI Principal" means any employee of SI who became a Partner or Principal as of December 1, 1984.

(3)    <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Service and Plan Earnings for an SI Employee and SI Principals shall not include service and earnings prior to December 1, 1984.

(n)    <u>Special Provisions Applicable to Former Employees of Gottfried Consultants, Inc.</u>

(1)    <u>Date of Acquisition</u>: February 1, 1985.

(2)     Definitions:

     (a)     "GCI" means Gottfried Consultants, Inc.

     (b)     "GCI Employee" means any employee of GCI who became an Employee as of February 1, 1985.

     (c)     "GCI Principal" means any employee of GCI who became a Principal as of February 1, 1985.

(3)     Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Service (but not Credited Service) for a GCI Employee and GCI Principal shall include service with GCI from June 1, 1964 to February 1, 1985.

(o)     Special Provisions Applicable to Former Employees of Hanson, Raun & Hanson.

    (1)     Date of Acquisition: December 1, 1981.

    (2)     Definitions:

       (a)     "HRH" means Hanson, Raun & Hanson.

       (b)     "HRH Employee" means any employee or partner of HRH who became an Employee as of December 1, 1981.

    (3)     Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Service for an HRH Employee shall not include service with HRH.

(p)     Special Provisions Applicable to Former Employees of Charles Mihaylo Accountancy Corporation

    (1)     Date of Acquisition: October 1, 1984.

    (2)     Definitions:

       (a)     "MAC" means Charles Mihaylo Accountancy Corporation.

(b)    "MAC Employee" means any employee of MAC who became an Employee on August 1, 1983.

(3)    <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Service for a MAC Employee shall not include any period prior to October 1, 1984, and Plan Earnings for a MAC Employee shall not include earnings prior to October 1, 1984.

(q)    <u>Special Provisions Applicable to Cox, Wacker and Vogel</u>

(1)    <u>Date of Acquisition</u>: December 1, 1985.

(2)    <u>Definitions</u>:

(a)    "CAWV Partner" means Albert Cox, John Wacker, and James Vogel, former partners of Cox, Armstrong, Wacker Vogel & Co., who became Partners on December 1, 1985.

(3)    <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Service for a CAWV Partner shall not include any period prior to December 1, 1985, and Plan Earnings for a CAWV Partner shall not include earnings prior to December 1, 1985.

(r)    <u>Special Provisions Applicable to Former Partners and Employees of Robinson & Company</u>

(1)    <u>Date of Acquisition</u>: January 1, 1986.

(2)    <u>Definitions</u>:

(a)    "R&C" means Robinson & Company.

(b)    "R&C Employee" means any employee or partner of R&C who became an Employee as of January 1, 1986.

(3)    <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Plan Earnings and Service for R&C Employees shall not include earnings and service with R&C.

(s)    Special Provisions Applicable to Former Partners and Employees of Colley, Trumbower & Howell

    (1)    Date of Acquisition: December 1, 1986.

    (2)    Definitions:

        (a)    "CT&H" means Colley, Trumbower & Howell.

        (b)    "CT&H Partners" means any partner of CT&H who become a Partner as of December 1, 1986.

        (c)    "CT&H Employees" means any employee of CT&H who became an Employee on December 1, 1986.

    (3)    Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Plan Earnings and Service for CT&H Employees shall include earnings and service with CT&H before December 1, 1986. Notwithstanding anything in the Plan to the contrary, Plan Earnings and Service for CT&H Partners shall not include earnings or service with CT&H before December 1, 1986.

(t)    Special Provisions Applicable to Former Partners and Employees of Daughtrey & Company

    (1)    Date of Acquisition: December 1, 1984.

    (2)    Definitions:

        (a)    "D&C" means Daughtrey & Company.

        (b)    "D&C Employees" means employees of D&C.

    (3)    Amount of Annual Retirement Income

160

Notwithstanding anything in this Appendix or Plan to the contrary, Plan Earnings and Service for D&C Employees shall not include earnings or service with D&C prior to December 1, 1984.

(u)    Special Provisions Applicable to Former Employees of Herman Smith Associates

    (1)    Date of Acquisition: February 1, 1988.

    (2)    Definitions:

        (a)    "HSA" means Herman Smith Associates.

        (b)    "HSA Employee" means any employee or partner of HSA who became an Employee as of February 1, 1988.

        (c)    "HSA Principal" means any partner or principal of HSA who became a Principal as of February 1, 1988.

    (3)    Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, for purposes of benefit accrual under the Plan Service and Plan Earnings for an HSA Employee and HSA Principal shall not include service and earnings with HSA. Also, the compensation amounts described in Section 4.5 of the merger agreement between HSA and the Firm dated January 29, 1988 shall not be included as Plan Earnings for the HSA Principals.

(v)    Special Provisions Applicable to Former Employees of Tyler, Ellis, Tuffly & Co.

    (1)    Date of Acquisition: December 1, 1988

    (2)    Definitions:

        (a)    "TET&C" means Tyler, Ellis, Tuffly & Co.

        (b)    "TET&C Employee" means any employee of TET&C who became an Employee on December 1, 1988.

    (3)    Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Service for a TET&C Employee shall not include any period prior to December 1, 1988, and Plan Earnings for a TET&C Employee shall not include earnings prior to December 1, 1988.

(w)  <u>Special Provisions Applicable to Former Partners and Employees of Gelfand, Rennert & Feldman</u>

    (1)  <u>Date of Acquisition</u>: December 1, 1989

    (2)  <u>Definitions</u>:

        (a)  "GRF" means Gelfand, Rennert & Feldman.

        (b)  "GRF Employee" means any employee or partner of GRF who became an Employee as of December 1, 1989.

        (c)  "GRF Partner" means any employee or Partner of GRF who became a Partner or Principal as of December 31, 1989.

    (3)  <u>Eligibility</u>

Each GRF Employee shall be treated as a new Employee as of December 31, 1989, and shall participate in the Plan upon satisfaction of its eligibility provisions.

Each GRF Partner shall be treated as a new Partner on December 1, 1989 and shall be eligible to participate in the Plan upon satisfaction of its eligibility provisions.

    (4)  <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Plan Earnings and Service for GRF Employees and GRF Partners shall not include earnings and service with GRF prior to December 1, 1989.

(x)  <u>Special Provisions Applicable to Former Employees of Computer Assistance, Inc.</u>

Employees of Computer Assistance, Inc. became employees of the Firm on April 1, 1989 in connection with the Firm's purchase of the assets of Computer Assistance, Inc., but were not initially eligible to participate in the Plan.

Effective January 1, 1994, salaried employees of the Computer Assistance division (also known as the Solutions through Technology group) of the Firm shall become C&L Participants of the Plan, and shall be credited with Service for periods of employment with Computer Assistance, Inc. and with the Computer Assistance division of the Firm. Credited Service shall be determined as if employment with Computer Assistance, Inc. were employment with the Firm, and as if employees of the Computer Assistance division were never an excluded class of employees.

Plan Earnings shall include compensation paid by Computer Assistance, Inc. and by the Computer Assistance division of the Firm.

(y)    Special Provisions Applicable to Former Employees of Harbridge House

    (1)    Date of Acquisition: October 1, 1993

    (2)    Definitions:

        (a)    "HH" means Harbridge House.

        (b)    "HH Employee" means any employee of HH who became an Employee on October 1, 1993.

    (3)    Amount of Annual Retirement Income

        Notwithstanding anything in this Appendix or Plan to the contrary, Service (but not Credited Service) for an HH Employee shall include service with HH before October 1, 1993.

(z)    Special Provisions Applicable to Employees of Manufacturers' Appraisal Company

    (1)    Date of Acquisition:  September 1, 1994

    (2)    Definitions:

        (a)    "MAC" means Manufacturers' Appraisal Company and any entity under common control (a defined in Section 414(b) or (c) of the Code) with  Manufacturers Appraisal Company.

163

(b)  "MAC Employee" means any employee of MAC who became an Employee on September 1, 1994.

(c)  "MAC Partner" means any employee or partner of MAC who became a Partner or Principal on September 1, 1994.

(3)  <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Service for a MAC Employee or MAC Partner shall not include service with MAC before September 1, 1994.

(aa)  <u>Special Provisions Applicable to Employees of Coppi Associates, Inc.</u>

(1)  <u>Date of Acquisition</u>:  March 1, 1995

(2)  <u>Definitions</u>:

(a)  "Coppi" means Coppi Associates, Inc. and any entity under common control (a defined in Section 414(b) or (c) of the Code) with Coppi Associates, Inc.

(b)  "Coppi Employee" means any employee of Coppi who became an Employee on March 1, 1995.

(c)  "Coppi Partner" means any employee or partner of Coppi who became a Partner or Principal on March 1, 1995.

(3)  <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Service (but not Credited Service) for a Coppi Employee or Coppi Partner shall include service with Coppi before March 1, 1995.

(bb)  <u>Special Provisions Applicable to Employees of L. W. Ellwood & Company.</u>

(1)  <u>Date of Acquisition</u>:  October 31, 1996

(2)  <u>Definitions</u>:

(a)    "Ellwood" means L. W. Ellwood & Company, Inc. and any entity under common control (a defined in Section 414(b) or (c) of the Code) with L. W. Ellwood & Company, Inc..

(b)    "Ellwood Employee" means any employee of Ellwood who became an Employee on October 31, 1996.

(c)    "Ellwood Partner" means any employee or partner of Ellwood who became a Partner or Principal on October 31, 1996.

(3)    <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Service (but not Credited Service) for an Ellwood Employee or Ellwood Partner shall include service with Ellwood before October 31, 1996.

(cc)    <u>Special Provisions Applicable to Employees of Compo Consulting Group, Inc.</u>

(1)    <u>Date of Acquisition</u>:  December 31, 1996

(2)    <u>Definitions</u>:

(a)    "Compo" means Compo Consulting Group, Inc. and any entity under common control (a defined in Section 414(b) or (c) of the Code) with  Compo Consulting Group, Inc.

(b)    "Compo Employee" means any employee of Compo who became an Employee on December 31, 1996.

(c)    "Compo Partner" means any employee or partner of  Compo who became a Partner or Principal on December 31, 1996.

(3)    <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Service (but not Credited Service) for a Compo Employee or Compo Partner shall include service with Compo before December 31, 1996.

(dd)    Participation By Affiliated Employers

Name of Affiliated Employer          Effective Date of Plan Participation

Coopers & Lybrand Global Services (U.S.), Inc.          January 1, 1997

Coopers & Lybrand Securities L.L.C.          January 1, 1998

(ee)    Special Provisions Applicable to Former Employees of Kwasha Lipton and Kwasha Lipton, L.L.C. Formerly working at Kwasha Lipton

All employees of Kwasha Lipton (the assets and business of which was acquired by the Firm on January 24, 1997) and participants of Kwasha Lipton, L.L.C. who were employed at Kwasha Lipton on January 24, 1997, and employees and participants who received employment letters from Kwasha Lipton on or before January 24, 1997 but began work at Kwasha Lipton within 30 days after January 24, 1997, shall be eligible to participate in the Kwasha Lipton Retirement Plan (the "KL Plan") (and shall not be treated as C&L Participants for purposes of this Appendix), subject to the terms and conditions of the KL Plan, until the date the KL Plan is merged into this Plan. All other employees hired at the former Kwasha Lipton operations who were hired after January 24, 1997, including former employees of Kwasha Lipton rehired after January 24, 1997, shall be eligible to participate in this Plan (and shall not be eligible to participate in the KL Plan), and, with respect to such employees, a period of employment or service with Kwasha Lipton or with Kwasha Lipton, L.L.C. working at Kwasha Lipton shall be deemed employment with the Firm for purposes of determining Service hereunder; provided, however, that such an individual's Service under this Plan shall not be less than his service under the KL Plan.

(ff)    Special Provisions Applicable to Employees of Property Tax Specialists, Inc. and Storage Tax Specialists, Inc.

(1)    Date of Acquisition:  April 22, 1997

(2)    Definitions:

(a)    "PTS"  and "STP" means Property Tax Specialists, Inc. and Storage Tax Specialists, Inc.. and any entity under common control (a defined in Section 414(b) or (c) of the Code) with Property Tax Specialists, Inc. and Storage Tax Specialists, Inc..

166

(b)    "PTS or STP Employee" means any employee of PTS or STP who became an Employee on April 22, 1997.

(c)    "PTS or STP Partner" means any employee or partner of PTS or STP who became a Partner or Principal on April 22, 1997.

(3)    Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Service for an PTS or STP Employee or PTS or STP Partner shall not include service with PTS or STP before April 22, 1997.

(gg)    Special Provisions Applicable to Employees of Autofacts, Inc.

(1)    Date of Acquisition: May 1, 1997

(2)    Definitions:

(a)    "Autofacts" means Autofacts, Inc. and any entity under common control (a defined in Section 414(b) or (c) of the Code) with Autofacts, Inc.

(b)    "Autofacts Employee" means any employee of Autofacts who became an Employee on May 1, 1997.

(c)    "Autofacts Partner" means any employee or partner of Autofacts who became a Partner or Principal on May 1, 1997

(3)    Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Service (but not Credited Service) for an Autofacts Employee or Autofacts Partner shall include service with Autofacts before May 1, 1997.

(hh)    Special Provisions Applicable to Employees of Applied Business Systems, Inc.

(1)    Date of Acquisition: June 1, 1998

(2)    Definitions:

167

    (a)    "ABS" means Applied Business Systems, Inc. and any entity under common control (a defined in Section 414(b) or (c) of the Code) with Applied Business Systems, Inc.

    (b)    "ABS Employee" means any employee of ABS who became an Employee on June 1, 1998.

    (c)    "ABS Partner" means any employee or partner of ABS who became a Partner or Principal on June 1, 1998.

  (3)    <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Service for an ABS Employee or ABS Partner shall not include service with ABS before June 1, 1998.

(ii)    <u>Special Provisions Applicable to Employees of Shattuck Hammond Partners Inc.</u>.

  (1)    <u>Date of Acquisition</u>:  April 2, 1998

  (2)    <u>Definitions</u>:

    (a)    "SHP" means Shattuck Hammond Partners, Inc. and any entity under common control (a defined in Section 414(b) or (c) of the Code) with Shattuck Hammond Partners, Inc.

    (b)    "SHP Employee" means any employee of SHP who became an Employee on April 2, 1998.

    (c)    "SHP Partner" means any employee or partner of SHP who became a Partner or Principal on April 2, 1998.

  (3)    <u>Amount of Annual Retirement Income</u>

Notwithstanding anything in this Appendix or Plan to the contrary, Service for an SHP Employee or SHP Partner shall not include service with SHP before April 2, 1998.

(jj)    <u>Special Provisions Applicable to Employees of Leatherwood & Ward</u>

  (1)    <u>Date of Acquisition:  January 1, 1974</u>

(2)     Definitions:

    (a)    "L&W" means Leatherwood & Ward and any entity under common control (a defined in Section 414(b) or (c) of the Code) with Leatherwood & Ward.

    (b)    "L&W Employee" means any employee of L&W who became an Employee on January 1, 1974

    (c)    "L&W Partner" means any employee or partner of L&W who became a Partner or Principal on January 1, 1974.

(3)     Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Service and Credited Service for a L&W Employee or L&W Partner shall include service with L&W before January 1, 1974.

(kk)     Special Provisions Applicable to Herzinger, Porter, Addison & Blind

(1)     Date of Acquisition:  May 1, 1974

(2)     Definitions:

    (a)    "HPA&B" means Herzinger, Porter, Addison & Blind and any entity under common control (a defined in Section 414(b) or (c) of the Code) with Herzinger, Porter, Addison & Blind.

    (b)    "HPA&B Employee" means any employee of HPA&B who became an Employee on May 1, 1974

    (c)    "HPA&B Partner" means any employee or partner of HPA&B who became a Partner or Principal on May 1, 1974.

(3)     Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Service and Credited Service for a HPA&B Employee or HPA&B Partner shall include service with HPA&B before May 1, 1974.

169

(ll)     <u>Special Provisions Applicable to Durham, Martin, Jenkins & Co.</u>

   (1)     <u>Date of Acquisition:  August 1, 1990</u>

   (2)     <u>Definitions:</u>

      (a)     "DMJ" means Durham, Martin Jenkins & Co. and any entity under common control (a defined in Section 414(b) or (c) of the Code) with Durham, Martin Jenkins & Co..

      (b)     "DMJ Employee" means any employee of DMJ who became an Employee on August 1, 1990

      (c)     "DMJ Partner" means any employee or partner of DMJ who became a Partner or Principal on August 1, 1990.

   (3)     <u>Amount of Annual Retirement Income</u>

   Notwithstanding anything in this Appendix or Plan to the contrary, Service and Credited Service for a DMJ Employee or HPA&B Partner shall include service with DMJ before August 1, 1990.

(mm)     <u>Special Provisions Applicable to Hildenbrand & Tulin</u>

   (1)     <u>Date of Acquisition:  December 7, 1988</u>

   (2)     <u>Definitions:</u>

      (a)     "H&T" means Hildenbrand & Tulin and any entity under common control (a defined in Section 414(b) or (c) of the Code) with Hildenbrand & Tulin.

      (b)     "H&T Employee" means any employee of H&T who became an Employee on December 7, 1988.

      (c)     "H&T Partner" means any employee or partner of H&T who became a Partner or Principal on December 7, 1988.

   (3)     <u>Amount of Annual Retirement Income</u>

170

Notwithstanding anything in this Appendix or Plan to the contrary, Service for an H&T Employee or H&T Partner shall not include service with H&T before December 7, 1988.

(nn)    Special Provisions Applicable to Utterback, Duncan, Carameros & Curlin.

    (1)    Date of Acquisition:  August 1, 1983

    (2)    Definitions:

        (a)    "UDC&C" means Utterback, Duncan, Carameros & Curlin and any entity under common control (a defined in Section 414(b) or (c) of the Code) with Utterback, Duncan, Carameros & Curlin

        (b)    " UDC&C Employee" means any employee of UDC&C who became an Employee on August 1, 1983.

        (c)    " UDC&C Partner" means any employee or partner of UDC&C who became a Partner or Principal on August 1, 1983.

    (3)    Amount of Annual Retirement Income

Notwithstanding anything in this Appendix or Plan to the contrary, Service for an UDC&C Employee or UDC&C Partner shall not include service with UDC&C before August 1, 1983.

171

RESOLUTONS ADOPTED
BY THE FINANCE COMMITTEE OF THE BOARD OF
PARTNERS AND PRINCIPALS OF PRICEWATERHOUSECOOPERS LLP

**WHEREAS,** PricewaterhouseCoopers LLP (the "Firm") sponsors the Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP (the "Employee and Partner Plan"), Savings Plan for Employees of PricewaterhouseCoopers LLP (the "Employee Plan"), and Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (the "RBAP") for its employees, partners and principals; and

**WHEREAS,** each of the Employee and Partner Plan, Employee Plan and RBAP provides that it may be amended by the Finance Committee of the Board of Partners and Principals (the "Finance Committee") of the Firm; and

**WHEREAS,** the Finance Committee desires to amend the Employee and Partner Plan, Employee Plan and RBAP.

**NOW, THEREFORE, be it:**

**RESOLVED,** that, amendments to the Employee and Partner Plan, to facilitate the employment policies of PricewaterhouseCoopers Securities LLC for its Directors and Managing Directors and increase flexibility in distributions of benefits, be and hereby are adopted in the form attached hereto as Exhibit 1, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter, U.S. Partner Affairs Leader of the Firm, and Roger C. Hindman, a partner of the Firm, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

**RESOLVED,** that, amendments to the Employee Plan, to increase flexibility in distributions of benefits, be and hereby are adopted in the form attached hereto as Exhibit 2, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter and Roger C. Hindman, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

**RESOLVED,** that, amendments to the RBAP, to facilitate the employment policies of the Firm for its Directors and Managing Directors, be and hereby are adopted in the form attached hereto as Exhibit 3, with such changes, consistent with the intent and purposes of such amendments, thereto as John F. Carter and Roger C. Hindman, or any one of them, may approve, their (his) signature(s) on such changes being final and conclusive evidence of the adoption of any such changes; and

**RESOLVED,** that, John F. Carter and Roger C. Hindman, or any one of them, be and hereby are (is) authorized to execute such other documents and perform such acts as they (he) may deem necessary or appropriate to carry out the intent and purposes of the amendments to the Employee and Partner Plan, Employee Plan and RBAP made by the foregoing Resolutions.

1

**Exhibit 3**

### Retirement Benefit Accumulation Plan for Employees of
### PricewaterhouseCoopers LLP


#### Statement of Amendment


The Plan is amended by adding the following before the first sentence of Section 2.15, effective October 1, 2004:

For Participants other than Partners or Principals, an amount equal to five percent (5%) of the Compensation paid to a Participant on a monthly, semi-monthly, biweekly, weekly or other periodic basis in accordance with the Participant's payroll period, except that: (1) a Participant who was a Director on October 1, 2004 shall be allocated an amount equal to seven (7%) (but if such Director shall terminate employment and, thereafter, be rehired by the Employer, then such Director shall upon such rehire be allocated an amount equal to five percent (5%)); and (2) a Participant who is a Managing Director shall be allocated an amount equal to 8%.