**EXHIBIT B**

**RBAP Summary Plan Description (2001) (excerpts)**

## TABLE OF CONTENTS

RETIREMENT BENEFIT ACCUMULATION PLAN (RBAP)
FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP.................................................1
SUMMARY PLAN DESCRIPTION ........................................................................................1
PARTICIPATION ................................................................................................................1
    Who is Eligible ........................................................................................................1
    Enrolling in the Plan ...............................................................................................2
    Cost of the Plan ......................................................................................................2
    When Plan Participation Begins ..............................................................................2
HOW THE PLAN WORKS ....................................................................................................2
IRS LIMITS ON COMPENSATION ........................................................................................3
INVESTMENT ELECTIONS ..................................................................................................3
INFORMATION ABOUT YOUR ACCOUNT ..............................................................................4
CHANGING YOUR PLAN ELECTIONS ...................................................................................5
TRANSFERRING OR REALLOCATING THE VALUE OF ACCOUNT CREDITS .............................5
BENEFITS FOR LEGACY C&L EMPLOYEES WHO WERE COVERED UNDER THE C&L RETIREMENT PLAN..........5
CHANGING YOUR BENEFICIARY DESIGNATION ...................................................................7
VESTING...........................................................................................................................7
LOANS AND ROLLOVERS ..................................................................................................9
WHEN BENEFITS ARE PAYABLE .......................................................................................9
PLAN PAYMENT METHODS UPON TERMINATION OF EMPLOYMENT OR RETIREMENT .......... 10
    MANDATORY LUMP SUM PAYMENT ................................................................... 10
    NORMAL PAYMENT METHOD FOR SINGLE PARTICIPANTS ................................... 10
    NORMAL PAYMENT METHOD FOR MARRIED PARTICIPANTS ................................ 10
    OPTIONAL PAYMENT METHODS ......................................................................... 11
    DIRECT ROLLOVERS ......................................................................................... 12
PLAN PAYMENTS AT DEATH ........................................................................................... 13
INFORMATION ABOUT FORFEITURES................................................................................ 15
    WHEN FORFEITURES OCCUR ............................................................................ 15
    DISPOSITION OF FORFEITURES ........................................................................ 15
PENSION BENEFIT GUARANTY CORPORATION .................................................................. 15
ASSIGNMENT OR ALIENATION OF BENEFITS .................................................................... 16
IMPORTANT INFORMATION .............................................................................................. 16
ADMINISTRATIVE INFORMATION ...................................................................................... 18
PLAN NAME ................................................................................................................... 18
INTRODUCTION................................................................................................................ 18
PLAN TYPE .................................................................................................................... 18
EMPLOYER IDENTIFICATION NUMBER .............................................................................. 18
PLAN NUMBER ............................................................................................................... 18
PLAN YEAR ................................................................................................................... 18
SOURCE OF FUNDS ........................................................................................................ 18
TRUSTEES, FUNDING AND PAYMENT OF PLAN BENEFITS ................................................ 18
PLAN ADMINISTRATOR.................................................................................................... 19
PLAN DOCUMENTS ......................................................................................................... 19
FORMS AND PROCEDURES TO OBTAIN BENEFITS ........................................................... 19
CLAIM APPEALS ............................................................................................................. 19
LEGAL PROCESS ............................................................................................................ 20
PLAN TERMINATION PROVISIONS .................................................................................... 20
YOUR RIGHTS UNDER ERISA ........................................................................................ 21
SPECIAL TAX NOTICE REGARDING PLAN PAYMENTS FROM THE RETIREMENT BENEFIT
ACCUMULATION PLAN................................................................................................. 23
SUMMARY ...................................................................................................................... 23
MORE INFORMATION ...................................................................................................... 24
Part I:  Payments That Can And Cannot Be Rolled Over.................................................... 24
PART II:    DIRECT ROLLOVER ........................................................................................ 25
PART III:    PAYMENT PAID TO YOU ............................................................................... 26
INCOME TAX WITHHOLDING ............................................................................................ 26
    Mandatory Withholding ......................................................................................... 26
    Voluntary Withholding .......................................................................................... 27
    Sixty-Day Rollover Option .................................................................................... 27

Ten-Year Averaging ................................................................................................ 29

PART IV:    SURVIVING SPOUSES, ALTERNATE PAYEES, AND OTHER BENEFICIARIES .................................. 30

HOW TO OBTAIN ADDITIONAL INFORMATION ................................................................................ 31

# RETIREMENT BENEFIT ACCUMULATION PLAN (RBAP)
# FOR EMPLOYEES OF PRICEWATERHOUSECOOPERS LLP

**Summary Plan Description**
**July 1, 2000**

The Retirement Benefit Accumulation Plan (RBAP) for Employees of PricewaterhouseCoopers LLP makes an important contribution toward your retirement income. It offers you the choice when you retire or leave the firm before retirement to have your benefit distributed in regular monthly payments for life, or to take your benefit with you in a lump sum.

**Participation**
*Who is Eligible*

Staff members of PricewaterhouseCoopers LLP hired on or after July 1,1998 automatically participate in the plan on the first day of the calendar month coinciding with or following the date you are employed by PricewaterhouseCoopers LLP.

If you were employed by the legacy firm Price Waterhouse LLP (PW) on July 1, 1994, you automatically became a plan participant on that date. If you were hired by PW between July 1, 1994 and June 30, 1998, your participation began the first of the month coinciding with or following your date of hire. If you were employed by the legacy firm Coopers & Lybrand LLP (C&L) on June 30, 1998 and had not already met the plan's participation requirements, you automatically became a participant in the C&L Retirement Plan on July 1, 1998. The C&L Retirement Plan was merged with RBAP on July 1, 1999 and on that date, you became a participant in RBAP. If you were hired by legacy firm Kwasha Lipton (KL) prior to January 24, 1997 (or if you received an employment letter from KL on or before January 24, 1997 but began to work at KL within 30 days after January 24, 1997), your participation in RBAP began on July 1, 1999.

Student interns, temporary employees (including foreign exchange) and temporary faculty from U.S. universities are not eligible to participate. Additionally, for technical reasons, employees of PwC Securities and PwC BPO Solutions Mideast receive contributions under the Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP that are equal to the credits under the RBAP, and are not eligible to participate.

Last Revised:  08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

The plan described in this Summary Plan Description ("SPD") applies to benefits earned on or after July 1, 1999, except where otherwise stated. While partners participate in the plan, due to the nature of the partner compensation and benefits structure, certain provisions of the plan described in this SPD (primarily those relating to credits to an "account" in your name) do not apply to them. Information on those matters is covered in separate annual memoranda to partners.

---

**Enrolling in the Plan**

Your plan participation is automatic. There is no enrollment form to fill out. However, you will need to visit Benefits Express Online at https://www2.benefitsweb.com/pwc.html or call Benefits Express at (877) PwC-BenX (792-2369)* to:

- make your investment elections from the plan's fund choices; *and*

- request a form to name your beneficiary to receive the value of your plan account in the event of your death. However, if you are married and wish to designate—or later change your beneficiary designation to—someone other than your spouse, you will need your spouse's consent, witnessed by a notary public. Refer to the beneficiary designation section for details.

For information about your RBAP elections, please visit Benefits Express Online or call Benefits Express.

*If you are contacting Benefits Express from an international location call (201) 363-3541. Hearing-impaired callers can contact Benefits Express by calling (800) TDD-TDD4 (833-8334).

---

**Cost of the Plan**

The firm pays the full cost—100% of your benefit under the plan. You make no contributions to the plan.

---

**When Plan Participation Begins**

Your plan participation begins on the first day of the calendar month on or after your date of hire. Credits to your RBAP account begin for the first payroll date on which you are a participant.

---

**How The Plan Works**

For each pay period, the firm credits an "account" in your name with an amount equal to 5% of your compensation for that pay period. Directors are credited with an amount equal to 7% of compensation.

Last Revised: 08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

*Compensation* means your annual base salary, overtime, bonuses, severance and accrued vacation pay, but does not include such items as expense reimbursements, relocation allowances, sign-on and referral bonuses and other fringe benefits. Staff members' contributions to the PricewaterhouseCoopers 401(k) Savings Plan, health care and dependent care expense accounts, and staff members' portions of pre-tax medical and dental plan premiums are included as part of compensation for purposes of this plan.

---

### *IRS Limits on Compensation*

Pursuant to restrictions under the Internal Revenue Code, your maximum compensation that may be considered for each plan year when determining credits to your account is $170,000 (adjusted for inflation in future years).

---

### *Investment Elections*

Your plan benefits—the firm's credits to your account—are adjusted upward or downward for investment experience based on your elections among the plan's investment funds. There are currently 16 professionally managed investment funds in diverse asset classes among which you can divide your account credits. You direct your account balance to the investments of your choice in increments of 1%.

If you are a legacy C&L staff member, the contributions credited to your cash balance account under the C&L Retirement Plan between July 1, 1998 and June 30, 1999 must be invested in the investment option called the Frozen Fund. You are not able to transfer those contributions and earnings thereon out of this fund. You may, however, make investment elections for contributions credited to your RBAP account after June 30, 1999.

The plan's administrative committee may, from time to time, replace any or all of the investment funds with other funds that meet the plan's investment criteria or add additional funds.

The plan's investment funds offer different opportunities and levels of risk. You should make your choices carefully on the basis of your own financial goals.

Before directing the investment of your account to any of the investment funds, you should read the highlight and fund prospectus (if applicable) for that fund, which is available through Benefits Express Online at

Last Revised: 08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

https://www2.benefitsweb.com/pwc.html or by calling Benefits Express at (877) PwC-BenX (792-2369)*. You may also request fund information directly from the investment company.

You may direct your account balance to as many or as few of the 16 available investment funds as you wish. Your elections must each be in a whole percentage. If you fail to direct the investment of your account, it will be invested in the plan's money market fund option.

You may make your investment elections from the funds when you become a participant. You may change your investment allocations through Benefits Express Online at https://www2.benefitsweb.com/pwc.html or by calling Benefits Express at (877) PwC-BenX (792-2369)*. PwC attempts to make Benefits Express available to you 24 hours each day. Occasionally it may not be available, or for other reasons it may not be possible to execute your investment choices or other directions. PwC and its representatives are not responsible for investment choices or other directions that cannot be given or executed on those occasions.

Your account is valued daily. Any interest, dividends, and investment earnings are automatically reinvested in the fund(s) from which they are derived.

*If you are contacting Benefits Express from an international location call (201) 363-3541. Hearing-impaired callers can contact Benefits Express by calling (800) TDD-TDD4 (833-8334).

---

**Information About Your Account**

Information about your account is provided in two ways:

- The firm provides a quarterly statement, sent to your mailing address on file, showing the value of your account.

- Current account balances and other information about your account are available on a daily basis by visiting Benefits Express Online at https://www2.benefitsweb.com/pwc.html or by calling Benefits Express at (877) PwC-BenX (792-2369)*.

*If you are contacting Benefits Express from an international location call (201) 363-3541. Hearing-impaired callers can contact Benefits Express by calling (800) TDD-TDD4 (833-8334).

---

**Changing Your Plan Elections**

You may elect to change the investment direction for future credits among the plan's investment funds on any business day to take effect with your next pay period. Election changes can be made in any whole percentage.

**Transferring or Reallocating the Value of Account Credits**

You may elect to *transfer or reallocate the value of your existing account credits* between the plan's investment funds by visiting Benefits Express Online or by calling Benefits Express.

Transfers from one fund to another can be made in dollars or in any whole percentage of your account balance. Reallocations can be made in any whole percentage of your account balance. You have two fund reallocation options: a daily reallocation or an automatic quarterly reallocation. If you choose a daily fund reallocation, you can elect to reallocate existing balances in 1% increments. If you elect an automatic quarterly reallocation, it will be processed as of the last business day of each calendar quarter. Quarterly reallocation elections can be made anytime, however, your account will be reallocated automatically each quarter, based on your existing election until you change or cancel it.

You can direct all or a portion of your account balance among the various investment funds on any business day. Transfer and reallocation requests made on any business day by the earlier of 4 p.m. Eastern time or the stock market closing will be processed based upon that day's closing prices. Any requests made over a weekend, or on a day that the stock market or Benefits Express is closed, will take effect at the close of the stock market on its next open day.

**Benefits for Legacy C&L Employees Who Were Covered Under the C&L Retirement Plan**

The legacy C&L "career average" Retirement Plan was modified to incorporate a cash balance feature on July 1, 1998 and was merged with RBAP on July 1, 1999. Beginning July 1, 1998, legacy C&L employees began earning firm credits—equal to 5% of compensation—to cash balance accounts each pay period. Beginning July 1, 1999, directors are credited with an amount equal to 7% of compensation.

*Your Total Benefit*—If you were employed by PwC on June 30, 1999 and were earning benefits in the C&L Retirement Plan on that date, when you separate from the firm, you will receive the greater of:

Last Revised: 08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

a benefit determined only under the career average formula described below, based on all your service through your separation date, or

- a benefit equal to the sum of your career average benefit determined at June 30, 1998 plus the value of your RBAP account accumulated since June 30, 1998.

**Career average** benefits are determined as follows:



- *Credited Service* means service while a participant in the plan other than periods when you were ineligible to participate or were on a leave of absence of more than one year. You are granted one full month of service for each month you are employed at least one day. If you become disabled, you continue to accrue credited service while you are receiving long-term disability payments from the firm's long-term disability program.

- *Plan Earnings* means total compensation, including bonus pay, overtime pay or other indirect compensation for the calendar year that ends within the plan year. Plan earnings do not include such items as taxable fringe benefits, moving allowances, tax-equalization payments, long-term disability benefits or job referral bonuses. Prior to October 1, 1994, plan earnings is the basic annual rate of pay as of each October 1.

- *Prior Service Plan Earnings* means the average of the three most recent plan earnings prior to October 1, 1993.

---

**Changing Your Beneficiary Designation**

You can *change your beneficiary designation* at any time by completing the appropriate form and submitting it to Benefits Express. If you are married, you will need your spouse's written and notarized consent if you wish to designate a beneficiary or beneficiaries, other than your spouse. If you do not select a beneficiary, the plan rules for distribution of your account in the event of your death are as follows:

- first, your spouse, if living;

- second, your natural or adopted children, if living; and

- third, your estate.

If payable to more than one person in a class, all persons in the class shall share equally.

**Vesting**

Vesting refers to your right to receive benefits from the plan.

Your vested right to the value of your account is based on your years of service with the firm. For vesting purposes, a year of service is defined as a vesting computation period (October 1 – September 30) during which you are credited with at least 1,000 hours of service and are at least age 17. You will vest in the value of your benefit after you complete five years of service. However, if you were employed by the firm on June 30, 1999 and were earning benefits under the Kwasha Lipton Retirement Plan on that date, you will vest in the value of your benefit according to the following schedule:

| Completed Years of Service | Vesting Percentage |
|---|---|
| Less than 3 | 0% |
| 3 | 20% |
| 4 | 40% |
| 5 or more | 100% |

An hour of service means each hour for which you are paid or entitled to payment for time worked, as well as during paid absences for vacations, holidays, illness, disability, jury duty or certain other approved absences, including certain periods of unpaid leave. If you are not vested in your account and you incur a break in service

(a vesting computation period in which you have fewer than 501 hours of service), your years of vesting service will not count if you are rehired if the number of consecutive one-year breaks in service equals or exceeds five or the number of your pre-break years of vesting service, whichever is greater.

You are also automatically vested if you are actively employed by the firm when you reach age 65 (age 55 for legacy KL employees). Your plan benefits are also vested if you die while employed by the firm.

Employment since July 1, 1998 with any office worldwide is credited for vesting. Please notify Benefits Express if you are joining the plan with prior employment with PricewaterhouseCoopers (including outside the United States), or commencing employment outside the United States to ensure that your service is credited. Additionally, service with legacy PW and legacy C&L (including KL) is also credited through June 30, 1998. Please notify Benefits Express if you are joining the plan with prior employment with any of those legacy firms. As described above, under RBAP you earn one year of service for each vesting computation period (October 1 – September 30) during which you are credited with at least 1,000 hours of service. That method of crediting hours of service was used by legacy PW, and is used by PricewaterhouseCoopers. However, legacy C&L had credited service according to months of employment aggregating to a year, with any work during a month resulting in credit for the entire month (e.g., an individual who was hired on August 15, 1994 and terminated on July 1, 1995 earned one year). The two methods were harmonized on April 1, 1999, with a transition rule for the computation period from October 1, 1998 – September 30, 1999. The whole years of service, as of April 1, 1999, of a legacy C&L employee were added to his or her hours of service during the computation period from October 1, 1998 – September 30, 1999. For that computation period, 95 hours of service were credited for each semi-monthly period. For example, if a legacy C&L employee was hired on August 15, 1994, he or she would have five years of vesting service on April 1, 1999, as follows. At April 1, 1999, the employee would have had four whole years of service (August 15, 1994 – July 31, 1998). In

Last Revised:  08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

lieu of the fractional year (9 months from August 1998 – April 1, 1999), he or she would have been credited with one additional year of service (95 hours of service for each semi-monthly period from October 1, 1998 – April 1, 1999, or 95 hours x 13 semi-monthly periods = 1,235 hours).

The firm has also credited employment prior to July 1, 1998 with either legacy C&L or legacy PW for benefits earned prior to that date under a legacy retirement plan. Thus, if you were credited with one year of service with legacy PW during 1996, and went to work for legacy C&L during 1997, the service with legacy PW would be credited for vesting in benefits earned with C&L prior to July 1, 1998.

---

**Loans and Rollovers**

The plan does not permit you to borrow from your account. The plan also does not accept participant contributions or rollovers of any kind. However, you may be able to roll over amounts from a former employer's retirement plan into the PwC 401(k) Savings Plan. For more information on rollovers into the PwC 401(k) Savings Plan, visit Benefits Express Online at https://www2.benefitsweb.com/pwc.html or call Benefits Express at (877) PwC BenX (792-2369)*.

*If you are contacting Benefits Express from an international location call (201) 363-3541. Hearing-impaired callers can contact Benefits Express by calling (800) TDD-TDD4 (833-8334).

---

**When Benefits Are Payable**

Benefits are payable upon termination of employment if you are vested. A transfer of employment from one PricewaterhouseCoopers office worldwide to another PricewaterhouseCoopers office worldwide is not a termination of employment for which benefits are payable. Additionally, prior to or after termination of employment, "non-highly compensated" client-service staff members who are vested may receive all or any portion of amounts credited to their accounts in any of the Plan payment methods. This option is not available to staff members who previously earned benefits under the C&L Retirement Plan or the KL Retirement Plan.

---

Last Revised: 08/01/01
This information is for internal use only
Copyright © 2001 PricewaterhouseCoopers LLP

**<u>EXHIBIT C</u>**

**SPEP Plan Documents**
**(amended and restated; effective October 1, 1995) (excerpts)**

*SAVINGS PLAN FOR EMPLOYEES*
*AND PARTNERS*
*OF PRICEWATERHOUSECOOPERS LLP*

**As Amended and Restated**
**Effective October 1, 1995**

*SAVINGS PLAN FOR EMPLOYEES*
*AND PARTNERS*
*OF PRICEWATERHOUSECOOPERS LLP*

**Table of Contents**

**ARTICLE 1**       **PURPOSE AND APPLICABILITY OF PLAN** ................................... 3
    1.1   Purpose of Plan ................................................. 3
    1.2   Applicability of Plan ............................................ 3

**ARTICLE 2**       **DEFINITIONS** ...................................................... 4
    2.1   Account ........................................................ 4
    2.2   Adoption Agreement ............................................ 4
    2.3   Administrative Committee ....................................... 4
    2.4   Affiliated Employer ............................................ 4
    2.5   After-Tax Contribution ......................................... 5
    2.6   Basic Contribution ............................................. 5
    2.7   Beneficiary .................................................... 5
    2.8   Benefit ........................................................ 6
    2.9   Break in Service ............................................... 6
    2.10  Code .......................................................... 6
    2.11  Compensation .................................................. 6
    2.12  Earned Income ................................................. 8
    2.13  Effective Date ................................................. 8
    2.14  Eligible Employee .............................................. 8
    2.15  Employee ...................................................... 8
    2.16  Employer ...................................................... 10
    2.17  Employing Firm ................................................ 12
    2.18  Entry Date .................................................... 12
    2.19  ERISA ........................................................ 13
    2.20  Family Member ................................................ 13
    2.21  Fiduciary ..................................................... 14
    2.22  Firm .......................................................... 14
    2.23  Highly Compensated Employee .................................. 14
    2.24  Hour of Service ............................................... 16
    2.25  Investment Manager ........................................... 19
    2.26  Leased Employee .............................................. 19
    2.27  Matching Contribution ......................................... 20
    2.28  Normal Retirement Age ........................................ 20
    2.29  Normal Retirement Date ....................................... 20
    2.30  Participant .................................................... 20
    2.31  Plan .......................................................... 20
    2.32  Plan Administrator ............................................ 21

| 2.33 | Plan Year | 21 |
| 2.34 | Policy Board | 21 |
| 2.35 | Profit Sharing Contribution | 21 |
| 2.36 | Rollover Contribution | 21 |
| 2.37 | Salary Deferral Contribution | 21 |
| 2.38 | Spouse | 22 |
| 2.39 | Spousal Consent | 22 |
| 2.40 | State | 22 |
| 2.41 | Subaccount | 22 |
| 2.42 | Transfer Contribution | 22 |
| 2.43 | Trust | 22 |
| 2.44 | Trustee | 23 |
| 2.45 | Valuation Date | 23 |
| 2.46 | Year of Service | 23 |

**ARTICLE 3    ELIGIBILITY AND YEARS OF SERVICE** ... 26
| 3.1 | Eligibility Requirements | 26 |
| 3.2 | Blank | 26 |
| 3.3 | Cessation of Eligibility | 26 |
| 3.4 | Eligible Employee | 26 |
| 3.5 | Transfer to Savings Plan For Employees Of Price Waterhouse LLP | 28 |

**ARTICLE 4    CONTRIBUTIONS** ... 29
| 4.1 | After-Tax Contributions | 29 |
| 4.2 | Salary Deferral Contributions | 30 |
| 4.3 | Limitation on Amount of Participant Contributions | 32 |
| 4.4 | Employer Matching Contributions | 33 |
| 4.5 | Discrimination Test for Salary Deferral Contributions | 35 |
| 4.6 | Salary Deferral Agreement | 38 |
| 4.7 | Discrimination Test for After-Tax and Matching Contributions | 40 |
| 4.8 | Multiple Use of Alternative Limitation | 43 |
| 4.9 | Return of Reduced Compensation Amounts to Participants | 43 |
| 4.10 | Contribution Limits | 44 |
| 4.11 | Profits Not Required | 44 |
| 4.12 | Form of Contributions | 44 |
| 4.13 | Transfers and Rollovers | 44 |
| 4.14 | Profit Sharing Contributions | 46 |

**ARTICLE 5    ALLOCATIONS** ... 47
| 5.1 | Individual Accounts | 47 |
| 5.2 | Allocation of Contributions | 48 |
| 5.3 | Withdrawals, Transfers and Distributions | 48 |
| 5.4 | Determination of Net Earnings or Losses | 48 |
| 5.5 | Method of Valuation | 49 |
| 5.6 | Allocation of Net Earnings or Losses | 49 |
| 5.7 | Responsibilities of the Plan Administrator | 50 |

5.8    Responsibilities of Employer ................................................ 50

**ARTICLE 6     LIMITATIONS ON ALLOCATIONS** .................. 51
6.1    Employer Maintains One Plan ........................................... 51
6.2    Employer Maintains Other Qualified Defined Contribution Plans ......... 53
6.3    Employer Maintains Qualified Defined Benefit Plan ......... 54
6.4    Definitions ............................................................ 55

**ARTICLE 7     VESTING** .......................................................... 62
7.1    Vesting of Contributions .................................................. 62
7.2    Amendments Affecting Benefits .......................................... 65

**ARTICLE 8     DISTRIBUTION OF BENEFITS** ......................... 67
8.1    Method of Distribution .................................................... 67
8.2    Distribution Procedures .................................................. 71
8.3    Death of the Participant .................................................. 73
8.4    Designation of Beneficiary ............................................... 74
8.5    Spousal Consent .......................................................... 76
8.6    Distribution Only Upon Written Instructions ....................... 77
8.7    Direct Rollover ........................................................... 77
8.8    Distribution for Minor or Incompetent Beneficiary ............... 79
8.9    Location of Participant or Beneficiary Unknown ................... 80
8.10   Distribution of Excess Salary Deferral Contributions ............ 80
8.11   Distribution of Excess Aggregate Contributions ................... 82

**ARTICLE 9     WITHDRAWALS AND PLAN LOANS** ................... 85
9.1    Withdrawals .............................................................. 85
9.2    Loans to Participants ..................................................... 88
9.3    Terms and Conditions of Loans ......................................... 89
9.4    Loan Policy .............................................................. 91
9.5    Hardship Withdrawals .................................................... 91

**ARTICLE 10    TOP-HEAVY** .................................................... 96
10.1   Applicability of Top-Heavy Rules ...................................... 96
10.2   Top-Heavy Status ........................................................ 96
10.3   Top-Heavy Ratio ........................................................ 96
10.4   Top-Heavy Requirements ................................................ 98
10.5   Definitions ............................................................... 101

**ARTICLE 11    ADMINISTRATION** .......................................... 103
11.1   Duties and Responsibilities of Fiduciaries;
       Allocation of Fiduciary Responsibility .............................. 103
11.2   Powers and Responsibilities of the Plan
       Administrator ............................................................ 103
11.3   Allocation of Duties and Responsibilities ........................... 106
11.4   Appointment of the Plan Administrator .............................. 106

11.5   Expenses ................................................................................107
11.6   Liabilities ..............................................................................107
11.7   Claim Procedure ...................................................................107

**ARTICLE 12      TRUST FUND; POWERS, DUTIES AND IMMUNITIES OF**
                 **TRUSTEE** ............................................................110
12.1   Receipt of Contributions by Trustee .....................................110
12.2   Investment Responsibility .....................................................110
12.3   Appointment of Investment Manager ....................................110
12.4   Directed Investments ............................................................110
12.5   No Prohibited Transaction ....................................................113
12.6   Duties of Trustee Concerning Contributions .........................113
12.7   Distribution of Benefits by the Trustee .................................113
12.8   Contributions Held in Trust ..................................................114
12.9   Investment of Trust Fund ......................................................114
12.10  Powers and Duties of Trustee ...............................................115
12.11  Application of Trust Funds ....................................................118
12.12  Litigation .............................................................................119
12.13  Accounting by Trustee ..........................................................119
12.14  Reliance on Written Instructions ..........................................119
12.15  Disputes ...............................................................................120
12.16  Duties of Trustee Limited .....................................................120
12.17  Notices to Trustee .................................................................120
12.18  Notices to Employer or Participants .....................................120
12.19  Resignation, Removal and Appointment of Trustee ..............121
12.20  No Diversion of Trust ...........................................................121

**ARTICLE 13      INDEMNIFICATION OF FIDUCIARIES** .........................122
13.1   Rights To Indemnification .....................................................122
13.2   Advancement of Expenses .....................................................122
13.3   Determination of Right to Indemnity ....................................123
13.4   Other Rights ..........................................................................124

**ARTICLE 14      PARTICIPATING EMPLOYERS** ......................................125
14.1   Adoption by Other Employers ...............................................125
14.2   Adoption of Plan and Trust by Affiliated
       Employer ...............................................................................125
14.3   Designation of Agent .............................................................125
14.4   Amendment ...........................................................................126
14.5   Discontinuance of Participation ............................................126
14.6   Plan Administrator's Authority ..............................................126

**ARTICLE 15      CHANGE IN EMPLOYMENT** ...........................................127
15.1   Participant Transfer from Employer to Employer ..................127
15.2   Participant Transfer from Employer to Affiliated
       Non-Employer ........................................................................127

15.3   Employee Credit for Services With Affiliated Non-
       Employer ...................................................................................128

**ARTICLE 16        AMENDMENT, TERMINATION AND MERGER** ..........................129
16.1   Establishment of Plan ..............................................................129
16.2   Power of Amendment ...............................................................129
16.3   Failure of Plan to Qualify Upon Amendment .........................129
16.4   Plan Termination; Discontinuance of Employer
       Contributions ...........................................................................129
16.5   Merger, Consolidation, or Transfer ........................................130

**ARTICLE 17        MISCELLANEOUS** ..........................................................131
17.1   Exclusive Benefit of Participants and
       Beneficiaries ............................................................................131
17.2   Nonguarantee of Employment .................................................132
17.3   Rights to Trust Assets .............................................................132
17.4   Nonalienation of Benefits .......................................................133
17.5   Bonding ....................................................................................133
17.6   Employer's and Trustee's Protective Clause ...........................134
17.7   Insurer's Protective Clause .....................................................134
17.8   Receipt and Release for Payments ..........................................134
17.9   Construction .............................................................................135
17.10  Discretionary Acts To Be Non-Discriminatory .....................135
17.11  Titles and Headings .................................................................136
17.12  Counterparts .............................................................................136
17.13  USERRA ..................................................................................136

**APPENDICES**
Appendix A .........................................................................................138
Appendix B .........................................................................................141
Appendix C .........................................................................................143
Appendix D .........................................................................................145

### SAVINGS PLAN FOR EMPLOYEES
### AND PARTNERS
### OF PRICEWATERHOUSECOOPERS LLP

AGREEMENT, effective, as of the first day of October, 1994, by and between Price Waterhouse LLP (the "Firm"), and, as of the first day of July 1998, by and between PricewaterhouseCoopers LLP (the "Firm"), a partnership with its principal office in New York, NY, and the Trustees.

### WITNESSETH

WHEREAS, effective as of the first day of October 1985, Price Waterhouse LLP adopted this defined contribution retirement plan, as the Savings Plan for Employees and Partners of Price Waterhouse LLP (the "Plan"); and

WHEREAS, this Plan was previously amended and restated effective as of the first day of October 1994; and

WHEREAS, effective as of the first day of July 1998, PricewaterhouseCoopers LLP adopted this Plan, as the Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP; and

WHEREAS, effective as of the first day of April 1999, the Coopers & Lybrand LLP Multi-investment Accumulation Plan and the Kwasha Lipton Savings Plan were merged into this

Plan; and

WHEREAS, it is intended that this Plan meet the requirements of Sections 401 and 501 of the Internal Revenue Code of 1986, as amended; and

WHEREAS, this Plan must be amended to reflect changes in the law and for other purposes.

NOW, THEREFORE, it is agreed that, effective as of the first day of October, 1995, the Firm hereby amends and restates this Plan, to read as follows:

# ARTICLE 1

## PURPOSE AND APPLICABILITY OF PLAN

1.1     Purpose of Plan.  The purpose of the Plan shall be to provide benefits to Participants upon retirement, death, and, in certain events, upon termination of employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal when he ceases to be active, upon the terms and conditions, and subject to the limitations, contained herein.

1.2     Applicability of Plan.  The provisions of the Plan shall apply only to persons employed by the Employer on and after its Effective Date or the effective date of any amendment hereto.

## ARTICLE 4

## CONTRIBUTIONS

4.1     After-Tax Contributions.  A Participant may elect to have the Employer make After-Tax Contributions on his or her behalf to the Participant's After-Tax Contributions Subaccount.  The amount of After-Tax Contributions that may be made on behalf of a Participant shall be an integral percent (as selected by the Participant) that is not less than one percent (1%) nor more than twenty percent (20%) (sixteen percent (16%) prior to July 1, 1999) of the Compensation otherwise payable to the Participant during a payroll period.  Notwithstanding the foregoing, effective for Plan Years beginning on or after October 1, 1998, only for the first Plan Year during which a Participant is eligible to participate in the Plan, the Participant may elect to have the Employer make such Contributions on his or her behalf as are previously described in this Section in an amount that is not more than one hundred percent (100%) of the net Compensation otherwise payable to the Participant during the payroll period(s) during the month of September during the first Plan Year during which the Participant is first eligible to participate in the Plan.  For purposes of the preceding sentence, net Compensation is the amount such that the sum of net Compensation and other withholdings equals the gross compensation of the Participant.  Notwithstanding the foregoing, effective January 1, 2002 and thereafter, the amount of After-Tax Contributions that may be made on behalf of a Participant for a payroll period during a Plan Year shall be an integral percent (as selected by the Participant) that is not less than one percent (1%) nor more than one hundred percent (100%) of the net Compensation otherwise payable to the Participant during such payroll period.  For purposes of the preceding sentence, net Compensation is the amount such that the sum of net Compensation and other withholdings

29

equals the gross Compensation of the Participant.  Effective for Plan Years ending on or after

September 30, 1999, Partners and Principals shall not be eligible to make After-Tax

Contributions.

    4.2  Salary Deferral Contributions.  A Participant may elect to have the Employer make

Salary Deferral Contributions on his or her behalf to the Participant's Salary Deferral

Contributions Subaccount by executing a Salary Deferral Agreement, as described in Section 4.6.

The amount of Salary Deferral Contributions that may be made on behalf of a Participant shall

be an integral percent (as selected by the Participant in his or her Salary Deferral Agreement) that

is not less than one percent (1%) nor more than twenty percent (20%) (sixteen percent (16%)

prior to July 1, 1999) of the Compensation otherwise payable to the Participant during a payroll

period.  Notwithstanding the foregoing, effective for Plan Years beginning on or after October 1,

1998, only for the first Plan Year during which a Participant is eligible to participate in the Plan,

the Participant may elect to have the Employer make such Contributions on his or her behalf as

are previously described in this Section in an amount that is not more than one hundred percent

(100%) of the net Compensation otherwise payable to the Participant during the payroll period(s)

during the month of September during the first Plan Year during which the Participant is first

eligible to participate in the Plan.  For purposes of the preceding sentence, net Compensation is

the amount such that the sum of net Compensation and other withholdings equals the gross

compensation of the Participant.  Notwithstanding the foregoing, effective January 1, 2002 and

thereafter, the amount of Salary Deferral Contributions that may be made on behalf of a

Participant for a payroll period during a Plan Year shall be an integral percent (as selected by the

Participant) that is not less than one percent (1%) nor more than one hundred percent (100%) of

the net Compensation otherwise payable to the Participant during such payroll period. For purposes of the preceding sentence, net Compensation is the amount such that the sum of net Compensation and other withholdings equals the gross Compensation of the Participant. No Participant shall be permitted to have Salary Deferral Contributions made to this Plan that in combination with elective deferral contributions made to any other plan maintained by the Employer exceed, during any taxable year of the Participant, the dollar limitation in Section 402(g) of the Code in effect at the beginning of such taxable year. Elective deferral contribution shall mean any Employer contribution made to a plan at the election of the Participant, in lieu of cash compensation, and shall include salary deferral contributions made to a plan pursuant to a salary deferral agreement. With respect to any taxable year of a Participant, a Participant's elective deferral contributions are the sum of all Employer contributions made on behalf of such Participant pursuant to an election to defer under any qualified cash or deferred arrangement, as described in Section 401(k) of the Code, any simplified employee pension cash or deferred arrangement, as described in Section 402(h)(1)(B) of the Code, any eligible deferred compensation plan under Section 457 of the Code, any plan as described under Section 501(c)(18) of the Code, and any employer contribution made on behalf of such Participant for the purchase of an annuity contract under Section 403(b) of the Code pursuant to a salary reduction agreement. With respect to a Participant who made a hardship withdrawal during the immediately preceding calendar year, such dollar limitation in Section 402(g) of the Code shall be reduced by the Participant's Salary Deferral Contributions made during such immediately preceding calendar year. Any income on elective deferral contributions that are required to be returned to a Participant because of the limitations of Section 402(g) of the Code shall be calculated as provided for in Section 1.402(g)-1(e)(5)(iii) of the Income Tax Regulations with no

31

"gap period".

4.3    Limitation on Amount of Participant Contributions.  The sum of After-Tax

Contributions and Salary Deferral Contributions that may be made on behalf of a Participant

shall be an integral percent (as selected by the Participant) that is not less than one percent (1%)

nor more than twenty percent (20%) (sixteen percent (16%) prior to July 1, 1999) of the

Compensation otherwise payable to the Participant during a payroll period.  Notwithstanding the

foregoing, effective for Plan Years beginning on or after October 1, 1998, only for the first Plan

Year during which a Participant is eligible to participate in the Plan, the Participant may elect to

have the Employer make such Contributions on his or her behalf as are previously described in

this Section in an amount that is not more than one hundred percent (100%) of the net

Compensation otherwise payable to the Participant during the payroll period(s) during the month

of September during the first Plan Year during which the Participant is first eligible to participate

in the Plan.  For purposes of the preceding sentence, net Compensation is the amount such that

the sum of net Compensation and other withholdings equals the gross compensation of the

Participant.  Notwithstanding the foregoing, effective January 1, 2002 and thereafter, the sum of

After-Tax Contributions and Salary Deferral Contributions that may be made on behalf of a

Participant for a payroll period during a Plan Year shall be an integral percent (as selected by the

Participant) that is not less than one percent (1%) nor more than one hundred percent (100%) of

the net Compensation otherwise payable to the Participant during such payroll period. For

purposes of the preceding sentence, net Compensation is the amount such that the sum of net

Compensation and other withholdings equals the gross Compensation of the Participant.

Effective for the Plan Year beginning October 1, 1998 and Plan Years thereafter, a Salary

32

Deferral Agreement that was executed by a Partner, Principal, Limited Equity Partner, or Limited

Equity Principal prior to his death shall remain in effect for the remainder of the Plan Year

during which such Partner, Principal, Limited Equity Partner, or Limited Equity Principal dies

with respect to any Compensation payable to, or on behalf of, such Partner, Principal, Limited

Equity Partner, or Limited Equity Principal.

4.4   Employer Matching Contributions.  The Employer shall make Matching

Contributions to a Participant's Matching Contributions Subaccount on behalf of a Participant

who has had After-Tax Contributions, Salary Deferral Contributions, or both, made on his or her

behalf for a payroll period in an amount equal to twenty-five percent (25%) of the Participant's

Basic Contribution for such payroll period; provided, however, that no Matching Contributions

shall be made on behalf of a Participant who is a Partner, Principal, Limited Equity Partner, or

Limited Equity Principal.  Notwithstanding the foregoing, effective for Plan Years beginning on

or after October 1, 1998, (i) for the first Plan Year during which a Participant (who is not a

Partner, Principal, Limited Equity Partner, or Limited Equity Principal) is eligible to participate

in the Plan and for any Plan Year during which a Participant (who is a Partner, Principal, Limited

Equity Partner, or Limited Equity Principal) participates in the Plan, the Matching Contribution

shall be in an amount equal to two hundred percent (200%) of the Participant's Basic

Contribution, and (ii) for Plan Years ending prior to October 1, 2000 such Matching Contribution

for a Participant who is a Partner, Principal, Limited Equity Partner, or Limited Equity Principal

shall be made to his Matching Contributions Subaccount under the Profit Sharing Plan for

Partners of PricewaterhouseCoopers LLP and shall not be made under this Plan.  Effective only

for the Plan Year beginning October 1, 1998, for purposes of determining the amount of a Basic

33

Contribution for a Participant (who is a Partner or Principal) such Participant's Basic Contribution shall include amounts that were contributed as salary reduction contributions to the Coopers & Lybrand L.L.P. Multi-investment Accumulation Plan after December 31, 1998 and as salary reduction or after-tax contributions to the Kwasha Lipton Savings Plan after September 30, 1998. Notwithstanding the foregoing, a Participant who: (1) was a partner or principal of Coopers & Lybrand L.L.P. on June 30, 1998 (but excluding an individual who was previously a principal of Applied Decision Analysis, Inc. notwithstanding that he may have been a principal of Coopers & Lybrand L.L.P. on June 30, 1998) shall not be eligible for a Matching Contribution in any amount whatsoever for the Plan Years ended September 30, 1999 and September 30, 2000; and (2) is a Partner or Principal and who was an employee of Coopers & Lybrand L.L.P. on June 30, 1998 (including an individual who was previously a principal of Applied Decision Analysis, Inc. even if he was not an employee of Coopers & Lybrand L.L.P. on June 30, 1998) shall have only amounts contributed to this Plan after April 30, 1999 considered for purposes of his Matching Contribution for the Plan Year ended September 30, 1999. Any Matching Contribution that would have been made for a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal who dies during a Plan Year shall nonetheless be made for his behalf. In the case of a Participant who becomes a Partner or Principal during a Plan Year after having been a Participant in the Plan during such Plan Year as other than a Partner or Principal, no Matching Contribution shall be made with respect to any Compensation of such Participant for that portion of the Plan Year after which he becomes a Partner or Principal. In the case of a Participant who during a Plan Year is directly engaged by the Employer as a Partner or Principal (i.e., without previously having been an Employee during such Plan Year), such Participant shall not be eligible for a Matching Contribution in any amount

34

whatsoever if the date of such engagement is between July 1st and September 1st. For Plan Years ending prior to October 1, 2001, in no event shall a Matching Contribution be made for a Participant who is a Partner, Principal, Limited Equity Partner or Limited Equity Principal for a Plan Year unless a Salary Deferral Contribution Subaccount is maintained under this Plan for such Participant on October 1 of the immediately following Plan Year. Any Matching Contributions that are not vested upon a Participant's termination of employment, or in the case of a Participant who is a Partner, Principal, Limited Equity Partner, Limited Equity Principal when he ceases to be active, for reasons other than death or disability, as provided in Section 7.1(b)(2), shall be used to reduce Matching Contributions to this Plan that are otherwise required to be made.

4.5     Discrimination Test for Salary Deferral Contributions.

(a)     Discrimination Tests. For each Plan Year, the Plan Administrator shall ensure that one of the following tests is satisfied:

(i)     the Actual Deferral Percentage for all Highly Compensated Employees for the Plan Year does not exceed the Actual Deferral Percentage for all other Participants for the Plan Year multiplied by 1.25; or

(ii)     the Actual Deferral Percentage for all Highly Compensated Employees for the Plan Year does not exceed the Actual Deferral Percentage for all other Participants for the Plan Year multiplied by 2.0, provided that the Actual Deferral Percentage for all Highly Compensated Employees does not exceed the Actual Deferral Percentage for all other Participants by more than two (2) percentage points for the Plan Year.

(b)     Actual Deferral Percentage. For purposes of this Section 4.5, "Actual

35

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed

on the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By: _____    Date: 8/15/02
    John F. Carter
    U.S. Partner Affairs Leader

TRUSTEE                          TRUSTEE

_____    _____    _____    _____
Marsha R. Cohen    Date    Roger C. Hindman    Date

TRUSTEE                          TRUSTEE

_____    _____    _____    _____
Peter K. Kelly    Date    Richard R. Kilgust    Date

TRUSTEE                          TRUSTEE

_____    _____    _____    _____
Wendy L. Kornreich    Date    Robert C. Morris Jr.    Date

TRUSTEE                          TRUSTEE

_____    _____    _____    _____
Robert P. Sullivan    Date    Randal S. Vallen    Date

TRUSTEE

_____    _____
Brett D. Yacker    Date

G:\lets\DRAFT\Nacron\PW Plans\PwC Savings Plan for EEs and Prtnrs 20020107.doc

137

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By: _____    Date: _____

John F. Carter
U.S. Partner Affairs Leader

TRUSTEE

_____    8/15/02
Marsha R. Cohen                      Date

TRUSTEE

_____    _____
Peter K. Kelly                          Date

TRUSTEE

_____    _____
Wendy L. Kornreich                  Date

TRUSTEE

_____    _____
Robert P. Sullivan                   Date

TRUSTEE

_____    _____
Brett D. Yacker                       Date

TRUSTEE

_____    _____
Roger C. Hindman                   Date

TRUSTEE

_____    _____
Richard R. Kilgust                   Date

TRUSTEE

_____    _____
Robert C. Morris Jr.                Date

TRUSTEE

_____    _____
Randal S. Vallen                    Date

G:\lcls\DRAFT\Nacron\PW Plans\PwC Savings Plan for EEs and Prtnrs 20020107.doc

137

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By: _____    Date: _____

John F. Carter
U.S. Partner Affairs Leader

TRUSTEE                                    TRUSTEE

_____    Date              _____    Date
Marsha R. Cohen                         Roger C. Hindman

TRUSTEE                                    TRUSTEE

_____    8-16-02            _____    Date
Peter K. Kelly       Date              Richard R. Kilgust

TRUSTEE                                    TRUSTEE

_____    Date              _____    Date
Wendy L. Kornreich                      Robert C. Morris Jr.

TRUSTEE                                    TRUSTEE

_____    Date              _____    Date
Robert P. Sullivan                      Randal S. Vallen

TRUSTEE

_____    Date
Brett D. Yacker

G:\lebs\DRAFT\Nacron\PW Plans\PwC Savings Plan for EEs and Prtnrs 20020107.doc

137

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By: _____     Date: _____

John F. Carter
U.S. Partner Affairs Leader

| TRUSTEE | | TRUSTEE | |
| --- | --- | --- | --- |
| _____ | _____ | _____ | _____ |
| Marsha R. Cohen | Date | Roger C. Hindman | Date |

| TRUSTEE | | TRUSTEE | |
| --- | --- | --- | --- |
| _____ | _____ | _____ | _____ |
| Peter K. Kelly | Date | Richard R. Kilgust | Date |

| TRUSTEE | | TRUSTEE | |
| --- | --- | --- | --- |
| *Wendy L. Kornreich* | 8/15/02 | _____ | _____ |
| Wendy L. Kornreich | Date | Robert C. Morris Jr. | Date |

| TRUSTEE | | TRUSTEE | |
| --- | --- | --- | --- |
| _____ | _____ | _____ | _____ |
| Robert P. Sullivan | Date | Randal S. Vallen | Date |

| TRUSTEE | |
| --- | --- |
| _____ | _____ |
| Brett D. Yacker | Date |

G:\\ebs\DRAFT\Nacron\PW Plans\PwC Savings Plan for EEs and Prtnrs 20020107.doc

137

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By: _____    Date: _____

John F. Carter
U.S. Partner Affairs Leader

TRUSTEE                                          TRUSTEE

_____    _____    _____    _____
Marsha R. Cohen                  Date        Roger C. Hindman               Date

TRUSTEE                                          TRUSTEE

_____    _____    _____    _____
Peter K. Kelly                   Date        Richard R. Kilgust             Date

TRUSTEE                                          TRUSTEE

_____    _____    _____    _____
Wendy L. Kornreich               Date        Robert C. Morris Jr.           Date

TRUSTEE                                          TRUSTEE

_____    8/5/02      _____    _____
Robert P. Sullivan               Date        Randal S. Vallen               Date

TRUSTEE

_____    _____
Brett D. Yacker                  Date

G:\\ebs\DRAFT\Nacron\PW Plans\PwC Savings Plan for EEs and Prtnrs 20020107.doc

137

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By: _____     Date: _____
John F. Carter
U.S. Partner Affairs Leader

TRUSTEE

_____    _____
Marsha R. Cohen          Date

TRUSTEE

_____    _____
Peter K. Kelly           Date

TRUSTEE

_____    _____
Wendy L. Kornreich       Date

TRUSTEE

_____    _____
Robert P. Sullivan       Date

TRUSTEE

_____    8/15/0~
Brett D. Yacker          Date

TRUSTEE

_____    _____
Roger C. Hindman         Date

TRUSTEE

_____    _____
Richard R. Kilgust       Date

TRUSTEE

_____    _____
Robert C. Morris Jr.     Date

TRUSTEE

_____    _____
Randal S. Vallen         Date

G:\ebs\DRAFT\Nacron\PW Plans\PwC Savings Plan for EEs and Prtnrs 20020107.doc

137

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By: _____    Date: _____
   John F. Carter
   U.S. Partner Affairs Leader

TRUSTEE                                     TRUSTEE

_____    _____    _____    _____
Marsha R. Cohen          Date        Roger C. Hindman          Date

                                                                 8·15·02

TRUSTEE                                     TRUSTEE

_____    _____    _____    _____
Peter K. Kelly           Date        Richard R. Kilgust        Date

TRUSTEE                                     TRUSTEE

_____    _____    _____    _____
Wendy L. Kornreich       Date        Robert C. Morris Jr.      Date

TRUSTEE                                     TRUSTEE

_____    _____    _____    _____
Robert P. Sullivan       Date        Randal S. Vallen          Date

TRUSTEE

_____    _____
Brett D. Yacker          Date

G:\\ebs\DRAFT\Nacron\PW Plans\PwC Savings Plan for EEs and Prtnrs 20020107.doc

137

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By: _____    Date: _____

      John F. Carter
      U.S. Partner Affairs Leader

TRUSTEE                                              TRUSTEE

_____  _____        _____  _____
Marsha R. Cohen         Date        Roger C. Hindman        Date

TRUSTEE                                              TRUSTEE

_____  _____        _____  _____
Peter K. Kelly              Date        Richard R. Kilgust         Date

                                                     8/15/02

TRUSTEE                                              TRUSTEE

_____  _____        _____  _____
Wendy L. Kornreich     Date        Robert C. Morris Jr.       Date

TRUSTEE                                              TRUSTEE

_____  _____        _____  _____
Robert P. Sullivan       Date        Randal S. Vallen          Date

TRUSTEE

_____  _____
Brett D. Yacker           Date

G:\ebs\DRAFT\Nacron\PW Plans\PwC Savings Plan for EEs and Prtnrs 20020107.doc

137

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By: _____    Date: _____
John F. Carter
U.S. Partner Affairs Leader

TRUSTEE                                TRUSTEE

_____  _____    _____  _____
Marsha R. Cohen        Date        Roger C. Hindman        Date

TRUSTEE                                TRUSTEE

_____  _____    _____  _____
Peter K. Kelly         Date        Richard R. Kilgust      Date

TRUSTEE                                TRUSTEE

_____  _____    _Robert C. Morris_  _8/16/02_
Wendy L. Kornreich     Date        Robert C. Morris Jr.    Date

TRUSTEE                                TRUSTEE

_____  _____    _____  _____
Robert P. Sullivan     Date        Randal S. Vallen        Date

TRUSTEE

_____  _____
Brett D. Yacker        Date

G:\\ebs\DRAFT\Nacron\PW Plans\PwC Savings Plan for EEs and Prtnrs 20020107.doc

137

IN WITNESS WHEREOF, the Firm and the Trustees have caused this Plan to be executed on the dates indicated below to be effective as of the dates stated above.

PricewaterhouseCoopers LLP

By: _____    Date: _____
John F. Carter
U.S. Partner Affairs Leader

TRUSTEE                                          TRUSTEE

_____    _____        _____    _____
Marsha R. Cohen         Date            Roger C. Hindman        Date

TRUSTEE                                          TRUSTEE

_____    _____        _____    _____
Peter K. Kelly          Date            Richard R. Kilgust       Date

TRUSTEE                                          TRUSTEE

_____    _____        _____    _____
Wendy L. Kornreich      Date            Robert C. Morris Jr.     Date

TRUSTEE                                          TRUSTEE

_____    _____        _____    _8/16/0_
Robert P. Sullivan      Date            Randal S. Vallen         Date

TRUSTEE

_____    _____
Brett D. Yacker         Date

G:\\ebs\DRAFT\Nacron\PW Plans\PwC Savings Plan for EEs and Prtnrs 20020107.doc