## EXHIBIT F

**Transcript of Deposition of Timothy Laurent (November 3, 2005) (excerpts)**

TIMOTHY D. LAURENT

Page 1

```
 1              IN THE DISTRICT COURT OF THE UNITED STATES
                   FOR THE DISTRICT OF COLUMBIA
 2

 3

 4    TIMOTHY D. LAURENT, on behalf    )
      of himself and on behalf of all  )
 5    others similarly situated,       )
                  Plaintiff,           )
 6                                     ) Civil Action
                  -vs-                 ) No. 05-1291 (PLF)
 7                                     )
      PRICEWATERHOUSECOOPERS, LLP,     )
 8    et al.,                          )
                  Defendants.          )
 9

10

11

12              Videotaped deposition of TIMOTHY D. LAURENT
13    taken before NADINE J. WATTS, CSR, RPR, and Notary
14    Public, pursuant to the Federal Rules of Civil Procedure
15    for the United States District Courts pertaining to the
16    taking of depositions, at Suite 5900, 200 East Randolph
17    Drive, in the City of Chicago, Cook County, Illinois,
18    commencing at 9:39 o'clock a.m. on the 3rd day of
19    November, A.D., 2005.

20

21

22

23

24
```

COPY


LEGALINK®
A WORDWAVE COMPANY

LegaLink Manhattan
420 Lexington Avenue, Suite 2108
New York, NY 10170

tel (212) 557-7400
tel (800) 325-3376
fax (212) 692-9171

www.legalink.com

GLOBAL COURT REPORTING · LEGAL VIDEOGRAPHY · TRIAL SERVICES

TIMOTHY D. LAURENT

Page 21

| | | |
|---|---|---|
| 09:59:29 | 1 | Q   Okay.  And -- But you didn't participate in the |
| 09:59:32 | 2 | savings plan for employees of PwC; is that correct? |
| 09:59:36 | 3 | A   I would have to check my records. |
| 09:59:38 | 4 | Q   Have you heard of the segregated 401-K plan? |
| 09:59:42 | 5 | A   Yes. |
| 09:59:43 | 6 | Q   Did you participate in the segregated 401-K |
| 09:59:45 | 7 | plan? |
| 09:59:45 | 8 | A   No. |
| 09:59:53 | 9 | Q   In this lawsuit you understand you've been |
| 09:59:56 | 10 | designated as a class representative? |
| 09:59:58 | 11 | A   Yes. |
| 10:00:00 | 12 | Q   And you're seeking to represent a class of other |
| 10:00:04 | 13 | participants in the PwC plans? |
| 10:00:06 | 14 | A   Correct. |
| 10:00:07 | 15 | Q   Are you seeking to represent participants who |
| 10:00:12 | 16 | participated in the segregated 401-K plan? |
| 10:00:15 | 17 | A   Everyone who had participated in all three |
| 10:00:18 | 18 | plans. |
| 10:00:19 | 19 | Q   Are you seeking to represent any partners who |
| 10:00:26 | 20 | participated in any of the PwC plans? |
| 10:00:30 | 21 | A   No. |
| 10:00:40 | 22 | Q   Are any of your family members participants in |
| 10:00:44 | 23 | cash balance plans? |
| 10:00:45 | 24 | A   Not that I'm aware of. |

TIMOTHY D. LAURENT

Page 42

| | | |
|---|---|---|
| 10:30:13 | 1 | reviewing PwC's plans, are you? |
| 10:30:16 | 2 | MR. GOTTESDIENER:  Objection. |
| 10:30:16 | 3 | THE WITNESS:  I'm not an expert in actuarial |
| 10:30:20 | 4 | sciences and, thus, I'm not claiming that. |
| 10:30:24 | 5 | MR. SMITH:  Q   Okay.  Are you claiming that PwC |
| 10:30:28 | 6 | misled the IRS or any other government regulators |
| 10:30:31 | 7 | regarding its plans? |
| 10:30:33 | 8 | MR. GOTTESDIENER:  Objection. |
| 10:30:34 | 9 | THE WITNESS:  The plan is unlawful to my knowledge. |
| 10:30:37 | 10 | I do not know that they led or misled any government |
| 10:30:39 | 11 | body. |
| 10:30:40 | 12 | MR. SMITH:  Q   Okay.  Other than your lawyer, |
| 10:30:50 | 13 | Mr. Gottesdiener, can you identify anyone who has said |
| 10:30:55 | 14 | that there is anything wrong or illegal with PwC's |
| 10:30:58 | 15 | plans? |
| 10:31:01 | 16 | A   I'm not aware of anybody. |
| 10:31:07 | 17 | Q   You're not aware of any current or former PwC |
| 10:31:10 | 18 | employees who think there's anything wrong or illegal |
| 10:31:13 | 19 | with PwC's plans? |
| 10:31:15 | 20 | A   At this moment, I'm not aware of any. |
| 10:31:20 | 21 | Q   Do you have any understanding of what a cash |
| 10:31:22 | 22 | balance plan is? |
| 10:31:23 | 23 | A   Yes. |
| 10:31:24 | 24 | Q   And what's your understanding? |

TIMOTHY D. LAURENT

Page 47

| | | |
|---|---|---|
| 10:36:45 | 1 | A   I'd like the plan legalized. |
| 10:36:48 | 2 | Q   And what specifically would make it legalized? |
| 10:36:50 | 3 | A   There are 10 counts, and I can refer you to |
| 10:36:53 | 4 | those 10 counts. |
| 10:36:54 | 5 | Q   I'm asking you, sitting here today, can you tell |
| 10:36:55 | 6 | me -- |
| 10:36:56 | 7 | MR. GOTTESDIENER:  Objection.  He wasn't finished |
| 10:36:57 | 8 | with his answer. |
| 10:36:58 | 9 | MR. SMITH:  Q   I'm asking you, sitting here today, |
| 10:37:01 | 10 | can you tell me what exactly you want changed in the |
| 10:37:04 | 11 | RBAP? |
| 10:37:04 | 12 | MR. GOTTESDIENER:  If you know. |
| 10:37:06 | 13 | THE WITNESS:  Basically I would like it legalized by |
| 10:37:08 | 14 | not breaking the rules of the reseller tax law. |
| 10:37:11 | 15 | MR. SMITH:  Q   And what amendments need to be made |
| 10:37:13 | 16 | in your view to make the plan legal? |
| 10:37:17 | 17 | MR. GOTTESDIENER:  Objection, mischaracterizes his |
| 10:37:19 | 18 | testimony. |
| 10:37:20 | 19 | THE WITNESS:  As I said, there are several different |
| 10:37:22 | 20 | areas.  One being the phony retirement age.  I'd like |
| 10:37:26 | 21 | that fixed.  There's also a disproportionate amount of |
| 10:37:31 | 22 | money that the partners receive as compared to the call |
| 10:37:34 | 23 | it rank and file normal PwC employees. |
| 10:37:37 | 24 | MR. SMITH:  Q   And how would you like the |

TIMOTHY D. LAURENT

Page 52

| 10:42:35 | 1 | Q   You were secret or -- I didn't quite hear.  It |
| 10:42:38 | 2 | was secret? |
| 10:42:39 | 3 | A   These discussions of your investments was no one |
| 10:42:43 | 4 | else's business. |
| 10:42:43 | 5 | Q   Okay.  So you never discussed any of the plans |
| 10:42:47 | 6 | with any of the other employees of PwC? |
| 10:42:50 | 7 | A   Not that I'm aware of. |
| 10:42:51 | 8 | Q   And did you ever discuss any of PwC's plans with |
| 10:42:55 | 9 | any of the people who are in human resources or |
| 10:42:59 | 10 | responsible for benefits at PwC? |
| 10:43:02 | 11 | A   I don't recall. |
| 10:43:04 | 12 | Q   All right.  Are there any other employees or |
| 10:43:15 | 13 | former employees that you've talked with since you left |
| 10:43:19 | 14 | PwC about PwC's plans? |
| 10:43:22 | 15 | A   Not that I'm aware of. |
| 10:43:24 | 16 | Q   Okay.  While you were at PwC you never heard |
| 10:43:31 | 17 | anyone say that PwC's plans were not beneficial or were |
| 10:43:39 | 18 | illegal, did you? |
| 10:43:41 | 19 | A   I don't recall anyone saying it was illegal. |
| 10:43:42 | 20 | Q   And did you recall anyone saying while you were |
| 10:43:46 | 21 | at PwC that the plans were not beneficial to employees? |
| 10:43:52 | 22 | A   I don't believe I heard that. |
| 10:44:03 | 23 | Q   Since you left PwC have you heard anything from |
| 10:44:07 | 24 | any current or former employees saying that the plans |

**TIMOTHY D. LAURENT**

Page 53

| | | |
|---|---|---|
| 10:44:11 | 1 | were illegal or not beneficial? |
| 10:44:14 | 2 | A   No. |
| 10:44:21 | 3 | Q   Have you discussed your lawsuit and the relief |
| 10:44:24 | 4 | you're seeking in your complaint with any of the current |
| 10:44:27 | 5 | employees of PwC to see if they agree with the changes |
| 10:44:32 | 6 | that you're proposing in the complaint of PwC's plans? |
| 10:44:36 | 7 | A   No. |
| 10:44:36 | 8 | MR. GOTTESDIENER:  Objection. |
| 10:44:44 | 9 | MR. SMITH:  Q   How did you -- What was your |
| 10:44:46 | 10 | understanding of how the RBAP worked when you first |
| 10:44:50 | 11 | started, you know, participating in the plan? |
| 10:44:53 | 12 | A   At that time I understood it to be a pension |
| 10:44:56 | 13 | plan. |
| 10:44:56 | 14 | Q   Okay.  And what -- Did you have any further |
| 10:44:59 | 15 | understanding? |
| 10:45:02 | 16 | A   No. |
| 10:45:02 | 17 | Q   Okay.  And when you say you understood it to be |
| 10:45:04 | 18 | a pension plan, what do you mean by that? |
| 10:45:08 | 19 | A   I understood it to be a typical defined benefit |
| 10:45:11 | 20 | plan where there was a hypothetical amount of money that |
| 10:45:15 | 21 | was calculated via a formula. |
| 10:45:20 | 22 | Q   And when you say a hypothetical amount of money, |
| 10:45:22 | 23 | what do you mean by that? |
| 10:45:23 | 24 | A   The account balance is hypothetical. |

TIMOTHY D. LAURENT

Page 54

| | | |
|---|---|---|
| 10:45:28 | 1 | Q   And why do you say it's hypothetical? |
| 10:45:30 | 2 | A   For a true legal defined benefit plan, the money |
| 10:45:36 | 3 | must be taken out to retirement age. |
| 10:45:40 | 4 | Q   So when you -- |
| 10:45:41 | 5 | A   Accrued. |
| 10:45:42 | 6 | Q   When you started investing in the RBAP, did you |
| 10:45:46 | 7 | understand that you were selecting investment measures |
| 10:45:53 | 8 | and that those would be used to value your account |
| 10:45:56 | 9 | balance, but you weren't actually investing in the |
| 10:45:58 | 10 | funds? |
| 10:45:59 | 11 | MR. GOTTESDIENER:  Objection, states a fact not in |
| 10:46:01 | 12 | evidence. |
| 10:46:01 | 13 | THE WITNESS:  I did not understand that. |
| 10:46:02 | 14 | MR. SMITH:  Q   Okay.  And why -- What was your |
| 10:46:07 | 15 | understanding of the investment measures? |
| 10:46:13 | 16 | MR. GOTTESDIENER:  Objection. |
| 10:46:13 | 17 | THE WITNESS:  I'll refer you to my last answer.  I |
| 10:46:15 | 18 | did not understand it. |
| 10:46:16 | 19 | MR. SMITH:  Q   I mean, did you -- |
| 10:46:18 | 20 | A   At that time. |
| 10:46:18 | 21 | Q   Did you ask anybody about investment measures to |
| 10:46:21 | 22 | try to get an understanding of how the plan worked? |
| 10:46:25 | 23 | A   It didn't seem important at the time. |
| 10:46:27 | 24 | Q   How did you choose the investment measures that |

TIMOTHY D. LAURENT

Page 55

| | | |
|---|---|---|
| 10:46:30 | 1 | you chose for the RBAP? |
| 10:46:32 | 2 | MR. GOTTESDIENER:  Objection, states a fact not in |
| 10:46:33 | 3 | evidence. |
| 10:46:37 | 4 | THE WITNESS:  I don't believe I selected. |
| 10:46:40 | 5 | MR. SMITH:  Q   Oh, okay.  Did you just go with a |
| 10:46:43 | 6 | default investment measure under the RBAP? |
| 10:46:46 | 7 | MR. GOTTESDIENER:  Same objection. |
| 10:46:47 | 8 | THE WITNESS:  I didn't purposefully take the |
| 10:46:48 | 9 | default.  I was unaware that I could make a selection at |
| 10:46:51 | 10 | that time. |
| 10:46:52 | 11 | MR. SMITH:  Q   Okay.  There would be participants |
| 10:46:55 | 12 | though that would be aware that you could select from |
| 10:46:59 | 13 | the investment measures; is that your understanding? |
| 10:47:03 | 14 | MR. GOTTESDIENER:  Objection.  Go ahead. |
| 10:47:04 | 15 | THE WITNESS:  Perhaps. |
| 10:47:04 | 16 | MR. SMITH:  Q   And there would be participants who |
| 10:47:07 | 17 | actually did select different investment measures from |
| 10:47:09 | 18 | the options available? |
| 10:47:11 | 19 | MR. GOTTESDIENER:  Calls for speculation.  Go ahead. |
| 10:47:13 | 20 | THE WITNESS:  Probably. |
| 10:47:14 | 21 | MR. SMITH:  Q   Are you seeking to represent |
| 10:47:17 | 22 | participants who chose different investment measures |
| 10:47:20 | 23 | than you did under the RBAP? |
| 10:47:23 | 24 | A   I'm seeking to represent everyone who |

TIMOTHY D. LAURENT

Page 56

| | | |
|---|---|---|
| 10:47:26 | 1 | participated in the plans. |
| 10:47:27 | 2 | Q   And so that would include people who chose |
| 10:47:30 | 3 | different investment measures? |
| 10:47:31 | 4 | A   Correct. |
| 10:47:32 | 5 | Q   And would -- Are you also seeking to represent |
| 10:47:35 | 6 | people who varied the types of investment measures that |
| 10:47:40 | 7 | they chose in the RBAP over time? |
| 10:47:42 | 8 | A   Changing your investment doesn't affect the |
| 10:47:46 | 9 | unlawfulness of all the accounts involved. |
| 10:47:48 | 10 | Q   Well, I know that's your position.  My |
| 10:47:49 | 11 | question's just whether -- |
| 10:47:51 | 12 | MR. GOTTESDIENER:  Just answer his questions. |
| 10:47:53 | 13 | MR. SMITH:  Q   -- you're going to seek to represent |
| 10:47:56 | 14 | those people in your lawsuit who have changed their |
| 10:47:59 | 15 | investment measures over time. |
| 10:48:01 | 16 | A   Yes, I seek to represent them. |
| 10:48:02 | 17 | Q   Okay. |
| 10:48:08 | 18 | MR. GOTTESDIENER:  Is this a good time for a break |
| 10:48:10 | 19 | maybe? |
| 10:48:10 | 20 | MR. SMITH:  Yes, maybe.  I mean, he's got ten |
| 10:48:12 | 21 | minutes on the video.  Why don't I ask a few more |
| 10:48:14 | 22 | questions and then we'll change the video and take a |
| 10:48:17 | 23 | break.  Is that okay? |
| 10:48:19 | 24 | MR. GOTTESDIENER:  That's fine with us. |

TIMOTHY D. LAURENT

Page 66

| | | |
|---|---|---|
| 11:18:30 | 1 | Q   What money did you leave on the table from the |
| 11:18:32 | 2 | 401-K plan? |
| 11:18:33 | 3 | A   Due to unlawful calculations, I received only |
| 11:18:35 | 4 | the hypothetical account balance. |
| 11:18:39 | 5 | Q   Well, you understand that there was an actual |
| 11:18:44 | 6 | account plan balance in the 401-K plan, right? |
| 11:18:47 | 7 | A   In the 401-K, yes, they defined contribution. |
| 11:18:49 | 8 | Q   Yes.  And so I'm just wondering what was the |
| 11:18:51 | 9 | money that you're claiming from the 401-K plan? |
| 11:18:54 | 10 | A   Mismanaged funds. |
| 11:18:56 | 11 | Q   And what were the mismanaged funds? |
| 11:18:59 | 12 | A   As I stated previous -- |
| 11:19:01 | 13 | MR. GOTTESDIENER:  Asked and answered.  Go ahead. |
| 11:19:02 | 14 | I'm sorry. |
| 11:19:03 | 15 | THE WITNESS:  As I stated previously. |
| 11:19:05 | 16 | MR. SMITH:  Q   And what were they? |
| 11:19:07 | 17 | A   I said previously that the funds were |
| 11:19:10 | 18 | mismanaged.  PwC had the wherewithal. |
| 11:19:15 | 19 | Q   And can you give me a dollar amount of the money |
| 11:19:17 | 20 | you're owed from the RBAP? |
| 11:19:19 | 21 | A   I cannot. |
| 11:19:19 | 22 | Q   Can you tell me a dollar amount of the money |
| 11:19:21 | 23 | you're owed from the 401-K plan? |
| 11:19:24 | 24 | A   I cannot. |

**TIMOTHY D. LAURENT**

Page 67

| | | |
|---|---|---|
| 11:19:25 | 1 | Q   Can you tell me the dollar amount that any |
| 11:19:29 | 2 | former or current participant is owed from the -- either |
| 11:19:33 | 3 | the PwC -- any of the three PwC plans? |
| 11:19:40 | 4 | A   My understanding is it will be up to the judge. |
| 11:19:40 | 5 | Q   But you can't tell me a specific dollar amount |
| 11:19:42 | 6 | any participant is owed under any of the PwC plans? |
| 11:19:47 | 7 | A   I don't have a specific number. |
| 11:19:48 | 8 | Q   Okay.  On the dates though, you do recall that |
| 11:20:01 | 9 | at least generally your participation in both plans |
| 11:20:05 | 10 | began in 1999, is that correct, of the PwC plans? |
| 11:20:10 | 11 | A   That sounds correct. |
| 11:20:19 | 12 | Q   What was your understanding about how the 401-K |
| 11:20:22 | 13 | plan worked when you started participating in it? |
| 11:20:25 | 14 | A   My understanding, it was a typical defined |
| 11:20:29 | 15 | contribution plan. |
| 11:20:31 | 16 | Q   And did you -- You selected the investments that |
| 11:20:35 | 17 | you put your money into in the 401-K plan? |
| 11:20:38 | 18 | A   I selected the investments where the -- from the |
| 11:20:40 | 19 | predefined list of opportunities. |
| 11:20:42 | 20 | Q   And did you research those investments before |
| 11:20:45 | 21 | you selected them in the 401-K plan? |
| 11:20:48 | 22 | A   I believe that I made a research, yes. |
| 11:20:54 | 23 | Q   Okay.  And did you ever voice any objection |
| 11:20:58 | 24 | while you were at PwC to the options you were given |

TIMOTHY D. LAURENT

Page 72

| | | |
|---|---|---|
| 11:25:19 | 1 | MR. SMITH:  Q   Okay.  Can you tell me what |
| 11:25:22 | 2 | alternative investment measures you're proposing for the |
| 11:25:26 | 3 | RBAP? |
| 11:25:27 | 4 | A  I'm not an expert in that field. |
| 11:25:29 | 5 | Q  Sitting here today, can you identify any |
| 11:25:31 | 6 | investment measure that you think should be substituted |
| 11:25:34 | 7 | for the ones that are currently used in the RBAP? |
| 11:25:38 | 8 | A  Not sitting here today. |
| 11:25:46 | 9 | Q  Do you have any understanding about why PwC |
| 11:25:50 | 10 | adopted the RBAP? |
| 11:25:52 | 11 | A  I do not know their understanding. |
| 11:26:00 | 12 | Q  Do you claim there's any difference in the way |
| 11:26:02 | 13 | the RBAP or 401-K plan worked for partners as compared |
| 11:26:06 | 14 | to employees? |
| 11:26:07 | 15 | A  My understanding is the partners get a |
| 11:26:10 | 16 | disproportionately large return. |
| 11:26:13 | 17 | Q  And what do you mean by disproportionately large |
| 11:26:17 | 18 | return? |
| 11:26:17 | 19 | A  An example, the 401-K plan and the segregated |
| 11:26:21 | 20 | normal plan. |
| 11:26:26 | 21 | Q  I'm not -- I didn't quite understand your |
| 11:26:28 | 22 | answer.  Could you explain -- |
| 11:26:30 | 23 | MR. GOTTESDIENER:  Objection. |
| 11:26:30 | 24 | MR. SMITH:  Q  -- what exactly you mean by the |

TIMOTHY D. LAURENT

Page 118

| | | |
|---|---|---|
| 13:01:10 | 1 | actual plan documents when you were at PwC? |
| 13:01:13 | 2 | A  I understood that, yes. |
| 13:01:15 | 3 | Q  All right.  Have you ever seen any of the |
| 13:01:22 | 4 | summary plan descriptions for any of the plans? |
| 13:01:25 | 5 | A  Yes. |
| 13:01:27 | 6 | Q  Did you see any of them while you were at PwC? |
| 13:01:30 | 7 | A  I believe so. |
| 13:01:31 | 8 | Q  Okay.  Do you remember which -- what years' |
| 13:01:36 | 9 | summary plan descriptions you saw? |
| 13:01:39 | 10 | A  I'm sure I would have looked at the 401-K |
| 13:01:41 | 11 | summary plan. |
| 13:01:42 | 12 | Q  Did you ever look at the RBAP's summary plan |
| 13:01:46 | 13 | description while you were at PwC? |
| 13:01:47 | 14 | A  I'm not aware that I did. |
| 13:01:49 | 15 | Q  Okay.  Are you seeking to represent people who |
| 13:01:52 | 16 | did look at the summary plan description and |
| 13:01:56 | 17 | participated in the RBAP? |
| 13:01:58 | 18 | A  Yes. |
| 13:02:02 | 19 | Q  Have you subsequently looked at any of the SPDs? |
| 13:02:07 | 20 | A  I have looked at the summary plans, yes. |
| 13:02:09 | 21 | Q  Okay.  And was that for purposes of this |
| 13:02:11 | 22 | lawsuit? |
| 13:02:12 | 23 | A  Yes. |
| 13:02:19 | 24 | Q  Do you contend that you were misled by the SPDs |

TIMOTHY D. LAURENT

Page 119

| | | |
|---|---|---|
| 13:02:22 | 1 | in any way? |
| 13:02:24 | 2 | A   No. |
| 13:02:25 | 3 | Q   Do you contend that any plan participates were |
| 13:02:27 | 4 | misled by the SPDs in any way? |
| 13:02:29 | 5 | A   I don't know. |
| 13:02:33 | 6 | Q   If there were people who were misled by the |
| 13:02:36 | 7 | SPDs, and I understand you don't know whether there |
| 13:02:38 | 8 | were, would you be seeking to represent them as well in |
| 13:02:43 | 9 | your lawsuit? |
| 13:02:45 | 10 | A   I'd like to see representation for everyone who |
| 13:02:48 | 11 | was a participant of the plans. |
| 13:02:50 | 12 | Q   And that includes people, if they exist, who |
| 13:02:52 | 13 | were misled by the SPDs? |
| 13:02:55 | 14 | A   Yes. |
| 13:02:55 | 15 | Q   Are you bringing -- Do you know if you're |
| 13:03:02 | 16 | bringing a claim on behalf of the class alleging that |
| 13:03:02 | 17 | the SPD misled participants? |
| 13:03:02 | 18 | A   I'm not aware of that. |
| 13:03:06 | 19 | Q   You don't believe that you are or you just don't |
| 13:03:10 | 20 | know? |
| 13:03:12 | 21 | A   Ask the question again, please. |
| 13:03:13 | 22 | Q   Are you bringing a claim on behalf of the class |
| 13:03:16 | 23 | alleging that the SPD misled participants in the class? |
| 13:03:20 | 24 | A   No. |

TIMOTHY D. LAURENT

Page 123

| | | |
|---|---|---|
| 13:07:21 | 1 | Q   Are you relying on anybody else's expertise |
| 13:07:23 | 2 | regarding the theories that you've advanced in your |
| 13:07:27 | 3 | complaint other than your lawyer's? |
| 13:07:28 | 4 | A   If I was presented with some interesting |
| 13:07:30 | 5 | information, I would read it. |
| 13:07:32 | 6 | Q   Well, I'm just asking, are you relying on anyone |
| 13:07:35 | 7 | else's expertise, you know, like an independent expert's |
| 13:07:38 | 8 | expertise to -- regarding the theories you're advancing |
| 13:07:43 | 9 | in your complaint other than what Mr. Gottesdiener has |
| 13:07:46 | 10 | told you? |
| 13:07:46 | 11 | A   No. |
| 13:07:47 | 12 | MR. GOTTESDIENER:  Well -- Okay.  Go ahead. |
| 13:07:50 | 13 | MR. SMITH:   Q   Did you ever at any point in time |
| 13:07:58 | 14 | request any additional information from PwC beyond -- |
| 13:08:01 | 15 | regarding the plans beyond what they normally provide to |
| 13:08:06 | 16 | employees? |
| 13:08:07 | 17 | A   No. |
| 13:08:14 | 18 | Q   Okay.  Can you tell me how you claim your |
| 13:08:20 | 19 | benefits should be calculated under the RBAP? |
| 13:08:23 | 20 | MR. GOTTESDIENER:  Asked and answered. |
| 13:08:25 | 21 | THE WITNESS:  I'd have to refer you to my previous |
| 13:08:27 | 22 | testimony. |
| 13:08:28 | 23 | MR. SMITH:  Q   Well, I'm just wondering -- I may |
| 13:08:30 | 24 | have asked you, but I'm just wondering if you can tell |

TIMOTHY D. LAURENT

Page 124

| | | |
|---|---|---|
| 13:08:33 | 1 | me what's the formula that should be used in calculating |
| 13:08:36 | 2 | your benefits under either of the plans? |
| 13:08:39 | 3 | A   The RBAP formula is extremely complicated.  I |
| 13:08:42 | 4 | couldn't begin to explain it. |
| 13:08:49 | 5 | Q   Okay.  Well, did you review the motion for class |
| 13:08:49 | 6 | certification that your lawyer filed in this case? |
| 13:08:51 | 7 | A   Yes. |
| 13:09:17 | 8 | Q   Okay.  Can you tell me whether the formula for |
| 13:09:20 | 9 | calculating benefits that you're asking for would vary |
| 13:09:26 | 10 | according to, you know, which participant you're doing |
| 13:09:30 | 11 | the calculation for? |
| 13:09:32 | 12 | A   I don't believe so. |
| 13:09:33 | 13 | Q   Would the -- You know that in the RBAP there was |
| 13:09:45 | 14 | an investment crediting rate based on what investment |
| 13:09:49 | 15 | measures you selected? |
| 13:09:50 | 16 | A   Uh-huh, I understand that now. |
| 13:09:52 | 17 | Q   Yes, now.  In the formula that you want |
| 13:09:57 | 18 | implemented through this lawsuit, would the investment |
| 13:10:00 | 19 | crediting rate be the same for all the participants or |
| 13:10:02 | 20 | would it differ for different participants? |
| 13:10:06 | 21 | MR. GOTTESDIENER:  Objection, lacks foundation.  Go |
| 13:10:08 | 22 | ahead, you can answer. |
| 13:10:10 | 23 | THE WITNESS:  As long as the plan is legalized, I -- |
| 13:10:14 | 24 | not more much than that. |

| 13:12:35 | 1 | simple mechanical calculations. Do you see that? |
| 13:12:38 | 2 | A   I see that. |
| 13:12:40 | 3 | Q   Can you tell me what the simple mechanical |
| 13:12:43 | 4 | calculations are that you're proposing to be used in |
| 13:12:46 | 5 | calculating participants' benefits in this lawsuit? |
| 13:12:50 | 6 | A   I cannot. |
| 13:12:53 | 7 | Q   Have you reviewed any other pleadings other than |
| 13:12:56 | 8 | the complaint and the motion for class certification? |
| 13:13:01 | 9 | MR. GOTTESDIENER:  A motion is not a pleading. |
| 13:13:02 | 10 | MR. SMITH:  Q   Or any other documents filed with |
| 13:13:05 | 11 | the court other than the complaint and the motion for |
| 13:13:08 | 12 | class certification.  Have you reviewed any others? |
| 13:13:10 | 13 | A   Yes. |
| 13:13:11 | 14 | Q   What have you reviewed? |
| 13:13:13 | 15 | A   I reviewed your -- excuse me, the PwC's |
| 13:13:18 | 16 | response. |
| 13:13:20 | 17 | Q   Response to what, do you recall?  Was it a |
| 13:13:25 | 18 | response to a motion for partial summary judgment that |
| 13:13:29 | 19 | the plaintiff filed or -- |
| 13:13:31 | 20 | A   I don't recall the exact title. |
| 13:13:32 | 21 | Q   And do you recall reviewing a motion to dismiss |
| 13:13:36 | 22 | your complaint filed by PwC? |
| 13:13:44 | 23 | I mean, if you don't recall, that's okay.  I'm |
| 13:13:47 | 24 | just wondering.  I might show you some of the things |

TIMOTHY D. LAURENT

Page 129

13:16:24  1        MR. GOTTESDIENER:  Objection.

13:16:25  2        THE WITNESS:  As a resultant of that formula, I do

13:16:27  3    not know if everyone will receive an increase or a

13:16:30  4    decrease.

13:16:30  5        MR. SMITH:  Q   Okay.  And you are saying that you

13:16:34  6    think that the formula should be the same for all

13:16:38  7    participants.  Is that true --

13:16:40  8        MR. GOTTESDIENER:  Objection.  Go ahead.

13:16:41  9        MR. SMITH:  Q   Is that true even though some

13:16:44  10   participants may have received -- may have actually had

13:16:47  11   large increases in their RBAP account and others may

13:16:51  12   actually had decreases in their RBAP account?

13:16:54  13       MR. GOTTESDIENER:  Objection.  Go ahead.

13:16:55  14       THE WITNESS:  To be fair, everyone should have the

13:16:57  15   same formula as they do today.

13:16:59  16       MR. SMITH:  Q   Are there any details of the formula

13:17:09  17   though that might differ?  For example, in calculating

13:17:14  18   investment measures, somebody may have invested in one

13:17:17  19   kind of investment measure and another person invested

13:17:20  20   in another kind of investment measure.

13:17:23  21           Would there be details regarding each

13:17:27  22   individual's investment measures that might vary and be

13:17:31  23   plugged into this formula you're proposing?

13:17:35  24       A   That knowledge is beyond mine.

TIMOTHY D. LAURENT

Page 135

| | | |
|---|---|---|
| 13:21:58 | 1 | illegal calculations in these plans and if those |
| 13:22:04 | 2 | calculations once corrected, perhaps. |
| 13:22:06 | 3 | MR. SMITH:  Q  But sitting here today, you can't |
| 13:22:08 | 4 | testify under oath that you're going to receive any |
| 13:22:11 | 5 | additional benefits under the formula that you're asking |
| 13:22:14 | 6 | the court to implement? |
| 13:22:15 | 7 | MR. GOTTESDIENER:  Asked and answered. |
| 13:22:17 | 8 | THE WITNESS:  I do not know the formula. |
| 13:22:19 | 9 | MR. SMITH:  Q  And so you can't tell me that you |
| 13:22:20 | 10 | would receive any increase in benefits under the formula |
| 13:22:24 | 11 | you're asking for from the court? |
| 13:22:26 | 12 | MR. GOTTESDIENER:  Argumentative, badgering. |
| 13:22:28 | 13 | THE WITNESS:  No. |
| 13:22:28 | 14 | MR. SMITH:  Q  And you can't tell me what specific |
| 13:22:47 | 15 | interest crediting rate you want implemented in |
| 13:22:49 | 16 | calculating your own benefits? |
| 13:22:51 | 17 | MR. GOTTESDIENER:  Asked and answered. |
| 13:22:52 | 18 | THE WITNESS:  Not at this time. |
| 13:22:54 | 19 | MR. SMITH:  Q  Can you tell me whether you want a |
| 13:22:57 | 20 | fixed crediting rate or one that varies over time in |
| 13:22:57 | 21 | calculating your personal benefits-- |
| 13:23:01 | 22 | MR. GOTTESDIENER:  Literally, asked and answered. |
| 13:23:02 | 23 | MR. SMITH:  Q  Let me ask the question first.  I'll |
| 13:23:04 | 24 | try again. |

TIMOTHY D. LAURENT

Page 136

| | | |
|---|---|---|
| 13:23:04 | 1 | Can you tell me whether you want a fixed |
| 13:23:07 | 2 | crediting rate or one that varies over time in |
| 13:23:10 | 3 | calculating your personal benefits under the PwC plan? |
| 13:23:14 | 4 | MR. GOTTESDIENER:  Asked and answered. |
| 13:23:15 | 5 | THE WITNESS:  Not at this time. |
| 13:23:16 | 6 | MR. SMITH:  Q  Okay.  Can you tell me whether the |
| 13:23:29 | 7 | investment crediting rate that you're trying to have the |
| 13:23:31 | 8 | court implement would depend on the individual |
| 13:23:34 | 9 | investment measures that participants selected while |
| 13:23:37 | 10 | they were participating in the plans? |
| 13:23:40 | 11 | MR. GOTTESDIENER:  Objection. |
| 13:23:46 | 12 | THE WITNESS:  Not at this time. |
| 13:23:47 | 13 | MR. SMITH:  Q  Okay.  In your view, would it be |
| 13:23:55 | 14 | appropriate or acceptable to you if your formula that |
| 13:23:58 | 15 | you're asking the court to implement resulted in a |
| 13:24:02 | 16 | higher rate of return for you, but a lower rate of |
| 13:24:05 | 17 | return for other participants in the plan? |
| 13:24:08 | 18 | MR. GOTTESDIENER:  Objection. |
| 13:24:09 | 19 | THE WITNESS:  Whatever is best for the class is what |
| 13:24:11 | 20 | I seek. |
| 13:24:11 | 21 | MR. SMITH:  Q  And so even if there's some members |
| 13:24:12 | 22 | of the class who would be disadvantaged by the relief |
| 13:24:17 | 23 | you're seeking from the court, that's okay as long as |
| 13:24:19 | 24 | the majority does better? |

TIMOTHY D. LAURENT

Page 137

| 13:24:22 | 1 | MR. GOTTESDIENER: Objection, not what we seek, |
| 13:24:23 | 2 | mischaracterization, calls for a legal conclusion. |
| 13:24:28 | 3 | THE WITNESS: I don't see how they could get less, |
| 13:24:30 | 4 | but I'm seeking what is best for the class. So if I |
| 13:24:33 | 5 | take less, that's fine. |
| 13:24:34 | 6 | MR. SMITH: Q So it would be okay with you if |
| 13:24:37 | 7 | certain participants, including yourself, received less |
| 13:24:42 | 8 | if your relief was implemented as long as the class as a |
| 13:24:45 | 9 | whole benefited because some other people receive more? |
| 13:24:48 | 10 | MR. GOTTESDIENER: Asked and answered, badgering, |
| 13:24:51 | 11 | argumentative with the witness. |
| 13:24:53 | 12 | THE WITNESS: As long as the class was better off, |
| 13:24:54 | 13 | yes. |
| 13:24:55 | 14 | MR. SMITH: Q Okay. Can you tell me what the |
| 13:25:02 | 15 | investment projection rate should have been in |
| 13:25:04 | 16 | calculating your lump sum distribution? |
| 13:25:08 | 17 | MR. GOTTESDIENER: Objection. |
| 13:25:08 | 18 | THE WITNESS: I cannot. |
| 13:25:09 | 19 | MR. SMITH: Q Okay. Do you claim that your |
| 13:25:17 | 20 | experience with the RBAP and the 401-K plan is |
| 13:25:22 | 21 | representative of other participants' experience? |
| 13:25:26 | 22 | A I believe as a participant, everyone else is a |
| 13:25:31 | 23 | participant by participating, yes. |
| 13:25:32 | 24 | Q Are there any ways other than just the fact that |

## EXHIBIT G

**Declaration of Theodore P. Senger**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TIMOTHY D. LAURENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 05-1291 (PLF) |
| vs. | ) | |
| | ) | Judge Paul L. Friedman |
| PRICEWATERHOUSECOOPERS LLP, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF THEODORE P. SENGER

Theodore P. Senger hereby states as true subject to penalty of perjury:

1.  I am the Assistant General Counsel in the Office of General Counsel for PricewaterhouseCoopers LLP ("PwC"). The facts set forth in this declaration are based on the books and records of PricewaterhouseCoopers LLP and are true to the best of my personal knowledge. If called to testify as a witness in this matter, I could and would testify as to the books and records of PricewaterhouseCoopers LLP and to the facts set forth in this declaration.

2.  Coopers & Lybrand LLP and Price Waterhouse LLP merged on July 1, 1998 to form PwC.

3.  PwC is a Delaware limited liability partnership with its principal place of business in New York.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 29, 2005.

Theodore P. Senger

## EXHIBIT H

**Plaintiff's Revised Objections and
Responses to Defendants' Interrogatories Nos. 8 and 9**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TIMOTHY D. LAURENT                              :
                                                :
On behalf of himself and on                     :
behalf of all others similarly situated,        :
                                                :
                            Plaintiff,          :    Civil Action No. 05-1291 (PLF)
            v.                                  :
                                                :
PRICEWATERHOUSECOOPERS LLP, *et al.*            :
                                                :
                                                :
                            Defendants.         :
                                                :

## PLAINTIFF'S REVISED OBJECTIONS AND RESPONSES TO DEFENDANTS' INTERROGATORIES NOS. 8 AND 9

Plaintiff, through undersigned counsel, hereby serves upon Defendants his revised objections and responses to Defendants' Interrogatories to Plaintiff Concerning Class Certification Nos. 8 and 9 as follows:

## Interrogatory No. 8

With respect to each count of the First Amended Class Action Complaint and with respect to each Plan at issue in that Complaint, identify the specific relief you seek on your own behalf and on behalf of the class you purport to represent.

## Revised Objections and Response to Interrogatory No. 8

Plaintiff objects to this Interrogatory as a premature contention interrogatory concerned largely with the issues of merits and relief. Defendants have ample information from the Complaint and other multiple submissions made by Plaintiff from which to understand the relief he seeks for himself and the proposed Class for purposes of responding to his motion for class certification. This interrogatory is also objectionable at least in part because it calls for disclosure of attorney-client and attorney-work product privileged information and/or because it directly or

indirectly seeks disclosure from Plaintiff's experts prior to the commencement of merits discovery and completion of fact discovery.

Subject to the foregoing objections, and based on information currently available to them, Plaintiff responds as follows:

Plaintiff contends under each Count of the Complaint that the harms suffered by him and each member of the proposed Class include that each member of the proposed Class (a) participated in retirement plans that violated ERISA and the Internal Revenue Code, (b) had his or her benefit accruals and benefit payments calculated under an unlawful benefit formula, and (c) suffered all other harms described in the Complaint. Plaintiff and members of the proposed Class are entitled to have their benefits calculated or re-calculated under lawful Plan terms as amended in a manner consistent with the illustrative amendments set forth below, and are entitled to all other appropriate relief as set forth below.

Thus, Plaintiff seeks for himself and the proposed Class and, where applicable, the Plans as a whole, all of the relief described in the Prayer for Relief set forth in the Complaint, and any and all other relief available to him, the proposed Class and the Plans, including:

A.     An order certifying this action a class action and undersigned counsel as class counsel pursuant to Fed. R. Civ. P. 23;

B.     Judgment against Defendants and on behalf of Plaintiff, the RBAP, and/or the Class; and

C.     An order awarding, declaring or otherwise providing Plaintiff, the RBAP and the Class all other such relief to which Plaintiff, the RBAP and the Class are or may be entitled whether or not specified herein.

D.     An order declaring that:

(1) Defendants violated and are violating ERISA's accrued benefit standards in the specific manners alleged in Counts One through Five and otherwise;

(2) The RBAP and the 401(k) Plans unlawfully discriminated and discriminate in the amount of contributions and benefits they provided and provide to PwC partners versus PwC's non-partner employees in the specific manners alleged in Counts Six and Seven and otherwise;

(3) The RBAP failed and fails to define its benefit formula in a sufficiently objective manner to meet the Plan's "definitely determinable" standard, Defendants cut back participants' protected benefits when they changed the "investment" options available to RBAP participants, and that Defendants engaged and are engaging in prohibited transactions and breaches of fiduciary and co-fiduciary duty in the manner in which they are purporting to set participants' benefit levels, as alleged in Counts Eight, Nine and Ten otherwise; and

(4) Defendants have breached their fiduciary and co-fiduciary duties in the investment of RBAP plan assets, causing the Plan large losses or lost investment return, as alleged in Count Eleven and otherwise;

E.     An order enjoining Defendants from continuing to violate the law and the terms of the Plans in manner alleged or referenced in this Complaint, reforming the Plans, and compelling Defendants to bring the terms and administration of the Plans into compliance with ERISA or the lawful provisions of the Plans *nunc pro tunc*;

F.     An order requiring Defendants to re-calculate the contributions and benefit amounts due under the terms of the Plans in accordance with the requirements of ERISA, and for the Plans to pay the difference, plus interest, to or on behalf of all Class members who received less in contributions and benefits or benefit accruals than the amount to which they are entitled;

3

G.    An order compelling the non-Plan Defendants to make the RBAP and the 401(k) Plans whole for all losses or lost investment return resulting from their breaches or prohibited transactions, and disgorgement of any benefit they received which is traceable to such breaches, restitution, and such other equitable or remedial or other relief as the Court may deem appropriate.

H.    An order awarding pre- and post-judgment interest.

I.    An order awarding attorney's fees on the basis of the common fund doctrine (and/or other applicable law, at Plaintiff's election), along with the reimbursement of the expenses incurred in connection with this action.

**Illustrative Amendments to the PwC RBAP**

The following draft amendments illustrate the form of amendments Plaintiff seeks or may seek, to bring the PwC RBAP (as amended and restated effective July 1, 1995) into compliance with ERISA and the Internal Revenue Code. All of the amendments are effective as of July 1, 1994. More complete, final proposed amendments will be provided in the relief stage of the litigation.

Count One – Failure to Pay Present Value of Accrued Benefits

1.    Amend Section 5.1 (definition of "Normal Retirement Benefit") to replace the term "Deemed Plan Interest Rate" with the term "ERISA-Required Projection Rate."

2.    Add a new Section 2.25A to read as follows:

2.25A  ERISA-Required Projection Rate.  Nine percent (9.0%), the approximate long-term market rate of return of a portfolio invested 70% in equities and 30% in debt securities.

3.    Amend Section 2.32 (definition of "Normal Retirement Age") to strike the words "earlier of the" and the words "or completes five (5) Years of Service".

4.    Make such other conforming amendments to the Plan as necessary to be consistent with amendments 1-4.

4

<u>Count Two – Age Discrimination Under ERISA § 204(b)(1)(G)</u>

5.    Amend the Plan to add a new Section 2.15A that reads as follows:

> 2.15A  <u>Additional Deemed Payroll Period Allocation to Avoid Age Discrimination Under ERISA § 204(b)(1)(G)</u>.  In addition to the Deemed Payroll Period Allocations credited pursuant to any other Section(s) of this Plan, each Participant shall receive an additional Deemed Payroll Period Allocation equal to the excess, if any, of (i) over (ii), where:
>
> > (i)    is an amount equal to the Actuarial Equivalent of the Normal Retirement Benefit the Participant would have received had he commenced benefit distributions at the end of the previous payroll period, and
> >
> > (ii)    is the Actuarial Equivalent of the Normal Retirement Benefit the Participant would receive if he commenced benefit distributions at the end of the current payroll period, disregarding any Payroll Period Allocations credited after the end of the previous payroll period.

6.    Make such other conforming amendments to the Plan as necessary to be consistent with amendment 5.

<u>Count Three – Age Discrimination Under ERISA § 204(b)(1)(H)</u>

In addition to amendments 1-6 above:

7.    Amend the Plan to add a new Section 2.15B that reads as follows:

> 2.15B  <u>Additional Deemed Payroll Period Allocation to Avoid Age Discrimination Under ERISA § 204(b)(1)(H)</u>.  In addition to the Deemed Payroll Period Allocation credited pursuant to any other Section(s) of this Plan, each Participant shall receive an additional Deemed Payroll Period Allocation equal to the excess, if any, of (i) over (ii), where:
>
> > (i)    is an amount equal to the Actuarial Equivalent of the Normal Retirement Benefit the Participant would have accrued under Section 2.15 during the pay period had the Participant's age been age 17 (the Plan's minimum eligibility age), and
> >
> > (ii)    is the Deemed Payroll Period Allocation in fact credited under the Plan, without regard to this Section .

8.    Make such other conforming amendments to the Plan as necessary to be consistent with amendment 7.

Count Four – Backloading

In addition to amendments 1-8 above:

9.     Amend the Plan to add a new Section 2.15C that reads as follows:

>        2.15C  Additional Deemed Payroll Period Allocation to Avoid Unlawful
> Backloading. In addition to the Deemed Payroll Period Allocations credited pursuant to
> any other Section(s) of this Plan, each Participant shall receive an additional Deemed
> Payroll Period Allocation equal to the excess, if any, of (i) over (ii), where:
>
>>        (i)     is an amount equal to the Actuarial Equivalent of the Normal
>>                Retirement Benefit the Participant would be required to accrue to
>>                comply with the ERISA anti-backloading standards set forth in
>>                Sections 204(b)(1)(A) – (b)(1)(C) of ERISA, and
>>
>>        (ii)    is the Deemed Payroll Period Allocation in fact credited under the
>>                Plan, without regard to this Section.

10.    Make such other conforming amendments to the Plan as necessary to be consistent with
amendment 9.

Count Five – Forfeiture of RBAP Normal Retirement Benefit

11.    Amend the Plan to add a new Section 2.15D that reads as follows:

>        2.15D  Additional Deemed Payroll Period Allocation to Avoid Unlawful Forfeiture
> of Normal Retirement Benefit. In addition to the Deemed Payroll Period Allocations
> credited pursuant to any other Section(s) of this Plan, each Participant who has attained
> Normal Retirement Age under the Plan shall receive an additional Deemed Payroll
> Period Allocation equal to the excess of (i) over (ii), where:
>
>>        (i)     is an amount equal to the Actuarial Equivalent of the Normal
>>                Retirement Benefit the Participant would have received had he
>>                commenced benefit distributions at the end of the immediately
>>                preceding payroll period, and
>>
>>        (ii)    is the Actuarial Equivalent of the Normal Retirement Benefit the
>>                Participant would receive if he commenced benefit distributions at the
>>                end of the current payroll period.

12.    Make such other conforming amendments to the Plan as necessary to be consistent with
amendment 11.

Count Six – Discrimination Against Rank-and-File Employees

13.    Amend the Plan to add a new Section 2.15E that reads as follows:

2.15E  Additional Deemed Payroll Period Allocation to Avoid Discrimination Under Code § 401(a)(4).  In addition to the Deemed Payroll Period Allocation credited pursuant to any other Section(s) of this Plan, each Participant shall receive an additional Deemed Payroll Period Allocation equal to the excess, if any, of (i) over (ii), where:

(i)  is the Deemed Payroll Period Allocation the Participant is required to accrue under Section 2.15 during the pay period to comply with Code § 401(a)(4) and the regulations thereunder, including Treasury Regulation § 1.401(a)(4)-1(c)(2), and

(ii)  is the Deemed Payroll Period Allocation in fact credited under the Plan, without regard to this Section .

14.  Make such other conforming amendments to the Plan as necessary to be consistent with amendment 13.

Count Seven – Interference with Attainment of Pension Rights

15.  [See Amendments 13 and 14]

Count Eight – No Objective Benefit Formula Under the RBAP

16.  Amend the first sentence of Section 2.14(a) of the Plan to read as follows:

(a) An increase or decrease to a Participant's Deemed Account Balance in accordance with his or her investment experience election from among the following choices:  [Insert a list specifically identifying the investment choices (by name) that were initially available under the Plan as of July 1, 1994.]

17.  Amend Section 2.14(a) of the Plan by adding the following new sentences following the first sentence, as amended, that reads as follows:

The list of investment choices set forth in the preceding sentence may be amended from time to time pursuant to Plan amendment adopted by the Firm pursuant to Section 15.2 of the Plan.  However, to comply with ERISA, the Code, and Section 15.2(b) of the Plan, in the event any investment choice is removed from the list, the removal of such choice shall be effective only prospectively, so that the investment choice remains available with respect to all benefits accrued under the Plan as of the date the investment choice is removed.  In the event any investment choice is no longer available because the investment no longer exists (*e.g.*, a mutual fund on the list is discontinued by the fund sponsor), such choice shall be replaced with a substantially similar choice identified by an independent fiduciary appointed by the Firm.

18.  Make such other conforming amendments to the Plan as necessary to be consistent with amendment 16-17.

Count Nine – Illegal Cutback Under the RBAP

19.    [See Amendments 16 through 18]

Count Ten – Fiduciary Breaches in Connection with Selection of RBAP Investment Measures

20.    [See Amendments 16 through 19]

Count Eleven – Fiduciary Breaches in Connection with RBAP Plan Investments

21.    [No Plan amendment needed.  ERISA and the Plan are sufficiently clear that assets in the Trust should not have been, and in the future should not be, invested in retail-priced mutual offered to Participants pursuant to Section 2.14, when when comparable or superior funds were available for a fraction of the cost.  See, e.g., Article 11, and specifically Sections 11.2, 11.8(e), 11.4, and 11.19.]

No Benefit Reductions

In no event shall the Accrued Benefit or the Normal Retirement Benefit of any Participant in the Plan (or any other accrued benefit under the Plan or any other pension plan subject to ERISA) be reduced as a result of the amendments above.

**Illustrative Amendments to the PwC Savings Plan**

The following draft amendments illustrate the form of amendments Plaintiff seeks or may

seek, to bring The Savings Plan for Employees and Partners of PricewaterhouseCoopers LLP

("PwC Savings Plan") into compliance with ERISA and the Internal Revenue Code.  All of the

amendments would be effective as of July 1, 1994.  More complete, final proposed amendments

will be provided in the relief stage of the litigation.

Count Seven – Discrimination Against Rank-and-File Employees

1.    Amend the second sentence of Section 4.4 (regarding employer matching contributions) to substitute the following for clause (i) of such sentence:

(i)  for any Plan Year during which a Participant participates in the Plan, the Matching Contribution shall be in an amount equal to two hundred percent (200%) of the Participant's Basic Contribution, and

2.    Amend Section 4.5 to add a new clause before the period in paragraph (iv) that reads as follows:  ", specifically including Treasury Regulation § 1.401(a)(4)-1(c)(2)."

3.    Amend Section 4.5 to add a new paragraph (vi) to the end thereof that reads as follows:

8

(vi)  The discrimination tests described in this Section 4.5 shall be applied to this Plan and the Savings Plan for Employees of PricewaterhouseCoopers LLP on an aggregated basis, as though the two plans were a single plan.

4.     Make such other conforming amendments to the Plan as necessary to be consistent with amendments 1 through 3.

<u>Count Seven – Interference with Attainment of Pension Rights</u>

5.     [See Amendments 1-4]

<u>Count Eleven – Fiduciary Breaches in Connection with 401(k) Plan Investments</u>

6.     [No Plan amendment needed.  ERISA and both 401(k) Plans are sufficiently clear that assets in the Trust should not have been, and in the future should not be, invested in the retail-priced funds offered to Participants when comparable or superior funds were available for a fraction of the cost.]

<u>No Benefit Reductions</u>

In no event shall the Account Balance or other accrued benefit of any participant in the Plan or The Savings Plan for Employees of PricewaterhouseCoopers LLP be reduced as a result of the amendments above.

**Interrogatory No. 9**

State the basis for your assertion that, if you prevail in the Litigation, "the different amounts participants will be due will be determined pursuant to simple, mechanical calculations" (Class Cert. Mot. & Mem. 29), and specify each component of that "simple mechanical calculation."

**Revised Objections and Response to Interrogatory No. 9**

Plaintiff objects to this Interrogatory as a premature contention interrogatory concerned largely with the issues of merits and relief. Defendants have ample information from the Complaint and other multiple submissions made by Plaintiff from which to understand the relief he seeks for himself and the proposed Class for purposes of responding to his motion for class certification. This interrogatory is also objectionable at least in part because it calls for disclosure of attorney-client and attorney-work product privileged information and/or because it directly or indirectly seeks disclosure from Plaintiffs' experts prior to the commencement of merits discovery and completion of fact discovery.

Subject to the foregoing objections, and based on information currently available to them, Plaintiffs respond as follows:

As set forth in the Revised Objections and Responses to Interrogatory No. 8, benefits should have been calculated and in the future should be calculated according to lawful formulae as described in the draft illustrative amendments. The calculations and their component parts are as described in the Revised Objections and Responses to Interrogatory No. 8. It is a simple, mechanical process for Defendants to substitute the legal for the illegal formulae. It is likewise a simple, mechanical process to re-use the same data points applicable to each individual participant's circumstances that were used to calculate participants' benefits initially to re-calculate those benefits in a lawful manner.

By:

_____

Eli Gottesdiener
**Gottesdiener Law Firm, PLLC**
Attorney for Plaintiff and Proposed Class
1025 Connecticut Avenue, N.W.
Suite 1000
Washington, D.C. 20036
Phone:        (202) 243-1000
Fax:          (202) 243-1001
E-mail address:  eli@gottesdienerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2005 I caused the Defendants to be served with a

copy of the foregoing Revised Objections and Responses to Defendants' Interrogatories to

Plaintiff Concerning Class Certification No. 8 and 9 by causing a copy of same to be served on

their counsel, listed below, by first-class mail as follows:

David E. Mendelson
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
(202) 879-5000 (phone)
(202) 879-5200 (fax)
dmendelson@kirkland.com

Counsel for Defendants PricewaterhouseCoopers LLP, PricewaterhouseCoopers LLP Board of
Partners and Principals, the Retirement Benefit Accumulation Plan for Employees of
PricewaterhouseCoopers LLP, the Savings Plan for Employees and Partners of
PricewaterhouseCoopers LLP, the Savings Plan for Employees of PricewaterhouseCoopers LLP,
the Administrative Committee to the Retirement Benefit Accumulation Plan for Employees of
PricewaterhouseCoopers LLP, the Administrative Committee to the Savings Plan for Employees
and Partners of PricewaterhouseCoopers LLP, the Administrative Committee to the Savings Plan
for Employees of PricewaterhouseCoopers LLP, Lawrence H. Anderson, John J. Barry, William
L. Bax, Michael J. Boberschmidt, W. Keith Booth, David J. Breen, Willard W. Brittain, Jay
Brodish, J. Frank Brown, Philip J. Clements, Ira Cohen, Marsha R. Cohen, Michael S. Collins,
Brian L. Cornell, James E. Daley, G. William Dauphinais, Jonathan J. Davies, Sherry T. Davis,
Samuel A. DiPiazza, Robert B. Dubner, John R. Dunleavy, J. Christopher Everett, Iris D.
Goldfein, Robert H. Herz, Roger C. Hindman, Stephen D. Higgins, Craig M. Jacobsen, Eugene S.
Katz, Scott W. Kaufman, Richard P. Kearns, Peter Kelly, Richard R. Kilgust, Wendy L.

11

Kornreich, James P. Kovacs,Frederic L. Laughlin, D. Leon Leonhardt, Keith D. Levingston, Dennis J. Lubozynski, Ronald T. Maheu, Philip P. Mannino, Anthony F. Martin, James L. McDonald, Donald A. McGovern, James P. McNally, Nicholas G. Moore, Robert C. Morris, Jr., Dennis M. Nally, Eldon Olson, Shaun F. O'Malley, Matthew O'Rourke, Gary Pell, Lawrence F. Portnoy, Louise A. Root, Denis J. Salamone, Robert M. Sarsany, Frank V. Scalia, James J. Schiro, Christine G. Snyder, Garrett L. Stauffer, George G. Strong Jr., Paul J. Sullivan, Robert P. Sullivan, Ann M. Thornburg, Randell S. Vallen, Francis J. Van Kirk, Peggy M. Vaughn, Gary W. Van Wagnen, Gerald M. Ward, Brett D. Yacker, and George J. Yost III.

Patrick James Attridge
KING & ATTRIDGE
39 West Montgomery Avenue
Rockville,MD 20850
(301) 279-0780 (phone)
(301) 279-2988 (fax)

Counsel for Defendants Donald T. Nicolaisen and Walter G. Ricciardi

_____
Eli Gottesdiener