## EXHIBIT J

**Ellen E. Schultz, *Suit Claims Pricewaterhouse Used 401(k) to Enrich Partners*, Wall St. Journal, Nov. 18, 2005, at C1**

1 of 6 DOCUMENTS

Copyright 2004 Factiva, a Dow Jones and Reuters Company
All Rights Reserved

(Copyright (c) 2004, Dow Jones & Company, Inc.)
The Wall Street Journal

November 18, 2004 Thursday

SECTION: Pg. C1

HEADLINE: Suit Claims Pricewaterhouse Used 401(k) to Enrich Partners

BYLINE: By Ellen E. Schultz

BODY:

A FORMER EMPLOYEE of PricewaterhouseCoopers LLP is suing the professional-services firm, saying it used its pension and 401(k) plans to enrich its partners at the expense of regular employees.

Among other things, the complaint says Pricewaterhouse provided partners with a 200% matching contribution in their 401(k)s, compared with 25% matches to other employees, and provided partners with outsize contributions to their so-called cash-balance pension accounts. Such disparate treatment, the suit alleges, runs afoul of federal pension guidelines.

The suit, filed early this month, follows a similar suit involving Pricewaterhouse and Bank of America Corp. It comes amid broader concerns about how companies deploy their pension plans, with some employers being accused of using plans to enhance their bottom lines or fatten the wallets of already well-compensated executives. It also comes in the wake of heightened government scrutiny of decisions made by employers and consultants regarding the management of benefits plans.

David Nestor, a spokesman for Pricewaterhouse, said the firm believes its plans are lawful and fair to employees. "It's also important to note that this lawsuit does not claim any loss of employee benefits, because there were none," he said.

The suit, filed by Timothy D. Laurent in federal court in the Southern District of Illinois in East St. Louis, Ill., Nov. 5, seeks class-action status. Mr. Laurent, a managing consultant, worked at Pricewaterhouse from 1995 to 2001.

According to Mr. Laurent's complaint, Price Waterhouse LLP, a predecessor of Pricewaterhouse, in July 1994 froze its traditional pension plan and set up a cash-balance plan. Four years later, when Price Waterhouse and Coopers & Lybrand merged to create the current firm, Coopers & Lybrand's traditional pension plan was converted into a cash-balance plan, and the two firms' plans merged in July 1999.

Traditional pension plans calculate benefits by multiplying years on the job by average salary, so benefits grow rapidly in employees' later years. In a cash-balance plan, employees instead have hypothetical accounts that grow with annual credits based on a percentage of current pay, plus interest.

According to Mr. Laurent's suit, instead of crediting employee cash-balance accounts with a preset interest formula pegged to returns on Treasury bills, plus 1% to 2%, as is common with cash balance plans, Pricewaterhouse instead required employees to "invest" the value of their accounts in hypothetical portfolios tracking the returns of investment funds similar to ones available in the 401(k) plan also available to employees.

This arrangement shifted investment risk to employees and created a conflict of interest, the suit claims: "The worse the rank-and-file performed in their account balances, the smaller the (plan) benefits would be." Meanwhile, Pricewaterhouse could invest the pension money for potentially higher returns. This violated fiduciary duty rules, the

Suit Claims Pricewaterhouse Used 401(k) to Enrich Partners The Wall Stre

suit says, because if the firm's own professional money managers believed there was a better way to invest the money, it should have told the participants in the plan.

Mr. Nestor said there were no breaches of fiduciary duty and that "each employee may do better or worse than the firm did through its investments." He said employees could choose among 16 investment options, including stable-value vehicles or riskier equity and fixed-income choices. "We believe the plans offer PwC employees benefits of flexibility and independent choice, through the ability to self-direct their investments," he added.

The suit also alleges that Pricewaterhouse took steps to provide the top-paid employees with an unfair share from the retirement savings plans.

While most employees receive annual "credits" to their cash-balance accounts ranging from 5% to 8% of their annual pay, partners can receive an amount necessary to generate a benefit equal at retirement to $140,000 to $165,000 a year for life, depending on the returns in the investment options the partners select, people familiar with the matter said.

Meanwhile, the suit says, partners also got a better deal in the 401(k). They could defer as much as the maximum allowed by law, $13,000 a year, and receive a 200% matching contribution, for a total annual accumulation of $39,000. By contrast, other employees receive a matching contribution of 200% only for the first month of participation in the plan, after which the amount falls to 25%.

To qualify for tax breaks, retirement plans such as 401(k)s aren't permitted to include only highly-paid employees, but also must provide a certain level of benefits for a broad swath of line managers and rank-and-file employees. To prove that they do this, companies must pass a "nondiscrimination" test that compares the percentages being accumulated by higher-paid and lower-paid workers.

The complaint says Pricewaterhouse was able to pass these tests by, among other things, providing lower-paid employees with the 200% match for the first month in which they participated in the 401(k) -- which, under the plan's rules, they weren't allowed to join until the last month of the year in which they are hired. This practice had the effect of making the contributions for lower-paid employees appear higher in December, which is when the firm "tested" the plan for discrimination.

The suit is related to another case pending in that court, Pothier v. Bank of America Corp., in which Pricewaterhouse is a co-defendant. That suit alleges that Bank of America forced employees to invest their pension accounts in hypothetical funds whose "returns" mirror those of proprietary investment funds managed by the bank.

Bank of America has said its actions were legal and that it will vigorously defend the suit. Last week, it disclosed that the Internal Revenue Service, which oversees pensions, has been conducting an audit of its pension plan. Bank of America is an audit client of Pricewaterhouse, which designed the bank's pension plan.

NOTES:
PUBLISHER: Dow Jones & Company Inc.

LOAD-DATE: December 6, 2004

## EXHIBIT K

**Vineeta Anand,**
***The courts: PwC sued over cash balance, 401(k); Class-action filing says partners manipulated plans for their benefit**, Pensions and Investments, February 21, 2005, at pg. 3*

2 of 2 DOCUMENTS

Copyright 2005 Crain Communications, Inc.
Pensions and Investments

**February 21, 2005, Monday**

**SECTION:** Pg. 3

**LENGTH:** 1488 words

**HEADLINE:** The courts: PwC **sued over cash balance,** 401(k); Class-action filing says partners manipulated plans for their benefit

**BYLINE:** Vineeta Anand

**BODY:**

EAST ST. LOUIS, Ill. – PricewaterhouseCoopers LLC might have been named earlier this year as one of the 100 best companies to work for by Fortune magazine, but its pension plan participants don't necessarily agree.

PwC and partners overseeing the pension and retirement plans have been hit with a class-action lawsuit alleging that they misused pension and retirement plans as tax shelters for well-heeled partners – at the expense of rank-and-file employees.

The suit was filed in federal district court in East St. Louis.

PwC's cash balance plan, with $1.4 billion in assets at the end of June 2003, and a 401(k) plan, with $1.6 billion in assets for the fiscal year ended Sept. 30, 2003, are at the heart of the suit. (A separate profit-sharing plan for partners is not affected.)

In amended documents filed on Jan. 28, the suit charges PwC and its partners with masterminding "a brazen, unlawful scheme ... to game the tax and pension laws in order to improperly pad the partners' retirement benefits and take-home pay at the expense of both rank-and-file PwC employees and the public."

The suit, brought by Timothy D. Laurent, a former employee, alleges that the firm – for years synonymous with creative cash-balance pension plans – deliberately violated age- and income-discrimination provisions of federal pension law. By "engaging in multiple layers of deception," the suit alleges, PwC and its partners reduced "benefits to the paid rank-and-file employees down to the bare minimum thought need(ed) to keep the shelter afloat."

A ruling in favor of Mr. Laurent and other participants could cost the firm hundreds of millions of dollars.

'Plans are lawful'

"For all the reasons that are discussed in the briefs, we believe that our plans are lawful and fully compliant with ERISA and we deny all the allegations in the lawsuit," said David Nestor, a PwC spokesman in New York.

Eli Gottesdiener, the Washington-based lawyer representing the plaintiffs, declined to comment.

Most cash balance plans permit employees, on paper, to "earn" returns linked to the interest rate on a Treasury bill or another conservative bond index. PwC contributed between 5% and 7% of pay to the rank-and-file employees' hypothetical accounts. The returns on these accounts were linked to 17 investment options, mirroring the choices available to them in their 401(k) plan (Pensions & Investments, May 17, 1999).

But according to the suit, PwC did not inform participants that their accounts existed only on paper and that their "investments" were not real. Employees were unaware that the underlying assets, like other defined benefit plans, were managed by investment management firms hired by the plan sponsor.

"The purpose was, among others, to conceal that the firm – the participants' fiduciary – was actually attempting to

The courts: PwC sued over cash balance, 401(k); Class-action filing says

capitalize on the participants' perceived inability to wisely invest, in order to make money or reduce pension expenses for the partners," the lawsuit charges.

Thus, the lower the returns employees earned on their paper investments, the more money the partners could split among themselves, the lawsuit alleges.

While federal pension law shields employers from liability for the investment performance of participants' 401(k) plan options, it does not apply to defined benefit plans.

The suit alleges that the plan used a different formula for determining benefits for partners.

Working backwards

Using the maximum annual pension benefit permitted under the tax law – $170,000 in 2005 – as the starting point for the calculations, each partner's annual pay credit was then determined by working backwards to come up with the discounted present value of the benefit, which became the annual employer contribution, the suit claimed. The suit said partners would accrue this maximum benefit over 10 years, so the employer contribution each year would amount to one-tenth of the target benefit.

"In fact, partners are guaranteed a benefit that approximates the maximum permitted by law, regardless of investment performance," the lawsuit alleges.

The PwC plan pegs the "normal retirement age" at five years of service, not at age 65. In theory, this would permit a 25-year-old to collect retirement benefits at age 30. But company documents stated the retirement age was 65, according to the suit.

The lawsuit charges that the real motive for using a contrived normal retirement age of five years of service – which coincides with the vesting period under the plan – is that it permits employers to pay departing employees a lump sum equal only to their hypothetical account balances, instead of performing tortuous calculations to determine the present value of benefits at age of 65.

Moreover, the Employee Retirement Income Security Act pegs so-called backloading to the accrual rate at "the normal retirement age." So, a short normal retirement age, such as five years of service, permits employers to give inordinately high benefits to employees with longer tenure.

'Normal retirement age'

Perhaps the most unique aspect of the five-year normal retirement age is that it permits older, longer-tenured partners to collect their retirement benefits and roll them over into individual retirement accounts. Federal pension law forbids employees from collecting retirement benefits while still working but allows payouts after "normal retirement age." That permitted the partners to collect lump sums from the pension plan and roll them over into IRAs, as if they had quit working.

There is no ceiling on rollover IRAs. The five-year normal retirement age provision of the PwC plan permitted the partners to circumvent the ceilings on IRA contributions and roll over millions of dollars in benefits while continuing to work at the firm.

The IRS has only recently begun to crack down on this practice.

In a proposed regulation issued last November, the IRS said: "Normal retirement age cannot be set so low as to be a subterfuge to avoid the requirements of Section 401(a) – which regulates non-discrimination – and, accordingly, normal retirement age cannot be earlier than the earliest age that is reasonably representative of a typical retirement age for the covered work force."

The problem is, the proposed regulation contradicts a provision in the tax law that permits employers to set normal retirement age as simply that designated under the terms of the pension plan, or age 65, whichever is earlier. And that would suggest the PwC plan fully complied with the law.

Paul T. Shultz, director, employee plans determinations redesign in the IRS' tax-exempt and government entities division, wouldn't say whether the IRS is investigating the PwC plan.

He did say IRS officials believe the regulator has the authority to clarify the definition of normal retirement age

The courts: PwC sued over cash balance, 401(k); Class-action filing says

through regulations, but he conceded that employers may challenge the IRS' authority to do so without legislation.

The maximum

Meanwhile, the suit alleges that PwC and some partners misused the 401(k) plan to ensure partners stashed the maximum permitted under the law – $14,000 in 2005. They did so by artificially boosting participation by new, low–paid employees, the suit said. Because the non–discrimination tests require participation by a large proportion of low–paid workers compared with the top executives, PwC let new employees participate only in the last month of the company's fiscal year. To induce participation, the company paid these new employees a 200% match, but only during that first month of participation. After that, the employer match dropped to 25%. The high percentage of participation by rank–and–file employees permitted the partners to contribute the maximum allowable to the plan.

Since the first month of participation by the new employees was also the last month of the company's fiscal year, the plan could pay partners a 200% match for the entire year and still pass the non–discrimination test. That means each partner who contributes $14,000 in 2005 will get a company match of $28,000.

It seems clear plaintiffs picked the U.S. District Court for the Southern District of Illinois because presiding Judge G. Patrick Murphy is widely viewed as sympathetic toward participants.

But PwC has asked him to dismiss the case on the grounds that the lawsuit should have been filed either in New York, where the company is based, or in Florida, where the plans are administered. PwC also seeks dismissal on the grounds that the lawsuit attempts a broad stretch to include alleged violations of the non–discrimination rules that are part of tax rules enforceable by the IRS for which participants cannot sue.

"I'm not aware of any lawsuits out there that have made this leap by reference," said Paul Strella, a consultant at Mercer Human Resource Consulting, Washington. "That is a big hurdle to get over."

**LOAD–DATE:** February 25, 2005

## EXHIBIT L

*Letters To The Editor*, Pensions and Investments, March 7, 2005, at pg. 13

Copyright 2005 Crain Communications, Inc.
Pensions and Investments

March 7, 2005, Monday

SECTION: Pg. 13

HEADLINE: LETTERS TO THE EDITOR; PwC has generous benefits open to all

BODY:

I was offended by the article "The courts: PwC sued over cash balance, 401(k)" (Feb. 21, page 3).

I am a PwC professional (not a partner) who participates in both of the plans mentioned. The article is misleading at best, erroneous in fact at worst. I am disappointed that an article would be published where the author did not take the time to verify the information included. I understand that certain internal information is not readily available, but in those situations it should be omitted.

Additionally, the article implies that the poor employees were duped by the complexity of the plans and the creativity of the partners, including not understanding that the investments include those of the management company. We audit these types of plans on a regular basis. The firm provides us with all financial information required by law, and if employees chose to read it, they would find all appropriate disclosures. Our employees are certainly of the caliber that we could look at the financial statements and see if they were not in line with the plan documents provided.

The discussion regarding how the established retirement age is beneficial to the partners completely disregards the fact that all "rank-and-file" employees also have the ability to take advantage of the same opportunities. Additionally, the 200% match discussed is, once again, available to those same employees. I personally took advantage of it my first year by saving up all year and contributing my entire salary for the month of September to get the match.

Finally, it is not required that the firm offer the generous benefits that it does to begin with. We are provided a fair retirement package that is designed to encourage professionals to remain at the firm, and rewards us for our tenure. When publishing an article critical of a company's retirement package, those employees affected by it should be interviewed as well in order to gain a balanced viewpoint.

Rosemary Geelan

senior associate

PricewaterhouseCoopers LLP

Denver

Disputing PwC's plans

Concerning "PwC sued over cash balance, 401(k)," a clarification: No court has ever considered whether an employer can adopt a fictitious normal retirement age for the sole purpose of evading ERISA's defined benefit plan standards. That issue is squarely presented in the pending Laurent suit because in a 1999 letter to the Internal Revenue Service, PricewaterhouseCoopers admitted its five-year retirement age was not "normal" and was specifically adopted to sidestep the so-called "whipsaw" rule. The mere fact that normal retirement age can be younger than age 65 does not mean that it can be "any" age, which is PwC's position (how about age 12?).

Yes, ERISA allows a plan to use a retirement age younger than 65 when the circumstances dictate - think airline pilots or NFL players. But neither ERISA nor the tax code defers to sham contract terms - which of course is what PwC's "retirement age" amounts to, nothing more. This is consistent with the IRS' long-standing ruling position, dating back almost 50 years (see Rev. Rul. 57-163) and as recently confirmed in proposed phased retirement regulations. Would the IRS really propose a regulation that it believed "contradicts a provision in the tax law"? We don't think so, and we're confident the courts will agree.

Eli Gottesdiener

Gottesdiener Law Firm PLLC

New York

Editor's note: Mr. Gottesdiener represents Timothy D. Laurent, a former PwC employee who brought the lawsuit, and the proposed class. A motion is pending to certify the lawsuit as a class action.

Schwarzenegger plan's harm

San Diego County Employees' Retirement Association's actuary was directed by the board to provide initial discussion on the potential impact of Assembly Constitutional Amendment 5, which is the same as Gov. Arnold Schwarzenegger's proposed initiative. According to the actuary's analysis, if the proposed changes to a defined contribution plan were to take effect, we would still have the existing defined benefit plan for all retired, deferred and current active members. However, what could change is that in June 2007, the DB plan would stop taking in new members. These new members' pensions would be funded under a DC plan, which does not provide the same kind of benefits offered by the current DB plan.

Under the split DB/DC scenario, the county would have to continue contributing to all active members on the DB side and start contributing to all new hires on the DC side. Retired, deferred and current members have every reason to worry. For one, active employees on the DB side could face a huge increase in their contribution rate. Secondly, the plan sponsor, which ultimately is liable to DB plan participants, could see a huge increase in contributions into the retirement plan. Faced with this increase, the plan sponsor may push to reduce ancillary benefits, such as the COLA and retiree health coverage.

Another alarming issue is that ACA 5 and the governor's proposed constitutional amendment, which is misleadingly named the Fair and Fiscally Responsible Public Employee Retirement Act, do not address disability components and death benefits included in our existing DB plan. Under a DC plan there are none.

If Gov. Schwarzenegger gets his way on public pensions, the family of a deputy killed in the line of duty would not get survivor benefits from the DC plan. Under ACA 5 and Gov. Schwarzenegger's scheme, all the family would receive is a funeral. The deputy's family would receive no death benefit from the deputy's DC plan and would have to rely upon other sources of savings, such as a 401(k) plan. Disabled deputies would fare no better. ACA 5 and Gov. Schwarzenegger's plan would eliminate disability retirements altogether. Instead, like the slain deputy's family, a deputy disabled on the job would have to rely on savings elsewhere, such as his/her 401(k) plan. Public employees who are disabled and forced to leave the work force could even end up on public assistance if they don't have a lot of savings or use up what they have. Ironically, plan sponsors seeking to offset the losses in survivor benefits by offering disability and life insurance for their deputies might end up with insurance premiums as large, if not more than, the cost of funding their pension plans. How "fair and fiscally responsible" do you think this is?

What I've just described is not a worse case scenario - this is the reality under ACA 5 and the governor's DC initiative. I will continue to support DB plans as the only viable retirement plan economically feasible for the retention, recruitment and economic stability of the members and plan sponsor. You must also take an active role in this debate by telling your elected officials, both locally and at the state level, that you support the preservation of your retirement plan and strongly oppose any measures to change it.

Dave Myers

vice-chair

San Diego County Employees'

Retirement Association

San Diego

LOAD-DATE: March 14, 2005

**EXHIBIT M**

**Gottesdiener Law Firm, PLLC,**
*Description of Laurent v. PricewaterhouseCoopers , LLP,*
*available online at*
**http://www.gottesdienerlaw.com/cash_balance/pwc_pricewaterhouse_coopers.html**
(*downloaded on* **Nov. 20, 2005)**

# GOTTESDIENER
# LAW FIRM, PLLC

ERISA Class Action Lawyers

**Home**

**ERISA Class Actions**

  **Bank Of America**

  **Pricewaterhouse Coopers**

  **SBC**

**Cash Balance Plans**

**Eli Gottesdiener**

**GLF In The News**

**Firm Lawyers**

**Should You Call GLF?**

**Contact Us**

### *Laurent v. PricewaterhouseCoopers, LLP, et al.*, 05-1291 (PLF) (D.D.C.)

This case was filed in July 2005 and challenges the design and operation of thre
house PricewaterhouseCoopers LLP ("PwC" or the "Firm")-sponsored employee
plans: A defined benefit "cash balance" pension plan (the "Retirement Benefit
Accumulation Plan for Employees of PricewaterhouseCoopers LLP" or "RBAP") a
defined contribution 401(k) plans (the "primary" and "segregated" "401(k) Plar

As described more fully in the Complaint, the three Plans are at the center of ai
deferred compensation scheme that PwC designed for its partners. The scheme
according to the Complaint, because it is designed to avoid Internal Revenue C
Code") and ERISA "nondiscrimination" standards in a way that allows partners
maximize the amount of their own tax-favored retirement benefits and contribu
while minimizing the amount of benefits and contributions provided to rank-anc
employees.

The Complaint alleges that the RBAP or cash balance plan violates employees'
the manner in which it calculates their benefits. The suit charges that rank-and
workers are systematically underpaid amounts due them, whether they receive
benefits in the form of either a lump distribution or an annuity. If true, this wou
a number of express statutory prohibitions, according to the Complaint, includii
provisions designed to outlaw age discriminatory benefit accruals.

The case is in its initial phases with both sides having filed a number of motion:

The Court has not yet addressed the issue of class certification. Plaintiff is a for
employee and a participant in the RBAP and the primary 401(k) Plan. The prop
is defined as all persons who participated in any of the Plans at any time after 1
1994 (with the exception of all current PwC partners and all former PwC partne
liable to Plaintiff, the Class or the Plans according to the allegations made in th
Complaint).

If you have information about the case or were or are a member of the propose
you are encouraged to contact GLF.

Read the media reports about the case. (GLF does not by linking to these artich
that they are accurate in whole or in part).

The cartoon below ran in *Pensions & Investments*, a trade publication that typic
adopts employers' perspectives on pension plan issues. The cartoon refers to th
Complaint's allegations as to the illegal disparities between what the Firm's plar
partners v. the supposedly proportionate benefits offered rank-and-file workers



# Only for the in crowd?

498 7th Street
Brooklyn, New York 11215
Phone: (718) 788-1500 | Fax: (718) 788-1650

1025 Connecticut Avenue, N.W., Suite 1000
Washington, DC 20036
Phone: (202) 243-1000 | Fax: (202) 243-10

Email Us \ Site Map

## EXHIBIT N

**Declaration of Melinda Burnham**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TIMOTHY D. LAURENT,                    )
On behalf of himself and on behalf of all    )
others similarly situated,             )
                                       )
   Plaintiff,           ) Civil Action No. 05-1291 (PLF)
 vs.                              )
                                       ) Judge Paul L. Friedman
                                       )
PRICEWATERHOUSECOOPERS LLP, et al, )
                                       )
   Defendants            )
                                       )
_____)

## DECLARATION OF MELINDA BURNHAM

Melinda Burnham hereby states as true subject to penalty of perjury:

1.  I am the Director of National Benefits Administration for PricewaterhouseCoopers LLP
    ("PwC").  The facts set forth in this declaration are based on the books and records of
    PricewaterhouseCoopers LLP and data provided by ACS (formerly Mellon HR
    Solutions) and are true to the best of my personal knowledge.  If called to testify as a
    witness in this matter, I could and would testify as to the facts set forth in this declaration.

2.  From 1999 to the present, the funds offered to participants through the Retirement
    Benefit Accumulation Plan of PricewaterhouseCoopers LLP ("RBAP") have been
    identical to those offered to participants through the Savings Plan for Employees and
    Partners of PricewaterhouseCoopers LLP and Savings Plan for Employees of
    PricewaterhouseCoopers LLP (collectively the "401(k) Plans").

3.  The funds offered through the RBAP and 401(k) Plans have changed several times since
    1994.  The total number of different funds offered through the RBAP since 1994 is 58.
    The total number of different funds offered through the 401(k) Plans since 1994 is 65.
    The RBAP and 401(k) Plans currently offer 17 different funds to their participants.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 29, 2005.

_____
Melinda Burnham

## EXHIBIT O

**Unpublished Cases**

Slip Copy                                                                 Page 1
Slip Copy, 2005 WL 1139645 (N.D.Ill.)
**(Cite as: Slip Copy)**
н

Briefs and Other Related Documents

Only the Westlaw citation is currently available.

United States District Court,N.D. Illinois, Eastern Division.

BOWE BELL + HOWELL COMPANY, Plaintiff,

v.

IMMCO EMPLOYEES' ASSOCIATION; James Yukna and Albert Spinozzi, individually and as representatives of a defendant class of other similarly situated retirees; and Ronald Buckland, individually and as a representative of a defendant class of other similarly situated retirees, Defendants.

No. 03 C 8010.

May 11, 2005.

Nancy G. Ross, Michael Todd Graham, Chicago, IL, for Plaintiff.

Ira B. Silverstein, Philadelphia, PA, for Defendants.

### MEMORANDUM OPINION AND ORDER

DARRAH, J.

**\*1** Plaintiff, Bowe Bell + Howell Company, filed a declaratory action against Defendants, Inserting and Mailing Machine Company Employees' Association ("IMMCO"); James Yukna and Albert Spinozzi, individually and as representatives of the hourly retired employees; and Ronald Buckland, individually and as representative of the salaried retired employees. Plaintiff seeks a declaration that it was entitled to modify, amend, or terminate the medical benefits of the Retiree Classes in an Employee Retirement Security Act ("ERISA") Plan. Defendants Yukna and Spinozzi have filed counterclaims, seeking injunctive, declaratory, and compensatory relief, for: (1) pension benefits, pursuant to 29 U.S.C. § 1132(a)(1)(B); (2) breach of fiduciary duty, pursuant to 29 U.S.C. § 1132(a)(2); (3) an injunction to prohibit the modification, reduction, or termination of retiree medical benefits, pursuant to 29 U.S.C. § 1132(a)(3); (4) breach of contract; (5) intentional or negligent misrepresentation; and (6) promissory estoppel.

Presently before the Court is Plaintiff's Motion to Certify Retiree Classes. Plaintiff seeks mandatory certification of Defendant classes: (1) hourly employees of Plaintiff who participated in the relevant medical benefits plan as retirees as of December 31, 2003 (the "hourly retiree class"); and (2) salaried employees of Plaintiff who participated in the relevant medical benefits plan as retirees as of December 31, 2003 (the "salaried retiree class"). For the following reasons, that motion is denied.

### LEGAL STANDARD

"The Federal Rules of Civil Procedure provide the federal district court with broad discretion to determine whether certification of a class action lawsuit is appropriate." *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir.1998) (quotation and citation omitted). In determining whether the class action requirements are met, "a judge should make whatever factual and legal inquiries are necessary under Rule 23." *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 676 (7th Cir.2001) (*Szabo* ). The party seeking class certification has the burden of demonstrating certification is appropriate. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993).

To obtain class certification, Plaintiff must demonstrate that the proposed defense classes satisfy all four elements of Federal Rule of Civil Procedure 23(a), which include: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. The defense classes must also satisfy at least one of the three provisions under Federal Rule of Civil Procedure 23(b); Plaintiff claims to have met the requirements of Rule 23(b)(1). While class members must be provided with an opportunity to opt out of a class action certified under Rule 23(b)(3), "[f]or any class certified under Rule 23(b)(1) or (2), the court may direct appropriate notice to the class." Fed.R.Civ.P. 23(c)(2). Under this rule, plaintiffs are not required to provide putative class members with notice or an opportunity to opt out of the class certified under Rule 23(b)(1). *See Lemon v. Int'l Union of Operating Eng'rs, Local No. 139,* 216 F.3d 577, 580 (7th Cir.2000).

**\*2** Plaintiff seeks to enjoin any member of the certified class from instituting a separate law suit in any other court based on the subject matter of this suit-i.e., to preclude class members from opting out of the class.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                              **Page    2**
**(Cite as: Slip Copy)**

## BACKGROUND

The facts, for the purposes of this motion, are as follows. FN1 Plaintiff is a manufacturing corporation who is both the plan sponsor and fiduciary of a medical benefits plan, which provides benefits to certain groups of hourly and salaried retirees who were former employees of Plaintiff. Defendant IMMCO is a labor organization that formerly represented and acted for certain hourly employees who participated in the plan. Defendants Yukna and Spinozzi are former hourly employees, and Defendant Buckland is a former salaried employee.

FN1. For a more extensive discussion of the background, see *Bowe Bell + Howell Co. IMMCO Employees' Ass'n,* No. 03 C 8010, 2004 WL 1244143 (N.D.Ill. Jun.2, 2004).

Plaintiff provided salaried retirees with certain medical benefits who obtained a qualifying age and with a qualifying amount of service. A salaried retiree's contribution level was also determined based upon their age and amount of service at the time of retirement.

Active hourly employees were represented by IMMCO for collective bargaining purposes, and Plaintiff agreed with IMMCO to provide hourly employees with medical benefits upon retirement. After unsuccessful collective bargaining negotiations, IMMCO disclaimed its interest in representing the hourly employees; and Plaintiff imposed a new medical benefit scheme.

Plaintiff later announced its intention to amend the benefits provided to hourly and salaried retirees under age sixty-five and to terminate the benefits provided to hourly and salaried retirees age sixty-five and older. Plaintiff notified the retiree classes that the new amendments would become effective and provided an explanation of the changes. Thereafter, several members of the retiree classes contacted Plaintiff and announced their intent to challenge the legality of the amendments in court. Plaintiff then filed this action, and Defendants Yukna and Spinozzi filed counterclaims alleging, *inter alia,* that Plaintiff made certain representations concerning the retiree medical benefits.

The members of the classes were hired between 1943 and 1987 and retired between 1976 and 2001. The material distributed by Plaintiff and the representations made to the putative class members varied. For example, different summary plan descriptions were issued to retirees in 1979, 1981, and 1983, as mandated by ERISA. *See* 29 U .S.C. § 1024(b). These summaries indicate that pension plan benefits vested after five years of employment and identified the medical benefits retirees could obtain under the plan. However, another summary plan description in 1988 does not discuss the availability of medical benefits after retirement. Plaintiff also conducted individual retirement meetings with its employees prior to retirement where the employees were provided with retirement information and could ask questions regarding retiree benefits.

This action was filed on November 10, 2003. Defendants moved to dismiss based on lack of jurisdiction and the failure to state a claim upon which relief could be granted; this motion was denied on June 1, 2004. Thereafter, on November 12, 2004, one-hundred and thirty-five members of the putative hourly retiree class then filed suit against Plaintiff in the United States District Court for the Eastern District of Pennsylvania (the "Pennsylvania Action"). The claims filed in that action are legally similar to the counterclaims filed by Yukna and Spinozzi. Plaintiff filed this motion for class certification six days later.

## ANALYSIS

### *The Requirements of Rule 23(a)*

*3 Federal Rule of Civil Procedure 23(a)(1) requires that the class be so numerous that joinder of all the members is impracticable. A plaintiff does not need to demonstrate the exact number of class members as long as a conclusion is apparent from good-faith estimates. *Peterson v. H & R Block Tax Servs.,* 174 F.R.D. 78, 81 (N.D.Ill.1997). "Common sense assumptions" can be made in order to support a finding of numerosity. *Grossman v. Waste Management, Inc.,* 100 F.R.D. 781, 785 (N.D.Ill.1984). However, conclusory allegations that joinder is impracticable or speculation about the size of the class may not be relied upon to prove numerosity. *Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir.1989).

The hourly retiree class consists of approximately

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

three-hundred individuals, while the salaried retiree class consists of approximately seventy-five individuals. Therefore, the numerosity requirement has been met.

Commonality exists under Rule 23(a)(2) if the class members share common questions of law or fact. The requirement is usually satisfied when a common nucleus of operative facts unites a class. *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992) ( *Rosario* ).

The typicality requirement of Rule 23(a)(3) is closely related to the commonality requirement of Rule 23(a)(2). *Ruiz v. Stewart Associates, Inc.,* 171 F.R.D. 238, 242 (N.D.Ill.1997). Even if some factual variations exist between class members, a claim is considered typical if: (1) it arises from the same event, practice, or course of action that gives rise to the claims of other class members; and (2) the claims or defenses of the named class members are based on the same legal theory of the putative class members. *See Rosario,* 963 F.2d at 1018.

However, Yukna and Spinozzi contend in affidavits that they are not typical of the hourly retiree class, as each hourly retiree received information individually from Plaintiff which induced their retirement. Yukna and Spinozzi assert different factual bases as defenses and in their counterclaims based on Plaintiff's representations. Plaintiff has not shown Yukna and Spinozzi are typical of the members of the hourly retiree class, who each met with Plaintiff's representative before retirement.

Buckland argues that he is not typical of the salaried retiree class because the great majority of approximately seventy-five salaried employees were office workers while he was one of only two salaried shop workers.

The class representatives must also "fairly and adequately protect the interests of the class". Fed.R.Civ.P. 23(a)(4). Two factors are used to determine whether the class is adequately represented. First, there must be no conflict of interest between the named defendants and the class members. *Rosario,* 963 F.2d at 1018. Second, the named representatives' counsel must adequately protect the interests of the class by being qualified, experienced, and generally able to conduct the proposed litigation. *Gaspar v. Linvatec Corp.,* 167

F.R.D. 51, 58 (N.D.Ill.1996).

**\*4** Buckland has appeared *pro se* and filed a statement declining to be the salaried retiree class representative, listing several reasons, including the hardship of travel to Chicago and his inability to pay for legal representation.

The adequacy requirement ensures that the interest of the absent class members are protected. *See Sec. of Labor v. Fitzmmons,* 805 F.2d 682, 697 (7th Cir.1986). Based on the foregoing, Plaintiff has not shown Buckland to be an adequate representative of the salaried retiree class.

Yukna and Spinozzi have also declined to serve as hourly retiree class representatives, setting out various reasons, such as due process concerns that could affect the absent class members. In *Ameritech Benefit Plan Committee v. Communication Workers of America,* 220 F.3d 814, 820 (7th Cir.2000) ( *Ameritech Benefit Plan Comm.*), the Seventh Circuit explained that certification of a defendant class without notice to the putative class members would implicate defendants' due process rights and refused to certify a defendant class. The due process concerns are significant here, as Yukna and Spinozzi do not wish to represent the class and cannot be found to be adequate representatives of the hourly retiree class.

*The Requirements of Rule 23(b)(1)*

Plaintiff argues that the hourly retiree class should be certified under Rule 23(b)(1). That rule provides a class action may be maintained if:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests....

Under Rule 23(b)(1), certification "should be confined to those cases where there are no, or few, individual questions." *Doe v. Guardian Life Ins.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    **Page    4**
**(Cite as: Slip Copy)**

*Co.,* 145 F.R.D. 466, 477 (N.D.Ill.1992). The parties dispute whether any individual differences exist between the members of the putative class; Yukna and Spinozzi contend that different oral and written representations concerning medical benefits were made by Plaintiff to individual hourly retirees. Plaintiff relies on the deposition testimony of its human resources director that the same information regarding medical benefits was given to each employee. However, the director admitted he was not present at each individual employee meeting. Therefore, he did not have personal knowledge of the pre-retirement representations by Plaintiff's representatives to the employees. Plaintiff has failed to demonstrate that no factual differences exist between the members of the putative class.

Plaintiff argues that certification is proper under Rule 23(b)(1) because different results could be reached as to whether Plaintiff can modify the medical benefits, particularly in light of the pending Pennsylvania action. FN2 However, Plaintiff must demonstrate potential rulings are inconsistent by placing "the party opposing the class in a position of being unable to comply with one judgment without violating the terms of another judgment." 5 *Moore's Federal Practice* § 23.41[3][a].

FN2. The court in the Pennsylvania action has granted Defendant's (Plaintiff here) motion to transfer those cases to this Court. Plaintiffs (Defendants here) have filed a motion to stay that order and seek certification for an interlocutory appeal.

**\*5** "[C]ourts reason that inconsistent standards for future conduct are not created because a defendant might be found liable to some plaintiffs and not others." *In re Dennis Greenman Secs. Litig.,* 829 F.2d 1539, 1544 (11th Cir.1987). As such, there is no potential for inconsistent adjudications under Rule 23(b)(1)(A) if Plaintiff is required to issue medical benefits to some putative class members but not others because of factual differences between the retired employees. Accordingly, certification under Rule 23(b)(1)(A) is inappropriate.

Plaintiff next argues that certification is proper under Rule 23(b)(1)(B) because adjudicating Plaintiff's declaratory claim will be dispositive of claims relating to the putative members of the putative classes. However, the application of the

doctrine of *stare decisis* is the only possible effect of a ruling in favor of Plaintiff; however, *stare decisis* alone is not a reason to grant certification under Rule 23(b)(1)(B). *See Bazemore v. Friday,* 478 U.S. 385, 405-07, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986); *Goldman v. First Nat'l Bank of Chicago,* 56 F.R.D. 587, 591 (N.D.Ill.1972), *rev'd on other grounds,* 532 F.2d 10 (7th Cir.1976).

Because class members are not provided notice or an opportunity to opt out of a class certified under Rule 23(b)(1)(B), the rule is interpreted narrowly. *Oshana v. Coca-Cola Bottling Co.,* 225 F.R.D. 575, 584 (N.D.Ill.2005) (citing *Ortiz v. Fireboard Corp.,* 527 U.S. 815, 833 n. 13, 842, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (*Ortiz* )). In class actions certified under Rule 23(b)(1)(B), "the shared character of the rights claimed or relief awarded entails that any adjudication disposes of, or substantially affects, the interest of absent class members." *Ortiz,* 527 U.S. at 833-34. Typically, class actions certified under Rule 23(b)(1)(B) include suits to reorganize fraternal benefit societies, actions by shareholders to declare a dividend, actions charging a breach of trust by a fiduciary which similarly affects a large class of beneficiaries such that an accounting is necessary, and limited fund class actions seeking to aggregate claims against a fund which is insufficient to satisfy the claims of all the class members. *Ortiz,* 527 U.S. at 834.

Here, resolving the claims as to Yukna and Spinozzi will not be dispositive of the interests of the remaining class members. As discussed above, factual differences exist between the putative class members. Therefore, while resolving the claims against Yukna and Spinozzi may have a limited precedential *stare decisis* effect, resolution of these individual claims will neither be dispositive of the interests of the other members not parties to the adjudication nor substantially impair or impede their ability to protect their interests.

Although it dealt with Rule 23(b)(2), the Seventh Circuit's recent opinion in *In re Allstate Ins. Co.,* 400 F.3d 505 (7th Cir.2005) is also instructive. There, the court stated:
There can be critical differences among class members that are independent of differences in the amount of damages. In this case, the critical difference concerns the circumstances that induced

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                        **Page    5**
**(Cite as: Slip Copy)**

the members to quit their employment with Allstate.... This variance in circumstances doubtless pervades the entire class.

**\*6** *In re Allstate,* 400 F.3d at 507-08 (emphasis added). The court concluded that when seeking declaratory relief "the effect of the declaration on the individual class will vary with their particular circumstances, they should be given notice of the class action so that they can decide whether they would be better off proceeding individually." As discussed above, Plaintiff has not shown the absence of critical differences regarding the pre-retirement circumstances of members of the putative class which may have induced retirement.

The controlling facts of *In re Allstate* are similar, and the rationale is applicable to this case. Plaintiff's declaratory action is not the proper basis for class certification pursuant to Rule 23(b)(1). "[W]hen, though the suit is for declaratory relief, the effect of the declaration on individual class members will vary with their particular circumstances, they should be given notice of the class action so that they can decide whether they would be better off proceeding individually." *In re Allstate Ins. Co.,* 400 F.3d at 505 (emphasis added).

Further, the failure to provide notice and the opportunity to opt out could prevent putative class members from asserting their individual factual differences. Plaintiff has failed to cite any authority for certification of a defense class under Rule 23(b)(1). Plaintiff's cases concern Rule 23(b)(3), where potential defendant class members would be provided with notice and an opportunity to opt out of the class. *Sebo v. Rubenstein,* 188 F.R.D. 310, 318 (N.D.Ill.1999); *Abt v. Mazda Am. Credit,* No. 98 C 2931, 1999 WL 350738, at \*4 (N.D.Ill. May 19, 1999); *Williams v. State Bd. of Elections,* 696 F.Supp. 1574, 1576-77 (N.D.Ill.1988); *Hammond v. Hendrickson,* No. 85 C 9829, 1986 WL 8437, at \*10-12 (N.D.Ill. July 30, 1986).

Based on the above, Plaintiff has not demonstrated that it is proper to certify the hourly retiree class under Rule 23(b)(1).

CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Certify Retiree Classes is denied.

N.D.Ill.,2005.
Bowe Bell %8F Howell Co. v. Immco Employees' Ass'n
Slip Copy, 2005 WL 1139645 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

. 2004 WL 2176962 (Trial Pleading) Bowe Bell Howell's Answer and Affirmative Defenses to Counterclaims (Aug. 02, 2004)
. 2004 WL 2176960 (Trial Pleading) Answer and Counterclaims of Immco Employees Association, James Yukna and Albert Spinozzi (Jul. 09, 2004)
. 2004 WL 2176959 (Trial Motion, Memorandum and Affidavit) Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss (Mar. 29, 2004)
. 2004 WL 2176958 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response in Opposition to Defendants' Motion to Dismiss or, Alternatively, Motion to Transfer Venue (Mar. 15, 2004)
. 2003 WL 23803675 (Trial Pleading) Class Action Complaint for Declaratory Judgment (Nov. 10, 2003)
. 1:03CV08010 (Docket) (Nov. 10, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    **Page    1**
Not Reported in F.Supp.2d, 2002 WL 31818964 (N.D.Ill.), 29 Employee Benefits Cas. 2319
**(Cite as: Not Reported in F.Supp.2d)**
H

Briefs and Other Related Documents

United States District Court,N.D. Illinois, Eastern
Division.
In re AMSTED INDUSTRIES, INC. "ERISA"
LITIGATION
Juan ARMSTRONG, et al., Plaintiffs,
v.
AMSTED INDUSTRIES, INC., et al., Defendants.
No. 01 C 2963.

Dec. 16, 2002.

MEMORANDUM OPINION AND ORDER

MORAN, Senior J.
**\*1 THIS DOCUMENT RELATES TO:**

Plaintiffs brought this action alleging violations of
the Employee Retirement Income Security Act of
1974, 29 U.S.C. § 1001 *et seq.* (ERISA), seeking to
reinstate benefits, enjoin further denial of benefits,
void improper transactions, obtain equitable
remedies under ERISA, and damages. These actions
were filed individually and transferred to this court
by the judicial panel on multi-district litigation. The
non-retiree plaintiffs filed a motion for class
certification pursuant to Fed.R.Civ.P. 23. For the
following reasons, we grant plaintiffs' motion.

BACKGROUND

In 1996 Amsted became a sub-chapter S corporation
by becoming entirely employee-owned. At the end
of each fiscal year the Amsted Employees' Stock
Ownership Plan (ESOP) distributed shares of the
corporation into individual retirement accounts,
which varied in value according to the additions of
new shares and fluctuations in stock prices. Amsted
developed a cash surplus and began acquiring
numerous smaller companies.

In 1999, plaintiffs allege that defendant acquired
Varlen at an exaggerated price, paying
approximately $600 million, or a 60% stock price
premium for the shares, without performing an
adequate independent evaluation for the benefit of
the ESOP. As a result of this purchase, Amsted's
stock value rose 32% over the previous year,
reaching a high value of $184.41 on September 30,

1999, resulting in numerous ESOP distribution
requests. Plaintiffs allege that due to defendants'
mismanagement the large volume of distribution
requests significantly depleted ESOP assets.

In response to this depletion, plaintiffs further allege
that defendants amended the plan provisions in
violation of ERISA. These amendments allegedly
made it more difficult to apply for and receive
distributions of the ESOP and significantly lowered
the value of employees' retirement accounts.
Defendants allegedly changed the requirements for
retirement from needing *either* 30 years of service *or*
reaching age 55 to requiring *both* 30 years of service
*and* reaching age 55. Another provision allegedly
enacted by defendants eliminated lump sum
payments to plan participants in exchange for
issuing a note promising payment of 20% of the
account value-which varied over time-over a period
of four years, paying a reasonable interest.

DISCUSSION

Plaintiffs seek to certify a class to be defined as
All ESOP Plan Participants, excluding
DEFENDANTS and excluding those Plan
Participants who retired and whose benefits under
the ESOP were calculated for the purpose of
distribution at $184.41 per share.

In determining whether to certify a class, we have
broad discretion. *Keele v. Wexler,* 149 F.3d 589,
592 (7th Cir.1998). Plaintiffs bear the burden of
demonstrating the four threshold requirements of
Rule 23(a): numerosity, commonality, typicality and
adequacy of representation. *Id.* at 594. Additionally,
parties seeking certification must show that the
action is maintainable under Rule 23(b)(1), (2) or
(3). *Amchem Products, Inc. v. Windsor,* 521 U.S.
591, 613 (1997).

**\*2** Plaintiffs argue that this class meets the four
initial requirements and should be certified under
either Rule 23(b)(1)(A), which allows maintenance
of a class action if the prosecution of separate
actions would likely lead to inconsistent
adjudications, or Rule 23(b)(3), which allows
certification where questions of law and fact
common to class members predominate over any
questions affecting only individual members.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                   Page   2
**(Cite as: Not Reported in F.Supp.2d)**

Defendants dispute only the adequacy of representation of the class members, arguing that conflicts of interest exist between perspective class members that make this action untenable. FN1

FN1. There is some dispute as to whether the defendants have waived their argument that counsel would be conflicted in representing the class because they did not challenge adequacy of counsel in their response brief. Defendants do not argue that plaintiffs' counsel is incompetent to handle a class action, only that they would be conflicted if this class was certified. As such, we address this argument as part of the overall discussion of potential conflicts between class member.

Adequacy of representation consists of two prongs: the adequacy of counsel to handle a class action and the adequacy of named plaintiffs to protect the differing interests of the class members. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 598 (7th Cir.1993). Defendants do not dispute that plaintiffs' counsel is competent to handle this matter, only that plaintiffs, together with counsel, cannot adequately represent the differing interests of the class members.

Defendants argue that the proposed class would include at least three groups with conflicting interests. First, former employees who hold a promissory note at a value other than $184.41 likely desire a lump sum payout of their remaining balance as soon as possible. Second, former employees who terminated employment after the 2000 amendments may desire an immediate lump sum payout or may have an interest in seeing the long-term value of Amsted stock increase before collecting their benefits. Third, current employees likely value the long term stability of Amsted. Defendants argue that an immediate lump sum payout to plaintiffs who desire it may affect the long-term financial health of Amsted, putting plaintiffs in conflict with each other. We disagree.

While plaintiffs may have differing desires as to the future financial stability of Amsted, FN2 their interests in this litigation are not in conflict. In filing this suit plaintiffs seek to right alleged wrongs committed by the plan administrators in order to receive the full value of their retirement accounts. If successful, this litigation will necessarily preclude Amsted from relitigating the matter (*see Parklane*

*Hosiery Co., Inc. v. Shore,* 439 U.S. 322 (1979)), and, if unsuccessful, will at a minimum adversely impact ESOP participants, whether former or current employees, from relitigating these issues. A current employee whose primary desire is the long-term financial health of Amsted, will be equally affected by this litigation whether it is brought by a class of all ESOP participants or by one single former employee. Because the rights of current employees will necessarily be adjudicated in this action, we find that the class action is the proper device to assure that all parties are fairly represented.

FN2. We note that even former employee plaintiffs have no apparent desire to put Amsted out of business only to receive payments into their pension funds. Moreover, defendants have neither argued nor presented evidence that an adverse result in this litigation would be so catastrophic as to harm the future stability of Amsted. As plaintiffs point out, defendants have investigated into possible financial arrangements for restoring funds to the retirement accounts, and there is no suggestion that these are impossible.

Defendants argue that because a potential conflict exists between eligible class members, plaintiffs' counsel will not be able to adequately protect the interests of all members. Any conflicts that may exist between potential class members are not at issue in this litigation. Every employee, whether former or current, has the desire to repair the alleged harm to their pension plan. This is the relief that plaintiffs (and their counsel) seek in this action. Plaintiffs' counsel will have no conflict in vigorously prosecuting this case.

**\*3** We find that no conflict of interest exists in that potential members seek the same relief and will have their rights adjudicated in this litigation. We likewise find that plaintiffs have met their burden of proving all necessary elements and demonstrating that class certification is proper pursuant to Rule 23.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for class certification is granted.

N.D.Ill.,2002.
In re Amsted Industries, Inc. "Erisa" Litigation

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
**(Cite as: Not Reported in F.Supp.2d)**

Page   3

Not Reported in F.Supp.2d, 2002 WL 31818964
(N.D.Ill.), 29 Employee Benefits Cas. 2319

Briefs and Other Related Documents (Back to top)

. 2004 WL 2258078 (Trial Motion, Memorandum
and Affidavit) Class Plaintiffs' Reply in Support of
Motion for Summary Judgment Against Defendants
Thomas C. Berg and Robert Chiappetta (May. 03,
2004)

. 2004 WL 2258080 (Trial Motion, Memorandum
and Affidavit) Class Plaintiffs' Reply Memorandum
in Support of Their Motion for Summary Judgment
(May. 03, 2004)

. 2004 WL 2258077 (Trial Motion, Memorandum
and Affidavit) Armstrong Class Plaintiffs' Surreply
to Plaintiffs, Blankenship and Sparks, Reply to
Group II's Response to Plaintiffs' Motion for
Clarification or, in the Alternative, Modification of
Class Certification Order (Apr. 21, 2004)

. 2004 WL 2258070 (Trial Motion, Memorandum
and Affidavit) LaSalle Bank's Reply Brief in
Support of Its Motion for Summary Judgment and in
Opposition to Plaintiffs' Cross-Motion (Apr. 09,
2004)

. 2004 WL 2258071 (Trial Motion, Memorandum
and Affidavit) Defendants Thomas C. Berg and
Robert Chiappetta's Combined Reply Memorandum
in Support of Their Motion for Summary Judgment
and Opposition to Plaintiffs' Motion for Summary
Judgment (Apr. 09, 2004)

. 2004 WL 2258074 (Trial Motion, Memorandum
and Affidavit) Defendants' Response to Class
Plaintiffs' Statement of Undisputed Material Facts
(Apr. 09, 2004)

. 2004 WL 2258075 (Trial Motion, Memorandum
and Affidavit) Amsted Defendants' Reply to
Plaintiffs Blankenship and Sparks' ""Response''  to
Defendants' Statement of Facts (Apr. 09, 2004)

. 2004 WL 2258076 (Trial Motion, Memorandum
and Affidavit) Amsted Defendants' Reply Brief in
Support of Their Motion for Summary Judgment
and in Opposition to Plaintiffs' Cross-Motion (Apr.
09, 2004)

. 2004 WL 869905 (Trial Motion, Memorandum
and Affidavit) Agreed Motion for Leave to File
Briefs in Excess of Page Limit (Mar. 30, 2004)

. 2004 WL 2258005 (Trial Motion, Memorandum
and Affidavit) Plaintiffs, Blankenship and Sparks,
Reply to Group II's Response to Plaintiffs' Motion
for Clarification or, in the Alternative, Modification
of Class Certification Order (Mar. 17, 2004)

. 2004 WL 2258003 (Trial Motion, Memorandum
and Affidavit) Plaintiffs, Blankenship and Sparks,
Response to Defendants' Motion for Summary
Judgment (Mar. 15, 2004)

. 2004 WL 2258004 (Trial Motion, Memorandum
and Affidavit) Plaintiffs, Blankenship and Sparks,
Response to Defendants' Statement of Facts (Mar.
15, 2004)

. 2004 WL 869908 (Trial Motion, Memorandum
and Affidavit) Defendants' Joint Motion for
Extension of Time to File Replies in Support of
their Summary Judgment Motions and Responses to
Plaintiffs' Summary Judgment Motion and to Strike
Trial Date (Mar. 01, 2004)

. 2004 WL 2257998 (Trial Motion, Memorandum
and Affidavit) Class Plaintiffs' Reply to Amsted
Defendants' and Defendant LaSalle's Responses to
Plaintiffs' Motion for Sanctions (Feb. 27, 2004)

. 2004 WL 2258001 (Trial Motion, Memorandum
and Affidavit) Plaintiffs', Blankenshp and Sparks,
Reply to Amsted Defendants' Response to
Plaintiffs', Blankenship and Sparks, Motion for
Clarification (Feb. 27, 2004)

. 2004 WL 2257996 (Trial Motion, Memorandum
and Affidavit) Armstrong Class Plaintiffs' Response
to Plaintiffs Blankenship and Sparks' Motion for
Clarification, or in the Alternative, Modification of
Class Certification Order (Feb. 26, 2004)

. 2004 WL 2257993 (Trial Motion, Memorandum
and Affidavit) Corrected Class Plaintiffs'
Memorandum in Support of Their Motion for
Summary Judgment and in Opposition to
Defendants' Motions for Summary Judgment (Feb.
23, 2004)

. 2004 WL 869901 (Trial Motion, Memorandum
and Affidavit) (sic)Corrected(sic) Class Plaintiffs'
Memorandum in Support of Their Motion for
Summary Judgment and in Opposition to
Defendants' Motions for Summary Judgment (Feb.
23, 2004)

. 2004 WL 2257981 (Trial Motion, Memorandum
and Affidavit) Class Plaintiffs' Motion for Summary
Judgment (Feb. 20, 2004)

. 2004 WL 2257983 (Trial Motion, Memorandum
and Affidavit) Non-Retirees Plaintiffs' Class'
Response to Defendants Thomas C. Berg, O.J.
Sopranos and Robert Chiappetta's Local Rule 56.1
Statement of Undisputed Material Facts in Support
of Their Motions for Summary Judgment Pursuant
to L.R. 56.1(b)(3)(A) (Feb. 20, 2004)

. 2004 WL 2257986 (Trial Motion, Memorandum
and Affidavit) Class Plaintiffs' Response to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page   4
(Cite as: Not Reported in F.Supp.2d)

Defendants' Joint Statement of Undisputed Material Facts in Support of Their Motions for Summary Judgment Pursuant to Local Rule 56.1(b)(3)(A) (Feb. 20, 2004)

. 2004 WL 2257990 (Trial Motion, Memorandum and Affidavit) Class Plaintiffs' Response to Defendants' Joint Statement of Undisputed Material Facts in Support of Their Motions for Summary Judgment Pursuant to Local Rule 56.1(b)(3)(A) (Feb. 20, 2004)

. 2004 WL 869900 (Trial Motion, Memorandum and Affidavit) Class Plaintiffs' Motion for Summary Judgment (Feb. 20, 2004)

. 2004 WL 2257973 (Trial Motion, Memorandum and Affidavit) LaSalle Bank's Response to Plaintiffs' Motion for Sanctions (Feb. 09, 2004)

. 2004 WL 2257975 (Trial Motion, Memorandum and Affidavit) Amsted Defendants' Response to Non-Retiree Plaintiffs' Motion for Sanctions (Feb. 09, 2004)

. 2004 WL 869903 (Trial Motion, Memorandum and Affidavit) Non-Retiree Plaintiffs' Class' Motion for Entry of Order of Dismissal (Feb. 05, 2004)

. 2004 WL 869904 (Trial Motion, Memorandum and Affidavit) Motion for Clarification or, in the Alternative, Modification, of Class Certification Order (Feb. 04, 2004)

. 2004 WL 869907 (Trial Motion, Memorandum and Affidavit) Non-Retiree Plaintiffs' Class' Amended Motion for Leave to File Exhibit HH to its Motion for Sanctions as a Restricted Document (Feb. 04, 2004)

. 2004 WL 2257979 (Trial Motion, Memorandum and Affidavit) Non-Retiree Plaintiffs' Class' Memorandum in Support of Motion for Sanctions Pursuant to Federal Rules of Civil Procedure 26 and 37 (Jan. 22, 2004)

. 2004 WL 869902 (Trial Motion, Memorandum and Affidavit) Non-Retiree Plaintiffs' Class' Motion for Sanctions Pursuant to Federal Rules of Civil Procedure 26 and 37 (Jan. 22, 2004)

. 2004 WL 869906 (Trial Motion, Memorandum and Affidavit) Non-Retiree Plaintiffs' Class' Memorandum in Support of Motion for Sanctions Pursuant to Federal Rules of Civil Procedure 26 and 37 (Jan. 22, 2004)

. 2004 WL 2257972 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants Thomas C. Berg, O.J. Sopranos and Robert Chiappetta's Motion for Summary Judgment (Jan. 21, 2004)

. 2004 WL 869934 (Trial Motion, Memorandum

and Affidavit) LaSalle Bank's Motion for Summary Judgment (Jan. 21, 2004)

. 2004 WL 869935 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants Thomas C. Berg, O.J. Sopranos and Robert Chiappetta's Motion for Summary Judgment (Jan. 21, 2004)

. 2004 WL 869936 (Trial Motion, Memorandum and Affidavit) Amsted Defendants' Motion for Summary Judgment as to Plaintiffs Blankenship and Sparks (Jan. 21, 2004)

. 2003 WL 23821060 (Trial Motion, Memorandum and Affidavit) Amsted Defendants' Response to Plaintiffs Blankeneship and Sparks Motion for Clarification, Etc. (Dec. 16, 2003)

. 2003 WL 23419785 (Trial Motion, Memorandum and Affidavit) Non-Retiree Class Counsel's Motion for Voluntary Dismissal and Waiver of Notice Requirements Pursuant to FRCP Rule 23(e) (Dec. 12, 2003)

. 2003 WL 23419502 (Trial Motion, Memorandum and Affidavit) Motion for Clarification Or, in the Alternative, Modification, of Class Certification Order (Dec. 11, 2003)

. 2003 WL 23419786 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Modify Schedule (Sep. 29, 2003)

. 2003 WL 23419778 (Trial Motion, Memorandum and Affidavit) Motion of the Plaintiff Class to Amend the Scheduling Order (Jul. 25, 2003)

. 2003 WL 23419787 (Trial Motion, Memorandum and Affidavit) The Plaintiff Class's Renewed Motion to Compel the Production of Documents by Defendant Amsted (Jun. 26, 2003)

. 2003 WL 23419777 (Trial Motion, Memorandum and Affidavit) The Plaintiff Class's Reply Brief to Defendant Amsted's Response to the Plaintiff Class's Motion to Compel Valuation Reports, Motion to Enforce This Court's Order Dated 12/27/ 02 Compelling the Production of E-mail Documents, and Motion to Amend the S cheduling Order (Jun. 16, 2003)

. 2003 WL 23821055 (Trial Motion, Memorandum and Affidavit) The Plaintiff Class's Reply Brief to Defendant Amsted's Response to the Plaintiff Class's Motion to Compel Valuation Reports, Motion to Enforce This Court's Order Dated 12/27/ 02 Compelling the Production of E-Mail Documents, and Motion to Amend the S cheduling Order (Jun. 16, 2003)

. 2003 WL 23419780 (Trial Motion, Memorandum and Affidavit) The Plaintiff Class's Motion to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: Not Reported in F.Supp.2d)

Compel the Production of Additional Documents Identified in Documents Previously Produced by Defendant Amsted (Jun. 11, 2003)

. 2003 WL 23821052 (Trial Motion, Memorandum and Affidavit) Non-Bank Defendants' Response to Plaintiffs' Motion to Compel Valuation Reports, Motion to Enforce the Court's Order Dated 12/27/02 and Motion to Amend the Scheduling Order (Jun. 09, 2003)

. 2003 WL 23419781 (Trial Motion, Memorandum and Affidavit) The Plaintiff Class's Motion to Compel Valuation Reports, Motion to Enforce this Court's Order Dated 12/27/02 Compelling the Production of E-mail Documents, and Motion to Amend the Scheduling Order (May. 23, 2003)

. 2003 WL 23419801 (Trial Pleading) LaSalle Bank's Answer to Non-Retirees' First Amended Consolidated Class Action Complaint (Apr. 11, 2003)

. 2003 WL 23821046 (Trial Pleading) LaSalle Bank's Answer to Non-Retirees' First Amended Consolidated Class Action Complaint (Apr. 11, 2003)

. 2003 WL 23419784 (Trial Motion, Memorandum and Affidavit) The Plaintiff Class' Surreply Memorandum to LaSalle Bank's Reply Brief Regarding LaSalle Bank's Motion to Dismiss First Amended Complaint (Feb. 25, 2003)

. 2003 WL 23419779 (Trial Motion, Memorandum and Affidavit) Motion for Leave of Court on Behalf of the Plaintiff Class to Submit the Plaintiff Class's Surreply Memorandum to LaSalle Bank's Reply Brief Regarding LaSalle Bank's Motion to Dismiss First Amended Complaint (Feb. 24, 2003)

. 2003 WL 23419782 (Trial Motion, Memorandum and Affidavit) The Plaintiff Class' Surreply Memorandum to LaSalle Bank's Reply Brief Regarding LaSalle Bank's Motion to Dismiss First Amended Complaint (Feb. 24, 2003)

. 2003 WL 23821040 (Trial Motion, Memorandum and Affidavit) The Plaintiff Class' Surreply Memorandum to LaSalle Bank's Reply Brief Regarding LaSalle Bank's Motion to Dismiss First Amended Complaint (Feb. 24, 2003)

. 2003 WL 23419783 (Trial Motion, Memorandum and Affidavit) Reply Brief Regarding LaSalle Bank's Motion to Dismiss First Amended Complaint (Jan. 30, 2003)

. 2003 WL 23821032 (Trial Motion, Memorandum and Affidavit) Reply Brief Regarding LaSalle Bank's Motion to Dismiss First Amended Complaint (Jan. 30, 2003)

. 2003 WL 23821022 (Trial Motion, Memorandum and Affidavit) The Plaintiff Class's Response to LaSalle Bank's Motion to Dismiss First Amended Complaint (Jan. 09, 2003)

. 2002 WL 32453321 (Trial Motion, Memorandum and Affidavit) LaSalle Bank's Motion to Set Briefing Schedule (Dec. 19, 2002)

. 2002 WL 32683672 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Brief to Defendants' Opposition to Plaintiffs' Motion to Compel Sufficient Discovery Responses, Response to Plaintiffs' Supplemental Reply in Support of Their E-Mail Motion and Opposition to Plaintiffs' Motion to Strike Petermann Af fidavit (Oct. 31, 2002)

. 2002 WL 32683664 (Trial Motion, Memorandum and Affidavit) Defendant's Surreply in Opposition to Non-Retiree Plaintiffs' Motion for Class Certification (Oct. 17, 2002)

. 2002 WL 32453335 (Trial Motion, Memorandum and Affidavit) Non-Retiree Plaintiffs' Motion for Leave to File a Restricted Document (Oct. 15, 2002)

. 2002 WL 32452892 (Trial Pleading) Supplemental Reply to Defendants' Memorandum in Opposition to Non-Retiree Plaintiffs' Motion for Order Requiring Defendants to Preserve and Retrieve Email, Motion to Compel Sufficient Discovery Responses and to Strike the Affidavit of Petermann (Oct. 03, 2002)

. 2002 WL 32683659 (Trial Motion, Memorandum and Affidavit) Supplemental Reply to Defendants' Memorandum in Opposition to Non-Retiree Plaintiffs' Motion for Order Requiring Defendants to Preserve and Retrieve Email, Motion to Compel Sufficient Discovery Responses and to Strike the Affidavit of Petermann (Oct. 03, 2002)

. 2002 WL 32453013 (Trial Pleading) Non-Bank Defendants' %n1%n Answer to Non-Retirees' First Amended Consolidated Class Action Complaint (Sep. 27, 2002)

. 2002 WL 32683652 (Trial Pleading) Non-Bank Defendants' %n1%n Answer to Non-Retirees' First Amended Consolidated Class Action Complaint (Sep. 27, 2002)

. 2002 WL 32453323 (Trial Motion, Memorandum and Affidavit) Non-Retiree Plaintiffs' Motion for Leave to File a Restricted Document (Sep. 23, 2002)

. 2002 WL 32453329 (Trial Motion, Memorandum and Affidavit) Non-Retiree Plaintiffs' Reply Memorandum in Support of Class Certification (Sep. 23, 2002)

. 2002 WL 32683643 (Trial Motion, Memorandum

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page   6
(Cite as: Not Reported in F.Supp.2d)

and Affidavit) Non-Retiree Plaintiffs' Reply Memorandum in Support of Class Certification (Sep. 23, 2002)
. 2002 WL 32683633 (Trial Pleading) Non-Retirees First Amended Consolidated Class Action Complaint (Sep. 17, 2002)
. 2002 WL 32453330 (Trial Motion, Memorandum and Affidavit) Non-Retiree Plaintiffs' Motion for Leave to File First Amended Consolidated Class Action Complaint (Sep. 09, 2002)
. 2002 WL 32453331 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Opposition to Non-Retiree Plaintiffs' Motion for Order Requiring Defendants to Preserve and Retrieve E-Mail (Sep. 04, 2002)
. 2002 WL 32683624 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Opposition to Non-Retiree Plaintiffs' Motion for Order Requiring Defendants to Preserve and Retrieve E-Mail (Sep. 03, 2002)
. 2002 WL 32453332 (Trial Motion, Memorandum and Affidavit) Motion to Supplement Appendix to Defendants' Memorandum in Opposition to Non-Retiree Plaintiffs' Motion for Class Certification (Aug. 23, 2002)
. 2002 WL 32453337 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Opposition to Non-Retiree Plaintiffs' Motion for Class Certification (Aug. 21, 2002)
. 2002 WL 32683613 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Opposition to Non-Retiree Plaintiffs' Motion for Class Certification (Aug. 21, 2002)
. 2002 WL 32453322 (Trial Motion, Memorandum and Affidavit) Non-Retiree Plaintiffs Motion to Reinstate Non-Retiree Plaintiffs (Aug. 16, 2002)
. 2002 WL 32453342 (Trial Motion, Memorandum and Affidavit) Non-Retiree Plaintiffs' Motion for Order Requiring Defendants to Preserve and Retrieve E-mail (Jul. 31, 2002)
. 2002 WL 32453319 (Trial Motion, Memorandum and Affidavit) Motion for Extension of Time to Respond to Non-Retiree Plaintiffs' Motion for Class Certification (Jul. 15, 2002)
. 2002 WL 32453336 (Trial Motion, Memorandum and Affidavit) Motion for Extension of Time to Respond to Non-Retiree Plaintiffs' First Discovery Requests (Jun. 11, 2002)
. 2002 WL 32453316 (Trial Motion, Memorandum and Affidavit) Non-Retiree Plaintiffs' Motion for Leave to Exceed Page Limit for Briefs Pursuant to LR 7.1 (May. 21, 2002)

. 2002 WL 32453338 (Trial Motion, Memorandum and Affidavit) Non-Retiree Plaintiffs' Motion for Class Certification (May. 21, 2002)
. 2002 WL 32453339 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to for Leave to File Third Amended Consolidated Complaint as to Amsted Retirees, Instanter (May. 20, 2002)
. 2002 WL 32453327 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Voluntarily Dismiss Defendant Jared Kaplan (May. 09, 2002)
. 2002 WL 32453324 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Defendants' Motion to Dismiss Count III (May. 06, 2002)
. 2002 WL 32453334 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Defendants' Motion to Dismiss Complaint as to Untimely ESOP Claims (May. 06, 2002)
. 2002 WL 32453343 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Defendant's Motion for Summary Judgment as to Count IV ERISA Severance Pay Claim and to Dismiss the Remainder of Count IV and Count V (May. 06, 2002)
. 2002 WL 32683553 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Defendants' Motion to Dismiss Count III (May. 06, 2002)
. 2002 WL 32683561 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Defendant's Motion for Summary Judgment as to Count IV ERISA Severance Pay Claim and to Dismiss the Remainder of Count IV and Count V (May. 06, 2002)
. 2002 WL 32683569 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Defendants' Motion to Dismiss Complaint as to Untimely ESOP Claims (May. 06, 2002)
. 2002 WL 32453328 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Voluntarily Dismiss Defendant David Pawlowski (Apr. 22, 2002)
. 2002 WL 32453341 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief and Response to Defendants' Motion for Summary Judgment & Motion to Dismiss Remainder of Claims (Apr. 08, 2002)
. 2002 WL 32453318 (Trial Motion, Memorandum and Affidavit) Retiree Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss Count III (Apr. 04, 2002)
. 2002 WL 32683538 (Trial Motion, Memorandum

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and Affidavit) Retiree Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss Count III (Apr. 04, 2002)

. 2002 WL 32683546 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendants' Motion to Dismiss Complaint as to Untimely Claims (Apr. 04, 2002)

. 2002 WL 32453320 (Trial Motion, Memorandum and Affidavit) Motion for Summary Judgment of Defendant David A. Pawlowski (Mar. 06, 2002)

. 2002 WL 32453317 (Trial Motion, Memorandum and Affidavit) Motion for Summary Judgment of Defendants Jared Kaplan and David A. Pawlowski (Mar. 01, 2002)

. 2002 WL 32683531 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiffs' Motion for Entry of Case Management Order (Mar. 01, 2002)

. 2002 WL 32453340 (Trial Motion, Memorandum and Affidavit) Motion for Entry of Plaintiffs' Case Management Order and for Entry of a Preservation of Documents Order (Feb. 25, 2002)

. 2002 WL 32453333 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants' Motion to Dismiss Complaint as to Untimely ESOP Claims (Feb. 05, 2002)

. 2002 WL 32453169 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Dismiss Count III (Feb. 04, 2002)

. 2002 WL 32453325 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants' Motion for Summary Judgment as to Count IV ERISA Severance Pay Claim and to Dismiss the Remainder of Count IV and Count V (Feb. 04, 2002)

. 2002 WL 32453326 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for Summary Judgment as to Count IV ERISA Severance Pay Claim and to Dismiss Remainder of Count IV and Count V (Feb. 04, 2002)

. 2002 WL 32453345 (Trial Motion, Memorandum and Affidavit) Motion to Dismiss Defendant Pawlowski or for Summary Judgment (Feb. 04, 2002)

. 2002 WL 32683489 (Trial Pleading) Answer to Consolidated Class Action Complaint on Behalf of Non-Retirees (Feb. 04, 2002)

. 2002 WL 32683508 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Dismiss Count III (Feb. 04, 2002)

. 2002 WL 32683516 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of

Defendants' Motion to Dismiss Complaint as to Untimely ESOP Claims (Feb. 04, 2002)

. 2002 WL 32683522 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants' Motion for Summary Judgment as to Count IV ERISA Severance Pay Claim and to Dismiss the Remainder of Count IV and Count V (Feb. 04, 2002)

. 2002 WL 32453166 (Trial Motion, Memorandum and Affidavit) Motion for Extention of Time to File Class Certification Motion (Jan. 31, 2002)

. 2001 WL 34484155 (Trial Pleading) Consolidated Class Action Complaint on Behalf of Non-Retirees (Nov. 20, 2001)

. 2001 WL 34668505 (Trial Pleading) Consolidated Class Action Complaint on Behalf of Non-Retirees (Nov. 20, 2001)

. 2001 WL 34484210 (Trial Pleading) First Amended Consolidated Complaint as to Amsted Retirees (Nov. 06, 2001)

. 2001 WL 34668503 (Trial Pleading) First Amended Consolidated Complaint as to Amsted Retirees (Nov. 06, 2001)

. 2001 WL 34484166 (Trial Pleading) Complaint (Apr. 25, 2001)

. 2001 WL 34668501 (Trial Pleading) Complaint (Apr. 25, 2001)

. 1:01cv02963 (Docket) (Apr. 25, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.