**Request for Comments on Further Capitalization Guidance**

**Notice 96-7**

This notice invites public comment on approaches the Service should consider to address issues raised under §§ 162 and 263 of the Internal Revenue Code particularly in light of *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79 (1992).

BACKGROUND

Section 162(a) allows a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.

Section 263 generally prohibits deductions for capital expenditures. Section 263(a)(1) provides that no deduction is allowed for any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. Under § 263(a)(2), no deduction is allowed for any amount expended in restoring property or in making good the exhaustion thereof for which an allowance is or has been made in the form of a deduction for depreciation, amortization, or depletion.

In *INDOPCO*, the Supreme Court of the United States concluded that certain legal and professional fees incurred by a corporation to facilitate a friendly acquisition of the corporation created significant long-term benefits for the taxpayer and, therefore, were capital expenditures. In reaching this decision, the Court specifically rejected the argument that its decision in *Commissioner v. Lincoln Savings & Loan Association*, 403 U.S. 345 (1971), should be read as holding "that *only* expenditures that create or enhance separate and distinct assets are to be capitalized under § 263." *INDOPCO* at 86–87 (emphasis in original). The Court further stated that "[a]lthough the mere presence of an incidental future benefit—'*some* future aspect'—may not warrant capitalization, a taxpayer's realization of benefits beyond the year in which the expenditure is incurred is undeniably important in determining whether the appropriate tax treatment is immediate deduction or capitalization." *INDOPCO* at 87 (emphasis in original).

The Service believes that the *INDOPCO* decision did not change the fundamental legal principles for determining whether a particular expenditure may be deducted or must be capitalized. Since the decision in *INDOPCO*, the Service has issued a variety of revenue rulings applying §§ 162(a) and 263(a) to specific expenditures. For example, the Service ruled that the *INDOPCO* decision did not change the treatment of advertising costs (Rev. Rul. 92–80, 1992–2 C.B. 57), incidental repair costs (Rev. Rul. 94–12, 1994–1 C.B. 36), or severance payments (Rev. Rul. 94–77, 1994–2 C.B. 19), all of which are generally deductible under § 162.

REQUEST FOR PUBLIC COMMENT

The Service continues to receive numerous informal inquiries regarding issues of capitalization. Taxpayers should be aware that, in appropriate circumstances, they can receive private letter rulings on the deductibility or capitalization of specific expenditures. The Service welcomes comments on possible changes to the private letter ruling process that would facilitate advance resolution of these issues. In addition, the Service requests comments concerning: (1) whether general guidance clarifying the fundamental principles of capitalization would aid in resolving capitalization issues; (2) what specific approaches, principles, or issues such guidance should address; and (3) whether safe-harbor amortization periods should be provided for certain capitalizable expenditures and what data would support any suggested periods.

Written comments should be submitted by May 6, 1996. Written comments should be sent to: Internal Revenue Service, Attn: CC:DOM:CORP:R (IA-Branch 5), Room 5228, P.O. Box 7604, Ben Franklin Station, Washington, D.C. 20044. All materials submitted will be available for public inspection and copying. During its review of the comments, the Service will continue to process private letter rulings and continue to resolve issues under §§ 162 and 263(a) raised in examinations.

---

**Cash Balance Pension Plans**

**Notice 96-8**

**I. Purpose**

This notice describes and requests comments on proposed guidance concerning the application of sections 411 and 417(e) to single sum distributions under defined benefit pension plans that are cash balance plans. The proposed guidance is being described in this notice in order to permit advance public comment in anticipation of the publication of regulations that incorporate the proposed guidance.

**II. Background**

**A. General description of cash balance plans**

In general terms, a cash balance plan is a defined benefit pension plan that defines benefits for each employee by reference to the amount of the employee's hypothetical account balance. An employee's hypothetical account balance is credited with hypothetical allocations and hypothetical earnings determined under a formula selected by the employer and set forth in the plan. These hypothetical allocations and hypothetical earnings are designed to mimic the allocations of actual contributions and actual earnings to an employee's account that would occur under a defined contribution plan. Cash balance plans often specify that hypothetical earnings (referred to in this notice as interest credits) are determined using an interest rate or rate of return under a variable outside index (*e.g.*, the annual yield on one-year Treasury securities). Most cash balance plans also are designed to permit, after termination of employment, a distribution of an employee's entire accrued benefit in the form of a single sum distribution equal to the employee's hypothetical account balance as of the date of the distribution. Many cash balance plans also provide that if distribution is in the form of an annuity, the amount of the annuity is determined by dividing the hypothetical account balance by an annuity conversion factor.

As explained below, in order to comply with sections 411(a) and 417(e) in calculating the amount of a single sum distribution under a cash balance plan, the balance of the employee's hypothetical account must be projected to normal retirement age and then the employee must be paid at least the present value, determined in accordance with section 417(e), of that projected hypothetical account balance. If a cash balance plan provides interest credits using an interest rate that is higher than the section 417(e) applica-

EXHIBIT I

1996-1 C.B.   359

ble interest rate, payment of a single sum distribution equal to the hypothetical account balance as a complete distribution of the employee's accrued benefit may result either in a violation of section 417(e) or a forfeiture in violation of section 411(a). This is because, in such a case, the present value of the employee's accrued benefit, determined using the section 417(e) applicable interest rate, will generally exceed the hypothetical account balance. The following example illustrates this potential problem.

*Example.* A cash balance plan provides for interest credits at a fixed rate of 8% per annum that are not conditioned on continued employment, and for annuity conversions using the section 417(e) applicable interest rate and mortality table. A fully vested employee with a hypothetical account balance of $45,000 terminates employment at age 45 and elects an immediate single sum distribution. At the time of the employee's termination, the section 417(e) applicable interest rate is 6.5%.

The projected balance of the employee's hypothetical account as of normal retirement age is $209,743. If $209,743 is discounted to age 45 at 6.5% (the section 417(e) applicable interest rate), the present value equals $59,524.

Accordingly, if the plan paid the hypothetical account balance of $45,000, instead of $59,524, the employee would receive $14,524 less than the amount to which the employee is entitled.

Even if a cash balance plan provides interest credits using an interest rate that exceeds the section 417(e) applicable interest rate, the plan can satisfy sections 417(e) and 411(a). Such a plan would provide that the amount of any single sum distribution is equal to the present value of the employee's accrued benefit determined in a manner that satisfies sections 411(a) and 417(e) even if the amount of the single sum exceeds the employee's hypothetical account balance. Thus, in the example above, the plan would satisfy sections 411(a) and 417(e) if the employee received a single sum distribution of $59,524 (the present value of the employee's accrued benefit) rather than $45,000 (the employee's hypothetical account balance).

### B. Existing regulatory safe harbor for cash balance plans

Section 1.401(a)(4)–8(c) of the Income Tax Regulations, as issued in September 1991, provides a safe harbor testing method for cash balance plans. Under this method, a cash balance plan could be tested for nondiscrimination as though it were a defined contribution plan with actual allocations equal to the amount of the hypothetical allocations credited for the plan year. In order to use the safe harbor, a cash balance plan must satisfy certain design requirements that relate to the accrued benefit and valuation rules that are unique to defined benefit plans.

Comments on the September 1991 regulations expressed concern that the safe harbor plan design requirements reflected an interpretation by the Service and Treasury of the qualification requirements that, in certain cases, would require cash balance plans to pay a single sum distribution in excess of the hypothetical account balance. Guidance was requested on the circumstances in which a cash balance plan (whether or not it qualifies for safe harbor nondiscrimination testing) is permitted to distribute a single sum distribution equal to the hypothetical account balance without violating section 411(a) or 417(e).

When revised regulations under section 401(a)(4) were issued in September 1993, the safe harbor testing method for cash balance plans was left unchanged. The Preamble to those regulations indicated that the safe harbor testing method for cash balance plans had generated significant comment and that further guidance would be issued at a later date.

### III. Analysis

#### A. Nonforfeiture and accrual rules

A cash balance plan is a defined benefit plan, not a defined contribution plan, because the benefits provided are not based solely on actual contributions and forfeitures allocated to an employee's account and the actual investment experience and expenses of the plan allocated to the account. Section 411(a)(7) defines an employee's accrued benefit differently for defined benefit plans than for defined contribution plans. Also, defined benefit plans are subject to a number of statutory provisions that do not apply to defined contribution plans. These include the rules of section 411(b)(1) that limit "backloading" of accruals; the valuation rules of section 417(e); and the definitely determinable benefits requirement of section 401(a)(25). These provisions limit the extent to which a cash balance plan can mimic the benefit and accrual structure of a defined contribution plan.

Under section 411(a)(2), an employee's accrued benefit must become nonforfeitable in accordance with one of the schedules specified in that section. Under §1.411(a)–7(a)(1)(ii), the term "accrued benefits" generally refers only to pension or retirement benefits. Under section 411(b)(1), the accrual of the retirement benefits payable at normal retirement age must satisfy one of the rules in section 411(b)(1)(A), (B) or (C).

Under a cash balance plan, the retirement benefits payable at normal retirement age are determined by reference to the hypothetical account balance as of normal retirement age, including benefits attributable to interest credits to that age. Thus, benefits attributable to interest credits must be taken into account in determining whether the accrual of the retirement benefits under a cash balance plan satisfies one of the rules in section 411(b)(1)(A), (B) or (C). Moreover, benefits attributable to interest credits are in the nature of accrued benefits within the meaning of §1.411(a)–7(a), rather than ancillary benefits, and thus, once accrued, must become nonforfeitable in accordance with a vesting schedule that satisfies section 411(a).

Cash balance plans can be categorized based on when the benefits attributable to interest credits accrue. Under one type of cash balance plan (referred to in this notice as a frontloaded interest credit plan), future interest credits to an employee's hypothetical account balance are not conditioned upon future service. (Of course, benefits attributable to future interest credits may be forfeited in accordance with the plan's vesting provisions, to the extent permitted under section 411.) Thus, in the case of a frontloaded interest credit plan, the benefits attributable to future interest credits with respect to a hypothetical allocation accrue at the same time that the benefits attributable to the hypothetical allocation accrue. As a result, if an employee terminates employment and defers distribution to a later date, interest credits will continue to be credited to that employee's hypothetical account.

A second type of cash balance plan (referred to in this notice as a backloaded interest credit plan) conditions future interest credits upon further service. In the case of a backloaded interest credit plan, benefits attributable to interest credits do not accrue until

the interest credits are credited to the employee's account. Because backloaded interest credit plans typically will not satisfy any of the accrual rules in section 411(b)(1)(A), (B) or (C), it is anticipated that the proposed guidance will address only frontloaded interest credit plans.

### B. Single sum distributions from frontloaded interest credit plans

As indicated above, most cash balance plans are designed to permit a distribution of an employee's entire accrued benefit, after termination of employment, in the form of a single sum equal to the employee's hypothetical account balance as of the date of the distribution. In order for a defined benefit plan to satisfy section 417(e), any single sum distribution payable to an employee from the plan must not be less than the nonforfeitable portion of the present value of the employee's accrued benefit under section 411(a)(7) (determined using the applicable interest rate and mortality table under section 417(e)).

#### 1. Determination of the accrued benefit

In the case of a frontloaded interest credit plan, an employee's accrued benefit as of any date before attainment of normal retirement age is based on the employee's hypothetical account balance as of normal retirement age, including future interest credits to that age. If such a plan specifies a fixed interest rate for use in determining future interest credits, the employee's hypothetical account balance as of normal retirement age (including future interest credits) can be calculated precisely before normal retirement age. However, if a frontloaded interest credit plan specifies a variable outside index for use in determining the amount of interest credits, the precise dollar amount of an employee's hypothetical account balance as of normal retirement age (including future interest credits to normal retirement age), and thus the precise dollar amount of the employee's accrued benefit as of any date before normal retirement age, cannot be calculated prior to normal retirement age.

A frontloaded interest credit plan that specifies a variable outside index for use in determining the amount of interest credits must prescribe the method for reflecting future interest credits in the calculation of an employee's accrued benefit. In order to comply with section 401(a)(25), the method, including actuarial assumptions, if applicable, must preclude employer discretion. Further, in determining the amount of an employee's accrued benefit, a forfeiture, within the meaning of §1.411(a)–4T, will result if the value of future interest credits is projected using a rate that understates the value of those credits or if the plan by its terms reduces the interest rate or rate of return used for projecting future interest credits. A forfeiture in violation of section 411(a) also will occur if, in determining the amount of an employee's accrued benefit, future interest credits are not taken into account (i.e., there is no projection of future interest credits) and this has the same effect as using a rate that understates the value of future interest credits.

#### 2. Calculation of the present value of the employee's accrued benefit

In the case of a frontloaded interest credit plan, a single sum distribution optional form of benefit equal to the hypothetical account balance will satisfy section 417(e) only if the single sum distribution is not less than the present value of the employee's accrued benefit calculated in accordance with the applicable interest rate and mortality table under section 417(e)(3). As noted above, the amount of the employee's accrued benefit must be determined using a method of reflecting future interest credits that satisfies section 401(a)(25) and that does not create a forfeiture in violation of section 411(a).

#### 3. Situations in which the present value will not exceed the hypothetical account balance

A frontloaded interest credit plan might provide that the amount of interest credits is determined using a variable interest rate or rate of return that, by its terms, is no greater than the applicable interest rate under section 417(e)(3). For example, a plan that has been amended to comply with the changes to section 417(e) made by the Retirement Protection Act of 1994 (RPA '94) might provide that interest credits are determined using the lesser of the current rate of interest on 30-year Treasury securities or the current yield on 1-year Treasury Constant Maturities. Under such a plan, future interest credits can, without violating section 411(a), be projected to normal retirement age using a rate that is no greater than the applicable interest rate under section 417(e)(3). In that case, assuming that the annuity conversion factor under the plan is not less than the annuity conversion factor determined using the applicable interest rate and mortality table under section 417(e)(3), the employee's hypothetical account balance will equal or exceed the present value of the employee's accrued benefit determined in accordance with section 417(e). Thus, a single sum distribution equal to the employee's hypothetical account balance under such a plan will satisfy sections 411(a) and 417(e).

In other cases, a single sum distribution equal to an employee's hypothetical account balance will satisfy sections 417(e) and 411(a) if (a) the annuity conversion factor is not less than the annuity conversion factor determined using the applicable interest rate and mortality table under section 417(e)(3), (b) under the method for reflecting future interest credits in the calculation of an employee's accrued benefit, the future interest credits are projected using a rate that is no greater that the applicable interest rate under section 417(e)(3), and (c) this projection does not result in a forfeiture in violation of section 411(a).

By contrast, if the interest rate or rate of return under the plan used in determining the amount of interest credits is high relative to the section 417(e)(3) interest rate, the plan cannot distribute a single sum equal to the employee's hypothetical account balance and satisfy sections 411(a) and 417(e). If such a plan provided that, in determining an employee's accrued benefit, the rate used for projecting the amount of future interest credits was no greater than the interest rate under section 417(e)(3), the projection would result in a forfeiture. Alternatively, if the plan provided for interest credits to be projected using a rate that exceeded the section 417(e) interest rate but then provided for the benefit to be discounted using that same higher rate, the plan would violate section 417(e).

### C. Effect of defining the accrued benefit as the hypothetical account balance

The requirements referred to in this notice apply even in the case of a cash balance plan that defines an employee's accrued benefit as an amount equal to the employee's hypothetical account balance. Section 411(a)(7) defines the accrued benefit in terms of benefits payable under the plan at normal retirement age. In a cash balance plan, for an employee who has not attained normal retirement age, whether the employee's retirement benefit payable at normal retirement age under the plan includes benefits attributable to future interest credits depends on whether those benefits have accrued.

If benefits attributable to future interest credits have accrued, and those benefits are disregarded when benefits commence before normal retirement age, the plan has effectively conditioned entitlement to the benefits attributable to those future interest credits on the employee not taking a distribution prior to normal retirement age. Pursuant to §1.411(a)–4T, a right that is conditioned under the plan on a subsequent forbearance is a forfeitable right. Accordingly, conditioning entitlement to benefits on the employee not taking a distribution violates the non-forfeitability requirements of section 411(a).

Alternatively, if the benefits attributable to future interest credits have not accrued and will accrue only as of the later dates when the interest credits are included in the hypothetical account balance, the timing of those later accruals must be taken into account in applying the accrual rules of section 411(b)(1). As a result, such a plan typically will not satisfy those accrual rules.

### IV. Description of proposal

#### A. Variable interest rates that may be assumed for these purposes to be no greater than the 30-year Treasury interest rate

It is anticipated that the regulations will set forth a list of standard indices and associated margins for use with frontloaded interest credit plans that provide interest credits equal to the product of the balance of the hypothetical account and the current value of a variable index. (It is anticipated that this proposal will apply without regard to how frequently the rate used to determine interest credits is compounded.) Under a frontloaded interest credit plan that, for this purpose, specifies a variable index equal to the PBGC immediate rate or the sum of one of the standard indices and a margin not greater than the specified margin associated with that standard index, no impermissible forfeiture would result from projecting that the rate used to determine future interest credits for an employee is no greater than the applicable interest rate under section 417(e)(3), as amended by RPA '94. Thus, if such a plan has been amended to comply with the changes to section 417(e) made by RPA '94, the employee's entire accrued benefit could be distributed in the form of a single sum distribution equal to the employee's hypothetical account balance without violating section 411(a) or 417(e), provided that the plan provides the appropriate annuity conversion factors.

The table below provides the proposed list of standard indices and associated margins. The discount rates on Treasury bills and the yields on Treasury Constant Maturities are the rates reported in the Federal Reserve Bulletin, and the Consumer Price Index is CPI-U, as reported by the Department of Labor. Authority would be delegated to the Commissioner to approve other indices and associated margins.

| Standard Index | Associated Margin |
|---|---|
| The discount rate on 3-month Treasury Bills | 175 basis points |
| The discount rate on 6-month Treasury Bills or 12-month Treasury Bills | 150 basis points |
| The yield on 1-year Treasury Constant Maturities | 100 basis points |
| The yield on 2-year Treasury Constant Maturities or 3-year Treasury Constant Maturities | 50 basis points |
| The yield on 5-year Treasury Constant Maturities or 7-year Treasury Constant Maturities | 25 basis points |
| The yield on 10-year Treasury Constant Maturities or any longer period Treasury Constant Maturities | 0 basis points |
| Annual rate of change of the Consumer Price Index | 3 percentage points |

In developing these standard indices and associated margins, the Service and Treasury took into account the historical relationship between each of these indices and the rate of interest on 30-year Treasury securities.

Under the proposal, if a frontloaded interest credit plan specified a variable index for use in determining the amount of interest credits that is equal to the sum of a standard index (listed in the table above) and a margin that exceeds the specified margin associated with that standard index, distribution of a single sum equal to the employee's hypothetical account balance would not satisfy both section 411(a) and section 417(e). If such a plan provided that the rate used for projecting the amount of future interest credits was no greater than the interest rate under section 417(e)(3), the projection would result in a forfeiture. Alternatively, if a frontloaded interest credit plan provided for interest credits to be projected using a rate that exceeded the section 417(e) interest rate but then provided for the benefit to be discounted using that same higher rate, the plan would violate section 417(e).

B. Guidance will be prospective

The anticipated regulations will be effective prospectively. In addition, for plan years beginning before the regulations are effective, a frontloaded interest credit plan would not be disqualified for failing to satisfy section 411(a) or 417(e) if the amount of the distribution satisfied those sections based on a reasonable, good-faith interpretation of the applicable provisions of the Code, taking into account pre-existing guidance. For this purpose, plans that comply with the guidance in this notice are deemed to be applying a reasonable, good faith interpretation.

V. Comments

The Service and Treasury invite comments on the proposal described in this notice. Comments are specifically requested on other indices for which guidance may be appropriate and on guidance that would facilitate the transition to use of an approved index (including possible guidance with respect to the application of section 411(d)(6)). Any suggestion of an index (and associated margin, if any) should include an analysis of the historical relationship between the index and the rate for 30-year Treasury securities. Comments should be submitted in writing, referencing Notice 96–7, and addressed to—

Associate Chief Counsel
(Employee Benefits and Exempt Organizations)
CC:EBEO
ATTN: Cash Balance Guidance
Room 5214
Internal Revenue Service
1111 Constitution Ave., N.W.
Washington, D.C. 20224

## Weighted Average Interest Rate Update

### Notice 96–9

Notice 88–73 provides guidelines for determining the weighted average interest rate and the resulting permissible range of interest rates used to calculate current liability for the purpose of the full funding limitation of § 412(c)(7) of the Internal Revenue Code as amended by the Omnibus Budget Reconciliation Act of 1987 and as further amended by the Uruguay Round Agreements Act, Pub. L. 103–465 (GATT).

The average yield on the 30-year Treasury Constant Maturities for December 1995 is 6.06 percent.

The following rates were determined for the plan years beginning in the month shown below.

| Month | Year | Weighted Average | 90% to 108% Permissible Range | 90% to 110% Permissible Range |
|---|---|---|---|---|
| January | 1996 | 7.05 | 6.35 to 7.62 | 6.35 to 7.76 |

## Imaging Systems to Retain Books and Records

### Notice 96–10

This notice provides a proposed revenue procedure that, when finalized, will provide guidance to taxpayers on the use of an imaging system to satisfy the requirement of § 6001 of the Internal Revenue Code to maintain books and records.

The Service is proposing this revenue procedure as one means of complying with the requirements of § 6001 using electronic technology for records storage. The Service welcomes public comments on the proposed revenue procedure. Comments should be submitted by March 28, 1996, to the Internal Revenue Service, P.O. Box 7604, Ben Franklin Station, Washington, DC 20044, Attn: CC:CORP:T:R (ITA Branch 4), Room 5228.

### Rev. Proc. 96–A

SECTION 1. PURPOSE

This revenue procedure provides guidance to taxpayers on using an imaging system (as defined in section 3.01 of this revenue procedure) to maintain books and records. Records kept using an imaging system that complies with the requirements of this revenue procedure will constitute records within the meaning of § 6001 of the Internal Revenue Code.

SECTION 2. BACKGROUND

.01 Section 6001 provides that every person liable for any tax imposed by the Code, or for the collection thereof, must keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary may from time to time prescribe. Whenever necessary, the Secretary may require any person, by notice served upon such person or by regulations, to make such returns, render such statements, or keep such