1                IN THE DISTRICT OF THE UNITED STATES OF AMERICA
                      FOR THE SOUTHERN DISTRICT OF ILLINOIS

2    _____

                                              )

3    TIMOTHY LAURENT,                         )

                                              )

4                    Plaintiff(s),            )

                                              )

5        vs.                                  )  Case No. 04-809-GPM

                                              )

6    PRICEWATERHOUSECOOPERS, LLC,             )

     et al.,,                                 )

7                                             )

                     Defendant(s).            )

8    _____)

     _____       AND

9                                             )

     ANITA POTHIER, et al.,                   )

10                                            )

                     Plaintiff(S),,           )

11                                            )

         vs.                                  )  Case No. 04-458-GPM

12                                            )

     BANK OF AMERICA CORP., et al.,           )

13                                            )

                     Defendant(s)..           )

14   _____)

15

16

17           MOTION TO TRANSFER & MOTION FOR SUMMARY JUDGMENT

18

19

20   BE IT REMEMBERED AND CERTIFIED that heretofore on  5/2/05, the

21      same being one of the regular judicial days in and for the

22      United States District Court for the Southern District of

23   Illinois, Honorable G. Patrick Murphy, United States District

24   Judge, presiding.  The following proceedings were recorded by

25      mechanical stenography; transcript produced by computer.

```
 1                        APPEARANCES:
 2    FOR PLAINTIFF(S):  Eli Gottesdiener of the Gottesdiener Law
      Firm, 1025 Connecticut Avenue, N.W., Suite 1000, Washington, DC
 3    20036
 4    FOR DEFENDANT PWC: Robert J. Kopecky of Kirkland & Ellis -
      Chicago, 200 East Randolph Drive, Suite 5800, Chicago, IL 60601
 5    and Michael J. Nester and Dawn Sallerson of Donovan, Rose et
      al, 8 East Washington Street, Belleville, IL 62220 and Jason
 6    Callen.
 7
 8    FOR DEFENDANT BANK OF AMERICA: Jeffrey R. Tone and Anne Rea of
      Sidley, Austin et al. - Chicago, 10 South Dearborn Street, Bank
 9    One Plaza, Chicago, IL 60603 and
10    REPORTED BY:  Molly N. Clayton, RPR, Official Reporter for
      United States District Court, SDIL, 750 Missouri Ave., East St.
11    Louis, Illinois 62201, (618)482-9226,
      molly_clayton@ilsd.uscourts.gov
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    INDEX OF WITNESS EXAMINATION

 2                              DX       CX      R-DX      R-CX

 3     No witness testimony.

 4

 5                        INDEX OF EXHIBITS

 6     EXHIBIT              DESCRIPTION          Id'D      Rcv'd

 7     No exhibits identified or received.

 8

 9                      MISCELLANEOUS INDEX

10                                         PAGE

11     No miscellaneous index entries.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1           COURTROOM DEPUTY:  Timothy Laurent versus

2    Pricewaterhousecoopers, Case No. 04-809-GPM and Anita Pothier

3    versus Bank of America Corporation, et al. 04-458-GPM are

4    called for hearing.

5           Will the parties identify themselves for the record.

6           MR. GOTTESDIENER:  Eli Gottesdiener on behalf of

7    plaintiffs.

8           THE COURT:  Good afternoon, Counsel.

9           MR. KOPECKY:  Rob Kopecky on behalf of the PWC

10   defendants.

11          THE COURT:  Pricewaterhouse.  Good afternoon.

12          MR. NESTER:  Good afternoon, Michael Nester on behalf

13   of Pricewaterhouse.

14          MR. CALLEN:  Jason Callen on behalf of

15   PricewaterhouseCoopers.

16          MR. TONE:  Jeff Tone on behalf of the Bank of America

17   defendants.

18          MS. REA:  Good afternoon, your Honor.  Anne Rea on

19   behalf of the Bank of America defendants.

20          THE COURT:  Mrs. Rea.

21          MS. SALLERSON:  Dawn Sallerson Bank of America

22   defendants.

23          MR. O'KEEFE:  Ed O'Keefe, deputy counsel Bank of

24   America.

25          THE COURT:  I'm sorry.  I didn't catch that.

1              MR. O'KEEFE:  Ed O'Keefe.

2              THE COURT:  I should be able to recognize that name.

3              MR. O'KEEFE:  Thank you, your Honor.

4              THE COURT:  Good afternoon.  Well, first I will take

5     up the matter of the Laurent case.  There is a straight up

6     motion to dismiss the case.  It is not a forum motion.  And the

7     question really for the Court is this Delta Pilots case that

8     came from Judge Reagan's chambers, but I looked at it and it's

9     three years ago.  So time flies.

10             Now who is going to make the argument for the

11    defendant?

12             MR. KOPECKY:  I am, your Honor.

13             THE COURT:  All right.  Just tell me -- really what I

14    want to know from you is, one, why do you think this case is

15    controlled by Delta Pilots.  I think I understand your argument

16    here.  And two, why do you think just a motion to dismiss is

17    proper as opposed to a motion to simply transfer the venue of

18    the case.

19             Now it may not be an abuse of discretion for the Court

20    to transfer the venue of the case, but that is the preferred

21    method.  Case after case after case speaks of that.

22             MR. KOPECKY:  Your Honor, let me answer the second

23    question.  Should I come to the --

24             THE COURT:  Wherever you are comfortable, as long as I

25    can hear you I'm fine.  Wherever you're most comfortable.

1          MR. KOPECKY:  I'll stand if you prefer.

2          THE COURT:  That's fine.

3          MR. KOPECKY:  Maybe I'll come up because I can see you

4     better.

5          Your Honor, as to transfer versus dismissal the

6     statute provides for either.  We ask for dismissal.  We did not

7     ask for a 1404 transfer --

8          THE COURT:  I understand that.

9          MR. KOPECKY:  -- against the parties, but certainly

10    under 1406 this court can dismiss or transfer.  We would have

11    no objection to transfer.  I mean because if you dismiss it I

12    believe he would have the right to re-file.  Transfer

13    accomplishes that with one less step.  We would have no problem

14    with a transfer and there are a number of forums that we

15    believe are clearly appropriate that the case could be

16    transferred to without incurring another venue objection from

17    us.  And I would be happy to address that specific issue if you

18    are interested in that.

19         THE COURT:  I will.  And I also, though, let's get

20    right to the Delta Pilots case and --

21         MR. KOPECKY:  The Delta Pilots case there were

22    something like 2700 or so participants in a plan.  There were

23    two named plaintiffs.  Neither of which I believe at the time

24    of the lawsuits were resident in the forum in this district.

25    The Court -- Judge Reagan looked at the statute.  He noted that

1    there were, depending on how you count them, three or four

2    bases for venue that are permissible under the ERISA statute.

3    One where a plan is administered, two where the breach

4    occurred, and then it says, "or where a defendant resides or

5    may be found".

6              THE COURT:  And being found is the skinniest of the

7    four, I guess.

8              MR. KOPECKY:  I'm not sure it is the skinniest but you

9    could certainly make that argument.  So in that case the

10   plaintiffs were hanging their hat on "found", where may be

11   found.  But Judge Reagan addressed the entirety of the venue

12   provision.  And in a passage that we quoted in full in our

13   reply brief he said.  The plan is not administered here, it is

14   administered in Atlanta.  The breach certainly did not occur

15   here because.  And then he explained why the ties were to

16   Atlanta I believe rather than the Southern District of

17   Illinois.  He said, Obviously the plan does not reside here for

18   purposes of ERISA.  And he said, And I also find it isn't found

19   here.  That was what the plaintiffs argued and that was what he

20   addressed in some detail.  He discussed at some length the

21   cases that the plaintiff cited in support of their proposition.

22   He noted that in each of those cases the plaintiff bringing the

23   action was resident in the forum; that there was some

24   significant tie to the forum.  And he compared those cases to

25   his case and he said, Here we have precious little tie to the

1    forum.  We have two plaintiffs, two named plaintiffs.  Neither

2    of which has shown that he has been denied or received improper

3    benefits of been denied his proper benefits in this forum.  And

4    he applied the minimum contacts test for determining -- it is

5    basically a test that's developed for personal jurisdiction

6    that's been applied in the venue context.  And he applied that

7    test and determined that the plan lacked sufficient minimum

8    contacts to the Southern District of Illinois.

9         We believe that Judge Reagan was right when he said

10   the plan was not administered in this district.  He was right

11   when he said the breach did not occur in this district.  He was

12   right when the said the plan did not reside in this district.

13        And as for the final analysis, the minimum contacts,

14   you know, I can't say that the case controls here because

15   minimum contacts turns on the facts of every case.  He was

16   right in saying that was the test, and the Seventh Circuit

17   endorsed that.  Obviously we have to make the minimum contacts

18   arguments based on the facts of this case not the other case.

19        THE COURT:  Judge Ripple put a little different twist.

20   Reading his opinion, does it make any difference that the named

21   plaintiffs were not in this venue?  I mean, it looked to me

22   like rereading the Delta case that that really didn't have much

23   to do with the matter at all.  It was just that the plan wasn't

24   administered here.  It really can't say it could be found to be

25   here.

1          MR. KOPECKY:  For purposes of minimum contact, your

2     Honor, the focus is really on the activities of the defendant.

3          THE COURT:  Right.  Rather than the plaintiff.

4          MR. KOPECKY:  I think for purposes of where the breach

5     occurred I think it makes a huge difference whether the

6     plaintiff resides in this district or not.  That wasn't what

7     Judge Ripple was addressing.  He was addressing whether or not

8     the defendant could be found here.  So he was focusing on the

9     level of connection between the defendant and the forum.  And

10    as your Honor knows there are two ways to establish minimum

11    contacts.  There is specific jurisdiction.

12         THE COURT:  And the general.

13         MR. KOPECKY:  So under specific jurisdiction the

14    question in that case was:  Did this defendant purposely avail

15    itself of the privilege of doing business in the Southern

16    District of Illinois?  And Judge Ripple concluded that based on

17    the very limited contacts between that defendant and this

18    district that was not the case.

19         THE COURT:  Okay.

20         MR. KOPECKY:  So, I agree with your Honor that for

21    purposes of the minimum contacts test the critical fact is not

22    where the plaintiff resides.  The critical facts are the

23    contacts of the transaction to the jurisdiction.

24         Now part of that certainly is where the plaintiff

25    resides.  That's a factor because if the plaintiff or

1    plaintiffs are residing in and working in this district then

2    that's an element of the contact between the defendant and the

3    district.  So it's not irrelevant, but it's not determinative

4    either.  Because certainly for general jurisdiction you can

5    have the corporation that is engaged in the systematic and

6    continuous doing of business in a jurisdiction wholly apart

7    from where the plaintiff resides.

8              THE COURT:  Right.

9              MR. KOPECKY:  I will say that it is noteworthy of all

10   the cases plaintiff relies on and I believe all the cases we've

11   relied on and the ones I've looked at, cases upholding venue in

12   ERISA cases uniformly involved situations where the plaintiff

13   reside in the forum where you don't have an out-of-forum

14   plaintiff seeking to bring an ERISA action not in its own

15   forum.  In fact, many of the cases talk about there is a

16   presumption in favor of the home-forum plaintiff, so it is not

17   an irrelevant fact.

18             THE COURT:  All right.  Thank you.

19             MR. KOPECKY:  So to the extent that Waeltz controls I

20   think the analysis that Judge Reagan applied is correct.  The

21   minimum contact tests is the test that applies.  We believe

22   that the plaintiff who has the burden of establishing venue has

23   not come close to showing that there are minimum contacts

24   sufficient to meet either the specific jurisdiction test or the

25   general jurisdiction test and plaintiff has submitted a number

1     of materials.  I would be happy to address each of those

2     because I don't think any of them individually or in the

3     aggregate come close to --

4          THE COURT:  Well, I'll hear his argument.  If I want

5     any more argument on the subject I'll let you know.

6          MR. KOPECKY:  All right.  Because there are materials

7     that were submitted that I think require some explanation.

8          THE COURT:  All right.  Thank you.

9          I'll hear from the plaintiff now on this one issue.

10         MR. GOTTESDIENER:  Your Honor, thank you.  With

11    respect to the Delta Pilots case actually that controls in the

12    opposite direction, your Honor.  I would submit to the Court

13    that first on the critical issue question of law, the question

14    of the word reside.  The plaintiffs in that case made the same

15    mistake that the defendants made in this case which is they

16    construe the word reside as being a synonym for found.  And

17    Judge Ripple was absolutely a hundred percent clear that reside

18    necessarily means something different from found on two

19    grounds.  One the general statutory construction principle that

20    we don't assume that Congress writes a statute that uses

21    redundancies and in fact in 13 -- in 1132(e)(2), the provision

22    in question, the word reside actually appears twice.

23         And Judge Ripple further said that that's how we know

24    that the word found doesn't mean minimum contacts with the

25    nation because that's what resides means.  And he focuses

1     attention on 1391(c) which he says, We know that Congress

2     didn't mean found to be the connections just with the country

3     as a whole its got to be something different because that's

4     what reside means.

5          And quite carefully the Seventh Circuit throughout the

6     opinion dropped footnotes and makes statements, well, the

7     plaintiffs have limited their argument to the word found.  And

8     essentially, your Honor, with due respect to plaintiff's

9     counsel in that case, they made the mistake of focusing all of

10    their ammunition on the word found which absolutely the Seventh

11    Circuit got it right looking at Varsic and what Congress's

12    intent was in 1974.

13         Because your Honor in 1974 if you are drafting a

14    statute that says there's going to be venue where the plan is

15    administered, where the breach occurred, where a defendant

16    resides, or where a defendant is found, obviously in 1974

17    construing the word reside or found to be minimum contacts with

18    the nation couldn't be the right answer because it would

19    obviously make where the plan is administered and it would make

20    where the breach occurred completely surplusage.

21         However, what the plaintiff's missed, unfortunately

22    for them, was that in 1988 Congress amended the definition of

23    the word reside.  And it did so in 28 USC 1391(c) which all

24    courts -- I've not found a single case where any court has not

25    looked at 1391(c), looked to, for the word reside in ERISA.

1    And if you look to 1391(c) it says --

2         THE COURT:  What does 1391(c) say?  Just read the

3    statute to me.

4         MR. GOTTESDIENER:  It literally I can't quote it

5    because -- if I could take a second to find it.

6         THE COURT:  Just take a moment.

7         MR. GOTTESDIENER:  It says amenable.  Where the

8    defendant is amenable to personal jurisdiction.  And

9    unfortunately the quote is escaping me, the actual test, I'm

10   sorry.  Oh, maybe I have it here.

11        THE COURT:  Well, I can look it up.  1391(c).  That

12   has no application in this case at all does it?

13        MR. GOTTESDIENER:  No, your Honor, I would disagree.

14        MR. KOPECKY:  We don't have a corporation here.

15        MR. GOTTESDIENER:  That's also correct, your Honor.

16   The cases are uniform that the corporation -- since 1966 the

17   Supreme Court read the same statute and said we are going to

18   apply that to unincorporated associations.  The Supreme Court

19   case from 1967, I'm sorry, involved the labor union.  And they

20   said we were going to apply 1391(c).  It is a little strange.

21        THE COURT:  I can tell you there are numerous cases

22   out of our Courts of Appeal that repeatedly state that an LLC

23   or LLP is not to be treated as a corporation.  And 1391(c) here

24   by its terms has to do with corporations.  That's why I'm

25   saying it doesn't seem to me that 1391(c) has anything at all

1     to do with our case here.

2          MR. GOTTESDIENER:  Well, your Honor, the general venue

3     provision -- I struggled with that.  And in the brief that I

4     filed I quoted about 12 cases.  Everyone, Wright and Miller,

5     and everybody said that since the United States Supreme Court

6     said in 1967 we are going to read the word corporation to be

7     unincorporated associations, all cases under ERISA have looked

8     to 1391(c) and.

9          THE COURT:  What you are saying is however they've

10    treated LLCs for purposes of jurisdiction, for purposes of

11    venue I am to treat them as if they were a corporation?

12         MR. GOTTESDIENER:  Yes.  And in fact, your Honor, the

13    law of venue and personal jurisdiction is so odd that if you're

14    to look to whether plaintiff corporation or unincorporated

15    association or partnership could sue, the rules are all

16    different.

17         THE COURT:  I understand that.  But what you are

18    saying is I am to read this as if it was a corporation, just

19    says LLP or LLC.

20         MR. GOTTESDIENER:  Yes.  Or plan, unincorporated

21    association.  And where's your authority?  The Delta Pilots

22    case because Judge Ripple said -- didn't literally say it as

23    applied to this case, but the defendant in that case was a

24    plan.  It wasn't a plan.  It was an unincorporated association

25    and Judge Ripple said, well, let's look at the definition of

 1    the word reside.  And he was -- he didn't say that statute

 2    doesn't apply.

 3            THE COURT:  But of course there the plaintiffs were

 4    going under the venue provision of ERISA.  They were not going

 5    under that 1391(c)?  I mean, we don't have to worry about it

 6    when it says when we're talking about an ERISA plan

 7    specifically.  They were going under the specific ERISA venue

 8    provision, weren't they?

 9            MR. GOTTESDIENER:  Yes, your Honor.

10            THE COURT:  Okay.

11            MR. GOTTESDIENER:  But the court in this case says,

12    like courts every where -- and I'm saying uniform, I'm saying

13    dozens and dozens of cases -- look to 1391(c), the general

14    definition of reside, because ERISA doesn't define the word

15    reside.

16            THE COURT:  All right.  I'm with you.

17            MR. GOTTESDIENER:  Okay.  So if that's the case and

18    the law doesn't really line up very well and make a lot of

19    sense.

20            THE COURT:  What you're saying here is that the plan

21    resides in the Southern District of Illinois.

22            MR. GOTTESDIENER:  For this case or in our case?

23            THE COURT:  In your case.

24            MR. GOTTESDIENER:  Yes, I wanted to be --

25            THE COURT:  Tell me very briefly why you think that is

1    the case.

2        MR. GOTTESDIENER:  Because it is a corporation, a

3    partnership, and an unincorporated association that is

4    domestic, that is served anywhere properly, which is not

5    disputed here, as a matter of law through Rule 4 there is

6    personal jurisdiction under Rule 4.  And under Rule 4 it ties

7    into 1391(c) since 1988.

8        In 1988 Congress changed the definition of reside and

9    for corporations only -- and corporations include

10   unincorporated association and partnerships and says there is

11   in effect nation-wide venue.  They equate just for corporations

12   not for individuals and the defendant's argument is false in

13   their reply brief where they say that we make the word reside

14   surplusage.  Wrong.

15       There are plenty of ERISA cases:  Mazola (phonetic);

16   Beersworth (phonetic), the most famous in the Second Circuit at

17   least, individual defendants they reside where they're

18   domiciled.  They would not be subject to automatic national

19   venue.  Our definition is the only one that makes any sense.

20   In fact, your Honor, they don't have a definition of reside.

21   They want to say that it is a cinnamon -- synonym.  Nobody says

22   that.  There's not a single court anywhere that says we're

23   going to find that the word reside that appears twice in the

24   same sentence is surplusage.

25       And Judge Ripple says it is not surplusage.  Judge

1    Ripple says it is something different than found.  It's

2    wherever the defendant is amenable to service.

3            THE COURT:  Let me ask you this question:  When Judge

4    Ripple says, "most notably the construction that he urges would

5    render superfluous the other clauses of ERISA venue provision

6    to allow venue wherever personal jurisdiction exists would

7    allow nationwide venue because 1132(e)(2) nationwide service of

8    process creates nationwide jurisdiction.  If such were the

9    intent of Congress there would have been no reason for Congress

10   to provide for venue where a plan is administered or a breach

11   took place."

12           So doesn't that reasoning have the same force with

13   respect to your argument as it does in this case?

14           MR. GOTTESDIENER:  It does and it shows that I win.

15   And here's why, in 1974 Congress laid out those four bases for

16   jurisdiction:  Where the plan is administered, where the breach

17   occurred, where defendant resides, or where a defendant can be

18   found.  In the Delta case the Seventh Circuit held found means

19   minimum contacts with the district.  It also said reside means

20   something different because it has to mean something different

21   because that's not the presumption with which we construe

22   statutes.

23           In 1974 there was a definition of resides and it was

24   where a corporation is incorporated, where it is licensed to do

25   business, and where it is doing business.  That was the

1    definition that obtained up until 1988.  And if this case were

2    filed in 1987 the argument would be either minimum contacts

3    with the district under the word found; or reside, which is

4    something different but -- close but it's different --

5    incorporated, where it's licensed to do business, or where it's

6    doing business.

7         At that point in time everything is fine.  We

8    completely agree with everything in the Delta Pilots case.

9    They don't.  And that's where I'm going.  Their definition is

10   it's surplusage.  We show that it is not nationwide venue under

11   my reading because if you have a case under ERISA where you

12   don't have a corporation as a defendant or a plan an

13   unincorporated association, if you are suing individual

14   trustees as occurs many times, where you are suing a human

15   being, there is not going to be nationwide venue because you

16   don't look to 1391(c) because that only applies to entities.

17   You look to where the person is domiciled.

18        They have no definition of the word reside.  What is

19   their definition?  It doesn't appear in their brief; it didn't

20   appear in their argument.

21        THE COURT:  Tell me why you think again that the plan

22   resides here.

23        MR. GOTTESDIENER:  Because it has minimum contacts

24   and -- with the nation and was properly served under Rule 4.

25        THE COURT:  All right.  Thank you.  Do you wish to

1    respond, Counsel?

2            MR. KOPECKY:  I would like to respond on that specific

3    question.

4            THE COURT:  Yes.  This is a pretty narrow question.

5            MR. KOPECKY:  And that's the one I would like to

6    address, your Honor.

7            First of all, I want to reiterate something your Honor

8    said to Mr. Gottesdiener here that I agree with, and that is

9    1391 does not govern the venue provision of ERISA.  It is a

10   separate and distinct venue provision.  We looked at the venue

11   provision of ERISA, not 1391.  Mr. Gottesdiener has made up

12   this notion that a part of 1391 gets incorporated into the

13   venue provision of ERISA.  Congress never did that.  And when

14   Congress amended 1391 in 1988 they didn't say we're also

15   amending the venue provision of ERISA.  They didn't say we are

16   incorporating this into the venue provision of ERISA.  They

17   didn't say that.  They didn't say that in 1974; they didn't say

18   that in 1988.

19           Mr. Gottesdiener said there are dozens of cases under

20   ERISA saying that partnerships are treated like corporations

21   for venue.  He hasn't cited one of those in his brief that I'm

22   aware of.  He's cited a bunch of cases that say under 1391 that

23   uses the word corporation in it, that corporations and

24   partnerships are treated similarly, that's true.  That's for

25   1391 purposes which is a different venue provision.  The ERISA

1    venue provision doesn't even use the word corporation.

2         THE COURT:  I think he is saying in the lack of any

3    better authority it is not unreasonable to see where, well, in

4    another venue statute what did the word reside mean.  My only

5    problem with that and what I'm thinking about is when Judge

6    Ripple says here, "a construction that he urges would render

7    superfluous" it seems to me that there is a good argument that

8    it applies in this case with as much force as found and reside

9    is the same thing.

10        MR. KOPECKY:  I agree.  Because everybody is subject

11   to nationwide personal jurisdiction under ERISA.  And if reside

12   equals subject to personal jurisdiction then there is venue in

13   every court and every ERISA case in America could be brought

14   here for instance, or California.

15        I want to call to the Court's attention, Counsel cited

16   some supplemental authority on Friday.  It was a recently

17   decided case from the District of Oklahoma.

18        THE COURT:  I read that.

19        MR. KOPECKY:  And I read that case.  And in there

20   there is a case cited from Tenth Circuit, Peay, P-E-A-Y.  It is

21   205 F.3d 1206.  And there is a long footnote in that case

22   discussing resides in the context of ERISA, and it is Footnote

23   3.  And the court talks about the relationship between 1391(c)

24   and the 1132, the ERISA venue provision.  And while I don't

25   happen to agree with Peay, I think there are parts of it that

1    are wrong.  On this part I agree with it, it says, "under

2    1132(e) a corporation resides wherever personal jurisdiction is

3    proper.  Although this reading seems to negate the rest of the

4    venue provisions for corporations it still has meaning when a

5    plaintiff sues an individual or a partnership."

6              So the Tenth Circuit talking about the ERISA venue

7    provision, not 1391, said we're going to treat corporations and

8    partnerships differently for venue purposes.  So that's really

9    all I have on this point, 1391 doesn't control 1132.

10             The cases are legion where they say you have a

11   specific venue provision in a statute that creates the right of

12   action that venue provision controls, you don't look to the

13   general provision.

14             THE COURT:  Who has the forum motion on the second

15   case?

16             MR. TONE:  I was going to address that, your Honor.

17             THE COURT:  You may proceed.  Bank of America.

18             MR. TONE:  Yes.  Your Honor, and our motion addresses

19   the Section 1404(a) as to whether this forum is the most

20   convenient forum.  And we have not -- Bank of America

21   defendants have not challenged the questions of whether venue

22   is appropriate.

23             THE COURT:  I understand that.

24             MR. TONE:  So the fact that the -- one of the

25   defendants might be found here doesn't decide the question.

1    The question is:  Under all the factors that the Court has

2    looked at has -- have the Bank of America defendants satisfied

3    their burden of showing --

4            THE COURT:  Well, you say showing most of the

5    participants are in the Northern District of California in your

6    papers.

7            MR. TONE:  We have not said that.  Mr. Gottesdiener

8    has asserted that.

9            THE COURT:  I'm sorry.  Maybe I had that wrong.

10           MR. TONE:  He's suggested that might be the case just

11   because the Bank of America, you know, before the merger

12   Nations Bank was located there and California is a huge state.

13   We frankly don't know whether --

14           THE COURT:  You know, the problem with a forum

15   motion -- you have a lot of good arguments -- that doesn't mean

16   you get the forum you want.  That just means the judge sends it

17   to wherever the judge thinks it's the most convenient forum.

18   You understand that?

19           MR. TONE:  No, I appreciate that, your Honor.  But I

20   think we demonstrated that that forum in this case is the

21   Western District of North Carolina because Bank of America's

22   headquartered there.  The plan that's a central plan in this

23   case was developed, approved, implemented, administered all

24   from that district.

25           THE COURT:  What about the participants?  You are

1    talking about convenience of the parties.  In the modern world,

2    I mean, all of the paper is transferred almost immediately.  I

3    mean, these are going to be pure questions of law.  The -- you

4    know what Xerox says, there is not much room there for trying

5    to take evidence.  And try to nuance Judge Posner's opinion out

6    of the way, that's not going to happen.

7              MR. TONE:  Well, I would like to address that.

8              THE COURT:  Well, yeah.  Tell me.

9              MR. TONE:  Because I think as we've -- as we indicated

10   in our brief there are numerous issues of fact here.  There may

11   be -- for example, there are several breach of fiduciary duty

12   counts in this case where the plaintiff has asserted that the

13   Bank of America defendants knowingly did this or knowing did

14   that.

15             THE COURT:  And they transferred the cash balance

16   plans.

17             MR. TONE:  Right.  And that's part of the complaint.

18   It's a count in the complaint.

19             THE COURT:  Somebody once won a fiduciary duty case in

20   the Seventh Circuit but it was so long ago no one can remember

21   it.

22             MR. TONE:  Let's look at, for example, even the issue

23   of say the five year normal retirement issue, which is an issue

24   that Mr. Gottesdiener has raised in the various papers.

25             THE COURT:  The 865, you mean?

1          MR. TONE:  Well, whether the bank's -- the cash

2     balance plan's use of a five year normal retirement age is

3     illegal.  Even assuming that he persuades whatever court

4     decides that issue that it is illegal, there are still

5     questions of fact.  What is the appropriate five year -- what

6     is the appropriate normal retirement age if five years is

7     inappropriate?  There are questions of fact with what would

8     have been done instead that would be relevant to an appropriate

9     remedy.

10          And if Mr. Gottesdiener says that he doesn't need any

11     testimony in this case I think we're entitled to know that at

12     this point because we believe that it is going to be necessary

13     to call these witnesses.  And he's suggested in his papers that

14     it wouldn't be necessary and that this is all going to be

15     decided on motion.  And we disagree with that.

16          THE COURT:  I take it it will not be necessary to

17     depose any of the plaintiffs.

18          MR. TONE:  We will depose the plaintiffs, the named

19     plaintiffs.  There's no question about that.  But they're not

20     all here.  In fact, there's only one -- at this point they've

21     moved to amend their complaint to add one, that would be the

22     only one in this district.  So we would -- the others are

23     scattered all over including one in the Western District of

24     North Carolina.  So I don't think -- I think the courts that

25     address these forum issues recognize that one thing you should

1    not do is just shift the inconvenience from one party to the

2    other.  So if by transferring the case to the Western District

3    of North Carolina it would be more inconvenient for the

4    plaintiffs but less -- it will be more convenient for the Bank

5    of America defendants but inconvenient for the plaintiffs then

6    that's a reason arguing against weighing against transfer.

7         But that's not what we have here because as I

8    indicated we've got one named plaintiff in North Carolina.  One

9    potential named plaintiff in this district.  Other potential

10   plaintiffs elsewhere.  To the extent there are any witnesses

11   they are going to be in North Carolina.

12        THE COURT:  Does it really matter where the named

13   plaintiff is from in this case for purposes of your motion?

14        MR. TONE:  For purpose of our motion it does not.

15        THE COURT:  That's what I thought.

16        MR. TONE:  Because the cases recognize in a nationwide

17   class action where the named plaintiff lives doesn't matter.

18        THE COURT:  That doesn't impress me too much one way

19   or the other.

20        MR. TONE:  Right.

21        THE COURT:  Tell me why in a nutshell there's a more

22   convenient forum than the Southern District of Illinois.

23   What's wrong with the Southern District of Illinois?

24        MR. TONE:  I think you have to look what are the

25   contacts with the Southern District of Illinois.  And we have,

1    as you have indicated, one named plaintiff or possible named

2    plaintiff.  We've got a small percentage of participants

3    compared to -- depending on how you count them at least ten

4    times as many in the Western District of North Carolina.

5            THE COURT:  You say there is 70 here.

6            MR. TONE:  No.  What we have said is there are

7    approximately a hundred current employees of the bank who live

8    and work in the Southern District of Illinois.  There are

9    approximately 175 additional participants who no longer work

10   for the bank who live in the Southern District but who still

11   have a balance in their cash balance plans.  That's what we

12   believe you should count for purposes of looking at this issue.

13   It's roughly 275.  Compared to roughly 12 and a half thousand

14   in the Western District of North Carolina.

15           And now these people -- these participants would be

16   beneficiaries of any relief but they really aren't necessary to

17   the prosecution of the action.  But if you do look at that

18   factor the Western District of North Carolina clearly outweighs

19   this district.

20           THE COURT:  This would be a non-opt-out class anyway,

21   I suppose.

22           MR. TONE:  That is yet to be determined.

23           THE COURT:  It would almost have to be.  If the Court

24   is going to say, you know, these cash balance plans are no good

25   you can't have some -- I mean, you're going to have to

1    administer the thing uniformly.  That's what ends up happening.

2            MR. TONE:  I think it is possible to be a no-opt-out

3    class.  We wouldn't concede that.

4            THE COURT:  You are saying in a nutshell is, look, we

5    administer the plan in North Carolina.  What else.

6            MR. TONE:  The situs of material events which the

7    courts have recognized is a separate and important factor in

8    this analysis, clearly favors the Western District of North

9    Carolina.  The plan was developed, approved, implemented and is

10   currently administered from the Western District of North

11   Carolina.  To the extent there are any witnesses they will be

12   largely from the Western District of North Carolina, not

13   exclusively but mostly.  And there are thousands and thousands

14   of participants in that district.  And Bank of America is

15   headquartered here.

16           Now compare and contrast that to this district and you

17   have the 275 participants.  Other than a possible named

18   plaintiff there will be no witnesses from the Southern District

19   of Illinois.  Nothing other than anything relating to those

20   participants, whatever they have to do with respect to the plan

21   or whatever is done with respect their participation.  Other

22   than that there is nothing relating to the plan that happens

23   here.  It's all in the Western District of North Carolina.  So

24   we believe the convenience factors clearly favor that.

25           Interest of justice.  The judicial case loads there

1    versus the case load here is very similar.  There really isn't

2    much difference so we don't view that as -- that's a neutral

3    factor.

4        But the courts do recognize that the -- you know where

5    the action is, where things happen, where all the material

6    events occurred, that that's a very important factor in the

7    interest of justice calculation, and that is the Western

8    District of North Carolina.  It's not here.  Nothing, nothing,

9    relevant to this case happened here.

10       THE COURT:  All right.  I understand your argument.

11   Thank you.

12       Counsel.

13       MR. GOTTESDIENER:  Your Honor, the argument that the

14   bank makes now and made in its papers is not the one that needs

15   to be made by the bank that has the burden of proof to show

16   that it would be clearly more convenient to go some place else.

17   They had two opportunities to follow the traditional factors

18   and show with specificity what's the inconvenience.  They

19   failed both times.  And they do it now.  They talk about

20   witnesses of mine that I would need to go to trial, which these

21   are questions of law and in their discussion about what facts

22   would be left if the Court found that a five year retirement

23   age is not a proper fiction and just a way to side step all the

24   statutory protections.

25       Those questions of fact that counsel posited they're

1  not real.  If the five year rule isn't valid there's a default,

2  it's called the statute.  So it's age 65.  The plan suggests

3  that it is age 65.  That's not a question of fact.

4        What's the remedy?  We know what the remedy is.  It's

5  age 65 and you can't get around Judge Posner's decision you

6  look --

7        THE COURT:  You might if you are in another circuit.

8        MR. GOTTESDIENER:  Yes.  Which is why they want to

9  leave.

10        THE COURT:  But there's -- everybody in the world

11  contends for the best circuit or the best court to hear their

12  case.  And Judge Rehnquist himself has said there is nothing

13  unAmerican about forum shopping.  And I tell you what, if you

14  were in their chair and you had Berger looking you in the face

15  you would be looking to get out from under it too.  If you ever

16  tried to talk to Judge Posner about pension law and you were a

17  pension lawyer, that's one of the few courts in this country

18  where the courts themselves know a lot more about pension law

19  than the people that practice it.  I'm not saying that to be

20  pejorative to these guys.  They all no more pension law.

21        MR. GOTTESDIENER:  But the Seventh Circuit isn't so

22  great on other questions.

23        THE COURT:  I wouldn't want to tell them that.

24        Put that on the record, Molly.  I find that they're

25  extraordinary in all respects.

1          But what you are saying is, they can't carry their

2    burden of showing that it's clearly a more convenient forum.

3    That is to say, in these cases that involve really just

4    questions of law there's not going to be any inconvenience to

5    anyone.  Of course, they say you have made your case harder

6    because you have thrown in these breach of fiduciary claims

7    which put a little different twist.

8          MR. GOTTESDIENER:  They've mischaracterized that, your

9    Honor.  The IRS is auditing them and already found that it is a

10   statutory violation.  That's our allegation that it is an

11   antikickback violation to have taken people's 401K money and

12   moved it into a cash balance plan and given them an IOU.

13   They've defeated someone's accrued benefit under the K plan,

14   that's a question of law.

15         THE COURT:  You say those are not breach of fiduciary

16   claims.

17         MR. GOTTESDIENER:  Your Honor, I admit that nine

18   counts down, if we can get through all of the counts, all of

19   the statutory violations, if they survive after all of that

20   there are questions that are fiduciary.  But even there, your

21   Honor, it is objective.  It's an objective test.  The way they

22   structured this plan they remain in control of the interest

23   rate by being allowed to pick what company mutual funds people

24   invest in.  So the questions of fact there will be significant

25   document exchange and some depositions but.

1          THE COURT:  Why?

2          MR. GOTTESDIENER:  I'm just not --

3          THE COURT:  Why?

4          MR. GOTTESDIENER:  I don't think there's much.  We are

5    ready to move for summary judgment on the normal retirement age

6    question, on the transfer of the 401K.  We're ready to file

7    summary judgment motions on every issue they raised in their

8    motion to dismiss.  I don't think there needs to be much.

9          THE COURT:  I understand your argument.

10          Would you like to reply?

11          MR. TONE:  Sure, your Honor.  Your Honor, Counts 6

12    through 11 are fiduciary duty counts.  I can't think of a more

13    quintessential question of fact of whether someone has breached

14    fiduciary.  You can't assume for purposes of this motion that

15    Mr. Gottesdiener will be able to establish as a matter of law

16    that the defendants have breached their fiduciary duties.  You

17    also can't assume they will prevail with respect to the five

18    year normal retirement age without -- certainly can't assume

19    that he would prevail on that and I don't --

20          THE COURT:  No judge would prejudge a case.

21          MR. TONE:  Exactly.  And you don't want to prejudge --

22    you don't want to assume a particular result and then decide

23    the transfer motion based on an assumption about that result.

24          THE COURT:  That's valid.  That's a valid point.

25          MR. TONE:  And the -- he says these are all "witnesses

1    of mine" that we're talking about.  Well, I think we have a

2    right to call witnesses to support whatever we think is

3    appropriate to support on a breach of fiduciary duty count.

4          THE COURT:  It is your record and you want to make it.

5          MR. TONE:  Right.  So these aren't all witnesses and

6    many of them no longer work for the bank.  So we think that we

7    demonstrated through the various factors the convenience of the

8    parties, the location of the proof, the situs of material

9    events, the interests of justice.  We have clearly satisfied

10   our burden.

11         THE COURT:  All right.  Thank you.  I'll take the

12   matter under advisement.  We will start writing tomorrow.  It

13   will be days not weeks before you get something from us.

14         The -- I just want to go back on the Laurent case and

15   re-read this again.  I think I understand it.  But I want to

16   re-read that in light of what I've been told here today.  And I

17   want to think about what I've been told on the forum motion

18   here on your case on the Bank of America cases.

19         The there's a couple of competing concerns.  On the

20   one hand living in a world of modernity where everything is

21   exchanged routinely through e-mails and document exchanges a

22   lot of these convenience arguments are not as heavy as they

23   used to be.

24         On the other hand, it is your record and you have a

25   right to make your record how you want.  You've been sued and

1     that -- I have to consider that.  And I also have to consider

2     that this is a highly regulated activity.  These defined

3     benefit plans and cash balance plans are that.  A lot of people

4     resisted that but they are and as such the factual issues are

5     not as dominant as they are in some other cases.

6             I have to think, too, you are in another circuit.

7     Your company is headquartered in another circuit and you have

8     relatively few numbers of beneficiaries in this -- in the

9     Southern District of Illinois, or at least I'm told that.

10            So all these things are on my mind.  I'll give them --

11    I'll do the best I can and get something to you in a short day.

12            MR. KOPECKY:  May I?  One thing.  I said I wanted to

13    come back to the point where if your Honor were inclined to

14    transfer pursuant to 1406 rather than dismiss I said there were

15    a number of forum that would not be a venue issue for us.

16    Obviously Tampa would be one, the plan is administered there.

17    The Southern District of New York would be one because PWC has

18    its headquarters there.  But another would be the Northern

19    District of Illinois where I think venue would be -- clearly

20    venue would be proper where certainly nobody could accuse us of

21    forum shopping to try to get out of the Seventh Circuit and it

22    is where the plaintiff resides and he couldn't claim it was

23    unfair place.

24            THE COURT:  It might be like going from the frying pan

25    to the fire.

1          MR. KOPECKY:  I understand.  But at least venue would

2     be proper there.

3          MR. GOTTESDIENER:  Mrs. Heller is here with her motion

4     to join a resident of the district.

5          THE COURT:  As I --

6          MR. GOTTESDIENER:  I'm not asking for the court to

7     rule on it.  I'm noting her presence, your Honor, that's all.

8          THE COURT:  I --

9          MR. GOTTESDIENER:  I wanted to note that we have a

10    separate motion with respect to the whole venue issue in

11    Laurent which says they've waived it and it's an automatic

12    waiver because three of the entities that late responded that

13    it's automatic under Rule 12 that they have waived any venue

14    objection and that's been fully briefed and I'm not seeking to

15    argue.

16         THE COURT:  I can read the waiver.

17         MR. GOTTESDIENER:  There is nothing automatic under

18    Rule 12 about this.

19         MR. KOPECKY:  I'd be happy to address that.

20         MR. GOTTESDIENER:  There is nothing automatic under

21    Rule 12.

22         THE COURT:  The matter is under advisement and I'll

23    get to you shortly.

24         MS. SALLERSON:  Judge --

25         MR. NESTER:  Judge, may I address the court?  There

1    are motions for the extension of time and page extensions with

2    regard to the reply briefs concerning the motion to dismiss

3    that were previously filed that were not presented to the Court

4    today and I wanted to bring that to the Court's attention

5    because I'm not certain that we will have dispositive ruling

6    from the court prior to the time that we ordinarily have to

7    file our responses.

8             THE COURT:  Was that your concern, Mr. Sallerson?

9             MS. SALLERSON:  Yes, it was.

10            THE COURT:  You don't have to worry about that.  I'm

11   not going -- no one is going to forfeit their right to be heard

12   here on something like that.  And if I need to give you more

13   time I will.  You know, the Court's interest in this case, in

14   this thing is to get it right and not commit reversible error

15   and if somebody has something to say that's going to help me I

16   want to hear it.  And I'll give you what time you need.

17            MR. NESTER:  Thank you, your Honor.

18            THE COURT:  You just don't need to worry about that.

19   If I need -- I'll consider it.  I like to decide and do decide

20   cases on the merits, and if I need some additional authority if

21   I decide to keep these cases you will get plenty of time.  The

22   court is in recess.

23                    (End of requested transcript)

24                              -oOo-

25

1                    REPORTER'S CERTIFICATE

2        I, Molly N. Clayton, RPR, Official Court Reporter for the

3    U.S. District Court, Southern District of Illinois, do hereby

4    certify that I reported with mechanical stenography the

5    proceedings contained in pages #ofpages    ; and that the same

6    is a full, true, correct and complete transcript from the

7    record of proceedings in the above-entitled matter.

8

9            DATED this    day of            , 2005.

10

                        _____

11                                Molly Clayton, RPR

12

13

14

15

16

17

18

19

20

21

22

23

24

25