IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **TIMOTHY D. LAURENT**<br><br>On behalf of himself and all<br>others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br>**v.**<br><br>**PRICEWATERHOUSECOOPERS LLP**, *et al.*,<br><br>　　　　　　　　　　Defendants. | Civil Action No. 05-1291 (JR) |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS ON STATUTE OF LIMITATIONS GROUNDS**

**INTRODUCTION**

Plaintiff's claims are not time-barred, whether one considers:

- The limitations period itself. It is 6 years, not 3 years as Defendants claim; *or*

- When Mr. Laurent's claims accrued. The federal "discovery rule" postpones the accrual of a federal cause of action as long as "the injury in question [was] not of the sort that [could] readily be discovered when it occur[red]."[1] Mr. Laurent's claims cannot possibly have accrued in May 2002 on the date Mr. Laurent received payment of his RBAP account balance, because all he knew or could have reasonably known at that time was that the Plan paid him every penny that it said it would. But his claim of injury is <u>not</u> that the Plan breached its contract or paid him too little, but that the Plan *calculated his benefit* using **an illegal plan term never disclosed to him** (or to any other of the proposed Class members); *or*

---

[1] *Connors v. Hallmark & Son Coal Co.,* 935 F.2d 336, 342 (D.C. Cir. 1991).

- <u>That Defendants' fraudulent concealment tolled the running of the limitations period.</u> Defendants actively concealed the illegal plan term used to calculate Plaintiff's benefit and, indeed, affirmatively and consistently lied to participants about it.  As a result, the limitations period was tolled and did not run until Plaintiff had actual knowledge of the gravamen of his claim (which he obtained from his counsel, not PwC).

## BACKGROUND

This action does not, as Defendants would have it, assert mere ERISA contract claims, otherwise known in the ERISA world as "claims for benefits" or "benefits claims."  *See* ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  Instead, it challenges *the legality,* under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), of the PricewaterhouseCoopers("PwC") "cash balance" defined benefit pension plan, The Retirement Benefit Accumulation Plan for Employees of PricewaterhouseCoopers LLP (the "RBAP" or the "Plan").  **Plaintiff's claims are <u>not</u> premised on the assertion that the Plan paid him too little or simply miscalculated his benefit.**  His claims are all based on the contention that the injury he suffered was – unknowable as well as unbeknownst to him at the times – that Defendants had calculated his benefit using a **hidden, illegal plan term:  namely, RBAP § 2.32**.[2]

---

[2] To be clear, the relevant "injury" that is the focus of the Complaint is the **mere use** by PwC of an illegal Plan term to calculate benefits – regardless of the impact on benefit amounts.  Plaintiff's cause of action is nearly identical in this regard to the claim successfully prosecuted by former participants of the cash balance pension plan maintained by Xerox Corporation.  In the *Xerox* case, as here, the proper identification of the relevant injury was of vital importance to the procedural posture of the case.  The district court in the *Xerox* case, in a decision later affirmed by the 7th Circuit, addressed Xerox's contention that the mere use of an illegal plan term was not an injury that the lead plaintiff had standing to challenge.  This was relevant because the lead plaintiff in the *Xerox* case experienced no decrease in benefits – his only injury was that the Xerox plan **used an illegal plan term to calculate his pension benefit**.  The district court concluded that the plaintiff did have standing, because the gravamen of his complaint was not that he was paid too little in benefits, but that the terms of the plan were illegal – and that this was an injury for which he could seek appropriate redress.  *Berger v. Nazametz,* 2001 U.S. Dist. Lexis 10222, *7-8 (S.D. Ill. June 26, 2001) ("Each member of the class has standing to bring an action to challenge an allegedly illegal plan provision, 29 U.S.C. § 1132(a)(3), regardless of whether it resulted in actual damages to a particular class member") *aff'd, Berger v. Xerox Corporation Retirement Income Guarantee Plan*, 338 F.3d 755 (7th Cir. 2003).

The Complaint alleges that § 2.32 of the Plan is <u>illegal</u> because it purports to define "normal retirement age" – an age that every retirement plan by statute must have and must use to define the plan's basic benefit – in a manner prohibited by ERISA. Section 2.32 posits that a participant in the RBAP attains "normal retirement age" on the date he completes **5 years of work for PwC, regardless of his age.** Thus, the copy room clerk straight out of high school will have reached his "normal retirement age" at PwC at age 23 – although, *see* below, PwC never tells him that. The Complaint alleges Defendants adopted and use this obviously fictitious definition of retirement age with the specific intent of evading the requirements of the law, namely, ERISA and the Tax Code's defined benefit plan standards and participant protections. Compl. ¶¶ 103-07. By calculating benefits premised on this "normal retirement age," the Plan violated ERISA and the Code in the ways detailed in Counts One through Five.

The Complaint alleges that PwC assiduously <u>hid</u> the existence of this definitional ruse from employees precisely so they would not learn of these violations. The point of calculating benefits this way was to permit PwC to, among other things, pay employees from a defined *benefit* plan what is in fact a mere defined *contribution* (or 401(k)-style) benefit. The Complaint details how PwC concealed from participants that the RBAP's central operating principle was and is the fiction that retirement occurs at the end of 5 years of work. *Id.* ¶¶ 83-107. Among the ways this was done was by **lying to participants about it in the Plan's Summary Plan Description**, where PwC year after year told them that normal retirement age is *age 65, id.* ¶ 88, and by posting a definition of normal retirement age on the Plan's website that further lulled participants into believing that their benefits were calculated by means of the prototypical normal

retirement age of age 65, *id.* ¶ 110.

## DISCUSSION

### 1. What is the applicable limitations period?

Neither side alerted the Court that, as a threshold matter, there is a choice-of-law question presented here. While Defendants' motion is premised on the assertion that the applicable limitation period is 3 years, based on "borrowing" the District of Columbia's statute of limitations for breach of contract claims, the RBAP contains an explicit choice-of-law clause that directs the Court to use the law of New York, where PwC is headquartered, for all purposes "except to the extent preempted by ERISA." RBAP § 16.6(a) ("The Plan shall be construed *and enforced* according to the laws of the State [of New York], and all provisions hereunder shall be administered according to the laws thereof, except to the extent preempted by ERISA") (emphasis added).[3] New York courts (like most courts) treat ERISA claims, both ordinary benefit claims as well as non-fiduciary "statutory" claims (such as those raised here), as most analogous to breach of contract actions, the limitations period for which is 6 years.[4]

The RBAP is a contract of adhesion that PwC unilaterally wrote and that PwC can and frequently does unilaterally amend. It can only be assumed that PwC purposefully included, and for all these years has purposefully maintained, § 16.6(a)'s New York choice-of-law provision for reasons the Firm finds good and sufficient. Plaintiff can see no reason the clause should not be applied here.

---

[3] The Plan defines "State" at § 2.42 as "[t]he state in which is located the principal office of the Firm." The first page of the Plan states that "PricewaterhouseCoopers LLP (the 'Firm') . . . [is] a partnership with its principal office in New York, NY."

[4] *E.g., Carollo v. Cement and Concrete Workers Dist. Coun. Pension Plan,* 964 F.Supp. 677, 688-89 (E.D.N.Y. 1997) (applying CPLR § 213(2), actions upon a "contractual obligation," as most analogous in action seeking plan reformation).

4

In determining whether to give the clause effect, this Court looks to federal common law choice-of-law principles. *A.I. Trade Finance, Inc. v. Petra International Banking Corp.,* 62 F.3d 1454, 1463-64 (D.C. Cir. 1995). Applying those principles, the Ninth Circuit held in *Wang Laboratories, Inc.* v. *Kagan,* 990 F.2d 1126 (9th Cir. 1993), that "[w]here a choice of law is made by an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair." *Id.* at 1128. The Court should hold that New York's 6 year statute of limitations governs this action, and deny Defendants' motion without more.[5]

### 2. When did Mr. Laurent's claims accrue for limitations purposes?

Defendants do not and cannot dispute that when the Court turns to consider when his claims accrued so as to start the running of the applicable statute of limitations period, Mr. Laurent is entitled to the benefit of the federal "discovery rule." First explicitly adopted by the D.C. Circuit in *Connors v. Hallmark & Son Coal Co.,* 935 F.2d 336 (D.C. Cir. 1991) (but applied in practice "long" before *Connors, id.* at 343), the discovery rule developed as an exception to the *injury occurrence* rule where (as in *Connors*) "the injury [was] not of the sort that [could] readily be discovered when it occur[red]." *Id.* at 342; *see also id.* at 343 (where the injury was "likely to be a hidden injury"). The rule holds that the accrual of the plaintiff's cause of action must be postponed for limitations purposes until he knew or should have known of "the injury that is the basis of his action." *Id.* at 341-42. *Accord Sprint Communications Co. v. FCC,* 76 F.3d 1221, 1228 (D.C. Cir. 1996) (discovery rule asks whether prospective plaintiff was "on

---

[5] *Accord Central States, Southeast and Southwest Areas Pension Fund v. The Kroger Co.,* 2003 WL 1720023, *11 (N.D. Ill. March 31, 2003) ("the Seventh Circuit would follow the opinion in *Wang* and uphold the choice of law clause so long as it was not unreasonable to do so").

5

notice that [he] might have a claim"; "[the] claim accrues when the plaintiff has inquiry notice").[6]

Thus, the discovery rule asks: Was the RBAP's **use of the 5-year retirement age** (the "injury") the sort of injury that Plaintiff could have readily discovered at the time his benefit was calculated? Clearly not. The Complaint alleges facts that, taken in the light most favorable to Mr. Laurent, demonstrate that he was blamelessly ignorant of the fact that the RBAP used a fictitious definition of "retirement age" to his calculate benefits. Compl. ¶¶ 83-107. The Complaint describes in detail how Defendants (his fiduciaries) purposefully hid this fact from Plaintiff and other participants, going so far as to falsely represent, year after year, that normal retirement age was age 65. *Id.*[7]

Only by sleight of hand can Defendants even suggest that it is consistent with the discovery rule to say that Mr. Laurent's claims accrued at the point of injury, *i.e.,* May 2002, when the Plan actually used the illegal Plan term to calculate his benefit. In fact, Defendants never once state, identify, discuss or apply the discovery rule as defined by Connors, its progeny or any other court as far as Plaintiff knows. Whenever Defendants *seem* to be discussing the discovery rule, in fact they are simply talking about the injury *occurrence* accrual rule, with the label "discovery rule" slapped on. Both in their opening brief in support of their motion and in their reply brief, Defendants quote *Connors* as saying that the discovery rule imputes awareness of the injury at the time it occurs "*'even if the plaintiff protests that she did not in fact become aware of the injury when it occurred.'*" PwC Mem. at 9 n.6 (emphasis added by PwC); PwC

---

[6] *Cf. Griffin v. U.S. Parole Comm'n,* 47 F.Supp.2d 12, 14 (D.D.C. 1999) (Privacy Act violation accrues "when the plaintiff knew or should have known of the Privacy Act violation," *citing Tijerina v. Walters,* 821 F.2d 789, 797-98 (D.C.Cir. 1987).

[7] *Compare Williams v. Central Money Co.,* 974 F.Supp. 22, 26 (D.D.C. 1997) (where this Court denied a defense motion for summary judgment on limitations grounds in a predatory lending case under the District of Columbia's substantially similar discovery rule where there was a disputed issue as to whether the mortgage company president misrepresented to plaintiff that his company was not the lender and would make no money from the loan and may have taken steps to induce plaintiff to believe he could trust defendant's word).

Reply at 3 (emphasis added by PwC).  But at the same time that Defendants repeatedly quote and emphasize this passage from *Connors*, they omit mention that *Connors* said the "imputed awareness" principle applied **only where the injury was "readily apparent."**  That leaves the impression that the discovery rule imputes awareness of the injury whether the injury is readily discoverable or not, which is exactly the opposite of what the discovery rule is all about.

An injury of which the plaintiff is actually aware at the time it occurs, or is readily apparent at that time (notwithstanding the plaintiff's protest to the contrary) – as in the case of a simple breach of contract injury or a garden-variety benefit claim underpayment – is simply not the type of injury with which the discovery rule is concerned.  For those injuries, use of the injury occurrence accrual rule is appropriate.  The discovery rule asks whether the circumstances warrant a postponement from the date the injury occurs to some later date, when it would be fair to impute to plaintiff a constructive awareness of his injury.  Defendants do not, because they cannot, even attempt to argue that this Court can (let alone, given the posture of the case, *must*) conclude that Mr. Laurent should have somehow figured out that Defendants had calculated his benefit using an illegal plan term that fictitiously defined retirement as 5 years of work.[8]  Every claims accrual argument Defendants have made or will make here depends on dressing in "discovery rule" clothing what is just the always-unforgiving, injury *occurrence* standard.

---

[8]  The conclusion that Defendants would likely have the Court reach – *i.e.,* that Plaintiff should be deemed to have been on notice of the illegal plan term because he could have asked for a copy of the Plan and could have found the provision by going through the 250-page Plan document – is foreclosed by ERISA and applicable regulations.  ERISA and the regulations require that a pension sponsor provide participants with a summary description of the plan "written in a manner calculated to be understood by the average plan participant," 29 C.F.R..§ 2520.102-2(a), for the express purpose of relieving participants of the obligation to become pension detectives.  ERISA entitles participants to trust that the SPD is the honest, accurate and definitive plain English explanation of the plan's key provisions.  *See Germany v. Operating Engineers Trust Fund*, 789 F. Supp. 1165, 1172 (D.D.C. 1992) (rejecting argument that participant should have read plan and found there a subrogation clause that conflicted with that in the SPD).  If an employee were expected to request and read the entire plan to obtain an understanding of benefits provided, then there would be no need to provide a summary plan description.  *Id.*  This is an *a fortiori* case because the regulations promulgated before the issuance of the SPD containing the misrepresented normal retirement age specifically imposed the affirmative duty to "also include a statement describing the plan's normal retirement age, as that term is defined in section 3(24) of the Act."  29 C.F.R. § 2520.102-3(j)(1).

**3.    Did fraudulent concealment toll the limitations period?**

Although the Complaint alleges in detail that Defendants fraudulently concealed the RBAP's use of the fictitious 5-year retirement age to calculate benefits, neither side has thus far discussed whether this would toll the running of the limitations period here, assuming it has accrued. A review of the relevant authorities shows that it would, providing a third reason why the Court should deny Defendants' motion.

All the essential elements of fraudulent concealment, under either federal or state law, are easily satisfied here.[9] To make out a case of fraudulent concealment, the plaintiff must show that the defendant took "some misleading, deceptive or otherwise contrived action" to conceal information material to the plaintiff's claim. *Hobson v. Wilson,* 737 F.2d 1, 34 (D.C. Cir.1984). "[W]here there is a fiduciary duty to disclose information on a particular matter, failure to do so will constitute fraud or fraudulent concealment that tolls the statute of limitations on any claim as to notice of which that information is material." *Riddell v. Riddell Washington Corp.,* 866 F.2d 1480, 1496 (D.C. Cir. 1989). Throughout the period during which the plaintiff did not discover his injury because the defendant fraudulently concealed material facts related to its wrongdoing, the limitations period will not run against the plaintiff. *Richards v. Mileski,* 662 F.2d 65, 71 (D.C. Cir. 1981).

The allegations in the Complaint outlined in section 2 above demonstrate that not only was the accrual of Plaintiff's claims postponed under the discovery rule – but even after his claims accrued, the statute of limitations was further tolled by Defendants' acts of fraudulent

---

[9] "Federal courts following state statutes of limitations must also adopt state tolling provisions unless they are inconsistent with the Constitution and laws of the United States." *Griffin v. U.S. Parole Comm'n,* 47 F.Supp.2d 12, 15 (D.D.C. 1999). Nevertheless, the elements of fraudulent concealment are the same in both federal and District of Columbia law. *Riddell v. Riddell Washington Corp.,* 866 F.2d 1480, 1491 (D.C. Cir. 1989). For purposes of this argument, Plaintiff will assume New York's fraudulent concealment rule mirrors federal and District of Columbia law.

concealment. The cases say that once the plaintiff has shown that a defendant committed an act of concealment, the defendant has to show actual notice of sufficient facts to identify the particular cause of action at issue. *Riddell,* 866 F.2d at 1494-95. Here, although these facts are not contained in the Complaint (facts regarding fraudulent concealment need not be contained in the Complaint prior to Defendants' answer, *see Connors,* 935 F.2d at 343 n.12), Defendants have already taken Mr. Laurent's deposition and there should be no dispute that it was not until sometime in 2004 that he learned, from counsel, sufficient facts to identify his causes of action. That makes this action timely no matter what limitations period is used and even assuming Defendants' theory of claim accrual prevails.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that Defendants' motion to dismiss on statute of limitations grounds be denied.

Dated: March 2, 2006                                Respectfully submitted,


                                                       /s/Eli Gottesdiener
                                                    Eli Gottesdiener

                                                    **GOTTESDIENER LAW FIRM, PLLC**
                                                    1025 Connecticut Avenue, N.W.
                                                    Suite 1000
                                                    Washington, D.C. 20036
                                                    Phone:      (202) 243-1000
                                                    Fax:        (202) 243-1001

                                                    Attorney for Plaintiff and the proposed Class